## No. 19-60662

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

DENNIS HOPKINS, individually and on behalf of a class of all others similarly situated; HERMAN PARKER, JR., individually and on behalf of a class of all others similarly situated; WALTER WAYNE KUHN, JR., individually and on behalf of a class of all others similarly situated; BYRON DEMOND COLEMAN, individually and on behalf of a class of all others similarly situated; JON O'NEAL, individually and on behalf of a class of all others similarly situated; EARNEST WILLHITE, individually and on behalf of a class of all others similarly situated,

*Plaintiffs-Appellees*

V.

SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity,
*Defendant-Appellant*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Consolidated with 19-60678

DENNIS HOPKINS, individually and on behalf of a class of all others similarly situated; HERMAN PARKER, JR., individually and on behalf of a class of all others similarly situated; WALTER WAYNE KUHN, JR., individually and on behalf of a class of all others similarly situated; JON O'NEAL, individually and on behalf of a class of all others similarly situated; EARNEST WILLHITE, individually and on behalf of a class of all others similarly situated; BYRON DEMOND COLEMAN, individually and on behalf of a class of all others similarly situated,

*Plaintiffs - Appellees Cross-Appellants*

V.

SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity,
*Defendant - Appellant Cross-Appellee*

_____

**On Appeal from the United States District Court
for the Southern District of Mississippi**
_____

**BRIEF OF DEFENDANT-APPELLANT CROSS-APPELLEE
SECRETARY OF STATE HOSEMANN**

Krissy C. Nobile, MSB # 103577
Justin L. Matheny, MSB # 100754
STATE OF MISSISSIPPI
ATTORNEY GENERAL'S OFFICE
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3824
knobi@ago.ms.gov
jmath@ago.ms.gov

*Counsel for Defendant-Appellant Cross-Appellee
Secretary of State Delbert Hosemann*

## CERTIFICATE OF INTERESTED PARTIES

### Case No. 19-60662 consolidated with No. 19-60678

Undersigned counsel certifies that the following listed persons have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1.  Dennis Hopkins, Herman Parker, Jr., Walter Wayne Kuhn Jr., Byron Demond Coleman, Jon O'Neal, and Earnest Willhite, Plaintiffs-Appellees Cross-Appellants;

2.  Janet A. Gochman, Isaac Rethy, Jonathan K. Youngwood, Nihara Karim Choudhri, Tyler A. Anger, Simpson, Thacher & Bartlett, LLP, Attorneys for Plaintiffs-Appellees Cross-Appellants;

3.  Paloma Wu, Lisa S. Graybill, Caren E. Short, Nancy G. Abudu, The Southern Poverty Law Center, Attorneys for Plaintiffs-Appellees Cross-Appellants;

4.  Secretary of State Delbert Hosemann, in his official capacity, Defendant-Appellant Cross-Appellee;

5.  Justin L. Matheny, Krissy C. Nobile, Mississippi Office of the Attorney General Attorney, Attorneys for Defendant-Appellant Cross-Appellee.

SO CERTIFIED, this the 16th day of October, 2019.

/s/ *Krissy C. Nobile*
Krissy C. Nobile

# **STATEMENT REGARDING ORAL ARGUMENT**

Although the district court's decision dismissing most of plaintiffs' constitutional challenges to Article 12, Sections 241 and 253 of the Mississippi Constitution was correct, the district court erred as a matter of law in denying summary judgment to the Mississippi Secretary of State on plaintiffs' race-based equal protection challenge to Section 253.

The district court concluded that this case raises controlling questions of law on which the district court reasoned that substantial grounds for difference of opinion exist, including questions related to Article III standing and the Eleventh Amendment. Because of this, oral argument will aid in resolving the legal issues presented and is already tentatively calendared by Order of this Court for the week of December 2, 2019.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES ........................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iv

TABLE OF CONTENTS.......................................................................................v

TABLE OF AUTHORITIES ............................................................................ vii

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION....................................................................2

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE.............................................................................3

    A.    Felon Disenfranchisement............................................................................3

    B.    Felon Disenfranchisement and Re-enfranchisement in Mississippi. ...........4

    C.    Proceedings Below. .....................................................................................6

SUMMARY OF THE ARGUMENT ...................................................................9

ARGUMENT .....................................................................................................12

    I.    PLAINTIFFS LACK ARTICLE III STANDING FOR THEIR CONSTITUTIONAL CHALLENGE TO ARTICLE 12, SECTION 253. ...12

    II.    PLAINTIFFS' SECTION 253 CHALLENGE IS BARRED BY THE ELEVENTH AMENDMENT. ....................................................................23

    III.    PLAINTIFFS' RACE-BASED EQUAL PROTECTION CHALLENGE TO SECTION 253 FAILS. .............................................................................25

    IV.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' REMAINING CONSTITUTIONAL CHALLENGES TO ARTCLE 12, SECTION 253 OF THE MISSISSIPPI CONSTITUTION. .......................................................................................39

        A.  Plaintiffs' nonracial equal protection challenge to Section 253 is inapt.....40

B.  Plaintiffs' First Amendment challenge to Section 253 is unavailing. ........45

V.  THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' CONSTITUTIONAL CHALLENGES TO ARTCLE 12, SECTION 241 OF THE MISSISSIPPI CONSTITUTION. ...46

A.  Plaintiffs lack Article III standing, and the Eleventh Amendment bars the Section 241 claims against the Secretary. ...................................................46

B.  Plaintiffs' non-racial equal protection challenge to Section 241 fails.........52

C.  Plaintiffs' claim that felony disenfranchisement violates the Eighth Amendment is a non-starter.........................................................................55

CONCLUSION .....................................................................................................56

CERTIFICATE OF SERVICE ..............................................................................58

CERTIFICATE OF COMPLIANCE.....................................................................59

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Baker v. Carr*,
369 U.S. 186 (1962) ............................................................................. 20

*Beacham v. Braterman*
300 F. Supp. 182 (S.D. Fla. 1969) ................................................ 41, 42

*Beacham v. Braterman*
396 U.S. 12 (1969) ............................................................................... 42

*Bennett v. Spear*
520 U.S. 154 (1997) ............................................................................. 22

*Bronson v. Swensen*
500 F.3d 1099 (10th Cir. 2007) ........................................................... 22

*Burton v. City of Belle Glade*
178 F.3d 1175 (11th Cir. 1999) ........................................................... 45

*City of San Antonio v. Edwards Aquifer Authority*
2014 WL 12495605 (W.D. Tex. Mar. 31, 2014) .................................. 50

*Coleman v. Miller*
117 F.3d 527 (11th Cir. 1997) ............................................................. 27

*Conn. Bd. of Pardons v. Dumschat*
452 U.S. 458 (1981) ....................................................................... 42, 43

*Cotton v. Fordice*
157 F.3d 388 (5th Cir. 1998) ......................................................... 11, 28

*DaimlerChrysler Corp. v. Cuno*
547 U.S. 332 (2006) ....................................................................... 10, 18

*Davis v. Federal Election Comm'n*
  554 U.S. 724 (2008) ......................................................................18

*Digital Recognition Network, Inc. v. Hutchinson*
  803 F.3d 952 (8th Cir. 2015) .........................................................20

*Duit Constr. Co., Inc. v. Bennett*
  796 F.3d 938 (8th Cir. 2015) .........................................................22

*Ex Parte Young*
  209 U.S. 123 (1908)............................................... 23, 24, 25, 50, 52

*Farrakhan v. Locke*
  987 F. Supp. 1304 (E.D. Wash. 1997)......................................... 55, 56

*Fontenot v. McCraw*
  777 F.3d 741 (5th Cir. 2015) .........................................................13

*Franklin v. Massachusetts*
  505 U.S. 788 (1992)................................................................. 19, 20

*Green v. Bd. of Elections*
  380 F.2d 445 (2d Cir. 1967) ..................................................... 3, 54, 55

*Hand v. Scott*
  888 F.3d 1206 (11th Cir. 2018) .....................................................43

*Harvey v. Brewer*
  605 F.3d 1067 (9th Cir. 2010) ................................................. 46, 55

*Hayden v. County of Nassau*
  180 F.3d 42 (2d Cir. 1999) ...........................................................31

*Hayden v. Pataki*
  449 F.3d 305 (2d Cir. 2006) .........................................................55

*Hayden v. Paterson*
   594 F.3d 150 (2d Cir. 2010) .......................................................... 39, 54

*Herrera v. Collins*
   506 U.S. 390 (1993)................................................................. 26, 40, 41

*Hunter v. Underwood*
   471 U.S. 222 (1985)........................................................................ passim

*Hutto v. South Carolina Ret. Sys.*
   773 F.3d 536 (4th Cir. 2014) ...............................................................25

*I.L. v. Alabama*
   739 F.3d 1273 (11th Cir. 2014) .................................................... 10, 18

*Johnson v. Governor of State of Fla.*
   405 F.3d 1214 (11th Cir. 2005) .................................................... 38, 55

*K.P. v. LeBlanc*
   729 F.3d 427 (5th Cir. 2013) ...............................................................16

*Lewis v. Casey*
   518 U.S. 343 (1996)..............................................................................18

*Linda R.S. v. Richard D.*
   410 U.S. 614 (1973)..............................................................................13

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992)............................................................... 12, 13, 46

*Madera v. Detzner*
   325 F. Supp. 3d 1269 (N.D. Fla. 2018) ......................................... 50, 51

*Mandel v. Bradley*
   432 U.S. 173 (1977)..............................................................................42

*Marine Equipment Management Co. v. U.S.*
  4 F.3d 643 (8th Cir. 1993) ...................................................................20

*McCleskey v. Kemp*
  481 U.S. 279 (1987)............................................................... 30, 31, 32

*Morris v. Livingston*
  739 F.3d 740 (5th Cir. 2014) ...................................................... 24, 25, 52

*Muskrat v. United States*
  219 U.S. 346 (1911)...........................................................................13

*OCA-Greater Houston v. Texas*
  867 F.3d 604 (5th Cir. 2017) ...................................................... 21, 22, 24

*Okpalobi v. Foster*
  244 F.3d 405 (5th Cir. 2001) ...................................................... passim

*Pennhurst State Sch. & Hosp. v. Halderman*
  465 U.S. 89 (1984)..............................................................................23

*Peterson v. Martinez*
  707 F.3d 1197 (10th Cir. 2013) ...........................................................50

*Quern v. Jordan*
  440 U.S. 332 (1979)................................................................... 24, 25

*Richardson v. Ramirez*
  418 U.S. 24 (1974)...................................................................... passim

*Rivera v. Wyeth-Ayerst Labs.*
  283 F.3d 315 (5th Cir. 2002) ..............................................................14

*Robinson v. State of California*
  370 U.S. 660 (1962)...........................................................................56

*Schick v. Reed*
  419 U.S. 256 (1974) ........................................................................44

*Scott v. Schedler*
  771 F.3d 831 (5th Cir. 2014) ...........................................................49

*Shepherd v. Trevino*
  575 F.2d 1110 (5th Cir. 1978) .................................................. passim

*Smith v. Snow*
  722 F.2d 630 (11th Cir. 1983) .................................................. 41, 42

*Sprint Communications Co. v. APPC Services, Inc.*
  554 U.S. 269 (2008) ............................................................ 12, 13, 15

*Sullo & Bobbitt, PLLC v. Abbott*
  2012 WL 2796794 (N.D. Tex. July 10, 2012) ...................................20

*Thompson v. Alabama*
  293 F. Supp. 3d 1313 (M.D. Ala. 2017) ...........................................45

*Town of Chester, N.Y. v. Laroe Estates, Inc.*
  137 S. Ct. 1645 (2017) ....................................................................18

*Village of Arlington Heights v.*
*Metropolitan Housing Development Corp.*
429 U.S. 252 (1977) ............................................................. 27, 31, 34

*Voting for America, Inc. v. Andrade*
  888 F. Supp. 2d 816 (S.D. Tex. 2012) .............................................49

*Warth v. Seldin*
  422 U.S. 490 (1975) ........................................................................13

*Yick Wo v. Hopkins*
  118 U.S. 356 (1886) .................................................................. 37, 38

## STATE CASES

*In re Hooker*
   87 So. 3d 401 (Miss. 2012) ................................................................39

## FEDERAL CONSTITUTIONAL AND STATUTORY PROVISIONS

28 U.S.C. § 1292(b) ......................................................................2, 8

42 U.S.C. § 1973gg–6(a)(3)(B) .............................................................48

52 U.S.C.A. § 20507(a)(3)(B) ...............................................................48

U.S. CONST. amend. XIV, § 2 ...............................................................3

## FEDERAL RULES

Fed. R. App. P. 32 ........................................................................58

Fed. R. Civ. P. 23(c)(3)(A) .................................................................56

## STATE STATUTES

ALA. CONST., art. VIII, § 182 ............................................................ 26, 32

MISS. CODE ANN. §§ 23-5-35, 23-5-85 ......................................................36

MISS. CODE ANN. § 23-15-151 ........................................................... 47, 50

MISS. CODE ANN. § 23-15-165 ............................................................47

MISS. CODE ANN. § 23-15-33(1) .......................................................... 48, 51

MISS. CODE ANN. §§ 23-15-11, 23-15-19 ..................................................1, 35

MISS. CODE ANN. §§ 23-15-19, 23-15-151 ..................................................48

MISS. CONST. Art. 1, §§ 1, 2 .............................................................34

Mississippi Constitution Article 5, § 124 ....................................................... 1, 5, 39

Mississippi Constitution Article 12, § 253 ...................................................... passim

Mississippi Constitution Article 12, § 241 ...................................................... passim

## **INTRODUCTION**

Since statehood, in one form or another, Mississippi law has always prescribed felon disenfranchisement—before and after the U.S. Constitution expressly authorized the policy. *See Richardson v. Ramirez*, 418 U.S. 24 (1974). Presently, state law provides that felonies classified as murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement, bigamy, and voter fraud are disqualifying. MISS. CONST. art. 12, § 241; MISS. CODE ANN. §§ 23-15-11, 23-15-19.

But Mississippi law also provides discretionary mechanisms for felons to regain voting rights. These discretionary mechanisms include gubernatorial pardons pursuant to Mississippi Constitution Article 5, § 124, as well as suffrage bills passed by the Mississippi Legislature under Article 12, § 253.

The plaintiffs here have sued the Mississippi Secretary of State, challenging as unconstitutional both Sections 253 and 241. But neither type of challenge may go forward. To be sure, the Secretary plays no role whatsoever in the passage of legislative suffrage bills, and he does not enforce disenfranchisement laws.

Consequently, plaintiffs lack Article III standing, and the Eleventh Amendment bars their claims. In any event, though, plaintiffs' challenges otherwise do not have any legal merit. Thus, for more than one reason, plaintiffs' claims against the Secretary all fail.

## STATEMENT OF JURISDICTION

This Court granted jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(b) on September 11, 2019. Jurisdiction of this appeal from the denial of the Secretary of State's claim of Eleventh Amendment immunity, and related subject-matter jurisdictional issues, is also proper pursuant to the collateral order doctrine.

## STATEMENT OF THE ISSUES

The district court correctly granted in part the Secretary of State's motion for summary judgment. However, the district court erred in denying summary judgment on plaintiffs' race-based equal protection challenge to Section 253, which provides one of the State's discretionary mechanisms for felons to regain their voting rights through suffrage bills passed by the Mississippi Legislature. Does plaintiffs' race-based equal protection challenge to Section 253 fail as a matter of law when:

(i)     The Secretary of State plays no role whatsoever in Section 253's legislative process, and he is thus powerless to remedy the alleged injury;

(ii)     Plaintiffs failed to prove that Section 253 has any present-day unconstitutional effects or that the law is discriminatory in application; and

(iii)     Section 253, while enacted in 1890, is not self-enforcing, and the Mississippi Legislature not only endorsed the law in the 1980s, but a two-thirds majority of the Legislature endorses the substance and procedure of Section 253 each time present-day legislators exercise their authority to pass a suffrage bill.

2

# STATEMENT OF THE CASE

## A.    **Felon Disenfranchisement**.

There is no dispute that the Fourteenth Amendment expressly authorizes felon disenfranchisement. *See* U.S. CONST. amend. XIV, § 2. When it was ratified, "29 States had provisions in their constitutions which prohibited, or authorized the legislature to prohibit, exercise of the franchise by persons convicted of felonies or infamous crimes." *Richardson*, 418 U.S. at 48. Today, a multitude States disenfranchise felons beyond the term of their prison sentence. ROA.19-60662.4277, 4092-4143, 4144-4247.[1] And all but two States (Maine and Vermont) disenfranchise felons during their prison sentence. ROA.19-60662.4277, 4092-4143, 4144-4247.

Felon disenfranchisement is based on the philosophy of republican government and theory of social compact. In the words of Judge Friendly, "[a] man who breaks the laws he has authorized his agent to make for his own governance could fairly have been thought to have abandoned the right to participate in further administering the [social] compact." *Green v. Bd. of Elections,* 380 F.2d 445, 450-51 (2d Cir. 1967), *cert. denied,* 389 U.S. 1048 (1968); *Shepherd v. Trevino*, 575 F.2d 1110 (5th Cir. 1978).

---

[1] "RE-T.[#]" refers to the tabbed material in the Secretary's Record Excerpts. "ROA.19-60662.[#]" refers to the paginated, certified Record on Appeal, including the record on appeal as supplemented by Order of this Court on September 25, 2019.

**B.      Felon Disenfranchisement and Re-enfranchisement in Mississippi**.

The State's 1817 and 1832 Constitutions, and the laws enacted under them, provided for felon disenfranchisement. ROA.19-60662.1217-1244; *see also* RE-T.8.[2] After the Civil War, the States (including Mississippi) ratified the Fourteenth Amendment—which expressly authorizes felon disenfranchisement. Following suit, Mississippi's Reconstruction-era government enacted the 1868 Constitution and other felon disenfranchisement laws. ROA.19-60662.1245-1273, 1256, 1257; *see also* RE-T.8.

The 1890 Mississippi constitutional framers, like all their predecessors, addressed felon disenfranchisement. Their Constitution Section 241 modified the State's prior laws to disqualify persons "convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement or bigamy" from voting. ROA.19-60662.1375; RE-T.8. The 1890 version of Section 241's disenfranchising crimes remained on the books for six decades. *See* Miss. Laws 1960, ch. 569.

The 1890 Constitution also adopted a legislative method for convicted felons to re-gain the ballot. Specifically, Article 12, § 253 provides:

> The legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person

---

[2] RE-T.8 is the Secretary's Itemization of Undisputed Material Facts and Supporting Evidence filed in support of the Secretary's Motion for Summary Judgment in the district court.

> disqualified by reason of crime; but the reasons therefor shall be spread
> upon the journals, and the vote shall be by yeas and nays.

MISS. CONST. art. 12, § 253. The adoption of Section 253 thus provided an additional

mechanism for the restoration of voting rights—in addition to, of course, the

gubernatorial pardon. *See* MISS. CONST. art. 5, § 124.

In the 1950s and 1960s, things started to change as it relates to the State's

disenfranchisement laws and its categorical list of disenfranchising crimes. *See* Miss.

Laws 195, ch. 569; ROA.19-60662.1390-1391, 1418-1419, 1511, 1521; RE-T.8.

And, in the mid-1980s, Mississippi lawmakers again revisited the issue of

disenfranchisement—as well as that of re-enfranchisement. ROA.19-60662.1523-

1687; RE-T.8. In 1984, for instance, a diverse Task Force of state officials and

citizens investigated, debated, and proposed changes to the State's election laws.

ROA.19-60662.1523-1632; RE-T.8.

The 1985 Legislature responded to the Task Force's findings by forming study

committees to further review the election laws. ROA.19-60662.1633-1668; RE-T.8.

Prior to the 1986 Regular Session, the committees reported to the full Legislature

and proposed to repeal the existing election laws and replacing them with a new

Election Code. ROA.19-60662.1633-1668; RE-T.8. The legislative package

proposed changing the felon disenfranchisement scheme and restoring suffrage

following completion of the sentence. ROA.19-60662.1633-1668, 1656-1657, 1672-

1674; RE-T.8.

Through the deliberative legislative process, legislators opted instead to conform their new Election Code's felon disenfranchisement provisions to the 1968 version of Section 241. ROA.19-60662.1676-1679; RE-T.8. And the legislators opted to endorse Section 253—that is, to not restore suffrage automatically. ROA.19-60662.1633-1668, 1656-1657, 1672-1674, 1680; RE-T.8. The 1986 legislation passed both houses nearly unanimously, with only four out of 174 legislators voting nay. ROA.19-60662.1680; RE-T.8.

## C.     Proceedings Below.

In September 2017, Roy Harness, Kamal Karriem, and others ("Harness plaintiffs")[3] filed a race-based equal protection challenge to Section 241 against the Mississippi Secretary of State. Thereafter, in March 2018, Dennis Hopkins, Herman Parker, Jr., Walter Wayne Kuhn Jr., Byron Demond Coleman, Jon O'Neal, and Earnest Willhite ("Hopkins plaintiffs" or "plaintiffs") filed a separate suit asserting additional constitutional challenges to Sections 241 and 253 against the Secretary.[4]

The Hopkins plaintiffs' complaint asserted five discrete facial constitutional challenges to Sections 241 and 253 of the Mississippi Constitution. Those causes of action include:

---

[3] Subsequently, all Harness plaintiffs other than Harness and Karriem voluntarily dismissed their claims. ROA.19-60662.1072-1073.

[4] The Hopkins plaintiffs' suit in the lower court is docketed as Cause No. 3:18-cv-00188-DPJ-FKB. As noted *infra*, that suit was consolidated with the earlier-filed Harness lawsuit, Cause No. 3:17-cv-00791-DPJ-FKB. The appellate record has been supplemented to include the district court record from both Cause Nos. 3:18-cv-188 and 3:17-cv-791.

* a "non-racial" Fourteenth Amendment claim targeting Section 241;

* an Eighth Amendment claim targeting the felony conviction disqualification provisions in Section 241;

* an Equal Protection Clause "arbitrariness" claim focused on the Legislature's authority to pass suffrage bills under Section 253;

* a First Amendment claim attacking Section 253; and

* a race-based equal protection claim targeting Section 253.

ROA.19-60662.54-59.

The Harness and Hopkins plaintiffs' lawsuits were consolidated in the district court, ROA.19-60662.874-876, and the district court granted the Hopkins plaintiffs' motion for class certification. ROA.19-60662.4843-4849. All parties also moved for summary judgment. ROA.19-60662.1748-1761, 2085-2088.

On August 7, 2019, the district court issued an Order addressing the competing summary judgment motions. ROA.19-60662.4857-4885; RE-T.3. First, the court rejected all claims brought by the Harness plaintiffs, and it granted summary judgment to the Secretary. ROA.19-60662.4865-4875; RE-T.3. The court then severed the Harness plaintiffs' lawsuit and entered a judgment dismissing the case with prejudice. ROA.19-60662.4884, 4886.

Next, the district court denied the Hopkins plaintiffs' motion for summary judgment in its entirety. ROA.19-60662.4875-4886; RE-T.3. The court then granted

in part and denied in part the Secretary's summary judgment motion as to the Hopkins plaintiffs' claims. ROA.19-60662.4884-4885; RE-T.3. Summary judgment was denied only as to the race-based equal protection challenge to Section 253. ROA.19-60662.4884; RE-T.3.

In the same Order, the court also *sua sponte* certified "all holdings in the still open Hopkins case for interlocutory appeal" pursuant to 28 U.S.C. § 1292(b). ROA.19-60662.4884-4885; RE-T.3. On August 19, 2019, the Secretary and the Hopkins plaintiffs each filed a petition for interlocutory appeal in this Court. *See* Fifth Circuit Miscellaneous Cause No. 19-90024; RE-T.5; RE-T.6.

Thereafter, on September 3, 2019, while the parties' cross-petitions for interlocutory appeal remained pending, the Secretary noticed a separate appeal from the district court's August 7 Order. ROA.19-60662.514-515; RE-T.4. This Court docketed that appeal as Cause No. 19-60662.

On September 11, 2019, this Court granted the parties' cross-petitions for interlocutory appeal from the entirety of the district court's August 7 Order. ROA.19-60662.534-535; RE-T.7. The Court docketed the parties' interlocutory appeal as Cause No. 19-60678.

Then, on September 24, 2019, this Court consolidated and expedited the

appeals with Cause Nos. 19-60678 and 19-60662.[5]

## SUMMARY OF THE ARGUMENT

The district court correctly denied summary judgment in its entirety to the plaintiffs. The district court also correctly granted summary judgment in part to the Secretary. But the lower court erred for two independent reasons by not dismissing plaintiffs' race-based equal protection challenge to Section 253.

First, plaintiffs lack Article III standing, and the Eleventh Amendment bars their claim as to Section 253. A plaintiff does not have Article III standing with respect to those officials who are powerless to remedy the alleged injury. *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (en banc). Here, plaintiffs' claimed injury is their inability to receive a suffrage bill from the Mississippi Legislature. And they seek relief declaring as unconstitutional the "legislative process for the restoration of voting rights established by the suffrage bill provision" of Article 12, § 253 of the Mississippi Constitution.

However, the Secretary plays no role whatsoever in the legislative process for restoring voting rights. In fact, the Secretary of State, as an executive branch official, cannot have a role in the enforcement of the Legislature's constitutional authority under Section 253. Because of this, the Secretary cannot redress the injury that

---

[5] The Harness plaintiffs have also appealed. That appeal is proceeding separately as Cause No. 19-60632 and is not part of this consolidated and expedited appeal.

plaintiffs assert Section 253 causes them.

Nevertheless, the district court found the standing elements "minimally" satisfied because the Secretary "return[s] a convicted felon to the voting rolls *after* he or she successfully files a section 253 petition." ROA.19-60662.4864-4865 (emphasis supplied). But that has nothing at all to do with plaintiffs' alleged injury or the relief they seek for it. *See I.L. v. Alabama*, 739 F.3d 1273, 1281 (11th Cir. 2014) (courts "must consider the requested relief in the context of the injury that it purports to redress").

To be sure, plaintiffs do not allege that they are injured because the Secretary is not returning convicted felons to the voting rolls *after* the legislative process about which plaintiffs complain has concluded. Quite differently, the injury alleged for purposes of the Section 253 challenge *is* the actual *legislative process*. And Section 253's legislative process both begins and ends without the Secretary's involvement.

The district court thus erred because it failed to analyze the requested relief in the context of the actual injury it purports to redress. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). While plaintiffs are convicted felons seeking to regain the right to vote, the relief they seek for purposes of their challenges to Section 253 has nothing to do with the Secretary of State. Ultimately,

in fact, plaintiffs seek relief that the Secretary cannot provide for an alleged injury the Secretary did not cause.

Second, even if plaintiffs could establish standing, plaintiffs' race-based equal protection challenge to Section 253 fails on the merits. According to plaintiffs, Section 253 is unconstitutional because it allegedly was enacted with racial intent in 1890. But, at summary judgment, plaintiffs failed to offer proof of any present-day unconstitutional effects of Section 253. *See Cotton v. Fordice*, 157 F.3d 388, 392 n.9 (5th Cir. 1998) ("*Hunter* [*v. Underwood*, 471 U.S. 222 (1985)] also requires unconstitutional effects as well as motive.").

Moreover, although Section 253 was drafted in 1890, the Mississippi Legislature returned to the issue of legislative reenfranchisement in the 1980s and opted to keep Section 253's suffrage bill provision. More importantly, though, Section 253 is not a self-enforcing law. Instead, it is a device that requires the action of present-day Mississippi legislators to be implicated at all. And when present-day legislators exercise their authority under Section 253 to issue suffrage bills by a two-thirds vote of the Legislature, present-day legislators endorse both the substance and procedure of Section 253.

Simply put, the equal protection inquiry is focused on the "purposeful racial discrimination attending the enactment *and operation* of [a law]." *Hunter v. Underwood*, 471 U.S. 222, 233 (1985) (emphasis supplied). Because plaintiffs have

11

failed to prove any discriminatory effects or that present-day legislators enforce their Section 253 authority in a discriminatory fashion, the district court should have dismissed this claim.

Lastly, the district court correctly rejected plaintiffs' remaining constitutional challenges to Sections 253 and 241. Section 253 fits comfortably within the bounds of the Equal Protection Clause, and it otherwise is not violative of the First Amendment. Relatedly, Section 241 neither runs afoul of Fourteenth Amendment principles nor the Eighth Amendment.

There is no question that the U.S. Constitution expressly approves of the right of a State to disenfranchise felons—including permanently. Indeed, "the exclusion of felons from the vote has an affirmative sanction in [Section] 2 of the Fourteenth Amendment[.]" *Richardson*, 418 U.S. at 54. Plaintiffs' constitutional challenges all unravel in light of *Richardson* and its progeny.

## **ARGUMENT**

## I.    **PLAINTIFFS LACK ARTICLE III STANDING FOR THEIR CONSTITUTIONAL CHALLENGE TO ARTICLE 12, SECTION 253.**

The Article III "case and controversy" condition necessary for this Court's jurisdiction is not present here. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff invoking the jurisdiction of an Article III federal court bears the burden of establishing standing to do so. *Id.*; *Sprint Communications Co. v. APPC Services, Inc.*, 554 U.S. 269 (2008).

The three elements that must be established include: "(1) an injury in fact (*i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.*, a 'fairly ... trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit.)" *Sprint Communications*, 554 U.S. at 273-74 (citing and quoting in part *Lujan*, 504 U.S. at 560-61)).

Further, Article III requires an adversarial interest existing across the two opposing parties to the lawsuit. *Muskrat v. United States*, 219 U.S. 346, 357, 362 (1911). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art[icle] III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Thus, in a suit against state officials for injunctive relief, a plaintiff does not have Article III standing with respect to those officials who are powerless to remedy the alleged injury. *Linda R.S. v. Richard D.*, 410 U.S. 614, 616–18 (1973); *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (en banc).

This is so because Article III standing concerns the congruence or fit between the plaintiffs and the defendant. And the Court "must evaluate each plaintiff's Article III standing for each claim[.]" *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015). A failure to establish each the element for each claim deprives the Court

of jurisdiction over the claim. *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). Here, plaintiffs have both a causation and redressability problem.

**Causation**. The Secretary of State plays no role whatsoever in the passage of suffrage bills by the Mississippi Legislature. Indeed, plaintiffs' complaint concedes as much. For example, on page 17 of the complaint, plaintiffs provide a chart outlining how Section 253 works. The chart provides as follows:



ROA.19-60662.33.

Nowhere in plaintiffs' chart is the Secretary mentioned as having any connection to the passage of suffrage bills. This is because: the Secretary does not

sponsor suffrage bills; the Secretary does not draft suffrage bills; the Secretary has no role to play when and if such a bill goes to the full Judiciary B Committee of the first chamber of the Legislature—or to the second chamber of the Legislature; the Secretary does not debate on suffrage bills; the Secretary does not vote on any suffrage bills; and the Secretary cannot impact the passage or denial of a suffrage bill. ROA.19-60662.1138-1139, 1145-1216.

Plaintiffs do not dispute any of this. ROA.19-60662.3365. Instead, plaintiffs argue that the Secretary is a "suitable" defendant. ROA.19-60662.3997. According to plaintiffs, "[t]he Secretary of State is the most suitable defendant. . . ., as the Mississippi state legislators who introduce and vote on suffrage bills enjoy legislative immunity." ROA.19-60662.3997. Plaintiffs' argument, then, is that they do not have to satisfy Article III because the defendant(s) plaintiffs believe are the proper ones are otherwise entitled to a legal defense.

This is plainly wrong. Indeed, under plaintiffs' theory, any state official could be a "suitable" defendant and be sued for virtually any cause of action—even if the claims are untethered to the actual authority of the official in that realm. Yet Article III's "case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Communications*, 554 U.S. at 273. And plaintiffs do not have standing here to sue the Secretary. In fact, plaintiffs' allegations concerning Section

253's legislative process are not even directed at the Secretary.  ROA.19-60662.32-36.

For Article III purposes, there exists no "causal connection" between the Secretary's conduct and plaintiffs' claimed injuries tied to Mississippi's constitutional provision allowing convicted felons to regain the vote through the passage of a suffrage bill by the Mississippi Legislature. *Okpalobi*, 244 F.3d at 426. That missing connection is dispositive and requires dismissal of the Section 253 claims.

**Redressability**.  Plaintiffs not only have a causation problem. Their claims also fail Article III's third requirement.  Article III standing "must exist with respect ***to each claim*** the plaintiff seeks to press and ***for each form of relief that is sought***." *K.P. v. LeBlanc*, 729 F.3d 427, 436 (5th Cir. 2013) ((internal quotes omitted)) (emphasis supplied). Thus, the starting point is the relief sought for the specific claims asserted under Section 253.

In the complaint, plaintiffs only request the following relief to remedy their alleged injury caused by Section 253:

> [A] class-wide judgment declaring that the inherently arbitrary and racially discriminatory ***legislative process*** for the restoration of voting rights ***established by the suffrage bill provision*** of the Mississippi Constitution violates the Equal Protection Clause of the Fourteenth Amendment, as well as the First Amendment.

ROA.19-60662.60 (emphasis supplied).

Yet it is undisputed that the Secretary of State cannot grant (or deny) plaintiffs a suffrage bill, and the Secretary cannot change the legislative process for suffrage bills. Indeed, the Secretary doesn't play a role on the front end of Section 253's legislative process because he doesn't initiate or sponsor suffrage bills. The Secretary doesn't play a role during the legislative process because he doesn't debate suffrage bills. And the Secretary doesn't play a role at the end of the legislative process either because he does not vote on suffrage bills.

In other words, the legislative process about which plaintiffs complain both begins and ends without the Secretary's involvement. Because of this, the Secretary cannot redress the injury plaintiffs assert is caused by Section 253.

Nevertheless, the district court found the standing elements minimally satisfied because the Secretary "return[s] a convicted felon to the voting rolls ***after*** he or she successfully files a section 253 petition." ROA.19-60662.4864-4865; RE-T.3 (emphasis supplied). But that has nothing at all to do with plaintiffs' alleged injury or the relief they seek for it. Indeed, plaintiffs do not allege that they are injured for purposes of Section 253 because the Secretary isn't returning convicted felons to the voting rolls *after* the legislative process about which plaintiffs complain has concluded.

Quite differently, the injury alleged for purposes of the Section 253 challenge *is* the actual *legislative process*. Thus, in finding that plaintiffs had standing to sue

the Secretary, the district court entirely overlooked that courts "must consider the requested relief in the context of the injury that it purports to redress." *I.L.*, 739 F.3d at 1281.

In a similar vein, plaintiffs cannot bootstrap the relief they seek for their alleged injury due to Section 241 to establish standing for purposes of Section 253. This is so because "'standing is not dispensed in gross.'" *Town of Chester, N.Y. v. Laroe Estates, Inc*., 137 S. Ct. 1645, 1650 (2017); *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358, n.6 (1996)). Instead, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis*, 554 U.S. at 734 (internal quotations omitted); *see also DaimlerChrysler Corp.*, 547 U.S. at 352 ("[A] plaintiff must demonstrate standing separately for each form of relief sought").

When viewed in the context of the "form of relief sought" for purposes of the Section 253 challenge, it is clear that enjoining the Secretary to enforce or to not enforce Section 253 will "[f]or all practical purposes" be "utterly meaningless." *Okpalobi*, 244 F.3d at 426. Just as meaningless, in fact, as the relief the Fifth Circuit rejected in *Okpalobi*.

There, the plaintiffs' causation problem was that the statute's coercive impact (the statute exposed abortion doctors to civil liability) was distinct from the lack of coercive power of the state officials. *Id*. ("Once the coercive impact of the statute. .

. is understood to be distinct from the coercive power of state officials. . . the panel's finding of causation here is without a basis.").

In *Okpalobi*, the statute at issue was "self-enforcing," and the en banc Fifth Circuit reiterated that the panel wrongly "confuse[d] *the statute*'s immediate coercive effect on the plaintiffs with any coercive effect that might be applied by the *defendants*." *Id.* (emphasis in original). Here, Section 253 is *not* self-enforcing, and it is enforced solely by the Mississippi Legislature—not by the Secretary of State.

For similar reasons, the en banc Fifth Circuit in *Okpalobi* also found no redressability. The defendants had no authority under state law to redress the injuries alleged. Further, in footnote 34 of *Okpalobi*, the Court pointed out a simple, but often overlooked, point of law that applies both to injunctive and declaratory relief. *Id.* at 426 n.34. The district court's injunction in *Okpalobi* had enjoined the "statute." *Id.* But federal courts don't enjoin laws—federal courts enjoin defendants. *Id.* And, in this case, nothing the federal court enjoins the Secretary to do or not do will redress plaintiffs' injuries purportedly caused by Section 253's legislative process.

Notably, too, seeking the relief in the form of a declaration instead of an injunction does not get plaintiffs around Article III's requirements. "If courts may simply assume that everyone (including those who are not proper parties to an action) will honor the legal rationales that underlie their decrees, then redressability

19

will always exist." *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in the judgment).

Indeed, a federal court cannot "pronounce any statute, either of a state or of the United States, void, because irreconcilable with the constitution, except as it is called upon to adjudge the legal rights *of litigants* in actual controversies." *Baker v. Carr*, 369 U.S. 186, 204 (1962) (emphasis supplied); *Marine Equipment Management Co. v. U.S.*, 4 F.3d 643, 646 (8th Cir. 1993) ("The case or controversy requirement of Article III applies with equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief."); *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958-59 (8th Cir. 2015) (reasoning that "[a] declaration of the Act's unconstitutionality would provide [plaintiff] with a favorable judicial precedent on an abstract legal issue under the First Amendment. But if that measure of relief were sufficient to satisfy Article III, then the federal courts would be busy indeed issuing advisory opinions that could be invoked as precedent in subsequent litigation."); *Sullo & Bobbitt, PLLC v. Abbott*, 2012 WL 2796794, at \*5 (N.D. Tex. July 10, 2012) (dismissing claim for lack of standing, and noting that declaratory relief cannot be an advisory opinion—instead a "judicial pronouncement" has to settle "some dispute *which affects the behavior of the defendant towards the plaintiff* and not of a third party.") (internal quotations and citations omitted) (emphasis in original).

Although plaintiffs previously turned to *OCA-Greater Houston v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017) for support, that case is inapposite here. There, a nonprofit organization brought an action for declaratory and injunctive relief against Texas and its Secretary of State, alleging that a Texas voting law restricting interpretation assistance that English-limited voters could receive was preempted by the Voting Rights Act ("VRA").

Like in the instant matter, the defendants in *OCA-Greater Houston* argued that plaintiffs could not satisfy the causation and redressability prongs of Article III standing. But, unlike here, the arguments urged in *OCA-Greater Houston* failed in light of the VRA and specific Texas state law. This is so for a host of reasons.

First, the argument urged by Texas was that local election officials "misunderst[ood]" Texas law. *Id.* at 612-13 (Texas argued that any injury "was the result of a misunderstanding of Texas law by Williamson County election officials, not the result of § 61.033[.]"). Here, the issue is not one of misunderstanding by local officials. It is that neither local officials nor the Secretary have anything to do with enforcing Section 253.

Second, under the pertinent Texas state law at issue in *OCA-Greater Houston*, the Texas Secretary of State "is instructed by statute to '*obtain and maintain uniformity in the application, operation, and interpretation* of this code and of the

21

election laws outside this code.'" *Id.* at 613-14 (emphasis supplied). In this case, plaintiffs have not pointed to any similar directive under Mississippi law.

Further, as in *Okpalobi*, the Secretary lacks the "coercive power" necessary to either cause plaintiffs' Section 253 injury or redress it. *Okpalobi*, 244 F.3d at 426; *see also Bennett v. Spear*, 520 U.S. 154, 169-70 (1997) ("While . . . it does not suffice if the injury complained of is the result of the independent action of some third party not before the court. . .that does not exclude injury produced by determinative or coercive effect upon the action of someone else.") (internal citations omitted); *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007) (citing *Okpalobi* and concluding that the elements of causation and redressability were not satisfied because the enforcement of the statute was in the province of other officials); *Duit Constr. Co., Inc. v. Bennett*, 796 F.3d 938, 941 (8th Cir. 2015) (citing *Okpalobi* and finding causation and redressability lacking "because defendants have no control over the [commission's] practices, they 'have no powers to redress the injuries alleged,' that is, no power to correct the [commission's] purported practice of favoring in-state contractor claimants.").

Section 253 is a constitutional device solely enforced by the Mississippi Legislature—that necessarily means that the Secretary of State, as an executive branch official, does not have (*and could not have*) a statutory duty to enforce Section 253. Nor does the Secretary of State have the statutory authority to tell the

Legislature (*i.e.*, a separate branch of state government) what to do with its constitutional authority. *Okpalobi*, 244 F.3d at 427 ("[A] state official cannot be enjoined to act in any way that is beyond his authority to act in the first place. If the defendant Governor or Attorney General has no authority under state law to issue a specific directive, then the plaintiff might as well sue *any* state officer who, in turn, could direct any other state officer to carry out the injunction orders.") (emphasis in original).

The plaintiffs here have not only sued a state official that cannot redress their injuries—plaintiffs have sued a state official in the wrong branch of state government that cannot redress their injuries. In concluding otherwise, the district court erred, and plaintiffs' challenges to Section 253 should be dismissed based on a lack of standing.

## II. PLAINTIFFS' SECTION 253 CHALLENGE IS BARRED BY THE ELEVENTH AMENDMENT.

Eleventh Amendment immunity prohibits claims against the State, agencies considered "arms of the state," and state officials sued in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). The Secretary of State is a state official, sued in his official capacity. He enjoys Eleventh Amendment immunity here.

To overcome the Eleventh Amendment's bar, plaintiffs contend that their claims fit within the narrow exception in *Ex Parte Young*, 209 U.S. 123 (1908). But

*Ex Parte Young* only applies in a suit challenging a state law if the defendant has

"'some connection with the enforcement of the act' in question or [is] 'specifically

charged with the duty to enforce the statute' and [is] threatening to exercise that

duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting *Okpalobi*,

244 F.3d at 414-15). "The required 'connection' is not 'merely the general duty to

see that the laws of the state are implemented,' but 'the particular duty to enforce the

statute in question and a demonstrated willingness to exercise that duty.'" *Id.*

(quoting *Okpalobi*, 244 F.3d at 416).

Plaintiffs' Section 253 claims fail the "some enforcement connection" test.

The Secretary cannot enforce Section 253.  That provision concerns the machinery

of the Mississippi Legislature. And the Secretary has nothing to do with that process.

ROA.19-60662.1138-1139, 1145-1216.

Notably, the plaintiffs in the *OCA-Greater Houston* case did not have to

comply with the strictures of *Ex Parte Young*. As the Fifth Circuit put it: "Sovereign

immunity has no role to play here . . .The VRA, which Congress passed pursuant to

its Fifteenth Amendment enforcement power, validly abrogated state sovereign

immunity. The immunity from suit that Texas and its officials otherwise enjoy in

federal court offers it no shield here." *OCA-Greater Houston*, 867 F.3d at 614.

Unlike the VRA claims in *OCA-Greater Houston*, plaintiffs' Section 1983

claims here do not abrogate the Secretary's Eleventh Amendment immunity. *See*

*Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Thus, absent enforcement authority regarding the legislative process of Section 253, *Ex Parte Young* does not reach the Secretary of State here. *Morris*, 739 F.3d at 746; *see also Hutto v. South Carolina Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (Plaintiffs sought to enjoin enforcement of state act requiring state employees who retire and return to work to contribute to state retirement plan but receive no additional service credit for pension benefits, and the court dismissed under the Eleventh Amendment because the complaint sought to "enjoin the Retirement System's trustees and administrators from participating in a process in which they actually have no role").

Thus, the Eleventh Amendment bars plaintiffs' Section 253 claims, even if they could establish Article III standing.

## III.   PLAINTIFFS' RACE-BASED EQUAL PROTECTION CHALLENGE TO SECTION 253 FAILS.

Section 253 provides that the Mississippi Legislature may restore the right of suffrage to any person disqualified by reason of a criminal conviction upon "a two-thirds vote . . . of all members elected" in both the Senate and the House. That constitutional provision does not detract from any other discretionary mechanism for the restoration of voting rights, such as the gubernatorial pardon. Instead, it provides *another option* for felons to have their voting rights restored—even though *no option* is constitutionally required.

Although Section 253 is somewhat different from executive pardons and clemency in that it involves the machinery of state legislative processes, it is the same in that it is a non-constitutionally required procedure for vote restoration. It thus "provide[s] [a] 'fail safe' in our criminal justice system." *Herrera v. Collins*, 506 U.S. 390, 415 (1993). And it is not the power to take away a right—it is only the "power to extend mercy." *Id*. at 412.

Plaintiffs contend that Section 253 violates equal protection because it was enacted with a racial intent in 1890. But even if that were true, plaintiffs' claim still fails because plaintiffs can prove neither present-day discriminatory effects nor that present-day legislators enforce their Section 253 authority in a discriminatory fashion.

*Hunter v. Underwood*, 471 U.S. 222 (1985) is the starting point. There, the Supreme Court examined head-on an equal protection challenge to a criminal disenfranchisement provision. In *Hunter*, two plaintiffs, on behalf of themselves and a class of other misdemeanants, asserted an as-applied challenge to a never-modified 1901 Alabama Constitution provision that disenfranchised felons and misdemeanants "convicted of, among other offenses, 'any crime . . . involving moral turpitude.'" 471 U.S. at 223 (quoting ALA. CONST., art. VIII, § 182, alteration in original). The Supreme Court established a three-step test for analyzing race-based challenges to facially neutral disenfranchisement laws.

The plaintiffs were initially required to prove both the state constitutional provision's turn-of-the-century and present day disproportionate racial impact on misdemeanants, which they did. *Id.* at 227. The Court next held that challengers to a facially neutral law that produces disproportionate racial impact must prove race discrimination was a "substantial" or "motivating" factor behind the enactment using *Village of Arlington Heights v. Metropolitan Housing Development Corporation*'s evidentiary test. *Hunter*, 471 U.S. at 228 (citing *Arlington Heights*, 429 U.S. 252 (1977)). Then, if the challengers succeed, "the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." *Id.*

The plaintiffs here fail at each step, and the district court erred in not rejecting this claim as a matter of law.

**Discriminatory Effects and/or Discriminatory Application.** Plaintiffs' claim suffers an initial shortcoming with respect to *Hunter's* requirement to prove disproportionate impact. *Hunter*, 471 U.S. at 223. In their complaint, plaintiffs suggest that the "delegates to the 1890 Constitutional Convention were careful to establish a discretionary mechanism for restoring voting rights to Mississippi citizens convicted of disenfranchising crimes." ROA.19-60661.26. And plaintiffs' expert contends that she "did not find any evidence that even one single African American received redress through the suffrage restoration provision between 1890 and 1920." ROA.19-60662.3477.

But even viewing those allegations in the light most favorable to plaintiffs, they still fail to prove present-day impact. And it cannot be disputed that "*Hunter* [ ] requires unconstitutional effects as well as motive." *Cotton*, 157 F.3d at 392 n.9; *Coleman v. Miller*, 117 F.3d 527, 530 (11th Cir. 1997) (citing *Hunter* in an equal protection challenge to Georgia's state flag and finding no present-day "similar discriminatory impact").

Here, plaintiffs never tried to demonstrate any alleged unconstitutional effects of Section 253. Instead, they tried to sidestep it altogether by pointing to the purported disproportionate impact of the State's felon *dis*enfranchisement law (Section 241).

For instance, plaintiffs' complaint recites numbers about the voting age population of African-American citizens, as well as the percentage of African-American citizens who are disenfranchised and who have completed their sentence. ROA.19-60662.58-59. And plaintiffs summarize their impact proof as follows: "Black individuals … are [ ] disproportionately ***subject to*** the suffrage restoration provision[.]" ROA.19-60662.3148 (emphasis supplied).

But this is circular: the existence of the law can't also prove the impact of it. That is, all felons convicted of a disqualifying offense (irrespective of race) are "subject to" Mississippi's suffrage restoration law—just as they are "subject to"

28

executive pardons and to Mississippi's expungement laws. And, just like in other states, convicted felons are "subject to" those states' vote restoration regimes.

Worse still, plaintiffs offer no statistics vis-à-vis individuals who have requested suffrage bills versus those individuals who were or were not granted suffrage. Quite differently, plaintiffs maintain as follows: "The Mississippi Legislature restored voting rights to six individuals in 2017, four in 2015, three in 2014, and one in 2013. Not a single suffrage bill was passed in 2016. These fourteen Mississippians *appear to have virtually nothing in common*[.]" ROA.19-60662.36 (emphasis supplied). There is thus no proof that, proportionately, more Caucasians receive suffrage bills than African Americans.

In the lower court, plaintiffs' chief retort to the Secretary's argument was that it purportedly is "impossible to present" "statistical evidence" demonstrating present-day impact because there are no records of suffrage bills. ROA.19-60662.4033. But this just amounts to an improper attempt to switch the impact burden to the State. Federal law does not require a state to have a vote restoration process—let alone one that keeps readily-accessible and state-wide demographic details. Plus, it wouldn't even make sense for the State to insert racial demographics into executive pardons or legislative suffrage bills.

All in all, then, plaintiffs' claim fails because they cannot show that Section 253 has a present-day disparate impact. Nor can they tie any outcomes from the suffrage bill process to race.

Relatedly, plaintiffs haven't demonstrated that present-day legislators enforce their Section 253 authority in a discriminatory fashion. But this gap in plaintiffs' evidence is critical because Section 253 is a device that requires the action of the *present-day* Mississippi Legislature to be implicated *at all*.

That is, Section 253 is unlike felon disenfranchisement laws which are triggered automatically upon the conviction of an individual of a disqualifying offense. Those laws are self-enforcing—Section 253 is not. Instead, it is like all other discretionary vote restoration regimes that require a decision-maker (in the pardon context—the executive; in the suffrage bill context—the legislature) for the law ever to be activated.

In *McCleskey v. Kemp*, 481 U.S. 279 (1987), the Supreme Court reviewed the claim of a Georgia prisoner who alleged that the Georgia capital sentencing statute violated the Equal Protection Clause because it was administered in a racially discriminatory manner. 481 U.S. at 286, 291–92. In support of his claim, McCleskey offered a sophisticated statistical study that demonstrated that Georgia defendants whose victims were white were 4.3 times as likely to receive a death sentence as those whose victims were black. *Id.* In analyzing the claim, the Supreme Court

started with the familiar equal protection principle that purposeful discrimination must be proven.

The Supreme Court then continued, reasoning that "[a] corollary to this principle is that a criminal defendant must prove that the purposeful discrimination had a discriminatory effect on him." *Id.* at 292 (internal quotations omitted). "Thus, to prevail under the Equal Protection Clause, McCleskey must prove that the decisionmakers in *his* case acted with discriminatory purpose. He offers no evidence specific to his own case that would support an inference that racial considerations played a part in his sentence." *Id.* at 292-93 (emphasis in original); *see also Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999) (citing *Arlington Heights*, 429 U.S. at 264-65).

Here, the district court correctly recognized that plaintiffs are required to demonstrate that Section 253 is "applied in a discriminatory way." ROA.19-60662.4882; RE-T.3; *see also* ROA.19-60662.4866; RE-T.3 (noting that, under *Hunter*, a plaintiff must show that "the law's original enactment was motived by race discrimination *and that the law continues to have that effect*.") (emphasis supplied). But, after restating what the law requires plaintiffs to prove, the district court never went the next step and analyzed whether plaintiffs had satisfied that standard. ROA.19-60662.4882-4883; RE-T.3.

This was error. Indeed, say plaintiffs identified two individuals of different races who both had requested suffrage bills—with differing outcomes. One received a suffrage bill; the other did not. Even if plaintiffs offered such evidence (which they do not), this still would prove nothing under the proper disparate impact inquiry.

This is so for numerous reasons: the convicted felon who did not receive the suffrage bill could have committed a more violent offense, like rape; or that felon could have committed multiple felonies; or he or she could have been a repeat offender. In other words, and in that scenario, plaintiffs would at least have to offer some form of comparator evidence. Or, as *McCleskey* put it, "pro[of] that the purposeful discrimination had a discriminatory effect on him [or her]." *McCleskey*, 481 U.S. at 292 (internal quotation marks omitted).

Simply put, *Hunter* made clear that plaintiffs must prove that the law "continues to this day" to have a discriminatory "effect." *Hunter*, 471 U.S. at 233. And plaintiffs have failed that test.

**Discrimination Attending the Enactment and Operation of the Law**. Even if plaintiffs could satisfy step one of *Hunter*, focusing on the intent element of their claim exposes more proof problems. In discussing *Richardson v. Ramirez*, the *Hunter* Court concluded as follows:

> Without again considering the implicit authorization of § 2 to deny the vote to citizens "for participation in rebellion, or other crime," see *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), we are confident that *§ 2 was not designed to permit the*

32

> **purposeful racial discrimination attending the enactment and operation** of § 182 which otherwise violates § 1 of the Fourteenth Amendment.

*Hunter*, 471 U.S. at 233 (emphasis supplied).

Here, plaintiffs' "evidence" of intentional discrimination dates back to the original enactment of Section 253 in 1890. The evidence, though, improperly utilizes a "guilt by history" approach as to Section 253. Basically, plaintiffs (and their expert) contend that Section 253 must have been enacted with a discriminatory intent because it was enacted in 1890 in Mississippi. ROA.19-60662.27 (claiming that 253 is discriminatory because such "intent permeated the 1890 Constitution in its entirety").

However, plaintiffs do not cite any contemporaneous evidence showing that racial discrimination actually motivated the adoption of that provision. In fact, the evidence cited by plaintiffs' expert is only to the contrary: "On September 24, 1980 . . . Senator George . . . argued that if someone had straightened out his life then he should deserve the reprieve from the strictures prohibiting the franchise to those convicted of certain crimes." ROA.19-60662.1817-1818.

Further, plaintiffs otherwise cannot bypass their burden *to prove* discriminatory intent as to Section 253 by claiming that the lack of "objective and uniform criteria" *could be* evidence of such intent. For example, in paragraph 51 of the complaint, plaintiffs maintain that Section 253's process is *"susceptible* to

discrimination" and that there is "no oversight . . . *to ensure* that legislators do not exercise their discretion to vote against a proposed suffrage bill on the basis of an individual's race, religion, or political leanings." ROA.19-60662.32 (emphasis supplied).

But the risk of discrimination does not render a state law facially unconstitutional. Indeed, that risk exists whenever decisionmakers—executive, legislative, or judicial—are vested with discretion. Thus, contending that a State's vote restoration process is "susceptible to discrimination" does not suffice under *Hunter*.

Further, many provisions in Mississippi law read the same today as they did in 1890. *E.g.*, MISS. CONST. Art. 1, §§ 1, 2 (powers of government – separation of powers); Art. 3, § 14 (due process); most of the rules of procedures for the legislative branch—Art. 4, § 54 (quorum), § 55 (determination of rules by each house), § 56 (style of laws); Art. 5, § 123 (executive faithful executive of the law); and Art. 5, § 124 (executive reprieves and pardons).

While it seems quite radical that such laws all should be struck down just because they read the same today as they did in 1890, the upshot of plaintiffs' argument also is a radical one. Indeed, in the lower court, plaintiffs spent an amass of pages arguing why Section 253 *should be* considered to have been enacted with a discriminatory intent. But plaintiffs never prove that *it was* enacted with such

intent—aside from the fact that it was enacted in 1890. This is insufficient, though, under *Hunter* and/or *Arlington Heights*.

Yet, even if plaintiffs could satisfy their intent burden, proving different state lawmakers subsequently endorsed the present scheme—without discriminatory motivation—may discharge the State's burden. *Hunter*, 471 U.S. at 228. In the lower court, plaintiffs started on the wrong foot by claiming that the Secretary is required to prove that Section 253 *has been reenacted* since 1890. But the standard in *Hunter* is whether the law *would have been enacted* absent an impermissible motivation—not whether it later *was reenacted* absent such motivation. *Id.* This is a standard that is satisfied here for several reasons.

Mississippi's current Election Code, first enacted in 1986, is one of those reasons. The state's modern felon disenfranchisement laws include Section 241, as well as Code Sections 23-15-11 and 23-15-19, which together govern voter qualifications and prohibit certain convicted felons from registering to vote. In enacting the modern code provisions, lawmakers modified the State's felon disenfranchisement scheme, and the Legislative action was the product of a robust deliberative process. It changed and effectuated the State's present-day disenfranchisement scheme—*and* it endorsed the reenfranchisement scheme.

To be sure, in 1984, then-Secretary of State Molpus assembled a bipartisan, biracial Election Law Reform Task Force to undertake a comprehensive review of

the State's election laws and propose election reform legislation. ROA.19-60662.1523-1527, 1528-1530. The Task Force's work included a review of the State's felon disenfranchisement laws. ROA.19-60662.1531-1612, 1613-1619, 1617, 1620-1627, 1620, 1622, 1628-1632, 1629. When the Task Force completed its deliberations, it proposed legislation for the 1985 Regular Session.

The Legislature responded by forming study committees. ROA.19-60662.1633-1668. Prior to the 1986 Regular Session, the House committee issued a formal report, endorsed by its Senate counterpart. ROA.19-60662.1633-1668. The report's felon disenfranchisement findings included, among others, a proposal to expand the scope of disenfranchising crimes to all felonies, except "manslaughter and felonious violations of the Internal Revenue Code," and to restore suffrage to felons following completion of their sentence to reduce the Legislature's need to act on suffrage bills. ROA.19-60662.1633-1668, 1656-1657.

Following the report, legislators introduced 1986 Senate Bill 2234 ("S.B. 2234"). ROA.19-60662.1672-1674. Throughout the deliberative legislative process, lawmakers debated and modified proposed S.B. 2234, culminating in a final conference report. ROA.19-60662.1676-1679. The report settled upon a revision of Code Sections 23-5-35 and 23-5-85, and reduced the scope of the code's felon disenfranchisement provisions. ROA.19-60662.1676-1680. And, notably, the 1986 Mississippi Legislature opted to keep the suffrage bill provision of Section 253.

Although the district court reasoned that "evidence from the 1980s" is "insufficient to hold—as a matter of law—that either party is entitled summary judgment," ROA.19-60662.4883; RE-T.3, the district court overlooked the argument that Section 253 is not self-executing. Thus, the equal protection analysis here turns on how present-day legislators are exercising their discretionary authority to issue suffrage bills under Section 253. Indeed, this is critical to the analysis of "the enactment and operation" of the law. *Hunter*, 471 U.S. at 233.

That is, because neither executive pardons nor legislative suffrage bills are self-enforcing, the "operation" of the law must be considered in the context of the present-day officials that operate the law. For example, if legislators had never exercised their authority under Section 253 to issue suffrage bills, the law would not be violative of equal protection just because it was drafted in 1890. Conversely, if legislators exercised their authority under Section 253 to grant suffrage bills to every felon, the law also wouldn't be violative of equal protection just because it was drafted in 1890.

Thus, it is how legislators exercise their authority that matters here. This is so because, at bottom, what plaintiffs want is for present-day Mississippi legislators to exercise their Section 253 authority differently.

Plus, it is not novel that a facially neutral and non-self-enforcing law could be unconstitutional. *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 373-74 (1886). But

the unconstitutionality turns on the law's enforcement. *See id.* Yet plaintiffs offered no proof (or even suggestion) that present-day Mississippi legislators enforce their Section 253 discretionary authority in a discriminatory fashion.

As a result, it is important here that the Mississippi Legislature not only returned to Section 253 in the 1980s, but also that legislators return to Section 253 each time they pass a suffrage bill. The equal protection analysis here thus turns on the actions of present-day legislators. And, in this regard, Section 253 differs entirely from the law in *Hunter* that was self-enforcing and automatically imposed a civil disability.

Moreover, there can be no doubt that *Hunter* is about "purposeful racial discrimination attending the enactment and operation of [the law]." *Hunter*, 471 U.S. at 233. And present-day Mississippi legislators endorse both the substance and the procedure of Section 253 each time they exercise their authority to pass a suffrage bill by a two-thirds vote of the Legislature. This Court, therefore, is not facing a counter-factual scenario like the one in *Hunter*.

As the Eleventh Circuit put it in *Johnson v. Governor of State of Florida*, the *Hunter* analysis was "complicated [ ] because it required a counter-factual scenario: given that Alabama only legislatively addressed the disenfranchisement issue once, what would legislators have done if they did not have a discriminatory motive?" *Johnson v. Governor of State of Fla*., 405 F.3d 1214, 1224 (11th Cir. 2005) (citing

*Hunter*, 471 U.S. at 228-29); *see also Hayden v. Paterson*, 594 F.3d 150, 168 (2d Cir. 2010).

Here, that answer is known. The Mississippi Legislature opted not to change Section 253 in the 1980s, and a two-thirds majority of the Legislature returns to and endorses legislative reenfranchisement each time present-day legislators exercise their authority under Section 253 to pass a suffrage bill. Accordingly, plaintiffs' race-based equal protection challenge to Section 253 fails at every step, and the district court should have dismissed it.

## IV.  THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' REMAINING CONSTITUTIONAL CHALLENGES TO ARTCLE 12, SECTION 253 OF THE MISSISSIPPI CONSTITUTION.

In general, once convicted of one of the disenfranchising crimes, a person must secure a restoration of his or her suffrage rights through the Mississippi Legislature or a pardon from the governor to become a qualified elector. Here, plaintiffs do not challenge the governor's pardon authority or the discretion of that executive authority.[6] Nor do plaintiffs' challenge any other mechanism in Mississippi for restoration of suffrage.

---

[6] Section 253 is not exactly the same as a gubernatorial pardon or executive clemency. But it is the same in the sense that it is a mechanism for convicted felons to regain voting rights. Notably, too, Section 253 does not detract from the executive pardon power. *See* MISS. CONST. art. 5, § 124; *In re Hooker*, 87 So. 3d 401, 423 (Miss. 2012). In other words, Section 253 provides an added option available to felons for reenfranchisement—even though States may disenfranchise convicted felons permanently. *See Richardson*, 418 U.S. at 54.

Instead, plaintiffs focus squarely on the legislative process that provides a path for vote restoration through a suffrage bill. That focus is misguided.

## A.    Plaintiffs' nonracial equal protection challenge to Section 253 is inapt.

Plaintiffs first maintain that Section 253 violates the Equal Protection Clause because it permits state officials to arbitrarily restore voting rights to some Mississippi citizens and not others. According to plaintiffs, the constitutional provision runs afoul of equal protection in that it "establishes no objective criteria for the restoration of voting rights." ROA.19-60662.17. This challenge misses the mark entirely.

Section 253 provides that the Mississippi Legislature may restore the right of suffrage to any person disqualified by reason of a criminal conviction upon "a two-thirds vote . . . of all members elected" in both the Senate and the House.  Notably, that constitutional provision does not detract from any other discretionary mechanism for the restoration of voting rights, such as the gubernatorial pardon. Instead, it provides *another option* for felons to have their voting rights restored— even though *no option* is constitutionally required.

While Section 253 is somewhat different from executive pardons and clemency in that it involves the machinery of state legislative processes, it is the same in that it is a non-constitutionally required procedure for vote restoration. It thus "provide[s] [a] 'fail safe' in our criminal justice system." *Herrera v. Collins*,

506 U.S. 390, 415 (1993). And it is not the power to take away a right—it is only the "power to extend mercy." *Id*. at 412.

Because a suffrage bill per Section 253 *restores* rights that already have been lost pursuant to lawful and "elaborate procedures," it is not subject to the same requirements as processes that take rights away in the first place. *Smith v. Snow*, 722 F.2d 630, 632 (11th Cir. 1983) (per curiam). For instance, as the Eleventh Circuit has explained in the clemency context, "[t]he discretion involved at the clemency stage can never cause" the hardship that clemency removes; instead, "it serves only as an act of grace to relieve that sentence even when the sentence has been legally imposed." *Id*.

Further, fifty years ago, a convicted felon by the name of Rufus Beacham challenged Florida's law entrusting the State's highest-ranking executive officers with discretion to restore the civil rights, including voting rights, of convicted felons. Beacham sought to enjoin the "purely discretionary manner" of the re-enfranchisement decisions. *Beacham v. Braterman*, 300 F. Supp. 182, 183 (S.D. Fla. 1969). A three-judge panel unanimously rejected Beacham's plea.

The three judge district court panel held that it was not "a denial of equal protection of law" for Florida's Governor and the State Cabinet "to restore discretionarily the right to vote to some felons and not to others," even though "[n]either the Governor of Florida nor members of the State Cabinet [had]

established specific standards to be applied to the consideration of [such] petitions." *Beacham*, 300 F. Supp. at 183, 184.

Plaintiff Beacham took aim at that holding in his appeal to the Supreme Court. In his statement of jurisdiction, Beacham asked the Supreme Court to decide whether Florida's discretionary pardon procedure "violate[s] the Constitution in that there are no ascertainable standards governing the recovery of the fundamental right to vote." Jurisdictional Statement Question C, *Beacham v. Braterman*, 396 U.S. 12 (1969) (No. 404), 1969 WL 136703, at *3. By summarily affirming the district court, the Supreme Court necessarily decided that question in the negative.[7]

The underlying rationale of *Beacham* is instructive as to the instant challenge to Section 253 of the Mississippi Constitution. For example, plaintiffs round out their challenge to Section 253 as follows: "The suffrage bill provision establishes no objective criteria for the restoration of voting rights. Instead, Mississippi legislators have complete discretion to determine whether or not to allow a disenfranchised citizen to vote again." ROA.19-60662.17. But these contentions get the Hopkins plaintiffs no further than it got the litigant in *Beacham*. This is so because the upshot

---

[7] That is, a summary affirmance by the Supreme Court prohibits lower courts "from coming to opposite conclusions on the precise issues presented and necessarily decided." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam). Of particular relevance here, "[s]ummary affirmances . . . without doubt reject the specific challenges presented in the statement of jurisdiction." *Id.*

of that decision—as well as all others—is that a state need not employ specific standards when it assesses an application seeking restoration of voting rights.

After *Beacham*, in *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464, 466 (1981), the Supreme Court "held that a state was entitled to vest the Board of Pardons with 'unfettered discretion' to grant pardons based on 'purely subjective evaluations . . . by those entrusted with the decision,' leaving inmates with only a 'unilateral hope' for pardon." *Hand v. Scott*, 888 F.3d 1206, 1209 (11th Cir. 2018) (quoting *Dumschat*, 452 U.S. at 464-66).

As these and other cases make clear, governmental decisions are not unconstitutionally "arbitrary" merely because they are not made pursuant to specific standards or objective criteria. *Dumschat*, 452 U.S. at 464-66. Indeed, many important governmental decisions—including (to name a few) presidential pardons, congressional declarations of war, and gubernatorial vetoes—are unmoored from any constraints, guidelines, or binding procedures. Plus, so far as federal law is concerned, a state need not have any vote-restoration process, *Richardson*, 418 U.S. at 54, just as it need not have any clemency process in general.

 "Section 2's express approval of the disenfranchisement of felons . . . grants to the states a realm of discretion in the disenfranchisement and reenfranchisement of felons which the states do not possess with respect to limiting the franchise of other citizens." *Shepherd*, 575 F.2d at 1114. Of course, though, the

*Shepherd* court recognized that Section 2 of the Fourteenth Amendment does not "remove[ ] all equal protection considerations from state-created classifications denying the right to vote to some felons while granting it to others. No one would contend that section 2 permits a state to disenfranchise all felons and then reenfranchise only those who are, say, white." *Id*. at 1114.

But the Fifth Circuit also emphasized that the "[Supreme] Court clearly envisioned that a state could grant the right to vote to some persons convicted of a felony while denying it to others." *Id*. And, in light of those principles, *Shepherd* held that a state policy providing for the "selective . . . reenfranchisement of convicted felons" satisfies equal protection if that policy bears "a rational relationship to the achieving of a legitimate state interest." *Id.* at 1114-15.

Mississippi's case-by-case approach to vote restoration in Section 253 is rationally related to those interests. *Shepherd*, 575 F.2d at 1115. Indeed, as this Court has put it, "[a] state properly has an interest in excluding from the franchise persons who have manifested a fundamental antipathy to the criminal laws of the state or of the nation by violating those laws sufficiently important to be classed as felonies." *Shepherd*, 575 F.2d at 1115; *see also Schick v. Reed*, 419 U.S. 256, 265 (1974) ("The very essence of the pardoning power is to treat each case individually."); *id.* at 268

("Individual acts of clemency inherently call for discriminating choices because no two cases are the same.").

Put differently, it is not and cannot be irrational for a vote restoration system to be based on discretion, because well-settled case law holds that discretion is one of the defining characteristics of such a system—be it executive clemency or a legislative suffrage bill.

### B.    Plaintiffs' First Amendment challenge to Section 253 is unavailing.

Plaintiffs maintain that Section 253 "violates the First Amendment by impermissibly vesting government officials with unbridled discretion to determine who may engage in political expression and political association, both fundamental first amendment freedoms implicated by the right to vote." [Dkt. 20-1 at ¶ 4]; *see also* [Dkt. 73 at p. 34] ("Mississippi's suffrage restoration provision is per se unconstitutional. . . .").

Plaintiffs' invocation of the First Amendment does nothing to improve plaintiffs' constitutional challenge to Section 253.  Indeed, this is so for a host of reasons, but the simplest is the one stated by the district court. The First Amendment does not afford greater protection for voting rights than that otherwise found in the Fourteenth Amendment. ROA.19-60662.4879; RE-T.3; *see also Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 n.9 (11th Cir. 1999); *Thompson v. Alabama*, 293 F. Supp. 3d 1313, 1327-28 (M.D. Ala. 2017); *id.* at n.7 (collecting cases).

Stated differently, "[ha]aving lost their right to vote," plaintiffs "now have no cognizable" First Amendment right-to-vote claim "until their voting rights are restored." *Harvey v. Brewer*, 605 F.3d 1067, 1080 (9th Cir. 2010) (O'Connor, J., sitting by designation). Indeed, if it were otherwise, the Supreme Court in *Richardson* should have accepted rather than rejected plaintiffs' contention that "the state's abridgement of their right to vote triggered strict scrutiny." *Shepherd*, 575 F.2d at 1113.

But it didn't. Thus, the addition of the First Amendment to the assortment of constitutional challenges does not carry plaintiffs where they are trying to go.

## V. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT ON PLAINTIFFS' CONSTITUTIONAL CHALLENGES TO ARTCLE 12, SECTION 241 OF THE MISSISSIPPI CONSTITUTION.

The district court reached the right result in dismissing on the merits plaintiffs' challenges to Section 241. However, plaintiffs also lack Article III standing, and the Eleventh Amendment bars their Section 241 claims. Because of this, there is more than one avenue for affirmance of the district court's decision.

### A. Plaintiffs lack Article III standing, and the Eleventh Amendment bars the Section 241 claims against the Secretary.

**Causation**. Plaintiffs' inability to vote due to their respective convictions may be "fairly traceable" to local officials who enforce Mississippi's felon disenfranchisement laws—but not to the Secretary. *Lujan*, 504 U.S. at 560. The

Secretary of State does not enforce Section 241, or the state's other felon disenfranchisement laws.

Indeed, the Secretary has no investigative or prosecutorial duty with regard to any potential violation of any election laws. ROA.19-60662.1135. He has no duty or authority to supervise local election officials in the performance of their obligations under Mississippi law. ROA.19-60662.1132-1133. And he lacks any authority or duty to prohibit convicted felons from registering, or to remove convicted felons from the voter rolls. MISS. CODE ANN. § 23-15-151.

Plaintiffs nevertheless suggested that, because the Secretary of State's Office serves as an information conduit and the chief election officer, the Secretary is the properly named defendant. ROA.19-60662.23. The complaint also mentions that the Secretary maintains the statutorily-prescribed Statewide Elections Management System ("SEMS"). ROA.19-60662.23. SEMS is a centralized and computerized information system that includes the county voter rolls, and programs local officials use to maintain them. *See* MISS. CODE ANN. § 23-15-165. One of its programs filters and maintains felony conviction information uploaded from the Mississippi Administrative Office of Courts. ROA.19-60662-1129-1130, 1133-1135.

When a local county election official logs on to SEMS to register voters or maintain their county voter rolls, SEMS can provide a potential match report showing voters who may have been convicted of a disenfranchising crime. ROA.19-

60662.1129-1130, 1133-1135. It is then up to the local official to gather more information and decide whether or not to take action, if necessary. ROA.19-60662.1128-1130, 1133-1135.

Local officials are solely responsible for maintaining the voter rolls, including denying registration to disqualified felons, removing disqualified felons from the voter rolls, and otherwise. *See* MISS. CODE ANN. §§ 23-15-19, 23-15-151; ROA.19-60662.1138. For Article III purposes, there exists no "causal connection" between the Secretary's conduct and plaintiffs' claimed voting injuries tied to their felony convictions. *Okpalobi*, 244 F.3d at 426. That missing connection compels dismissing their claims.

**Redressability**. Federal equitable relief requiring the Secretary not to "deny citizens the right to vote" based on felony convictions will not remedy their individual injuries as to their challenge to Section 241. ROA.19-60662.60. As established, the Secretary does not enforce Section 241 or the state's other felon disenfranchisement laws. He lacks authority to register voters, to compel local election officials to register voters, or to stop local officials from prohibiting disqualified felons to register or purging felons from the voter rolls. MISS. CODE ANN. § 23-15-33(1); ROA.19-60662.1132-1133, 1138.

Yet plaintiffs claim that they have standing to sue the Secretary because of his "designation as Mississippi's chief election officer for purposes of the National

Voter Registration Act of 1993 ("NVRA") and the Help America Vote Act of 2002 ("HAVA")." ROA.19-60662.3989. But this is not a suit brought under the NVRA.

Further, the NVRA does not create or preserve voting rights—and in fact recognizes the State's right to disenfranchise voters. *See* 52 U.S.C.A. § 20507(a)(3)(B) (formerly 42 U.S.C. § 1973gg–6(a)(3)(B)). So, cases like *Scott v. Schedler*, 771 F.3d 831 (5th Cir. 2014), cited by the district court on page 6 of its opinion, are unhelpful. *Voting for America, Inc. v. Andrade*, 888 F. Supp. 2d 816, 832 (S.D. Tex. 2012), *rev'd on other grounds*, 732 F.3d 382 (5th Cir. 2013), is similar. That case was brought due to violations of the NVRA as well as the constitution. But, in *Andrade*, country registrars were required to "obey" the Secretary of State's "restrictions." *Id.* Here, the Secretary has no duty or authority to supervise local election officials in the performance of their obligations under Mississippi law.

On this point, too, the Secretary does not implement Mississippi's disenfranchisement laws just because he maintains SEMS. Although the district court found it significant that the Secretary "adds [ ] information to SEMS and trains county officials on the next step," ROA.19-60662.4862; RE-T.3, this is an insufficient connection because SEMS contains information but local officials are the ones that use it.

It is up to local officials to gather more information and decide whether or not to take action, if necessary. ROA.19-60662.1129-1130, 1133-1135. Indeed, the Secretary lacks any duty or authority to supervise any county election officials— SEMS or no SEMS. ROA.19-60662.1132-1133. With or without SEMS (or SEMS training), county officials must keep their own "full and complete list, in alphabetical order, of persons convicted of voter fraud or of any crime listed in Section 241," MISS. CODE ANN. § 23-15-151, and are solely responsible for voter registration and maintenance. ROA.19-60662.1138.

In other words, the Secretary and SEMS is just a source of information. *See, e.g., Peterson v. Martinez*, 707 F.3d 1197, 1205-06 (10th Cir. 2013) (Non-resident challenged state concealed carry permit statutes that prohibited non-residents from obtaining permits and sued local sheriff and executive director of state department of public safety. Director had insufficient connection with the statutes' enforcement because, although the director's "maintenance of a database may provide a convenient source for sheriffs seeking information relevant to [the reciprocity system], [ ] *Ex Parte Young* requires a nexus between the defendant and '*enforcement*' of the challenged statute.") (emphasis in original); *City of San Antonio v. Edwards Aquifer Authority*, 2014 WL 12495605, at *6 (W.D. Tex. Mar. 31, 2014) (No standing in claims urged against the Secretary of State because, while the Secretary was the state's "chief election official" with broad authority to protect

citizens' voting rights and order any state election officials to correct their conduct if impeding voters' rights, that is "not enough to confer Article III standing").

*Madera v. Detzner*, 325 F. Supp. 3d 1269 (N.D. Fla. 2018) also does not prove standing here. In that case, the Secretary of State had maintained that he was not the proper defendant because he had "no relevant power over the county supervisors of elections." *Id.* at 1275. But, in *Madera*, the Secretary had the responsibility to "[p]rovide written direction and opinions to the supervisors of elections on the performance of their official duties with respect to . . . rules adopted by the Department of State." *Id.* at 1276 (internal quotations omitted). And, notably, the Secretary had "the responsibility *to enforce* the Department of State's rules *on each county supervisor of elections*." *Id.* (emphasis supplied).

Not so here. The Secretary cannot register plaintiffs to vote, prevent them from registering, or command local officials to do those things. Nor does the Secretary have any "rules" to enforce against any local officials in the first instance.

Plainly put, the Secretary is not a viable target, as plaintiffs contend, just because he "provides Mississippi residents with information on their eligibility to vote at *Y'all Vote*." ROA.19-60662.3997. This is so because he is not a viable target simply because this case involves voting.

**Eleventh Amendment**. The Secretary of State does not enforce Section 241 or the state's other felon disenfranchisement laws. The Secretary cannot register a

voter, deny a voter's registration, or remove a voter from the voter rolls. MISS. CODE ANN. § 23-15-33(1); ROA.19-60662.1132-1133, 1138. He cannot compel local election officials to apply, or not apply, the state's felon disenfranchisement laws when they carry out those duties. ROA.19-60662.1132-1133, 1138.

Absent more particularized duties or enforcement authority regarding the State's felon disenfranchisement laws, *Ex Parte Young* does not reach the Secretary here as to the Section 241 claims. *Morris*, 739 F.3d at 746. Thus, whether it is stated in terms of a lack of traceability, redressability, or "some enforcement connection," each shows plaintiffs' Section 241 claims against the Secretary fail under Article III and/or the Eleventh Amendment.

### B.    Plaintiffs' non-racial equal protection challenge to Section 241 fails.

Plaintiffs claim that Section 241 violates the Fourteenth Amendment. But the challenge to Section 241 brought on equal protection grounds is not one based on any racial intent or motivation. Instead, plaintiffs aver that Section 241 is unconstitutional because Section 2 of the Fourteenth Amendment "only permits states to *temporarily* 'abridge' an individual's right to vote based on his or her 'participation in rebellion, or other crime.'" ROA.19-60662.18 (emphasis supplied). So, according to plaintiffs, permanent disenfranchisement is not permissible under any circumstances and for any felony.

Every court to address the issue, though, flatly disagrees—including the Supreme Court. *See Richardson*, 418 U.S. at 43-52. Further, plaintiffs recognize that *Richardson* is a problem for them. ROA.19-60662.55 (noting the claim is asserted for "for preservation purposes."); ROA.19-60662.3139-3140 (stating that "the Hopkins Plaintiffs present these arguments to preserve the issue for appeal").

Because of this, plaintiffs try to get around *Richardson* by offering a different construction of Section 2 of the Fourteenth Amendment. But the text of the Fourteenth Amendment hasn't changed since *Richardson*. Thus, plaintiffs' argument amounts to nothing more than a disagreement with the U.S. Supreme Court's reading of the Constitution.

The district court was thus correct to reject plaintiffs' arguments because *Richardson*'s "holding is squarely on point." ROA.19-60662.4876; RE-T.3. Like the instant challenge, the *Richardson* case involved a nonracial, equal protection challenge by three ex-felons, whose terms of imprisonment and parole had expired, to provisions of the California Constitution and implementing statutes that permanently disenfranchised persons convicted of an "infamous crime." *Richardson*, 418 U.S. at 26-27. The Supreme Court of California upheld this challenge, *id.* at 34-35, and the Supreme Court reversed that ruling, *id.* at 56.

In doing so, the Court concluded "that those who framed and adopted the Fourteenth Amendment could not have intended to prohibit outright in § 1 of that

Amendment that [ (i.e., felon disenfranchisement) ] which was expressly exempted from the lesser sanction of reduced representation imposed by § 2 of the Amendment." *Richardson*, 418 U.S. at 43, 55. The Court thus held that California could constitutionally "exclude from the franchise convicted felons who have completed their sentences and paroles." *Id.* at 56.

Importantly, *Richardson* framed the issue as one presenting the "*denial* of the franchise" to felons who had "completed their sentence." *Id.* at 33, 56 (emphasis supplied). Indeed, the Court concluded that "the *exclusion* of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment." *Id.* at 54 (emphasis supplied); *see also id.* at 53 ("Although the Court has never given plenary consideration to the precise question of whether a State may constitutionally *exclude* some or all convicted felons from the franchise, we have indicated approval of such *exclusion*s on a number of occasions.") (emphasis supplied).

Other arguments advanced by plaintiffs here also were squarely before and rejected by *Richardson*. For example, plaintiffs contend that Mississippi's disenfranchisement law "is subject to strict scrutiny." ROA.19-60662.3135. But, as the district court put it, "[t]he plaintiffs in *Richardson v. Ramirez* said the same thing." ROA.19-60662.4875; RE-T.3.

*Richardson* has never been overruled, and no other court has retreated from it. In fact, the opposite. "Several courts [in addition to *Richardson*] have recognized

the propriety of excluding felons from the franchise." *Johnson*, 405 F.3d at 1225; *see, e.g.*, *Green,* 380 F.2d at 450–52; *Shepherd*, 575 F.2d at 1114; *Hayden v. Pataki,* 449 F.3d 305, 315 (2d Cir. 2006) ("The Supreme Court has ruled that, as a result of [§ 2], felon disenfranchisement provisions are presumptively constitutional."); *Hayden*, 594 F.3d at 164–69; *Harvey*, 605 F.3d at 1079 ("That is, once a felon is properly disenfranchised a state is at liberty to keep him in that status indefinitely and never revisit that determination.") (citing *Richardson*, 418 U.S. at 26–27).

*Richardson* thus forecloses plaintiffs' non-racial Fourteenth Amendment challenge to Section 241.

### C.    Plaintiffs' claim that felony disenfranchisement violates the Eighth Amendment is a non-starter.

Plaintiffs also contend that "Section 241's lifetime disenfranchisement provision, effectively a lifetime voting ban, violates the Eight Amendment[.]" ROA.19-60662.17. According to these plaintiffs, felon disenfranchisement cannot be imposed for any felony because of the Eighth Amendment's prohibition on cruel and unusual punishment.

Not so. In fact, such a theory fails for the straightforward reason stated by the district court. That is, to accept plaintiffs' argument at all, "the Court would have to conclude that the same Constitution that recognizes felon disenfranchisement under § 2 of the Fourteenth Amendment also prohibits disenfranchisement under other

amendments," such as the Eighth Amendment. *Farrakhan v. Locke*, 987 F. Supp. 1304, 1314 (E.D. Wash. 1997) *rev'd in part on other grounds*, 338 F.3d 1009 (9th Cir. 2003).

Plaintiffs' argument presents both a legally and practically flawed rationale. Indeed, it certainly would be anomalous to say that Section 2 of the Fourteenth Amendment permits permanent disenfranchisement for all felonies, but the Eighth Amendment precludes Mississippi from having a law that contemplates permanent disenfranchisement for some felonies. This is especially so given that the Eighth Amendment's proscription of cruel and unusual punishments is made applicable to the states by the Fourteenth Amendment. *Robinson v. State of California*, 370 U.S. 660, 667 (1962).

Mississippi's felon disenfranchisement laws do not implicate the Eighth Amendment—nor do they run afoul of it even if they did. The district court correctly granted summary judgment to the Secretary on this claim, and this Court should affirm.

## CONCLUSION

This Court should affirm the district court's dismissal of plaintiffs' constitutional challenges to Article 12, Section 241 of the Mississippi Constitution, it should affirm the district court's dismissal of plaintiffs' non-racial equal protection and First Amendment challenges to Article 12, Section 253.

However, the plaintiffs' race-based equal protection challenge to Section 253 fails as a matter of law. This Court should thus reverse and remand the district court's decision as to plaintiffs' race-based equal protection challenge to Section 253, with instructions to the district court to dismiss plaintiffs' lawsuit in its entirety and enter a judgment in conformity with Federal Rule of Civil Procedure 23(c)(3)(A).

Respectfully submitted,

**SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity**

**BY:  JIM HOOD, ATTORNEY GENERAL**

By:    _/s/ *Krissy C. Nobile*_____
Justin L. Matheny (Bar No. 100754)
Krissy C. Nobile (Bar No. 103577)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3824
jmath@ago.ms.gov
knobi@ago.ms.gov

*Counsel for Secretary of State Delbert Hosemann, in his official capacity*

## **CERTIFICATE OF SERVICE**

I, Krissy C. Nobile, certify that I electronically filed this brief with the Clerk of the Court, using the electronic filing system, which sent notification of such filing to all counsel of record.

Dated: October 17, 2019.

*/s/ Krissy C. Nobile*

Krissy C. Nobile

Counsel for the Secretary of State

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This brief complies with word limitations of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32, it contains 12,510 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully submitted,

*/s/ Krissy C. Nobile*
Krissy C. Nobile
Counsel for the Secretary of State