No. 19-60662

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

DENNIS HOPKINS, individually and on behalf of a class of all others similarly situated; HERMAN PARKER, JR., individually and on behalf of a class of all others similarly situated; WALTER WAYNE KUHN, JR., individually and on behalf of a class of all others similarly situated; BYRON DEMOND COLEMAN, individually and on behalf of a class of all others similarly situated; JON O'NEAL, individually and on behalf of a class of all others similarly situated; EARNEST WILLHITE, individually and on behalf of a class of all others similarly situated,

*Plaintiffs-Appellees*

V.

SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity,

*Defendant-Appellant*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Consolidated with 19-60678

DENNIS HOPKINS, individually and on behalf of a class of all others similarly situated; HERMAN PARKER, JR., individually and on behalf of a class of all others similarly situated; WALTER WAYNE KUHN, JR., individually and on behalf of a class of all others similarly situated; JON O'NEAL, individually and on behalf of a class of all others similarly situated; EARNEST WILLHITE, individually and on behalf of a class of all others similarly situated; BYRON DEMOND COLEMAN, individually and on behalf of a class of all others similarly situated,

*Plaintiffs - Appellees Cross-Appellants*

V.

SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity,

*Defendant - Appellant Cross-Appellee*

Case: 19-60662     Document: 48-1     Page: 2     Date Filed: 10/16/2019

---

**On Appeal from the United States District Court
for the Southern District of Mississippi**

---

## RECORD EXCERPTS OF DEFENDANT-APPELLANT CROSS-APPELLEE SECRETARY OF STATE HOSEMANN

Krissy C. Nobile, MSB # 103577
Justin L. Matheny, MSB # 100754
STATE OF MISSISSIPPI
ATTORNEY GENERAL'S OFFICE
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3824
knobi@ago.ms.gov
jmath@ago.ms.gov

*Counsel for Defendant-Appellant Cross-Appellee
Secretary of State Delbert Hosemann*

# RECORD EXCERPTS
## TABLE OF CONTENTS

| TAB | | RECORD CITATION |
|---|---|---|
| 1. | Docket Sheet, No. 3:18cv188 | 19-60662.1-13 |
| 2. | Docket Sheet, No. 3:17cv791 | 19-60662.549-574 |
| 3. | District Court Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, Denying Hopkins Plaintiffs' Motion for Summary Judgment, and Certifying Order for Interlocutory Appeal | 19-60662.4857-4885 |
| 4. | Notice of Appeal, No. 19-60662 | 19-60662.514-515 |
| 5. | Petition for Interlocutory Appeal (Docketed as Defendant-Appellant Cross-Appellee's Notice of Appeal, No. 19-60678) | 19-60662.312-369 |
| 6. | Petition for Interlocutory Appeal (Docketed as Plaintiffs-Appellees Cross-Appellants' Cross-Notice of Appeal, No. 19-60678) | 19-60662.445-513 |
| 7. | Fifth Circuit Order Granting Motions for Leave Appeal from Interlocutory Order | 19-60662.534-535 |
| 8. | Defendant's Itemization of Undisputed Material Facts and Supporting Evidence | 19-60662.1086-1113 |

**Tab 1**

STAY,APPEAL

# U.S. District Court
## Southern District of Mississippi (Northern (Jackson))
## CIVIL DOCKET FOR CASE #: 3:18-cv-00188-DPJ-FKB
## Internal Use Only

Hopkins et al v. Hosemann
Assigned to: Chief District Judge Daniel P. Jordan, III
Referred to: Magistrate Judge F. Keith Ball
 Related Case:  3:17-cv-00791-DPJ-FKB
 Case in other court:  USCA, 19-60662
Cause: 42:1983 Civil Rights Act

Date Filed: 03/27/2018
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**Plaintiff**

**Dennis Hopkins**
*individually and on behalf of a class of all*
*others similarly situated*

represented by **Caren E. Short - PHV**
SOUTHERN POVERTY LAW CENTER -
Decatur
150 East Ponce de Leon Ave., Suite 340
Decatur, GA 30030
404-221-5868
Fax: 404-221-5857
Email: caren.short@splcenter.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Janet A. Gochman - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-2815
Fax: 212/455-2502
Email: jgochman@stblaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
SOUTHERN POVERTY LAW CENTER -
Jackson
111 East Capitol Street, Suite 280
Jackson, MS 39201
601/948-8882
Fax: 601/948-8885
Email: JodyOwens@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nancy G. Abudu - PHV**
SOUTHERN POVERTY LAW CENTER -
Decatur

150 East Ponce de Leon Ave., Suite 340
Decatur, GA 30030
786-376-5311
Fax: 404-221-5857
Email: nancey.abudu@splcenter.org
*(Inactive)*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-3869
Fax: 212/455-2502
Email: irethy@stblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-3539
Fax: 212/455-2502
Email: jyoungwood@stblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**
SOUTHERN POVERTY LAW CENTER -
New Orleans
201 St. Charles Ave., Suite 2000
New Orleans, LA 70170
504/486-8982
Fax: 504/486-8947
Email: lisa.graybill@splcenter.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-2036
Fax: 212/876-5343
Email: nchoudhri@stblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
SOUTHERN POVERTY LAW CENTER -

Jackson
111 East Capitol Street, Suite 280
Jackson, MS 39201
601/948-8882
Fax: 601/948-8885
Email: paloma.wu@splcenter.org
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-2652
Fax: 212/455-2502
Email: tyler.anger@stblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Herman Parker, Jr.**
*individually and on behalf of a class of all
others similarly situated*

represented by **Caren E. Short - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Janet A. Gochman - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nancy G. Abudu - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Walter Wayne Kuhn, Jr.**
*individually and on behalf of a class of all others similarly situated*

represented by  **Caren E. Short - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Janet A. Gochman - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nancy G. Abudu - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Byron Demond Coleman**                    represented by    **Caren E. Short - PHV**
*individually and on behalf of a class of all*                          (See above for address)
*others similarly situated*                                                    *LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Janet A. Gochman - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nancy G. Abudu - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jon O'Neal**                           represented by   **Caren E. Short - PHV**
*individually and on behalf of a class of all*              (See above for address)
*others similarly situated*                                *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Janet A. Gochman - PHV**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jody E. Owens , II**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Nancy G. Abudu - PHV**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Isaac Rethy - PHV**
                                                           (See above for address)
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Jonathan K. Youngwood - PHV**
                                                           (See above for address)
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Lisa S. Graybill - PHV**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Earnest Willhite**                          represented by   **Caren E. Short - PHV**
*individually and on behalf of a class of all*                   (See above for address)
*others similarly situated*                                      *LEAD ATTORNEY*
                                                                *PRO HAC VICE*
                                                                *ATTORNEY TO BE NOTICED*

                                                            **Janet A. Gochman - PHV**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jody E. Owens , II**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Nancy G. Abudu - PHV**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Isaac Rethy - PHV**
                                                            (See above for address)
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jonathan K. Youngwood - PHV**
                                                            (See above for address)
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Lisa S. Graybill - PHV**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Secretary of State Delbert Hosemann**
*in his official capacity*

represented by **Justin L. Matheny-State Gov**
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
P. O. Box 220
550 High Street (39201)
Jackson, MS 39205-0220
601-359-3825
Fax: 601-359-2003
Email: jmath@ago.state.ms.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Krissy C. Nobile**
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
550 High Street, Suite 1100
P. O. Box 220
Jackson, MS 39205
601-359-3824
Fax: 601-359-2003
Email: knobi@ago.state.ms.us
*ATTORNEY TO BE NOTICED*

Email All Attorneys

| Date Filed | # | Docket Text |
|------------|-----|-------------|
| 03/27/2018 | 1 (p.14) | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF against Delbert Hosemann ( Filing fee $ 400 receipt number 34643049466), filed by Earnest Willhite, Dennis Hopkins, Byron Demond Coleman, Walter Wayne Kuhn, Jr, Herman Parker, |

| | | |
|---|---|---|
| | | Jr, Jon O'Neal. (Attachments: # 1 (p.14) Civil Cover Sheet)(cwl) (Entered: 03/27/2018) |
| 03/27/2018 | | (Court only) ***Set LRA Flags (cwl) (Entered: 03/27/2018) |
| 03/27/2018 | 2 (p.65) | Summons Issued as to Delbert Hosemann. (cwl) (Entered: 03/27/2018) |
| 03/28/2018 | 3 (p.66) | NOTICE of Appearance by Paloma Wu on behalf of All Plaintiffs (Wu, Paloma) (Entered: 03/28/2018) |
| 03/28/2018 | 4 (p.68) | SUMMONS Returned Executed by Earnest Willhite, Dennis Hopkins, Byron Demond Coleman, Walter Wayne Kuhn, Jr, Herman Parker, Jr, Jon O'Neal. Delbert Hosemann served on 3/27/2018, answer due 4/17/2018. (Owens, Jody) (Entered: 03/28/2018) |
| 03/28/2018 | 5 | ***ERROR***DISRGARD THIS ENTRY. MOTION for Jonathan K. Youngwood to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3670908) by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit A Supplement in Response to Question B, # 2 (p.65) Exhibit B Certificate of Good Standing)(Owens, Jody) Modified on 3/28/2018 (cwl). (Entered: 03/28/2018) |
| 03/28/2018 | 6 | ***ERROR***DISRGARD THIS ENTRY. MOTION for Isaac Rethy to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3670925) by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit A Supplement in Response to Question B, # 2 (p.65) Exhibit B Certificate of Good Standing)(Owens, Jody) Modified on 3/28/2018 (cwl). (Entered: 03/28/2018) |
| 03/28/2018 | 7 | ***ERROR***DISRGARD THIS ENTRY. MOTION for Tyler A. Anger to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3670934) by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit A Supplement in Response to Question B, # 2 (p.65) Exhibit B Certificate of Good Standing)(Owens, Jody) Modified on 3/28/2018 (cwl). (Entered: 03/28/2018) |
| 03/28/2018 | 8 | ***ERROR***DISRGARD THIS ENTRY. MOTION for Nihara K. Choudhri to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3670941) by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit A Supplement in Response to Question B, # 2 (p.65) Exhibit B Certificate of Good Standing)(Owens, Jody) Modified on 3/28/2018 (cwl). (Entered: 03/28/2018) |
| 03/28/2018 | | DOCKET ANNOTATION as to # 5 , 6 , 7 and 8 : Any PDF fillable on-line forms once completed should be electronically converted to PDF by printing to the PDF printer. Save the file with an appropriate name in a folder. E-file the electronically converted PDF form, not the form which was filled in and saved. Motions 5, 6, 7, and 8 termed. (cwl) (Entered: 03/28/2018) |
| 03/28/2018 | 9 (p.70) | MOTION for Jonathan K. Youngwood to Appear Pro Hac Vice by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit A Supplement in Response to Question B, # 2 (p.65) Exhibit B Certificate of Good Standing)(Owens, Jody) (Entered: 03/28/2018) |
| 03/28/2018 | | |

| | | |
|---|---|---|
| | **10**<br>(p.80) | MOTION for Isaac Rethy to Appear Pro Hac Vice by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit A Supplement in Response to Question B, # 2 (p.65) Exhibit B Certificate of Good Standing)(Owens, Jody) (Entered: 03/28/2018) |
| 03/28/2018 | **11**<br>(p.90) | MOTION for Tyler A. Anger to Appear Pro Hac Vice by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit A Supplement in Response to Question B, # 2 (p.65) Exhibit B Certificate of Good Standing)(Owens, Jody) (Entered: 03/28/2018) |
| 03/28/2018 | **12**<br>(p.100) | MOTION for Nihara K. Choudhri to Appear Pro Hac Vice by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit A Supplement in Response to Question B, # 2 (p.65) Exhibit B Certificate of Good Standing)(Owens, Jody) (Entered: 03/28/2018) |
| 03/28/2018 | | (Court only) ***Motions terminated: 5 MOTION for Jonathan K. Youngwood to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3670908) filed by Walter Wayne Kuhn, Jr., Herman Parker, Jr., Jon O'Neal, Earnest Willhite, Byron Demond Coleman, Dennis Hopkins, 7 MOTION for Tyler A. Anger to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3670934) filed by Walter Wayne Kuhn, Jr., Herman Parker, Jr., Jon O'Neal, Earnest Willhite, Byron Demond Coleman, Dennis Hopkins, 8 MOTION for Nihara K. Choudhri to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3670941) filed by Walter Wayne Kuhn, Jr., Herman Parker, Jr., Jon O'Neal, Earnest Willhite, Byron Demond Coleman, Dennis Hopkins, 6 MOTION for Isaac Rethy to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3670925) filed by Walter Wayne Kuhn, Jr., Herman Parker, Jr., Jon O'Neal, Earnest Willhite, Byron Demond Coleman, Dennis Hopkins. (cwl) (Entered: 03/28/2018) |
| 03/29/2018 | **13**<br>(p.110) | MOTION for Lisa S. Graybill to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3672424) by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit A Supplement in Response to Question B, # 2 (p.65) Exhibit B Certificate of Good Standing)(Owens, Jody) (Entered: 03/29/2018) |
| 04/02/2018 | | TEXT-ONLY ORDER granting 9 (p.70) Motion to Appear Pro Hac Vice; granting 10 (p.80) Motion to Appear Pro Hac Vice; granting 11 (p.90) Motion to Appear Pro Hac Vice; granting 12 (p.100) Motion to Appear Pro Hac Vice; granting and 13 (p.110) Motion to Appear Pro Hac Vice. Signed by Magistrate Judge Linda R. Anderson on 4/02/2018. No further written order will issue. (WG) (Entered: 04/02/2018) |
| 04/02/2018 | | (Court only) ***Attorney Jonathan K. Youngwood - PHV,Isaac Rethy - PHV,Tyler A. Anger - PHV,Nihara Karim Choudhri - PHV,Lisa S. Graybill - PHV for Byron Demond Coleman,Jonathan K. Youngwood - PHV,Isaac Rethy - PHV,Tyler A. Anger - PHV,Nihara Karim Choudhri - PHV,Lisa S. Graybill - PHV for Dennis Hopkins,Jonathan K. Youngwood - PHV,Isaac Rethy - PHV,Tyler A. Anger - PHV,Nihara Karim Choudhri - PHV,Lisa S. Graybill - PHV for Walter Wayne Kuhn, Jr,Jonathan K. Youngwood - PHV,Isaac Rethy - PHV,Tyler A. Anger - PHV,Nihara Karim Choudhri - PHV,Lisa S. Graybill - PHV for Jon O'Neal,Jonathan K. Youngwood - PHV,Isaac Rethy - PHV,Tyler A. Anger - PHV,Nihara Karim Choudhri - PHV,Lisa S. Graybill - PHV for Herman Parker, Jr,Jonathan K. Youngwood - PHV,Isaac Rethy - PHV,Tyler A. Anger - PHV,Nihara Karim Choudhri - PHV,Lisa S. Graybill - PHV for Earnest Willhite added. (cwl) (Entered: 04/02/2018) |

| 04/05/2018 | 14 (p.121) | NOTICE of Appearance by Justin L. Matheny-State Gov on behalf of Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 04/05/2018) |
|---|---|---|
| 04/05/2018 | 15 (p.123) | NOTICE *Notice of Filing Motion for Consolidation in Harness v. Hosemann* by Delbert Hosemann (Attachments: # 1 (p.14) Exhibit 1 - Harness Motion for Consolidation, # 2 (p.65) Exhibit 2 - Harness Memorandum Supporting Motion for Consolidation)(Matheny-State Gov, Justin) (Entered: 04/05/2018) |
| 04/17/2018 | 16 (p.199) | ANSWER to 1 (p.14) Complaint, by Delbert Hosemann.(Matheny-State Gov, Justin) (Entered: 04/17/2018) |
| 04/19/2018 | 17 (p.223) | Rule 16(a) Initial Order Telephonic Case Management Conference set for 5/21/2018 03:30 PM before Magistrate Judge Linda R. Anderson. No later than seven (7) days prior to the TCMC, a confidential memorandum AND a proposed Case Management Order shall be submitted via e-mail to anderson_chambers@mssd.uscourts.gov. Counsel for Plaintiff shall initiate the conference call; and once all parties are on the line, contact the Court at 601-608-4440. (WG) (Entered: 04/19/2018) |
| 05/08/2018 | 18 (p.226) | MOTION for Janet A. Gochman to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3707906) by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit 1 Certificate of Good Standing)(Owens, Jody) (Entered: 05/08/2018) |
| 05/09/2018 |  | TEXT-ONLY ORDER granting 18 (p.226) Motion to Appear Pro Hac Vice of JANET A. GOCHMAN. Signed by Magistrate Judge Linda R. Anderson on 5/9/2018. No further written order will issue. (WG) (Entered: 05/09/2018) |
| 05/09/2018 |  | (Court only) ***Attorney Janet A. Gochman - PHV for Byron Demond Coleman,Janet A. Gochman - PHV for Dennis Hopkins,Janet A. Gochman - PHV for Walter Wayne Kuhn, Jr,Janet A. Gochman - PHV for Jon O'Neal,Janet A. Gochman - PHV for Herman Parker, Jr,Janet A. Gochman - PHV for Earnest Willhite added. (ND) (Entered: 05/09/2018) |
| 05/10/2018 | 19 (p.234) | NOTICE of Service of *Plaintiffs' Initial* Disclosure by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 05/10/2018) |
| 05/21/2018 |  | Minute Entry for proceedings held before Magistrate Judge Linda R. Anderson: Telephonic Case Management Conference convened on 5/21/2018. Appearances: Janet Gochman, Paloma Wu, Jody Owens II, Nihara Choudhri, Johnathan Youngwood and Justin Matheny. Court discussed case with parties. There is presently pending a Motion to Consolidate this case with civil action 3:17cv791. Court will reschedule the telephonic case management conference after a ruling has been made on the Motion to Consolidate if appropriate. (WG) (Entered: 05/22/2018) |
| 06/25/2018 | 20 (p.236) | NOTICE of Service of Disclosure by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 06/25/2018) |
| 08/07/2019 | 21 (p.238) | ORDER STAYING CASE, Case association terminated to: 3:17-cv-00791-DPJ-FKB. Signed by Chief District Judge Daniel P. Jordan, III on 8/7/19 (LAT) (Entered: 08/07/2019) |
| 08/07/2019 |  | (Court only) ***Staff notes: Per Chambers, the cases are no longer consolidated. (LAT) (Entered: 08/07/2019) |
| 08/14/2019 | 22 | MOTION for Caren E. Short to Appear Pro Hac Vice (Paid $100 PHV fee; receipt |

| | | |
|---|---|---|
| | (p.267) | number 0538-4060698) by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 08/14/2019) |
| 08/14/2019 | 23 (p.277) | MOTION for Nancy G. Abudu to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-4060715) by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 08/14/2019) |
| 08/15/2019 | | DOCKET ANNOTATION as to 22 (p.267) and 23 (p.277) : Motions and exhibits are filed as one main document. Exhibits should be scanned separately and docketed as properly identified attachments to the main document within the same docket entry.Attorney is directed to follow this procedure in future filings. L.U.Civ.R. 7.(b)(2). (KNS) (Entered: 08/15/2019) |
| 08/15/2019 | 24 (p.287) | ***ERROR*** DISREGARD THIS ENTRY*** MOTION for Caren E. Short to Appear Pro Hac Vice by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit Client List, # 2 (p.65) Exhibit Certificate of Good Standing)(Wu, Paloma) Modified on 8/15/2019 (KNS). (Entered: 08/15/2019) |
| 08/15/2019 | 25 (p.297) | ***ERROR***DISREGARD THIS ENTRY*** MOTION for Nancy G. Abudu to Appear Pro Hac Vice by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.14) Exhibit Client List, # 2 (p.65) Exhibit Certificate of Good Standing)(Wu, Paloma) Modified on 8/15/2019 (KNS). (Entered: 08/15/2019) |
| 08/15/2019 | | DOCKET ANNOTATION as to 24 (p.287) and 25 (p.297) : These documents appear to be duplicate filings. Therefore, Docs. 24 and 25 should be disregarded. (KNS) (Entered: 08/15/2019) |
| 08/15/2019 | | (Court only) ***Motions terminated: 25 (p.297) MOTION for Nancy G. Abudu to Appear Pro Hac Vice filed by Walter Wayne Kuhn, Jr., Herman Parker, Jr., Jon O'Neal, Earnest Willhite, Byron Demond Coleman, Dennis Hopkins, 24 (p.287) MOTION for Caren E. Short to Appear Pro Hac Vice filed by Walter Wayne Kuhn, Jr., Herman Parker, Jr., Jon O'Neal, Earnest Willhite, Byron Demond Coleman, Dennis Hopkins. (KNS) (Entered: 08/15/2019) |
| 08/15/2019 | 26 (p.307) | NOTICE of Appearance by Krissy C. Nobile on behalf of Delbert Hosemann (Nobile, Krissy) (Entered: 08/15/2019) |
| 08/19/2019 | | (Court only) ***Set/Clear Flags: set FKB flag and cleared LRA flag. (JEJ) (Entered: 08/19/2019) |
| 08/19/2019 | | TEXT-ONLY ORDER granting 22 (p.267) Motion to Appear Pro Hac Vice; granting 23 (p.277) Motion to Appear Pro Hac Vice. That Caren E. Short and Nancy G. Abudu be admitted pro hac vice in this case on behalf of the plaintiffs in association with local counsel and upon registration for electronic filing as required by the Court. No further written order shall issue from the Court. Signed by Magistrate Judge F. Keith Ball on 8/19/2019 (JEJ) (Entered: 08/19/2019) |
| 08/19/2019 | 27 (p.309) | NOTICE OF INTERLOCUTORY APPEAL by Delbert Hosemann. (Attachments: # 1 (p.14) Exhibit A - Petition for Permission to Appeal under Fed. R. App. P. 5 and 28 U.S.C. § 1292(b))(Nobile, Krissy) (Entered: 08/19/2019) |
| 08/19/2019 | | |

| | | |
|---|---|---|
| | <u>28</u><br>(p.370) | NOTICE *of Filing Petition for Permission to Appeal* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # <u>1 (p.14)</u> Exhibit A_Petition for Permission to Appeal)(Wu, Paloma) (Entered: 08/19/2019) |
| 08/19/2019 | <u>29</u><br>(p.442) | NOTICE *Amended Notice of Filing Petition for Permission to Appeal* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite re <u>28 (p.370)</u> Notice (Other), (Attachments: # <u>1 (p.14)</u> Exhibit A_Petition for Permission to Appeal)(Wu, Paloma) (Entered: 08/19/2019) |
| 08/19/2019 | | (Court only) ***Attorney Caren E. Short - PHV,Nancy G. Abudu - PHV for Byron Demond Coleman,Caren E. Short - PHV,Nancy G. Abudu - PHV for Dennis Hopkins,Caren E. Short - PHV,Nancy G. Abudu - PHV for Walter Wayne Kuhn, Jr,Caren E. Short - PHV,Nancy G. Abudu - PHV for Jon O'Neal,Caren E. Short - PHV,Nancy G. Abudu - PHV for Herman Parker, Jr,Caren E. Short - PHV,Nancy G. Abudu - PHV for Earnest Willhite added. (KNS) (Entered: 08/20/2019) |
| 09/03/2019 | <u>30</u><br>(p.514) | NOTICE OF APPEAL as to <u>21 (p.238)</u> Order Staying Case, Terminate Case Associations by Delbert Hosemann. Filing fee $ 505, receipt number 0538-4078799. Appeal Record due by 10/8/2019 (Matheny-State Gov, Justin) (Entered: 09/03/2019) |
| 09/09/2019 | <u>31</u><br>(p.516) | USCA Letter in re USCA Case Number 19-60662 for <u>30 (p.514)</u> Notice of Appeal filed by Delbert Hosemann. (ND) (Entered: 09/09/2019) |

**Tab 2**

CLOSED,APPEAL,FKB

# U.S. District Court
## Southern District of Mississippi (Northern (Jackson))
## CIVIL DOCKET FOR CASE #: 3:17-cv-00791-DPJ-FKB
## Internal Use Only

Harness et al v. Hosemann
Assigned to: District Judge Daniel P. Jordan, III
Referred to: Magistrate Judge F. Keith Ball
 Related Case:  3:18-cv-00188-DPJ-FKB
 Case in other court:  USCA, 5th Circuit, 19-60632
Cause: 42:1983 Civil Rights Act

Date Filed: 09/28/2017
Date Terminated: 08/07/2019
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

**Plaintiff**

**Roy Harness**                                            represented by   **Armand G. Derfner - PHV**
DERFNER & ALTMAN, LLC
575 King Street, Suite B
Charleston, SC 29403
843/723-9804
Fax: 843/723-7446
Email: aderfner@derfneraltman.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert B. McDuff**
THE LAW OFFICE OF ROBERT MCDUFF
767 North Congress Street
Jackson, MS 39202
601/969-0802
Fax: 601/969-0804
Email: RBM@McDuffLaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Beth L. Orlansky**
MISSISSIPPI CENTER FOR JUSTICE -
Jackson
P. O. Box 1023
5 Old River Place, Ste. 203 (39202)
Jackson, MS 39215-1023
601/352-2269
Fax: 601/352-4769
Email: borlansky@mscenterforjustice.org
*ATTORNEY TO BE NOTICED*

**David Michael Lipman**
LIPMAN LAW FIRM
5915 Ponce De Leon Blvd., Suite 44
Miami, FL 33146
(305) 662-2600

Fax: (305)667-3361
Email: dmlipman@aol.com
*ATTORNEY TO BE NOTICED*

**Fred L. Banks , Jr.**
PHELPS DUNBAR, LLP - Jackson
P. O. Box 16114
4270 I-55 North (39211)
Jackson, MS 39236-6114
601/352-2300
Fax: 601/360-9777
Email: banksf@phelps.com
*ATTORNEY TO BE NOTICED*

**Jeremy D. Eisler**
MISSISSIPPI CENTER FOR JUSTICE -
Biloxi
963 Division Street
Biloxi, MS 39530
228-435-7284
Fax: 228/435-7285
Email: jeisler@mscenterforjustice.org
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
SOUTHERN POVERTY LAW CENTER -
Jackson
111 East Capitol Street, Suite 280
Jackson, MS 39201
601/948-8882
Fax: 601/948-8885
Email: paloma.wu@splcenter.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kamal Karriem**                    represented by    **Armand G. Derfner - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert B. McDuff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Beth L. Orlansky**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Lipman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Fred L. Banks , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeremy D. Eisler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gabrielle Jones**
*TERMINATED: 09/12/2018*

represented by **Armand G. Derfner - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert B. McDuff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Beth L. Orlansky**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Lipman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Fred L. Banks , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeremy D. Eisler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Freddie James Keyes**
*TERMINATED: 09/12/2018*

represented by **Armand G. Derfner - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert B. McDuff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Beth L. Orlansky**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Michael Lipman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Fred L. Banks , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeremy D. Eisler**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Consol Plaintiff**

**Dennis Hopkins**                    represented by   **Janet A. Gochman - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-2815
Fax: 212/455-2502
Email: jgochman@stblaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
SOUTHERN POVERTY LAW CENTER -
Jackson
111 East Capitol Street, Suite 280
Jackson, MS 39201
601/948-8882
Fax: 601/948-8885
Email: JodyOwens@gmail.com
*TERMINATED: 09/19/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-3869

Fax: 212/455-2502
Email: irethy@stblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-3539
Fax: 212/455-2502
Email: jyoungwood@stblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**
SOUTHERN POVERTY LAW CENTER -
New Orleans
201 St. Charles Ave., Suite 2000
New Orleans, LA 70170
504/486-8982
Fax: 504/486-8947
Email: lisa.graybill@splcenter.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-2036
Fax: 212/876-5343
Email: nchoudhri@stblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-2652
Fax: 212/455-2502
Email: tyler.anger@stblaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Herman Parker, Jr.**                    represented by

**Janet A. Gochman - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
(See above for address)
*TERMINATED: 09/19/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Walter Wayne Kuhn, Jr.**                    represented by   **Janet A. Gochman - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
(See above for address)
*TERMINATED: 09/19/2019*
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Byron Demond Coleman**                    represented by    **Janet A. Gochman - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
(See above for address)
*TERMINATED: 09/19/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Jon O'Neal**                           represented by   **Janet A. Gochman - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
(See above for address)
*TERMINATED: 09/19/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Earnest Willhite**                    represented by    **Janet A. Gochman - PHV**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jody E. Owens , II**
(See above for address)
*TERMINATED: 09/19/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Isaac Rethy - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan K. Youngwood - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa S. Graybill - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nihara Karim Choudhri - PHV**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paloma Wu**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler A. Anger - PHV**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Delbert Hosemann**<br>*Secretary of State of Mississippi* | represented by | **Justin L. Matheny-State Gov**<br>MISSISSIPPI ATTORNEY GENERAL'S<br>OFFICE<br>P. O. Box 220<br>550 High Street (39201)<br>Jackson, MS 39205-0220<br>601-359-3825<br>Fax: 601-359-2003<br>Email: jmath@ago.state.ms.us<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Krissy C. Nobile**
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
550 High Street, Suite 1100
P. O. Box 220
Jackson, MS 39205
601-359-3824
Fax: 601-359-2003
Email: knobi@ago.ms.gov
*ATTORNEY TO BE NOTICED*

**Intervenor**

| | | |
|---|---|---|
| **Dennis Hopkins** | represented by | **Paloma Wu**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Intervenor**

| | | |
|---|---|---|
| **Herman Parker, Jr.** | represented by | **Paloma Wu**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Intervenor**

| | | |
|---|---|---|
| **Walter Wayne Kuhn, Jr.** | represented by | **Paloma Wu**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Intervenor**

| | | |
|---|---|---|
| **Byron Demond Coleman** | represented by | **Paloma Wu**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Intervenor**

**Jon O'Neal**                              represented by  **Paloma Wu**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*


**Intervenor**

**Earnest Willhite**                        represented by  **Paloma Wu**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*


Email All Attorneys

| Date Filed | # | Docket Text |
|---|---|---|
| 09/28/2017 | 1 (p.575) | COMPLAINT against Delbert Hosemann ( Filing fee $ 400 receipt number 0538-3543597), filed by Roy Harness, Kamal Karriem, Gabrielle Jones. (Attachments: # 1 (p.575) Civil Cover Sheet)(cwl) (Entered: 09/28/2017) |
| 09/28/2017 | | (Court only) ***Set FKB, NO_CMC Flags (cwl) (Entered: 09/28/2017) |
| 09/28/2017 | 2 (p.599) | Summons Issued as to Delbert Hosemann. (cwl) (Entered: 09/28/2017) |
| 09/29/2017 | 3 | ***ERROR***DISREGARD THIS ENTRY. NOTICE of Appearance by Beth L. Orlansky on behalf of All Plaintiffs (Orlansky, Beth) Modified on 9/29/2017 (cwl). (Entered: 09/29/2017) |
| 09/29/2017 | 4 (p.600) | NOTICE of Appearance by Beth L. Orlansky on behalf of All Plaintiffs (Orlansky, Beth) (Entered: 09/29/2017) |
| 09/29/2017 | 5 (p.601) | NOTICE of Appearance by Fred L. Banks, Jr on behalf of Roy Harness, Gabrielle Jones, Kamal Karriem (Banks, Fred) (Entered: 09/29/2017) |
| 09/29/2017 | 6 (p.603) | NOTICE of Appearance by Jeremy D. Eisler on behalf of All Plaintiffs (Eisler, Jeremy) (Entered: 09/29/2017) |
| 09/29/2017 | | DOCKET ANNOTATION as to # 3 : Attorney advises that there is an error in this entry, and it should be disregarded. It has been correctly refiled as Doc. 4 (p.600) . (cwl) (Entered: 09/29/2017) |
| 10/03/2017 | 7 (p.604) | SUMMONS Returned Executed by Roy Harness, Kamal Karriem, Gabrielle Jones. Delbert Hosemann served on 9/29/2017, answer due 10/20/2017. (McDuff, Robert) (Entered: 10/03/2017) |
| 10/12/2017 | 8 (p.606) | NOTICE of Appearance by Justin L. Matheny-State Gov on behalf of Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 10/12/2017) |
| 10/12/2017 | 9 (p.608) | Unopposed MOTION for Extension of Time to File Answer re 1 (p.575) Complaint *Defendant's Unopposed Motion for Extension of Time to Respond to Complaint* by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 10/12/2017) |
| 10/12/2017 | 10 (p.611) | ORDER granting 9 (p.608) Motion for Extension of Time to Answer Delbert Hosemann answer due 11/20/2017. Signed by Magistrate Judge F. Keith Ball on 10/12/17 (RBM) (Entered: 10/12/2017) |
| 11/02/2017 | 11 (p.612) | NOTICE of Appearance by David Michael Lipman on behalf of All Plaintiffs (Lipman, David) (Entered: 11/02/2017) |

| | | |
|---|---|---|
| 11/20/2017 | 12 (p.613) | ANSWER to 1 (p.575) Complaint by Delbert Hosemann.(Matheny-State Gov, Justin) (Entered: 11/20/2017) |
| 02/13/2018 | 13 (p.621) | Rule 16(a) Initial Order Telephonic Case Management Conference set for 2/23/2018 02:30 PM before Magistrate Judge F. Keith Ball. No later than Noon on 2/22/2018, a confidential memorandum AND a proposed Case Management Order shall be submitted via e-mail to ball_chambers@mssd.uscourts.gov. Counsel for Plaintiff shall set up the conference and, once all the parties are on the line, contact the Court at 601-608-4460. (JEJ) (Entered: 02/13/2018) |
| 02/23/2018 | | Minute Entry for proceedings held before Magistrate Judge F. Keith Ball: Telephonic Case Management Conference held on 2/23/2018 in Jackson, MS. Appearing: Rob McDuff, Beth Orlansky and Justin Matheney. (JEJ) (Entered: 03/06/2018) |
| 03/05/2018 | 14 (p.623) | NOTICE of Service of *Rule 26 Initial Disclosures* Disclosure by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 03/05/2018) |
| 03/06/2018 | 15 (p.625) | NOTICE of Service of *Rule 26 Initial Disclosures* Disclosure by Roy Harness, Gabrielle Jones, Kamal Karriem (McDuff, Robert) (Entered: 03/06/2018) |
| 03/06/2018 | 16 (p.628) | CASE MANAGEMENT ORDER. Disclosure due by 3/5/2018; Bench Trial set for a two-week term of court commencing 3/4/2019 09:00 AM in Courtroom 5A (Jackson) Jordan before Chief District Judge Daniel P. Jordan III; Pretrial Conference set for 2/8/2019, time to be determined, in Courtroom 5A (Jackson) Jordan before Chief District Judge Daniel P. Jordan III; Discovery due by 9/20/2018; Motions for Amended Pleadings due by 3/26/2018; Motions for Joinder of Parties due by 3/26/2018; Designate Experts Plaintiff Deadline due by 5/21/2018; Designate Experts for Defendant Deadline due by 7/20/2018; Motions due by 10/4/2018; Settlement Conference set for 9/25/2018 09:00 AM in Chambers 5.150 (Jackson) Ball before Magistrate Judge F. Keith Ball. Seven (7) days before the settlement conference, the parties must submit via e-mail to ball_chambers@mssd.uscourts.gov an updated CONFIDENTIAL SETTLEMENT MEMORANDUM. All parties are required to be present at the conference unless excused by the Court. If a party believes the scheduled settlement conference would not be productive and should be cancelled, the party is directed to inform the Court via e-mail of the grounds for their belief at least seven (7) days prior to the conference. ADR Report due by 2/1/2019. Signed by Magistrate Judge F. Keith Ball on 3/6/2018. (JEJ) (Entered: 03/06/2018) |
| 03/26/2018 | 17 (p.633) | Unopposed MOTION to Amend/Correct 1 (p.575) Complaint by Roy Harness, Gabrielle Jones, Kamal Karriem (Attachments: # 1 (p.575) Exhibit proposed 1st Am Complaint)(McDuff, Robert) (Entered: 03/26/2018) |
| 04/02/2018 | | TEXT-ONLY ORDER granting 17 (p.633) Motion to Amend/Correct. Plaintiff has seven days to file the amended complaint. NO FURTHER WRITTEN ORDER TO ISSUE FROM THE COURT. Signed by Magistrate Judge F. Keith Ball on 4/2/18 (RBM) (Entered: 04/02/2018) |
| 04/04/2018 | 18 (p.658) | MOTION for Armand G. Derfner to Appear Pro Hac Vice (Paid $100 PHV fee; receipt number 0538-3676357) by Roy Harness, Gabrielle Jones, Kamal Karriem (Attachments: # 1 (p.575) Exhibit A - Certificate of Good Standing)(McDuff, Robert) (Entered: 04/04/2018) |
| 04/05/2018 | 19 (p.666) | AMENDED COMPLAINT against Delbert Hosemann, filed by Roy Harness, Kamal Karriem, Gabrielle Jones.(McDuff, Robert) (Entered: 04/05/2018) |

| | | |
|---|---|---|
| 04/05/2018 | | DOCKET ANNOTATION as to # 19 (p.666) : This document is not accompanied by a certificate of service. A certificate of service must be attached to a document [Administrative Procedures for Electronic Case Filing, Sec. 4.A.1, Sec. 4.B, and Fed.R.Civ.P. Rule 5(d)(1)]. Attorney is directed to file a certificate as CERTIFICATE OF SERVICE and link it to the proper document.(LAT) (Entered: 04/05/2018) |
| 04/05/2018 | 20 (p.688) | MOTION to Consolidate Cases by Delbert Hosemann (Attachments: # 1 (p.575) Exhibit Ex A Hopkins Complaint, # 2 (p.599) Exhibit Ex B Hopkins Civil Cover Sheet, # 3 Exhibit Ex C SPLC Press Release, # 4 (p.600) Exhibit Ex D Clarion-Ledger Article)(Matheny-State Gov, Justin) (Entered: 04/05/2018) |
| 04/05/2018 | 21 (p.748) | MEMORANDUM in Support re 20 (p.688) MOTION to Consolidate Cases filed by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 04/05/2018) |
| 04/05/2018 | 22 (p.762) | CERTIFICATE OF SERVICE by Roy Harness, Gabrielle Jones, Kamal Karriem re 19 (p.666) Amended Complaint (McDuff, Robert) (Entered: 04/05/2018) |
| 04/16/2018 | | TEXT-ONLY ORDER granting 18 (p.658) Motion to Appear Pro Hac Vice. That Armand G. Derfner be admitted pro hac vice in this case on behalf of the plaintiffs in association with local counsel and upon registration for electronic filing as required by the Court. No further written order shall issue from the Court. Signed by Magistrate Judge F. Keith Ball on 4/16/2018. (JEJ) (Entered: 04/16/2018) |
| 04/16/2018 | | (Court only) ***Attorney Armand G. Derfner - PHV for Roy Harness,Armand G. Derfner - PHV for Gabrielle Jones,Armand G. Derfner - PHV for Kamal Karriem added. (LAT) (Entered: 04/16/2018) |
| 04/19/2018 | 23 (p.763) | MOTION for Extension of Time to File Response/Reply as to 20 (p.688) MOTION to Consolidate Cases *(one day extension)* by Roy Harness, Gabrielle Jones, Kamal Karriem (McDuff, Robert) (Entered: 04/19/2018) |
| 04/19/2018 | 24 (p.766) | ANSWER to 19 (p.666) Amended Complaint by Delbert Hosemann.(Matheny-State Gov, Justin) (Entered: 04/19/2018) |
| 04/19/2018 | 25 (p.774) | MOTION to Intervene *For The Limited Purpose of Opposing The Secretary of State's Motion for Consolidation* by Dennis Hopkins, Herman Parker, Jr, Walter Wayne Kuhn, Jr, Byron Demond Coleman, Jon O'Neal, Earnest Willhite (Attachments: # 1 (p.575) Exhibit A The Hopkins Plaintiffs' Memorandum of Law in Opposition to The Secretary of State's Motion for Consolidation)(Wu, Paloma) (Entered: 04/19/2018) |
| 04/19/2018 | 26 (p.809) | MEMORANDUM in Support re 25 (p.774) MOTION to Intervene *For The Limited Purpose of Opposing The Secretary of State's Motion for Consolidation* filed by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 04/19/2018) |
| 04/20/2018 | 27 (p.824) | RESPONSE in Opposition re 20 (p.688) MOTION to Consolidate Cases filed by Roy Harness, Gabrielle Jones, Kamal Karriem (McDuff, Robert) (Entered: 04/20/2018) |
| 04/23/2018 | 28 (p.827) | RESPONSE to Motion re 25 (p.774) MOTION to Intervene *For The Limited Purpose of Opposing The Secretary of State's Motion for Consolidation* filed by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 04/23/2018) |
| 04/23/2018 | | TEXT ONLY ORDER granting 25 (p.774) Unopposed Motion to Intervene For The |

| | | |
|---|---|---|
| | | Limited Purpose of Opposing The Secretary of State's Motion for Consolidation. Movant is directed to separately file the Hopkins Plaintiffs' Memorandum of Law in Opposition to The Secretary of State's Motion for Consolidation that is attached to the motion. Signed by Chief District Judge Daniel P. Jordan III on April 23, 2018. No further written order will issue. (EHP) (Entered: 04/23/2018) |
| 04/23/2018 | | TEXT ONLY ORDER granting 23 (p.763) Unopposed Motion for Extension of Time to File Response. The Response filed April 20, 2018 is considered timely. Signed by Chief District Judge Daniel P. Jordan III on April 23, 2018. (EHP) (Entered: 04/23/2018) |
| 04/24/2018 | 29 (p.830) | MEMORANDUM in Opposition re 20 (p.688) MOTION to Consolidate Cases filed by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 04/24/2018) |
| 04/27/2018 | 30 (p.858) | Rebuttal re 20 (p.688) MOTION to Consolidate Cases *Secretary Hosemann's Rebuttal Memorandum Supporting Motion for Consolidation* filed by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 04/27/2018) |
| 05/25/2018 | 31 (p.867) | NOTICE of Service of *Expert* Disclosure by Roy Harness, Gabrielle Jones, Kamal Karriem (McDuff, Robert) (Entered: 05/25/2018) |
| 06/11/2018 | 32 (p.870) | NOTICE of Service of *First Set of* Interrogatories by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 06/11/2018) |
| 06/11/2018 | 33 (p.872) | NOTICE of Service of *First Set of* Request for Production by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 06/11/2018) |
| 06/28/2018 | 34 (p.874) | ORDER granting 20 (p.688) Motion to Consolidate Cases. Signed by Magistrate Judge F. Keith Ball on 6/28/18 (RBM) (Entered: 06/28/2018) |
| 07/24/2018 | | Set Hearing: Telephonic Scheduling Conference set for 8/7/2018 02:30 PM before Magistrate Judge F. Keith Ball. Counsel for the plaintiffs shall set up the conference and contact the Court at 601-608-4460. (JEJ) (Entered: 07/24/2018) |
| 07/24/2018 | 35 (p.877) | NOTICE of Service of *Plaintiffs' Responses to Interrogatories and* Response to Request for Production by Roy Harness, Gabrielle Jones, Kamal Karriem (McDuff, Robert) (Entered: 07/24/2018) |
| 07/24/2018 | 36 (p.880) | NOTICE of Service of *Plaintiffs' First Set of Interrogatories and* Request for Production by Roy Harness, Gabrielle Jones, Kamal Karriem (McDuff, Robert) (Entered: 07/24/2018) |
| 08/03/2018 | 37 (p.883) | NOTICE of Service of Response to Request for Admissions by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 08/03/2018) |
| 08/07/2018 | | Minute Entry for proceedings held before Magistrate Judge F. Keith Ball: Telephonic Scheduling Conference held on 8/7/2018 in Jackson, MS. (JEJ) (Entered: 08/09/2018) |
| 08/08/2018 | 38 (p.885) | NOTICE of Service of Designation of Experts by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 08/08/2018) |
| 08/08/2018 | 39 (p.888) | NOTICE of Service of *Plaintiffs' First Set of* Interrogatories by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 08/08/2018) |

| | | |
|---|---|---|
| 08/08/2018 | 40 (p.891) | NOTICE of Service of *Plaintiffs' First Set of* Request for Production by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 08/08/2018) |
| 08/08/2018 | 41 (p.894) | NOTICE of Service of *Plaintiffs' First Set of* Request for Admissions by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 08/08/2018) |
| 08/08/2018 | 42 (p.897) | NOTICE of Service of Interrogatories by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 08/08/2018) |
| 08/08/2018 | 43 (p.899) | NOTICE of Service of Request for Production by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 08/08/2018) |
| 08/09/2018 | | TEXT-ONLY ORDER. This case came before the undersigned for a telephonic scheduling conference on 8/7/2018. Appearing: Rob McDuff, Jody Owens, Janet Gochman, Jonathan Youngwood, Lisa Graybill, Nihara Choudhri, Paloma Wu, and Justin Matheny. By agreement of counsel, the Case Management Order (CMO) 16 (p.628) is hereby amended as follows: (1) all discovery must be completed by September 28, 2018; (2) the Hopkins Plaintiffs' experts must be designated by August 8, 2018, and Defendant's experts must be designated by August 31, 2018; and (3) the deadline for filing a motion for conditional class certification is August 15, 2018. The CMO 16 (p.628) will otherwise remain in full force and effect, except that the estimates in section 1 of the CMO are no longer accurate due to the addition of the Hopkins Plaintiffs through consolidation. No further written order shall issue from the Court. Signed by Magistrate Judge F. Keith Ball on 8/9/2018 (JEJ) (Entered: 08/09/2018) |
| 08/15/2018 | 44 (p.901) | MOTION to Certify Class by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 1 (Expert Report of D. Rothman), # 2 (p.599) Exhibit 2 (Decl. of D. Hopkins), # 3 (p.600) Exhibit 3 (Decl. of H. Parker, Jr.), # 4 (p.600) Exhibit 4 (Decl. of W. Kuhn, Jr.), # 5 (p.601) Exhibit 5 (Decl. of B. Coleman), # 6 (p.603) Exhibit 6 (Decl. of J. O'Neal), # 7 (p.604) Exhibit 7 (Decl. of J. Owens, II), # 8 (p.606) Exhibit 8 (Decl. of J. Youngwood))(Wu, Paloma) (Entered: 08/15/2018) |
| 08/15/2018 | 45 (p.964) | MEMORANDUM in Support re 44 (p.901) MOTION to Certify Class filed by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 08/15/2018) |
| 08/17/2018 | 46 (p.988) | NOTICE of Service of Response to Request for Production by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 08/17/2018) |
| 08/17/2018 | 47 (p.990) | NOTICE of Service of Response to Interrogatories by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 08/17/2018) |
| 08/17/2018 | 48 (p.992) | NOTICE of Service of Response to Request for Admissions by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 08/17/2018) |
| 08/29/2018 | 49 (p.994) | RESPONSE in Opposition re 44 (p.901) MOTION to Certify Class filed by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 08/29/2018) |
| 08/29/2018 | 50 (p.997) | MEMORANDUM in Opposition re 44 (p.901) MOTION to Certify Class filed by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 08/29/2018) |
| 08/31/2018 | 51 | NOTICE of Service of Designation of Experts by Delbert Hosemann (Matheny-State |

| | (p.1014) | Gov, Justin) (Entered: 08/31/2018) |
|---|---|---|
| 09/05/2018 | 52 (p.1016) | REPLY to Response to Motion re 44 (p.901) MOTION to Certify Class filed by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 1 (Voter Information Guide), # 2 (p.599) Exhibit 2 (Defendants RFA Responses))(Wu, Paloma) (Entered: 09/05/2018) |
| 09/07/2018 | 53 (p.1060) | NOTICE of Service of Response to Request for Production by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 09/07/2018) |
| 09/07/2018 | 54 (p.1062) | NOTICE of Service of Response to Interrogatories by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 09/07/2018) |
| 09/07/2018 | 55 (p.1064) | NOTICE of Service of *Hopkins Plaintiffs'* Response to Interrogatories by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 09/07/2018) |
| 09/07/2018 | 56 (p.1067) | NOTICE of Service of *Hopkins Plaintiffs'* Response to Request for Production by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 09/07/2018) |
| 09/11/2018 | 57 (p.1070) | STIPULATION *of Dismissal of Two Plaintiffs But Not The Other Plaintiffs* by Gabrielle Jones (McDuff, Robert) (Entered: 09/11/2018) |
| 09/12/2018 | | (Court only) *** Party Gabrielle Jones and Freddie James Keyes terminated. (LAT) (Entered: 09/12/2018) |
| 09/12/2018 | 58 (p.1072) | STIPULATION *(amended) of dismissal of two plaintiffs but not the other plaintiffs* by Gabrielle Jones (McDuff, Robert) (Entered: 09/12/2018) |
| 09/20/2018 | | TEXT-ONLY ORDER cancelling settlement conference set for September 25, 2018. No further written order shall issue from the Court. Signed by Magistrate Judge F. Keith Ball on 9/20/2018. (JEJ) (Entered: 09/20/2018) |
| 09/20/2018 | | (Court only) ***Deadlines/Hearings terminated: settlement conference set for 9/25/2018, is terminated. (JEJ) (Entered: 09/20/2018) |
| 09/21/2018 | 59 (p.1074) | Unopposed MOTION for Leave to File Excess Pages *For Summary Judgment Briefing* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 09/21/2018) |
| 09/24/2018 | | DOCKET ANNOTATION as to 59 (p.1074) : This document is not accompanied by a certificate of service. A certificate of service must be attached to a document [Administrative Procedures for Electronic Case Filing, Sec. 4.A.1, Sec. 4.B, and Fed.R.Civ.P. Rule 5(d)(1)]. Attorney is directed to file a certificate as CERTIFICATE OF SERVICE and link it to the proper document. (KNS) (Entered: 09/24/2018) |
| 09/24/2018 | 60 (p.1077) | ATTACHMENT re 59 (p.1074) Unopposed MOTION for Leave to File Excess Pages *For Summary Judgment Briefing Certificate of Service* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 09/24/2018) |
| 09/28/2018 | 61 (p.1078) | NOTICE of Service of *The Hopkins Plaintiffs' Supplemental* Response to Request for Production by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: |

| | | |
|---|---|---|
| | | 09/28/2018) |
| 10/02/2018 | | TEXT-ONLY ORDER granting 59 (p.1074) Unopposed Motion for Leave to File Excess Pages. Movant's Memorandum should not exceed 40 pages; Respondent's Memorandum should not exceed 60 pages; Movant's Reply should not exceed 20 pages. Signed by Chief District Judge Daniel P. Jordan III on October 2, 2018. No further written order will issue. (EHP) (Entered: 10/02/2018) |
| 10/04/2018 | 62 (p.1081) | NOTICE of Appearance by Krissy Casey Nobile on behalf of Delbert Hosemann (Nobile, Krissy) (Entered: 10/04/2018) |
| 10/04/2018 | 63 (p.1083) | MOTION for Summary Judgment *as to the Harness Plaintiffs' Lawsuit* by Delbert Hosemann (Attachments: # 1 (p.575) Exhibit A - Part 1 - Itemization of Undisputed Material Facts and Supporting Evidence (part 1), # 2 (p.599) Exhibit A - Part 2 - Itemization of Undisputed Material Facts and Supporting Evidence (part 2))(Matheny-State Gov, Justin) (Entered: 10/04/2018) |
| 10/04/2018 | 64 (p.1719) | MEMORANDUM in Support re 63 (p.1083) MOTION for Summary Judgment *as to the Harness Plaintiffs' Lawsuit* filed by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 10/04/2018) |
| 10/04/2018 | 65 (p.1748) | MOTION for Summary Judgment *(with Exhibits 1-25 of 152)* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 1 Report of the Hopkins Plaintiffs Expert Dov Rothman, Ph.D. (Aug. 1, 2018), # 2 (p.599) Exhibit 2 Report of the Hopkins Plaintiffs Expert Dorothy Pratt, Ph.D, (Aug. 1, 2018), # 3 Exhibit 3 Report of Defendants Expert C. Rick Moore (Aug. 31, 2018), # 4 (p.600) Exhibit 4 Reply Report of the Hopkins Plaintiffs Expert Dov Rothman, Ph.D. (Oct. 4, 2018), # 5 (p.601) Exhibit 5 Declaration of Dennis Hopkins (Oct. 2, 2018), # 6 (p.603) Exhibit 6 Declaration of Herman Parker, Jr. (Oct. 3, 2018), # 7 (p.604) Exhibit 7 Declaration of Walter Wayne Kuhn, Jr. (Oct. 2, 2018), # 8 (p.606) Exhibit 8 Declaration of Byron Demond Coleman (Oct. 1, 2018), # 9 (p.608) Exhibit 9 Declaration of Jon ONeal (Oct. 1, 2018), # 10 (p.611) Exhibit 10 Declaration of Earnest Willhite (Aug. 14, 2018), # 11 (p.612) Exhibit 11 Summary Chart I: Successful Suffrage Bills, # 12 (p.613) Exhibit 12 Summary Chart II: State Action Restoring or Expanding Voting Rights, # 13 (p.621) Exhibit 13 Summary Chart III: States That Do Not Impose a Lifetime Voting Ban, # 14 (p.623) Exhibit 14 Summary Chart IV: States That Impose a Lifetime Voting Ban Only for Certain Categories of Disenfranchising Offenses, # 15 (p.625) Exhibit 15 Summary Chart V: Selected Statements by Delegates to the 1890 Constitutional Convention, # 16 (p.628) Exhibit 16 The Hopkins Plaintiffs First Set of Requests for Admission, # 17 (p.633) Exhibit 17 Defendants Responses to the Hopkins Plaintiffs First Set of Requests for Admission, # 18 (p.658) Exhibit 18 Defendants Responses to the Hopkins Plaintiffs First Set of Interrogatories, # 19 (p.666) Exhibit 19 Mississippi Mail-In Voter Registration Application, # 20 (p.688) Exhibit 20 Mississippi Voter Information Guide, # 21 (p.748) Exhibit 21 Disenfranchising Crimes, # 22 (p.762) Exhibit 22 Canton Man Receives Maximum Sentence for Voter Fraud, Office of the District Attorney, Madison and Rankin Counties (May 17, 2011), # 23 (p.763) Exhibit 23 Mississippi Legislature, House Rules, # 24 (p.766) Exhibit 24 Mississippi Legislature, Senate Rules, # 25 (p.774) Exhibit 25 S.B. 2107 (Miss. 2017))(Wu, Paloma) (Entered: 10/04/2018) |
| 10/04/2018 | 66 (p.2085) | MOTION for Summary Judgment *as to the Hopkins Plaintiffs' Lawsuit* by Delbert Hosemann (Nobile, Krissy) (Entered: 10/04/2018) |

| | | |
|---|---|---|
| 10/04/2018 | 67 (p.2089) | MEMORANDUM in Support re 66 (p.2085) MOTION for Summary Judgment *as to the Hopkins Plaintiffs' Lawsuit* filed by Delbert Hosemann (Nobile, Krissy) (Entered: 10/04/2018) |
| 10/04/2018 | 68 (p.2126) | ATTACHMENT re 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152) with Exhibits 26-50 of 152* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 27 Record of Senate votes on HB 1475 (Miss. 2017), # 2 (p.599) Exhibit 28 Record of House votes on H.B. 1475 (Miss. 2017), # 3 Exhibit 29 Bill history for S.B. 2107 (Miss. 2017), # 4 (p.600) Exhibit 30 Bill history for H.B. 1475 (Miss. 2017), # 5 (p.601) Exhibit 31 Bill history for H.B. 1695 (Miss. 2018), # 6 (p.603) Exhibit 32 Bill history for S.B. 2947 (Miss. 2016), # 7 (p.604) Exhibit 33 Bill history for H.B. 1562 (Miss. 2012), # 8 (p.606) Exhibit 34 Journal of the Proceedings of the Constitutional Convention of the State of Mississippi (1890), # 9 (p.608) Exhibit 35 Senator J. Z. George. He Addresses a Large Audience at His Old Home, Clarion-Ledger (Oct. 24, 1889), # 10 (p.611) Exhibit 36 Judg[e] Calhoons Views. Thinks the Negro Should Be Deprivee [sic] of Suffrage, Clarion-Ledger (Mar. 6, 1890), # 11 (p.612) Exhibit 37 Genl Georges Views. Most Remarkable That Have Been Presented, Daily Clarion-Ledger (July 7, 1890), # 12 (p.613) Exhibit 38 Judiciary Committee. They Make the First Report to the Convention, Daily Clarion-Ledger (Aug. 22, 1890), # 13 (p.621) Exhibit 39 Female Suffrage Day. Convention Turned into a Debating Society, Daily Clarion-Ledger (Sept. 10, 1890), # 14 (p.623) Exhibit 40 A Property Qualification. Speech of Hon. W.A. Boyd, in Reply to Judge Chrisman, Daily Clarion-Ledger (Sept. 10, 1890), # 15 (p.625) Exhibit 41 Two Good Speeches: Delivered by Judge Chrisman and Hon. W. A. Boyd, Clarion-Ledger (Sept. 11, 1890), # 16 (p.628) Exhibit 42 The Convention. Military Bill Is Much Amended and Passed, Clarion-Ledger (Sept. 11, 1890), # 17 (p.633) Exhibit 43 Stuck in the Whole. The Report of the Franchise Committee, Daily Clarion-Ledger (Sept. 13, 1890), # 18 (p.658) Exhibit 44 Another Talking Day, Daily Clarion-Ledger (Sept. 15, 1890), # 19 (p.666) Exhibit 45 More Free Talking. Numerous Orators Prese[n]t Their Views, Daily Clarion-Ledger (Sept. 16, 1890), # 20 (p.688) Exhibit 46 The Franchise. Senator Georges Grea[t] Speech, Daily Commercial Herald (Vicksburg) (Sept. 17, 1890), # 21 (p.748) Exhibit 47 Convention Speeches. Delivered by Messrs. Mayes and Eskridge, Clarion-Ledger (Sept. 18, 1890), # 22 (p.762) Exhibit 48 Convention Speeches. Hon. J.H. Jones Speaks Against Female Suffrage, Clarion-Ledger (Sept. 18, 1890), # 23 (p.763) Exhibit 49 Discussion Continues. Seven Hundred Dollars per Day for Talk, Clarion-Ledger (Sept. 18, 1890), # 24 (p.766) Exhibit 50 And Still They Talk. Judge Chrismans Last Grand and Eloquent Appeal, Daily Clarion-Ledger (Sept. 18, 1890))(Wu, Paloma) (Entered: 10/04/2018) |
| 10/04/2018 | 69 (p.2327) | ATTACHMENT re 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152) with Exhibits 51-75 of 152* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 52 The Great Question. Settled at Last by the Constitutional Convention, Daily Clarion-Ledger (Sept. 24, 1890), # 2 (p.599) Exhibit 53 The Convention. Rapid Progress Being Made Towards the Completion of the Constitution, Daily Commercial Herald (Vicksburg) (Sept. 25, 1890), # 3 Exhibit 54 Dont Like it But Takes It, Clarion-Ledger (Oct. 9, 1890), # 4 (p.600) Exhibit 55 Understanding Clause, Convention Refuses to Reconsider It, Clarion-Ledger (Oct. 30, 1890), # 5 (p.601) Exhibit 56 The Farewell Address. Delivered to the Convention by Judge S. S. Calhoon, Clarion-Ledger (Nov. 6, 1890), # 6 (p.603) Exhibit 57 Brief of Appellee, Ratliff v. Beale (Miss. 1896), # 7 (p.604) Exhibit 58 |

| | | |
|---|---|---|
| | | Voting in Mississippi: A Report of the United States Commission for Civil Rights (1965), Chapter I, # 8 (p.606) Exhibit 59 An Act to admit the State of Mississippi to Representation in the Congress of the United States, ch. 19, 16 Stat. 67 (1870), # 9 (p.608) Exhibit 60 An Act to admit the States of North Carolina, South Carolina, Louisiana, Georgia, Alabama, and Florida, to Representation in Congress, ch. 70, 15 Stat. 73 (1868), # 10 (p.611) Exhibit 61 An Act to admit the State of Virginia to Representation in the Congress of the United States, ch. 10, 16 Stat. 62 (1870), # 11 (p.612) Exhibit 62 An Act to admit the State of Texas to Representation in the Congress of the United States, ch. 39, 16 Stat. 80 (1870), # 12 (p.613) Exhibit 63 Brief of Amici Curiae, Muntaqim v. Coombe (2d Cir. 2005) (No. 01- 7260), 2005 WL 4680739, # 13 (p.621) Exhibit 64 Brief in Opp. to Pet. for a Writ of Cert., Johnson v. Bush (2005) (No. 05-212), 2005 WL 2662479, # 14 (p.623) Exhibit 65 DEL. CONST. (1831), # 15 (p.625) Exhibit 66 DEL. CONST. (1897), art. V, § 2, # 16 (p.628) Exhibit 67 Jerry Mitchell, SPLC: State still depriving rights, Clarion Ledger (Mar. 28, 2018), # 17 (p.633) Exhibit 68 Bill Memorandum for Bill 4675 (N.Y. 1971), # 18 (p.658) Exhibit 69 Proposals of the General Government and Constitutional Amendment Committee on Suffrage and Elections, in Mont. Constitutional Convention Proceedings (1971–72), # 19 (p.666) Exhibit 70 House Study Group, Bill Analysis for H. B. 718 (Tex. 1983), # 20 (p.688) Exhibit 71 Sauv v. Canada, 2002 3 S.C.R. 519, # 21 (p.748) Exhibit 72 Cong. Globe, 39th Cong., 1st Sess. 2286 (Apr. 30, 1866), # 22 (p.762) Exhibit 73 Cong. Globe, 39th Cong., 1st Sess. 2771 (May 23, 1866), # 23 (p.763) Exhibit 74 Noah Webster, An American Dictionary of the English Language 105 (1828), # 24 (p.766) Exhibit 75 Brief of Appellees, Young v. Hosemann (5th Cir. 2010) (Nos. 08- 60941, 09-60188), 2009 WL 6391080)(Wu, Paloma) (Entered: 10/04/2018) |
| 10/04/2018 | 70 (p.2626) | ATTACHMENT re 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152) with Exhibits 76-100* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 77 Amendment 9 of the Official Ballot on Amendments to the Constitution Proposed by the Constitutional Convention of the State of Hawaii of 1968, Proceedings of the Constitutional Convention of Hawaii 1968 (1973), # 2 (p.599) Exhibit 78 ANN. M. OGATA, Article II: Suffrage and Elections, in HAWAII CONSTITUTIONAL CONVENTION STUDIES 1978 (1978), # 3 Exhibit 79 ILL. CONST. art. III, § 2 (1970), # 4 (p.600) Exhibit 80 ILL. CONST. art. VII, § 7 (1870), as amended in 1877, # 5 (p.601) Exhibit 81 D.C. Pub. L. 92-220, § 4, 85 Stat. 788 (1971), # 6 (p.603) Exhibit 82 D.C. 69 Stat. 699 (1955), # 7 (p.604) Exhibit 83 N.J. Ch. 280 (1971), # 8 (p.606) Exhibit 84 N.J. Ch. 7 (1964), # 9 (p.608) Exhibit 85 1971 N.Y. Laws 952, # 10 (p.611) Exhibit 86 State of New York Executive Chamber, Exec. Order No. 181, Restoring the Right to Vote for New Yorkers on Parole (Apr. 18, 2018), # 11 (p.612) Exhibit 87 MONT. CONST. art. IV (1972), # 12 (p.613) Exhibit 88 MONT. CONST. art. IX (1889), # 13 (p.621) Exhibit 89 Ohio Am. Sub. H.B. 490, 124th Gen. Assemb., Reg. Sess. (2002), # 14 (p.623) Exhibit 90 H.B. 33, 1973 Gen. Assemb. (N.C. 1973), # 15 (p.625) Exhibit 91 H.B. 285, 1971 Gen. Assemb. (N.C. 1971), # 16 (p.628) Exhibit 92 S.B. 872 (N.C. 1977), # 17 (p.633) Exhibit 93 H.B. 421 (N.C. 1991), # 18 (p.658) Exhibit 94 Proposition 10, Right to Vote (California 1974), # 19 (p.666) Exhibit 95 Press Release, Alex Padilla, California Secretary of State, Secretary Padilla Ends Appeal of Scott v. Bowen Case: Settlement Will Restore Voting Rights to Thousands of Californians (August 4, 2015), # 20 (p.688) Exhibit 96 LA. CONST. art. I (1974), # 21 (p.748) Exhibit 97 LA. CONST. art. VIII, § 6 (1921), # 22 (p.762) Exhibit 98 H.B. 265, 2018 Reg. Sess. (La. 2018), # 23 (p.763) Exhibit 99 S.B. 57 (Md. 1974), # 24 (p.766) Exhibit 100 H.B. 535, 2002 Reg. Sess. (Md. 2002))(Wu, Paloma) |

| | | |
|---|---|---|
| | | (Entered: 10/04/2018) |
| 10/04/2018 | 71 (p.2736) | ATTACHMENT re 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152) with Exhibits 101-125* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 102 Dept of Legislative Services, Bill Analysis for S.B. 184 (Md. 2002), # 2 (p.599) Exhibit 103 S.B. 488, 2007 Reg. Sess. (Md. 2007), # 3 Exhibit 104 H.B. 554, 2007 Reg. Sess. (Md. 2007), # 4 (p.600) Exhibit 105 H.B. 980, 2015 Reg. Sess. (Md. 2015), # 5 (p.601) Exhibit 106 Dept of Legislative Services, Bill Analysis for H.B. 980 (2015), # 6 (p.603) Exhibit 107 Dept of Legislative Services, Bill Analysis for S.B. 340 (2015), # 7 (p.604) Exhibit 108 1975 Conn. Acts 338, # 8 (p.606) Exhibit 109 H.B. 5042, 2001 Gen. Assemb., Jan. Sess. (Conn. 2001), # 9 (p.608) Exhibit 110 1977 Ariz. Sess. Laws 712, # 10 (p.611) Exhibit 111 1977 Ark. Acts 1887, # 11 (p.612) Exhibit 112 ARK. CONST. amend. LI, § 11(4) (1975), # 12 (p.613) Exhibit 113 H.B. 1086, 83d Gen. Assemb., Reg. Sess. (Ark. 2001), 2001 Ark. Acts 560, # 13 (p.621) Exhibit 114 1977 Mo. Laws 230, H.B. No. 101, 79th Gen. Assemb. 1st Reg. Sess. (Mo. 1977), # 14 (p.623) Exhibit 115 1969 Mo. Laws 192 (1969), # 15 (p.625) Exhibit 116 MO. REV. STAT. § 111.060 (1959), # 16 (p.628) Exhibit 117 H.B. 2641, 19791980 Gen. Assemb., 103d Sess. (S.C. 1981), # 17 (p.633) Exhibit 118 S.C. CODE ANN. § 7-5-120(b) (1976), # 18 (p.658) Exhibit 119 1981 Idaho Sess. Laws 318, # 19 (p.666) Exhibit 120 H.B. 564, 57th Gen. Assemb., 2d. Reg. Sess. (Id. 2004), # 20 (p.688) Exhibit Ex. 121 GA. CONST. art. II, § 1 (1983), # 21 (p.748) Exhibit 122 GA. CONST. art. II, § 2 (1976), # 22 (p.762) Exhibit 123 H.B. 718, 68th Leg. (Tex. 1983), # 23 (p.763) Exhibit 124 S.B. 616, 69th Leg. (Tex. 1985), # 24 (p.766) Exhibit 125 House Study Group, Election Code recodification and revision (Tex. 1985))(Wu, Paloma) (Entered: 10/04/2018) |
| 10/04/2018 | 72 (p.2865) | ATTACHMENT re 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152) with Exhibits 126-152 of 152* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 127 Office of the Secretary of State of Rhode Island, Annotated Constitution of the State of Rhode Island and Providence Plantations, 12 (1988), # 2 (p.599) Exhibit 128 H.B. 7938, Gen. Assemb., Jan. Sess. (R.I. 2006), # 3 Exhibit 129 S.B. 2486, Gen. Assemb., Reg. Sess. (R.I. 2006), # 4 (p.600) Exhibit 130 H.B. 219, 139th Gen. Assemb., Reg. Sess. (Del. 1998), # 5 (p.601) Exhibit 131 H.B. 126, 140th Gen. Assemb., Reg. Sess. (Del. 2000), # 6 (p.603) Exhibit 132 S.B. 350, 140th Gen. Assemb., Reg. Sess. (Del. 2000), # 7 (p.604) Exhibit 133 H.B. 9, 146th Gen. Assemb., Reg. Sess. (Del. 2011), # 8 (p.606) Exhibit 134 H.B. 10, 147th Gen. Assemb., Reg. Sess. (Del. 2013), # 9 (p.608) Exhibit 135 S.B. 242, 148th Gen. Assemb., Reg. Sess. (Del. 2016), # 10 (p.611) Exhibit 136 S.B. 204, 45th Leg., 1st Sess. (N.M. 2001) (as introduced), # 11 (p.612) Exhibit 137 S.B. 204, 45th Leg., 1st Sess. (N.M. 2001) (as enrolled), # 12 (p.613) Exhibit 138 H.B. 3, 23d Leg., 2d Spec. Sess. (Ala. 2003), # 13 (p.621) Exhibit 139 S.B. 186, 29th Leg., Reg. Sess. (Ala. 2016), # 14 (p.623) Exhibit 140 H.B. 282, 2017 Leg., Reg. Sess. (Ala. 2017), # 15 (p.625) Exhibit 141 A.B. No. 55, 72d Sess., Reg. Sess. (Nev. 2003), # 16 (p.628) Exhibit 142 A.B. No. 181, 79th Sess., Reg. Sess. (Nev. 2017), # 17 (p.633) Exhibit 143 S.F. No. 0065, 57th Leg., 2003 Gen. Sess. (Wyo. 2003), # 18 (p.658) Exhibit 144 H.B. No. 0015 (Wyo. 2015), # 19 (p.666) Exhibit 145 Legislative Service Office, Bill Synopsis of H.B. No. 0015 (2015), # 20 (p.688) Exhibit 146 H.B. No. 0075 (Wyo. 2017), # 21 (p.748) Exhibit 147 Legislative Service Office, Bill Synopsis of H.B. No. 0075 (2017), # 22 (p.762) Exhibit 148 L.B. 53, 99th Leg., 1st Sess. (Neb. 2005), # 23 (p.763) Exhibit 149 S.B. |

| | | |
|---|---|---|
| | | 1678, 104th Gen. Assemb 629 (Tenn. 2006), # 24 (p.766) Exhibit 150 H.B. 1517, 20092010 Leg., Reg. Sess. (Wash. 2009), # 25 (p.774) Exhibit 151 Final Bill Report for H.B. 1517 (2009), # 26 (p.809) Exhibit 152 Press Release, Virginia Governors Office, Governor McAuliffe Announces Process for Case-by-Case Restoration of Former Felons Civil Rights (Aug. 22, 2016))(Wu, Paloma) (Entered: 10/04/2018) |
| 10/04/2018 | 73 (p.3098) | MEMORANDUM IN SUPPORT re 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152)* filed by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 10/04/2018) |
| 10/04/2018 | 74 (p.3152) | MOTION for Summary Judgment *of Harness Plaintiffs* by Roy Harness (Attachments: # 1 (p.575) Exhibit 1, Declaration of Dr. Robert Luckett, # 2 (p.599) Exhibit 2, 5-21-18 Report of Dr. Robert Luckett, # 3 Exhibit 3, Resume of Dr. Robert Luckett, # 4 (p.600) Exhibit 4, Declaration of Grace Sullivan, # 5 (p.601) Exhibit 5, 1950 legislative resolution to amend Sec. 241, # 6 (p.603) Exhibit 6, 1950 ballot to amend Sec. 241, # 7 (p.604) Exhibit 7, 1968 legislative resolution to amend Sec. 241, # 8 (p.606) Exhibit 8, 1968 ballot to amend Sec. 241, # 9 (p.608) Exhibit 9, Cotton v. Fordice, Magistrate's R&R, # 10 (p.611) Exhibit 10, Cotton v. Fordice, District Ct order SJ, # 11 (p.612) Exhibit 11, Cotton v. Fordice, 5 Cir. briefs, # 12 (p.613) Exhibit 12, Declaration of Matthew A. Williams, # 13 (p.621) Exhibit 13, 5-22-18 Expert Report of Matthew A. Williams, # 14 (p.623) Exhibit 14, Resume of Matthew A. Williams, # 15 (p.625) Exhibit 15, Pltfs disc responses 7-11-18, # 16 (p.628) Exhibit 16, Harness verification of disc responses, # 17 (p.633) Exhibit 17, Karriem verification of disc. responses)(McDuff, Robert) (Entered: 10/04/2018) |
| 10/04/2018 | 75 (p.3315) | MEMORANDUM in Support re 74 (p.3152) MOTION for Summary Judgment *of Harness Plaintiffs* filed by Roy Harness (McDuff, Robert) (Entered: 10/04/2018) |
| 10/16/2018 | 76 (p.3341) | Unopposed MOTION for Extension of Time to File Response/Reply as to 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152)*, 74 (p.3152) MOTION for Summary Judgment *of Harness Plaintiffs*, 63 (p.1083) MOTION for Summary Judgment *as to the Harness Plaintiffs' Lawsuit*, 66 (p.2085) MOTION for Summary Judgment *as to the Hopkins Plaintiffs' Lawsuit (Joint)* by Byron Demond Coleman, Roy Harness, Dennis Hopkins, Gabrielle Jones, Kamal Karriem, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 10/16/2018) |
| 10/17/2018 | | TEXT-ONLY ORDER granting 76 (p.3341) Joint Motion for Extension of Time to File Response/Reply. Responses due by 10/25/2018; Replies due by 11/8/2018. Signed by Chief District Judge Daniel P. Jordan III on October 17, 2018. No further written order will issue. (EHP) (Entered: 10/17/2018) |
| 10/25/2018 | 77 (p.3347) | RESPONSE in Opposition re 66 (p.2085) MOTION for Summary Judgment *as to the Hopkins Plaintiffs' Lawsuit* filed by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 1 Hopkins Pls' Reply to Def's Itemization of Undisputed Facts, # 2 (p.599) Exhibit 2 Hopkins Pls' Expert Report_Dorothy Pratt, # 3 Exhibit 3 Pratt Declaration, # 4 (p.600) Exhibit 4 Mississippi History Now _ The Mississippi Constitution of 1817, # 5 (p.601) Exhibit 5 Mississippi History Now _ The Mississippi Constitution of 1832, # 6 (p.603) Exhibit 6 Mississippi History Now _ The Mississippi Constitution of 1868, # 7 (p.604) Exhibit 7 Mississippi History Now _ The Mississippi Constitution of 1890 as originally adopted, # 8 (p.606) Exhibit 8 Convention Speeches Mayes Eskridge, # 9 (p.608) Exhibit 9 Hopkins Pls' Expert Report_Dov Rothman, # 10 (p.611) Exhibit 10 Rothman Reply Report |

| | | |
|---|---|---|
| | | 2018.10.04, # 11 (p.612) Exhibit 11 RFA Responses, # 12 (p.613) Exhibit 12 1870_Misc._Mississippi Readmission Act of 1870 (Congressional Record), # 13 (p.621) Exhibit 13 2000 Miss Laws Ch 430 (enacting HB 763), # 14 (p.623) Exhibit 14 2004 Miss Laws Ch 305, # 15 (p.625) Exhibit 15 2011.05.17_Misc._Canton Man Receives Maximum Sentence for Voter Fraud, # 16 (p.628) Exhibit 16 2018.03.28_Article_Clarion Ledger, # 17 (p.633) Exhibit 17 Mississippi Voter Information Guide, # 18 (p.658) Exhibit 18 Mississippi Mail In Voter Registration Application, # 19 (p.666) Exhibit 19 Voter Roll Maintenance 2015, # 20 (p.688) Exhibit 20 Voter Roll Maintenance 2016, # 21 (p.748) Exhibit 21 Voter Roll Maintenance 2017, # 22 (p.762) Exhibit 22 Duties of Election Commissioners (2018), # 23 (p.763) Exhibit 23 Circuit Clerks SEMS Update Winter Conference 2018, # 24 (p.766) Exhibit 24 Introduction to SEMS (2018), # 25 (p.774) Exhibit 25 AOC Processing Instructions (October 2017), # 26 (p.809) Exhibit 26 Feb. 28, 2018 letter from Anna Moak to Paloma Wu, # 27 (p.824) Exhibit 27 Criminal Codes, # 28 (p.827) Exhibit 28 Disposition Code Filter, # 29 (p.830) Exhibit 29 Census Data)(Wu, Paloma) (Entered: 10/25/2018) |
| 10/25/2018 | 78 (p.3975) | MEMORANDUM in Opposition re 66 (p.2085) MOTION for Summary Judgment *as to the Hopkins Plaintiffs' Lawsuit* filed by Byron Demond Coleman, Roy Harness, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 10/25/2018) |
| 10/25/2018 | 79 (p.4046) | RESPONSE in Opposition re 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152) as to the Hopkins Plaintiffs' Lawsuit* filed by Delbert Hosemann (Attachments: # 1 (p.575) Exhibit A - Pl. Discovery Responses, # 2 (p.599) Appendix B - Addendum, State Laws on Disenfranchisement and Re-enfranchisement, # 3 Appendix C - Addendum to States Amici Brief in Hand v. Scott)(Nobile, Krissy) (Entered: 10/25/2018) |
| 10/25/2018 | 80 (p.4248) | MEMORANDUM in Opposition re 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152) as to the Hopkins Plaintiffs' Lawsuit* filed by Delbert Hosemann (Nobile, Krissy) (Entered: 10/25/2018) |
| 10/25/2018 | 81 (p.4309) | RESPONSE in Opposition re 63 (p.1083) MOTION for Summary Judgment *as to the Harness Plaintiffs' Lawsuit* filed by Roy Harness (Attachments: # 1 (p.575) Exhibit disfranchisement documents from SOS office)(McDuff, Robert) (Entered: 10/25/2018) |
| 10/25/2018 | 82 (p.4327) | MEMORANDUM in Opposition re 63 (p.1083) MOTION for Summary Judgment *as to the Harness Plaintiffs' Lawsuit* filed by Roy Harness (McDuff, Robert) (Entered: 10/25/2018) |
| 10/25/2018 | 83 (p.4352) | Response in Opposition re 74 (p.3152) MOTION for Summary Judgment *of Harness Plaintiffs* by Roy Harness (Attachments: # 1 (p.575) Exhibit 1, Declaration of Dr. Robert Luckett, # 2 Exhibit 2, 5-21-18 Report of Dr. Robert Luckett, # 3 Exhibit 3, Resume of Dr. Robert Luckett, # 4 Exhibit 4, Declaration of Grace Sullivan, # 5 Exhibit 5, 1950 legislative resolution to amend Sec. 241, # 6 Exhibit 6, 1950 ballot to amend Sec. 241, # 7 Exhibit 7, 1968 legislative resolution to amend Sec. 241, # 8 Exhibit 8, 1968 ballot to amend Sec. 241, # 9 Exhibit 9, Cotton v. Fordice, Magistrate's R&R, # 10 Exhibit 10, Cotton v. Fordice, District Ct order SJ, # 11 Exhibit 11, Cotton v. Fordice, 5 Cir. briefs, # 12 Exhibit 12, Declaration of Matthew A. Williams, # 13 Exhibit 13, 5-22-18 Expert Report of Matthew A. Williams, # 14 Exhibit 14, Resume of Matthew A. Williams, # 15 Exhibit 15, Pltfs disc responses 7-11-18, # 16 Exhibit 16, Harness verification of disc responses, # 17 Exhibit 17, Karriem verification of disc. responses)(McDuff, Robert) filed by Delbert Hosemann |

| | | |
|---|---|---|
| | | (Attachments: # 1 (p.575) Exhibit A - Pratt Book Excerpt)(Matheny-State Gov, Justin) (Entered: 10/25/2018) |
| 10/25/2018 | 84 (p.4359) | MEMORANDUM IN OPPOSITION re 74 (p.3152) MOTION for Summary Judgment *of Harness Plaintiffs* filed by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 10/25/2018) |
| 11/08/2018 | 85 (p.4386) | REPLY to Response to Motion re 65 (p.1748) MOTION for Summary Judgment *(with Exhibits 1-25 of 152)* filed by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Attachments: # 1 (p.575) Exhibit 1 Summary Chart I: Voter Eligibility Materials of States That Do Not Impose a Lifetime Voting Ban (2018), # 2 (p.599) Exhibit 2 Summary Chart II: Voter Eligibility Materials of States that Impose a Lifetime Voting Ban Only for Certain Categories of Disenfranchising Offenses (2018), # 3 Exhibit 3 Map of State-by-State Voting Rights Restoration Processes, # 4 (p.600) Exhibit 4 Restoration of Voting Rights, Alaska Division of Elections, # 5 (p.601) Exhibit 5 Voter Registration Information, Arkansas Secretary of State Mark Martin, # 6 (p.603) Exhibit 6 Voting Rights: Persons with a Criminal History, Alex Padilla, California Secretary of State, # 7 (p.604) Exhibit 7 Colorado Voter Registration Form, # 8 (p.606) Exhibit 8 Voters with Convictions FAQs, Colorado Secretary of State Wayne W. Williams, # 9 (p.608) Exhibit 9 Voting Eligibility, The Office of the Secretary of State Denise W. Merrill, # 10 (p.611) Exhibit 10 The Ultimate Freedom: The Right to Vote, Restoration of Voting Rights of Convicted Felons, The Office of the Secretary of State Denise W. Merrill, # 11 (p.612) Exhibit 11 Register to Vote, Georgia Secretary of State Brian Kemp, # 12 (p.613) Exhibit 12 Frequently Asked Questions, Georgia Secretary of State Brian Kemp, # 13 (p.621) Exhibit 13 Voters with a Felony Conviction, State of Hawaii Office of Elections, # 14 (p.623) Exhibit 14 Impact of a Felony Conviction, State of Hawaii Office of Elections, # 15 (p.625) Exhibit 15 Idaho Voter Registration Form, # 16 (p.628) Exhibit 16 Illinois Voter Registration Application, # 17 (p.633) Exhibit 17 Register to Vote, David Orr Cook County Clerks Office, # 18 (p.658) Exhibit 18 Voter Registration, Indiana Election Division, # 19 (p.666) Exhibit 19 Indiana Voter Registration Application, # 20 (p.688) Exhibit 20 Kansas Voter Registration Application, # 21 (p.748) Exhibit 21 Am I eligible to vote?, VoteKansas, # 22 (p.762) Exhibit 22 Register to Vote, Louisiana Secretary of State, # 23 (p.763) Exhibit 23 Frequently Asked Questions, Louisiana Secretary of State, # 24 (p.766) Exhibit 24 State of Maine Voter Guide, Department of the Secretary of State, Bureau of Corporations, Elections & Commissions, State of Maine, # 25 (p.774) Exhibit 25 Maine Voting Residence Fact Sheet, Department of the Secretary of State, Bureau of Corporations, Elections & Commissions, State of Maine, # 26 (p.809) Exhibit 26 Voter Registration Eligibility, Maryland State Board of Elections, # 27 (p.824) Exhibit 27 Restoration of Voting Rights in Maryland, Maryland State Board of Elections, # 28 (p.827) Exhibit 28 Registering to Vote, William Francis Galvin, Secretary of the Commonwealth of Massachusetts, # 29 (p.830) Exhibit 29 State of Michigan Voter Registration Application, # 30 (p.858) Exhibit 30 Elections & Voting, Michigan Secretary of State, # 31 (p.867) Exhibit 31 Register to Vote, Office of the Minnesota Secretary of State, # 32 (p.870) Exhibit 32 I Have a Criminal Record, Office of the Minnesota Secretary of State, # 33 (p.872) Exhibit 33 Frequently Asked Questions, John R. Ashcroft, Missouri Secretary of State, # 34 (p.874) Exhibit 34 How to Register to Vote, Corey Stapleton, Montana Secretary of State, # 35 (p.877) Exhibit 35 Montana Voter Registration Application, # 36 (p.880) Exhibit 36 Voter Information Frequently Asked Questions, Nebraska Secretary of State, # 37 (p.883) Exhibit 37 Nebraska Voter Registration Application, # 38 (p.885) Exhibit 38 Incarcerated |

Felons, William M. Gardner, New Hampshire Secretary of State, # 39 (p.888) Exhibit 39 Restore Your Right to Vote in New Jersey, State of New Jersey Department of State, # 40 (p.891) Exhibit 40 Register to Vote, State of New Jersey Department of State, # 41 (p.894) Exhibit 41 Voter Registration Information, New Mexico Department of State, # 42 (p.897) Exhibit 42 Voter Registration Frequently Asked Questions, New Mexico Department of State, # 43 (p.899) Exhibit 43 Register to Vote, New York State Board of Elections, # 44 (p.901) Exhibit 44 Voting Restoration Pardons, New York State, # 45 (p.964) Exhibit 45 Governor Cuomo Issues First Group of Conditional Pardons Restoring the Right to Vote to New Yorkers on Parole, New York State, (May 22, 2018), # 46 (p.988) Exhibit 46 Registering to Vote in North Carolina, North Carolina State Board of Elections & Ethics Enforcement, # 47 (p.990) Exhibit 47 NC Voting Rights Guide: People in the Criminal Justice System, North Carolina State Board of Elections & Ethics Enforcement, # 48 (p.992) Exhibit 48 Who Can Vote and How, North Dakota Secretary of State Elections Division, # 49 (p.994) Exhibit 49 Voter Eligibility & Residency Requirements, John Husted, Ohio Secretary of State, # 50 (p.997) Exhibit 50 Reclaim Your Right to Vote, Ohio Department of Rehabilitation & Correction, # 51 (p.1014) Exhibit 51 Voter Registration in Oklahoma, Oklahoma State Election Board, # 52 (p.1016) Exhibit 52 Oklahoma Voter Registration Application, # 53 (p.1060) Exhibit 53 Voter Status FAQ, Oregon Secretary of State, # 54 (p.1062) Exhibit 54 Voting Rights For Convicted Felons, Convicted Misdemeanants, and Pretrial Detainees, Pennsylvania Board of Probation and Parole, # 55 (p.1064) Exhibit 55 Register to Vote, Rhode Island Department of State, # 56 (p.1067) Exhibit 56 Know Your Voter Rights!, Rhode Island Department of State, # 57 (p.1070) Exhibit 57 South Carolina Voter Registration Information, South Carolina State Election Commission, # 58 (p.1072) Exhibit 58 Felony Convictions, South Dakota Secretary of State, # 59 (p.1074) Exhibit 59 Texas Voting, Texas Secretary of State, # 60 (p.1077) Exhibit 60 State of Utah Voter Registration Form, # 61 (p.1078) Exhibit 61 Voter Registration, Utah County Government, # 62 (p.1081) Exhibit 62 Voter Registration, Frequently Asked Questions, Vermont Secretary of State, # 63 (p.1083) Exhibit 63 Restoration of Rights Process, Secretary of the Commonwealth of Virginia, # 64 (p.1719) Exhibit 64 Governor McAuliffes Restoration of Rights Policy (Aug. 22 2016), # 65 (p.1748) Exhibit 65 Voter Eligibility, Washington Secretary of State Kim Wyman, # 66 (p.2085) Exhibit 66 Felons and Voting Rights, Washington Secretary of State Kim Wyman, # 67 (p.2089) Exhibit 67 GoVoteWV, Secretary of State Mac Warner, # 68 (p.2126) Exhibit 68 Voter Eligibility, Wisconsin Elections Commission, # 69 (p.2327) Exhibit 69 Im a convicted felon or in jail, Wisconsin Elections Commission, # 70 (p.2626) Exhibit 70 Voter Registration, District of Columbia Board of Elections, # 71 (p.2736) Exhibit 71 Are You Ready to Vote?, State of Alabama Board of Pardons and Paroles, # 72 (p.2865) Exhibit 72 Register to Vote Or Update Your Current Voter Information, Arizona Secretary of State, # 73 (p.3098) Exhibit 73 Convicted Felons, Office of the State Election Commissioner, State of Delaware, # 74 (p.3152) Exhibit 74 Florida Amendment 4 (passed Nov. 6, 2018), # 75 (p.3315) Exhibit 75 Associated Press, Florida Passes Amendment to Restore Felons Voting Rights, N.Y. Times (Nov. 6, 2018, # 76 (p.3341) Exhibit 76 Restoration of Voting Rights in Nevada, Nevada Secretary of State, # 77 (p.3347) Exhibit 77 Restoration of Voting Rights, Tennessee Secretary of State, # 78 (p.3975) Exhibit 78 Restoration of Voting Rights Form, Tennessee Secretary of State, # 79 (p.4046) Exhibit 79 Restoration of Voting Rights in Wyoming, Wyoming Department of Corrections, # 80 (p.4248) Exhibit 80 Application for Restoration of Voting Rights, Wyoming Department of Corrections, # 81 (p.4309) Exhibit 81 Elections Calendar 2018-2019, Mississippi Secretary of State)(Wu, Paloma) (Entered: 11/08/2018)

| | | |
|---|---|---|
| 11/08/2018 | 86 (p.4735) | RESPONSE in Support re 66 (p.2085) MOTION for Summary Judgment *as to the Hopkins Plaintiffs' Lawsuit* filed by Delbert Hosemann (Nobile, Krissy) (Entered: 11/08/2018) |
| 11/08/2018 | 87 (p.4757) | REPLY to Response to Motion re 74 (p.3152) MOTION for Summary Judgment *of Harness Plaintiffs* filed by Roy Harness (Attachments: # 1 (p.575) Exhibit Plaintiffs 11th Cir brief, Underwood v. Hunter)(McDuff, Robert) (Entered: 11/08/2018) |
| 11/08/2018 | 88 (p.4835) | Rebuttal re 63 (p.1083) MOTION for Summary Judgment *as to the Harness Plaintiffs' Lawsuit* filed by Delbert Hosemann (Matheny-State Gov, Justin) (Entered: 11/08/2018) |
| 02/05/2019 | | TEXT-ONLY ORDER. The pretrial conference and trial setting of these consolidated cases are terminated and will be reset at a future date. Signed by Chief District Judge Daniel P. Jordan III on February 5, 2019. No further written order will issue.(EHP) (Entered: 02/05/2019) |
| 02/05/2019 | | (Court only) ***Deadlines/Hearings terminated: Pursuant to the Text Order entered this date, the pretrial conference and bench trial are hereby terminated. (SP) (Entered: 02/05/2019) |
| 02/13/2019 | 89 (p.4843) | ORDER granting 44 (p.901) Motion to Certify Class as set out in the Order. Signed by Chief District Judge Daniel P. Jordan III on February 13, 2019. (SP) (Entered: 02/13/2019) |
| 02/26/2019 | 90 (p.4850) | STATUS REPORT *(Joint) Submitted by the Hopkins Plaintiffs, Harness Plaintiffs, and Defendant Hosemann Pursuant to 89 (p.4843)* by Byron Demond Coleman, Dennis Hopkins, Walter Wayne Kuhn, Jr, Jon O'Neal, Herman Parker, Jr, Earnest Willhite (Wu, Paloma) (Entered: 02/26/2019) |
| 08/07/2019 | 91 (p.4857) | ORDER granting 63 (p.1083) Motion for Summary Judgment; granting in part and denying in part 66 (p.2085) Motion for Summary Judgment; denying 74 (p.3152) Motion for Summary Judgment. Signed by Chief District Judge Daniel P. Jordan, III on 8/7/19 (LAT) (Entered: 08/07/2019) |
| 08/07/2019 | 92 (p.4886) | JUDGMENT: As stated in the Order entered this date, the Court finds as follows: Defendants motion for summary judgment 63 (p.1083) as to the Harness Plaintiffs is granted; the Harness Plaintiffssummary-judgment motion 74 (p.3152) is denied; and the Harness Complaint is severed and dismissed.This action (Civil Action No. 3:17-CV-791-DPJ-FKB) is hereby with prejudice. Signed by Chief District Judge Daniel P. Jordan, III on 8/7/19 (LAT) (Entered: 08/07/2019) |
| 08/07/2019 | | (Court only) ***Staff notes: Per Chambers, this case is no longer consolidated. (LAT) (Entered: 08/07/2019) |
| 08/07/2019 | | TEXT ONLY ORDER: The Order 91 (p.4857) denied the Hopkins Plaintiffs' motion for summary judgment 65 (p.1748) , while inadvertently referencing docket number 74 (p.3152) on page 28. To clarify, the Harness Plaintiffs' motion 74 (p.3152) and the Hopkins Plaintiffs' motion 65 (p.1748) are denied. NO FURTHER WRITTEN ORDER SHALL ISSUE FROM THE COURT. Signed by Chief District Judge Daniel P. Jordan III on August 7, 2019.(SP) (Entered: 08/07/2019) |
| 08/19/2019 | | (Court only) ***Set/Clear Flags: set FKB flag and cleared LRA flag. (JEJ) (Entered: 08/19/2019) |
| 08/19/2019 | | (Court only) ***Set/Clear Flags: set FKB flag and cleared LRA flag. (JEJ) (Entered: |

| | | |
|---|---|---|
| | | 08/19/2019) |
| 08/28/2019 | 93 (p.4887) | NOTICE OF APPEAL as to 92 (p.4886) Judgment, by Roy Harness, Kamal Karriem. Filing fee $ 505, receipt number 0538-4075381. Appeal Record due by 9/27/2019 (McDuff, Robert) (Entered: 08/28/2019) |
| 09/18/2019 | 94 (p.4890) | MOTION to Withdraw as Attorney by Roy Harness, Dennis Hopkins (Owens, Jody) (Entered: 09/18/2019) |
| 09/19/2019 | | TEXT ONLY ORDER granting 94 (p.4890) Motion to Withdraw as Attorney. Attorney Jody E. Owens, II terminated. NO FURTHER WRITTEN ORDER SHALL ISSUE. Signed by Magistrate Judge F. Keith Ball on 9/19/2019. (dcw) (Entered: 09/19/2019) |
| 09/23/2019 | 95 (p.4892) | TRANSCRIPT REQUEST by Roy Harness, Kamal Karriem for proceedings held on None Court Reporter/Transcriber Cherie Bond, Telephone Number : 601-608-4186. (McDuff, Robert) (Entered: 09/23/2019) |
| 09/23/2019 | | USCA Case Number 19-60632 for 93 (p.4887) Notice of Appeal filed by Roy Harness, Kamal Karriem. (LAT) (Entered: 09/23/2019) |
| 09/24/2019 | | Certified and Transmitted Record on Appeal to US Court of Appeals re 93 (p.4887) Notice of Appeal. (LAT) (Entered: 09/24/2019) |

**Tab 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROY HARNESS, ET AL.                                        PLAINTIFFS

V.                                    CIVIL ACTION NO. 3:17-CV-791-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF STATE
OF MISSISSIPPI                                            DEFENDANT

CONSOLIDATED WITH

DENNIS HOPKINS, ET AL.                                    PLAINTIFFS

V.                                    CIVIL ACTION NO. 3:18-CV-188-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF STATE
OF MISSISSIPPI                                            DEFENDANT

ORDER

Plaintiffs seek an order restoring the voting rights of convicted felons in Mississippi.  The

parties have all moved for summary judgment, contending that there are no disputed facts.  [63,

65, 66, 74].  As discussed more fully below, both the United States Supreme Court and the Fifth

Circuit Court of Appeals have rejected Plaintiffs' pivotal legal arguments as to article XII,

section 241 of the Mississippi Constitution.  While those courts may be free to reassess their

prior rulings, the precedent is binding at the district-court level.  For that and other reasons,

Plaintiffs' motions [65, 74] are denied and Defendant's motions [63, 66] are granted as to

disenfranchisement under section 241.  As to section 253, which restores the right to vote, the

Court finds the relevant motions [65, 66] should be denied.

I.    Facts and Procedural History

Two groups of convicted felons filed separate suits seeking to regain the right to vote. The lead plaintiffs in those cases were Roy Harness and Dennis Hopkins. The Court consolidated the cases on June 28, 2018, and then certified a class action on February 26, 2019.

Plaintiffs challenge two sections of article XII of the Mississippi Constitution—sections 241 and 253. Section 241 provides that individuals who have been "convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement[,] or bigamy" are ineligible to vote. And section 253 allows the legislature to restore an individual's suffrage by "a two-thirds vote of both houses, of all members elected."

The Harness Plaintiffs focus their complaint on section 241, arguing that it violates the Fourteenth and Fifteenth Amendments because the disenfranchising crimes that remain from the section's 1890 version were adopted to suppress black voters. Harness Am. Compl. [19] at 19–20. They seek declaratory relief enjoining Secretary of State Delbert Hosemann from taking any steps that would prevent voting by Mississippians convicted of bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement, and bigamy. *Id.* at 21.[1]

The Hopkins Plaintiffs challenge both sections 241 and 253 and take a different approach. They say lifetime disenfranchisement (section 241) violates the Eighth Amendment's prohibition against cruel and unusual punishment and exceeds § 2 of the Fourteenth Amendment, which allows states to merely "abridge" a felon's voting rights. Hopkins Compl. [1] at 4–5 (filed in 3:18-CV-188-DPJ-FKB). As to section 253 (the restoration provision), the Hopkins Plaintiffs

---

[1] The Harness Plaintiffs do not challenge disqualification based on murder and rape convictions. *Id.* at 2.

19-60662.4858

argue that it violates both the First Amendment, by hampering political expression, and the Equal Protection Clause, because it is arbitrary and was enacted with discriminatory intent. *Id.*

II.     Summary Judgment Standard

Each party seeks summary judgment. That relief is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

19-60662.4859

III.    Article III Standing and Eleventh Amendment Immunity

In his motions for summary judgment, Hosemann first raises concerns over Article III

standing and Eleventh Amendment immunity. Under both approaches, Hosemann questions his

connection to sections 241 and 253. As to section 241, he insists that local election officials

have the duty and authority to register, refuse, and purge voters. And as to section 253, he

maintains that only the legislature can act to restore voting rights. [2]

A.    Legal Standards

To establish an Article III case or controversy, Plaintiffs must show: (1) they have

suffered an "injury in fact," (2) there is a "causal connection between the injury and the conduct

complained of," and (3) "the injury will be 'redressed by a favorable decision.'" *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon v. E. Ky. Welfare Rights

Org.*, 426 U.S. 26, 38 (1976)). "The party invoking federal jurisdiction bears the burden of

establishing these elements." *Id.* at 561. Hosemann concedes that Plaintiffs meet the first

element but says they cannot establish a causal connection or redressability. *See Rivera v.

Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (noting that a failure to establish any one

element deprives the court of jurisdiction).

In addition, Hosemann asserts Eleventh Amendment immunity and argues that the *Ex

parte Young* exception is inapplicable. 209 U.S. 123 (1908). Under *Ex parte Young*, a state

officer can be sued in federal court despite the Eleventh Amendment, if that officer has "'some

connection with the enforcement of the act' in question or [is] 'specially charged with the duty to

---

[2] While Article III standing and Eleventh Amendment immunity are distinct concepts, there is
significant overlap. *See* Hopkins Resp. Mem. [78] at 20–21 (citing *Air Evac EMS, Inc. v. Tex.,
Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)); *see also* Def.'s
Rebuttal [86] at 5 (stating "plaintiff's [s]ection 241 claims against the Secretary fail under Article
III and/or the Eleventh Amendment").

4

19-60662.4860

enforce the statute' and [is] threatening to exercise that duty." *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001) (quoting *Ex parte Young*, 209 U.S. at 157, 158). With these standards in mind, the Court considers sections 241 and 253 separately.

B.     Section 241

Hosemann says he does not enforce section 241, does not investigate or prosecute violations of election laws, does not supervise local election officials, lacks the authority to prohibit felons from registering to vote, and has no duty to remove felons from the voter rolls. Def.'s Mem. [64] at 6. But Plaintiffs argue that Hosemann's responsibilities under state law—particularly the administration of the computerized Statewide Elections Management System ("SEMS")—and his designation as the state's chief election officer under the National Voter Registration Act of 1993 ("NVRA") provide enough basis for Article III standing and trigger the *Ex parte Young* exception to Eleventh Amendment immunity.

Under state statute, "[t]he circuit clerk of each county is authorized and directed to prepare and keep in his or her office a full and complete list . . . of persons convicted of voter fraud or of any crime listed in Section 241, Mississippi Constitution of 1890." Miss. Code § 23-15-151. But the statute goes on to provide that a list of persons convicted of a disenfranchising crime "shall also be entered into [SEMS] on a quarterly basis." *Id.* SEMS is maintained by the Secretary of State and is considered "the official record of registered voters in every county of the state." *Id.* § 23-15-165(1).

Hosemann explains that "the Administrative Office of Courts provides data regarding criminal convictions which is filtered to only include individuals with a conviction of a disenfranchising crime before being loaded into [SEMS]." Hosemann Resp. to Hopkins Interrogs. [63-1] at 44. Then SEMS "provides potential match reporting regarding individuals

5

convicted of a disenfranchising crime and county election officials are trained to only take action upon review of a final sentencing order entered by a court." *Id.* at 49. That training is provided by Hosemann. *See id.* at 48 ("The Secretary of State provides training annually to county election commissioners regarding voter roll maintenance in accordance with Mississippi law and the National Voter Registration Act."); *see also* Miss. Code § 23-15-211(4) (stating Hosemann is responsible for conducting and sponsoring an "elections seminar" attended by county election commissioners). In other words, Hosemann receives information regarding disenfranchising convictions, adds that information to SEMS, and trains county officials on the next step.

In addition, Hosemann is Mississippi's "chief election officer" for purposes of the NVRA, Miss. Code § 23-15-211.1(1), and has "the power and duty to gather sufficient information concerning voting in elections in this state," *id.* § 23-15-211.1(2); *see also* 52 U.S.C. § 20509 ("Each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter."). And while this civil action is not rooted in the NVRA, several courts have held that the designation of "chief election officer" militates in favor of finding Article III standing in various election-law contexts. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 613–14 (5th Cir. 2017) (finding Article III standing, noting that the statute at issue applied to every election, and observing that the Texas Secretary of State was the chief election officer of the state); *Scott v. Schedler*, 771 F.3d 831, 838–39 (5th Cir. 2014) (finding Article III standing and noting the Secretary of State was the chief election officer under the NVRA); *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816, 828–29, 832 (S.D. Tex. 2012) (Costa, J.) (denying Secretary's motion to dismiss for lack of standing and noting that her "argument is at odds with numerous cases in which plaintiffs have sued secretaries of state when challenging voter registration laws even though states commonly

19-60662.4862

delegate voter registration responsibilities to county officials"), *rev'd on other grounds*, 732 F.3d

382; *see also United States v. Missouri*, 535 F.3d 844, 846 n.1 (8th Cir. 2008) (finding that the

Missouri Secretary of State was the proper party to be sued under the NVRA even though

enforcement power was delegated to local officials); *Madera v. Detzner*, 325 F. Supp. 3d 1269,

1276 (N.D. Fla. 2018) (noting the Secretary of State was Florida's chief election officer and

"[t]his statutory job description is not window dressing"). [3]

 Based on these duties, Plaintiffs' injuries are sufficiently traceable to and redressable by

Hosemann to establish Article III standing.  While he may not be the only step in

disenfranchising a voter, he certainly plays a crucial role in the process.  *Compare K.P. v.

LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) (finding redressability was met even though the

defendant was "far from the sole participant in the application of the challenged statute"), *with

Okpalobi*, 244 F.3d at 427 (finding no standing where the state officers did not have "*any duty or

ability to do anything*" in connection with the law at issue (emphasis added)).

 Likewise, for purposes of Eleventh Amendment immunity, Hosemann has "some

connection" with enforcement of section 241, particularly in his role as chief election officer and

administrator of SEMS.  *Ex parte Young*, 209 U.S. at 157; *see Mo. Prot. & Advocacy Servs., Inc.

v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (denying immunity in action challenging voter

disqualification as "incapacitated" and noting that while local election officials had authority to

register voters, the Secretary of State was charged with providing local officials of individuals

deemed incapacitated); *Libertarian Party of Ky. v. Grimes*, 164 F. Supp. 3d 945, 950 (E.D. Ky.

2016) (finding *Ex parte Young* exception applied where Secretary of State provided training to

---

[3] Hosemann also serves on the three-person State Board of Election Commissioners alongside
the Governor and the Attorney General.  Miss. Code § 23-15-211(1).

19-60662.4863

county clerks and therefore had "some control over the perpetuation of the ballot access regime

the [p]laintiffs challenge[d]").[4]

      C.     Section 253

Section 253 presents a much closer question.  It provides:  "The Legislature may, by a

two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person

disqualified by reason of crime; but the reasons therefor shall be spread upon the journals, and

the vote shall be by yeas and nays."  Miss. Const. art. XII, § 253.  The Hopkins Plaintiffs ask the

Court to "[i]ssue a class-wide judgment declaring that the inherently arbitrary and racially

discriminatory legislative process for the restoration of voting rights established by the suffrage

bill provision of the Mississippi Constitution violates the Equal Protection Clause of the

Fourteenth Amendment, as well as the First Amendment."  Hopkins Compl. [1] at 47.

Hosemann says he has no connection to or role in the restoration process:  he is not a

member of the legislature, he does not introduce suffrage bills, and he does not vote on such

bills.  *See* Miss. Const. art. XII, § 253; *see also* Hopkins Compl. [1] at 20 (flow chart detailing

restoration process); Hosemann Resp. to Hopkins Interrogs. [63-1] at 53.  He therefore denies a

causal connection or redressability.

But as noted above, Hosemann is the state's chief election officer and maintains SEMS,

which would presumably be involved in one of the final steps in returning a convicted felon to

---

[4] Hosemann relies in part on *McLaughlin v. City of Canton*, where Judge Henry T. Wingate considered criminal disenfranchisement and held that the Secretary of State was "not a proper party."  947 F. Supp. 954, 965 (S.D. Miss. 1995).  But that case was decided before Mississippi revised its election laws and designated the Secretary of State as the chief election officer.  *See* 2000 Miss. Laws 430 [77-13] (designating the Secretary of State as the chief election officer); 2004 Miss. Laws 305 [77-14] (implementing a statewide centralized voting system).

19-60662.4864

the voting rolls after he or she successfully files a section 253 petition. Though somewhat

distinguishable, the Fifth Circuit faced a similar question in *OCA-Greater Houston*, holding:

> unlike in *Okpalobi*, where the defendants had no "enforcement connection with
> the challenged statute," the Texas Secretary of State is the chief election officer of
> the state and is instructed by statute to obtain and maintain uniformity in the
> application, operation, and interpretation of this code and of the election laws
> outside this code. We are satisfied that OCA has met its burden under *Lujan* to
> show that its injury is fairly traceable to and redressable by the defendants.

867 F.3d at 613–14 (quoting *Okpalobi*, 244 F.3d at 427 n.5) (additional quotation marks and

footnotes omitted). To be sure, Hosemann's role in section 253 is slight, but he does have

"'some connection with the enforcement of the act' in question." *Morris v. Livingston*, 739 F.3d

740, 746 (5th Cir. 2014) (quoting *Okpalobi*, 244 F.3d at 414–15). The Hopkins Plaintiffs have

minimally demonstrated standing and a basis for an *Ex parte Young* claim against Hosemann

challenging section 253.

IV.   Section 241 Merits Analysis

While both the Harness and Hopkins Plaintiffs challenge section 241, they pursue

different theories. As such, the Court will consider the claims separately.

A.      Harness Plaintiffs

Section 241 was adopted in 1890 and disenfranchised citizens found guilty of "bribery,

burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery,

embezzlement[,] [and] bigamy." Harness Am. Compl. [19] at 5. The section was amended in

1950 to remove burglary and again in 1968 to add rape and murder as disenfranchising crimes.

*Id.* at 2. The Harness Plaintiffs take no issue with preventing convicted rapists and murderers

from voting. *Id.* But they say disenfranchisement based on the other crimes carried forward

from the 1890 version violates the Fourteenth and Fifteenth Amendments because those crimes

were selected to suppress black voters. *Id.* at 20.

9

To begin, the United States Supreme Court has expressly held that § 2 of the Fourteenth Amendment affirmatively allows states to deny suffrage to convicted felons. *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974). That does not, however, mean states are free to deny that right for discriminatory reasons. The Supreme Court considered that issue in *Hunter v. Underwood*, where the Court set out a burden-shifting test to determine whether Alabama's felon-disenfranchisement laws violated the Equal Protection Clause. 471 U.S. 222, 227–28 (1985).

Under the *Hunter* test, a plaintiff must show that the law's original enactment was motived by race discrimination and that the law continues to have that effect. *Id.* at 233; *see also id.* at 227–28. If the plaintiff makes those showings, "the burden shifts to the law's defenders to demonstrate that the law would have been enacted without" a racially discriminatory motive. *Id.* at 228.

But *Hunter* left a caveat when it declined to decide "whether [Alabama's disenfranchisement law] would be valid if enacted today without any impermissible motivation . . . ." *Hunter*, 471 U.S. at 233. Based on that language, the Fifth Circuit has held that "substantial, race-neutral alterations in an old unconstitutional law may remove the discriminatory taint." *Veasey v. Abbott*, 888 F.3d 792, 802 (5th Cir. 2018) (citation omitted). And it has applied that rule to section 241.

In *Cotton v. Fordice*, the court observed that Mississippi twice re-enacted section 241 after original adoption:

> Section 241, as enacted in 1890, was amended in 1950, removing "burglary" from the list of disenfranchising crimes. Then, in 1968, the state broadened the provision by adding "murder" and "rape"—crimes historically excluded from the list because they were not considered "black" crimes. Amending § 241 was a deliberative process. Both houses of the state legislature had to approve the amendment by a two-thirds vote. The Mississippi Secretary of State was then required to publish a full-text version of § 241, as revised, at least two weeks before the popular election. *See* Miss. Code Ann. § 4211 (1942); H. Con. Res. 10

10

19-60662.4866

(Miss. 1950); H. Con. R. 5 (Miss. 1968).  Finally, a majority of the voters had to
approve the entire provision, including the revision.  Because Mississippi's
procedure resulted both in 1950 and in 1968 in a re-enactment of § 241, each
amendment superseded the previous provision and removed the discriminatory
taint associated with the original version.

157 F.3d 388, 391 (5th Cir. 1998).  The Fifth Circuit concluded that these amendments fell

within the exception *Hunter* "left open," *id.* at 391, and therefore "*Hunter* does not condemn

§ 241," *id.* at 392.

As discussed next, the Harness Plaintiffs urge the Court to ignore *Cotton* because—

according to them—it was based on an incomplete record, was wrongly decided, and has been at

least tacitly overruled by the United States Supreme Court.

    1.      The Record Evidence

According to the Harness Plaintiffs, the *pro se* plaintiffs in *Cotton* were ill-equipped to

create a record regarding the votes in 1950 and 1968, so the Fifth Circuit failed to consider a

complete picture.  Pls.' Mem. [82] at 14.  They suggest, for instance, that the Fifth Circuit did not

see the ballot language in 1950 and 1968.  *Id.*  As a result, Plaintiffs say the court failed to

consider that neither the legislature nor the electorate were allowed to "vote[ ] on whether to

retain or remove the other crimes on the 1890 list.  Thus, the voters in 1950 and 1968 did not

have to approve the entire list of disenfranchising crimes in Section 241 and were not given the

option to do so."  *Id.* at 13.

This argument goes only so far.  True enough, the ballot language was not in the *Cotton*

appellate record.  But neither the *Cotton* plaintiffs nor the state mentioned the 1950 and 1968

votes in their appellate briefs.  *See* Pls.' Mem. [75] at 12–13.  Instead, the Fifth Circuit raised

those re-enactments *sua sponte*.  And the only way the Fifth Circuit would have been aware of

19-60662.4867

the 1950 and 1968 re-enactments is if it researched the legislative history on its own. Indeed

*Cotton* cites that history. *See* 157 F.3d at 391.

Substantively, the Fifth Circuit's description of what happened in those years shows that

it read the ballot language Plaintiffs now cite. In 1950, the ballot removing burglary from the

disenfranchising offenses read as follows:

> Section 241. Every inhabitant of this state, except idiots, insane persons and
> Indians not taxed, who is a citizen of the United States of America, twenty-one
> years old and upwards, who has resided in this state for two years, and one year in
> the election district, or in the incorporated city or town in which he offers vote,
> and who is duly registered as provided in this article, and who has never been
> convicted of bribery, theft, arson, obtaining money or goods under false pretense,
> perjury, forgery, embezzlement or bigamy, and who has paid on or before the first
> day of February of the year in which he shall offer to vote, all poll taxes which
> may have been legally required of him, and which he has had an opportunity of
> paying according to law, for the two preceding years, and who shall produce to
> the officers holding the election satisfactory evidence that he has paid such taxes,
> is declared to be a qualified elector; but any minster of the gospel in charge of an
> organized church, or his wife legally residing with him, shall be entitled to vote
> after six months' residence in the election district, incorporated city or town, if
> otherwise qualified.
>
> Adopted by the House of Representatives, January 26, 1950.
>
> Adopted by the Senate, February 10, 1950.
>
> For Amendment ………………………………………………………..( )
>
> Against Amendment …………………………………………………...( )

1950 Ballot [74-6] at 1. Similarly, the 1968 ballot that added rape and murder read, in relevant

part, as follow:

> Section 241. Every inhabitant of this State, except idiots and insane persons, who
> is a citizen of the United States of America, twenty-one (21) years old and
> upwards, who has resided in this State for one (1) year, and for one (1) year in the
> county in which he offers to vote, and for six (6) months in the election precinct
> or in the incorporated city of town in which he offers to vote, and who is duly
> registered as provided in this article, and who has never been convicted of
> murder, rape, bribery, theft, arson, obtaining money or goods under false pretense,
> perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector."

19-60662.4868

ADOPTED BY HOUSE OF REPRESENTATIVES:  March 25, 1968.

ADOPTED BY SENATE:  March 25, 1968.

For Amendment …………………………………………………………..(  )

Against Amendment …………………………………………………...(  )

1968 Ballot [74-8] at 1.

      This language mirrors the Fifth Circuit's description of the ballots.  As quoted more fully above, the court recognized that "a majority of the voters had to approve *the entire provision, including the revision*."  *Cotton*, 157 F.3d at 391 (emphasis added).  There is simply no hint that the court mistakenly believed voters did anything other than vote up or down on "the entire provision."  *Id.*  Nor does it appear that the court thought voters were asked to "vote[ ] on whether to retain or remove the other crimes on the 1890 list."  Pls.' Mem. [82] at 13.  Finally, the fact that the ballot language did not allow individual votes on the original crimes does not diminish *Cotton*'s conclusion that the final ballot language resulted from "a deliberative process."  *Cotton*, 157 F.3d at 391.

      That does not, however, end the analysis because *Cotton* itself contains another caveat.  While the Fifth Circuit found that the 1950 and 1968 amendments removed the racial taint from the 1890 enactment, it noted that the section would remain unconstitutional "if the [1950 and 1968] amendments were adopted out of a desire to discriminate against blacks."  *Id.* at 392.  On this issue, Plaintiffs again say they have created a better record.  Although they offer no direct proof of intent, they circumstantially note the racial demographics in 1950 and 1968; Mississippi's sad history of racial strife, especially around those dates; and other unconstitutional legislation passed in or around those years.  Pls.' Mem. [82] at 16–17.

19-60662.4869

Although the Fifth Circuit did not mention this well-known history in *Cotton*, the court was persuaded by the fact that both amendments made changes that cut against stereotypical notions about which disqualifying crimes would hinder black votes. *Cotton*, 157 F.3d at 391. The court found those facts sufficient to hold—as a matter of law—that the current version of section 241 comports with equal protection. *Id.* at 392.

The Fifth Circuit has not abandoned that holding. Just last year, the court cited *Cotton* in *Veasey v. Abbott*, a case upholding a Texas voting law. 888 F.3d 792, 802 (5th Cir. 2018). Though he dissented, Judge James E. Graves, Jr., explored *Cotton* in greater depth than the majority opinion, explaining why the 1950 and 1968 votes severed the original racist intent. *Id.* at 821 (Graves, J., dissenting). As he noted, the changes resulted from a "deliberative process"; the votes occurred "sixty and seventy-eight years, respectively, after [section 241] was first enacted"; and the amendments cut against notions of what were "commonly considered to be 'black' crimes." *Id.*

While it is somewhat unusual for an appellate court to raise a factual issue *sua sponte* and then decide it as a matter of law, that is what happened in *Cotton*. The Court will not assume the Fifth Circuit failed to fully consider its holding. As a result, the Harness Plaintiffs are left arguing that *Cotton* got it wrong. But even if it did, "[i]t has been long established that a legally indistinguishable decision of [the Fifth Circuit] must be followed by . . . district courts unless overruled *en banc* or by the United States Supreme Court." *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992).

2.    Whether *Cotton* Was Overruled

The Fifth Circuit has not overruled *Cotton*, but the Harness Plaintiffs say the Supreme Court abrogated the decision in *Abbott v. Perez*, 138 S. Ct. 2305 (2018). *See* Pl.'s Mem. [75] at

19-60662.4870

15.  Succinctly stated, they believe the events in 1950 and 1968 failed to remove the

discriminatory intent that existed in 1890 because the votes merely amended section 241 and did

not re-enact it.  *Id.*

In *Perez*, the plaintiffs argued that *Hunter* placed the burden on Texas to prove its interim

redistricting plan was not discriminatory.  The Supreme Court rejected that argument noting that

*Hunter* "addressed a very different situation."  *Perez*, 138 S. Ct. at 2325.  But in doing so, the

Court offered the following synopsis of *Hunter*:

> *Hunter* involved an equal protection challenge to an article of the Alabama
> Constitution adopted in 1901 at a constitutional convention avowedly dedicated to
> the establishment of white supremacy.  The article disenfranchised anyone
> convicted of any crime on a long list that included many minor offenses.  The
> court below found that the article had been adopted with discriminatory intent,
> and this Court accepted that conclusion.  The article was never repealed, but over
> the years, the list of disqualifying offenses had been pruned, and the State argued
> that what remained was facially constitutional.  This Court rejected that argument
> because the *amendments* did not alter the intent with which the article, including
> the parts that remained, had been adopted.  *But the Court specifically declined to
> address the question whether the then-existing version would have been valid if
> "[re]enacted today".*

*Id.* (internal citations omitted) (emphasis added).

From this quote, the Harness Plaintiffs say the Court "drew a distinction between" re-

enactments and "'amendments that did not alter the intent.'"  Pls.' Mem. [75] at 15 (quoting

*Perez*, 138 S. Ct. at 2325).  In other words, mere amendments cannot remove discriminatory

taint, whereas re-enactments may.  And because Plaintiffs describe the 1950 and 1968 votes as

mere amendments rather than re-enactments, *Perez* abrogates *Cotton*.  *Id.*

This argument has two flaws.  First, Mississippians voted for the "entire provision," as

amended, leading the Fifth Circuit to conclude that section 241 was "re-enacted."  *Cotton*, 157

F.3d at 391–92); *see also Veasey*, 888 F.3d at 821 (Graves, J. dissenting).  Second, and more

substantively, when the *Perez* Court summarized *Hunter* and described "amendments" to

15

19-60662.4871

Alabama's disenfranchisement laws, it was not attempting to distinguish between voluntary

amendments and re-enactments because there were no voluntary amendments in *Hunter*. 138 S.

Ct. at 2325. Instead, the so-called "amendments" occurred when the offending Alabama statutes

were "struck down by the courts." *Hunter*, 471 U.S. at 233. Significantly, *Cotton* references this

very distinction when declining to follow *Hunter*. As the Fifth Circuit noted, "the voters of

Mississippi willingly broadened [section] 241 through the constitutional amendment process"

which made those changes "fundamentally different" from the judicial pruning that occurred in

*Hunter*. *Cotton*, 157 F.3d at 391 n.8 (characterizing alterations by judicial process as

"'involuntary' amendments"). And because *Perez* does not "directly conflict[ ]" with *Cotton*,

*Cotton* still controls at the district-court level. *Alvarez v. City of Brownsville*, 904 F.3d 382, 398

(5th Cir. 2018).

            3.      The Election Law Reform Task Force

       The history of section 241 does not stop in 1968. Even assuming Plaintiffs are correct as

to the 1950 and 1968 votes, the state revisited section 241 in the mid-1980s. Starting in 1984,

Secretary of State Dick Molpus, a democrat, assembled a bipartisan, biracial Election Law

Reform Task Force (the "Task Force") to review and revise the state's election laws. The Task

Force included members of the legislature, executive-branch officials, circuit clerks, local

election commissioners, and members of the public. Def.'s Evidentiary Submissions [63-2] at

106–07 (outlining purpose); *id.* at 111–13 (listing members). And the Task Force held public

hearings throughout the state, met with representatives of the United States Justice Department,

and received written feedback from organizations and individuals. *Id.* at 114 (noting plans for

public hearings); *id.* at 203 (noting meeting with members of the Voting Rights Section of the

U.S. Department of Justice); *id.* at 115–95.

19-60662.4872

Significantly, the Task Force expressly considered criminal disenfranchisement and whether to expand the list of crimes, amend section 241, or leave the law "as is." *Id.* at 212 (Election Law Reform Task Force- Summary of Action).  In the final report, "[i]t was decided that [the] present law dealing with disenfranchisement of electors for the commission of certain crimes should be left as is.  There was discussion as to the need for a constitutional amendment to change the law to include as disenfranchising crimes all felonies." *Id.*

The state legislature responded to the report by forming its own committees, issuing reports, and proposing legislation.  *Id.* at 216–57.  Prior to the 1986 Regular Session, the House committee, in conjunction with its Senate counterpart, issued a formal report, which proposed changes to section 241 and an effectuating constitutional amendment.  *Id.* at 216-51.  Specifically, as to disenfranchisement, the legislative committee recommended:

> 13.  Disenfranchisement of felons
>     The committee recommends that any person convicted of any felony in this state, in another state or under federal statute, excluding the crim of manslaughter and felonious violations of the Internal Revenue Code, shall not be permitted to register to vote, or to vote; and if registered the felon's name shall be removed from the registration rolls.  Upon completion of his prison sentence, including any probationary period, the felon will be eligible to register to vote upon presenting to his county registrar certifiable documentation that the sentence has been discharged.

*Id.* at 239–40.

Following the report, legislators introduced 1986 Senate Bill 2234 ("S.B. 2234"), which would have included the recommended language broadening section 241 to all felonies except manslaughter and tax violations.  *Id.* at 255, 257 (Proposed House Amendment to Senate Bill No. 2234).  But those changes did not survive the legislative process and were cut from the bill that passed the 1986 legislative session.  *Id.* at 259–62.  Instead, the legislature adopted the Task Force's recommendation and opted to keep the original list of crimes from section 241 and

19-60662.4873

amend the Mississippi Code to make it consistent with section 241. *Id.* at 260; *see also* Miss. Code § 23-15-11 (identifying qualified voters as those who have "never been convicted of vote fraud *or of any crime listed in Section 241*, Mississippi Constitution of 1890" (emphasis added)). The legislation passed 118-3 in the House and 51-1 in the Senate. Def.'s Evidentiary Submission [63-2] at 263. It was then precleared by the Department of Justice under Section 5 of the Voting Rights Act.

There is no argument or evidence that either the Task Force or the legislature was tainted with racial animus or by a desire to perpetuate a racially motivated voting scheme. So, according to Hosemann, *if* the burden shifts to him under *Hunter*, he has demonstrated that section 241 "would have been enacted without" racial animus. Def.'s Mem. [64] at 11 (citing *Hunter*, 471 U.S. at 228).

The Harness Plaintiffs say Hosemann has not met that burden for two primary reasons. First, they say the Mississippi legislature merely amended the Mississippi Code "to conform the statute to the Constitution." Pls.' Mem. [82] at 22. In other words, it did not amend the offending constitutional provision, which therefore carries over the discriminatory intent. They also argue that even if the legislature considered amending section 241, there was no statewide vote. *Id.*

But as discussed already, the amendment to the Mississippi Code followed a multi-year, biracial, bipartisan review of Mississippi's election laws that expressly considered criminal disenfranchisement and whether section 241 should be amended. At the end, an overwhelming majority of the legislature decided to leave section 241 alone and instead amend the other election laws to conform with it. This is not a case like *Hunter* where the state itself did nothing to cure the defect, nor was a constitutionally infirm statute "perpetuated into the future by neutral

18

19-60662.4874

official action." *Kirksey v. Bd. of Sup'rs of Hinds Cty.*, 554 F.2d 139, 148 (5th Cir. 1977). The unrebutted history shows the state would have passed section 241 as is without racial motivation. Finally, Plaintiffs cite no authority suggesting that a statewide vote—as opposed to this thorough representative process—is necessary to remove the racist taint that attached to section 241 more than 100 years earlier.[5]

For all the reasons stated in this section, Defendant's motion for summary judgment on the Harness Plaintiffs' section 241 claims is granted.

B.    Hopkins Plaintiffs

The Hopkins Plaintiffs challenge section 241 under the Eighth and Fourteenth Amendments.

1.    Fourteenth Amendment Equal Protection

Unlike the Harness Plaintiffs, the Hopkins Plaintiffs offer a non-racial approach to their equal-protection claim. According to them, section 241 cannot survive strict scrutiny under § 1 of the Fourteenth Amendment because it is "not narrowly drawn to address a compelling state interest using the least drastic means." Pls.' Mem. [73] at 38 (citing *Dunn v. Blumstein*, 405 U.S. 330, 337, 342–43 (1972)).

The plaintiffs in *Richardson v. Ramirez* said the same thing. 418 U.S. at 27. There, three convicted felons alleged that California's constitution—which "disenfranchised persons convicted of an 'infamous crime'"—failed the strict-scrutiny test and therefore violated § 1's

---

[5] Hosemann does not directly argue that these facts implicate the *Cotton* analysis, but perhaps he should have. *Cotton* was based on the observation in *Hunter* that the Court did not consider whether the law would be valid "if enacted today without any impermissible motivation." *Hunter*, 471 U.S. at 233. In this case, Mississippi voted to keep section 241 as is and codified the implementing statutes to conform with it. Thus, "[t]he passage of time and the actions of intervening parties [appears to have] cut that thread of [racist] intent." *Veasey*, 888 F.3d at 821 (Graves, J., dissenting).

19-60662.4875

Case 3:17-cv-00791-DPJ-FKB   Document 91   Filed 03/07/19   Page 20 of 29

equal-protection guarantee. *Id.* The Supreme Court of California agreed, *id.* at 33–34, but the United States Supreme Court reversed. As the high Court noted, § 2 of the Fourteenth Amendment acknowledges a state's right to exclude convicted felons from the franchise, *id.* at 55–56.

Section 2 provides a penalty when a state denies or abridges the right to vote. Edited for clarity, the section provides:

> Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State . . . . But when the right to vote at any election . . . is denied to any of the male inhabitants of such State . . . , or in any way abridged, *except for participation in rebellion, or other crime,* the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

U.S. Const. amend. XIV, § 2 (emphasis added). The *Richardson* Court held that because § 2 "affirmative[ly] sanction[ed]" a state's right to deny the franchise based on a criminal conviction, doing so cannot violate § 1 of that same amendment. 418 U.S. at 54.

Plaintiffs know *Richardson* is a problem and try to distinguish it by offering a different construction of § 2. According to them, the phrase "other crime" in § 2 modifies only the word "abridged" and not the word "denied." Pls.' Mem. [73] at 28. So construed, § 2 would recognize a state's right to *abridge* the voting rights of someone who commits a crime—i.e., temporarily disenfranchise that person—but not the right to permanently *deny* the franchise. *Id.* Thus, Plaintiffs say strict scrutiny applies to laws—like Mississippi's section 241—that *deny* the franchise based on a criminal conviction.

Plaintiffs insist that *Richardson* is not binding because the Court never considered their textual argument. But even assuming the Supreme Court overlooked this alternative construction, its holding is squarely on point. "[T]he specific holding of the Court was that a

19-60662.4876

state may deny the franchise to that group of 'convicted felons who have completed their sentences and paroles.'"  *Shepherd v. Trevino*, 575 F.2d 1110, 1114 (5th Cir. 1978) (quoting *Richardson*, 418 U.S. at 56).

That holding remains binding.  And as the Fifth Circuit stated in *Cotton*, "Section 2 of the Fourteenth Amendment does not prohibit states from disenfranchising convicted felons."  157 F.3d at 391 (citing *Richardson*, 418 U.S. at 24, 54).  Other circuits have reached the same conclusion.  *See Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Richardson* and stating "it is well established that Section 2 of the Fourteenth Amendment gives states the 'affirmative sanction' to exclude felons from the franchise"); *Hand v. Scott*, 888 F.3d 1206, 1209 (11th Cir. 2018) (noting the Supreme Court "has held that 'the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment'" (quoting *Richardson*, 418 U.S. at 54)); *Hayden v. Pataki*, 449 F.3d 305, 315 (2d Cir. 2006) ("The Supreme Court has ruled that, as a result of [§ 2], felon disenfranchisement provisions are presumptively constitutional."); *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1225 (11th Cir. 2005) (listing cases, including *Richardson*, recognizing "the propriety of excluding felons from the franchise"); *Harvey v. Brewer*, 605 F.3d 1067, 1079 (9th Cir. 2010) ("That is, once a felon is properly disenfranchised a state is at liberty to keep him in that status indefinitely and never revisit that determination." (citing *Richardson*, 418 U.S. at 26–27)).  Based on *Richardson* and *Cotton*, the Court must reject Plaintiffs' argument.[6]

---

[6] Plaintiffs apparently anticipated this holding.  *See* Pls.' Mem. [73] at 43 (stating that if Court finds *Richardson* applicable, "Plaintiffs present these arguments to preserve the issue for appeal").

19-60662.4877

2.    Eighth Amendment Cruel and Unusual Punishment

The Hopkins Plaintiffs also say section 241 violates the Eighth Amendment's prohibition

against cruel and unusual punishment.  While they offer a detailed analysis under that

amendment, their argument again conflicts with § 2 of the Fourteenth Amendment.  Simply put,

it would be internally inconsistent for the Eighth Amendment to prohibit criminal

disenfranchisement while § 2 of the Fourteenth Amendment permits it.  As aptly stated by the

district court in *Farrakhan v. Locke*,

> Plaintiffs also claim that Washington's felon disenfranchisement law violates free
> speech, double jeopardy and the prohibition of cruel and unusual punishment
> under the First, Fifth, and Eighth Amendments to the Constitution.  In order to
> uphold these claims against Defendants' motion to dismiss, the Court would have
> to conclude that the same Constitution that recognizes felon disenfranchisement
> under § 2 of the Fourteenth Amendment also prohibits disenfranchisement under
> other amendments.  The Court is not inclined to interpret the Constitution in this
> internally inconsistent manner or to determine that the Supreme Court's
> declaration of the facial validity of felon disenfranchisement laws in *Richardson
> v. Ramirez* was based only on the fortuity that the plaintiffs therein did not make
> their arguments under different sections of the Constitution.  While discussing the
> precedent leading up to its decision in *Richardson*, the Court wrote that "recently
> we have strongly suggested in dicta that exclusion of convicted felons from the
> franchise violates no constitutional provision."  *Richardson*, 418 U.S. at 53, 94 S.
> Ct. at 2670.  This language in *Richardson* suggests that the facial validity of felon
> disenfranchisement may be absolute.  The Court concurs with this application to
> the case at hand.

987 F. Supp. 1304, 1314 (E.D. Wash. 1997).  Summary judgment is appropriate as to the

Hopkins Plaintiffs' Eight Amendment claim.[7]

---

[7] In *Graham v. Connor*, the United States Supreme Court held that claims related to search-and-
seizure violations fall under the Fourth Amendment rather than the substantive-due-process
provisions found in the Fourteenth Amendment.  490 U.S. 386, 395 (1989).  It did so because
"the Fourth Amendment provides an explicit textual source of constitutional protection against
this sort of physically intrusive governmental conduct," whereas the Fourteenth Amendment
addressed "the more generalized notion of 'substantive due process.'"  *Id.*  In a similar sense, § 2
of the Fourteenth Amendment "affirmative[ly] sanction[s]" a state's right to deny the franchise
based on a criminal conviction whereas the Eight Amendment does not mention voting rights.
*Richardson*, 418 U.S. at 54.

19-60662.4878

V.     Section 253

As noted earlier, section 253 provides a legislative process by which a convicted felon

can regain the right to vote.  Under that provision, "[t]he Legislature may, by a two-thirds vote of

both houses, of all members elected, restore the right of suffrage to any person disqualified by

reason of crime."  Miss. Const. art. XII, § 253.

The Hopkins Plaintiffs make three primary arguments for invalidating section 253:  (1) it

violates the First Amendment because legislators have unfettered discretion to prevent speech;

(2) it violates equal protection because it includes no objective standards for determining who is

entitled to relief; and (3) it was adopted for racist reasons and therefore violates equal protection

as proscribed in *Hunter*.  The Court will address each argument.

A.     First Amendment

"[T]he First Amendment provides no greater protection for voting rights than is otherwise

found in the Fourteenth Amendment."  *Hand*, 888 F.3d at 1211; *see also id.* at 1212 ("Every

First Amendment challenge to a discretionary vote-restoration regime we've found has been

summarily rebuffed.").  The Court therefore dismisses the First Amendment claim.[8]

_____

[8] Plaintiffs cite *Hand* to support their First Amendment claim, asserting "[t]he Eleventh Circuit
expressly recognized that 'a discretionary felon-reenfranchisement scheme that was facially or
intentionally designed to discriminate . . . might violate the First Amendment.'" Pls.' Mem. [78]
at 18 (quoting *Hand*, 888 F.3d at 1211–12).  But what Plaintiffs left out of that sentence makes
all the difference.  The court was addressing schemes "designed to discriminate *based on
viewpoint—say, for example, by barring Democrats*."  *Hand*, 888 F.3d at 1211 (emphasis added
to language deleted from Plaintiffs' memorandum).  Plaintiffs' use of an ellipses is at best
suspect, and they never acknowledge that the *Hand* court rejected their argument.  While *Hand* is
not binding, it is persuasive.

23

B.    Arbitrary Re-enfranchisement

Plaintiffs are correct that section 253 provides no "objective standards."  Pls.' Mem. [73]

at 44.   Instead, the provision allows the legislature to consider petitions on a case-by-case basis,

which Plaintiffs attack on two grounds.  First, they say "the Fifth Circuit has twice instructed that

arbitrary disenfranchisement or re-enfranchisement of individuals convicted of disenfranchising

offenses violates the Equal Protection Clause."  Pls.' Mem. [73] at 43–44 (citing *Williams v.*

*Taylor*, 677 F.2d 510 (5th Cir. 1982); *Shepherd*, 575 F.2d 1110).  But neither case actually

addresses Plaintiffs' argument that standardless re-enfranchisement laws violate equal protection.

In *Shepherd v. Trevino*, the Fifth Circuit reviewed and upheld a Texas law that provided

"for the reenfranchisement of convicted state felons who satisfactorily complete the terms of

their probation without providing a similar mechanism for the reenfranchisement of successful

federal probationers."  575 F.2d at 1111.  In doing so, the court made the unremarkable

observation that re-enfranchisement laws may not discriminate based on race by, for example,

"disenfranchis[ing] all felons and then reenfranchis[ing] only those who are, say, white.  Nor can

we believe that [§] 2 would permit a state to make a completely arbitrary distinction between

groups of felons with respect to the right to vote."  *Id.* at 1114.   But *Shepherd* did not address

standardless re-enfranchisement mechanisms as Plaintiffs suggest.  *See* Pl.'s Mem. [73] at 44.

Indeed the mechanism it approved gave courts discretion when restoring voting rights.

*Shepherd*, 575 F.2d at 1115.

*Williams v. Taylor* is no better.  There, a black voter challenged his disenfranchisement

based on a prior conviction because white voters had not been disenfranchised.  677 F.2d at 514.

To begin with, *Williams* was not a re-enfranchisement case.  Nevertheless, Plaintiffs note that the

court reversed summary judgment and allowed the plaintiff the "chance to prove his claim of

24

19-60662.4880

selective and arbitrary enforcement of the disenfranchisement procedure." *Id.* at 517.  In doing

so, the Fifth Circuit held that the plaintiff had no right to vote, but that he did have "the right not

to be the arbitrary target of the Board's enforcement of the statute." *Id.* at 517.  As in *Shepherd*,

the case asked whether the plaintiff had been treated differently, not whether the law violated

equal protection for lack of objective standards.

Plaintiffs' second argument likewise misses the mark.  They say "[t]he Supreme Court

has repeatedly struck down voter eligibility-related laws that are as 'completely devoid of

standards and restraints' as Mississippi's suffrage restoration provision."  Pls.' Mem. [73] at 44.

But they support that statement by citing only disenfranchisement cases, and there is a

substantive difference.   As the Supreme Court has noted, re-enfranchisement does not remove a

protected interest but is instead a matter of clemency.  *See, e.g.*, *Conn. Bd. of Pardons v.*

*Dumschat*, 452 U.S. 458, 465 (1981).

In the re-enfranchisement context, *Hand* is again helpful.  There, the plaintiff disputed the

lack of standards for pardon petitions on equal-protection grounds.  888 F.3d at 1208.  But the

Eleventh Circuit concluded that the Supreme Court foreclosed the argument in *Beacham v.*

*Braterman*, 300 F. Supp. 182 (S.D. Fla. 1969), *aff'd* 396 U.S. 12 (1969).  The *Hand*

court also noted "[o]ther precedents confirm[ing] the broad discretion of the executive to grant and deny

clemency," often with "unfettered discretion."  888 F.3d at 1209 (collecting cases).  The Hopkins

Plaintiffs understandably observe that these cases deal with the executive branch—though

*Shepherd* dealt with similar discretion vested in the judicial branch.  575 F.2d at 1113.  But

Plaintiffs have not demonstrated that the legislative branch should be treated any differently.

Plaintiffs have also failed to satisfy their burden under the rational-basis test.  *See*

*Shepherd*, 575 F.2d at 1115.  Plaintiffs say in their response to Hosemann's motion that the

19-60662.4881

Secretary of State has not shown section 253 is rationally related to a legitimate governmental interest.  Pls.' Mem. [78] at 46.  To begin with, it is not enough for Plaintiffs to say the state failed to demonstrate a rational basis when it is Plaintiffs' burden to make that showing.  *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 350 (5th Cir. 2013).  Substantively, "[a] state properly has an interest in excluding from the franchise persons who have manifested a fundamental antipathy to the criminal laws of the state or of the nation by violating those laws sufficiently important to be classed as felonies."  *Shepherd*, 575 F.2d at 1115.  And Plaintiffs offered no reply when Hosemann demonstrated that section 253 is rationally related to this legitimate governmental interest.  *See* Def.'s Mem. [80] at 38.

In sum, Plaintiffs' authority does not address standardless re-enfranchisement mechanisms under an equal-protection analysis, and they have otherwise failed to meet their burden under the rational-basis test.  Plaintiffs' cited authority does, however, address equal protection where a re-enfranchisement law is allegedly applied in a discriminatory way.  *See Shepherd*, 575 F.2d at 1115.  And that issue folds into Plaintiffs' *Hunter* argument—whether section 253 was adopted with the intent to discriminate and has that effect.  *Hunter*, 471 U.S. at 227.

C.    *Hunter* Analysis

The parties dispute whether the Hopkins Plaintiffs presented sufficient record evidence of (1) discriminatory intent in 1890 and (2) racial impact—the first two prongs of the *Hunter* burden-shifting analysis.  Unlike the section 241 analysis under *Cotton*, there is no Fifth Circuit authority dictating the result of this claim.  Moreover, both parties submit record evidence regarding Plaintiffs' required showing.  That evidence must be viewed in the light most

19-60662.4882

Case: 3:17-cv-00791-DPJ-FKB    Document: 91    Filed: 03/07/19    Page: 27 of 29

favorable to the non-movant on each cross motion, which produces questions of fact on whether Plaintiffs met their burden under *Hunter*.

That said, Hosemann also argues that the Task Force and legislative processes in the mid-1980s satisfy the third prong of the *Hunter* analysis as to section 253. Unlike section 241, the legislature did not pass any laws that impacted section 253. Re-enfranchisement was, however, considered. Primarily, both the House and Senate committees jointly recommended eliminating section 253 and allowing convicted felons to regain the right to vote after completing their sentences and probation. *See* Def.'s Evidentiary Submissions [63-2] at 239–41 (Election Law Reform Study Committee Recommendations). But by the time S.B. 2234 was filed, that recommendation was absent. *Id.* at 255 (Proposed House Amendment to Senate Bill No. 2334). The Court could not find in this record what happened to the suggested amendment or whether it was ever voted on by either chamber.

Hosemann does not suggest that these facts trigger the *Cotton* analysis. As for *Hunter*, the Hopkins Plaintiffs say that absent re-enactment, the Court must limit its review to what happened in 1890. Even assuming the evidence from the 1980s impacts Hosemann's final burden under *Hunter*, the record is not sufficient to hold—as a matter of law—that either party is entitled summary judgment on that factual issue. Moreover, both parties offer conflicting evidence as to the intent in 1890. Again, the evidence is viewed in the light most favorable to the non-movant, which precludes summary judgment as to original intent for enacting section 253.

19-60662.4883

VI.     Conclusion

        The parties presented extensive briefing.  And while not all arguments are reflected in

this Order, all arguments raised were considered.  Those not addressed would not have changed

the outcome.

        With respect to section 241, this Court is bound by the precedent set by the United States

Supreme Court in *Richardson v. Ramirez* and the Fifth Circuit Court of Appeals in *Cotton v.*

*Fordice*.  For that and the other stated reasons, Defendant's motion for summary judgment [63]

as to the Harness Plaintiffs is granted; the Harness Plaintiffs' summary-judgment motion [74] is

denied; and the Harness Complaint is severed and dismissed.  A separate judgment will be

entered in the severed Harness case in accordance with Federal Rule of Civil Procedure

58.  Defendant's motion for summary judgment [66] as to the Hopkins Plaintiffs is granted in

part and denied in part—granted as to section 241 and denied as to section 253; and the Hopkins

Plaintiffs' motion for summary judgment [74] is denied as to both sections 241 and 253.

        Finally, the court certifies all holdings in the still open Hopkins case for interlocutory

appeal.   The Court believes this order involves several controlling questions of law as to which

there is substantial ground for difference of opinion.  *See* 28 U.S.C. § 1292.  Moreover, an

immediate appeal from the order may materially advance the ultimate termination of the

litigation.  *Id.*  As noted, the Harness and Hopkins plaintiffs made different arguments as to

section 241, and if the Harness Plaintiffs appeal, then the Fifth Circuit should consider the

Hopkins Plaintiffs' legal-construction arguments at the same time.  Regarding section 253,

Hosemann may elect to appeal the standing holding and the holding regarding the implications of

the 1986 committee reports recommending deletion of section 253.  Likewise, plaintiffs may

wish to appeal the holding that their claim raises no recognized equal-protection rights.  Any one

19-60662.4884

of these or the other issues would materially impact the trial of this matter, and the Court also wishes to avoid piecemeal appeals.  For these reasons, all issues are certified.

   Finally, the Court anticipates an appeal and therefore stays the Hopkins case until the appeal is concluded or the parties indicate that no appeal will be filed and request pre-trial conference.

   **SO ORDERED AND ADJUDGED** this the 7th day of August, 2019.

<div align="right">

s/ *Daniel P. Jordan III*    
CHIEF UNITED STATES DISTRICT JUDGE

</div>

19-60662.4885

**Tab 4**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**DENNIS HOPKINS, ET AL.**                                     **PLAINTIFFS**

**V.**                              **CIVIL ACTION NO. 3:18cv188-DPJ-FKB**

**SECRETARY OF STATE DELBERT HOSEMANN,**
**in his official capacity**                                    **DEFENDANT**

―――――――――――――――――――――――――――――――――――――――――

## NOTICE OF APPEAL

―――――――――――――――――――――――――――――――――――――――――

      Defendant Secretary of State Delbert Hosemann, in his official capacity, acting

pursuant to Rule 3 of the Federal Rules of Appellate Procedure, hereby appeals this

Court's August 7, 2019 order, [Dkt. 21; Dkt. 91, No. 3:17cv791-DPJ-FKB[1]], denying

Secretary Hosemann summary judgment on Eleventh Amendment immunity, and other

jurisdictional grounds, to the United States Court of Appeals for the Fifth Circuit.

Jurisdiction of this appeal from the denial of Secretary Hosemann's claim of Eleventh

Amendment immunity, and related subject-matter jurisdictional issues, is proper

pursuant to the collateral order doctrine. *E.g.*, ***Keyes v. Gunn***, 890 F.3d 232, 235 n.4

(5th Cir. 2018); ***Bryant v. Texas Department of Aging and Disability Services***,

781 F.3d 764, 768 (5th Cir. 2015).[2]

―――――――――――――――――――

[1]  The August 7, 2019 order was initially docketed in Civil Action No. 3:17cv791-DPJ-FKB, and this case was consolidated with No. 3:17cv791-DPJ-FKB for all purposes prior to entry of the order. Due to the consolidation, the record on appeal should include all docket entries filed on or before August 7, 2019 in No. 3:17cv791-DPJ-FKB.

[2]  Secretary Hosemann and the plaintiffs have each filed petitions seeking interlocutory appeal from this Court's August 7, 2019 order pursuant 28 U.S.C. § 1292(b). Those petitions are currently pending before the United States Court of Appeals for the Fifth Circuit and assigned Fifth Circuit Cause No. 19-00024. Should the Fifth Circuit grant an interlocutory appeal from the August 7 order pursuant to § 1292(b), this appeal authorized by the collateral order doctrine should be consolidated and merged with it.

THIS the 3rd day of September, 2019.

Respectfully submitted,

DELBERT HOSEMANN,
SECRETARY OF STATE OF MISSISSIPPI

BY:    JIM HOOD, ATTORNEY GENERAL

By:    Justin L. Matheny (Bar No. 100754)
       Krissy C. Nobile (Bar No. 103577)
       Office of the Attorney General
       P.O. Box 220
       Jackson, MS 39205
       Telephone: (601) 359-3680
       Facsimile: (601) 359-2003
       *jmath@ago.state.ms.us*
       *knobi@ago.state.ms.us*

       *Counsel for Defendant Secretary of State*
       *Delbert Hosemann, in his official capacity*

19-60662.515

**Tab 5**

No. 19-_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**DENNIS HOPKINS; HERMAN PARKER, JR.; WALTER WAYNE KUHN, JR.; BYRON DEMOND COLEMAN; JON O'NEAL; and EARNEST WILLHITE, individually and on behalf of a class of all others similarly situated,**

*Plaintiffs – Respondents*

### VERSUS

**SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity**

*Defendant – Petitioner*

## PETITION FOR PERMISSION TO APPEAL UNDER FED. R. APP. P. 5 AND 28 U.S.C. § 1292(b) BY SECRETARY OF STATE DELBERT HOSEMANN, IN HIS OFFICIAL CAPACITY

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
## NO. 3:18-CV-188-DPJ-FKB

Justin L. Matheny, MSB # 100754
Krissy C. Nobile, MSB # 103577
STATE OF MISSISSIPPI
ATTORNEY GENERAL'S OFFICE
Post Office Box 220
Jackson, Mississippi 39205-0220
Telephone: (601) 359-3824
jmath@ago.ms.gov
knobi@ago.ms.gov
*Counsel for Defendant-Petitioner*



EXHIBIT
A

i

19-60662.312

## CERTIFICATE OF INTERESTED PARTIES

*Hopkins et al. v. Hosemann, Case No. _____*

Undersigned counsel certifies that the following listed persons have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1. Dennis Hopkins, Herman Parker, Jr., Walter Wayne Kuhn Jr., Byron Demond Coleman, Jon O'Neal, and Earnest Willhite, Plaintiffs-Respondents;

2. Janet A. Gochman, Isaac Rethy, Jonathan K. Youngwood, Nihara Karim Choudhri, Tyler A. Anger, Simpson, Thacher & Bartlett, LLP, Attorneys for Plaintiffs-Respondents;

3. Paloma Wu, Lisa S. Graybill, The Southern Poverty Law Center, Attorneys for Plaintiffs-Respondents;

4. Secretary of State Delbert Hosemann, in his official capacity, Defendant-Petitioner;

5. Justin L. Matheny, Krissy C. Nobile, Mississippi Office of the Attorney General Attorney, Attorneys for Defendant-Petitioner;

SO CERTIFIED, this the 19th day of August, 2019.

/s/ *Krissy C. Nobile*
Krissy C. Nobile

19-60662.313

Case 3:18-cv-00188-DPJ-KJS Document 25-1 Filed 06/19/19 Page 3 of 58

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES ........................................................ ii

TABLE OF CONTENTS........................................................................................ iii

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION .................................................................................................1

QUESTIONS PRESENTED...................................................................................4

RELIEF SOUGHT .................................................................................................4

FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED ....4

    A. Felon Disenfranchisement and Re-enfranchisement in Mississippi. ...............5

    B. Procedural Background of this Litigation. ........................................................7

REASONS FOR PERMITTING THE APPEAL .....................................................9

    A. This Appeal Involves Controlling Questions of Law.....................................10

    B. The District Court Concluded that Substantial Grounds Exist for Difference of Opinion Regarding the Controlling Questions of Law. ...................................13

    C. An Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation.......................................................................................................17

CONCLUSION .....................................................................................................19

CERTIFICATE OF SERVICE .............................................................................20

CERTIFICATE OF COMPLIANCE......................................................................22

19-60662.314

# TABLE OF AUTHORITIES

**CASES:** ...................................................................................................... Page(s)

*APCC Servs., Inc. v. Sprint Commc'ns Co., L.P.*
  297 F. Supp. 2d 90 (D.D.C. 2003)........................................................17

*Coates v. Brazoria County Tex.*
  919 F. Supp. 2d 863 (S.D. Tex. 2013).................................................18

*Coleman v. Miller*
  117 F.3d 527 (11th Cir. 1997) ...........................................................15

*Cotton v. Fordice*
  157 F.3d 388 (5th Cir. 1998) ....................................................... passim

*DuPree v. Kaye*, No. 3:07-cv-0768-B
  2008 WL 294532 (N.D. Tex. Feb. 4, 2008) ........................................12

*E.F. Hutton v. Hadley*
  901 F.2d 979 (11th Cir. 1990) ...........................................................11

*Hunter v. Underwood*
  471 U.S. 222 (1985)..................................................................... passim

*In re Delta Produce*, No. BR 12-50073- a998
  2013 WL 3305537 (W.D. Tex. June 28, 2013) ..................... 10, 13, 17

*Joe Grasso & Son, Inc. v. U.S.*
  42 F.R.D. 329 (S.D. Tex. 1966).........................................................18

*Johnson v. Governor of Fla.*
  405 F.3d 1214 (11th Cir. 2005) .................................................. 16, 17

19-60662.315

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in*
  *Amministrazione Straordinaria*
  921 F.2d 21 (2d Cir. 1990) ...............................................................12

*Martin v. Haliburton*
  618 F.3d 476 (5th Cir. 2010) ............................................................19

*McCleskey v. Kemp*
  481 U.S. 279 (1987)........................................................................16

*Morales v. Redco Transp. Ltd.*, No. 5:14-cv-129
  2016 WL 7734647 (S.D. Tex. Jan. 13, 2016).......................................13

*Okpalobi v. Foster*
  244 F.3d 405 (5th Cir. 2001) .............................................................1

*Richardson v. Ramirez*
  418 U.S. 24 (1974)..........................................................................11

*Rico v. Flores*
  481 F.3d 234 (5th Cir. 2007) ............................................................10

*Ryan v. Flowserve Corp.*
444 F. Supp. 2d 718 (N.D. Tex. 2006) ................................................13

*Tesco Corp. v. Weatherford Int'l, Inc.*
  722 F. Supp. 2d 755 (S.D. Tex. 2010)....................................... 12, 17, 18

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*
  429 U.S. 252 (1977)................................................................. 14, 16

*Washington v. CSC Credit Services, Inc.*
  199 F.3d 263 (5th Cir. 2000) ............................................................11

v

19-60662.316

Case 3:18-cv-00188-DPJ-FKB  Document 29-1  Filed 08/19/19  Page 6 of 58

**FEDERAL STATUTES:**

28 U.S.C. § 1292(b) ................................................................................ passim

**STATE STATUTES:**

Miss. Const. art. 12, § 241 ...................................................................... 5, 6, 7

Miss. Const. art. 12, § 253 .................................................................... 6, 9, 10

**FEDERAL RULES:**

Fed. R. App. P. 5 .......................................................................................... i

Fed. R. App. P. 5(c) ....................................................................................22

Fed. R. App. P. 32(a)(5) ..............................................................................22

Fed. R. App. P. 32(a)(6) ..............................................................................22

Fed. R. App. P. 32(f) ...................................................................................22

Federal Rule of Civil Procedure 42 ...............................................................8

Fifth Circuit Rule 5(b)(1)(E) ..........................................................................2

19-60662.317

## INTRODUCTION

This Petition raises two controlling questions of law on which the district court reasoned that substantial grounds for difference of opinion exist. The first question of law centers on whether there is federal jurisdiction. Specifically, whether the Eleventh Amendment and the latter two elements of Article III standing (causation and redressability) have been satisfied. The second issue raises questions related to the burden-shifting framework set forth in *Hunter v. Underwood*, 471 U.S. 222 (1985), which this Court addressed in *Cotton v. Fordice*, 157 F.3d 388 (5th Cir. 1998). For the same reasons the district court articulated, this Court should grant interlocutory review of these questions pursuant to 28 U.S.C. § 1292(b).

Starting with the jurisdictional question, in a suit against state officials for injunctive relief, a plaintiff does not have Article III standing with respect to those officials who are powerless to remedy the alleged injury. *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (en banc). Here, plaintiffs seek a "class-wide judgment" enjoining Secretary of State Delbert Hosemann, in his official capacity, and declaring as unconstitutional the "legislative process for the restoration of voting rights established by the suffrage bill provision" of Article 12, § 253 of the Mississippi Constitution.

The only named defendant in plaintiffs' lawsuit is the Secretary of State, in his official capacity. But the Mississippi Secretary of State plays no role—at all—in

1

the legislative process for the restoration of voting rights. The district court nonetheless found the requirements of the Eleventh Amendment and Article III standing "minimally" satisfied. [Exhibit 1 (Dkt. 91 at 9)].[1]

At the same time, though, the court reasoned that whether it had jurisdiction was a "close[ ] question," and *sua sponte* concluded that the question presents substantial ground for difference of opinion. Accordingly, whether the Secretary has the proper connection to § 253's legislative process is a controlling question of law, and this Court should review it on interlocutory appeal because reversal of the lower court will ultimately terminate plaintiffs' constitutional challenge to § 253.

Separately, the district court's Order certified under § 1292(b) also addressed the merits of plaintiffs' constitutional challenge. The challenge at issue in this Petition is a race-based equal protection challenge to § 253. According to plaintiffs, § 253 is unconstitutional because it allegedly was enacted with racial motivation in 1890. But, at summary judgment, plaintiffs failed to offer proof of any present-day unconstitutional effects of § 253. *Hunter,* 471 U.S. at 233. As suggested by the district court, this Court should review whether plaintiffs' failure to prove present-day disparate impact is fatal to their equal protection challenge.

---

[1] As discussed more *infra*, this litigation arises out of consolidated cases. The district court's summary judgment Order that was certified pursuant to § 1292(b) is Docket Entry No. 91 in Cause No. 3:17-cv-00791-DPJ-FKB. It also is attached as Exhibit 1 to this Petition. This Petition cites to the district court's attached Orders pursuant to Fifth Circuit Rule 5(b)(1)(E) using this format: [Petition Exhibit Number (Docket Number Below at Page Number)]. Any other relevant docket entries are cited to using this format: [Docket Number Below at Page Number].

2

What's more, there not only is a controlling question of law as to whether plaintiffs satisfied their burden, but there is a separate question as to whether the Secretary nonetheless met his burden under the *Hunter* analysis as a matter of law. As this Court put it in *Cotton*, *Hunter* "left open" the possibility that "a facially neutral provision. . . might overcome its odious origin." *Cotton*, 157 F.3d at 391 and n.7. Although § 253 reads the same today as it did in 1890, the Mississippi Legislature returned to the issue of legislative re-enfranchisement in the 1980s and opted to keep § 253's suffrage bill provision.

Additionally, § 253 was enacted 129 years ago, and it is a device that requires the action of a decision-making body (*i.e.*, the present-day Mississippi Legislature) to be implicated at all. Nevertheless, plaintiffs failed to prove any present-day discrimination in the Legislature's application of § 253.

For these reasons, the district court correctly determined that there exists a substantial ground for difference of opinion as to whether plaintiffs' race-based equal protection challenge to § 253 fails as a matter of law. [Exhibit 1 (Dkt. 91 at 28)]. Moreover, the district court has stayed this case, reasoning that it "anticipates an appeal." [Exhibit 1 (Dkt. 91 at 29)]. Thus, consistent with the district court's § 1292(b) certification, the Secretary requests that this Court grant interlocutory review of the district court's August 7, 2019 Order.

3

19-60662.320

## QUESTIONS PRESENTED

Article 12, § 253 of Mississippi's Constitution provides one of the State's discretionary mechanisms for felons to regain their voting rights through suffrage bills considered and passed by the Mississippi Legislature. The plaintiffs in this case challenge on constitutional grounds § 253's legislative process providing for the restoration of voting rights. Does Article III and/or the Eleventh Amendment bar a claim against the Mississippi Secretary of State when he plays no role whatsoever in the legislative process plaintiffs challenge as unconstitutional?

Alternatively, does plaintiffs' race-based equal protection challenge to § 253 fail when (i) plaintiffs failed to prove that the law has any present-day unconstitutional effects or that the law is discriminatory in application, and (ii) even though § 253 originally was enacted in 1890, the Legislature has returned to the law and opted not to change the present re-enfranchisement scheme?

## RELIEF SOUGHT

The Secretary seeks immediate review and reversal in part of the district court's August 7, 2019 Order that the court certified pursuant to § 1292(b). [Exhibit 1 (Dkt. 91)].

## FACTS NECESSARY TO UNDERSTAND THE QUESTIONS PRESENTED

In 2017 and 2018, two separate groups of convicted felons brought suit seeking to regain the right to vote. Collectively, the plaintiffs challenged on

4

constitutional grounds two state constitutional provisions related to criminal disenfranchisement (Article 12, § 241) and legislative re-enfranchisement (Article 12, § 253). Those provisions as well as the challenges to them are discussed in turn.

### A.    Felon Disenfranchisement and Re-enfranchisement in Mississippi.

The State's 1817 and 1832 Constitutions, and the laws enacted under them, provided for felon disenfranchisement. After the Civil War, the States (including Mississippi) ratified the Fourteenth Amendment—which expressly authorizes felon disenfranchisement. Following suit, Mississippi's Reconstruction-era government enacted the 1868 Constitution and other felon disenfranchisement laws.

The 1890 constitutional framers, like all their predecessors, addressed felon disenfranchisement. That Constitution Section 241 modified the State's prior laws to disqualify persons "convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement or bigamy" from voting. MISS. CONST. of 1890 art. XII, § 241. The 1890 version of Section 241's disenfranchising crimes remained on the books for six decades.

The 1890 Constitution also adopted a legislative method for convicted felons to regain the ballot. Specifically, Article 12, § 253 provides:

> The legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person disqualified by reason of crime; but the reasons therefor shall be spread upon the journals, and the vote shall be by yeas and nays.

MISS. CONST. art. 12, § 253.

19-60662.322

Case 3:18-cv-00188-DPJ-FKB    Document 239-1    Filed 08/15/19    Page 22 of 58

In the 1950s and 1960s, things started to change as it relates to the State's felon disenfranchisement laws and its categorical list of disenfranchising crimes. *See Cotton*, 157 F.3d at 391 (discussing the changes to § 241 of Mississippi's Constitution). Further, in the mid-1980s, Mississippi lawmakers again revisited the issue of felon disenfranchisement—as well as that of re-enfranchisement. [Exhibit 1 (Dkt. 91 at 16-18)]. In 1984, for instance, a diverse Task Force of state officials and citizens investigated, debated, and proposed changes to the State's laws. [Exhibit 1 (Dkt. 91 at 16-18)].

The 1985 Legislature responded to the Task Force's findings by forming study committees to further review the election laws. [Exhibit 1 (Dkt. 91 at 16-18)]. Prior to the 1986 Regular Session, the committees reported to the full Legislature and proposed to repeal the existing election laws and replacing them with a new Election Code. [Exhibit 1 (Dkt. 91 at 16-18)]. The legislative package proposed changing the felon disenfranchisement scheme and restoring suffrage following completion of the sentence. [Exhibit 1 (Dkt. 91 at 16-18)].

Through the deliberative legislative process, legislators opted instead to conform their new Election Code's felon disenfranchisement provisions to the 1968 version of Section 241. And the legislators opted to endorse § 253—that is, to not restore suffrage automatically. The 1986 legislation passed both houses nearly unanimously, with only four of 174 legislators voting nay.

6

19-60662.323

**B.    Procedural Background of this Litigation.**

In September 2017, Roy Harness, Kamal Karriem, and others ("Harness plaintiffs")[2] brought a race-based equal protection challenge to Section 241. Thereafter, in March 2018, Dennis Hopkins, Herman Parker, Jr., Walter Wayne Kuhn Jr., Byron Demond Coleman, Jon O'Neal, and Earnest Willhite ("Hopkins plaintiffs") brought a different constitutional challenge to Sections 241 and 253.[3]

More specifically, the Hopkins plaintiffs urged the following five facial challenges to the laws:

* a "non-racial" Fourteenth Amendment claim targeting § 241;

* an Eighth Amendment claim targeting the felony conviction disqualification provisions in § 241;

* an Equal Protection Clause "arbitrariness" claim focused on the Legislature's authority to pass suffrage bills under § 253;

* a First Amendment claim attacking § 253; and

* a race-based equal protection claim targeting § 253.

The Mississippi Secretary of State, in his official capacity, is the only named

---

[2] Subsequently, all Harness plaintiffs other than Harness and Karriem voluntarily dismissed their claims. [Dkt. 58].

[3] The Harness plaintiffs' lawsuit and the Hopkins plaintiffs' lawsuit were consolidated. The Hopkins plaintiffs' suit is Cause No. 3:18-cv-00188-DPJ-FKB. It was consolidated with the earlier-filed Harness lawsuit, Cause No. 3:17-cv-00791-DPJ-FKB. Unless otherwise specified, the docket entries referred to by the Secretary refer to the earlier-filed action, Cause No. 3:17-cv-00791-DPJ-FKB.

7

19-60662.324

defendant in both the Harness and Hopkins plaintiffs' respective complaints. On
June 28, 2018, the district court consolidated the Hopkins and Harness cases under
Federal Rule of Civil Procedure 42. [Dkt. 34]. Thereafter, on February 13, 2019, the
district court also granted the Hopkins plaintiffs' motion for class certification. [Dkt.
89].

Eventually, all parties in the consolidated cases moved for summary judgment
on all claims. And, on August 7, 2019, the district court issued an Order addressing
the competing summary judgment motions. [Exhibit 1 (Dkt. 91)].

First, the court rejected all claims brought by the Harness plaintiffs, and it
granted summary judgment to the Secretary. [Exhibit 1 (Dkt. 91)]. The court then
severed the Harness plaintiffs' lawsuit and entered a judgment dismissing the case
with prejudice. [Exhibit 2 (Dkt. 92)].[4]

Next, the district court denied the Hopkins plaintiffs' motion for summary
judgment in its entirety. [Exhibit 1 (Dkt. 91)]. The court then granted in part and
denied in part the Secretary's summary judgment motion as to the Hopkins
plaintiffs' claims. [Exhibit 1 (Dkt. 91)]. Summary judgment was denied only as to
the race-based equal protection challenge to § 253. [Exhibit 1 (Dkt. 91)].

In the same Order, the court also *sua sponte* certified "all holdings in the still

---

[4] Because the earlier-filed Harness case was dismissed and severed from the Hopkins
case, this Petition is filed under the cause number for the Hopkins litigation, 3:18-cv-00188-DPJ-
FKB.

19-60662.325

open Hopkins case for interlocutory appeal" pursuant to § 1292(b). [Exhibit 1 (Dkt. 91 at 28-29)]. Moreover, the district court has stayed the Hopkins litigation on the basis that the court "anticipates an appeal." [Exhibit 1 (Dkt. 91 at 29)].[5]

Consistent with the district court's certification, the Secretary seeks interlocutory review of the denial in part of his summary judgment motion as to the Hopkins plaintiffs' race-based equal protection challenge. That claim lacks any viability as asserted against the Secretary, and it separately fails on its merits under the burden-shifting framework set forth by the Supreme Court in *Hunter*. As explained by the district court, certification of these controlling issues of law is proper because there are "substantial ground for difference of opinion" and "an immediate appeal. . . may materially advance the ultimate termination of the litigation." [Exhibit 1 (Dkt. 91 at p. 28)].

<u>**REASONS FOR PERMITTING THE APPEAL**</u>

Under § 1292(b), a permissive appeal may be taken if "(1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation." *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). Here, as the district court found, all three factors are satisfied. *See* [Exhibit 1

---

[5] The district court's stay order also was filed in the Hopkins litigation after the consolidated cases were severed. *See* [Order Staying Case, 3:18-cv-00188-DPJ-FKB, Dkt. 21].

19-60662.326

(Dkt. 91 at 28-29)].    In addition, because the questions presented implicate

jurisdictional issues, both as to Article III standing and the Eleventh Amendment,

allowing interlocutory appeal is particularly appropriate.

### A.    This Appeal Involves Controlling Questions of Law.

Interlocutory appeal should be allowed because the district court's Order

"involves a controlling question of law." 28 U.S.C. § 1292(b). In analyzing this

requirement, courts consider whether the question presented is a pure question of

law and whether it is controlling. *See In re Delta Produce*, No. BR 12-50073- a998,

2013 WL 3305537, at *2 (W.D. Tex. June 28, 2013). Here, both dimensions of the

inquiry are satisfied.

First, the question of whether the Secretary of State has sufficient connection

to § 253's legislative process[6] so as to satisfy Article III and the Eleventh

Amendment is plainly "one of pure law that can be reviewed quickly and cleanly

without having to study the record." *Id.* (internal quotation marks omitted). In fact,

at summary judgment, plaintiffs expressly conceded that the Secretary "lacks any

role, responsibilities, duties, or authority in conjunction with the Legislature's

passage of legislation, and specifically lacks any role, responsibilities, duties, or

---

[6] The Hopkins plaintiffs' claims for relief, including those targeting § 253's "legislative process," are listed on pages 43-46 of their complaint. *See* [Complaint, 3:18-cv-00188-DPJ-FKB, Dkt. 1].

10

19-60662.327

authority in conjunction with the Legislature's enactment of any suffrage bills under Section 253 of the Constitution." [Dkt. 77-1, p. 9].

Thus, far from suggesting the need for factual inquiry, the question of whether the Secretary can remedy plaintiffs' alleged injury arising from the Mississippi Legislature's legislative process for the passage of suffrage bills is a paradigmatic example of a pure question of law. *See Washington v. CSC Credit Services, Inc.,* 199 F.3d 263, 267 (5th Cir. 2000) (reviewing, pursuant to 28 U.S.C. § 1292(b), an order certifying a class and reversing that Order on the basis that the district court erred in finding that the plaintiffs satisfied the standing requirements); *E.F. Hutton v. Hadley,* 901 F.2d 979, 983 (11th Cir. 1990).

Likewise, whether plaintiffs have satisfied their legal burden on the merits of their race-based equal protection challenge to § 253 also raises a question of law. The Supreme Court has expressly held that § 2 of the Fourteenth Amendment affirmatively allows states to deny suffrage to convicted felons. *Richardson v. Ramirez,* 418 U.S. 24, 54 (1974). Of course, though, states are not free to deny that right for discriminatory reasons. The Supreme Court considered that issue in *Hunter,* where the Court set out a burden-shifting test to determine whether Alabama's disenfranchisement laws violated the Equal Protection Clause. 471 U.S. at 227–28.

As the district court recognized, *Hunter* requires that a plaintiff "show that the law's original enactment was motived by race discrimination ***and that the law***

11

19-60662.328

Case 3:18-cv-00188-DPJ-FKB Document 234 Filed 08/15/19 Page 20 of 58

*continues to have that effect.*" [Exhibit 1 (Dkt. 91 at 10)] (emphasis supplied). Yet, in this case, the Hopkins plaintiffs offered no proof of any present-day disproportionate impact of § 253 or discriminatory application of that law. Instead, they alleged only long-past unconstitutional effects—dating back to when the law originally was enacted in 1890.

Whether a plaintiff must prove present-day "unconstitutional effects" to satisfy the first step of the *Hunter* analysis is a pure question of law. *Cotton*, 157 F.3d at 292 n.9 ("*Hunter* also requires unconstitutional effects as well as motive."). So, too, is the question of whether the Secretary separately satisfied his burden under *Hunter*.

Second, and equally incontrovertible, is the "controlling" significance of the questions presented. "[A] controlling issue of law [ ] generally hinges upon its potential to have some impact on the course of the litigation." *DuPree v. Kaye*, No. 3:07-cv-0768-B, 2008 WL 294532, at *2 (N.D. Tex. Feb. 4, 2008). Accordingly, "[a]lthough the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the [order] would terminate the action." *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 766 (S.D. Tex. 2010) (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990)); *see also* J. Moore & B. Ward, 19 MOORE'S FEDERAL

12

PRACTICE ¶ 203.31[3] (2018) (collecting cases).  Under these principles, there can

be no doubt that the questions presented by this appeal both are "controlling."

Finally, "[a]n issue of law has also been termed controlling where the certified

issue has precedential value for a large number of cases." *Ryan v. Flowserve Corp.*,

444 F. Supp. 2d 718, 723 (N.D. Tex. 2006) (quotation and internal quotation marks

omitted); *see also In re Delta Produce*, 2013 WL 3305537, at *3. Here, far from

raising an isolated or academic matter, the impact of the question presented reaches

far beyond a single litigant's suit. In fact, the instant action itself was certified as a

class action. Section 1292(b)'s first factor is thus satisfied.

### B.     The District Court Concluded that Substantial Grounds Exist for Difference of Opinion Regarding the Controlling Questions of Law.

Interlocutory appeal also should be allowed because "there is substantial

ground for difference of opinion" regarding the controlling questions of law

presented by the district court's summary judgment Order. 28 U.S.C. § 1292(b). In

analyzing whether this requirement is satisfied, courts consider not just whether

different opinions have actually emerged, but whether difference of opinion could

reasonably be envisioned. *See, e.g., Morales v. Redco Transp. Ltd.*, No. 5:14-cv-129,

2016 WL 7734647, at *1 (S.D. Tex. Jan. 13, 2016) ("It is not just the contrary

opinion of Huntington that leads this Court to believe that there is substantial ground

for a difference of opinion, but the Court could actually envision the statute being

interpreted differently.").

13

19-60662.330

Here, the district court *sua sponte* determined that there are substantial grounds for difference of opinion as to its conclusions on standing and the merits of plaintiffs' § 253 challenge. In fact, in addressing the Secretary's argument that he does not have the proper connection to § 253, the court noted that it was a "close[ ] question" and that plaintiffs only "minimally demonstrated standing." [Exhibit 1 (Dkt. 91 at 8-9)].

In a similar vein, there are at least two merits questions on which there are substantial grounds for difference of opinion with the district court's denial in part of the Secretary's summary judgment motion. As discussed, in *Hunter*, the Supreme Court established a three-step test for analyzing race-based challenges to facially neutral disenfranchisement laws.

The first step of *Hunter*'s three-part test obligate plaintiffs to establish that § 253 causes a disproportionate racial impact in present day. The second step obligates challengers to a facially neutral law that produces disproportionate racial impact to prove race discrimination was a "substantial" or "motivating" factor behind the enactment using *Village of Arlington Heights v. Metropolitan Housing Development Corporation*'s evidentiary test. *Hunter*, 471 U.S. at 228. Then, if the challengers succeed, "the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor." *Id.*

14

19-60662.331

Case 3:18-cv-00188-DPJ-FKB Document 294 Filed 08/15/19 Page 21 of 58

Here, substantial grounds for difference of opinion exist as to whether plaintiffs have satisfied their initial burden under *Hunter*, as well as whether the Secretary otherwise satisfied his burden. As to the former, the only allegations of § 253's unconstitutional effects concern past effects of the law. Specifically, plaintiffs' expert alleged that she "did not find any evidence that even one single African American received redress through the suffrage restoration provision between 1890 and 1920." [Dkt. 77-3 at ¶ 16].

Yet plaintiffs conceded at summary judgment that they had no proof of any present-day disparate impact—or that § 253, in present day, is applied in a discriminatory manner. The district court nonetheless denied summary judgment in part, even though other courts have found that *Hunter* requires the very evidence plaintiffs did not have. *Cotton*, 157 F.3d at 292 n. 9 ("*Hunter* also requires unconstitutional effects as well as motive."); *Coleman v. Miller*, 117 F.3d 527, 530 (11th Cir. 1997) (citing *Hunter* in an equal protection challenge to Georgia's state flag and finding no present-day "similar discriminatory impact").

What is more is that § 253 is a device that requires the action of the present-day Mississippi Legislature to be implicated at all. Therefore, it is unlike many criminal disenfranchisement laws that are triggered automatically upon the conviction of an individual for a disqualifying offense. Section 253, like other discretionary vote restoration regimes, requires a decision-maker (in the pardon

context—the executive; in the suffrage bill context—the Legislature) for the law to
ever be activated.

Because of this, the impact analysis should require more than plaintiffs ever
attempted to offer at summary judgment. *See, e.g., McCleskey v. Kemp*, 481 U.S.
279, 291-93, 306-07 (1987) (reasoning that a litigant "must prove that the purposeful
discrimination had a discriminatory effect on him" and that "to prevail under the
Equal Protection Clause, McCleskey must prove that the decisionmakers in his case
acted with discriminatory purpose"); *Village of Arlington Heights v. Metropolitan
Housing Development Corp.*, 429 U.S. 252, 267-68 (1977) (a facially neutral statute
violates equal protection "if it was motivated by a discriminatory animus and *its
application results in discriminatory effect*") (emphasis supplied).

Separately, even if plaintiffs satisfied their initial burdens under *Hunter*, the
Secretary provided evidence that should satisfy his burden. While § 253 reads the
same today as it did in 1890, the Mississippi Legislature returned to the issue of
legislative re-enfranchisement in the 1980s, and the 1986 Mississippi Legislature
opted to keep the suffrage bill provision of § 253. *Johnson v. Governor of Fla.*, 405
F.3d 1214, 1224 (11th Cir. 2005) (en banc) (in a challenge to Florida
disenfranchisement provision, noting that the State "return[ed] to the issue" after the
law's original enactment); *id.* at 1224-25 ("[T]he plaintiffs argue that Florida must
demonstrate that it acknowledged that racial discrimination tainted the 1868

16

provision, and yet it knowingly reenacted the disenfranchisement provision for non-discriminatory reasons in 1968. We do not require this level of proof[.]'").

In short, then, § 1292(b)'s second factor is satisfied because there is substantial ground for difference of opinion regarding the controlling questions of law presented by the district court's summary judgment Order.

## C. An Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation.

Interlocutory appeal of the district court's Order should be allowed because "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "This analysis turns on whether 'an immediate appeal would conserve judicial resources and spare the parties from possibly needless expense.'" *In re Delta Produce*, 2013 WL 3305537, at *3 (quoting *APCC Servs., Inc. v. Sprint Commc'ns Co., L.P.*, 297 F. Supp. 2d 90, 100 (D.D.C. 2003)).

Here, immediate appeal will conserve resources for many of the same reasons that the legal issues presented are controlling. *Tesco Corp.*, 722 F. Supp. 2d at 767 ("The requirement that an appeal should materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law."). This is because both factors share the same "key concern" of whether the appeal holds the prospect of "speed[ing] up the litigation." *Id.*

17

Reversal of the district court's Order as to the denial of summary judgment on § 253 would certainly speed up the litigation. Indeed, the materially-advance-the-litigation standard is satisfied when, as here, an interlocutory appeal could "eliminate the need for trial[.]" *See, e.g., Coates v. Brazoria County Tex.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013). Then-District Judge Costa denied certification in *Coates* because there was more than one claim that required a trial. Here, though, the only claim remaining for trial after the district court's Order is the race-based equal protection challenge to § 253.

Avoiding the possibility of preparing a pre-trial order, subpoenaing and preparing witnesses, and conducting a trial are consistent with the central purposes behind 28 U.S.C. § 1292(b). *See, e.g., Joe Grasso & Son, Inc. v. U.S.*, 42 F.R.D. 329, 334 (S.D. Tex. 1966) (granting certification and quoting the refrain that "[a] useless trial is a luxury none can afford"). *A fortiori*, the central purpose of § 1292(b) is even more so satisfied here because this Court's ruling on interlocutory appeal could resolve not only the need for a trial—but also the need for any subsequent appeal after trial or otherwise.

As a result, there can be little doubt that allowing interlocutory appeal here holds the prospect of speeding up the litigation, and, for much the same reasons that the question presented is controlling, it may also materially advance the ultimate termination of this lawsuit—satisfying the third and final statutory requirement for

18

granting interlocutory appeal. *See, e.g., Martin v. Haliburton*, 618 F.3d 476, 488 (5th

Cir. 2010) (acknowledging that "[Section 1292(b) was enacted] to give the appellate

machinery . . . a considerable flexibility . . . so that within reasonable limits

disadvantages of piecemeal and final judgment appeals might both be avoided")

(internal quotation marks omitted).

## CONCLUSION

For these reasons, the Mississippi Secretary of State, in his official capacity,

respectfully requests that this Court permit interlocutory appeal of the district court's

August 7, 2019 summary judgment Order under 28 U.S.C. § 1292.

Respectfully submitted,

**SECRETARY OF STATE DELBERT
HOSEMANN, in his official capacity**

**BY:   JIM HOOD, ATTORNEY GENERAL**

By:    /s/ *Krissy C. Nobile*
Justin L. Matheny (Bar No. 100754)
Krissy C. Nobile (Bar No. 103577)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3824
jmath@ago.ms.gov
knobi@ago.ms.gov

*Counsel for Defendant-Petitioner Secretary
of State Delbert Hosemann, in his official
capacity*

19

19-60662.336

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 19, 2019, the foregoing document was electronically submitted to the clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit, using the electronic filing system of the Court. A copy has also been filed with the district court using the court's ECF system and thereby sent to the following persons:

Janet A. Gochman
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-2815
Fax: 212/455-2502
Email: jgochman@stblaw.com

Isaac Rethy
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-3869
Fax: 212/455-2502
Email: irethy@stblaw.com

Jonathan K. Youngwood
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-3539
Fax: 212/455-2502
Email: jyoungwood@stblaw.com

19-60662.337

Nihara Karim Choudhri
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-2036
Fax: 212/876-5343
Email: nchoudhri@stblaw.com

Tyler A. Anger
SIMPSON, THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, NY 10017-3954
212/455-2652
Fax: 212/455-2502
Email: tyler.anger@stblaw.com

Lisa S. Graybill
SOUTHERN POVERTY LAW CENTER - New Orleans
201 St. Charles Ave., Suite 2000
New Orleans, LA 70170
504/486-8982
Fax: 504/486-8947
Email: lisa.graybill@splcenter.org

Paloma Wu
SOUTHERN POVERTY LAW CENTER - Jackson
111 East Capitol Street, Suite 280
Jackson, MS 39201
601/948-8882
Fax: 601/948-8885
Email: paloma.wu@splcenter.org

*Counsel for Hopkins plaintiffs*

Dated: August 19, 2019

/s/ *Krissy C. Nobile*
Krissy C. Nobile
Counsel for Defendant-Petitioner

21

19-60662.338

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This brief complies with word limitations of Fed. R. App. P. 5(c) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) & 5(b)(1)(E), it contains 4,320 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully submitted,

*/s/ Krissy C. Nobile*
Krissy C. Nobile
Counsel for Defendant-Petitioner

22

19-60662.339

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROY HARNESS, ET AL.                                                    PLAINTIFFS

V.                                        CIVIL ACTION NO. 3:17-CV-791-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF STATE
OF MISSISSIPPI                                                          DEFENDANT

CONSOLIDATED WITH

DENNIS HOPKINS, ET AL.                                                 PLAINTIFFS

V.                                        CIVIL ACTION NO. 3:18-CV-188-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF STATE
OF MISSISSIPPI                                                          DEFENDANT

ORDER

Plaintiffs seek an order restoring the voting rights of convicted felons in Mississippi. The

parties have all moved for summary judgment, contending that there are no disputed facts. [63,

65, 66, 74]. As discussed more fully below, both the United States Supreme Court and the Fifth

Circuit Court of Appeals have rejected Plaintiffs' pivotal legal arguments as to article XII,

section 241 of the Mississippi Constitution. While those courts may be free to reassess their

prior rulings, the precedent is binding at the district-court level. For that and other reasons,

Plaintiffs' motions [65, 74] are denied and Defendant's motions [63, 66] are granted as to

disenfranchisement under section 241. As to section 253, which restores the right to vote, the

Court finds the relevant motions [65, 66] should be denied.



I.      Facts and Procedural History

Two groups of convicted felons filed separate suits seeking to regain the right to vote. The lead plaintiffs in those cases were Roy Harness and Dennis Hopkins. The Court consolidated the cases on June 28, 2018, and then certified a class action on February 26, 2019.

Plaintiffs challenge two sections of article XII of the Mississippi Constitution—sections 241 and 253. Section 241 provides that individuals who have been "convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement[,] or bigamy" are ineligible to vote. And section 253 allows the legislature to restore an individual's suffrage by "a two-thirds vote of both houses, of all members elected."

The Harness Plaintiffs focus their complaint on section 241, arguing that it violates the Fourteenth and Fifteenth Amendments because the disenfranchising crimes that remain from the section's 1890 version were adopted to suppress black voters. Harness Am. Compl. [19] at 19– 20. They seek declaratory relief enjoining Secretary of State Delbert Hosemann from taking any steps that would prevent voting by Mississippians convicted of bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement, and bigamy. *Id.* at 21.[1]

The Hopkins Plaintiffs challenge both sections 241 and 253 and take a different approach. They say lifetime disenfranchisement (section 241) violates the Eighth Amendment's prohibition against cruel and unusual punishment and exceeds § 2 of the Fourteenth Amendment, which allows states to merely "abridge" a felon's voting rights. Hopkins Compl. [1] at 4–5 (filed in 3:18-CV-188-DPJ-FKB). As to section 253 (the restoration provision), the Hopkins Plaintiffs

---

[1] The Harness Plaintiffs do not challenge disqualification based on murder and rape convictions. *Id.* at 2.

2

19-60662.341

argue that it violates both the First Amendment, by hampering political expression, and the Equal

Protection Clause, because it is arbitrary and was enacted with discriminatory intent. *Id.*

II.    Summary Judgment Standard

Each party seeks summary judgment.  That relief is warranted under Federal Rule of

Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and

that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence,

factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).  When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and

legalistic arguments have never constituted an adequate substitute for specific facts showing a

genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.

2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

3

19-60662.342

III.    Article III Standing and Eleventh Amendment Immunity

In his motions for summary judgment, Hosemann first raises concerns over Article III

standing and Eleventh Amendment immunity.  Under both approaches, Hosemann questions his

connection to sections 241 and 253.  As to section 241, he insists that local election officials

have the duty and authority to register, refuse, and purge voters.  And as to section 253, he

maintains that only the legislature can act to restore voting rights. [2]

A.    Legal Standards

To establish an Article III case or controversy, Plaintiffs must show:  (1) they have

suffered an "injury in fact," (2) there is a "causal connection between the injury and the conduct

complained of," and (3) "the injury will be 'redressed by a favorable decision.'"  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon v. E. Ky. Welfare Rights*

*Org.*, 426 U.S. 26, 38 (1976)).  "The party invoking federal jurisdiction bears the burden of

establishing these elements."  *Id.* at 561.  Hosemann concedes that Plaintiffs meet the first

element but says they cannot establish a causal connection or redressability.  *See Rivera v.*

*Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (noting that a failure to establish any one

element deprives the court of jurisdiction).

In addition, Hosemann asserts Eleventh Amendment immunity and argues that the *Ex*

*parte Young* exception is inapplicable.  209 U.S. 123 (1908).  Under *Ex parte Young*, a state

officer can be sued in federal court despite the Eleventh Amendment, if that officer has "'some

connection with the enforcement of the act' in question or [is] 'specially charged with the duty to

---

[2] While Article III standing and Eleventh Amendment immunity are distinct concepts, there is
significant overlap.  *See* Hopkins Resp. Mem. [78] at 20–21 (citing *Air Evac EMS, Inc. v. Tex.,*
*Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)); *see also* Def.'s
Rebuttal [86] at 5 (stating "plaintiff's [s]ection 241 claims against the Secretary fail under Article
III and/or the Eleventh Amendment").

4

19-60662.343

enforce the statute' and [is] threatening to exercise that duty." *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001) (quoting *Ex parte Young*, 209 U.S. at 157, 158). With these standards in mind, the Court considers sections 241 and 253 separately.

B.    Section 241

Hosemann says he does not enforce section 241, does not investigate or prosecute violations of election laws, does not supervise local election officials, lacks the authority to prohibit felons from registering to vote, and has no duty to remove felons from the voter rolls. Def.'s Mem. [64] at 6. But Plaintiffs argue that Hosemann's responsibilities under state law— particularly the administration of the computerized Statewide Elections Management System ("SEMS")—and his designation as the state's chief election officer under the National Voter Registration Act of 1993 ("NVRA") provide enough basis for Article III standing and trigger the *Ex parte Young* exception to Eleventh Amendment immunity.

Under state statute, "[t]he circuit clerk of each county is authorized and directed to prepare and keep in his or her office a full and complete list . . . of persons convicted of voter fraud or of any crime listed in Section 241, Mississippi Constitution of 1890." Miss. Code § 23-15-151. But the statute goes on to provide that a list of persons convicted of a disenfranchising crime "shall also be entered into [SEMS] on a quarterly basis." *Id.* SEMS is maintained by the Secretary of State and is considered "the official record of registered voters in every county of the state." *Id.* § 23-15-165(1).

Hosemann explains that "the Administrative Office of Courts provides data regarding criminal convictions which is filtered to only include individuals with a conviction of a disenfranchising crime before being loaded into [SEMS]." Hosemann Resp. to Hopkins Interrogs. [63-1] at 44. Then SEMS "provides potential match reporting regarding individuals

5

19-60662.344

convicted of a disenfranchising crime and county election officials are trained to only take action

upon review of a final sentencing order entered by a court." *Id.* at 49.  That training is provided

by Hosemann.  *See id.* at 48 ("The Secretary of State provides training annually to county

election commissioners regarding voter roll maintenance in accordance with Mississippi law and

the National Voter Registration Act."); *see also* Miss. Code § 23-15-211(4) (stating Hosemann is

responsible for conducting and sponsoring an "elections seminar" attended by county election

commissioners).  In other words, Hosemann receives information regarding disenfranchising

convictions, adds that information to SEMS, and trains county officials on the next step.

In addition, Hosemann is Mississippi's "chief election officer" for purposes of the

NVRA, Miss. Code § 23-15-211.1(1), and has "the power and duty to gather sufficient

information concerning voting in elections in this state," *id.* § 23-15-211.1(2); *see also* 52 U.S.C.

§ 20509 ("Each State shall designate a State officer or employee as the chief State election

official to be responsible for coordination of State responsibilities under this chapter.").  And

while this civil action is not rooted in the NVRA, several courts have held that the designation of

"chief election officer" militates in favor of finding Article III standing in various election-law

contexts.  *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 613–14 (5th Cir. 2017) (finding

Article III standing, noting that the statute at issue applied to every election, and observing that

the Texas Secretary of State was the chief election officer of the state); *Scott v. Schedler*, 771

F.3d 831, 838–39 (5th Cir. 2014) (finding Article III standing and noting the Secretary of State

was the chief election officer under the NVRA); *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d

816, 828–29, 832 (S.D. Tex. 2012) (Costa, J.) (denying Secretary's motion to dismiss for lack of

standing and noting that her "argument is at odds with numerous cases in which plaintiffs have

sued secretaries of state when challenging voter registration laws even though states commonly

19-60662.345

delegate voter registration responsibilities to county officials"), *rev'd on other grounds*, 732 F.3d

382; *see also United States v. Missouri*, 535 F.3d 844, 846 n.1 (8th Cir. 2008) (finding that the

Missouri Secretary of State was the proper party to be sued under the NVRA even though

enforcement power was delegated to local officials); *Madera v. Detzner*, 325 F. Supp. 3d 1269,

1276 (N.D. Fla. 2018) (noting the Secretary of State was Florida's chief election officer and

"[t]his statutory job description is not window dressing").[3]

Based on these duties, Plaintiffs' injuries are sufficiently traceable to and redressable by

Hosemann to establish Article III standing. While he may not be the only step in

disenfranchising a voter, he certainly plays a crucial role in the process. *Compare K.P. v.

LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) (finding redressability was met even though the

defendant was "far from the sole participant in the application of the challenged statute"), *with

Okpalobi*, 244 F.3d at 427 (finding no standing where the state officers did not have "*any duty or

ability to do anything*" in connection with the law at issue (emphasis added)).

Likewise, for purposes of Eleventh Amendment immunity, Hosemann has "some

connection" with enforcement of section 241, particularly in his role as chief election officer and

administrator of SEMS. *Ex parte Young*, 209 U.S. at 157; *see Mo. Prot. & Advocacy Servs., Inc.

v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (denying immunity in action challenging voter

disqualification as "incapacitated" and noting that while local election officials had authority to

register voters, the Secretary of State was charged with providing local officials of individuals

deemed incapacitated); *Libertarian Party of Ky. v. Grimes*, 164 F. Supp. 3d 945, 950 (E.D. Ky.

2016) (finding *Ex parte Young* exception applied where Secretary of State provided training to

---

[3] Hosemann also serves on the three-person State Board of Election Commissioners alongside
the Governor and the Attorney General. Miss. Code § 23-15-211(1).

19-60662.346

county clerks and therefore had "some control over the perpetuation of the ballot access regime the [p]laintiffs challenge[d]").[4]

      C.    Section 253

Section 253 presents a much closer question. It provides: "The Legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person disqualified by reason of crime; but the reasons therefor shall be spread upon the journals, and the vote shall be by yeas and nays." Miss. Const. art. XII, § 253. The Hopkins Plaintiffs ask the Court to "[i]ssue a class-wide judgment declaring that the inherently arbitrary and racially discriminatory legislative process for the restoration of voting rights established by the suffrage bill provision of the Mississippi Constitution violates the Equal Protection Clause of the Fourteenth Amendment, as well as the First Amendment." Hopkins Compl. [1] at 47.

Hosemann says he has no connection to or role in the restoration process: he is not a member of the legislature, he does not introduce suffrage bills, and he does not vote on such bills. *See* Miss. Const. art. XII, § 253; *see also* Hopkins Compl. [1] at 20 (flow chart detailing restoration process); Hosemann Resp. to Hopkins Interrogs. [63-1] at 53. He therefore denies a causal connection or redressability.

But as noted above, Hosemann is the state's chief election officer and maintains SEMS, which would presumably be involved in one of the final steps in returning a convicted felon to

---

[4] Hosemann relies in part on *McLaughlin v. City of Canton*, where Judge Henry T. Wingate considered criminal disenfranchisement and held that the Secretary of State was "not a proper party." 947 F. Supp. 954, 965 (S.D. Miss. 1995). But that case was decided before Mississippi revised its election laws and designated the Secretary of State as the chief election officer. *See* 2000 Miss. Laws 430 [77-13] (designating the Secretary of State as the chief election officer); 2004 Miss. Laws 305 [77-14] (implementing a statewide centralized voting system).

8

19-60662.347

Case: 19-60662 Document: 48-1 Page: 115 Date Filed: 10/16/2019
Case 3:18-cv-00188-DPJ-FKB Document 29-1 Filed 08/19/19 Page 87 of 58

Case 3:17-cv-00791-DPJ-FKB Document 91 Filed 08/07/19 Page 9 of 29

the voting rolls after he or she successfully files a section 253 petition. Though somewhat

distinguishable, the Fifth Circuit faced a similar question in *OCA-Greater Houston*, holding:

> unlike in *Okpalobi*, where the defendants had no "enforcement connection with
> the challenged statute," the Texas Secretary of State is the chief election officer of
> the state and is instructed by statute to obtain and maintain uniformity in the
> application, operation, and interpretation of this code and of the election laws
> outside this code. We are satisfied that OCA has met its burden under *Lujan* to
> show that its injury is fairly traceable to and redressable by the defendants.

867 F.3d at 613–14 (quoting *Okpalobi*, 244 F.3d at 427 n.5) (additional quotation marks and

footnotes omitted). To be sure, Hosemann's role in section 253 is slight, but he does have

"'some connection with the enforcement of the act' in question." *Morris v. Livingston*, 739 F.3d

740, 746 (5th Cir. 2014) (quoting *Okpalobi*, 244 F.3d at 414–15). The Hopkins Plaintiffs have

minimally demonstrated standing and a basis for an *Ex parte Young* claim against Hosemann

challenging section 253.

IV.     Section 241 Merits Analysis

While both the Harness and Hopkins Plaintiffs challenge section 241, they pursue

different theories. As such, the Court will consider the claims separately.

A.      Harness Plaintiffs

Section 241 was adopted in 1890 and disenfranchised citizens found guilty of "bribery,

burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery,

embezzlement[,] [and] bigamy." Harness Am. Compl. [19] at 5. The section was amended in

1950 to remove burglary and again in 1968 to add rape and murder as disenfranchising crimes.

*Id.* at 2. The Harness Plaintiffs take no issue with preventing convicted rapists and murderers

from voting. *Id.* But they say disenfranchisement based on the other crimes carried forward

from the 1890 version violates the Fourteenth and Fifteenth Amendments because those crimes

were selected to suppress black voters. *Id.* at 20.

9

Case: 19-60662    Document: 48-1    Page: 116    Date Filed: 10/16/2019
Case 3:18-cv-00188-DPJ-FKB    Document 29-1    Filed 08/29/19    Page 30 of 58

Case 3:17-cv-00791-DPJ-FKB    Document 91    Filed 08/07/19    Page 10 of 29

To begin, the United States Supreme Court has expressly held that § 2 of the Fourteenth Amendment affirmatively allows states to deny suffrage to convicted felons. *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974). That does not, however, mean states are free to deny that right for discriminatory reasons. The Supreme Court considered that issue in *Hunter v. Underwood*, where the Court set out a burden-shifting test to determine whether Alabama's felon-disenfranchisement laws violated the Equal Protection Clause. 471 U.S. 222, 227–28 (1985).

Under the *Hunter* test, a plaintiff must show that the law's original enactment was motived by race discrimination and that the law continues to have that effect. *Id.* at 233; *see also id.* at 227–28. If the plaintiff makes those showings, "the burden shifts to the law's defenders to demonstrate that the law would have been enacted without" a racially discriminatory motive. *Id.* at 228.

But *Hunter* left a caveat when it declined to decide "whether [Alabama's disenfranchisement law] would be valid if enacted today without any impermissible motivation . . . ." *Hunter*, 471 U.S. at 233. Based on that language, the Fifth Circuit has held that "substantial, race-neutral alterations in an old unconstitutional law may remove the discriminatory taint." *Veasey v. Abbott*, 888 F.3d 792, 802 (5th Cir. 2018) (citation omitted). And it has applied that rule to section 241.

In *Cotton v. Fordice*, the court observed that Mississippi twice re-enacted section 241 after original adoption:

> Section 241, as enacted in 1890, was amended in 1950, removing "burglary" from the list of disenfranchising crimes. Then, in 1968, the state broadened the provision by adding "murder" and "rape"—crimes historically excluded from the list because they were not considered "black" crimes. Amending § 241 was a deliberative process. Both houses of the state legislature had to approve the amendment by a two-thirds vote. The Mississippi Secretary of State was then required to publish a full-text version of § 241, as revised, at least two weeks before the popular election. *See* Miss. Code Ann. § 4211 (1942); H. Con. Res. 10

10

(Miss. 1950); H. Con. R. 5 (Miss. 1968). Finally, a majority of the voters had to
approve the entire provision, including the revision. Because Mississippi's
procedure resulted both in 1950 and in 1968 in a re-enactment of § 241, each
amendment superseded the previous provision and removed the discriminatory
taint associated with the original version.

157 F.3d 388, 391 (5th Cir. 1998). The Fifth Circuit concluded that these amendments fell

within the exception *Hunter* "left open," *id.* at 391, and therefore "*Hunter* does not condemn

§ 241," *id.* at 392.

　　　As discussed next, the Harness Plaintiffs urge the Court to ignore *Cotton* because—

according to them—it was based on an incomplete record, was wrongly decided, and has been at

least tacitly overruled by the United States Supreme Court.

　　　　　1.　　　The Record Evidence

　　　According to the Harness Plaintiffs, the *pro se* plaintiffs in *Cotton* were ill-equipped to

create a record regarding the votes in 1950 and 1968, so the Fifth Circuit failed to consider a

complete picture. Pls.' Mem. [82] at 14. They suggest, for instance, that the Fifth Circuit did not

see the ballot language in 1950 and 1968. *Id.* As a result, Plaintiffs say the court failed to

consider that neither the legislature nor the electorate were allowed to "vote[ ] on whether to

retain or remove the other crimes on the 1890 list. Thus, the voters in 1950 and 1968 did not

have to approve the entire list of disenfranchising crimes in Section 241 and were not given the

option to do so." *Id.* at 13.

　　　This argument goes only so far. True enough, the ballot language was not in the *Cotton*

appellate record. But neither the *Cotton* plaintiffs nor the state mentioned the 1950 and 1968

votes in their appellate briefs. *See* Pls.' Mem. [75] at 12–13. Instead, the Fifth Circuit raised

those re-enactments *sua sponte*. And the only way the Fifth Circuit would have been aware of

11

the 1950 and 1968 re-enactments is if it researched the legislative history on its own. Indeed *Cotton* cites that history. *See* 157 F.3d at 391.

Substantively, the Fifth Circuit's description of what happened in those years shows that it read the ballot language Plaintiffs now cite. In 1950, the ballot removing burglary from the disenfranchising offenses read as follows:

> Section 241. Every inhabitant of this state, except idiots, insane persons and Indians not taxed, who is a citizen of the United States of America, twenty-one years old and upwards, who has resided in this state for two years, and one year in the election district, or in the incorporated city or town in which he offers vote, and who is duly registered as provided in this article, and who has never been convicted of bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, and who has paid on or before the first day of February of the year in which he shall offer to vote, all poll taxes which may have been legally required of him, and which he has had an opportunity of paying according to law, for the two preceding years, and who shall produce to the officers holding the election satisfactory evidence that he has paid such taxes, is declared to be a qualified elector; but any minster of the gospel in charge of an organized church, or his wife legally residing with him, shall be entitled to vote after six months' residence in the election district, incorporated city or town, if otherwise qualified.
>
> Adopted by the House of Representatives, January 26, 1950.
>
> Adopted by the Senate, February 10, 1950.
>
> For Amendment ............................................................( )
>
> Against Amendment ........................................................( )

1950 Ballot [74-6] at 1. Similarly, the 1968 ballot that added rape and murder read, in relevant part, as follow:

> Section 241. Every inhabitant of this State, except idiots and insane persons, who is a citizen of the United States of America, twenty-one (21) years old and upwards, who has resided in this State for one (1) year, and for one (1) year in the county in which he offers to vote, and for six (6) months in the election precinct or in the incorporated city of town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector."

12

19-60662.351

ADOPTED BY HOUSE OF REPRESENTATIVES:  March 25, 1968.

ADOPTED BY SENATE:  March 25, 1968.

For Amendment ..................................................................( )

Against Amendment ............................................................( )

1968 Ballot [74-8] at 1.

This language mirrors the Fifth Circuit's description of the ballots.  As quoted more fully

above, the court recognized that "a majority of the voters had to approve *the entire provision,*

*including the revision.*"  *Cotton*, 157 F.3d at 391 (emphasis added).  There is simply no hint that

the court mistakenly believed voters did anything other than vote up or down on "the entire

provision."  *Id.*  Nor does it appear that the court thought voters were asked to "vote[ ] on

whether to retain or remove the other crimes on the 1890 list."  Pls.' Mem. [82] at 13.  Finally,

the fact that the ballot language did not allow individual votes on the original crimes does not

diminish *Cotton*'s conclusion that the final ballot language resulted from "a deliberative

process."  *Cotton*, 157 F.3d at 391.

That does not, however, end the analysis because *Cotton* itself contains another caveat.

While the Fifth Circuit found that the 1950 and 1968 amendments removed the racial taint from

the 1890 enactment, it noted that the section would remain unconstitutional "if the [1950 and

1968] amendments were adopted out of a desire to discriminate against blacks."  *Id.* at 392.  On

this issue, Plaintiffs again say they have created a better record.  Although they offer no direct

proof of intent, they circumstantially note the racial demographics in 1950 and 1968;

Mississippi's sad history of racial strife, especially around those dates; and other unconstitutional

legislation passed in or around those years.  Pls.' Mem. [82] at 16–17.

19-60662.352

Case: 19-60662   Document: 48-1   Page: 120   Date Filed: 10/16/2019
Case 3:18-cv-00188-DPJ-FKB   Document 29-1   Filed 08/19/19   Page 42 of 58

Case 3:17-cv-00791-DPJ-FKB   Document 91   Filed 08/07/19   Page 14 of 29

Although the Fifth Circuit did not mention this well-known history in *Cotton*, the court was persuaded by the fact that both amendments made changes that cut against stereotypical notions about which disqualifying crimes would hinder black votes. *Cotton*, 157 F.3d at 391. The court found those facts sufficient to hold—as a matter of law—that the current version of section 241 comports with equal protection. *Id.* at 392.

The Fifth Circuit has not abandoned that holding. Just last year, the court cited *Cotton* in *Veasey v. Abbott*, a case upholding a Texas voting law. 888 F.3d 792, 802 (5th Cir. 2018). Though he dissented, Judge James E. Graves, Jr., explored *Cotton* in greater depth than the majority opinion, explaining why the 1950 and 1968 votes severed the original racist intent. *Id.* at 821 (Graves, J., dissenting). As he noted, the changes resulted from a "deliberative process"; the votes occurred "sixty and seventy-eight years, respectively, after [section 241] was first enacted"; and the amendments cut against notions of what were "commonly considered to be 'black' crimes." *Id.*

While it is somewhat unusual for an appellate court to raise a factual issue *sua sponte* and then decide it as a matter of law, that is what happened in *Cotton*. The Court will not assume the Fifth Circuit failed to fully consider its holding. As a result, the Harness Plaintiffs are left arguing that *Cotton* got it wrong. But even if it did, "[i]t has been long established that a legally indistinguishable decision of [the Fifth Circuit] must be followed by . . . district courts unless overruled *en banc* or by the United States Supreme Court." *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992).

        2.      Whether *Cotton* Was Overruled

The Fifth Circuit has not overruled *Cotton*, but the Harness Plaintiffs say the Supreme Court abrogated the decision in *Abbott v. Perez*, 138 S. Ct. 2305 (2018). *See* Pl.'s Mem. [75] at

15.  Succinctly stated, they believe the events in 1950 and 1968 failed to remove the

discriminatory intent that existed in 1890 because the votes merely amended section 241 and did

not re-enact it.  *Id.*

In *Perez*, the plaintiffs argued that *Hunter* placed the burden on Texas to prove its interim

redistricting plan was not discriminatory.  The Supreme Court rejected that argument noting that

*Hunter* "addressed a very different situation."  *Perez*, 138 S. Ct. at 2325.  But in doing so, the

Court offered the following synopsis of *Hunter*:

> *Hunter* involved an equal protection challenge to an article of the Alabama
> Constitution adopted in 1901 at a constitutional convention avowedly dedicated to
> the establishment of white supremacy.  The article disenfranchised anyone
> convicted of any crime on a long list that included many minor offenses.  The
> court below found that the article had been adopted with discriminatory intent,
> and this Court accepted that conclusion.  The article was never repealed, but over
> the years, the list of disqualifying offenses had been pruned, and the State argued
> that what remained was facially constitutional.  This Court rejected that argument
> because the *amendments* did not alter the intent with which the article, including
> the parts that remained, had been adopted.  *But the Court specifically declined to
> address the question whether the then-existing version would have been valid if
> "[re]enacted today."*

*Id.* (internal citations omitted) (emphasis added).

From this quote, the Harness Plaintiffs say the Court "drew a distinction between" re-

enactments and "'amendments that did not alter the intent.'"  Pls.' Mem. [75] at 15 (quoting

*Perez*, 138 S. Ct. at 2325).  In other words, mere amendments cannot remove discriminatory

taint, whereas re-enactments may.  And because Plaintiffs describe the 1950 and 1968 votes as

mere amendments rather than re-enactments, *Perez* abrogates *Cotton*.  *Id.*

This argument has two flaws.  First, Mississippians voted for the "entire provision," as

amended, leading the Fifth Circuit to conclude that section 241 was "re-enacted."  *Cotton*, 157

F.3d at 391–92); *see also Veasey*, 888 F.3d at 821 (Graves, J. dissenting).  Second, and more

substantively, when the *Perez* Court summarized *Hunter* and described "amendments" to

19-60662.354

Alabama's disenfranchisement laws, it was not attempting to distinguish between voluntary amendments and re-enactments because there were no voluntary amendments in *Hunter*. 138 S. Ct. at 2325. Instead, the so-called "amendments" occurred when the offending Alabama statutes were "struck down by the courts." *Hunter*, 471 U.S. at 233. Significantly, *Cotton* references this very distinction when declining to follow *Hunter*. As the Fifth Circuit noted, "the voters of Mississippi willingly broadened [section] 241 through the constitutional amendment process" which made those changes "fundamentally different" from the judicial pruning that occurred in *Hunter*. *Cotton*, 157 F.3d at 391 n.8 (characterizing alterations by judicial process as "'involuntary' amendments"). And because *Perez* does not "directly conflict[ ]" with *Cotton*, *Cotton* still controls at the district-court level. *Alvarez v. City of Brownsville*, 904 F.3d 382, 398 (5th Cir. 2018).

        3.      The Election Law Reform Task Force

The history of section 241 does not stop in 1968. Even assuming Plaintiffs are correct as to the 1950 and 1968 votes, the state revisited section 241 in the mid-1980s. Starting in 1984, Secretary of State Dick Molpus, a democrat, assembled a bipartisan, biracial Election Law Reform Task Force (the "Task Force") to review and revise the state's election laws. The Task Force included members of the legislature, executive-branch officials, circuit clerks, local election commissioners, and members of the public. Def.'s Evidentiary Submissions [63-2] at 106–07 (outlining purpose); *id.* at 111–13 (listing members). And the Task Force held public hearings throughout the state, met with representatives of the United States Justice Department, and received written feedback from organizations and individuals. *Id.* at 114 (noting plans for public hearings); *id.* at 203 (noting meeting with members of the Voting Rights Section of the U.S. Department of Justice); *id.* at 115–95.

<div align="center">16</div>

19-60662.355

Significantly, the Task Force expressly considered criminal disenfranchisement and whether to expand the list of crimes, amend section 241, or leave the law "as is." *Id.* at 212 (Election Law Reform Task Force- Summary of Action). In the final report, "[i]t was decided that [the] present law dealing with disenfranchisement of electors for the commission of certain crimes should be left as is. There was discussion as to the need for a constitutional amendment to change the law to include as disenfranchising crimes all felonies." *Id.*

The state legislature responded to the report by forming its own committees, issuing reports, and proposing legislation. *Id.* at 216–57. Prior to the 1986 Regular Session, the House committee, in conjunction with its Senate counterpart, issued a formal report, which proposed changes to section 241 and an effectuating constitutional amendment. *Id.* at 216-51. Specifically, as to disenfranchisement, the legislative committee recommended:

> 13. Disenfranchisement of felons
>     The committee recommends that any person convicted of any felony in this state, in another state or under federal statute, excluding the crim of manslaughter and felonious violations of the Internal Revenue Code, shall not be permitted to register to vote, or to vote; and if registered the felon's name shall be removed from the registration rolls. Upon completion of his prison sentence, including any probationary period, the felon will be eligible to register to vote upon presenting to his county registrar certifiable documentation that the sentence has been discharged.

*Id.* at 239–40.

Following the report, legislators introduced 1986 Senate Bill 2234 ("S.B. 2234"), which would have included the recommended language broadening section 241 to all felonies except manslaughter and tax violations. *Id.* at 255, 257 (Proposed House Amendment to Senate Bill No. 2234). But those changes did not survive the legislative process and were cut from the bill that passed the 1986 legislative session. *Id.* at 259–62. Instead, the legislature adopted the Task Force's recommendation and opted to keep the original list of crimes from section 241 and

17

19-60662.356

amend the Mississippi Code to make it consistent with section 241. *Id.* at 260; *see also* Miss. Code § 23-15-11 (identifying qualified voters as those who have "never been convicted of vote fraud *or of any crime listed in Section 241*, Mississippi Constitution of 1890" (emphasis added)). The legislation passed 118-3 in the House and 51-1 in the Senate. Def.'s Evidentiary Submission [63-2] at 263. It was then precleared by the Department of Justice under Section 5 of the Voting Rights Act.

There is no argument or evidence that either the Task Force or the legislature was tainted with racial animus or by a desire to perpetuate a racially motivated voting scheme. So, according to Hosemann, *if* the burden shifts to him under *Hunter*, he has demonstrated that section 241 "would have been enacted without" racial animus. Def.'s Mem. [64] at 11 (citing *Hunter*, 471 U.S. at 228).

The Harness Plaintiffs say Hosemann has not met that burden for two primary reasons. First, they say the Mississippi legislature merely amended the Mississippi Code "to conform the statute to the Constitution." Pls.' Mem. [82] at 22. In other words, it did not amend the offending constitutional provision, which therefore carries over the discriminatory intent. They also argue that even if the legislature considered amending section 241, there was no statewide vote. *Id.*

But as discussed already, the amendment to the Mississippi Code followed a multi-year, biracial, bipartisan review of Mississippi's election laws that expressly considered criminal disenfranchisement and whether section 241 should be amended. At the end, an overwhelming majority of the legislature decided to leave section 241 alone and instead amend the other election laws to conform with it. This is not a case like *Hunter* where the state itself did nothing to cure the defect, nor was a constitutionally infirm statute "perpetuated into the future by neutral

18

19-60662.357

official action." *Kirksey v. Bd. of Sup'rs of Hinds Cty.*, 554 F.2d 139, 148 (5th Cir. 1977).  The
unrebutted history shows the state would have passed section 241 as is without racial motivation.
Finally, Plaintiffs cite no authority suggesting that a statewide vote—as opposed to this thorough
representative process—is necessary to remove the racist taint that attached to section 241 more
than 100 years earlier.[5]

For all the reasons stated in this section, Defendant's motion for summary judgment on
the Harness Plaintiffs' section 241 claims is granted.

B.     Hopkins Plaintiffs

The Hopkins Plaintiffs challenge section 241 under the Eighth and Fourteenth
Amendments.

1.     Fourteenth Amendment Equal Protection

Unlike the Harness Plaintiffs, the Hopkins Plaintiffs offer a non-racial approach to their
equal-protection claim.  According to them, section 241 cannot survive strict scrutiny under § 1
of the Fourteenth Amendment because it is "not narrowly drawn to address a compelling state
interest using the least drastic means."  Pls.' Mem. [73] at 38 (citing *Dunn v. Blumstein*, 405 U.S.
330, 337, 342–43 (1972)).

The plaintiffs in *Richardson v. Ramirez* said the same thing.  418 U.S. at 27.  There, three
convicted felons alleged that California's constitution—which "disenfranchised persons
convicted of an 'infamous crime'"—failed the strict-scrutiny test and therefore violated § 1's

---

[5] Hosemann does not directly argue that these facts implicate the *Cotton* analysis, but perhaps he
should have.  *Cotton* was based on the observation in *Hunter* that the Court did not consider
whether the law would be valid "if enacted today without any impermissible motivation."
*Hunter*, 471 U.S. at 233.  In this case, Mississippi voted to keep section 241 as is and codified
the implementing statutes to conform with it.  Thus, "[t]he passage of time and the actions of
intervening parties [appears to have] cut that thread of [racist] intent."  *Veasey*, 888 F.3d at 821
(Graves, J., dissenting).

19

equal-protection guarantee. *Id.* The Supreme Court of California agreed, *id.* at 33–34, but the United States Supreme Court reversed. As the high Court noted, § 2 of the Fourteenth Amendment acknowledges a state's right to exclude convicted felons from the franchise, *id.* at 55–56.

Section 2 provides a penalty when a state denies or abridges the right to vote. Edited for clarity, the section provides:

> Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State . . . . But when the right to vote at any election . . . is denied to any of the male inhabitants of such State . . . , or in any way abridged, *except for participation in rebellion, or other crime,* the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

U.S. Const. amend. XIV, § 2 (emphasis added). The *Richardson* Court held that because § 2 "affirmative[ly] sanction[ed]" a state's right to deny the franchise based on a criminal conviction, doing so cannot violate § 1 of that same amendment. 418 U.S. at 54.

Plaintiffs know *Richardson* is a problem and try to distinguish it by offering a different construction of § 2. According to them, the phrase "other crime" in § 2 modifies only the word "abridged" and not the word "denied." Pls.' Mem. [73] at 28. So construed, § 2 would recognize a state's right to *abridge* the voting rights of someone who commits a crime—i.e., temporarily disenfranchise that person—but not the right to permanently *deny* the franchise. *Id.* Thus, Plaintiffs say strict scrutiny applies to laws—like Mississippi's section 241—that *deny* the franchise based on a criminal conviction.

Plaintiffs insist that *Richardson* is not binding because the Court never considered their textual argument. But even assuming the Supreme Court overlooked this alternative construction, its holding is squarely on point. "[T]he specific holding of the Court was that a

19-60662.359

state may deny the franchise to that group of 'convicted felons who have completed their sentences and paroles.'" *Shepherd v. Trevino*, 575 F.2d 1110, 1114 (5th Cir. 1978) (quoting *Richardson*, 418 U.S. at 56).

That holding remains binding. And as the Fifth Circuit stated in *Cotton*, "Section 2 of the Fourteenth Amendment does not prohibit states from disenfranchising convicted felons." 157 F.3d at 391 (citing *Richardson*, 418 U.S. at 24, 54). Other circuits have reached the same conclusion. *See Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Richardson* and stating "it is well established that Section 2 of the Fourteenth Amendment gives states the 'affirmative sanction' to exclude felons from the franchise"); *Hand v. Scott*, 888 F.3d 1206, 1209 (11th Cir. 2018) (noting the Supreme Court "has held that 'the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment'" (quoting *Richardson*, 418 U.S. at 54)); *Hayden v. Pataki*, 449 F.3d 305, 315 (2d Cir. 2006) ("The Supreme Court has ruled that, as a result of [§ 2], felon disenfranchisement provisions are presumptively constitutional."); *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1225 (11th Cir. 2005) (listing cases, including *Richardson*, recognizing "the propriety of excluding felons from the franchise"); *Harvey v. Brewer*, 605 F.3d 1067, 1079 (9th Cir. 2010) ("That is, once a felon is properly disenfranchised a state is at liberty to keep him in that status indefinitely and never revisit that determination." (citing *Richardson*, 418 U.S. at 26–27)). Based on *Richardson* and *Cotton*, the Court must reject Plaintiffs' argument.[6]

---

[6] Plaintiffs apparently anticipated this holding. *See* Pls.' Mem. [73] at 43 (stating that if Court finds *Richardson* applicable, "Plaintiffs present these arguments to preserve the issue for appeal").

19-60662.360

Case: 19-60662  Document: 48-1  Page: 128  Date Filed: 10/16/2019
Case 3:18-cv-00188-DPJ-FKB  Document 29-1  Filed 08/19/19  Page 50 of 58

Case 3:17-cv-00791-DPJ-FKB  Document 91  Filed 08/07/19  Page 22 of 29

2. Eighth Amendment Cruel and Unusual Punishment

The Hopkins Plaintiffs also say section 241 violates the Eighth Amendment's prohibition against cruel and unusual punishment. While they offer a detailed analysis under that amendment, their argument again conflicts with § 2 of the Fourteenth Amendment. Simply put, it would be internally inconsistent for the Eighth Amendment to prohibit criminal disenfranchisement while § 2 of the Fourteenth Amendment permits it. As aptly stated by the district court in *Farrakhan v. Locke*,

> Plaintiffs also claim that Washington's felon disenfranchisement law violates free speech, double jeopardy and the prohibition of cruel and unusual punishment under the First, Fifth, and Eighth Amendments to the Constitution. In order to uphold these claims against Defendants' motion to dismiss, the Court would have to conclude that the same Constitution that recognizes felon disenfranchisement under § 2 of the Fourteenth Amendment also prohibits disenfranchisement under other amendments. The Court is not inclined to interpret the Constitution in this internally inconsistent manner or to determine that the Supreme Court's declaration of the facial validity of felon disenfranchisement laws in *Richardson v. Ramirez* was based only on the fortuity that the plaintiffs therein did not make their arguments under different sections of the Constitution. While discussing the precedent leading up to its decision in *Richardson*, the Court wrote that "recently we have strongly suggested in dicta that exclusion of convicted felons from the franchise violates no constitutional provision." *Richardson*, 418 U.S. at 53, 94 S. Ct. at 2670. This language in *Richardson* suggests that the facial validity of felon disenfranchisement may be absolute. The Court concurs with this application to the case at hand.

987 F. Supp. 1304, 1314 (E.D. Wash. 1997). Summary judgment is appropriate as to the Hopkins Plaintiffs' Eight Amendment claim.[7]

---

[7] In *Graham v. Connor*, the United States Supreme Court held that claims related to search-and-seizure violations fall under the Fourth Amendment rather than the substantive-due-process provisions found in the Fourteenth Amendment. 490 U.S. 386, 395 (1989). It did so because "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct," whereas the Fourteenth Amendment addressed "the more generalized notion of 'substantive due process.'" *Id.* In a similar sense, § 2 of the Fourteenth Amendment "affirmative[ly] sanction[s]" a state's right to deny the franchise based on a criminal conviction whereas the Eight Amendment does not mention voting rights. *Richardson*, 418 U.S. at 54.

22

19-60662.361

V.    Section 253

As noted earlier, section 253 provides a legislative process by which a convicted felon can regain the right to vote.  Under that provision, "[t]he Legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person disqualified by reason of crime."  Miss. Const. art. XII, § 253.

The Hopkins Plaintiffs make three primary arguments for invalidating section 253:  (1) it violates the First Amendment because legislators have unfettered discretion to prevent speech; (2) it violates equal protection because it includes no objective standards for determining who is entitled to relief; and (3) it was adopted for racist reasons and therefore violates equal protection as proscribed in *Hunter*.  The Court will address each argument.

A.    First Amendment

"[T]he First Amendment provides no greater protection for voting rights than is otherwise found in the Fourteenth Amendment."  *Hand*, 888 F.3d at 1211; *see also id.* at 1212 ("Every First Amendment challenge to a discretionary vote-restoration regime we've found has been summarily rebuffed.").  The Court therefore dismisses the First Amendment claim.[8]

---

[8] Plaintiffs cite *Hand* to support their First Amendment claim, asserting "[t]he Eleventh Circuit expressly recognized that 'a discretionary felon-reenfranchisement scheme that was facially or intentionally designed to discriminate . . . might violate the First Amendment.'" Pls.' Mem. [78] at 18 (quoting *Hand*, 888 F.3d at 1211–12).  But what Plaintiffs left out of that sentence makes all the difference.  The court was addressing schemes "designed to discriminate *based on viewpoint—say, for example, by barring Democrats*." *Hand*, 888 F.3d at 1211 (emphasis added to language deleted from Plaintiffs' memorandum).  Plaintiffs' use of an ellipses is at best suspect, and they never acknowledge that the *Hand* court rejected their argument.  While *Hand* is not binding, it is persuasive.

23

Case: 19-60662   Document: 48-1   Page: 130   Date Filed: 10/16/2019
Case 3:18-cv-00188-DPJ-FKB   Document 29-1   Filed 08/29/19   Page 52 of 58

Case 3:17-cv-00791-DPJ-FKB   Document 91   Filed 08/07/19   Page 24 of 29

B.    Arbitrary Re-enfranchisement

Plaintiffs are correct that section 253 provides no "objective standards." Pls.' Mem. [73]
at 44.   Instead, the provision allows the legislature to consider petitions on a case-by-case basis,
which Plaintiffs attack on two grounds.   First, they say "the Fifth Circuit has twice instructed that
arbitrary disenfranchisement or re-enfranchisement of individuals convicted of disenfranchising
offenses violates the Equal Protection Clause." Pls.' Mem. [73] at 43–44 (citing *Williams v.
Taylor*, 677 F.2d 510 (5th Cir. 1982); *Shepherd*, 575 F.2d 1110).   But neither case actually
addresses Plaintiffs' argument that standardless re-enfranchisement laws violate equal protection.

In *Shepherd v. Trevino*, the Fifth Circuit reviewed and upheld a Texas law that provided
"for the reenfranchisement of convicted state felons who satisfactorily complete the terms of
their probation without providing a similar mechanism for the reenfranchisement of successful
federal probationers." 575 F.2d at 1111.   In doing so, the court made the unremarkable
observation that re-enfranchisement laws may not discriminate based on race by, for example,
"disenfranchis[ing] all felons and then reenfranchis[ing] only those who are, say, white.   Nor can
we believe that [§] 2 would permit a state to make a completely arbitrary distinction between
groups of felons with respect to the right to vote." *Id.* at 1114.   But *Shepherd* did not address
standardless re-enfranchisement mechanisms as Plaintiffs suggest.   *See* Pl.'s Mem. [73] at 44.
Indeed the mechanism it approved gave courts discretion when restoring voting rights.
*Shepherd*, 575 F.2d at 1115.

*Williams v. Taylor* is no better.   There, a black voter challenged his disenfranchisement
based on a prior conviction because white voters had not been disenfranchised.   677 F.2d at 514.
To begin with, *Williams* was not a re-enfranchisement case.   Nevertheless, Plaintiffs note that the
court reversed summary judgment and allowed the plaintiff the "chance to prove his claim of

24

19-60662.363

selective and arbitrary enforcement of the disenfranchisement procedure." *Id.* at 517.  In doing

so, the Fifth Circuit held that the plaintiff had no right to vote, but that he did have "the right not

to be the arbitrary target of the Board's enforcement of the statute." *Id.* at 517.  As in *Shepherd*,

the case asked whether the plaintiff had been treated differently, not whether the law violated

equal protection for lack of objective standards.

Plaintiffs' second argument likewise misses the mark.  They say "[t]he Supreme Court

has repeatedly struck down voter eligibility-related laws that are as 'completely devoid of

standards and restraints' as Mississippi's suffrage restoration provision."  Pls.' Mem. [73] at 44.

But they support that statement by citing only disenfranchisement cases, and there is a

substantive difference.   As the Supreme Court has noted, re-enfranchisement does not remove a

protected interest but is instead a matter of clemency.  *See, e.g., Conn. Bd. of Pardons v.*

*Dumschat,* 452 U.S. 458, 465 (1981).

In the re-enfranchisement context, *Hand* is again helpful.  There, the plaintiff disputed the

lack of standards for pardon petitions on equal-protection grounds.  888 F.3d at 1208.  But the

Eleventh Circuit concluded that the Supreme Court foreclosed the argument in *Beacham v.*

*Braterman,* 300 F. Supp. 182 (S.D. Fla. 1969), *aff'd* 396 U.S. 12 (1969).  The *Hand* court also

noted "[o]ther precedents confirm[ing] the broad discretion of the executive to grant and deny

clemency," often with "unfettered discretion." 888 F.3d at 1209 (collecting cases).  The Hopkins

Plaintiffs understandably observe that these cases deal with the executive branch—though

*Shepherd* dealt with similar discretion vested in the judicial branch.  575 F.2d at 1113.  But

Plaintiffs have not demonstrated that the legislative branch should be treated any differently.

Plaintiffs have also failed to satisfy their burden under the rational-basis test.  *See*

*Shepherd,* 575 F.2d at 1115.  Plaintiffs say in their response to Hosemann's motion that the

19-60662.364

Secretary of State has not shown section 253 is rationally related to a legitimate governmental interest. Pls.' Mem. [78] at 46. To begin with, it is not enough for Plaintiffs to say the state failed to demonstrate a rational basis when it is Plaintiffs' burden to make that showing. *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 350 (5th Cir. 2013). Substantively, "[a] state properly has an interest in excluding from the franchise persons who have manifested a fundamental antipathy to the criminal laws of the state or of the nation by violating those laws sufficiently important to be classed as felonies." *Shepherd*, 575 F.2d at 1115. And Plaintiffs offered no reply when Hosemann demonstrated that section 253 is rationally related to this legitimate governmental interest. *See* Def.'s Mem. [80] at 38.

In sum, Plaintiffs' authority does not address standardless re-enfranchisement mechanisms under an equal-protection analysis, and they have otherwise failed to meet their burden under the rational-basis test. Plaintiffs' cited authority does, however, address equal protection where a re-enfranchisement law is allegedly applied in a discriminatory way. *See Shepherd*, 575 F.2d at 1115. And that issue folds into Plaintiffs' *Hunter* argument—whether section 253 was adopted with the intent to discriminate and has that effect. *Hunter*, 471 U.S. at 227.

C.    *Hunter* Analysis

The parties dispute whether the Hopkins Plaintiffs presented sufficient record evidence of (1) discriminatory intent in 1890 and (2) racial impact—the first two prongs of the *Hunter* burden-shifting analysis. Unlike the section 241 analysis under *Cotton*, there is no Fifth Circuit authority dictating the result of this claim. Moreover, both parties submit record evidence regarding Plaintiffs' required showing. That evidence must be viewed in the light most

26

19-60662.365

favorable to the non-movant on each cross motion, which produces questions of fact on whether Plaintiffs met their burden under *Hunter*.

That said, Hosemann also argues that the Task Force and legislative processes in the mid-1980s satisfy the third prong of the *Hunter* analysis as to section 253. Unlike section 241, the legislature did not pass any laws that impacted section 253. Re-enfranchisement was, however, considered. Primarily, both the House and Senate committees jointly recommended eliminating section 253 and allowing convicted felons to regain the right to vote after completing their sentences and probation. *See* Def.'s Evidentiary Submissions [63-2] at 239–41 (Election Law Reform Study Committee Recommendations). But by the time S.B. 2234 was filed, that recommendation was absent. *Id.* at 255 (Proposed House Amendment to Senate Bill No. 2334). The Court could not find in this record what happened to the suggested amendment or whether it was ever voted on by either chamber.

Hosemann does not suggest that these facts trigger the *Cotton* analysis. As for *Hunter*, the Hopkins Plaintiffs say that absent re-enactment, the Court must limit its review to what happened in 1890. Even assuming the evidence from the 1980s impacts Hosemann's final burden under *Hunter*, the record is not sufficient to hold—as a matter of law—that either party is entitled summary judgment on that factual issue. Moreover, both parties offer conflicting evidence as to the intent in 1890. Again, the evidence is viewed in the light most favorable to the non-movant, which precludes summary judgment as to original intent for enacting section 253.

19-60662.366

VI. Conclusion

The parties presented extensive briefing. And while not all arguments are reflected in this Order, all arguments raised were considered. Those not addressed would not have changed the outcome.

With respect to section 241, this Court is bound by the precedent set by the United States Supreme Court in *Richardson v. Ramirez* and the Fifth Circuit Court of Appeals in *Cotton v. Fordice*. For that and the other stated reasons, Defendant's motion for summary judgment [63] as to the Harness Plaintiffs is granted; the Harness Plaintiffs' summary-judgment motion [74] is denied; and the Harness Complaint is severed and dismissed. A separate judgment will be entered in the severed Harness case in accordance with Federal Rule of Civil Procedure 58. Defendant's motion for summary judgment [66] as to the Hopkins Plaintiffs is granted in part and denied in part—granted as to section 241 and denied as to section 253; and the Hopkins Plaintiffs' motion for summary judgment [74] is denied as to both sections 241 and 253.

Finally, the court certifies all holdings in the still open Hopkins case for interlocutory appeal. The Court believes this order involves several controlling questions of law as to which there is substantial ground for difference of opinion. *See* 28 U.S.C. § 1292. Moreover, an immediate appeal from the order may materially advance the ultimate termination of the litigation. *Id.* As noted, the Harness and Hopkins plaintiffs made different arguments as to section 241, and if the Harness Plaintiffs appeal, then the Fifth Circuit should consider the Hopkins Plaintiffs' legal-construction arguments at the same time. Regarding section 253, Hosemann may elect to appeal the standing holding and the holding regarding the implications of the 1986 committee reports recommending deletion of section 253. Likewise, plaintiffs may wish to appeal the holding that their claim raises no recognized equal-protection rights. Any one

28

of these or the other issues would materially impact the trial of this matter, and the Court also wishes to avoid piecemeal appeals. For these reasons, all issues are certified.

Finally, the Court anticipates an appeal and therefore stays the Hopkins case until the appeal is concluded or the parties indicate that no appeal will be filed and request pre-trial conference.

**SO ORDERED AND ADJUDGED** this the 7th day of August, 2019.

*s/ Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

19-60662.368

Case 3:18-cv-00188-DPJ-FKB   Document 23-11   Filed 08/19/19   Page 58 of 58

Case 3:17-cv-00791-DPJ-FKB   Document 92   Filed 08/07/19   Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROY HARNESS, ET AL.                                                PLAINTIFFS

V.                                          CIVIL ACTION NO. 3:17-CV-791-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF STATE
OF MISSISSIPPI                                                      DEFENDANT

JUDGMENT

As stated in the Order entered this date, the Court finds as follows: Defendant's motion

for summary judgment [63] as to the Harness Plaintiffs is granted; the Harness Plaintiffs'

summary-judgment motion [74] is denied; and the Harness Complaint is severed and

dismissed.  This action (Civil Action No. 3:17-CV-791-DPJ-FKB) is hereby dismissed with

prejudice.

**SO ORDERED AND ADJUDGED** this the 7th day of August, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE



EXHIBIT
2

19-60662.369

**Tab 6**

No. 19-

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## for the
# 𝔉𝔦𝔣𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

◆▶●◀◆

DENNIS HOPKINS, *et al.*,

*Plaintiffs-Petitioners,*

– v. –

DELBERT HOSEMANN, SECRETARY OF STATE OF MISSISSIPPI,
IN HIS OFFICIAL CAPACITY,

*Defendant-Respondent.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, NORTHERN DIVISION
DISTRICT COURT CASE NO. 3:18-CV-188-DPJ-FKB

## PETITION FOR PERMISSION TO APPEAL

PALOMA WU
SOUTHERN POVERTY LAW CENTER
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
(601) 948-8882
Paloma.Wu@splcenter.org

LISA GRAYBILL
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 486-8982
Lisa.Graybill@splcenter.org

NANCY G. ABUDU
CAREN E. SHORT
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, Georgia 30031
(404) 521-6700
Nancy.Abudu@splcenter.org
Caren.Short@splcenter.org

JONATHAN K. YOUNGWOOD
JANET A. GOCHMAN
ISAAC M. RETHY
NIHARA K. CHOUDHRI
TYLER ANGER
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
tyler.anger@stblaw.com

*Attorneys for the Plaintiffs-Petitioners*

Case: 3:18-cv-00188-DPJ-FKB Document 29-1 Filed 08/15/19 Page 3 of 70

# CERTIFICATE OF INTERESTED PERSONS

### No. 19-____

---

DENNIS HOPKINS, ET AL.,

*Plaintiffs-Petitioners,*

V.

DELBERT HOSEMANN, SECRETARY OF STATE OF MISSISSIPPI, IN HIS OFFICIAL CAPACITY,

*Defendant-Respondent.*

---

The undersigned counsel of record certifies that the following interested persons and entities described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

There are no corporations that are either parents of any of the Plaintiffs-Petitioners or that own 10% or more stock in any of the Plaintiffs-Petitioners.

### A.  Plaintiffs-Petitioners

Dennis Hopkins
Herman Parker, Jr.
Walter Wayne Kuhn, Jr.
Byron Demond Coleman
Jon O'Neal

19-60662.446

Earnest Willhite
c/o Southern Poverty Law Center
111 East Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Paloma.Wu@splcenter.org

The foregoing individuals are the named plaintiffs in *Hopkins, et al. v. Hosemann*.

They seek to represent the following class, which was certified by the District

Court:

> Any person who (a) is or becomes disenfranchised under
> Mississippi state law by reason of a conviction of a
> disenfranchising offense, and (b) has completed the term
> of incarceration, supervised release, parole, and/or
> probation for each such conviction.

Dkt. 89, Order, *Harness, et al. v. Hosemann*, No. 3:17-cv-00791-DPJ-FKB (S.D.

Miss. Feb. 13, 2019), at 6.

## B.    Current and Former Attorneys for Plaintiffs-Petitioners

Current Attorneys

Jonathan K. Youngwood
Janet A. Gochman
Isaac Rethy
Nihara K. Choudhri
Tyler Anger
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-3539
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com

19-60662.447

nchoudhri@stblaw.com
tyler.anger@stblaw.com

Paloma Wu
SOUTHERN POVERTY LAW CENTER
111 East Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Paloma.Wu@splcenter.org

Lisa Graybill
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue
New Orleans, LA 70130
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org

Nancy G. Abudu
Caren E. Short
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, GA 30031
Tel: (404) 521-6700
Nancy.Abudu@splcenter.org
Caren.Short@splcenter.org

Former Attorneys

Jody E. Owens, II
SOUTHERN POVERTY LAW CENTER
111 East Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Jody.Owens@splcenter.org

## C.    Defendant-Respondent

Delbert Hosemann, Secretary of State of Mississippi, in his official capacity

19-60662.448

## D.    Current and Former Attorneys for Defendant-Respondent

<u>Current Attorneys</u>:

Justin L. Matheny
Krissy C. Nobile
OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI
P. O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
jmath@ago.state.ms.us
knobi@ago.state.ms.us

<u>Former Attorneys</u>:

None.

## E.    Other Interested Persons

None.

Dated:        August 19, 2019

<div align="right">

s/ Jonathan K. Youngwood
Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-3539
jyoungwood@stblaw.com

*Attorney of record for Plaintiffs-Petitioners*

</div>

19-60662.449

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................i

INTRODUCTION ...............................................................................................1

FACTS RELEVANT TO THE QUESTIONS PRESENTED.................................3

  A.  Plaintiffs' Claims ......................................................................................4

  B.  The District Court's Order.........................................................................6

QUESTIONS PRESENTED.................................................................................7

RELIEF SOUGHT ..............................................................................................8

REASONS TO GRANT THE PETITION .............................................................8

  I.  Each of the Three Questions Presented Is a Controlling Question
    of Law ......................................................................................................9

  II.  There Is Substantial Ground for Difference of Opinion as to Each
    of the Three Questions Presented ...........................................................10

      A.  There Is Substantial Ground for Difference of Opinion
        as to Question One .......................................................................10

          1.  Constitutional Limitations on the Exercise of Legislative
              Power Apply Even Where the Constitution Specifically
              Empowers States to Legislate .........................................11

          2.  The Eighth Amendment's Limitations on Legislative Power
              Are Not Static, But Are Instead Defined by "Evolving
              Standards of Decency".....................................................13

      B.  There Is Substantial Ground for Difference of Opinion
        as to Question Two .......................................................................13

      C.  There Is Substantial Ground for Difference of Opinion
        as to Question Three .....................................................................16

19-60662.450

1.   The Judicial Deference Afforded to Executive Clemency
      Regimes Does Not Apply to Legislative Reenfranchisement
      Schemes ..........................................................................16

2.   Reenfranchisement Laws May Permissibly Differentiate
      Between Individuals Convicted of Felonies Only Where
      the Classification Is Rationally Related to a Legitimate
      State Interest...................................................................19

3.   The Equal Protection Clause Does Not Permit
      Disenfranchisement and Reenfranchisement Laws
      That Arbitrarily Distinguish Between Individuals
      Convicted of Felonies ....................................................21

III.  An Immediate Appeal of Each Question May Materially Advance
      the Ultimate Termination of the Litigation ...................................23

CONCLUSION.................................................................................24

CERTIFICATE OF CONFERENCE....................................................26

CERTIFICATE OF SERVICE ............................................................27

CERTIFICATE OF COMPLIANCE.....................................................28

19-60662.451

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ainsworth v. Cargotec USA, Inc.*,
  No. 2:10-cv-236-KS-MTP, 2011 WL 6291812 (S.D. Miss. Dec. 15, 2011),
  *appeal allowed* No. 11-90052 (5th Cir. March 1, 2012)......................................10

*Battle v. Anderson*,
  564 F.2d 388 (10th Cir. 1977)...................................................................................12

*Beacham v. Braterman*,
  300 F. Supp. 182 (S.D. Fla. 1969), *aff'd mem.*, 396 U.S. 12 (1969) ........ 5, 17, 18

*BP Expl. & Prod., Inc. v. Claimant ID 100281817*,
  919 F.3d 284 (5th Cir. 2019) .....................................................................................23

*Connecticut Bd. of Pardons v. Dumschat*,
  452 U.S. 458 (1981) .....................................................................................................17

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
  543 U.S. 157 (2004) .....................................................................................................14

*Davis v. Schnell*,
  81 F. Supp. 872 (S.D. Ala. 1949), *aff'd per curiam*, 336 U.S. 933 (1949)..........22

*Farrakhan v. Locke*,
  987 F. Supp. 1304 (E.D. Wash. 1997) ............................................................... 10, 11

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*,
  858 F.2d 103 (2d Cir. 1988) .......................................................................................16

*Graham v. Florida*,
  560 U.S. 48 (2010) .......................................................................................................13

*Hall v. Florida*,
  572 U.S. 701 (2014) .....................................................................................................13

*Hand v Scott*,
  888 F.3d 1206 (11th Cir. 2018)...................................................................................18

19-60662.452

*Harvey v. Brewer*,
　　605 F.3d 1067 (9th Cir. 2010) ................................................................. 15, 22

*Hines v. Alldredge*,
　　No. 1:13-cv-56, 2014 WL 12649849 (S.D. Tex. Mar. 27, 2014),
　　*appeal allowed* No. 14-90012 (5th Cir. Apr. 17, 2014) ...................................23

*Hunter v. Underwood*,
　　471 U.S. 222 (1985) ..........................................................................................12

*Hurtado v. California*,
　　110 U.S. 516 (1884) ..........................................................................................18

*In re Stegall*,
　　865 F.2d 140 (7th Cir. 1989) ............................................................................16

*In re Text Messaging Antitrust Litig.*,
　　630 F.3d 622 (7th Cir. 2010) ...............................................................................9

*Johnson v. Burken*,
　　930 F.2d 1202 (7th Cir. 1991) .............................................................................9

*Kennedy v. Louisiana*,
　　554 U.S. 407 (2008) ..........................................................................................13

*Legal Servs. for Prisoners with Children v. Bowen*,
　　170 Cal. App. 4th 447 (Cal. Ct. App. 2009) ....................................................15

*Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, LLC*,
　　No. 1:17-cv-00010-GHD-DAS, 2018 WL 2107725 (N.D. Miss. May 7,
　　2018), *appeal allowed* No. 18-90030 (5th Cir. Aug. 29, 2018) .................... 9, 23

*Louisiana v. U.S.*,
　　380 U.S. 145 (1965) ..........................................................................................22

*McLean v. State of Arkansas*,
　　211 U.S. 539 (1909) ..........................................................................................18

*Owens v. Barnes*,
　　711 F.2d 25 (3d Cir. 1983) ........................................................................ 21, 22

*Reese v. B.P. Exploration (Alaska), Inc.*,
　　643 F.3d 681 (9th Cir. 2011) .............................................................................10

19-60662.453

*Richardson v. Ramirez*,
   418 U.S. 24 (1974) ....................................................................... *passim*

*Schick v. Reed*,
   419 U.S. 256 (1974) .................................................................. 18

*Shepherd v. Trevino*,
   575 F.2d 1110 (5th Cir. 1978) .............................................. 19, 20, 22

*Texas v. Cobb*,
   532 U.S. 162 (2001) ............................................................. 14-15

*United States v. Harrison*,
   296 F.3d 994 (10th Cir. 2002) ............................................... 15

*United States v. L.A. Tucker Truck Lines, Inc.*,
   344 U.S. 33 (1952) ............................................................... 15

*U.S. v. Winstar Corp.*,
   518 U.S. 839 (1996) ............................................................. 18

*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016) ............................................... 14

*Williams v. Rhodes*,
   393 U.S. 23 (1968) ............................................................ 11, 12

*Williams v. Taylor*,
   677 F.2d 510 (5th Cir. 1982) .............................................. 22

**United States Constitution**

Art. II, § 1 ............................................................................. 11

Amend. VIII ...................................................................... *passim*

Amend. XIV, § 1 ................................................................ *passim*

Amend. XIV, § 2 ................................................................ *passim*

19-60662.454

## State Constitutions

FLA. CONST. art. VI, § 4(A) ........................................................................2

IOWA CONST. art. 2, § 5 .............................................................................2

KY. CONST. § 145(1)...................................................................................2

MISS. CONST. art. XII, § 241 ............................................................... 2, 3, 4

MISS. CONST. art. XII, § 253 ............................................................... *passim*

## Federal Statutes

28 U.S.C. § 1292(b) ........................................................... 1, 2, 8, 9, 24

## State Statutes

IOWA CODE § 48A.6(1)...............................................................................2

MISS. CODE ANN. § 23-15-11 ...................................................................2, 3

MISS. CODE ANN. § 23-15-19 .......................................................................3

MISS. CODE ANN. § 47-7-41 .........................................................................2

## Rules

Fed. R. App. 5(a)(2) ...................................................................................8

19-60662.455

Plaintiffs in *Hopkins, et al. v. Hosemann,* No. 3:18-cv-00188-DPJ-FKB ("*Hopkins*") respectfully request permission to appeal under 28 U.S.C. § 1292(b) from an order denying Plaintiffs' Motion for Summary Judgment and granting in part Defendant's Motion for Summary Judgment entered by the United States District Court for the Southern District of Mississippi in the case of *Harness, et al. v. Hosemann*, No. 3:17-cv-00791-DPJ-FKB ("*Harness*"), issued and filed on August 7, 2019 ("Order"), attached hereto as Exhibit A. *Hopkins* was previously consolidated with *Harness*. The Order granted summary judgment to Defendant on all claims in *Harness*, and severed and dismissed the *Harness* complaint. One claim in *Hopkins* remains open.

The Order certified for immediate interlocutory appeal "all issues" in *Hopkins*, and stayed the case until the appeal is concluded. Ex. A at 28–29.

## INTRODUCTION

The questions of law that Plaintiffs seek to appeal concern the constitutional limits on state authority to enact felony disenfranchisement and reenfranchisement schemes. Each of these questions satisfies the requirements of 28 U.S.C. § 1292(b), as the District Court so found *sua sponte*.

These questions stem from a challenge to Mississippi's lifetime criminal disenfranchisement scheme. Nearly every other state restores voting rights to individuals convicted of most or all disenfranchising offenses upon sentence

19-60662.456

completion, if not sooner.[1] But Mississippi is one of only three states in the nation that deprives all individuals convicted of disenfranchising offenses of the right to vote for the rest of their lives.[2] Disenfranchised Mississippians may only regain the right to vote at the behest of the Governor, or through the rarity of an individualized suffrage bill passed by the Mississippi Legislature pursuant to Mississippi's standardless legislative scheme for the case-by-case restoration of voting rights.[3] As a result of these laws, tens of thousands of Mississippi residents will never again have the opportunity to cast a ballot—even if decades have passed since they completed their sentences.

The District Court granted summary judgment to Defendant on all but one of Plaintiffs' claims based on what it determined to be "binding" "precedent." Ex. A. at 1. However, the Court found that its Order presents "several controlling questions of law as to which there is a substantial ground for difference of opinion," and "an immediate appeal from the [O]rder may materially advance the ultimate termination of the litigation." *Id.* at 28. Plaintiffs respectfully request that this Court exercise its discretion to permit an appeal from the Order pursuant to 28 U.S.C. § 1292(b). An interlocutory appeal is particularly warranted because of the

---

[1] A-530–A-537 (Summary Charts III & IV); FLA. CONST. art. VI, § 4(A).

[2] IOWA CONST. art. 2, § 5; IOWA CODE § 48A.6(1); KY. CONST. § 145(1); MISS. CONST. art. XII, § 241; MISS. CODE ANN. § 23-15-11.

[3] MISS. CONST. art. XII, §§ 241, 253; MISS. CODE ANN. § 47-7-41.

2

likely appeal in *Harness*, which concerns one of the same Mississippi constitutional provisions at issue in *Hopkins*. As the District Court recommended, Ex. A at 28, the appeals in these separate cases should both be heard.

## FACTS RELEVANT TO
## THE QUESTIONS PRESENTED

Section 241 of the Mississippi Constitution punishes individuals convicted of disenfranchising offenses in Mississippi state courts ("disenfranchised individuals") by depriving them of the right to vote for the rest of their lives (the "lifetime voting ban").[4] Mississippi's lifetime voting ban impacts tens of thousands of Mississippians who have completed their sentences.[5]

As the District Court recognized, Section 253 of the Mississippi Constitution establishes a legislative process with "no 'objective standards'" for the "case-by-case" restoration of voting rights to disenfranchised individuals. Ex. A at 24. Section 253 provides:

> The Legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person disqualified by reason of crime; but the reasons therefor shall be spread upon the journals, and the vote shall be by yeas and nays.

Between 2013 and 2018, the year this case was filed, the Mississippi Legislature

---

[4] MISS. CONST. art. XII, § 241; MISS. CODE ANN. §§ 23-15-11, 23-15-19.

[5] A-365 (Rothman Rep. ¶¶ 16–17).

3

19-60662.458

restored voting rights to just eighteen disenfranchised individuals.[6]

Section 241's lifetime voting ban and Section 253 were originally enacted in Mississippi's 1890 Constitution.[7] Defendant has admitted that Section 253 has "never been amended."[8]

## A.    Plaintiffs' Claims

On March 27, 2018, Plaintiffs filed a class action asserting five constitutional claims challenging Section 241's lifetime voting ban and Section 253.

*First*, Plaintiffs claim that Mississippi's lifetime voting ban violates the Eighth Amendment's prohibition on cruel and unusual punishment. Plaintiffs contend that a national consensus has developed against the punishment of condemning Americans who have completed their sentences to a lifetime of second-class citizenship.

*Second*, Plaintiffs advance a novel construction of Section 2 of the Fourteenth Amendment that was neither presented to nor considered by the Supreme Court in *Richardson v. Ramirez*, 418 U.S. 24 (1974). The *Richardson* Court held that Section 2 provides an "affirmative sanction" for "the exclusion of

---

[6] A-514–A-516 (Summary Chart I).
[7] MISS. CONST. art. XII, §§ 241, 253 (1890).
[8] A-509 (Def.'s Response to Pl.'s RFA No. 28).

19-60662.459

felons from the vote." *Id.* at 54. Plaintiffs claim that Section 2 applies only to laws that temporarily "abridge[ ]" the right to vote on the basis of "participation in rebellion, or other crime" and not to laws that permanently "den[y]" this right. Because Mississippi's lifetime voting ban falls outside the scope of Section 2's exemption, it is subject to strict scrutiny, which it cannot satisfy.

*Third*, Plaintiffs claim that Section 253 violates the Equal Protection Clause because it permits legislators to arbitrarily restore voting rights to some disenfranchised individuals and not others, with no standards to govern those determinations.[9]

*Fourth*, Plaintiffs claim that Section 253 vests legislators with unfettered discretion to restore voting rights in violation of the First Amendment.

*Fifth*, Plaintiffs claim that Section 253 violates the Equal Protection Clause because it was enacted with racially discriminatory intent as part of Mississippi's 1890 Constitution, has never been amended, and continues to disproportionately impact black Mississippians.

Plaintiffs moved for class certification on August 15, 2018. Plaintiffs and Defendant cross-moved for summary judgment on October 4, 2018. On February

---

[9] Plaintiffs' claims do not necessarily directly call into question the holdings in *Richardson*, 418 U.S. 24, and *Beacham v. Braterman*, 300 F. Supp. 182 (S.D. Fla. 1969), *aff'd mem.*, 396 U.S. 12 (1969), or their progeny. However, Plaintiffs reserve the right to challenge these decisions.

19-60662.460

13, 2019, the District Court granted Plaintiffs' Motion for Class Certification.

## B.   The District Court's Order

On August 7, 2019, the District Court denied Plaintiffs' Motion for

Summary Judgment as to all five claims, and granted Defendant's Motion for

Summary Judgment as to all claims except for Plaintiffs' race-based equal

protection challenge to Section 253. As to that claim, the Court found that there

was "conflicting evidence as to the intent in 1890." Ex. A. at 27.

With respect to Plaintiffs' first claim, the Court concluded that the Eighth

Amendment does not apply to felony disenfranchisement laws because "it would

be internally inconsistent for the Eighth Amendment to prohibit criminal

disenfranchisement while § 2 of the Fourteenth Amendment permits it." *Id.* at 22.

As to Plaintiff's second claim, the Court recognized that Planitiffs "offer[ ] a

different construction of § 2." *Id.* at 20. The Court found that "even assuming the

Supreme Court overlooked this alternative construction, its holding is squarely on

point." *Id.* The Court held that it "must reject Plaintiffs' argument" "[b]ased on

*Richardson*" and Fifth Circuit precedent following *Richardson*. *Id.* at 21.

With respect to Plaintiffs' third claim, the Court found that Section 253's

standardless legislative reenfranchisement scheme "raises no recognized equal-

protection rights." *Id.* at 28. The Court also found that plaintiffs failed to

demonstrate that Section 253 is not rationally related to a legitimate governmental

19-60662.461

interest. *Id.* at 25-26.

The District Court determined, *sua sponte*, that its Order "involves several controlling questions of law as to which there is substantial ground for difference of opinion." *Id.* at 28. The Court further found that "an immediate appeal from the [O]rder may materially advance the ultimate termination of the litigation." *Id.* The Court explained that "[a]ny one of these . . . issues would materially impact the trial of the matter," and expressed its desire "to avoid piecemeal appeals." *Id.* at 28–29. The Court therefore "certifie[d] all holdings in the still open *Hopkins* case for interlocutory appeal." *Id.* at 28. Because the Court "anticipates an appeal," it "stay[ed] the *Hopkins* case until the appeal is concluded or the parties indicate that no appeal will be filed and request pre-trial conference." *Id.* at 29.

## QUESTIONS PRESENTED

While the District Court stated that "all issues [in its Order] are certified," *id.* at 29, the Court did not explicitly formulate the relevant "controlling questions of law." Plaintiffs seek certification of the following questions, each of which is addressed in the Order:

Question One:  Does Section 2 of the Fourteenth Amendment render felony disenfranchisement schemes categorically exempt from the Eighth Amendment's prohibition against cruel and unusual punishment?

Question Two: Does the Supreme Court's decision in *Richardson v.*

*Ramirez*, 418 U.S. 24 (1974), foreclose consideration of a novel question of

statutory construction concerning Section 2 of the Fourteenth Amendment, where

this question was neither presented to nor considered by the *Richardson* Court?

Question Three: Does a standardless legislative process for the case-by-case

restoration of voting rights to individuals convicted of felonies violate the Equal

Protection Clause?

**RELIEF SOUGHT**

Plaintiffs seek leave to file an immediate interlocutory appeal, pursuant to 28

U.S.C. § 1292(b), of the District Court's Order.

**REASONS TO GRANT THE PETITION**

This Court "may . . . in its discretion, permit an appeal to be taken from" "an

order not otherwise appealable" where the district court is "of the opinion that such

order involves a controlling question of law as to which there is substantial ground

for difference of opinion and that an immediate appeal from the order may

materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Here, the District Court found these requirements satisfied and certified "all

issues" in its Order pursuant to 28 U.S.C. § 1292(b). Ex. A at 28–29. Plaintiffs

filed this petition within ten days of that certification order. *See* 28 U.S.C.

§ 1292(b); Fed. R. App. 5(a)(2). This Court should exercise its discretion to permit

an immediate appeal of the Order, as each of the three questions presented satisfies

8

the requirements of § 1292(b).[10]

## I.  Each of the Three Questions Presented Is a Controlling Question of Law

For purposes of 28 U.S.C. § 1292(b), a "question of law" is one that the appellate court can "decide quickly and cleanly without having to study the record." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010); *see also Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, LLC*, No. 1:17-cv-00010-GHD-DAS, 2018 WL 2107725, at *2 (N.D. Miss. May 7, 2018) (same), *appeal allowed* No. 18-90030 (5th Cir. Aug. 29, 2018). A question of law is "controlling" if it is "serious to the conduct of the litigation, either practically or legally." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991).

The District Court correctly concluded that the "[O]rder involves several controlling questions of law." Ex. A at 28. Question One is a threshold constitutional issue that determines whether Plaintiffs may challenge Mississippi's lifetime voting ban under the Eighth Amendment. Question Two asks whether the *Richardson* Court's holding forecloses a statutory construction argument that was neither presented to nor addressed by the Court. Question Three concerns the equal protection analysis that governs standardless legislative schemes for the case-by-

---

[10] Unless otherwise noted, internal quotation marks, alterations and citations are omitted throughout.

19-60662.464

case restoration of voting rights.

## II.     There Is Substantial Ground for Difference of Opinion as to Each of the Three Questions Presented

"[S]ubstantial ground for difference of opinion" exists if the question is one "about which reasonable jurists can . . . debate." *Ainsworth v. Cargotec USA, Inc.*, No. 2:10-cv-236-KS-MTP, 2011 WL 6291812, at *4 (S.D. Miss. Dec. 15, 2011) (quoting *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 399 (5th Cir 2010)), *appeal allowed* No. 11-90052 (5th Cir. March 1, 2012). "[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. B.P. Exploration (Alaska), Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Substantial ground for difference of opinion exists as to each of the three questions presented here.

### A.     There Is Substantial Ground for Difference of Opinion as to Question One

The District Court construed *Richardson* as empowering state legislatures with unbounded authority to enact felony disenfranchisement laws that are immune from constitutional review. *See* Ex. A at 22 ("This language in *Richardson* suggests that the facial validity of felon disenfranchisement may be absolute.") (quoting *Farrakhan v. Locke*, 987 F. Supp. 1304, 1314 (E.D. Wash. 1997)). Based on this expansive reading, the Court held that felony disenfranchisement schemes

19-60662.465

are exempt from the limits of the Eighth Amendment. *See id.* The Court also

signaled that none of the Constitution's limits on the exercise of legislative power

apply to such schemes. *See id.* (strongly questioning the proposition that "'the

same Constitution that recognizes felon disenfranchisement under § 2 of the

Fourteenth Amendment also prohibits disenfranchisement under other

amendments'") (quoting *Farrakhan*, 987 F. Supp. at 1314)).

> **1.** **Constitutional Limitations on the Exercise of Legislative Power Apply Even Where the Constitution Specifically Empowers States to Legislate**

The District Court's holding is fundamentally incompatible with the

Supreme Court's decision in *Williams v. Rhodes,* 393 U.S. 23 (1968). There, the

state of Ohio contended that "it ha[d] absolute power to put any burdens it

pleas[ed] on the selection of electors" because the Constitution specifically

empowers states to enact legislation governing the selection of electors. *Id.* at 28–

29 (citing U.S. CONST., art. II, § 1). But the Supreme Court "reject[ed] the notion

that Art. II, § 1, gives the States the power to impose burdens on the right to vote,

where such burdens are expressly prohibited in other constitutional provisions." *Id.*

at 29. The Court explained that constitutional "provisions that grant Congress or

the States specific power to legislate in certain areas . . .  are always subject to the

11

19-60662.466

limitation that they may not be exercised in a way that violates other specific provisions of the Constitution." *Id.*

The Supreme Court's subsequent decision in *Hunter v. Underwood*, 471 U.S. 222 (1985), demonstrates that these same principles apply to criminal disenfranchisement laws. There, the state of Alabama argued that the Equal Protection Clause did not reach a criminal disenfranchisement law enacted with racially discriminatory intent because the state was "authorized by . . . § 2" to enact that law. *Id.* at 233. The *Hunter* Court held that "§ 2 was not designed to permit the purposeful racial discrimination attending the enactment and operation of [Alabama's criminal disenfranchisement law] which otherwise violates § 1 of the Fourteenth Amendment." *Id.* The *Hunter* Court stated that its decision was entirely consistent with *Richardson. See id.* ("Nothing in our opinion in *Richardson v. Ramirez, supra*, suggests the contrary.").

In view of these decisions, it would be incorrect to conclude that the Eighth Amendment cannot reach felony disenfranchisement laws.[11]

---

[11] Like the Equal Protection Clause, "the Eighth Amendment is a restraint upon the exercise of legislative power." *Battle v. Anderson*, 564 F.2d 388, 402 (10th Cir. 1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 174 (1976)).

19-60662.467

2. **The Eighth Amendment's Limitations on Legislative Power Are Not Static, But Are Instead Defined by "Evolving Standards of Decency"**

Reasonable jurists can also debate whether Section 2 of the Fourteenth Amendment, which was ratified in 1868, can preclude an Eighth Amendment claim asserted today.

The *Richardson* Court looked back to "the understanding of those who framed and ratified the Fourteenth Amendment" to reach the conclusion that the Equal Protection Clause does not "bar outright" felony disenfranchisement laws. 418 U.S. at 48, 55. But the *Richardson* Court's historical analysis does not, nearly a half-century later, control an Eighth Amendment cruel and unusual punishment claim, which must be measured against contemporary values. *See, e.g.*, *Hall v. Florida*, 572 U.S. 701, 708 (2014) ("The Eighth Amendment is not fastened to the obsolete" and "acquire[s] meaning as public opinion becomes enlightened by a humane justice."); *Graham v. Florida,* 560 U.S. 48, 58 (2010) ("To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society."); *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008) (same).

B. **There Is Substantial Ground for Difference of Opinion as to Question Two**

In *Richardson*, the Court was not presented with and did not consider the argument that Section 2's "except for participation in rebellion, or other crime"

19-60662.468

exemption applies only to laws that temporarily "abridge[ ]" the right to vote on this basis and not to laws that "den[y]" this right forever.[12] The *Richardson* Court therefore focused its analysis exclusively on the meaning of the phrase "except for participation in rebellion, or other crime." *See Richardson*, 418 U.S. at 43 (finding that the phrase 'except for participation in rebellion, or other crime' "was intended by Congress to mean what it says").

Although the *Richardson* Court never considered Plaintiffs' proposed construction of Section 2, the District Court held that it "must reject Plaintiffs' argument" because the *Richardson* Court's "holding is squarely on point." Ex. A at 20–21. There is a substantial ground for difference of opinion as to whether *Richardson* precludes consideration of Plaintiffs' novel construction of Section 2, as the Supreme Court has itself instructed that its prior decisions should not be read to foreclose questions that were neither considered nor addressed. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Texas v.*

---

[12] The Fifth Circuit has recently recognized, in the context of a challenge under Section 2 of the Voting Rights Act, that there is a significant difference between abridging and denying the right to vote. *See Veasey v. Abbott*, 830 F.3d 216, 259–260 (5th Cir. 2016) (explaining that "[a]bridgement is defined as the reduction or diminution of something").

19-60662.469

*Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that if a legal question "was not . . . raised in briefs or argument nor discussed in the opinion of the Court . . . the case is not a binding precedent on this point").

In *Harvey v. Brewer*, the Ninth Circuit considered plaintiffs' contention that the "other crime" exemption applies only to common-law felonies, even though the court observed that plaintiffs' "proposed reading . . . seems to be in direct conflict with *Richardson*" because one of the plaintiffs in *Richardson* was "convicted of a crime that was clearly not a felony at common law." 605 F.3d 1067, 1074 (9th Cir. 2010) (O'Connor, J., sitting by designation). The Ninth Circuit determined that plaintiffs' argument was not precluded because *Richardson* did not "directly address[ ] this precise question." *Id.*; *see also Legal Servs. for Prisoners with Children v. Bowen*, 170 Cal. App. 4th 447, 458 (Cal. Ct. App. 2009) (reaching the question of whether Section 2's "other crime" exemption is limited to common law felonies because the court could not "confidently conclude that the Supreme Court has" ruled on this issue).

Reasonable jurists could therefore conclude that Plaintiffs' novel statutory interpretation claim concerning Section 2 is correct notwithstanding *Richardson*. *See, e.g.*, *United States v. Harrison*, 296 F.3d 994, 1005 (10th Cir. 2002) ("[A] prior

19-60662.470

opinion cannot stand as precedent for a proposition of law not explored in the opinion, even when the facts stated in the opinion would support consideration of the proposition."); *In re Stegall*, 865 F.2d 140, 142 (7th Cir. 1989) ("A point of law merely assumed in an opinion, not discussed, is not authoritative."); *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988) ("a *sub silentio* holding is not binding precedent").

### C.    There Is Substantial Ground for Difference of Opinion as to Question Three

The District Court found that Section 253 "allows the legislature to consider petitions [for the restoration of voting rights] on a case-by-case basis," and provides "no 'objective standards'" to guide legislators in making these determinations. Ex. A. at 24. The Court nevertheless rejected Plaintiffs' non-race-based equal protection challenge to Section 253, based on its determination that this claim "raises no recognized equal-protection rights." *Id.* at 24–26, 28. There is substantial ground for difference of opinion as to whether a standardless legislative process for the case-by-case restoration of voting rights violates the Equal Protection Clause.

### 1.    The Judicial Deference Afforded to Executive Clemency Regimes Does Not Apply to Legislative Reenfranchisement Schemes

The District Court relied on executive clemency jurisprudence to find that there is a "substantive difference" between the equal protection standards

16

19-60662.471

applicable to reenfranchisement laws and those governing disenfranchisement laws. *Id.* at 25. The Court reasoned that the restoration of voting rights is "a matter of clemency," and found no reason why Mississippi's legislative reenfranchisement scheme "should be treated any differently" than executive clemency regimes. *Id.*

But executive clemency is "the peculiar right of the executive branch of government." *Beacham v. Braterman*, 300 F. Supp. 182, 184 (S.D. Fla. 1969), *aff'd mem.*, 396 U.S. 12 (1969). The exercise of executive clemency is largely beyond the scope of judicial review. *See Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981) ("[P]ardon and commutation decisions have not traditionally been the business of the courts; as such, they are rarely, if ever, appropriate subjects for judicial review."); *Beacham*, 300 F. Supp. at 184 ("Where the people of a state have conferred unlimited pardon power upon the executive branch of their government, the exercise of that power should not be subject to judicial intervention."). Although Plaintiffs do not agree that discretionary executive clemency regimes for voting rights restoration are exempt from equal protection review, courts have held that the Equal Protection Clause does not reach such regimes. *See Beacham*, 300 F. Supp. 3d at 184 (holding that "it is not" "a denial of equal protection . . . for the Governor of Florida . . to restore discretionarily the right to vote to some felons and not to others" because "[t]he

19-60662.472

restoration of civil rights is part of the pardon power and as such is an act of

executive clemency not subject to judicial control"); *Hand v Scott*, 888 F.3d 1206,

1208 (11th Cir. 2018) (finding that Florida's State Executive Clemency Board

would "likely succeed" on an equal protection challenge to its discretionary voting

rights restoration process because *Beacham* "establishes the broad discretion of the

executive to carry out a standardless clemency regime").

　　In contrast, acts of the legislature are unquestionably subject to equal

protection review. Legislation is not entitled to the same judicial deference

accorded to the exercise of executive clemency. *See, e.g.*, *McLean v. State of

Arkansas*, 211 U.S. 539, 547 (1909) (recognizing that legislative power "is not

unlimited, and is subject to judicial review; and, when exerted in an arbitrary or

oppressive manner, such laws may be annulled as violative of rights protected by

the Constitution"). While "[t]he very essence of the pardoning power is to treat

each case individually," *Schick v. Reed*, 419 U.S. 256, 265 (1974), the role of the

legislative branch is to enact "general rules which govern society." *Hurtado v.

California*, 110 U.S. 516, 535–536 (1884) (explaining that legislation must not

establish "a special rule for a particular person or a particular case"); *see also U.S.

v. Winstar Corp.*, 518 U.S. 839, 897 (1996) (citing *Hurtado* and explaining that

"generality in the terms by which the use of [legislative] power is authorized will

tend to guard against its misuse to burden or benefit the few unjustifiably").

19-60662.473

Consistent with these established principles, the Fifth Circuit has already held that rational basis review is the applicable level of scrutiny for laws governing reenfranchisement—the same standard applicable to laws governing disenfranchisement. *See Shepherd v. Trevino*, 575 F.2d 1110, 1114–15 (5th Cir. 1978) (rejecting "the proposition that [S]ection 2 removes all equal protection considerations from state-created classifications denying the right to vote to some felons while granting it to others," and holding that the "selective disenfranchisement or reenfranchisement of convicted felons must pass the standard level of scrutiny applied to state laws allegedly violating the equal protection clause").

### 2.    Reenfranchisement Laws May Permissibly Differentiate Between Individuals Convicted of Felonies Only Where the Classification Is Rationally Related to a Legitimate State Interest

The District Court held that Plaintiffs failed to meet their burden of showing that Section 253 is not rationally related to a legitimate governmental interest. Ex. A at 25–26. The Court found that "'[a] state properly has an interest in excluding from the franchise'" individuals who "'violat[ed] those laws sufficiently important to be classed as felonies.'"[13] *Id.* at 26 (quoting *Shepherd*, 575 F.2d at 1115). But the Court did not consider whether creating a distinction between two groups of

---

[13] Plaintiffs do not concede that this is a legitimate state interest.

19-60662.474

convicted felons—those who regain the right to vote pursuant to Section 253, and those who remain disenfranchised—is rationally related to this interest. There is substantial ground for difference of opinion as to the District Court's approach.

In *Shepherd,* the Fifth Circuit did not rely solely on the state's general interest in disenfranchising convicted felons in upholding a Texas law that established a judicial reenfranchisement process for individuals convicted of felonies in Texas state courts, without providing a similar process for individuals convicted in federal courts.[14] 575 F.2d at 1114–15. Rather, the Fifth Circuit considered whether the law's preferential treatment of individuals convicted of felonies in state courts was rationally related to this state interest. *Id.* at 1115. The Fifth Circuit held that "the classifications created by the Texas system" survived rational basis review because Texas state courts have access to information concerning "the progress and rehabilitation" of individuals convicted of felonies in Texas courts that they do not have with respect to individuals convicted of federal felonies. *Id.*

---

[14] Plaintiffs in *Shepherd* challenged only the selective availability of judicial reenfranchisement, not the mechanics of the judicial reenfranchisement process. 575 F.2d at 1112–14. The District Court noted that the re-enfranchisement statute at issue in *Shepherd* vested the judicial branch with discretion as to the restoration of voting rights that is "similar" to the discretion afforded to state legislators under Section 253. Ex. A. at 25. But while the exercise of judicial discretion is subject to appellate review, the Mississippi Legislature's decision to pass or reject a suffrage bill is unreviewable.

19-60662.475

Similarly, in *Owens v. Barnes*, the Third Circuit found that a state disenfranchisement law may "distinguish among" people convicted of felonies only if "such distinction is rationally related to a legitimate state interest." 711 F.2d 25, 27 (3d Cir. 1983). The Third Circuit upheld a Pennsylvania disenfranchisement law that "permits unincarcerated felons to vote but denies that right to incarcerated felons" based on its determination that "Pennsylvania could rationally determine that those convicted felons who had served their debt to society and had been released from prison or whose crimes were not serious enough to warrant incarceration in the first place stand on a different footing from those felons who required incarceration, and should therefore be entitled to participate in the voting process." *Id.* at 27–28.

The District Court made no similar determination with respect to Section 253's distinctions between individuals convicted of felonies, nor could it have, as Section 253 specifies no standards whatsoever for differentiating between those who may regain the right to vote and those who must remain disenfranchised.

### 3. The Equal Protection Clause Does Not Permit Disenfranchisement and Reenfranchisement Laws That Arbitrarily Distinguish Between Individuals Convicted of Felonies

There is substantial ground for disagreement as to the District Court's holding that a standardless legislative scheme for the case-by-case restoration of voting rights "raises no recognized equal protection rights," Ex. A at 28.

19-60662.476

Courts have found that standardless laws are inherently arbitrary. *See, e.g.*,

*Louisiana v. U.S.*, 380 U.S. 145, 152  (1965) (enjoining a standardless

constitutional interpretation test because it placed "arbitrary power in the hands of

election officers . . . to determine the qualifications of [voter registration]

applicants"); *Davis v. Schnell*, 81 F. Supp. 872 (S.D. Ala. 1949) (same), *aff'd per

curiam*, 336 U.S. 933 (1949).

The Fifth Circuit and two other circuit courts have recognized that a state

law may not "make a completely arbitrary distinction between groups of felons

with respect to the right to vote." *Shepherd*, 575 F.2d at 1114; *see also Harvey*, 605

F.3d at 1079 ("[A] state could not choose to re-enfranchise voters of only one

particular race, or re-enfranchise only those felons who are more than six feet

tall."); *Owens*, 711 F.2d at 27 (noting that a "state could not disenfranchise

similarly situated blue-eyed felons but not brown-eyed felons"). Moreover, the

Supreme Court and the Fifth Circuit have signaled that there must be "uniformity"

in the enforcement of criminal disenfranchisement laws. *See Richardson*, 418 U.S.

at 56 (remanding for further consideration of plaintiffs' claim that "there was such

a total lack of uniformity in county election officials' enforcement of the

challenged state [disenfranchisement] laws as to work a separate denial of equal

protection"); *Williams v. Taylor*, 677 F.2d 510, 515 (5th Cir. 1982) (finding that

*Richardson* "clearly recognized" that state officials "cannot discriminate arbitrarily

19-60662.477

among felons who fall within the group classified for mandatory

disenfranchisement").

## III.    An Immediate Appeal of Each Question May Materially Advance the Ultimate Termination of the Litigation

An immediate appeal may materially advance the ultimate termination of the

litigation if it would "eliminate the need for trial," or "eliminate complex issues so

as to simplify the trial." *Liberty Mut.*, 2018 WL 2107725, at *3. This requirement

is also met if an appeal will provide the district court with "authoritative guidance"

on the appropriate standard of review for a constitutional claim. *Hines v.*

*Alldredge*, No. 1:13-cv-56, 2014 WL 12649849, at *2 (S.D. Tex. Mar. 27, 2014)

(addressing the First Amendment), *appeal allowed* No. 14-90012 (5th Cir. Apr. 17,

2014).

Here, the questions presented concern claims as to which there are no

disputed factual issues. This Court can decide these claims without remanding for

further proceedings. *See, e.g.*, *BP Expl. & Prod., Inc. v. Claimant ID 100281817*,

919 F.3d 284, 289 (5th Cir. 2019) (finding remand after reversal "unnecessary"

because the "holding . . . answer[ed] a purely legal question"). Alternatively, this

Court can remand with instructions to the District Court on the standards to apply

in considering these claims.

19-60662.478

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant

permission to immediately appeal from the Order pursuant to 28 U.S.C. § 1292(b).

19-60662.479

Dated: August 19, 2019

By:　 /s/　Jonathan K. Youngwood

SOUTHERN POVERTY LAW
CENTER
Paloma Wu
111 East Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Paloma.Wu@splcenter.org

Lisa Graybill
1055 St. Charles Avenue
New Orleans, LA 70130
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org

Nancy G. Abudu
Caren E. Short
P.O. Box 1287
Decatur, GA 30031
Tel: (404) 521-6700
Nancy.Abudu@splcenter.org
Caren.Short@splcenter.org

SIMPSON THACHER & BARTLETT
LLP
Jonathan K. Youngwood
Janet A. Gochman
Isaac M. Rethy
Nihara K. Choudhri
Tyler Anger
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
nchoudhri@stblaw.com
irethy@stblaw.com
tyler.anger@stblaw.com

*Attorneys for Plaintiffs-Petitioners*

19-60662.480

## CERTIFICATE OF CONFERENCE

I hereby certify that, pursuant to Fifth Circuit Rule 27.4, counsel for Plaintiffs-Petitioners conferred with opposing counsel for Defendant-Respondent concerning this Petition. Undersigned counsel was advised that Defendant-Respondent was unable to take a position on this Petition before reading the Petition.


Dated:        August 19, 2019

<div style="margin-left:40%">

s/ Jonathan K. Youngwood
Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-3539
jyoungwood@stblaw.com

</div>

19-60662.481

# CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2019, an electronic copy of the foregoing

Petition was filed with the Clerk of Court for the United States Court of Appeals

for the Fifth Circuit using the appellate CM/ECF system, and service was

accomplished on the following parties via email:

Justin L. Matheny
Krissy C. Nobile
OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI
P. O. Box 220
Jackson, MS 39205
Tel: (601) 359-3680
jmath@ago.state.ms.us
knobi@ago.state.ms.us

*Counsel for Defendant-Respondent Delbert Hosemann, Mississippi Secretary of State, in his official capacity*

Dated:      August 19, 2019

                                   s/ Jonathan K. Youngwood
                                   Jonathan K. Youngwood
                                   SIMPSON THACHER & BARTLETT LLP
                                   425 Lexington Avenue
                                   New York, NY 10017
                                   Phone: (212) 455-3539
                                   Fax: (212) 455-2502
                                   jyoungwood@stblaw.com

19-60662.482

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because, excluding the parts of the Petition exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, it contains 5,198 words.

Undersigned counsel certifies that this Petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this Petition has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman.

Dated:  August 19, 2019

s/ Jonathan K. Youngwood
Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-3539
jyoungwood@stblaw.com

19-60662.483

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROY HARNESS, ET AL.                                              PLAINTIFFS

V.                                    CIVIL ACTION NO. 3:17-CV-791-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF STATE
OF MISSISSIPPI                                                  DEFENDANT

CONSOLIDATED WITH

DENNIS HOPKINS, ET AL.                                          PLAINTIFFS

V.                                    CIVIL ACTION NO. 3:18-CV-188-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF STATE
OF MISSISSIPPI                                                  DEFENDANT

ORDER

Plaintiffs seek an order restoring the voting rights of convicted felons in Mississippi. The

parties have all moved for summary judgment, contending that there are no disputed facts. [63,

65, 66, 74]. As discussed more fully below, both the United States Supreme Court and the Fifth

Circuit Court of Appeals have rejected Plaintiffs' pivotal legal arguments as to article XII,

section 241 of the Mississippi Constitution. While those courts may be free to reassess their

prior rulings, the precedent is binding at the district-court level. For that and other reasons,

Plaintiffs' motions [65, 74] are denied and Defendant's motions [63, 66] are granted as to

disenfranchisement under section 241. As to section 253, which restores the right to vote, the

Court finds the relevant motions [65, 66] should be denied.

I.      Facts and Procedural History

Two groups of convicted felons filed separate suits seeking to regain the right to vote. The lead plaintiffs in those cases were Roy Harness and Dennis Hopkins. The Court consolidated the cases on June 28, 2018, and then certified a class action on February 26, 2019.

Plaintiffs challenge two sections of article XII of the Mississippi Constitution—sections 241 and 253. Section 241 provides that individuals who have been "convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement[,] or bigamy" are ineligible to vote. And section 253 allows the legislature to restore an individual's suffrage by "a two-thirds vote of both houses, of all members elected."

The Harness Plaintiffs focus their complaint on section 241, arguing that it violates the Fourteenth and Fifteenth Amendments because the disenfranchising crimes that remain from the section's 1890 version were adopted to suppress black voters. Harness Am. Compl. [19] at 19–20. They seek declaratory relief enjoining Secretary of State Delbert Hosemann from taking any steps that would prevent voting by Mississippians convicted of bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement, and bigamy. *Id.* at 21.[1]

The Hopkins Plaintiffs challenge both sections 241 and 253 and take a different approach. They say lifetime disenfranchisement (section 241) violates the Eighth Amendment's prohibition against cruel and unusual punishment and exceeds § 2 of the Fourteenth Amendment, which allows states to merely "abridge" a felon's voting rights. Hopkins Compl. [1] at 4–5 (filed in 3:18-CV-188-DPJ-FKB). As to section 253 (the restoration provision), the Hopkins Plaintiffs

---

[1] The Harness Plaintiffs do not challenge disqualification based on murder and rape convictions. *Id.* at 2.

2

19-60662.486

Case 3:11-cv-00282-DPJ-FKB    Document 191    Filed 08/27/13    Page 3 of 70

argue that it violates both the First Amendment, by hampering political expression, and the Equal Protection Clause, because it is arbitrary and was enacted with discriminatory intent. *Id.*

## II.    Summary Judgment Standard

Each party seeks summary judgment. That relief is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

3

III.     Article III Standing and Eleventh Amendment Immunity

In his motions for summary judgment, Hosemann first raises concerns over Article III

standing and Eleventh Amendment immunity.  Under both approaches, Hosemann questions his

connection to sections 241 and 253.  As to section 241, he insists that local election officials

have the duty and authority to register, refuse, and purge voters.  And as to section 253, he

maintains that only the legislature can act to restore voting rights. [2]

A.     Legal Standards

To establish an Article III case or controversy, Plaintiffs must show:  (1) they have

suffered an "injury in fact," (2) there is a "causal connection between the injury and the conduct

complained of," and (3) "the injury will be 'redressed by a favorable decision.'"  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quoting *Simon v. E. Ky. Welfare Rights*

*Org.*, 426 U.S. 26, 38 (1976)).  "The party invoking federal jurisdiction bears the burden of

establishing these elements."  *Id.* at 561.  Hosemann concedes that Plaintiffs meet the first

element but says they cannot establish a causal connection or redressability.  *See Rivera v.*

*Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (noting that a failure to establish any one

element deprives the court of jurisdiction).

In addition, Hosemann asserts Eleventh Amendment immunity and argues that the *Ex*

*parte Young* exception is inapplicable.  209 U.S. 123 (1908).  Under *Ex parte Young*, a state

officer can be sued in federal court despite the Eleventh Amendment, if that officer has "'some

connection with the enforcement of the act' in question or [is] 'specially charged with the duty to

---

[2] While Article III standing and Eleventh Amendment immunity are distinct concepts, there is
significant overlap.  *See* Hopkins Resp. Mem. [78] at 20–21 (citing *Air Evac EMS, Inc. v. Tex.,*
*Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)); *see also* Def.'s
Rebuttal [86] at 5 (stating "plaintiff's [s]ection 241 claims against the Secretary fail under Article
III and/or the Eleventh Amendment").

4

19-60662.488

Case: 3:17-cv-00791-DPJ-FKB   Document 159-1   Filed 08/27/19   Page 6 of 70

enforce the statute' and [is] threatening to exercise that duty." *Okpalobi v. Foster*, 244 F.3d 405, 414–15 (5th Cir. 2001) (quoting *Ex parte Young*, 209 U.S. at 157, 158). With these standards in mind, the Court considers sections 241 and 253 separately.

B.    Section 241

Hosemann says he does not enforce section 241, does not investigate or prosecute violations of election laws, does not supervise local election officials, lacks the authority to prohibit felons from registering to vote, and has no duty to remove felons from the voter rolls. Def.'s Mem. [64] at 6. But Plaintiffs argue that Hosemann's responsibilities under state law— particularly the administration of the computerized Statewide Elections Management System ("SEMS")—and his designation as the state's chief election officer under the National Voter Registration Act of 1993 ("NVRA") provide enough basis for Article III standing and trigger the *Ex parte Young* exception to Eleventh Amendment immunity.

Under state statute, "[t]he circuit clerk of each county is authorized and directed to prepare and keep in his or her office a full and complete list . . . of persons convicted of voter fraud or of any crime listed in Section 241, Mississippi Constitution of 1890." Miss. Code § 23-15-151. But the statute goes on to provide that a list of persons convicted of a disenfranchising crime "shall also be entered into [SEMS] on a quarterly basis." *Id.* SEMS is maintained by the Secretary of State and is considered "the official record of registered voters in every county of the state." *Id.* § 23-15-165(1).

Hosemann explains that "the Administrative Office of Courts provides data regarding criminal convictions which is filtered to only include individuals with a conviction of a disenfranchising crime before being loaded into [SEMS]." Hosemann Resp. to Hopkins Interrogs. [63-1] at 44. Then SEMS "provides potential match reporting regarding individuals

5

convicted of a disenfranchising crime and county election officials are trained to only take action upon review of a final sentencing order entered by a court." *Id.* at 49.  That training is provided by Hosemann.  *See id.* at 48 ("The Secretary of State provides training annually to county election commissioners regarding voter roll maintenance in accordance with Mississippi law and the National Voter Registration Act."); *see also* Miss. Code § 23-15-211(4) (stating Hosemann is responsible for conducting and sponsoring an "elections seminar" attended by county election commissioners).  In other words, Hosemann receives information regarding disenfranchising convictions, adds that information to SEMS, and trains county officials on the next step.

In addition, Hosemann is Mississippi's "chief election officer" for purposes of the NVRA, Miss. Code § 23-15-211.1(1), and has "the power and duty to gather sufficient information concerning voting in elections in this state," *id.* § 23-15-211.1(2); *see also* 52 U.S.C. § 20509 ("Each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter.").  And while this civil action is not rooted in the NVRA, several courts have held that the designation of "chief election officer" militates in favor of finding Article III standing in various election-law contexts.  *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 613–14 (5th Cir. 2017) (finding Article III standing, noting that the statute at issue applied to every election, and observing that the Texas Secretary of State was the chief election officer of the state); *Scott v. Schedler*, 771 F.3d 831, 838–39 (5th Cir. 2014) (finding Article III standing and noting the Secretary of State was the chief election officer under the NVRA); *Voting for Am., Inc. v. Andrade*, 888 F. Supp. 2d 816, 828–29, 832 (S.D. Tex. 2012) (Costa, J.) (denying Secretary's motion to dismiss for lack of standing and noting that her "argument is at odds with numerous cases in which plaintiffs have sued secretaries of state when challenging voter registration laws even though states commonly

6

Case 3:17-cv-00791-DPJ-FKB    Document 199-1    Filed 06/27/19    Page 7 of 70

delegate voter registration responsibilities to county officials"), *rev'd on other grounds*, 732 F.3d 382; *see also United States v. Missouri*, 535 F.3d 844, 846 n.1 (8th Cir. 2008) (finding that the Missouri Secretary of State was the proper party to be sued under the NVRA even though enforcement power was delegated to local officials); *Madera v. Detzner*, 325 F. Supp. 3d 1269, 1276 (N.D. Fla. 2018) (noting the Secretary of State was Florida's chief election officer and "[t]his statutory job description is not window dressing"). [3]

Based on these duties, Plaintiffs' injuries are sufficiently traceable to and redressable by Hosemann to establish Article III standing. While he may not be the only step in disenfranchising a voter, he certainly plays a crucial role in the process. *Compare K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) (finding redressability was met even though the defendant was "far from the sole participant in the application of the challenged statute"), *with Okpalobi*, 244 F.3d at 427 (finding no standing where the state officers did not have "*any duty or ability to do anything*" in connection with the law at issue (emphasis added)).

Likewise, for purposes of Eleventh Amendment immunity, Hosemann has "some connection" with enforcement of section 241, particularly in his role as chief election officer and administrator of SEMS. *Ex parte Young*, 209 U.S. at 157; *see Mo. Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (denying immunity in action challenging voter disqualification as "incapacitated" and noting that while local election officials had authority to register voters, the Secretary of State was charged with providing local officials of individuals deemed incapacitated); *Libertarian Party of Ky. v. Grimes*, 164 F. Supp. 3d 945, 950 (E.D. Ky. 2016) (finding *Ex parte Young* exception applied where Secretary of State provided training to

---

[3] Hosemann also serves on the three-person State Board of Election Commissioners alongside the Governor and the Attorney General. Miss. Code § 23-15-211(1).

county clerks and therefore had "some control over the perpetuation of the ballot access regime the [p]laintiffs challenge[d]").[4]

      C.     Section 253

     Section 253 presents a much closer question.  It provides:  "The Legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person disqualified by reason of crime; but the reasons therefor shall be spread upon the journals, and the vote shall be by yeas and nays."  Miss. Const. art. XII, § 253.  The Hopkins Plaintiffs ask the Court to "[i]ssue a class-wide judgment declaring that the inherently arbitrary and racially discriminatory legislative process for the restoration of voting rights established by the suffrage bill provision of the Mississippi Constitution violates the Equal Protection Clause of the Fourteenth Amendment, as well as the First Amendment."  Hopkins Compl. [1] at 47.

     Hosemann says he has no connection to or role in the restoration process:  he is not a member of the legislature, he does not introduce suffrage bills, and he does not vote on such bills.  *See* Miss. Const. art. XII, § 253; *see also* Hopkins Compl. [1] at 20 (flow chart detailing restoration process); Hosemann Resp. to Hopkins Interrogs. [63-1] at 53.  He therefore denies a causal connection or redressability.

     But as noted above, Hosemann is the state's chief election officer and maintains SEMS, which would presumably be involved in one of the final steps in returning a convicted felon to

---

[4] Hosemann relies in part on *McLaughlin v. City of Canton*, where Judge Henry T. Wingate considered criminal disenfranchisement and held that the Secretary of State was "not a proper party."  947 F. Supp. 954, 965 (S.D. Miss. 1995).  But that case was decided before Mississippi revised its election laws and designated the Secretary of State as the chief election officer.  *See* 2000 Miss. Laws 430 [77-13] (designating the Secretary of State as the chief election officer); 2004 Miss. Laws 305 [77-14] (implementing a statewide centralized voting system).

19-60662.492

the voting rolls after he or she successfully files a section 253 petition.  Though somewhat

distinguishable, the Fifth Circuit faced a similar question in *OCA-Greater Houston*, holding:

> unlike in *Okpalobi*, where the defendants had no "enforcement connection with
> the challenged statute," the Texas Secretary of State is the chief election officer of
> the state and is instructed by statute to obtain and maintain uniformity in the
> application, operation, and interpretation of this code and of the election laws
> outside this code.  We are satisfied that OCA has met its burden under *Lujan* to
> show that its injury is fairly traceable to and redressable by the defendants.

867 F.3d at 613–14 (quoting *Okpalobi*, 244 F.3d at 427 n.5) (additional quotation marks and

footnotes omitted).  To be sure, Hosemann's role in section 253 is slight, but he does have

"'some connection with the enforcement of the act' in question."  *Morris v. Livingston*, 739 F.3d

740, 746 (5th Cir. 2014) (quoting *Okpalobi*, 244 F.3d at 414–15).  The Hopkins Plaintiffs have

minimally demonstrated standing and a basis for an *Ex parte Young* claim against Hosemann

challenging section 253.

IV.    Section 241 Merits Analysis

While both the Harness and Hopkins Plaintiffs challenge section 241, they pursue

different theories.  As such, the Court will consider the claims separately.

A.    Harness Plaintiffs

Section 241 was adopted in 1890 and disenfranchised citizens found guilty of "bribery,

burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery,

embezzlement[,] [and] bigamy."  Harness Am. Compl. [19] at 5.  The section was amended in

1950 to remove burglary and again in 1968 to add rape and murder as disenfranchising crimes.

*Id.* at 2.  The Harness Plaintiffs take no issue with preventing convicted rapists and murderers

from voting.  *Id.*  But they say disenfranchisement based on the other crimes carried forward

from the 1890 version violates the Fourteenth and Fifteenth Amendments because those crimes

were selected to suppress black voters.  *Id.* at 20.

9

19-60662.493

To begin, the United States Supreme Court has expressly held that § 2 of the Fourteenth Amendment affirmatively allows states to deny suffrage to convicted felons. *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974). That does not, however, mean states are free to deny that right for discriminatory reasons. The Supreme Court considered that issue in *Hunter v. Underwood*, where the Court set out a burden-shifting test to determine whether Alabama's felon-disenfranchisement laws violated the Equal Protection Clause. 471 U.S. 222, 227–28 (1985).

Under the *Hunter* test, a plaintiff must show that the law's original enactment was motived by race discrimination and that the law continues to have that effect. *Id.* at 233; *see also id*. at 227–28. If the plaintiff makes those showings, "the burden shifts to the law's defenders to demonstrate that the law would have been enacted without" a racially discriminatory motive. *Id.* at 228.

But *Hunter* left a caveat when it declined to decide "whether [Alabama's disenfranchisement law] would be valid if enacted today without any impermissible motivation . . . ." *Hunter*, 471 U.S. at 233. Based on that language, the Fifth Circuit has held that "substantial, race-neutral alterations in an old unconstitutional law may remove the discriminatory taint." *Veasey v. Abbott*, 888 F.3d 792, 802 (5th Cir. 2018) (citation omitted). And it has applied that rule to section 241.

In *Cotton v. Fordice*, the court observed that Mississippi twice re-enacted section 241 after original adoption:

> Section 241, as enacted in 1890, was amended in 1950, removing "burglary" from the list of disenfranchising crimes. Then, in 1968, the state broadened the provision by adding "murder" and "rape"—crimes historically excluded from the list because they were not considered "black" crimes. Amending § 241 was a deliberative process. Both houses of the state legislature had to approve the amendment by a two-thirds vote. The Mississippi Secretary of State was then required to publish a full-text version of § 241, as revised, at least two weeks before the popular election. *See* Miss. Code Ann. § 4211 (1942); H. Con. Res. 10

10

(Miss. 1950); H. Con. R. 5 (Miss. 1968).  Finally, a majority of the voters had to
approve the entire provision, including the revision.  Because Mississippi's
procedure resulted both in 1950 and in 1968 in a re-enactment of § 241, each
amendment superseded the previous provision and removed the discriminatory
taint associated with the original version.

157 F.3d 388, 391 (5th Cir. 1998).  The Fifth Circuit concluded that these amendments fell

within the exception *Hunter* "left open," *id.* at 391, and therefore "*Hunter* does not condemn

§ 241," *id.* at 392.

 As discussed next, the Harness Plaintiffs urge the Court to ignore *Cotton* because—

according to them—it was based on an incomplete record, was wrongly decided, and has been at

least tacitly overruled by the United States Supreme Court.

 1. The Record Evidence

 According to the Harness Plaintiffs, the *pro se* plaintiffs in *Cotton* were ill-equipped to

create a record regarding the votes in 1950 and 1968, so the Fifth Circuit failed to consider a

complete picture.  Pls.' Mem. [82] at 14.  They suggest, for instance, that the Fifth Circuit did not

see the ballot language in 1950 and 1968.  *Id.*  As a result, Plaintiffs say the court failed to

consider that neither the legislature nor the electorate were allowed to "vote[ ] on whether to

retain or remove the other crimes on the 1890 list.  Thus, the voters in 1950 and 1968 did not

have to approve the entire list of disenfranchising crimes in Section 241 and were not given the

option to do so." *Id.* at 13.

 This argument goes only so far.  True enough, the ballot language was not in the *Cotton*

appellate record.  But neither the *Cotton* plaintiffs nor the state mentioned the 1950 and 1968

votes in their appellate briefs.  *See* Pls.' Mem. [75] at 12–13.  Instead, the Fifth Circuit raised

those re-enactments *sua sponte*.  And the only way the Fifth Circuit would have been aware of

19-60662.495

the 1950 and 1968 re-enactments is if it researched the legislative history on its own. Indeed

*Cotton* cites that history. *See* 157 F.3d at 391.

Substantively, the Fifth Circuit's description of what happened in those years shows that

it read the ballot language Plaintiffs now cite. In 1950, the ballot removing burglary from the

disenfranchising offenses read as follows:

> Section 241. Every inhabitant of this state, except idiots, insane persons and Indians not taxed, who is a citizen of the United States of America, twenty-one years old and upwards, who has resided in this state for two years, and one year in the election district, or in the incorporated city or town in which he offers vote, and who is duly registered as provided in this article, and who has never been convicted of bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, and who has paid on or before the first day of February of the year in which he shall offer to vote, all poll taxes which may have been legally required of him, and which he has had an opportunity of paying according to law, for the two preceding years, and who shall produce to the officers holding the election satisfactory evidence that he has paid such taxes, is declared to be a qualified elector; but any minster of the gospel in charge of an organized church, or his wife legally residing with him, shall be entitled to vote after six months' residence in the election district, incorporated city or town, if otherwise qualified.
>
> Adopted by the House of Representatives, January 26, 1950.
>
> Adopted by the Senate, February 10, 1950.
>
> For Amendment ………………………………………………………..( )
>
> Against Amendment …………………………………………………...( )

1950 Ballot [74-6] at 1. Similarly, the 1968 ballot that added rape and murder read, in relevant

part, as follow:

> Section 241. Every inhabitant of this State, except idiots and insane persons, who is a citizen of the United States of America, twenty-one (21) years old and upwards, who has resided in this State for one (1) year, and for one (1) year in the county in which he offers to vote, and for six (6) months in the election precinct or in the incorporated city of town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector."

19-60662.496

ADOPTED BY HOUSE OF REPRESENTATIVES:  March 25, 1968.

ADOPTED BY SENATE:  March 25, 1968.

For Amendment …………………………………………………………..(  )

Against Amendment …………………………………………………...(  )

1968 Ballot [74-8] at 1.

    This language mirrors the Fifth Circuit's description of the ballots.  As quoted more fully

above, the court recognized that "a majority of the voters had to approve *the entire provision,*

*including the revision*."  *Cotton*, 157 F.3d at 391 (emphasis added).  There is simply no hint that

the court mistakenly believed voters did anything other than vote up or down on "the entire

provision."  *Id.*  Nor does it appear that the court thought voters were asked to "vote[ ] on

whether to retain or remove the other crimes on the 1890 list."  Pls.' Mem. [82] at 13.  Finally,

the fact that the ballot language did not allow individual votes on the original crimes does not

diminish *Cotton*'s conclusion that the final ballot language resulted from "a deliberative

process."  *Cotton*, 157 F.3d at 391.

    That does not, however, end the analysis because *Cotton* itself contains another caveat.

While the Fifth Circuit found that the 1950 and 1968 amendments removed the racial taint from

the 1890 enactment, it noted that the section would remain unconstitutional "if the [1950 and

1968] amendments were adopted out of a desire to discriminate against blacks."  *Id.* at 392.  On

this issue, Plaintiffs again say they have created a better record.  Although they offer no direct

proof of intent, they circumstantially note the racial demographics in 1950 and 1968;

Mississippi's sad history of racial strife, especially around those dates; and other unconstitutional

legislation passed in or around those years.  Pls.' Mem. [82] at 16–17.

19-60662.497

Although the Fifth Circuit did not mention this well-known history in *Cotton*, the court was persuaded by the fact that both amendments made changes that cut against stereotypical notions about which disqualifying crimes would hinder black votes. *Cotton*, 157 F.3d at 391. The court found those facts sufficient to hold—as a matter of law—that the current version of section 241 comports with equal protection. *Id.* at 392.

The Fifth Circuit has not abandoned that holding. Just last year, the court cited *Cotton* in *Veasey v. Abbott*, a case upholding a Texas voting law. 888 F.3d 792, 802 (5th Cir. 2018). Though he dissented, Judge James E. Graves, Jr., explored *Cotton* in greater depth than the majority opinion, explaining why the 1950 and 1968 votes severed the original racist intent. *Id.* at 821 (Graves, J., dissenting). As he noted, the changes resulted from a "deliberative process"; the votes occurred "sixty and seventy-eight years, respectively, after [section 241] was first enacted"; and the amendments cut against notions of what were "commonly considered to be 'black' crimes." *Id.*

While it is somewhat unusual for an appellate court to raise a factual issue *sua sponte* and then decide it as a matter of law, that is what happened in *Cotton*. The Court will not assume the Fifth Circuit failed to fully consider its holding. As a result, the Harness Plaintiffs are left arguing that *Cotton* got it wrong. But even if it did, "[i]t has been long established that a legally indistinguishable decision of [the Fifth Circuit] must be followed by . . . district courts unless overruled *en banc* or by the United States Supreme Court." *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992).

2.    Whether *Cotton* Was Overruled

The Fifth Circuit has not overruled *Cotton*, but the Harness Plaintiffs say the Supreme Court abrogated the decision in *Abbott v. Perez*, 138 S. Ct. 2305 (2018). *See* Pl.'s Mem. [75] at

14

15.  Succinctly stated, they believe the events in 1950 and 1968 failed to remove the discriminatory intent that existed in 1890 because the votes merely amended section 241 and did not re-enact it.  *Id.*

In *Perez*, the plaintiffs argued that *Hunter* placed the burden on Texas to prove its interim redistricting plan was not discriminatory.  The Supreme Court rejected that argument noting that *Hunter* "addressed a very different situation."  *Perez*, 138 S. Ct. at 2325.  But in doing so, the Court offered the following synopsis of *Hunter*:

> *Hunter* involved an equal protection challenge to an article of the Alabama Constitution adopted in 1901 at a constitutional convention avowedly dedicated to the establishment of white supremacy.  The article disenfranchised anyone convicted of any crime on a long list that included many minor offenses.  The court below found that the article had been adopted with discriminatory intent, and this Court accepted that conclusion.  The article was never repealed, but over the years, the list of disqualifying offenses had been pruned, and the State argued that what remained was facially constitutional.  This Court rejected that argument because the *amendments* did not alter the intent with which the article, including the parts that remained, had been adopted.  *But the Court specifically declined to address the question whether the then-existing version would have been valid if "[re]enacted today."*

*Id.* (internal citations omitted) (emphasis added).

From this quote, the Harness Plaintiffs say the Court "drew a distinction between" re-enactments and "'amendments that did not alter the intent.'"  Pls.' Mem. [75] at 15 (quoting *Perez*, 138 S. Ct. at 2325).  In other words, mere amendments cannot remove discriminatory taint, whereas re-enactments may.  And because Plaintiffs describe the 1950 and 1968 votes as mere amendments rather than re-enactments, *Perez* abrogates *Cotton*.  *Id.*

This argument has two flaws.  First, Mississippians voted for the "entire provision," as amended, leading the Fifth Circuit to conclude that section 241 was "re-enacted."  *Cotton*, 157 F.3d at 391–92); *see also Veasey*, 888 F.3d at 821 (Graves, J. dissenting).  Second, and more substantively, when the *Perez* Court summarized *Hunter* and described "amendments" to

15

19-60662.499

Alabama's disenfranchisement laws, it was not attempting to distinguish between voluntary

amendments and re-enactments because there were no voluntary amendments in *Hunter*. 138 S.

Ct. at 2325. Instead, the so-called "amendments" occurred when the offending Alabama statutes

were "struck down by the courts." *Hunter*, 471 U.S. at 233. Significantly, *Cotton* references this

very distinction when declining to follow *Hunter*. As the Fifth Circuit noted, "the voters of

Mississippi willingly broadened [section] 241 through the constitutional amendment process"

which made those changes "fundamentally different" from the judicial pruning that occurred in

*Hunter*. *Cotton*, 157 F.3d at 391 n.8 (characterizing alterations by judicial process as

"'involuntary' amendments"). And because *Perez* does not "directly conflict[ ]" with *Cotton*,

*Cotton* still controls at the district-court level. *Alvarez v. City of Brownsville*, 904 F.3d 382, 398

(5th Cir. 2018).

<div align="center">

3.        The Election Law Reform Task Force

</div>

The history of section 241 does not stop in 1968. Even assuming Plaintiffs are correct as

to the 1950 and 1968 votes, the state revisited section 241 in the mid-1980s. Starting in 1984,

Secretary of State Dick Molpus, a democrat, assembled a bipartisan, biracial Election Law

Reform Task Force (the "Task Force") to review and revise the state's election laws. The Task

Force included members of the legislature, executive-branch officials, circuit clerks, local

election commissioners, and members of the public. Def.'s Evidentiary Submissions [63-2] at

106–07 (outlining purpose); *id.* at 111–13 (listing members). And the Task Force held public

hearings throughout the state, met with representatives of the United States Justice Department,

and received written feedback from organizations and individuals. *Id.* at 114 (noting plans for

public hearings); *id.* at 203 (noting meeting with members of the Voting Rights Section of the

U.S. Department of Justice); *id.* at 115–95.

<div align="center">

16

</div>

Case 3:17-cv-00791-DPJ-FKB   Document 99-1   Filed 08/07/19   Page 25 of 30

Significantly, the Task Force expressly considered criminal disenfranchisement and whether to expand the list of crimes, amend section 241, or leave the law "as is." *Id.* at 212 (Election Law Reform Task Force- Summary of Action). In the final report, "[i]t was decided that [the] present law dealing with disenfranchisement of electors for the commission of certain crimes should be left as is. There was discussion as to the need for a constitutional amendment to change the law to include as disenfranchising crimes all felonies." *Id.*

The state legislature responded to the report by forming its own committees, issuing reports, and proposing legislation. *Id.* at 216–57. Prior to the 1986 Regular Session, the House committee, in conjunction with its Senate counterpart, issued a formal report, which proposed changes to section 241 and an effectuating constitutional amendment. *Id.* at 216-51. Specifically, as to disenfranchisement, the legislative committee recommended:

> 13. Disenfranchisement of felons
> The committee recommends that any person convicted of any felony in this state, in another state or under federal statute, excluding the crim of manslaughter and felonious violations of the Internal Revenue Code, shall not be permitted to register to vote, or to vote; and if registered the felon's name shall be removed from the registration rolls. Upon completion of his prison sentence, including any probationary period, the felon will be eligible to register to vote upon presenting to his county registrar certifiable documentation that the sentence has been discharged.

*Id.* at 239–40.

Following the report, legislators introduced 1986 Senate Bill 2234 ("S.B. 2234"), which would have included the recommended language broadening section 241 to all felonies except manslaughter and tax violations. *Id.* at 255, 257 (Proposed House Amendment to Senate Bill No. 2234). But those changes did not survive the legislative process and were cut from the bill that passed the 1986 legislative session. *Id.* at 259–62. Instead, the legislature adopted the Task Force's recommendation and opted to keep the original list of crimes from section 241 and

17

amend the Mississippi Code to make it consistent with section 241. *Id.* at 260; *see also* Miss. Code § 23-15-11 (identifying qualified voters as those who have "never been convicted of vote fraud *or of any crime listed in Section 241*, Mississippi Constitution of 1890" (emphasis added)). The legislation passed 118-3 in the House and 51-1 in the Senate. Def.'s Evidentiary Submission [63-2] at 263. It was then precleared by the Department of Justice under Section 5 of the Voting Rights Act.

There is no argument or evidence that either the Task Force or the legislature was tainted with racial animus or by a desire to perpetuate a racially motivated voting scheme. So, according to Hosemann, *if* the burden shifts to him under *Hunter*, he has demonstrated that section 241 "would have been enacted without" racial animus. Def.'s Mem. [64] at 11 (citing *Hunter*, 471 U.S. at 228).

The Harness Plaintiffs say Hosemann has not met that burden for two primary reasons. First, they say the Mississippi legislature merely amended the Mississippi Code "to conform the statute to the Constitution." Pls.' Mem. [82] at 22. In other words, it did not amend the offending constitutional provision, which therefore carries over the discriminatory intent. They also argue that even if the legislature considered amending section 241, there was no statewide vote. *Id.*

But as discussed already, the amendment to the Mississippi Code followed a multi-year, biracial, bipartisan review of Mississippi's election laws that expressly considered criminal disenfranchisement and whether section 241 should be amended. At the end, an overwhelming majority of the legislature decided to leave section 241 alone and instead amend the other election laws to conform with it. This is not a case like *Hunter* where the state itself did nothing to cure the defect, nor was a constitutionally infirm statute "perpetuated into the future by neutral

18

official action." *Kirksey v. Bd. of Sup'rs of Hinds Cty.*, 554 F.2d 139, 148 (5th Cir. 1977).   The

unrebutted history shows the state would have passed section 241 as is without racial motivation.

Finally, Plaintiffs cite no authority suggesting that a statewide vote—as opposed to this thorough

representative process—is necessary to remove the racist taint that attached to section 241 more

than 100 years earlier.[5]

For all the reasons stated in this section, Defendant's motion for summary judgment on

the Harness Plaintiffs' section 241 claims is granted.

B.      Hopkins Plaintiffs

The Hopkins Plaintiffs challenge section 241 under the Eighth and Fourteenth

Amendments.

1.      Fourteenth Amendment Equal Protection

Unlike the Harness Plaintiffs, the Hopkins Plaintiffs offer a non-racial approach to their

equal-protection claim.  According to them, section 241 cannot survive strict scrutiny under § 1

of the Fourteenth Amendment because it is "not narrowly drawn to address a compelling state

interest using the least drastic means."  Pls.' Mem. [73] at 38 (citing *Dunn v. Blumstein*, 405 U.S.

330, 337, 342–43 (1972)).

The plaintiffs in *Richardson v. Ramirez* said the same thing.  418 U.S. at 27.  There, three

convicted felons alleged that California's constitution—which "disenfranchised persons

convicted of an 'infamous crime'"—failed the strict-scrutiny test and therefore violated § 1's

---

[5] Hosemann does not directly argue that these facts implicate the *Cotton* analysis, but perhaps he
should have.  *Cotton* was based on the observation in *Hunter* that the Court did not consider
whether the law would be valid "if enacted today without any impermissible motivation."
*Hunter*, 471 U.S. at 233.  In this case, Mississippi voted to keep section 241 as is and codified
the implementing statutes to conform with it.  Thus, "[t]he passage of time and the actions of
intervening parties [appears to have] cut that thread of [racist] intent."  *Veasey*, 888 F.3d at 821
(Graves, J., dissenting).

equal-protection guarantee. *Id.* The Supreme Court of California agreed, *id.* at 33–34, but the United States Supreme Court reversed. As the high Court noted, § 2 of the Fourteenth Amendment acknowledges a state's right to exclude convicted felons from the franchise, *id.* at 55–56.

Section 2 provides a penalty when a state denies or abridges the right to vote. Edited for clarity, the section provides:

> Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State . . . . But when the right to vote at any election . . . is denied to any of the male inhabitants of such State . . . , or in any way abridged, *except for participation in rebellion, or other crime,* the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

U.S. Const. amend. XIV, § 2 (emphasis added). The *Richardson* Court held that because § 2 "affirmative[ly] sanction[ed]" a state's right to deny the franchise based on a criminal conviction, doing so cannot violate § 1 of that same amendment. 418 U.S. at 54.

Plaintiffs know *Richardson* is a problem and try to distinguish it by offering a different construction of § 2. According to them, the phrase "other crime" in § 2 modifies only the word "abridged" and not the word "denied." Pls.' Mem. [73] at 28. So construed, § 2 would recognize a state's right to *abridge* the voting rights of someone who commits a crime—i.e., temporarily disenfranchise that person—but not the right to permanently *deny* the franchise. *Id.* Thus, Plaintiffs say strict scrutiny applies to laws—like Mississippi's section 241—that *deny* the franchise based on a criminal conviction.

Plaintiffs insist that *Richardson* is not binding because the Court never considered their textual argument. But even assuming the Supreme Court overlooked this alternative construction, its holding is squarely on point. "[T]he specific holding of the Court was that a

20

19-60662.504

state may deny the franchise to that group of 'convicted felons who have completed their sentences and paroles.'"  *Shepherd v. Trevino*, 575 F.2d 1110, 1114 (5th Cir. 1978) (quoting *Richardson*, 418 U.S. at 56).

That holding remains binding.  And as the Fifth Circuit stated in *Cotton*, "Section 2 of the Fourteenth Amendment does not prohibit states from disenfranchising convicted felons."  157 F.3d at 391 (citing *Richardson*, 418 U.S. at 24, 54).  Other circuits have reached the same conclusion.  *See Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Richardson* and stating "it is well established that Section 2 of the Fourteenth Amendment gives states the 'affirmative sanction' to exclude felons from the franchise"); *Hand v. Scott*, 888 F.3d 1206, 1209 (11th Cir. 2018) (noting the Supreme Court "has held that 'the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment'" (quoting *Richardson*, 418 U.S. at 54)); *Hayden v. Pataki*, 449 F.3d 305, 315 (2d Cir. 2006) ("The Supreme Court has ruled that, as a result of [§ 2], felon disenfranchisement provisions are presumptively constitutional."); *Johnson v. Governor of State of Fla.*, 405 F.3d 1214, 1225 (11th Cir. 2005) (listing cases, including *Richardson*, recognizing "the propriety of excluding felons from the franchise"); *Harvey v. Brewer*, 605 F.3d 1067, 1079 (9th Cir. 2010) ("That is, once a felon is properly disenfranchised a state is at liberty to keep him in that status indefinitely and never revisit that determination." (citing *Richardson*, 418 U.S. at 26–27)).  Based on *Richardson* and *Cotton*, the Court must reject Plaintiffs' argument.[6]

---

[6] Plaintiffs apparently anticipated this holding.  *See* Pls.' Mem. [73] at 43 (stating that if Court finds *Richardson* applicable, "Plaintiffs present these arguments to preserve the issue for appeal").

21

19-60662.505

2.      Eighth Amendment Cruel and Unusual Punishment

The Hopkins Plaintiffs also say section 241 violates the Eighth Amendment's prohibition against cruel and unusual punishment. While they offer a detailed analysis under that amendment, their argument again conflicts with § 2 of the Fourteenth Amendment. Simply put, it would be internally inconsistent for the Eighth Amendment to prohibit criminal disenfranchisement while § 2 of the Fourteenth Amendment permits it. As aptly stated by the district court in *Farrakhan v. Locke*,

> Plaintiffs also claim that Washington's felon disenfranchisement law violates free speech, double jeopardy and the prohibition of cruel and unusual punishment under the First, Fifth, and Eighth Amendments to the Constitution. In order to uphold these claims against Defendants' motion to dismiss, the Court would have to conclude that the same Constitution that recognizes felon disenfranchisement under § 2 of the Fourteenth Amendment also prohibits disenfranchisement under other amendments. The Court is not inclined to interpret the Constitution in this internally inconsistent manner or to determine that the Supreme Court's declaration of the facial validity of felon disenfranchisement laws in *Richardson v. Ramirez* was based only on the fortuity that the plaintiffs therein did not make their arguments under different sections of the Constitution. While discussing the precedent leading up to its decision in *Richardson*, the Court wrote that "recently we have strongly suggested in dicta that exclusion of convicted felons from the franchise violates no constitutional provision." *Richardson*, 418 U.S. at 53, 94 S. Ct. at 2670. This language in *Richardson* suggests that the facial validity of felon disenfranchisement may be absolute. The Court concurs with this application to the case at hand.

987 F. Supp. 1304, 1314 (E.D. Wash. 1997). Summary judgment is appropriate as to the

Hopkins Plaintiffs' Eight Amendment claim.[7]

---

[7] In *Graham v. Connor*, the United States Supreme Court held that claims related to search-and-seizure violations fall under the Fourth Amendment rather than the substantive-due-process provisions found in the Fourteenth Amendment. 490 U.S. 386, 395 (1989). It did so because "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct," whereas the Fourteenth Amendment addressed "the more generalized notion of 'substantive due process.'" *Id.* In a similar sense, § 2 of the Fourteenth Amendment "affirmative[ly] sanction[s]" a state's right to deny the franchise based on a criminal conviction whereas the Eight Amendment does not mention voting rights. *Richardson*, 418 U.S. at 54.

22

19-60662.506

V.     Section 253

As noted earlier, section 253 provides a legislative process by which a convicted felon can regain the right to vote.  Under that provision, "[t]he Legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person disqualified by reason of crime."  Miss. Const. art. XII, § 253.

The Hopkins Plaintiffs make three primary arguments for invalidating section 253:  (1) it violates the First Amendment because legislators have unfettered discretion to prevent speech; (2) it violates equal protection because it includes no objective standards for determining who is entitled to relief; and (3) it was adopted for racist reasons and therefore violates equal protection as proscribed in *Hunter*.  The Court will address each argument.

A.     First Amendment

"[T]he First Amendment provides no greater protection for voting rights than is otherwise found in the Fourteenth Amendment."  *Hand*, 888 F.3d at 1211; *see also id.* at 1212 ("Every First Amendment challenge to a discretionary vote-restoration regime we've found has been summarily rebuffed.").  The Court therefore dismisses the First Amendment claim.[8]

---

[8] Plaintiffs cite *Hand* to support their First Amendment claim, asserting "[t]he Eleventh Circuit expressly recognized that 'a discretionary felon-reenfranchisement scheme that was facially or intentionally designed to discriminate . . . might violate the First Amendment.'" Pls.' Mem. [78] at 18 (quoting *Hand*, 888 F.3d at 1211–12).  But what Plaintiffs left out of that sentence makes all the difference.  The court was addressing schemes "designed to discriminate *based on viewpoint—say, for example, by barring Democrats*." *Hand*, 888 F.3d at 1211 (emphasis added to language deleted from Plaintiffs' memorandum).  Plaintiffs' use of an ellipses is at best suspect, and they never acknowledge that the *Hand* court rejected their argument.  While *Hand* is not binding, it is persuasive.

23

Case 3:17-cv-00791-DPJ-FKB   Document 291   Filed 08/07/19   Page 24 of 30

B.      Arbitrary Re-enfranchisement

Plaintiffs are correct that section 253 provides no "objective standards."  Pls.' Mem. [73] at 44.  Instead, the provision allows the legislature to consider petitions on a case-by-case basis, which Plaintiffs attack on two grounds.  First, they say "the Fifth Circuit has twice instructed that arbitrary disenfranchisement or re-enfranchisement of individuals convicted of disenfranchising offenses violates the Equal Protection Clause."  Pls.' Mem. [73] at 43–44 (citing *Williams v. Taylor*, 677 F.2d 510 (5th Cir. 1982); *Shepherd*, 575 F.2d 1110).  But neither case actually addresses Plaintiffs' argument that standardless re-enfranchisement laws violate equal protection.

In *Shepherd v. Trevino*, the Fifth Circuit reviewed and upheld a Texas law that provided "for the reenfranchisement of convicted state felons who satisfactorily complete the terms of their probation without providing a similar mechanism for the reenfranchisement of successful federal probationers."  575 F.2d at 1111.  In doing so, the court made the unremarkable observation that re-enfranchisement laws may not discriminate based on race by, for example, "disenfranchis[ing] all felons and then reenfranchis[ing] only those who are, say, white.  Nor can we believe that [§] 2 would permit a state to make a completely arbitrary distinction between groups of felons with respect to the right to vote."  *Id.* at 1114.   But *Shepherd* did not address standardless re-enfranchisement mechanisms as Plaintiffs suggest.  *See* Pl.'s Mem. [73] at 44. Indeed the mechanism it approved gave courts discretion when restoring voting rights. *Shepherd*, 575 F.2d at 1115.

*Williams v. Taylor* is no better.  There, a black voter challenged his disenfranchisement based on a prior conviction because white voters had not been disenfranchised.  677 F.2d at 514. To begin with, *Williams* was not a re-enfranchisement case.  Nevertheless, Plaintiffs note that the court reversed summary judgment and allowed the plaintiff the "chance to prove his claim of

24

selective and arbitrary enforcement of the disenfranchisement procedure." *Id.* at 517.  In doing

so, the Fifth Circuit held that the plaintiff had no right to vote, but that he did have "the right not

to be the arbitrary target of the Board's enforcement of the statute." *Id.* at 517.  As in *Shepherd*,

the case asked whether the plaintiff had been treated differently, not whether the law violated

equal protection for lack of objective standards.

Plaintiffs' second argument likewise misses the mark.  They say "[t]he Supreme Court

has repeatedly struck down voter eligibility-related laws that are as 'completely devoid of

standards and restraints' as Mississippi's suffrage restoration provision."  Pls.' Mem. [73] at 44.

But they support that statement by citing only disenfranchisement cases, and there is a

substantive difference.   As the Supreme Court has noted, re-enfranchisement does not remove a

protected interest but is instead a matter of clemency.  *See, e.g.*, *Conn. Bd. of Pardons v.

Dumschat*, 452 U.S. 458, 465 (1981).

In the re-enfranchisement context, *Hand* is again helpful.  There, the plaintiff disputed the

lack of standards for pardon petitions on equal-protection grounds.  888 F.3d at 1208.  But the

Eleventh Circuit concluded that the Supreme Court foreclosed the argument in *Beacham v.

Braterman*, 300 F. Supp. 182 (S.D. Fla. 1969), *aff'd* 396 U.S. 12 (1969).  The *Hand* court also

noted "[o]ther precedents confirm[ing] the broad discretion of the executive to grant and deny

clemency," often with "unfettered discretion."  888 F.3d at 1209 (collecting cases).  The Hopkins

Plaintiffs understandably observe that these cases deal with the executive branch—though

*Shepherd* dealt with similar discretion vested in the judicial branch.  575 F.2d at 1113.  But

Plaintiffs have not demonstrated that the legislative branch should be treated any differently.

Plaintiffs have also failed to satisfy their burden under the rational-basis test.  *See

Shepherd*, 575 F.2d at 1115.  Plaintiffs say in their response to Hosemann's motion that the

19-60662.509

Secretary of State has not shown section 253 is rationally related to a legitimate governmental interest. Pls.' Mem. [78] at 46. To begin with, it is not enough for Plaintiffs to say the state failed to demonstrate a rational basis when it is Plaintiffs' burden to make that showing. *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 350 (5th Cir. 2013). Substantively, "[a] state properly has an interest in excluding from the franchise persons who have manifested a fundamental antipathy to the criminal laws of the state or of the nation by violating those laws sufficiently important to be classed as felonies." *Shepherd*, 575 F.2d at 1115. And Plaintiffs offered no reply when Hosemann demonstrated that section 253 is rationally related to this legitimate governmental interest. *See* Def.'s Mem. [80] at 38.

In sum, Plaintiffs' authority does not address standardless re-enfranchisement mechanisms under an equal-protection analysis, and they have otherwise failed to meet their burden under the rational-basis test. Plaintiffs' cited authority does, however, address equal protection where a re-enfranchisement law is allegedly applied in a discriminatory way. *See Shepherd*, 575 F.2d at 1115. And that issue folds into Plaintiffs' *Hunter* argument—whether section 253 was adopted with the intent to discriminate and has that effect. *Hunter*, 471 U.S. at 227.

C.     *Hunter* Analysis

The parties dispute whether the Hopkins Plaintiffs presented sufficient record evidence of (1) discriminatory intent in 1890 and (2) racial impact—the first two prongs of the *Hunter* burden-shifting analysis. Unlike the section 241 analysis under *Cotton*, there is no Fifth Circuit authority dictating the result of this claim. Moreover, both parties submit record evidence regarding Plaintiffs' required showing. That evidence must be viewed in the light most

26

Case 3:18-cv-00188-DPJ-FKB    Document 291    Filed 08/07/19    Page 27 of 30

favorable to the non-movant on each cross motion, which produces questions of fact on whether Plaintiffs met their burden under *Hunter*.

That said, Hosemann also argues that the Task Force and legislative processes in the mid-1980s satisfy the third prong of the *Hunter* analysis as to section 253. Unlike section 241, the legislature did not pass any laws that impacted section 253. Re-enfranchisement was, however, considered. Primarily, both the House and Senate committees jointly recommended eliminating section 253 and allowing convicted felons to regain the right to vote after completing their sentences and probation. *See* Def.'s Evidentiary Submissions [63-2] at 239–41 (Election Law Reform Study Committee Recommendations). But by the time S.B. 2234 was filed, that recommendation was absent. *Id.* at 255 (Proposed House Amendment to Senate Bill No. 2334). The Court could not find in this record what happened to the suggested amendment or whether it was ever voted on by either chamber.

Hosemann does not suggest that these facts trigger the *Cotton* analysis. As for *Hunter*, the Hopkins Plaintiffs say that absent re-enactment, the Court must limit its review to what happened in 1890. Even assuming the evidence from the 1980s impacts Hosemann's final burden under *Hunter*, the record is not sufficient to hold—as a matter of law—that either party is entitled summary judgment on that factual issue. Moreover, both parties offer conflicting evidence as to the intent in 1890. Again, the evidence is viewed in the light most favorable to the non-movant, which precludes summary judgment as to original intent for enacting section 253.

19-60662.511

Case 3:18-cv-00188-DPJ-FKB   Document 91   Filed 08/07/19   Page 28 of 30

VI.     Conclusion

        The parties presented extensive briefing.  And while not all arguments are reflected in this Order, all arguments raised were considered.  Those not addressed would not have changed the outcome.

        With respect to section 241, this Court is bound by the precedent set by the United States Supreme Court in *Richardson v. Ramirez* and the Fifth Circuit Court of Appeals in *Cotton v. Fordice*.  For that and the other stated reasons, Defendant's motion for summary judgment [63] as to the Harness Plaintiffs is granted; the Harness Plaintiffs' summary-judgment motion [74] is denied; and the Harness Complaint is severed and dismissed.  A separate judgment will be entered in the severed Harness case in accordance with Federal Rule of Civil Procedure 58.  Defendant's motion for summary judgment [66] as to the Hopkins Plaintiffs is granted in part and denied in part—granted as to section 241 and denied as to section 253; and the Hopkins Plaintiffs' motion for summary judgment [74] is denied as to both sections 241 and 253.

        Finally, the court certifies all holdings in the still open Hopkins case for interlocutory appeal.   The Court believes this order involves several controlling questions of law as to which there is substantial ground for difference of opinion.  *See* 28 U.S.C. § 1292.  Moreover, an immediate appeal from the order may materially advance the ultimate termination of the litigation.  *Id.*  As noted, the Harness and Hopkins plaintiffs made different arguments as to section 241, and if the Harness Plaintiffs appeal, then the Fifth Circuit should consider the Hopkins Plaintiffs' legal-construction arguments at the same time.  Regarding section 253, Hosemann may elect to appeal the standing holding and the holding regarding the implications of the 1986 committee reports recommending deletion of section 253.  Likewise, plaintiffs may wish to appeal the holding that their claim raises no recognized equal-protection rights.  Any one

19-60662.512

of these or the other issues would materially impact the trial of this matter, and the Court also wishes to avoid piecemeal appeals. For these reasons, all issues are certified.

Finally, the Court anticipates an appeal and therefore stays the Hopkins case until the appeal is concluded or the parties indicate that no appeal will be filed and request pre-trial conference.

**SO ORDERED AND ADJUDGED** this the 7th day of August, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

19-60662.513

**Tab 7**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 19-90024

———————————

**A True Copy**
**Certified order issued Sep 11, 2019**

*Tyfe W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

DENNIS HOPKINS, individually and on behalf of a class of all others
similarly situated; HERMAN PARKER, JR., individually and on behalf of a
class of all others similarly situated; WALTER WAYNE KUHN, JR.,
individually and on behalf of a class of all others similarly situated; JON
O'NEAL, individually and on behalf of a class of all others similarly situated;
EARNEST WILLHITE, individually and on behalf of a class of all others
similarly situated; BYRON DEMOND COLEMAN, individually and on behalf
of a class of all others similarly situated,

Plaintiffs - Respondents Cross-Petitioners

v.

SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity,

Defendant - Petitioner Cross-Respondent

———————————

Motions for Leave to Appeal
from an Interlocutory Order

———————————

Before HAYNES, GRAVES, and ENGELHARDT, Circuit Judges.

PER CURIAM:

IT IS ORDERED that the motion of petitioner for leave to appeal from
the interlocutory order of the United States District Court of the Southern
District of Mississippi, entered on August 7, 2019, is GRANTED.

IT IS FURTHER ORDERED that the motion of cross-petitioners for leave to appeal from the interlocutory order of the United States District Court of the Southern District of Mississippi, entered on August 7, 2019, is GRANTED.

# Tab 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**ROY HARNESS, ET AL.**                                              **PLAINTIFFS**

**VS.**                              **CIVIL ACTION NO. 3:17cv791-DPJ-FKB**

**DELBERT HOSEMANN, SECRETARY OF**
**STATE OF MISSISSIPPI**                                              **DEFENDANT**

*consolidated with*

**DENNIS HOPKINS, ET AL.**                                            **PLAINTIFFS**

**VS.**

**SECRETARY OF STATE DELBERT**
**HOSEMANN, in his official capacity**                               **DEFENDANT**

---

## ITEMIZATION OF UNDISPUTED MATERIAL FACTS
## AND SUPPORTING EVIDENCE

---

The following itemized undisputed material facts supporting the Defendant Delbert Hosemann, Secretary of State of Mississippi's Motion for Summary Judgment as to the *Harness* lawsuit are established by the pleadings, as well as the consecutively paginated evidence affixed hereto and referenced below [1 to 605],[1] and other matters of which the Court may take judicial notice:

1.      In 1986, plaintiff Harness was convicted of a disenfranchising felony offense of uttering forgery.  [3, 14].[2]

2.      Plaintiff Karriem is a former Columbus, Mississippi city council member.  In 2005, plaintiff Karriem was convicted of the felony offense of embezzlement of public funds under Code Section 97-11-31, which prohibits any fraud or embezzlement committed by a public

---

[1]  The attached proof's referenced page numbers are located on each page's lower left corner. Citations to those page numbers follow the format: [page number(s)].

[2]  *See also* First Amended Complaint at ¶7, Dkt. 19.

EXHIBIT  A  -  PART 1                                    19-60662.1086

official.  [3-4].[3]

3.      The *Harness* plaintiffs do not challenge the State's treatment of felony convictions for murder or rape as disenfranchising felony offenses.[4]

4.      The claims of former plaintiffs Gabrielle Jones and Freddie James Keyes have been dismissed by stipulation pursuant to Rule 41(a)(1)(A)(ii).[5]

5.      The Secretary of State has no investigative or prosecutorial duty or authority with regard to any potential violation of any election laws.  [22].

6.      The Secretary of State does not implement or enforce Mississippi laws regarding voter disqualification, and has no duty or authority to supervise any elected officials, county election commissioners, or county circuit clerks.  [19-20].

7.      The Secretary of State does not purge voters from the Statewide Elections Management System for any reason whatsoever, and has no statutory responsibility to do so. County election officials have the responsibilities, obligations, and duties under Mississippi law for maintaining county voter rolls.  [25].

8.       The Statewide Elections Management System encompasses an electronic information processing system and programs capable of maintaining a centralized database of all registered voters in the state.  The information processing system encompasses software and hardware at the state and county level, software development training, conversion and support and maintenance for the system.  The system constitutes the official record of registered voters in every county of the State.[6]

9.      Code Section 23-15-165 charges the Secretary of State's Office with a duty to develop and implement the Statewide Elections Management System, among other things, so local county circuit clerks and elections commissioners receive regular reports of death, changes of address, and convictions for disenfranchising crimes that apply to the voters registered in the county.[7]

10.      The Administrative Office of Courts provides data regarding criminal convictions

---

[3]  *See also* First Amended Complaint at ¶7, Dkt. 19.

[4]  First Amended Complaint at ¶¶ 3, 31, Dkt. 19.

[5]  Dkt. 58.

[6]  Miss. Code Ann. § 23-15-165.

[7]  Miss. Code Ann. § 23-15-165(2)(b).

19-60662.1087

which is filtered to only include individuals with a conviction of a disenfranchising crime before being loaded into the Statewide Elections Management System.  The information is updated daily to include additions, changes, and expungements.  The Statewide Elections Management System provides potential match reporting regarding individuals convicted of a disenfranchising crime and county election officials are trained to only take action upon review of a final sentencing order entered by a court.  Any purging of a voter from the Statewide Elections Management System utilizing this information is statutorily the responsibility of county election officials.  [16-17, 20-22].

11.    Code Section 23-15-151 obligates local election officials to maintain records regarding persons convicted of disenfranchising felonies, and requires local officials to remove the names of registered voters who have been convicted of a disenfranchising felony from the Statewide Elections Management System.  The Code provision currently provides:

> The circuit clerk of each county is authorized and directed to prepare and keep in his or her office a full and complete list, in alphabetical order, of persons convicted of voter fraud or of any crime listed in Section 241, Mississippi Constitution of 1890. A certified copy of any enrollment by one clerk to another will be sufficient authority for the enrollment of the name, or names, in another county. A list of persons convicted of voter fraud, any crime listed in Section 241, Mississippi Constitution of 1890, or any crime interpreted as disenfranchising in later Attorney General opinions, shall also be entered into the Statewide Elections Management System on a quarterly basis. Voters who have been convicted in a Mississippi state court of any disenfranchising crime are not qualified electors as defined by Section 23-15-11 and shall be purged or otherwise removed by the county registrar or county election commissioners from the Statewide Elections Management System.[8]

12.    The Secretary of State provides training annually to county election commissioners regarding voter roll maintenance in accordance with Mississippi law and the National Voter Registration Act.  [19-20].

13.    The Secretary of State has no authority, legal duties, or legal obligations in connection with the restoration of any disqualified Mississippi electors' eligibility to vote.  [25-26].

14.    The Mississippi Constitution, as well as Legislature's current House Rules, Senate Rules, and Joint Rules govern the procedures for the Legislature's presentation, deliberation, consideration, passage, and other matters pertaining to the enactment of legislation.  The Secretary of State lacks any role, responsibilities, duties, or authority in conjunction with the Legislature's passage of legislation, and specifically lacks any role, responsibilities, duties, or

---

[8]  Miss. Code Ann. § 23-15-151 (Rev. 2017).

19-60662.1088

authority in conjunction with the Legislature's enactment of any suffrage bills under Section 253 of the Constitution.  [32-103].

15.    Article VI, Section 5 of the Mississippi Constitution of 1817 provided:

Section 5.  Laws shall be made to exclude from office and from suffrage those who shall thereafter be convicted of bribery, perjury, forgery, or other high crimes or misdemeanors.  The privileges of free suffrage shall be supported by laws regulating elections, and prohibiting, under adequate penalties, all undue influence thereon from power, bribery, tumult, or other improper conduct.[9]

16.    Chapter 6, Section 13 of the Revised Code of the Laws of the State of Mississippi, 1828 provided:

Sec. 13.  No person shall vote at any election whatever in this state, who shall have been convicted by the verdict of a jury, and the final judgment or sentence of a court of competent jurisdiction, of bribery, perjury, forgery, or other high crime or misdemeanor, unless the person so convicted shall receive a full pardon for such offence.

[104-106].

17.    Chapter 7, Section 11 of the Code of Mississippi, Public and General Statutes of the Territory and State from 1798 to 1848 (Hutchinson's Code) provided:

11.  *Convict not to vote.*  No person shall vote at any election whatever in this state, who shall have been convicted by the verdict of a jury and the final judgment or sentence of a court of competent jurisdiction, of bribery, forgery, perjury, or other high crime or misdemeanor, unless the person so convicted shall have received a full pardon for such offence.

[107-108].

18.    Article VII, Section 4 of the Mississippi Constitution of 1832 provided:

Sec. 4.  Every person shall be disqualified from holding an office or place of honor or profit under the authority of this state, who shall be convicted of having given or offered any bribe, to procure his election.  Laws shall be made to exclude

---

[9]  The Mississippi Constitution of 1817's text is available on-line through the Mississippi Department of Archives and History's website at: <http://mshistorynow.mdah.state.ms.us/articles/100/index.php?s=extra&id=267> (last accessed Oct. 4, 2018).

19-60662.1089

from office and from suffrage those who shall hereafter be convicted of bribery, perjury, forgery, or other high crimes or misdemeanors.  The privilege of free suffrage shall be supported by laws regulating elections and prohibiting, under adequate penalties, all undue influence therein, from power, bribery, tumult, or other improper conduct.

[109-125, 121].[10]

19.    Chapter VI, Title I, Section 4 of the Revised Statutes of the State of Mississippi, 1836 provided:

§ 4.  No person, who shall have been convicted by the verdict of a jury, and the final judgment of a court of competent jurisdiction, of bribery, perjury, forgery, or other high crimes or misdemeanour, can be deemed a qualified elector, unless the person so convicted shall receive a full pardon for such offence.

[126-127].

20.    Chapter 7 of the Elections Section of the Statutes of the State of Mississippi, 1840 provided:

Sect. 11.  No person shall vote at any election whatever in this state, who shall have been convicted by the verdict of a jury and the final judgment or sentence of a court of competent jurisdiction, of bribery, forgery, perjury, or other high crime or misdemeanor, unless the person so convicted shall have received a full pardon for such offence.

[128-129].

21.    Section II, Article 16 of the Revised Code of Mississippi, published 1857, provided:

Art. 16.  Every free white male person of the age of twenty-one years or upwards, who shall be a citizen of the United States and shall have resided in this State, one year next preceding an election, and the last four months within the county, city or town in which he offers to vote, shall be deemed a qualified elector; *Provided, however*, that no person shall vote at any election, who shall have been convicted of bribery, perjury, forgery, or any other crime or misdemeanor for which the loss

---

[10]  The Mississippi Constitution of 1832's text is also available on-line through the Mississippi Department of Archives and History's website at:
<http://mshistorynow.mdah.state.ms.us/articles/101/index.php?s=extra&id=268> (last accessed Oct. 4, 2018).

19-60662.1090

of the right of suffrage shall or may be imposed as a part of the penalty by any law of this State, and shall have been sentenced therefor by the final judgment of a court of competent jurisdiction, unless the person so convicted, shall have received a full pardon for such offence.

[130-131].

22.    The Fourteenth Amendment to the United States Constitution was proposed to the Legislatures of the several States by Congress on June 13, 1866.  The amendment was ratified by the requisite number of States in June 1868, and the Mississippi Legislature ratified the amendment on January 17, 1870.  Section 2 of the Fourteenth Amendment provides:

Section 2.  Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed.  But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.[11]

23.    The Mississippi Constitution of 1868 provided:

Article VII, Sec. 2.  All male inhabitants of this State, except idiots and insane persons, and Indians not taxed, citizens of the United States, or naturalized, twenty-one years old and upwards, who have resided in this State six months, and in the county one month next preceding the day of election at which said inhabitant offers to vote, and who are duly registered, according to the requirements of Section 3 of this Article, and who are not disqualified by reason of any crime, are declared to be qualified electors.

***

Article XII, Sec. 2.  The Legislature shall pass laws to exclude from office, and from suffrage, those who shall hereafter be convicted of bribery, perjury, forgery, or other high crimes or misdemeanors; and every person shall be disqualified from holding any office or place of honor, profit, or trust, under the authority of this State, who shall be convicted of having given or offered any bribe to procure his

---

[11]  U.S. Const., Amend. XIV.

19-60662.1091

election or appointment.

[132-153, 143, 148].[12]

24.     Chapter 5, Article II, Section 343 of the Mississippi Code of 1872 (adopted 1871) pertaining to registration of electors, provided:

§ 343.  Such board of registration shall determine the most suitable time and place for registration of such voters, and shall appoint a period of not less than three days, nor more than five days, according to the number of voters and time required for each, at the most public and convenient place for such voters, to appear for registration therein, terminating the registration at the court-house or county seat in said county, with five days to complete such registration; and shall give at least two weeks' public notice thereof, by publishing in some public newspaper therein, and posting in at least one of the most public places in each district in said county; and if no such newspaper shall be published therein, then by posting in at least ten of the most public places in said county; and at such time and place, and during the business hours of each designated day said registrars shall proceed to examine, administer the oath duly subscribed by the affiant, or written by one of the registrars, with the mark of the affiant, when he is unable to write, and to register and give a certificate to each qualified voter of such registration, in the form hereinafter prescribed, with the number of the registration, and a corresponding number on each certificate.  No person convicted of bribery, perjury, forgery, or other infamous crimes shall be registered.

[154-155].

25.     Chapter 59, Article VIII, Section 2855 of the Mississippi Code of 1872 (adopted 1871) provided for the following definition of terms when used throughout the code:

§ 2855.  The terms "felony," or "infamous crime," when used in this code, shall be construed to mean offences punished with death or confinement in the penitentiary.

[156].

26.     Section 108 of the Revised Code of the Statute Laws of Mississippi of 1880 provided:

---

[12]  The Mississippi Constitution of 1868's text is also available on-line through the Mississippi Department of Archives and History's website at: <http://www.mshistorynow.mdah.ms.gov/articles/102/index.php?s=extra&id=269> (last accessed Oct. 4, 2018).

19-60662.1092

§ 108.  No person who has been convicted of bribery, perjury, forgery, grand larceny or any felony, shall be entitled to be registered, or if registered, the name of such person shall be erased from the book of registration on which it is found by the clerk of the circuit court.  Whenever any person shall be convicted in any circuit court of any said crimes, said clerk shall thereupon erase the name of such person from the book of registration.  And whenever any person shall be convicted of any of said crimes, in any other court in any county, the presiding judge thereof shall certify the fact in writing to said circuit clerk, who shall thereupon erase the name of such person from said book, and file said certificate as a record of his office.

[157, 159]

27.     Section 142 of the Revised Code of the Statute Laws of Mississippi of 1880 provided:

§ 142.  All male inhabitants of this state, except idiots and insane persons, and Indians not taxed, citizens of the United States or naturalized, twenty-one years old and upwards, who have resided in this state six months, and in the county one month next preceding the day of election at which said inhabitant offers to vote, and who are duly registered for the election district in which they offer to vote, shall be deemed qualified electors in such district; but no person shall vote at any election who shall have been convicted of any crime or misdemeanor for which the loss of the right of suffrage may be imposed by law.

[160].

28.     Under Mississippi law, in determining whether an offense is a felony or misdemeanor, felonies include those crimes for which the maximum penalty which may be imposed includes imprisonment in the state penitentiary.[13]

29.     According to Mississippi Code 1880, the following categories of statutory crimes constituted felony offenses punishable by imprisonment in the state penitentiary, or included felony and misdemeanor degrees: abduction of females, accessory before the fact in felony, accessory after the fact in felony, adultery and fornication with prohibited degree, alteration of records, arson, assault with intent to kill, attempt to commit felony, bigamy, burglary, crimes against children, contagious diseases, dead bodies (grave robbing), elections offenses, embezzlement, false pretenses, forgery, prisoner escape, gaming, homicide, manslaughter, incest, kidnapping, larceny, levee injuries, mayhem, perjury, selling tainted produce, rape, robbery, timber cutting, tramps, treason, unnatural intercourse, will tampering, whipping with a stick or whip, and voter registration fraud.  [161-213].

---

[13]  *State v. Sansome*, 97 So. 753, 754 (Miss. 1923).

19-60662.1093

30.     According to Mississippi Code 1880, the crimes of bribery, burglary, arson, obtaining money or goods by false pretense, perjury, forgery, embezzlement, and bigamy were all treated entirely as felony offenses, with the exception of bribery and forgery which primarily included several felony degree offenses, but also included a few misdemeanor degree offenses. Theft was not defined in the 1880 Code, but is a popular term identified with larceny, and constitutes an umbrella term including other forms of wrongful taking.  [161-213, 163-164, 166-170, 177-179, 182-189, 201-202].[14]

31.     Federal and Mississippi authorities recognize crimes of dishonesty include such offenses as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.[15]

32.     On September 20, 1890, the Committee for Elective Fanchise of the 1890 Constitutional Convention presented their committee report to the Convention.  [214-217].

33.     On September 22, 1890, the 1890 Constitutional Convention took floor actions on the Committee for Elective Franchise's report, including failed proposed amendments to Section 2 of the report to include "robbery," and "or beating his wife," and a failed amendment to substitute "felony" for the Section's list of disenfranchising crimes.  The Convention adopted the report, as amended by a vote of 77 yeas, 32 nays, 24 absent or not voting, and 5 announced pairs. [218-224, 221].

34.     The original text of Article 12, Section 241 of the Mississippi Constitution of 1890 provided:

Section 241.  Every male inhabitant of this State, except idiots, insane persons and Indians not taxed, who is a citizen of the United States, twenty-one years old and upwards, who has resided in this State two years, and one year in the election district, or in the incorporated city or town, in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement or bigamy, and who has paid, on or before February of the year in which he shall offer to vote, all taxes which may have been legally required of him, and which he has had an opportunity of paying according to law, for the two preceding years, and who shall produce to the officers holding

---

[14]  *See also McLaughlin v. City of Canton, Miss.*, 947 F.Supp. 954, 970 & n. 18 (S.D. Miss. 1995).

[15]  *See* H.R. Conf. Report 93-1597 (1974) (findings regarding Rule of Evidence 609(a)); Miss. R. Evid. 609 Advisory Cmte. Report.

19-60662.1094

the election satisfactory evidence that he has paid said taxes, is declared to be a qualified elector; but any minister of the gospel in charge of an organized church shall be entitled to vote after six months residence in the election district, if otherwise qualified.

[225-273, 262].[16]

35.     Section 3614 of the Annotated Code of Mississippi, amended and adopted in 1892, provided:

3614 (108).  Persons convicted of certain crimes not to be registered.—A person who has been convicted of bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement or bigamy, shall not be registered, or, if registered, the name of such person shall be erased from the registration-book on which it may be found by the registrar or by the county election commissioners.  Whenever any person shall be convicted in the circuit court of the county of any said crimes, the registrar shall thereupon erase his name from the registration-book; and whenever any person shall be convicted of any of said crimes in any other court of any county, the presiding judge thereof, or the justice of the peace, shall, on demand, certify the fact in writing to the registrar, who shall thereupon erase the name of such person from the registration book, and file said certificate as a record of his office.

[274-275].

36.     Article 12, Section 241 of the Mississippi Constitution has been amended five times since its original enactment in 1890.[17]

37.     During its 1950 Regular Session, the Mississippi Legislature passed House Concurrent Resolution No. 10, Miss. Laws, 1950, ch. 569.  The legislation, as adopted on February 10, 1950, provided:

A concurrent resolution to amend Section 241 of the Mississippi Constitution of 1890 so as to provide the qualification of electors, and amending by providing that the wife of a minister of the gospel legally residing with him shall be qualified to

---

[16]  The Mississippi Constitution of 1890's original text is also available on-line through the Mississippi Department of Archives and History's website at: <http://mshistorynow.mdah.state.ms.us/articles/103/index.php?s=extra&id=270> (last accessed Oct. 4, 2018).

[17]  *See* Miss. Laws, 1935, ch. 117; Miss. Laws, 1950, ch. 569; Miss. Laws, 1952, ch. 441; Miss. Laws, 1968, ch. 614; Miss. Laws, 1972, ch. 626.

19-60662.1095

vote after a residence of six months in the election district or incorporated city or town, if otherwise qualified.

Be it resolved by the Legislature of the State of Mississippi two-thirds of the Senate and House of Representatives agreeing thereto that the following amendment to the constitution of the State of Mississippi be submitted to the qualified voters of the state for ratification or rejection at an election to be held on the first Tuesday after the first Monday in November, A.D., 1950 viz:

Amend section 241 of the constitution of the State of Mississippi, so that it shall read as follows:

Section 241. Every inhabitant of this state, except idiots, insane persons and Indians not taxed, who is a citizen of the United States of America, twenty-one years old and upwards, who has resided in this state for two years, and one year in the election district, or in the incorporated city or town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, and who has paid on or before the first day of February of the year in which he shall offer to vote, all poll taxes which may have been legally required of him, and which he has had an opportunity of paying according to law, for the two preceding years, and who shall produce to the officers holding the election satisfactory evidence that he has paid such taxes, is declared to be a qualified elector, but any minister of the gospel in charge of an organized church, or his wife legally residing with him, shall be entitled to vote after six months residence in the election district, incorporated city or town, if otherwise qualified.

Adopted by the House of Representatives January 26, 1950

Adopted by the Senate February 10, 1950.[18]

38.     Legal notices regarding the statewide election to adopt 1950 House Concurrent Resolution No. 10 were published more than thirty days in advance of the election in and two weeks prior to the election in accordance with the Resolution and Section 4211, Revised Code of Mississippi of 1942. [276].

39.     1950 House Concurrent Resolution No. 10 was passed by a majority of electors, 66,077 to 14,862, in a statewide election on June 7, 1950. [277-278].

40.     According to the Mississippi Official and Statistical Register 1964-1968, the 1960

---

[18] Miss. Laws. 1950, ch. 569.

19-60662.1096

Mississippi Census accounted for a total of 2,178,141 Mississippi residents, which included 1,257,546 white persons, 915,743 African-American persons, and 4,852 persons described as others.  [279-280].

41.    According to the 1971 Mississippi Statistical Abstract compiled by Mississippi State University's Research Division, the United States Census Bureau reported the total population of prisoners incarcerated in the Mississippi state prison system from 1960 to 1967 as 1,975 (1960), 2,068 (1961), 2,179 (1962), 2,121 (1963), 2,056 (1964), 2,019 (1965), 1,829 (1966), 1,667 (1967).  [289-304, 303].

42.    According to the 1970 and 1971 Mississippi Statistical Abstracts compiled by Mississippi State University' Research Division, the United States Department of Justice, Federal Bureau of Investigation's 1968 and 1969 Uniform Crime Reports for the United States tracked the total number of reported crimes and the crime rates (measured by crimes per 10,000 population) for the United States, Mississippi, and its border states in the following categories of crimes: murder and nonnegligent manslaughter; forcible rape; robbery; aggravated assault; burglary; larceny $50 and over; and auto theft.  The Statistical Abstracts also include the United States Department of Justice, Federal Bureau of Investigation's 1968 and 1969 Uniform Crime Reports for the United States's data for the annual total number of reported crimes and the crime rates (measured by crimes per 10,000 population) for Mississippi in the years 1961 to 1969 in the following categories of crimes: murder and nonnegligent manslaughter; forcible rape; robbery; aggravated assault; burglary; larceny $50 and over; and auto theft.  [282-304, 286-287, 300, 302].

43.    During its 1968 Regular Session, the Mississippi Legislature passed House Concurrent Resolution No. 5, Miss. Laws, 1968, ch. 614.  The final legislation, as adopted on March 25, 1968, provided:

A CONCURRENT RESOLUTION to amend Section 241, Mississippi Constitution of 1890, to provide for one-year residency within the State and County and a six-month residency within the election precinct to be a qualified elector; to delete certain improper parts of the Section; and for related purposes.

*Be it Resolved by the Legislature of the State of Mississippi, two-thirds (2/3) of the Senate and House of Representatives present and voting concurring therein*, That the following amendment to the Constitution of the State of Mississippi be submitted to the qualified electors of the State for ratification or rejection, in an election to be held on the first Tuesday after the first Monday of June, 1968, viz:

Amend Section 241, Mississippi Constitution of 1890, so that it will read as follows:

"241.  Every inhabitant of this State, except idiots and insane persons, who is a citizen of the United States of America, twenty-one (21) years old and upwards, who has resided in this State for one (1) year, and for one (1) year in the county in

19-60662.1097

which he offers to vote, and for six (6) months in the election precinct or in the
incorporated city or town in which he offers to vote, and who is duly registered as
provided in this article, and who has never been convicted of murder, rape,
bribery, theft, arson, obtaining money or goods under false pretense, perjury,
forgery, embezzlement or bigamy, is declared to be a qualified elector."

*Be it further* Resolved That the Secretary of State is hereby directed to file public
notice of said election in the manner, form and time, as provided by law and
Section 273 of the said Constitution, and said election is hereby called and fixed
to be held on the first Tuesday after the first Monday of June, 1968, for the
purpose of submitting this and other amendments to the Constitution to the
qualified electors of this State for ratification or rejection; said election to be
conducted and held as provided by law.

[305-306].

44.      On February 6, 1968, the Mississippi House of Representatives took certain
actions, and adopted the following amendments to House Concurrent Resolution No. 5:

• Adopted Amendment No. 1: Amend by striking the words and figure "one (1) year" in line four
of Section 241 of the memeographed copy and insert in lieu thereof the words and figure "six (6)
months."

• Adopted Amendment No. 2: Strike out line 7, paragraph 4 beginning with the word "and who
has paid on or before the first day of February of the year in which he shall offer to vote, all poll
taxes which may have been required of him" and all language pertaining to poll taxes.

• Proposed Amendment No. 3: Amend by deleting in line two of paragraph entitled "241" the
words "Indians not taxed."

• A motion to recommit the resolution to the Committee on the Constitution failed.

• Adopted Amendment No. 3.

• Adopted Amendment No. 4: Amend by adding after the word "of" in line 6 the words "murder,
rape."

• Adopted Amendment No. 5: Amend Section 241 by striking out, beginning with line 13 of the
memeographed copy, the words "but any minister of the gospel in charge of an organized church,
or his wife legally residing with him, shall be entitled to vote after six (6) months' residence in
the election district, incorporated city or town, if otherwise qualified."

• The House adopted the resolution, as modified, by a vote of 96 yeas, 19 nays, and 7 absent or
not voting.

• A motion to reconsider was entered.

[311-313].

     45.     On February 7, 1968, the Mississippi House of Representatives took certain further actions with respect to House Concurrent Resolution No. 5:

• A motion to reconsider Amendment No. 1 that had been adopted the previous day failed.

• Amendment No. 6 failed: Amend second paragraph, Section 241, second and third lines by striking the words "twenty-one (21) years old and upwards" and adding in its place the words "nineteen years (19) old and upwards"

• Proposed Amendment No. 7: Amend the third paragraph (the paragraph beginning with the word "241" so it reads as follows:

241.  Every inhabitant of this State except idiots and insane persons, who is a citizen of the Untied States of America, twenty-one (21) years old and upwards, who has resided in this State for one (1) year, and for six (6) months in the election district or in the incorporated town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector.

• Proposed Amendment No. 1 to Amendment No. 7 failed: Amend by striking the words and figures "six (6) months" in line 4 of the amendment and substitute "one (1) year"

• Adopted Amendment No. 7.

• Adopted Amendment No. 8: Amend the title so it reads as follows: "A CONCURRENT RESOLUTION TO AMEND SECTION 241, MISSISSIPPI CONSTITUTION OF 1890, TO PROVIDE FOR ONE-YEAR RESIDENCY WITHIN THE STATE AND A SIX-MONTH RESIDENCY WITHIN THE ELECTION DISTRICT TO BE A QUALIFIED ELECTOR; TO DELETE CERTAIN IMPROPER PARTS OF THE SECTION; AND FOR RELATED PURPOSES."

• The House adopted the resolution, as modified, by a vote of 97 yeas, 19 nays, and 6 absent or not voting.

• A motion to reconsider was entered.

[314-316].

     46.     On February 8, 1968, the House tabled the motion to reconsider House Concurrent Resolution No. 5.  [317-318].

19-60662.1099

47.     On February 12, 1968, House Concurrent Resolution No. 5 was introduced in the Senate.  [321-322].

48.     On February 27, 1968, the Senate took certain actions, and adopted the following amendment to House Concurrent Resolution No. 5:

• Adopted Amendment No. 1: Amend H.C.R. No. 5 by striking the words and figures "six (6) months" in line number 28 and substituting therefor the words and figures "one (1) year."  Also add the following language as a new paragraph immediately following line 32: Any minister of the gospel in charge of an organized church, or his wife legally residing with him, shall be entitled to vote after six months' residence in the election district, incorporated city or town, if otherwise qualified.

• Amendment No. 2 was proposed, and then withdrawn, and provided: In line 28 of the memeographed copy delete the word and figure "six (6)" and insert therefor the word and figure "twelve (12)."

• Amendment No. 3, and an amendment to Amendment No. 3, were proposed and failed: Amend H.C.R. No. 5 by striking the words "election district" in line 28 as shown by the memeographed copy and substituting the word "county" therefor.  Amend to delete the word "county" and insert the words "Supervisors District."

• The Senate adopted the resolution, as modified, by a vote of 39 yeas, 10 nays, with 3 absent or not voting.

[326-327].

49.     On February 29, 1968, the Senate tabled a motion to reconsider whereby House Concurrent Resolution No. 5, as amended, was adopted.  [337].

50.     On March 4, 1968, the Senate sent House Concurrent Resolution No. 5 to the House with accompanying amendment.  The House subsequently voted to decline to concur in the Senate's amendment and invite conference.  [332].

51.     On March 7, 1968, the House notified the Senate that the House declined to concur in the Senate's amendment and invited conference.  [339-340].

52.     On March 12, 1968, the Senate granted the House's request for conference on House Concurrent Resolution No. 5.  [341-342].

53.     On March 25, 1968, the Senate considered the Conference Report on House Concurrent Resolution No. 5 which provided that the Senate recede from its Amendment No. 1, amend Section 241, line 27, of the memeographed copy by inserting after the words "one (1) year" the following "and for one (1) year in the county in which he offers to vote," and further

19-60662.1100

amend line 28 of the memeographed copy by striking the word "district" and substituting the word "precinct," and amend the title to conform. [347].

54.     On March 25, 1968, the Senate adopted the Conference Report on House Concurrent Resolution No. 5 by a vote of 31 yeas, 16 nays, and 6 absent or not voting. [347].

55.     On March 27, 1968, the House adopted the Conference Report on House Concurrent Resolution No. 5 by a vote of 82 yeas, 20 nays, with 20 absent or not voting. [349-350].

56.     The 1968 Mississippi Legislature's introduction, floor actions, amendments, deliberations, and other procedural actions in conjunction with passage of 1968 House Concurrent Resolution No. 5 adhered to the ordinary legislative process prescribed by the Constitution, the standing rules of each house, and the joint rules of the Legislature. [361-392].

57.     Legal notices regarding the statewide election to adopt 1968 House Concurrent Resolution No. 5 were published more than thirty days in advance of the election in and two weeks prior to the election in accordance with the Resolution and Section 4211, Revised Code of Mississippi of 1942. [393-395].

58.     On June 13, 1968, the Mississippi Secretary of State issued his official proclamation enacting 1968 House Concurrent Resolution No. 5. The proclamation provided:

WHEREAS, the Legislature of the State of Mississippi, lawfully assembled in Regular Session in 1968, did adopt House Concurrent Resolution No. 5, submitting an amendment to Section 241, Mississippi Constitution of 1890, to provide for one-year residency within the State and County and a six-month residency within the election precinct to be a qualified elector; to delete certain improper parts of the Section; and for related purposes.

WHEREAS, said resolution required that the said amendment be submitted to the qualified electors of the State of Mississippi for ratification or rejection in an election to be held on the first Tuesday after the first Monday of June, A.D., 1968.

WHEREAS, the undersigned, following the mandate of Section 273 of the Mississippi Constitution of 1890, gave public notice of said election as therein required at least thirty (30) days preceding the date thereof, and under the provisions of Section 4211, Revised Code of Mississippi of 1942, published said proposed constitutional amendment in full in the official newspaper in the respective counties of the State two (2) weeks previous to the said election, at which election the qualified electors of this State voted directly for or against such amendment as hereinafter copied in full, and at such election 136,846 qualified electors voted directly for said amendment and 59,888 qualified electors voted against said amendment. Whereas, the undersigned does hereby certify that the

19-60662.1101

said amendment received an affirmative vote in the majority required by the Constitution.

NOW, THEREFORE, I, HEBER LADNER, Secretary of State of the State of Mississippi, by authority vested in me by Section 273 of the Mississippi Constitution of 1890, do hereby issue this my official proclamation inserting new language in said Constitution, amending the said Constitution of the State of Mississippi as provided by said House Concurrent Resolution No. 5, to-wit:

"Section 241, Mississippi Constitution of 1890, is hereby amended to read as follows:

"Section 241.  Every inhabitant of this State, except idiots and insane persons, who is a citizen of the United States of America, twenty-one (21) years old and upwards, who has resided in this State for one (1) year, and for one (1) year in the county in which he offers to vote, and for six (6) months in the election precinct or in the incorporated city or town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector."

[397-399].

59.    1968 House Concurrent Resolution No. 5 was passed by a majority of electors, 136,846 to 59,888, in a statewide election on June 4, 1968.  [400].

60.    1968 House Concurrent Resolution No. 5 was adopted in accordance with Mississippi's constitutional amendment procedure in effect at that time.  The governing law in 1968, as then contained in Article 15, Section 273 of the Mississippi Constitution, and established by Miss. Laws, 1959 Ex. Sess., ch. 78, provided the following procedure:

Section 273.  Whenever two thirds of each house of the Legislature, which two thirds shall consist of not less than a majority of the members elected to each house, shall deem any change, alteration or amendment necessary to this Constitution, such proposed amendment, change or alteration shall be read and passed by two-thirds vote of each house, as herein, provided; public notice shall then be given by the Secretary of State at least thirty days preceding an election, at which the qualified electors shall vote directly for or against such change, alteration or amendment, and if more than one amendment shall be submitted at one time, they shall be submitted in such manner and form that the people may vote for or against each amendment separately; and, notwithstanding the division of the Constitution into sections, the Legislature may provide in its resolution for one or more amendments pertaining and relating to the same subject or subject matter, and may provide for one or more amendments to an article of the

Page 17 of  28

Constitution pertaining and relating to the same subject or subject matter, which may be included in and voted on as one amendment; and if it shall appear that a majority of the qualified electors voting directly for or against the same shall have voted for the proposed change, alteration or amendment, then it shall be inserted as a part of the Constitution by proclamation of the Secretary of State certifying that it received the majority vote required by the Constitution; and the resolution may fix the date and direct the calling of elections for the purposes hereof.

[401-403].

61.     By letter dated December 11, 1986, the United States Department of Justice notified Mississippi Attorney General Edwin Lloyd Pittman that the United States Attorney General does not interpose any objection to 1968 House Concurrent Resolution No. 5 or 1972 Senate Concurrent Resolution No. 502 pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c. [404-405].

62.     Article 12, Section 241 of the Mississippi Constitution, as it exists today, as enacted through two-thirds vote of the House of Representatives and Senate through 1972 Senate Concurrent Resolution No. 502, Miss. Laws, 1972, ch. 626, and adopted by a majority of electors at popular election, provides:

Section 241.  Every inhabitant of this state, except idiots and insane persons, who is a citizen of the United States of America, eighteen (18) years old and upward, who has been a resident of this state for one (1) year, and for one (1) year in the county in which he offers to vote, and for six (6) months in the election precinct or in the incorporated city or town in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy, is declared to be a qualified elector, except that he shall be qualified to vote for President and Vice President of the United States if he meets the requirements established by Congress therefor and is otherwise a qualified elector.

[408].

63.     In June 1984, Secretary of State Dick Molpus assembled an Election Law Reform Task Force to undertake a comprehensive review of the State's election laws and propose legislation overhauling them.  [410-414].

64.     The 1984 Election Law Reform Task Force's members included legislators, executive branch officials, local election officials, and other members from across the state.  The Task Force included persons with racially and politically diverse backgrounds.  The members included: Task Force Chairman Herman B. DeCell (Yazoo City), Peyton Prospere (Secretary of State's Office), Constance Slaughter Harvey (Assistant Secretary of State), Thomas H. Campbell,

19-60662.1103

III (Governor's Office), Robert M. Arenston, Jr. (Attorney General's Office), Tim Ford (House
of Representatives, Chairman Apportionment and Elections Committee - Lee County), Isiah
Fredricks (House of Representatives, Member Apportionment and Elections Committee -
Harrison County), Bill Harpole (Senate, Chairman Elections Committee - Oktibbeha County),
Hob Bryan (Senate, Vice-Chairman Elections Committee - Monroe County), Lucy Carpenter
(Circuit Clerk, President Circuit Clerks Association - Marshall County), Webb Lee (Circuit Clerk
- Harrison County), Walter Rogers (Circuit Clerk - Coahoma County), Henry Clark (Election
Commissioner - Holmes County), Nelle Dees (Election Commissioner - Washington County),
Olivia Johnson (Election Commissioner - Bolivar County), Sue Sautermeister (Election
Commissioner - Hinds County), Ruth Shirley (Election Commissioner - Hinds County), Beryl
Toler (Election Commissioner - Lee County), Unita Blackwell (Mayor of Mayersville), LeRoy
Brooks (County Supervisor - Lowndes County), Harry Bowie (Pike County), Mike Luke (County
Supervisor - Kemper County), Jean Nail (Winona City Clerk), Randy Patterson (Democratic
Party Executive Director), Andy Taggart (Republican Party Executive Director), Tom Wilson
(Washington County).  [415-417].

65.    The 1984 Election Law Reform Task Force conducted public hearings in the
State's five congressional districts in July 1984.  The Task Force also accepted many public
comments.  [418-499].

66.    The 1984 Election Law Reform Task Force's July 27, 1984 and August 17, 1984
meetings summary recorded: "The following are issues supported by Consensus of Task Force: .
. .Registration . . . d) In addition to disqualifying crimes listed in the State Constitution,
conviction for any felony will serve to disenfranchise the convicted felon."  [500-506, 501].

67.    The 1984 Election Law Reform Task Force's Summary of Action from its
September 6, 1984 meeting recorded a summary of discussions at the meeting:

At the outset of the meeting on Thursday, September 6, 1984 the Task Force
heard from two members of the Voting Rights Section of the U.S. Department of
Justice, Paul Hancock, Director of Litigation in the Voting Rights Section and
Sandra Coleman, Deputy Director of the Voting Rights Section.  They provided
an overview of the Voting Rights Act and the specific role of the Justice
Department in preserving gains achieved by enforcement of the Voting Rights
Act.  They explained the Section 5 submission process by which the Justice
Department determines whether election laws discriminate against minorities and
the two factors which are considered; one, the purpose or intent of the change and
two the effect of the change.  If either of those two factors show evidence of
discrimination then such election law change will not be approved.

The purpose of their visit was to become acquainted with the Task Force and its
work so that a better understanding of the need for election law changes could be
had.  This opportunity for exchanging information with the Justice Department
should prove helpful when they begin review of enacted recommendations.

Page 19 of  28

19-60662.1104

***

Registration

***

There was much discussion concerning the broadening of disenfranchising crimes
to include all felonies, and it was decided that additional review was necessary.  It
was noted that Section 241 of the Mississippi Constitution, as amended in 1972,
does not include burglary as a disqualifying crime while Section 23-5-35 of the
Mississippi Code of 1972, which predates the amended Section 241, does.  It was
also noted that some felonies do not involve "moral turpitude" which might
evidence a predisposition to commit voter fraud.

[507-514, 507, 509].

68.    The 1984 Election Law Reform Task Force's Summary of Action from its
September 6, 1984 meeting recorded a summary of discussions at the meeting:

It was decided that present law dealing with disenfranchisement of electors for the
commission of crimes should be left as is.  There was discussion as to the need for
a constitutional amendment to change the law to include as disenfranchising
crimes all felonies.

[515-519, 516].

69.    The 1984 Election Law Reform Task Force submitted proposed election law
reform legislation to the 1985 Mississippi Legislature.  After considering the proposal during the
1985 Regular Legislative Session, the House and Senate formed committees to further study the
state's election laws and to consider making recommendations to the Legislature including those
proposed by the 1984 Election Law Task Force.  The House and Senate Committees met
together, and held five open public meetings.  Participating Representatives included: Tim Ford,
Ashley Atkinson, Ashley Hines, Horace Buckley, Rick Fortenberry, and Walter Phillips.
Participating Senators included: Bill Harpole, Hob Bryan, Mitch Childre, Henry Kirksey, Charles
Ray Nix, and Martin Smith.  [520-555, 521-522, 524, 528].

70.    The 1985 House and Senate study committees held one of their joint meetings in
October 1985.  An October 18, 1985 memorandum recounting the meeting stated:

There was also a consensus that a present list of disqualifying crimes should be
modified to provide that the conviction of any felony will result in the removal of
such felons from the registration roles.  The completion of the sentence or
probation period would entitle the former felon to register to vote.  There was
some discussion and no consensus reached as to whether federal felonies or

19-60662.1105

felonies in other states should be included.  This decision would provide a more
rational basis for disqualifying persons while relieving the Legislature of having
to handle numbers of the suffrage bills each session.

[556-557].

71.    On December 23, 1985, before the 1986 Regular Legislative Session, the 1985
House Interim Election Law Reform Study Committee issued a official report, produced in
collaboration with the Senate study committee, to the Legislature.  Section 13 of the report
included the following observations and recommendations with respect to the State's existing
felon disenfranchisement laws:

13.  Disenfranchisement of felons

The committee recommends that any person convicted of any felony in this state,
in another state or under federal statute, excluding the crime of manslaughter and
felonious violations of the Internal Revenue Code, shall not be permitted to
register to vote, or to vote, and if registered the felon's name shall be removed
from the registration rolls.  Upon completion of his prison sentence, including any
probationary period, the felon will be eligible to register to vote upon presenting
to his county registrar certifiable documentation that the sentence has been
discharged.

Presently Section 241 of the Constitution of 1890 enumerates those crimes for
which a citizen may be disenfranchised.  These crimes include murder, rape,
bribery, theft, arson, obtaining money or goods under false pretense, perjury,
forgery, embezzlement or bigamy.  Section 23-5-35 includes the additional crime
of burglary among those crimes resulting in disenfranchisement.  The right of
suffrage is legislatively restored to a former offender as provided for in Section
253 of the Constitution of 1890, which requires the passage of a bill by two-thirds
vote of both houses.  Such right of suffrage may also be restored by means of a
pardon from the governor.  It is the sense of the committee that upon completion
of the sentence judicially imposed on him, a felon should regain his right of
suffrage which was forfeited upon commission of the crime.  The legislature
should not have to act upon the petition of each and every discharged felon who
has been disenfranchised.  In addition to the statutory changes made, the
committee will propose constitutional amendments embodying the changes
necessary to effectuate this recommendation.

[520-555, 543-544].

72.    At the Mississippi Legislature's 1986 Regular Session, the Senate study
committee introduced 1986 Senate Bill 2234 in the Senate.  The original draft, following an
initial strike-all amendment adopted by the Senate, provided the following with respect to felon

19-60662.1106

disenfranchisement:

Section 2.  Every inhabitant of this state, except idiots and insane persons, who is a citizen of the United States of America, eighteen (18) years old and upwards, who has resided in this state for thirty (30) days and for thirty (30) days in the county in which he offers to vote, and who shall have been duly registered as an elector by an officer of this state under the laws thereof, and who shall have been duly registered as an elector by an officer of this state under the laws thereof, and who has never been convicted in any court of this state or any other state or in any federal court of any felony other than manslaughter, or any violation of the United States Internal Revenue Code, shall be a qualified elector in and for the county, municipality and voting precinct of his residence, and shall be entitled to vote at any election.  No others than those above included shall be entitled, or shall be allowed, to vote at any election.

***

Section 6.  Any person who has been convicted in any court of this state or any other state or in any federal court of any felony other than manslaughter or any violation of the United States Internal Revenue Code, shall not be registered, or if registered the name of such person shall be erased from the registration book on which it may be found by the registrar or by the election commissioners.  Whenever any person shall be convicted in the circuit court of his county of any of said crimes, the registrar shall thereupon erase his name from the registration book; and whenever any person shall be convicted of any of said crimes in any other court of any county, the presiding judge thereof shall, on demand, certify the fact in writing to the registrar, who shall thereupon erase the name of such person from the registration book and file said certificate as a record of his office.

[559-561].

73.    The final version of 1986 Senate Bill 2234, as provided in its conference report adopted by both houses, provided the following with respect to felon disenfranchisement:

Section 2.  Every inhabitant of this state, except idiots and insane persons, who is a citizen of the Untied States of America, eighteen (18) years old and upwards, who has resided in this state for thirty (30) days and for thirty (30) days in the county in which he offers to vote, and for thirty (30) days in the supervisor's district or in the incorporated city or town in which he offers to vote, and who shall have been duly registered as an elector by an officer of this state under the laws thereof, and who has never been convicted of any crime listed in Section 241, Mississippi Constitution of 1890 shall be a qualified elector in and for the county, municipality and voting precinct of his residence, and shall be entitled to vote at any election.  No others than those above included shall be entitled, or

Page 22 of  28

shall be allowed, to vote at any election.

***

Section 6.  Any person who has been convicted of any crime listed in Section 241, Mississippi Constitution of 1890, shall not be registered, or if registered the name of such person shall be erased from the registration book on which it may be found by the registrar or by the election commissioners.  Whenever any person shall be convicted in the circuit court of his county of any of said crimes, the registrar shall thereupon erase his name from the registration book; and whenever any person shall be convicted of any of said crimes in any other court of any county, the presiding judge thereof shall, on demand, certify the fact in writing to the registrar, who shall thereupon erase the name of such person from the registration book and file said certificate as a record of his office.

[563-566].

74.     On April 2, 1986, both houses of the Legislature passed 1986 Senate Bill 2234, by a vote of 51 yeas and 1 nay in the Senate, and 118 yeas and 3 nays in the House.  [567].

75.     On April 16, 1986, Governor William Allain approved 1986 Senate Bill 2234. [568-569].

76.     1986 Senate Bill 2234 (Laws, 1986, ch. 495), as finally enacted, repealed the prior versions of the State's election statutes and replaced them with the current Election Code, presently found at Miss. Code Ann. § 23-15-1 *et seq.*[19]

77.     Section 2 of 1986 Senate Bill 224 (Laws, 1986, ch. 495) replaced Sections 23-5-85 and 23-5-35 of the Code of 1972, carried forward from Code of 1942, as amended.  The repealed versions of Section 23-5-85 and 23-5-35 provided:

Section 23-5-85.  Every inhabitant of this state, except idiots and insane persons, who is a citizen of the Untied States of America, twenty-one years old and upwards, who has resided in this state for one year and for one year in the county in which he offers to vote, and for six months in the election precinct or in the incorporated city or town in which he offers to vote, and who is able to read and write and who shall have been duly registered as an elector by an officer of this state under the laws thereof, and who has never been convicted of murder, rape, bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement, or bigamy, shall be a qualified elector in and for the election district or city, town or village of his residence, and shall be entitled

---

[19] *See* Miss. Laws, 1986, ch. 495.

19-60662.1108

to vote at any election held not less than four months after his registration.  No others than those above included shall be entitled, or shall be allowed, to vote at any election; provided, that a person unable to read or write by reason of physical disability shall, if otherwise qualified, nevertheless be entitled to vote.

and

Section 23-5-35.  A person who has been convicted of murder, rape, bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement, or bigamy, shall not be registered, or if registered the name of such person shall be erased from the registration book on which it may be found by the registrar or by the election commissioners.  Whenever any person shall be convicted in the circuit court of his county of any of said crimes, the registrar shall thereupon erase his name from the registration book; and whenever any person shall be convicted of any of said crimes in any other court of any county, the presiding judge thereof, or the justice of the peace, shall, on demand, certify the fact in writing to the registrar, who shall thereupon erase the name of such person from the registration book and file said certificate as a record of his office.

[570-571].

78.    By letters dated December 31, 1986, and January 2, 1987, the United States Department of Justice notified Mississippi Attorney General Edwin Lloyd Pittman that the United States Attorney General does not interpose any objection to 1986 Senate Bill 224 (Laws, 1986, ch. 495)  pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c.  [572-574].

79.    The present day version of Code Sections 23-15-11 and 23-15-19 provide as follows:

Section 23-15-11.  Every inhabitant of this state, except persons adjudicated to be non compos mentis, who is a citizen of the United States of America, eighteen (18) years old and upwards, who has resided in this state for thirty (30) days and for thirty (30) days in the county in which he or she seeks to vote, and for thirty (30) days in the incorporated municipality in which he or she seeks to vote, and who has been duly registered as an elector under Section 23-15-33, and who has never been convicted of vote fraud or of any crime listed in Section 241, Mississippi Constitution of 1890, shall be a qualified elector in and for the county, municipality and voting precinct of his or her residence, and shall be entitled to vote at any election upon compliance with Section 23-15-563. If the thirtieth day to register before an election falls on a Sunday or legal holiday, the registration applications submitted on the business day immediately following the Sunday or legal holiday shall be accepted and entered in the Statewide Elections

19-60662.1109

Management System for the purpose of enabling voters to vote in the next election. Any person who will be eighteen (18) years of age or older on or before the date of the general election and who is duly registered to vote not less than thirty (30) days before the primary election associated with the general election, may vote in the primary election even though the person has not reached his or her eighteenth birthday at the time that the person seeks to vote at the primary election. No others than those specified in this section shall be entitled, or shall be allowed, to vote at any election.[20]

and

Section 23-15-19.  Any person who has been convicted of vote fraud or any crime listed in Section 241, Mississippi Constitution of 1890, such crimes defined as "disenfranchising," shall not be registered, or if registered the name of the person shall be removed from the Statewide Elections Management System by the registrar or the election commissioners of the county of his or her residence. Whenever any person shall be convicted in the circuit court of his or her county of a disenfranchising crime, the county registrar shall thereupon remove his or her name from the Statewide Elections Management System; and whenever any person shall be convicted of a disenfranchising crime in any other court of any county, the presiding judge of the court shall, on demand, certify the fact in writing to the registrar of the county in which the voter resides, who shall thereupon remove the name of the person from the Statewide Elections Management System and retain the certificate as a record of his or her office.[21]

80.    State election officials consider felony convictions, identified by category and code sections in the below chart, disqualify a convicted felon from voting under the State's present day felon disenfranchisement laws:

| Murder | 97-3-19; 97-3-19(1)(a)-(d); 97-3-19(2); 97-3-19(2)(a)-(h); 97-3-19(3); 97-3-21; 97-3-37(1) |
|---|---|
| Rape | 97-3-65; 97-3-65(1)(a)-(b); 97-3-65(3)(a)-(d); 97-3-65(4); 97-3-67; 97-3-71 |
| Bribery | 97-7-53; 97-9-5; 97-9-7; 97-9-9; 97-9-10; 97-11-11; 97-11-13; 97-13-1; 97-29-17; 97-9-65 |
| Forgery | 97-21-3; 97-21-7; 97-21-9; 97-21-13; 97-21-15; 97-21-17; 97-21-19; 97-21-23; 97-21-29; 97-21-33; 97-21-35; 97-21-37; 97-21-49; |
| Perjury | 97-9-59; 97-9-61; 97-9-63 |

---

[20]  Miss. Code Ann. § 23-15-11 (Rev. 2017).

[21]  Miss. Code Ann. § 23-15-19 (Rev. 2017).

19-60662.1110

| Embezzlement | 97-11-25; 97-11-29; 97-11-31; 97-11-33; 97-23-19; 97-23-25 |
|---|---|
| Theft | 97-3-73; 97-3-75; 97-3-79; 97-3-82(3)(b); 97-3-117; 97-3-117(1); 97-3-117(2); 97-17-41; 97-17-41(1); 97-17-41(2); 97-17-42; 97-17-53; 97-17-59; 97-17-64; 97-17-70; 97-23-93(6),(7); 97-23-94; 97-37-35; 97-37-35(3)(a)-(c); 97-37-35(4) |
| Obtaining Money or Goods Under False Pretenses | 97-19-39; 97-19-41; 97-19-45; 97-19-45; 97-19-49; 97-19-51; 97-19-55; 97-19-57; 97-19-59 |
| Arson | 97-17-1; 97-17-5; 97-17-7; 97-17-9; 97-17-11; 97-17-13; 97-17-3 |
| Bigamy | 97-29-13 |

[575-577].

81.     Based on spreadsheet data provided to the Mississippi Administrative Office of Courts ("AOC") to *Harness* plaintiffs' counsel for criminal dispositions from 1994-2017 for all counties except Jefferson Davis County, approximately 51,713 persons were convicted of disenfranchising felonies in that time frame.  [578-580].

82.     The AOC's data shows the number of persons convicted of murder in the 1994-2017 time frame includes 2240 persons, with 1640 identified as black (73.21%), 555 identified as white (24.7%), and 45 identified as other (2.01%).  [580].

83.     The AOC's data shows the number of persons convicted of rape in the 1994-2017 time frame includes 1855 persons, with 1194 identified as black (64.37%), 588 identified as white (31.7%), and 73 identified as other (3.93%).  [580].

84.     The AOC's data shows the number of persons convicted of bribery in the 1994-2017 time frame includes 40 persons, with 23 identified as black (57.5%), 14 identified as white (35%), and 3 identified as other (7.5%).  [580].

85.     The AOC's data shows the number of persons convicted of theft (including possible felony shoplifting offenses) in the 1994-2017 time frame includes 30,885 persons, with 19,084 identified as black (61.79%), 11,026 identified as white (35.7%), and 775 identified as other (2.51%).  [580].

86.     The AOC's data shows the number of persons convicted of obtaining money or goods under false pretense in the 1994-2017 time frame includes 5090 persons, with 2716 identified as black (53.36%), 2175 identified as white (42.73%), and 199 identified as other (3.91%).  [580-81].

87.     The AOC's data shows the number of persons convicted of perjury in the 1994-2017 time frame includes 116 persons, with 82 identified as black (70.69%), 33 identified as

19-60662.1111

white (28.45%), and 1 identified as other (0.86%). [581].

88.    The AOC's data shows the number of persons convicted of forgery in the 1994-2017 time frame includes 934 persons, with 529 identified as black (56.64%), 379 identified as white (40.58%), and 26 identified as other (2.78%). [581].

89.    The AOC's data shows the number of persons convicted of embezzlement in the 1994-2017 time frame includes 4696 persons, with 2367 identified as black (50.4%), 2228 identified as white (47.44%), and 101 identified as other (2.15%). [581].

90.    The AOC's data shows the number of persons convicted of bigamy in the 1994-2017 time frame includes 17 persons, with 8 identified as black (47%), 9 identified as white (53%), and 0 identified as other (0%). [581].

91.    The AOC's data shows the number of persons convicted of arson in the 1994-2017 time frame includes 1112 persons, with 544 identified as black (48.92%), 536 identified as white (48.2%), and 32 identified as other (2.88%). [581-82].

92.    The AOC's data shows the number of persons convicted of shoplifting under Code Section 97-23-93, which may include both disenfranchising felony and non-disenfranchising misdemeanor convictions, in the 1994-2017 time frame includes 4233 persons, with 3185 identified as black (75.24%), 951 identified as white (22.47%), and 97 identified as other (2.29%). [582].

93.    The AOC's data shows the number of persons convicted of burglary in the 1994-2017 time frame includes 24,385 persons, with 14,098 identified as black (57.81%), 9567 identified as white (39.23%), and 720 identified as other (2.95%). [585].

94.    The AOC's data shows the number of persons convicted of non-disenfranchising crimes in the 1994-2017 time frame includes 153,056 persons, with 87,003 identified as black (56.84%), 60,816 identified as white (39.73%), and 5237 identified as other (3.42%). [584].

95.    Under current Mississippi Code Section 97-19-71, originally enacted by the Legislature at its 1986 Regular Session, allows persons convicted of certain misdemeanor and felony crimes to apply to the court that entered the conviction for an expungement order. In pertinent part, the present day Code Section provides:

***

(2)(a).  Any person who has been convicted of one (1) of the following felonies may petition the court in which the conviction was had for an order to expunge one (1) conviction from all public records five (5) years after the successful completion of all terms and conditions of the sentence for the conviction: a bad check offense under Section 97-19-55; possession of a controlled substance or

19-60662.1112

paraphernalia under Section 41-29-139() or (d); false pretense under 97-19-39; larceny under 97-17-41; malicious mischief under Section 97-17-67; or shoplifting under 97-23-93.

(b).  Any person who was under the age of twenty-one (21) years when he committed a felony may petition the court in which the conviction was had for an order to expunge one (1) conviction from all public records five (5) years after the successful completion of all terms and conditions of the sentence for the conviction; however, eligibility shall not apply to a felony classified as a crime of violence under 97-3-2 and any felony that, in the determination of the circuit court, is related to the distribution of a controlled substance and in the court's discretion it should not be expunged.  A person is eligible for only one (1) felony expunction under this paragraph.

*** 

(3) . . . The effect of the expunction order shall be to restore the person, in the contemplation of the law, to the status he occupied before any arrest or indictment for which convicted.  No person as to whom an expunction order has been entered shall be held thereafter under any provision of law to be guilty of perjury or to have otherwise given a false statement by reason of his failure to recite or acknowledge such arrest, indictment or conviction in response to any inquiry made of him for any purpose other than the purpose of determining, in any subsequent proceedings under this section, whether the person is a first offender. . .[22]

---

[22]  Miss. Code Ann. § 97-19-71 (Rev. 2015).  A 2015 amendment increased the age limit contained in (2)(b) from eighteen to twenty-one.  *See* Miss. Laws, 2015, ch. 448.  A 2013 amendment added (2)(b).  By its incorporation of Section 97-3-2, the following crimes state officials presently consider disenfranchising are excluded from eligibility for expunction under (2)(b): murder (97-3-19); rape (97-3-65, 97-3-71); carjacking (97-3-117); statutory rape (97-3-65(1)); robbery and armed robbery (97-3-73, 97-3-79).  *See* Miss. Code Ann. § 97-3-2.

19-60662.1113

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing record excerpts has been filed electronically with the Clerk of Court using the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action.

THIS the 18th day of October, 2019.

*s/Krissy C. Nobile*
Krissy C. Nobile