No. 19-60662

# United States Court of Appeals
## for the
## Fifth Circuit

◆—◗❙◖—◆

DENNIS HOPKINS, individually and on behalf of a class of all others similarly situated; HERMAN PARKER, JR., individually and on behalf of a class of all others similarly situated; WALTER WAYNE KUHN, JR., individually and on behalf of a class of all others similarly situated; BYRON DEMOND COLEMAN, individually and on behalf of a class of all others similarly situated; JON O'NEAL, individually and on behalf of a class of all others similarly situated; EARNEST WILLHITE, individually and on behalf of a class of all others similarly situated,

*Plaintiffs-Appellees,*

– v. –

SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity,

*Defendant-Appellant.*

*(For Continuation of Caption See Reverse Side of Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, NORTHERN DIVISION
DISTRICT COURT CASE NO. 3:18-CV-188-DPJ-FKB

## REPLY BRIEF FOR PLAINTIFFS-APPELLEES CROSS-APPELLANTS

PALOMA WU
SOUTHERN POVERTY LAW CENTER
111 East Capitol Street, Suite 280
Jackson, Mississippi 39201
(601) 948-8882
paloma.wu@splcenter.org

LISA GRAYBILL
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 486-8982
lisa.graybill@splcenter.org

NANCY G. ABUDU
CAREN E. SHORT
SOUTHERN POVERTY LAW CENTER
P.O. Box 1287
Decatur, Georgia 30031
(404) 521-6700
nancy.abudu@splcenter.org
caren.short@splcenter.org

JONATHAN K. YOUNGWOOD
JANET A. GOCHMAN
ISAAC M. RETHY
NIHARA K. CHOUDHRI
TYLER ANGER
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
tyler.anger@stblaw.com

*Attorneys for Plaintiffs-Appellees Cross-Appellants*

---

**Consolidated with 19-60678**

DENNIS HOPKINS, individually and on behalf of a class of all others similarly situated;
HERMAN PARKER, JR., individually and on behalf of a class of all others similarly
situated; WALTER WAYNE KUHN, JR., individually and on behalf of a class of all
others similarly situated; JON O'NEAL, individually and on behalf of a class of all
others similarly situated; EARNEST WILLHITE, individually and on behalf of a class
of all others similarly situated; BYRON DEMOND COLEMAN, individually
and on behalf of a class of all others similarly situated,

*Plaintiffs-Appellees Cross-Appellants,*

— v. —

SECRETARY OF STATE DELBERT HOSEMANN, in his official capacity,

*Defendant-Appellant Cross-Appellee.*

---

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ............................................................ 1

ARGUMENT

I.   Constitutional Limitations Apply to Felony Disenfranchisement
     and Reenfranchisement Laws ......................................................... 1

II.  The District Court Erred in Holding that Section 241 Is a
     Constitutionally Permissible Form of Punishment ........................... 2

     A.  The Mississippi Legislature Enacted Section 241 "as a
         Punishment" ............................................................................ 4

     B.  Section 241 Is So Punitive that It Can Only Be Considered
         Punishment ............................................................................. 6

         1.  Section 241 Hinges on a Criminal Conviction ................. 6

         2.  Mississippi and Other States Have Historically Imposed
             Disenfranchisement as a Punishment ............................... 8

         3.  Section 241 Imposes a Severe "Disability or Restraint" ..... 9

         4.  There Is No Evidence that Section 241 Is Connected to a
             Rational, Nonpunitive Purpose ..................................... 10

         5.  Decisions Addressing Temporary Disenfranchisement Are
             Inapposite ................................................................... 11

         6.  Dicta in *Trop v. Dulles* Does Not Resolve the Question of
             Whether Section 241 Is Punishment ................................ 12

     C.  Section 241's Imposition of Post-Sentence Disenfranchisement
         Is Inherently Disproportionate .................................................. 14

     D.  There Is a National Consensus Against the Punishment of
         Lifetime Disenfranchisement .................................................... 14

i

III.  Section 241 Violates the Equal Protection Clause Because It Exceeds Section 2's Limited Exemption and Cannot Satisfy Strict Scrutiny Review ............................................................................. 16

IV.  Section 253 Violates the Equal Protection Clause Because It Is Standardless and Inherently Incapable of Equal Enforcement ..................... 19

     A.  Section 253 Violates the Equal Protection Clause Because It Is Inherently Arbitrary .............................................................. 20

     B.  *Browning-Ferris Industries of Alabama v. Pegues* Illustrates Section 253's Constitutional Infirmities ................................ 22

V.  Section 253 Violates the First Amendment Because It Vests Legislators with Unfettered Discretion To Pass or Reject Suffrage Bills ................................................................................................. 23

VI.  The District Court Erred in Denying Plaintiffs' Motion for Summary Judgment on the Race-Based Equal Protection Challenge to Section 253 .............................................................. 25

VII. This Court Is Fully Empowered to Grant the Requested Relief ................... 27

CONCLUSION ................................................................................... 29

CERTIFICATE OF SERVICE ........................................................... 31

CERTIFICATE OF COMPLIANCE .................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alexander v. Cockrell*,
  294 F.3d 626 (5th Cir. 2002)................................................................. 28

*Atkins v. Virginia*,
  536 U.S. 304 (2002) ........................................................................ 16

*Atlanta Journal Constitution v. City of Atlanta Dep't of Aviation*,
  322 F.3d 1298 (11th Cir. 2003)........................................................... 28

*Austin v. United States*,
  509 U.S. 602 (1993) ........................................................................ 9

*Barnhart v. Thomas*,
  540 U.S. 20 (2003) ........................................................................ 18

*Browning-Ferris Industries of Alabama, Inc. v. Pegues*,
  710 F. Supp. 313 (M.D. Ala. 1987) ................................................ 22, 23

*City of Lakewood v. Plain Dealer Publ'g. Co.*,
  486 U.S. 750 (1988) .................................................................... 24, 25

*Costanzo v. Tillinghast*,
  287 U.S. 341 (1932) ........................................................................18

*Davis v. Beason*,
  133 U.S. 333 (1890) ........................................................................ 13

*Davis v. Schnell*,
  81 F. Supp. 872 (S.D. Ala. 1949), *aff'd*, 336 U.S. 933 (1949) ...................... 20, 21

*Doe v. Rausch*,
  382 F. Supp. 3d 783 (E.D. Tenn. 2019) ............................................. 10

*El-Amin v. McDonnell*,
  2013 WL 1193357 (E.D. Va. Mar. 22, 2013) ................................... 11, 15

*Fernandes v. Limmer*,
663 F.2d 619 (5th Cir. 1981)..............................................................24

*Fincher v. Scott*,
352 F. Supp. 117 (M.D.N.C. 1972).......................................................3

*Graham v. Florida*,
560 U.S. 48 (2010) ........................................................................3, 15

*Green v. Board of Elections of New York*,
380 F.2d 445 (2d Cir. 1967) ...............................................................3

*Hand v. Scott*,
888 F.3d 1206 (11th Cir. 2018).........................................................25

*Harvey v. Brewer*,
605 F.3d 1067 (9th Cir. 2010).............................................................2

*Hayden v. Pataki*,
449 F.3d 305 (2d Cir. 2006)................................................................2

*Hayden v. Paterson*,
594 F.3d 150 (2d Cir. 2010).........................................................26, 27

*Hoffman v. Vill. of Pleasant Prairie*,
249 F. Supp. 3d 951 (E.D. Wis. 2017).................................................10

*Hunter v. Underwood*,
471 U.S. 222 (1985) ...........................................................................2

*Huntington v. Attrill*,
146 U.S. 657 (1892) ...........................................................................8

*Johnson v. Gov'r of Fla.*,
405 F.3d 1214 (11th Cir. 2005)...........................................................8

*Johnson v. Sayre*,
158 U.S. 109 (1895) .........................................................................19

*K.P. v. LeBlanc*,
627 F.3d 115 (5th Cir. 2010).............................................................23

*Kansas v. Hendricks*,
  521 U.S. 346 (1997) ........................................................................ 7, 10

*Kennedy v. Louisiana*,
  554 U.S. 407 (2008) .......................................................................... 3, 16

*Kennedy v. Mendoza-Martinez*,
  372 U.S. 144 (1963) ............................................................................ 5, 7

*King v. City of Boston*,
  2004 WL 1070573 (D. Mass. May 13, 2004) ................................ 11-12

*Kronlund v. Honstein*,
  327 F. Supp. 71 (N.D. Ga. 1971) ........................................................ 12

*Lockhart v. United States*,
  136 S. Ct. 958 (2016) .......................................................................... 18

*McLaughlin v. City of Canton*,
  947 F. Supp. 954 (S.D. Miss. 1995) .................................................. 6, 9

*Mendoza-Martinez*,
  372 U.S. at 168 ................................................................................... 6, 7

*Montgomery v. La.*,
  136 S. Ct. 718 (2016) .......................................................................... 28

*Obergefell v. Hodges*,
  135 S. Ct. 2584 (2015) ........................................................................ 23

*Ratliff v. Beale*,
  20 So. 865 (Miss. 1896) ...................................................................... 26

*Richardson v. Ramirez*,
  418 U.S. 24 (1974) ...................................................................... 1, 2, 4

*Romer v. Evans*,
  517 U.S. 620 (1996) ............................................................................ 13

*Roper v. Simmons*,
  543 U.S. 551 (2005) ............................................................................ 16

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) ........................................................................... 26

*Shepherd v. Trevino*,
    575 F.2d 1110 (5th Cir. 1978)............................................. 2, 10, 19, 20

*Simmons v. Galvin*,
    575 F.3d 24 (1st Cir. 2009) .................................................................... 11

*Smith v. Doe*,
    538 U.S. 84 (2003) ............................................................... 5, 6, 7, 9, 10

*Sobranes Recovery Pool I, LLC v. Todd & Hughes Construction Corporation*,
    509 F.3d 216 (5th Cir. 2007)................................................................. 17

*Solem v. Helm*,
    463 U.S. 277 (1983) ................................................................................. 3

*Thompson v. Alabama*,
    293 F. Supp. 3d 1313 (M.D. Ala. 2017) .............................................. 13

*Thornell v. Performance Imp., LLC*,
    2016 WL 4120775 (N.D. Ala. Aug. 30, 2016) .................................... 18

*Trop v. Dulles*,
    356 U.S. 86 (1958) .................................................................. 5, 12, 13, 14

*United States v. Atkins*,
    323 F.2d 733 (5th Cir. 1963)......................................................... 22, 28

*United States v. Bajakajian*,
    524 U.S. 321 (1998) ............................................................................... 13

*United States v. Carubia*,
    377 F. Supp. 1099 (E.D.N.Y. 1974).................................................... 18

*United States v. Salerno*,
    481 U.S. 739 (1987) ............................................................................... 11

*United States v. State of La.*,
    225 F. Supp. 353 *aff'd*, 380 U.S. 145 (1965) ............................... 21, 23

*Williams v. Rhodes*,
  393 U.S. 23 (1968) ................................................................. 1

*Williams v. Taylor*,
  677 F.2d 510 (5th Cir. 1982) ............................................... 21

**U.S. Constitution**

  Amend. I .................................................................... 24, 25

  Amend. V ....................................................................... 18

  Amend. VIII ................................................................ 14, 27

  Amend. XIV, § 1 ......................................................... *passim*

  Amend. XIV, § 2 ......................................................... *passim*

**State Constitutions**

  Miss. Const. art. III, §§ 1-2, art. V, § 10 (1868) ................. 25

  Miss. Const. art. XII (1890) ................................................ 26

  Iowa Const. art. 2, §5 ...................................................... 15

  Ky. Const. § 145(1) .......................................................... 15

**Statutes**

Miss. Code Ann. § 97-39-3 .................................................... 8

Miss. Rev. Code art. 16, § 2 (1857) ........................................ 8

**Other**

Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION
  OF LEGAL TEXTS 152 (2012) ........................................... 17-18

## PRELIMINARY STATEMENT

Defendant does not respond to many of the arguments Plaintiffs raise on appeal, and mischaracterizes others. Defendant's remaining contentions fail on the merits.

## ARGUMENT

## I.    Constitutional Limitations Apply to Felony Disenfranchisement and Reenfranchisement Laws

Defendant's overriding argument, one that led to the district court's primary error, is that Section 2 of the Fourteenth Amendment ("Section 2") empowers Mississippi, and any other state, with virtually unlimited authority to enact felony disenfranchisement and reenfranchisement laws, free of constitutional scrutiny.[1] In doing so, Defendant ignores the Supreme Court's decision in *Williams v. Rhodes*, which holds that state legislative powers granted in the Constitution "are always subject to" the limitations of "other specific provisions of the Constitution." 393 U.S. 23, 29 (1968).

Indeed, *Richardson v. Ramirez* itself confirms that constitutional limitations apply to felony disenfranchisement laws. The *Richardson* Court remanded for

---

[1] "Def.-Br." refers to Defendant's principal brief. "Def.-Resp.-Br." refers to Defendant's response and reply brief. "Pl.-Br." refers to Plaintiffs' principal brief. "Section 241" refers to the lifetime disenfranchisement provision of the Mississippi Constitution. Unless otherwise noted, internal quotation marks, alterations and citations are omitted throughout.

further consideration of the plaintiffs' claim that California election officials enforced the state's felony disenfranchisement law with "such a total lack of uniformity … as to work a separate denial of equal protection." 418 U.S. 24, 56 (1974) (Rehnquist, J.). A decade later, the Supreme Court held that Alabama was not "authorized by … § 2" to enact a criminal disenfranchisement law with racially discriminatory intent. *Hunter v. Underwood*, 471 U.S. 222, 233 (1985) (Rehnquist, J.).

This Court and other courts have also held that felony disenfranchisement and reenfranchisement laws are subject to constitutional limitations. *See Shepherd v. Trevino*, 575 F.2d 1110, 1114-15 (5th Cir. 1978) (rejecting "the proposition that [S]ection 2 removes all equal protection considerations from state-created classifications denying the right to vote to some felons while granting it to others"); *see also Harvey v. Brewer*, 605 F.3d 1067, 1079 (9th Cir. 2010) (recognizing that a reenfranchisement law "can run afoul of the Equal Protection Clause"); *Hayden v. Pataki*, 449 F.3d 305, 316 n.11 (2d Cir. 2006) (Section 2 "does not completely insulate felon disenfranchisement provisions from constitutional scrutiny.")

## II. The District Court Erred in Holding that Section 241 Is a Constitutionally Permissible Form of Punishment

Defendant argues that felony disenfranchisement laws can never violate the Eighth Amendment's prohibition on cruel and unusual punishment. Def.-Resp.-Br.

at 41-42. But "[n]o penalty is per se constitutional." *Solem v. Helm*, 463 U.S. 277,

290 (1983). Defendant also contends that "evolving standards" have no relevance

to whether lifetime disenfranchisement violates the Eighth Amendment. Def.-

Resp.-Br. at 42. Defendant's argument disregards the "established proposition that

the Eighth Amendment is defined by the evolving standards of decency that mark

the progress of a maturing society." *Kennedy v. Louisiana*, 554 U.S. 407, 446

(2008).

Defendant contends that the sea change in other states' felony

disenfranchisement laws cannot render lifetime disenfranchisement

"constitutionally suspect." Def.-Resp.-Br. at 42. However, when determining

whether a form of punishment violates the Eighth Amendment, "[t]he analysis

begins with objective indicia of national consensus" as evidenced by "the

legislation enacted by the country's legislatures." *Graham v. Florida*, 560 U.S. 48,

62 (2010). Legislation is "the clearest and most reliable objective evidence of

contemporary values." *Id.* Defendant relies on *Green v. Board of Elections of New*

*York*, 380 F.2d 445 (2d Cir. 1967), and *Fincher v. Scott*, 352 F. Supp. 117

(M.D.N.C. 1972), two decades-old decisions in which courts found no national

consensus against lifetime disenfranchisement. But state legislatures have since

near-uniformly rejected this form of punishment.

A.    **The Mississippi Legislature Enacted Section 241 "as a Punishment"**

Defendant contends that the "Act to admit the State of Mississippi to Representation in the Congress of the United States" (the "Readmission Act"), ROA.19-60662.2402-2403, means that Mississippi "can disenfranchise" individuals convicted of felonies. Def.-Resp.-Br. at 45. Defendant acknowledges that the Readmission Act provides that Mississippi's constitution "should not be 'so amended or changed' as to deprive citizens 'of the right to vote who are entitled to vote … except as a punishment for such crimes as are now felonies at common law.'" *Id.* (quoting the Readmission Act). Yet Defendant nonetheless argues that the Readmission Act does not demonstrate that Section 241 was enacted "as a punishment." *Id.* at 44-45.

Defendant contends that the acts readmitting southern states to the union cannot be read to "preclude[] for some states … what Section 2 expressly sanctions for other states." Def.-Resp.-Br. at 45. To the contrary, the readmission acts codified the fact that states enacted felony disenfranchisement provisions "as a punishment," and clarified that the southern states could continue to do so following their readmission to the union. *See, e.g.*, *Richardson*, 418 U.S. at 52-53 (finding readmission acts "convincing evidence of the historical understanding" of criminal disenfranchisement when Section 2 was enacted).

Defendant asks this Court to disregard history and conclude that Section 241

is nonpunitive based solely on its inclusion in a provision setting forth other voter eligibility requirements and the enactment of related statutory provisions outside of the criminal code. But "[t]he location and labels of a statutory provision do not by themselves" resolve the question of legislative intent. *Smith v. Doe*, 538 U.S. 84, 94 (2003). In *Trop v. Dulles*, for example, the Supreme Court held that a law divesting wartime deserters of citizenship was punitive, even though the law's sponsors advised Congress that it was "not a penal law." 356 U.S. 86, 94-95 (1958). The Court stated that whether laws are punitive cannot be resolved simply "by inspection of the labels pasted on them." *Id.* at 94.

Significantly, Defendant does not identify anything in the legislative history of Section 241 evidencing a nonpunitive purpose. The Supreme Court confronted a similar situation in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). There, the Court found "no reference" in the legislative history "to the societal good that would be wrought by" a law denaturalizing draft evaders. *Id.* at 181-82. The Court determined that "[t]he obvious inference to be drawn from … the lack of any mention of any broader purpose is that Congress was concerned solely with inflicting effective retribution upon this class of draft evaders." *Id.* at 182. As in *Mendoza-Martinez*, the absence of any evidence of a nonpunitive purpose confirms that the Mississippi Legislature enacted Section 241 as a punishment.

**B.    Section 241 Is So Punitive that It Can Only Be Considered Punishment**

Section 241 would be subject to the Eighth Amendment's limitations even if there were no evidence of legislative intent because it is so punitive that it can only be considered punishment. *See McLaughlin v. City of Canton*, 947 F. Supp. 954, 971 (S.D. Miss. 1995) (finding that Section 241 has "draconian consequences").

Defendant erroneously claims that Plaintiffs must provide "the clearest proof" that Section 241 constitutes "punishment." Def.-Resp.-Br. at 44. But this requirement applies only where there is evidence that the legislature's "intention was to enact a regulatory scheme that is civil and nonpunitive." *Smith*, 538 U.S. at 92. In *Smith*, the Court imposed the "clearest proof" requirement where "the Alaska Legislature expressed the objective of the [Alaska Sex Offender Registration Act] in the statutory text itself," by stating that "protecting the public from sex offenders" was the "'primary governmental interest' of the law." *Id.* at 93. Here, however, there is no evidence that the Mississippi Legislature intended to establish a civil and nonpunitive regulatory scheme. In any event, although the "clearest proof" requirement does not apply, Plaintiffs nonetheless would satisfy this burden if it did. *See* Pl.-Br. at 35-40.

**1.    Section 241 Hinges on a Criminal Conviction**

*Mendoza-Martinez* instructs that when determining whether a law "is penal or regulatory in character," courts should consider "whether the behavior to which

it applies is already a crime" and "whether it comes into play only on a finding of scienter." 372 U.S. at 168-69. Defendant relies on *Smith* to argue that these two factors "receive 'little weight'" in the analysis. Def.-Resp.-Br. at 47 (quoting *Smith*, 538 U.S. at 105). But in *Smith*, the Court found only that these factors were "of little weight" *in the case before it* because the "statutory concern" of the Alaska Sex Offender Registration Act is "recidivism," and thus "past conduct, which was, and is, a crime … is a necessary beginning point." 538 U.S. at 105. *Smith* does not hold that these two *Mendoza-Martinez* factors are of "little weight" in *all* cases.

Whether a sanction hinges on a criminal conviction—as Section 241 does—is plainly relevant to whether that sanction is punitive in character. In *Kansas v. Hendricks*, a case cited by Defendant, the Supreme Court found it significant that a civil commitment statute did "not make a criminal conviction a prerequisite for commitment." 521 U.S. 346, 362 (1997). The Court reasoned that "[a]n absence of the necessary criminal responsibility suggests that the State is not seeking retribution for a past misdeed." *Id.* The exact opposite is true with respect to Section 241, which applies exclusively in the event of a criminal conviction. Section 241 is not merely "tied to criminal activity," as Defendant suggests. Def.-Resp.-Br. at 47. Rather, a criminal conviction is the *only* criterion for Section 241's application, because Section 241 is an additional punishment.

7

### 2.    Mississippi and Other States Have Historically Imposed Disenfranchisement as a Punishment

Defendant claims that felony disenfranchisement has "[h]istorically and traditionally" been a "nonpunitive restriction." Def.-Resp.-Br. at 47. But even prior to 1890, Mississippi imposed disenfranchisement as punishment for the conviction of a crime. For example, MISS. REV. CODE art. 16, § 2 (1857) provided: "[N]o person shall vote at any election, who shall have been convicted of bribery, perjury, forgery or any other crime or misdemeanor *for which the loss of the right of suffrage shall or may be imposed as a part of the penalty* by any law of this State …." ROA.19-60662.1090-1091; ROA.19-60662.1243-1244. The term "penalty" "denote[s] punishment" that is "imposed and enforced by the state for a crime or offense against its laws." *Huntington v. Attrill*, 146 U.S. 657, 667 (1892). Mississippi's criminal code continues to impose disenfranchisement as one of the "[a]dditional penalties" for the historic crime of dueling. MISS. CODE ANN. § 97-39-3.

Defendant argues that Section 241 "treats felons the same way as those who are not competent, not of age, and not U.S. citizens." Def.-Resp.-Br. at 46. But "[f]elon disenfranchisement laws are unlike other voting qualifications." *Johnson v. Gov'r of Fla.*, 405 F.3d 1214, 1228 (11th Cir. 2005). "[T]hroughout history, criminal disenfranchisement provisions have existed as a punitive device." *Id.* at 1218 n.5.

### 3.    Section 241 Imposes a Severe "Disability or Restraint"

Defendant contends that Section 241 does not impose an "affirmative disability" because it involves "no physical restraint." Def.-Resp.-Br. at 48. But the key inquiry is "how the effects of the [law] are felt by those subject to it." *Smith*, 538 U.S. at 99-100. Defendant offered no evidence to counter the experiences of the named Plaintiffs, who testified that the lifetime loss of voting rights has been devastating. For example, Byron Coleman, an African-American man who completed his sentence for receiving stolen property more than twenty years ago, testified: "I have never gotten used to it. I have never been able to shake the feeling that I do not matter anymore." ROA.19-60662.1911. Walter Wayne Kuhn, Jr., who completed his sentence for grand larceny twenty-seven years ago, questions whether he "should leave Mississippi" so that he "can vote and be a full citizen again." ROA.19-60662.1907-1908.

Defendant also suggests that the *McLaughlin* court's characterization of Section 241 as a "civil sanction" precludes application of the Eighth Amendment. But "[t]he notion of punishment" for Eighth Amendment purposes "cuts across the division between the civil and the criminal law." *Austin v. United States*, 509 U.S. 602, 609-10 (1993) (explaining that the "question is not … whether [a sanction] is civil or criminal, but rather whether it is punishment").

**4.    There Is No Evidence that Section 241 Is Connected to a Rational, Nonpunitive Purpose**

Defendant argues that "felon disenfranchisement is based on the philosophy of republican government and theory of social compact." Def.-Resp.-Br. at 50. But there is no evidence in the record that Section 241 is rationally connected to this abstract nonpunitive purpose. *Cf. Doe v. Rausch*, 382 F. Supp. 3d 783, 798 (E.D. Tenn. 2019) (finding a law punitive as applied where the record was "bereft of any factual support" that it "accomplish[ed]" the asserted regulatory goals); *Hoffman v. Vill. of Pleasant Prairie*, 249 F. Supp. 3d 951, 960 (E.D. Wis. 2017) (a "lack of evidence" that a law was connected to its asserted regulatory purpose "eliminate[d] the possibility that [it] was rational."). While Defendant relies on *Shepherd* to assert that a state has "an interest" in disenfranchising individuals who have "violate[d] those laws sufficiently important to be classed as felonies," Defendant does not explain how Mississippi's imposition of lifetime disenfranchisement for some felonies but not others is *rationally* related to this asserted interest. Def.-Resp.-Br. at 50 (quoting *Shepherd*, 575 F.2d at 1115).

Moreover, the decisions Defendant cites demonstrate that the asserted nonpunitive purpose must protect the public in some manner. *See, e.g.*, *Smith*, 538 U.S. at 102-03 (Alaska's Sex Offender Registration Act "has a legitimate nonpunitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community"); *Hendricks,* 521 U.S. at 371 (finding

10

nonpunitive a civil commitment statute requiring a determination that the person

"is likely to pose a future danger to the public"); *United States v. Salerno*, 481 U.S.

739, 747 (1987) (pretrial detention of individuals charged with serious crimes

advanced the "legitimate regulatory goal" of "preventing danger to the

community"). Defendant does not explain how Section 241 benefits Mississippi's

electorate. In fact, Section 241 inflicts lasting harm on Mississippi's families and

communities—and the fabric of the state's democracy—by permanently depriving

tens of thousands of American citizens of the right to vote. ROA.19-60662.1767.

### 5.    Decisions Addressing Temporary Disenfranchisement Are Inapposite

Defendant cites to several decisions addressing *temporary*

disenfranchisement laws, or disenfranchisement schemes that provide an accessible

pathway for the restoration of voting rights. *See Simmons v. Galvin*, 575 F.3d 24,

44 (1st Cir. 2009) (finding nonpunitive a Massachusetts disenfranchisement law

that "creates a temporary qualification on the right to vote coincident with

imprisonment, rather than a long-term consequence for the commission of a

crime"); *El-Amin v. McDonnell*, No. 3:12-cv-00538-JAG, 2013 WL 1193357, at

*6-7 (E.D. Va. Mar. 22, 2013) (recognizing that Virginia "has not imposed

burdensome conditions on reinstatement" of voting rights, and observing that the

process requires satisfaction of "basic and eminently reasonable criteria for

eligibility" and "a straightforward petition for reinstatement"); *King v. City of*

11

*Boston*, No. Civ. A.04-10156-RWZ, 2004 WL 1070573, at *1 (D. Mass. May 13, 2004) ("incarcerated felons are disqualified during the period of their imprisonment when elections officials may have difficulty identifying their address and ensuring the accuracy of the ballot"); *Kronlund v. Honstein*, 327 F. Supp. 71, 72-73 (N.D. Ga. 1971) ("The process which an applicant must go through [to regain the right to vote] is relatively simple, and the granting of restoration seemingly commonplace."). Such laws bear no resemblance to Section 241, which imposes lifetime disenfranchisement with no meaningful option for the restoration of voting rights.

### 6.    Dicta in *Trop v. Dulles* Does Not Resolve the Question of Whether Section 241 Is Punishment

Defendant argues that in *Trop v. Dulles*, "the plurality opinion used felon disenfranchisement as an example of a restriction that is *not* punitive." Def.-Resp.-Br. at 43. But even the hypothetical in *Trop* recognizes that a felony disenfranchisement law enacted for punitive purposes constitutes punishment:

> A person who commits a bank robbery … loses his right to liberty and often his right to vote. If, in the exercise of the power to protect banks, both sanctions were imposed for the purpose of punishing bank robbers, the statute authorizing both disabilities would be penal.

356 U.S. at 96-97. Because Section 241 was enacted "for the purpose of punishing" individuals convicted of disenfranchising crimes, Section 241 is "penal" even under *Trop*'s hypothetical. This comports with the established

principle that whether a sanction is punitive or regulatory turns on the legislative

purpose of the specific law at issue—and not on the legislative purpose of other

laws imposing a similar sanction. *See, e.g.*, *United States v. Bajakajian*, 524 U.S.

321, 328, 331-32 (1998) (holding that a currency forfeiture law "constitutes

punishment" because it was "designed to punish the offender," even though

"[t]raditional *in rem* forfeitures were … not considered punishment"); *Thompson v.

Alabama*, 293 F. Supp. 3d 1313, 1329 (M.D. Ala. 2017) (denying motion to

dismiss Eighth Amendment challenge to Alabama's disenfranchisement law,

reasoning that the law "requires its own analysis" of punitive purpose).

　　　The *Trop* hypothetical presumes that the "purpose" of the imagined criminal

disenfranchisement law "is to designate a reasonable ground of eligibility for

voting," and consequently notes that such a law "is sustained as a nonpenal

exercise of the power to regulate the franchise." 356 U.S. at 96-97. But this aspect

of *Trop* is based on *Davis v. Beason*, which upheld a statute disenfranchising

Mormons and polygamists because they "approve[d] the commission of crimes

forbidden by" the state. 133 U.S. 333, 347 (1890). The Supreme Court has since

seriously questioned *Davis* "[t]o the extent it held that the groups designated in the

statute may be deprived of the right to vote because of their status." *Romer v.

Evans*, 517 U.S. 620, 634 (1996).

13

**C.     Section 241's Imposition of Post-Sentence Disenfranchisement Is Inherently Disproportionate**

Plaintiffs demonstrated that Section 241's imposition of lifetime disenfranchisement violates the Eighth Amendment both because it is analogous to the punishment of the loss of citizenship rights deemed unconstitutional in *Trop*, and because it is a punishment that exceeds the term of the sentence imposed. Pl.-Br. at 27-29. Defendant does not respond to these arguments, but contends only that Section 241 is not "grossly disproportionate" as to each and every one of the felonies it reaches. Def.-Resp.-Br. at 52. Defendant suggests that lifetime disenfranchisement may be proportional for individuals convicted of crimes "such as murder and rape," for which they may "serve life sentences." *Id.*

The analytical flaw in Defendant's argument is that Plaintiffs do not challenge the duration of court-ordered sentences; in fact, Plaintiffs' claim does not challenge the assumption that the term of a court-ordered sentence is proportional to the crime. If this Court rules in Plaintiffs' favor on their Eighth Amendment claim, individuals serving life sentences for extremely serious or violent offenses would remain ineligible to vote as long as the life sentence is in place.

**D.     There Is a National Consensus Against the Punishment of Lifetime Disenfranchisement**

Defendant disingenuously claims that "[t]here is no 'national consensus'" against the punishment of lifetime disenfranchisement. Def.-Resp.-Br. at 54. But as

noted in *El-Amin*, a case cited by Defendant, "[i]n the vast majority of states, once a felon completes his or her imprisonment and any period of parole and/or probation, that person's voting rights automatically return." 2013 WL 1193357, at *6. Forty states and the District of Columbia do not impose lifetime disenfranchisement for any offenses other than certain election- and government-related offenses.[2] ROA.19-60662.1938-1941. Seven states impose lifetime disenfranchisement for certain categories of disenfranchising offenses; these states restore voting rights after sentence completion for many or most categories of disenfranchising offenses. ROA.19-60662.1943-1945; ROA.19-60662.4710-4714. Only two states other than Mississippi impose lifetime disenfranchisement for convictions of all disenfranchising felonies. IOWA CONST. art. 2, §5; KY. CONST. § 145(1).

Defendant attempts to obfuscate this clear national consensus against lifetime disenfranchisement by highlighting differences in when states restore voting rights. For example, Defendant distinguishes between states that disenfranchise "only until prison term is complete" and states that disenfranchise "during incarceration and during parole." Def.-Resp.-Br. at 53. But the only

---

[2] These rarely-used exceptions do not defeat a finding of national consensus. *See, e.g.*, *Graham*, 560 U.S. at 64-65 (finding a national consensus against a punishment where eleven states imposed it, but "most of those [did] so quite rarely").

distinction that matters for purposes of Plaintiffs' Eighth Amendment claim is whether states restore voting rights after sentence completion.[3] On that issue, there is a clear (even overwhelming) national consensus.[4] *See Roper v. Simmons*, 543 U.S. 551, 564 (2005) (national consensus where 30 states rejected the punishment at issue); *Atkins v. Virginia*, 536 U.S. 304, 314-16 (2002) (same).

## III.  Section 241 Violates the Equal Protection Clause Because It Exceeds Section 2's Limited Exemption and Cannot Satisfy Strict Scrutiny Review

Defendant does not contend that Section 241 would satisfy strict scrutiny review under the Equal Protection Clause if it exceeds the scope of Section 2's limited exemption. Nor does Defendant argue that the *Richardson* Court was ever presented with, or actually considered, Plaintiffs' proposed construction of Section 2. Defendant also cites no authority for the principle that a Supreme Court decision precludes consideration of a question it never squarely addressed.

Defendant does not dispute that the word "abridge" refers to a *temporary* limitation on voting rights. Defendant also offers no explanation for Section 2's separation of the words "denied" and "abridged" with intervening language. The

---

[3] Defendant also presents maps of state laws governing the restoration of (1) voting rights for individuals who are still incarcerated; and (2) "full rights," beyond just voting rights. Neither of these maps is relevant to the question at issue.

[4] A "national consensus" does not require complete uniformity of opinion. *See Kennedy*, 554 U.S. at 426 (finding a national consensus against a punishment where there was "divided opinion but, on balance, an opinion against it").

reason for this syntax is clear: Section 2 establishes an exemption that applies only when the right to vote is "in any way abridged" but not when the right to vote is "denied."

Defendant's main argument against Plaintiffs' proposed construction is that the comma before "except for participation in rebellion, or other crime" indicates that it "modifies all preceding phrases."[5] Def.-Resp.-Br. at 35. But as demonstrated by this Court's decision in *Sobranes Recovery Pool I, LLC v. Todd & Hughes Construction Corporation*, 509 F.3d 216 (5th Cir. 2007), which Defendant cites, this principle applies only "[w]hen there is a *serial list* followed by modifying language that is set off from the last item in the list by a comma." *Id.* at 223 (emphasis added). For example, the comma before the phrase "without due process of law" in the Fifth Amendment indicates that it modifies each of the parallel nouns—"life, liberty or property"—in the serial list that it follows. *Id.* at 223 n.19.

The phrase "except for participation in rebellion, or other crime" in Section 2 does not follow a serial list. Where, as in Section 2, "the syntax involves something other than a parallel series of nouns or verbs," a "postpositive modifier normally applies only to the nearest reasonable referent." Antonin Scalia & Bryan

---

[5] Defendant also responds to arguments raised in the proposed amicus briefs, each of which was timely filed under this Court's rules and, apparently, in sufficient time for Defendant to incorporate substantive responses into its filing.

A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 152 (2012). This

is true irrespective of whether there is a comma before the postpositive modifier.

*See, e.g.*, *Thornell v. Performance Imp., LLC*, No. 2:16-cv-00397-JHE, 2016 WL

4120775, at *2 (N.D. Ala. Aug. 30, 2016) (citing the nearest reasonable referent

canon to hold that a modifier preceded by a comma applied only to the

immediately preceding phrase); *United States v. Carubia*, 377 F. Supp. 1099,

1104-05 (E.D.N.Y. 1974) (applying a modifying phrase preceded by a comma only

to the phrase immediately before it where the statutory provision involved a

combination of nouns and modifiers).[6]

　　The Supreme Court's reading of the first clause of the Fifth Amendment is

illustrative. It provides: "No person shall be held to answer for a capital, or

otherwise infamous crime, unless on a presentment or indictment of a Grand Jury,

except in cases arising in the land or naval forces, or in the Militia, when in actual

service in time of War or public danger[.]" U.S. CONST. amend. V. Like Section 2,

this clause of the Fifth Amendment does not consist of a serial list of parallel nouns

or verbs. Just as the phrase "except for participation in rebellion, or other crime" is

---

[6] Defendant suggests that the absence of a comma was dispositive in *Lockhart v. United States*, 136 S. Ct. 958 (2016), and *Barnhart v. Thomas*, 540 U.S. 20 (2003). But neither decision even mentions the lack of a comma. Indeed, the Supreme Court has cautioned that "punctuation is not decisive of the construction of a statute." *Costanzo v. Tillinghast*, 287 U.S. 341, 344 (1932).

preceded by a comma in Section 2, the phrase "when in actual service in time of War or public danger" is preceded by a comma in the Fifth Amendment. In *Johnson v. Sayre*, the Supreme Court held that the phrase "when in actual service in time of War or public danger" applies only to the phrase "or in the Militia"— which is its nearest reasonable referent—and not to the previous phrase, "except in cases arising in the land or naval forces." 158 U.S. 109, 114-15 (1895). Similarly, the phrase "except for participation in rebellion, or other crime" applies only to the phrase "or in any way abridged"—its nearest reasonable referent.

## IV.   Section 253 Violates the Equal Protection Clause Because It Is Standardless and Inherently Incapable of Equal Enforcement

Defendant concedes that Section 253 "is not the same as a gubernatorial pardon or executive clemency." ROA.19-60662.2092; *see also* ROA.19-60662.2111 ("Section 253 is different from executive pardons and clemency in that it involves the machinery of state legislative processes[.]"). Yet Defendant continues to insist that Section 253—a reenfranchisement *law*—should be treated no differently than "discretionary [executive] clemency decisions." Def.-Resp.-Br. at 15. But unlike pardons, reenfranchisement laws must satisfy rational basis review under the Equal Protection Clause, as required by this Court's decision in *Shepherd*.[7]

---

[7] Plaintiffs do not contend "that reenfranchisement authority may only be vested in the executive," as Defendant claims. Def.-Resp.-Br. at 16. Nor will this case have

19

*Shepherd* holds that "laws" providing for the "selective disenfranchisement or reenfranchisement of convicted felons must pass the standard level of scrutiny applied to state laws violating the equal protection clause." 575 F.2d at 1114-15. Contrary to Defendant's assertion, *Shepherd* does not hold that "[e]qual protection constrains reenfranchisement authority" only "when a reenfranchisement system on its face draws a classification," or when it is discriminatorily applied. Def.-Resp.-Br. at 14, 16-17 (emphasis omitted). Nor is there any support in *Shepherd* for Defendant's contention that "the case-by-case nature of Mississippi's reenfranchisement regime . . . is an equal-protection-honoring feature, not an equal-protection-violating problem." Def.-Resp.-Br. at 17.

## A.    Section 253 Violates the Equal Protection Clause Because It Is Inherently Arbitrary

Like the standardless constitutional interpretation test struck down in *Davis v. Schnell*, 81 F. Supp. 872 (S.D. Ala. 1949), *aff'd*, 336 U.S. 933 (1949), Section 253 violates the Equal Protection Clause because it lacks any standards for its application. Defendant concedes that *Davis* is "generally instructive," but claims that *Davis* is distinguishable because the court's ruling turned on the discriminatory application of Alabama's constitutional interpretation test. Def.-

---

nationwide implications for the voting rights of individuals who are still incarcerated, as Defendant suggests, *id.* at 21-22, because this case only concerns post-sentence disenfranchisement.

Resp.-Br. at 20-21. In fact, the *Davis* court "concentrated its discussion on the

inherent potential for discriminatory and arbitrary administration" because of the

test's absence of standards. *United States v. State of La.*, 225 F. Supp. 353, 388

(discussing *Davis*). The *Davis* court held that the "arbitrary power" vested in the

registrars as a result of the law's lack of standards violated the Equal Protection

Clause, while the law's purpose and "manner of its administration" violated the

Fifteenth Amendment. *Davis*, 81 F. Supp. at 878, 880. *See also United States v.

State of La.*, 225 F. Supp. at 391-92 (holding that Louisiana's constitutional

interpretation test violated the Equal Protection Clause because it was standardless,

and separately violated the Fifteenth Amendment because of its "vote-abridging

purpose and effect"), *aff'd*, 380 U.S. 145 (1965).

Defendant acknowledges that "Section 253 creates a risk of disparate

treatment" because of the law's absence of standards. Def.-Resp.-Br. at 18. But

Defendant argues that under *Williams v. Taylor*, 677 F.2d 510 (5th Cir. 1982),

Plaintiffs must provide evidence of Section 253's discriminatory application in

order to prevail. Def.-Resp.-Br. at 15, 18-19. *Williams* is inapposite because it

concerned an as-applied "claim of selective disenfranchisement" challenging a law

with specific standards, rather than a facial challenge to a standardless law.

*Williams*, 677 F.2d at 512.

Defendant also suggests that this Court should presume that Mississippi

legislators will act in good faith. Def.-Resp.-Br. at 15. But a standardless law violates the Equal Protection Clause even when government officials are acting fairly. *See, e.g.*, *United States v. Atkins*, 323 F.2d 733, 737, 740 (5th Cir. 1963) (enjoining use of standardless voter registration questionnaire while affirming district court's finding that present board was "trying in good faith" to apply the law fairly).

### B.   *Browning-Ferris Industries of Alabama v. Pegues* Illustrates Section 253's Constitutional Infirmities

In *Browning-Ferris Industries of Alabama, Inc. v. Pegues*, the court held unconstitutional a similarly standardless legislative approval process for the establishment of hazardous-waste treatment facilities and disposal sites, and reasoned:

> The constitutional vice … is the complete absence of standards … [T]he statute does not provide the faintest clue as to what an applicant should do or refrain from doing in order to secure legislative approval. If one applicant for a license is preferred over another as the result of a political favor or for no logical reason at all, the disappointed applicant is without redress … because the discretion of the Legislature is standardless and boundless.

710 F. Supp. 313, 315 (M.D. Ala. 1987). The court could just as easily have been describing Section 253, which suffers from the same constitutional infirmities.

Defendant seeks to distinguish *Browning-Ferris* because the plaintiffs

asserted a due process claim, rather than an equal protection claim.[8] But where plaintiffs challenge standardless laws, the analysis under the Due Process and Equal Protection Clauses overlaps substantially. *See, e.g.*, *United States v. State of La.*, 225 F. Supp. at 391 (holding that a standardless constitutional interpretation test "violates both the due process and the equal protection clauses of the Fourteenth Amendment"). *See also generally Obergefell v. Hodges*, 135 S. Ct. 2584, 2602-03 (2015) (explaining that the two clauses "are connected in a profound way" and "in some instances each may be instructive as to the meaning and reach of the other").

## V.    Section 253 Violates the First Amendment Because It Vests Legislators with Unfettered Discretion To Pass or Reject Suffrage Bills

Defendant argues that disenfranchised individuals have no "constitutionally protected 'right to vote' under … the First Amendment." Def.-Resp.-Br. at 25. But

---

[8] Defendant incorrectly asserts that the *Browning-Ferris* court rejected an equal protection challenge to the standardless legislative approval process. Def.-Resp.-Br. at 20. The plaintiffs did not challenge the process itself on equal protection grounds, but rather, the exemption from the legislative approval process for "industries which conduct on site treatment, storage, and disposal of their own hazardous wastes." *Browning-Ferris*, 710 F. Supp. at 316-17. Defendant's response and reply brief includes several other factual errors. For example, Defendant suggests that the board in *K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010), had discretion to determine "whether or not an abortion doctor gets coverage from a med-mal fund for a claim." Def.-Resp.-Br. at 31. But the board in *K.P.* had no such discretion, "as the statute clearly prohibits use of the [f]und for abortion claims" and "[t]he [b]oard ha[d] to apply statutes as written." *K.P.*, 627 F.3d at 121.

Plaintiffs do not contend that disenfranchised individuals are entitled to vote

pursuant to the First Amendment. Plaintiffs claim only that Section 253's

reenfranchisement requirement violates the First Amendment because legislators

have unfettered discretion to determine which individuals may exercise the right to

vote, and which individuals must remain silenced.[9] *See City of Lakewood v. Plain

Dealer Publ'g. Co.*, 486 U.S. 750, 763 (1988) (recognizing that the "danger" of

"content and viewpoint censorship … is at its zenith when the determination of

who may speak and who may not is left to the unbridled discretion of a

government official").

Defendant alternatively contends that the unfettered discretion doctrine

applies only to "freedoms which the Constitution guarantees." Def.-Resp.-Br. at 27

(emphasis omitted). But the unfettered discretion doctrine applies even if "a

properly drawn law could have greatly restricted or prohibited the manner of

expression … at issue." *City of Lakewood*, 486 U.S. at 766. The Supreme Court

has explained that "whether an expressive activity may be banned entirely" and

"whether it may be licensed in an official's unbridled discretion" involve entirely

---

[9] Defendant does not and could not argue that disenfranchised individuals have lost all rights under the First Amendment. *See generally Fernandes v. Limmer*, 663 F.2d 619, 630 (5th Cir. 1981) ("Persons with prior criminal records are not First Amendment outcasts."). Nor does Defendant dispute that voting implicates protected speech.

"different concerns" under the First Amendment. *Id.* at 764.

Defendant relies on *Hand v. Scott*, 888 F.3d 1206 (11th Cir. 2018), to suggest that Section 253 would violate the First Amendment only if it was designed to discriminate based on *political* viewpoint. Def.-Resp.-Br. at 26. But in *Hand*, the Eleventh Circuit pointed to political-affiliation-based viewpoint discrimination as a non-exclusive example of when "a discretionary felon-reenfranchisement scheme … designed to discriminate based on viewpoint … might violate the First Amendment." 888 F.3d at 1211-12.

## VI. The District Court Erred in Denying Plaintiffs' Motion for Summary Judgment on the Race-Based Equal Protection Challenge to Section 253

Defendant misstates Plaintiffs' position on Section 253 as asserting that "Section 253 is unconstitutional solely because it was enacted in 1890." Def.-Resp.-Br. at 12. This is not Plaintiffs' argument: Defendant ignores the substantial unrebutted evidence that Section 253 was adopted in 1890 for the specific purpose of "ensur[ing] that whites caught up in the criminal justice system had a possible remedy and could redeem their franchise." ROA.19-60662.1817.

Defendant claims that Section 253 is no different than other provisions of the Mississippi Constitution—such as the "separation of powers doctrine and the executive's pardon power"—that "read the same today as they did in 1890." Def.-Resp.-Br. at 12. But both the separation of powers and pardon provisions were included in the 1868 Mississippi Constitution. MISS. CONST. art. III, §§ 1-2, art. V,

§ 10 (1868). Section 253, on the other hand, was a new voting-related device enacted for the first time in 1890. ROA.19-60662.3475-3476. It was codified in the same article of the 1890 Constitution as the poll tax, the literacy test, the lengthy durational residency requirement, and the carefully crafted criminal disenfranchisement provision. MISS. CONST. art. XII (1890). There is extensive evidence in the record that "[e]very significant franchise-related section of the 1890 Constitution was designed and worded to disenfranchise African-Americans without specifically referring to race." ROA.19-60662.1793-1794; ROA.19-60662.1806-1810; ROA.19-60662.1947-1958; *see also Ratliff v. Beale,* 20 So. 865, 867-68 (Miss. 1896). Given this context, Section 253 can only be explained as a mechanism originally intended for the selective reenfranchisement of white Mississippians. *See, e.g.*, *Rucho v. Common Cause*, 139 S. Ct. 2484, 2496 (2019) ("Laws that are . . . race neutral on their face but are unexplainable on grounds other than race, are of course presumptively invalid.").

Defendant alternatively argues that this Court must consider the intent of the present-day Mississippi legislators—and not solely the intent of the 1890 Mississippi Legislature, as Plaintiffs contend—because of the "exercise of their authority to pass suffrage bills" pursuant to Section 253. Def.-Resp.-Br. at 13. Defendant relies *Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010), in support of this contention. There, the Second Circuit granted defendants' motion to dismiss a

26

race-based equal protection challenge to an 1894 provision of the New York

constitution that authorized the enactment of felony disenfranchisement laws,

where there were no allegations that (i) the 1894 provision was motivated by racial

animus, or (ii) New York's felony disenfranchisement laws were enacted with

discriminatory intent or "passed because of the 1894 constitutional provision's

mandate." *Id.* at 168-69.

Here, however, Plaintiffs provided overwhelming evidence that Section 253

was motivated by racial animus. Moreover, every suffrage bill is "passed because

of" Section 253; they are not bills that replace or amend Section 253. In fact, prior

to 1890, the Mississippi Legislature had no authority to restore voting rights to

individuals convicted of disenfranchising offenses. *See* Def.-Br. at 4 ("The 1890

Constitution . . . adopted a legislative method for convicted felons to re-gain the

ballot."); ROA.19-60662.3476. Section 253 remains the *only* source of legislative

authority to restore voting rights.

## VII.  This Court Is Fully Empowered to Grant the Requested Relief

In the event this Court rules in Plaintiffs' favor on any of their claims, it has

the power to grant any necessary relief. If this Court determines that Section 241 is

unconstitutional in violation of the Eighth Amendment or the Equal Protection

Clause, then Section 241 would be unenforceable to the extent it applies to

individuals who have completed the terms of their sentences. *See, e.g.*,

*Montgomery v. La.,* 136 S. Ct. 718, 730–31 (2016) (holding that a penalty imposed

pursuant to an unconstitutional law "is not merely erroneous, but is illegal and

void"); *Alexander v. Cockrell*, 294 F.3d 626, 630 (5th Cir. 2002) ("An

unconstitutional statute is void *ab initio*, having no effect, as though it had never

been passed."). It would then be unnecessary for this Court to reach the merits of

Plaintiffs' challenges to Section 253.

Alternatively, if this Court determines that Section 253 is unconstitutional in

violation of the Equal Protection Clause or the First Amendment, this Court may

require the adoption of objective standards. This Court's decision in *Atkins* is

instructive. There, the Court directed the district court to enjoin the use of a voter

registration questionnaire "unless the Registrars present to the court and propose to

use a definite set of standards for the grading of questionnaires, which said

standards shall meet with the approval of the court as complying with state and

federal law." 323 F.2d at 745. The Court also ordered the district court to require

registrars to "keep records of the exact reasons for the rejection of any applicant

and to reveal these reasons to any applicant who inquires as to specific reasons for

his rejection." *Id.*; *see also, e.g.*, *Atlanta Journal Constitution v. City of Atlanta

Dep't of Aviation*, 322 F.3d 1298, 1312 (11th Cir. 2003) (instructing the district

court to provide defendants with "an opportunity to formulate ascertainable non-

discriminatory standards for the exercise of discretion" in First Amendment

challenge).

## CONCLUSION

For the foregoing reasons, the district court's decision should be reversed with respect to the issues Plaintiffs raise on cross-appeal.

Dated: November 18, 2019

By:   /s/  Jonathan K. Youngwood

SOUTHERN POVERTY LAW CENTER
Paloma Wu
111 East Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Paloma.Wu@splcenter.org

Lisa Graybill
1055 St. Charles Avenue
New Orleans, LA 70130
Tel: (504) 486-8982
Lisa.Graybill@splcenter.org

Nancy G. Abudu
Caren E. Short
P.O. Box 1287
Decatur, GA 30031
Tel: (404) 521-6700
Nancy.Abudu@splcenter.org
Caren.Short@splcenter.org

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood
Janet A. Gochman
Isaac M. Rethy
Nihara K. Choudhri
Tyler Anger
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
nchoudhri@stblaw.com
irethy@stblaw.com
tyler.anger@stblaw.com

*Attorneys for Plaintiffs-Appellees Cross-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 18, 2019, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit and served on counsel for Defendant-Appellant Cross-Appellee using the appellate CM/ECF system.

Dated:    November 18, 2019

s/ Jonathan K. Youngwood
Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Phone: (212) 455-3539
Fax: (212) 455-2502
jyoungwood@stblaw.com

# CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(C) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, it contains 6,489 words.

Undersigned counsel certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Fifth Circuit Rule 32.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman.

Dated:        November 18, 2019

s/ Jonathan K. Youngwood
Jonathan K. Youngwood
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-3539
jyoungwood@stblaw.com