Mr. Lawrence Crawford
#300839
Lee Correctional Institution
990 Wisacky Highway
Bishopville, SC 29010

---

" Exhibit "
5th circuit obstruction

2

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

January 16, 2020

#300839
Mr. Lawrence Crawford
Lee Correctional Institution
990 Wisacky Highway
Bishopville, SC 29010

No. 19-60662 Consolidated with 19-60678 Dennis Hopkins, et
al v. Delbert Hosemann
USDC No. 3:18-CV-188

Dear Mr. Crawford,

We have received your motion dated December 31, 2019 and
supporting documents in this case.

We are unable to determine what relief you are seeking. This court
can only grant relief through a proper motion in a pending case.

Sincerely,

LYLE W. CAYCE, Clerk

*Mary Stewart*

By: _____
Mary C. Stewart, Deputy Clerk
504-310-7694

Enclosure(s)

cc:
        Ms. Nancy Abudu
        Ms. Janet A. Gochman
        Ms. Lisa S. Graybill
        Mr. Justin Lee Matheny
        Ms. Krissy C. Nobile
        Mr. Louis Peter Petrich
        Mr. Carroll E. Rhodes
        Mr. Joseph Patrick Sakai
        Ms. Caren E. Short
        Mr. Joshua Tom
        Mr. Andrew T. Tutt

19-10011

Mr. Lawrence Crawford
#300839
Lieber Correctional Institute
Wando A-127
P.O. Box 205
Ridgeville, SC 29472

Exhibit

" Intervention denial "

=

File in cases 19-60662
And 19-60668

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

December 19, 2019

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 19-10011   State of Texas, et al v. USA, et al
                USDC No. 4:18-CV-167

Enclosed is an order entered in this case.

                             Sincerely,

                             LYLE W. CAYCE, Clerk

                             *Roeshawn Johnson*

                           By: _____
                           Roeshawn Johnson, Deputy Clerk
                           504-310-7998

Ms. Munera Al-Fuhaid
Mr. Ryan Wolfe Allison
Ms. Ginger Anders
Mr. Peter J. Anthony
Mr. A. Xavier Baker
Mr. Benjamin Battles
Mr. Matthew Joseph Berns
Mr. Jack R. Bierig
Mr. Nathanael Blake
Mr. Kenneth Lee Blalack II
Ms. Kathleen Boergers
Mr. Wade Carr
Mr. Z.W. Julius Chen
Mr. Lawrence Crawford
Mr. Stuart F. Delery
Ms. Bridget DiBattista
Mr. Nicholas M. DiCarlo
Ms. Margaret Dotzel
Mr. John Allen Eidsmoe
Mr. Nimrod Elias
Mr. August E. Flentje
Mr. Benjamin Michael Flowers
Mr. Brian Rene Frazelle
Mr. Matthew Hamilton Frederick
Ms. Elaine Goldenberg
Ms. Brianne Gorod
Ms. Maame Gyamfi
Mr. David J. Hacker
Ms. Caitlin Joan Halligan
Mrs. Fadwa A. Hammoud

—————————————

Appeals from the United States District Court
for the Northern District of Texas

—————————————

O R D E R:


IT IS ORDERED that Lawrence Crawford's motion for leave to file motion
to intervene out of time is DENIED.


IT IS FURTHER ORDERED that Lawrence Crawford's motion for leave
to file motion to intervene in excess pages is DENIED.



LYLE W. CAYCE, CLERK
United States Court of Appeals
for the Fifth Circuit
/s/ Lyle W. Cayce

ENTERED AT THE DIRECTION OF THE COURT

"Legal issues of Religious"
Prophesy Exhibit # 1

2

(1) Did the trial court err, and was the appellant's
5th., 6th., 13th., 14th. 15th. amendment rights of the U.S.
Constitution, as well as Article IV § 2, and his Due Process
rights violated, regarding the indictment(s) as contructed,
by the language or charge contained therein, which did create
and or form conclusive presumption(s), that took away the appel-
lant's presumption of innocence, and automatically shift the
burden of persuasion to the defendant, in regard to the crucial
elements of dispute?

---

The appellant humbly contends, it is well established
by the U.S. Constitution, the 5th., 6th., 14th. amendment(s),
and The Bill Of Rights, that when an individual is brought before
a court of jurisprudence upon accusation, that the individual
alleged thereupon, is innocent, until proven by a jury of his
peers, guilty of aforesaid accusation being brought before the
court. This is the defendant's most basic, and most fundamental
right by Federal and State laws pertaining to Due Process. Be-
cause the indictment(s) possess a structural constitutional
error and or defect, in that the language and or charge contained
therein, in contructed to produce conclusive presumption(s),
that immediately shift the burden of persuasion to the defendant
in regards to the crucial elements of the offense(s), the indict-
ment(s) and or complaint documents violate Due Process as well
as the 13th. and 15th. amendments.

The appellant did not object to this defect and or error
at the time he gave his guilty plea, and or before he went to
trial, but the defect and or error serve to render the indictment
wholly invalid. Defects in an indictment that are of such a
fundamental character as to render an indictment wholly invalid
are not subject to waiver by the defendant, 41 Am. Jurs.2d.
Indictments And Information § 299(1986); State v. Munn, 357
S.E.2d. 461(S.C.1987).

Judicial notice takes place of proof. It simply means
that the court will admit into evidence and consider, without
proof of facts, matters of common and general knowledge, Moss

1 of 115

v. Aetna Life Ins. Co., 228 S.E.2d. 108; State v. Broad River Power Co., 177 S.C. 240, 180 S.E. 41; 31 C.J.S. Evidence §§ 6 and 9; Federal Rules Of Evidence, Rule 201(a).

This is also a manifest constitutional error. An error on the part of the trial court that has an identifiably negative impact on the proceedings to such a degree, that the constitutional rights of the party are compromised. A manifest constitutional error can be reviewed by a court of appeals even if the appellant did not object at the proceedings(Black Law Dictionary 8th. Edition).

By what is cited in Sandstrom v. Montana, 442 U.S. 510 at 520, 99 S.Ct. (2450) at 2457 (61 L.Ed.2d. 39)(1979), under (4) criminal law [west key] 324. The Supreme Court was unequivocal and unambiguous when it stated [v]erbatim:

"Conclusive presumptions conflict with the overriding presumption of innocence which the law endows the accused and which extends to every element of the crime charged, and they invade the fact-finding function which in a criminal case the law assigns the jury, Morisette supra, at 275, 72 S.Ct. at 255 and United States Gypsum Co. supra., at 446, 98 S.Ct. at 2878. The indictment and complaint documents around the nation, with the exception of the few states that corrected this problem, require the jury, if satisfied as to the facts that trigger the presumption to find intent unless the defendant offers evidence to the contrary. The indictments and complaints around the nation, by their structural constitutional error and or defect, language and or charge, mislead the jury, and we can add the defendant, to believe the presumption was not limited to requiring the defendant to satisfy the burden of production, when the burden of production is to be consistently bored by the state. A presumption although not conclusive, that has the effect of shifting the burden of persuasion would suffer the same similar infirmities", Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d. 508(1975), even if its embodied within the charge of an indictment or criminal complaint.

2 of 115

To state by use of an indictment or criminal complaint within the (50) states that an individual **"did"** with intent, knowingly, malice, aforethought, and other such elements imply conclusive firsthand knowledge of the events pertaining to the accusation being brought before the court. To such knowledge the Grand Jury who swore to such indictments, "[c]annot" by all scientific reason and jurisprudence ascertain as being true under such circumstances, especially without a trial. It is universally recognized that every oath [o]ught and [m]ust be founded upon "[c]ertain [k]nowledge", meaning knowledge that is certain beyond a reasonable doubt as being true (OMNE SACREMENTUM DEBET ESSE DE CERTA SCIENTIA). Inasmuch, the reality of this matter is that the issues in question, embodied in said indictments are allegations, they are accusations, not proven facts. So how could they be sworn by indictment as being true? Several other states have corrected this injustice. The State of South Carolina is one of the remaining states who have not. It is the command of the U.S. Constitution that anything, to include any and all legislation, whether it be by statute, indictment or otherwise, that is contrary to its inherent, intrinsic and explicit presuppositions "[s]hall [n]ot [s]tand", and therefore should be abolished and or rendered [v]oid (Article IV § 2 U.S. Const.).

**"THE STATE MUST PROVE"**, I repeat, **"THE STATE MUST PROVE"**, not the defendant, every single element that is charged, and that is crucial to the offense. It is not to be given to them in any way. They "[m]ust" first prove it before it can ever be declared. Every single time an indictment is sworn where it states clearly without ambiguity a defendant **"did"**, etc., it immediately with destructive results tear down the commonwealth's constitutional Due Process right of being innocent until proven guilty, and automatically shift the burden of persuasion to the individual or commonwealth charged. It gives the false unconstitutional premise and or presumption that such has already been proven by a jury of one's peers, or even more specific, without a trial by a jury of one's peers in violation of Due Process Law. To have such unconstitutional presumption(s)

3 of 115

embodied within indictments and or criminal complaints that
rely on such language is constitutionally infirm.

The appellant avers, in <u>Mullaney</u> v. <u>Wilbur,</u> 421 U.S.
684, 95 S.Ct. 1881, 44 L.Ed.2d. 508, the court found as a viola-
tion of Due Process and <u>Winship,</u> 397 U.S. 358, 90 S.Ct. 1068,
25 L.Ed.2d. 323(1970), an indictment that [p]resumed that a
defendant acted with "[m]alice and [a]forethought", if it were
found that the homicide was intentional and unlawful, the defen-
dant then bore the burden of disproving the elements. Similar
in <u>Sandstrom</u>, the jury was instructed in determining whether
or not the defendant had the [p]rerequisite intent to commit
murder [t]he law presumes that the person intended the ordinary
consequences of his voluntary actions, thereby relieving the
state of its burden on that element. The language and or charge
in the indictment(s) do the same thing, taking away the presump-
tion of innocence, and by what is written predetermine in advance
the outcome of the proceedings and presumes that a person intends
the ordinary consequences of his voluntary actions, thereby
relieving the state of its burden on the elements crucial to
the offense. What if the person was forced to commit the crime
at gunpoint? Or was the victim of brainwashing by the induction
of some chemically based mind controlling drug, and under such
control he committed the crime? Or it simply was an accident
depending upon the crime charged? These are just a few reasons
why such wording is impermissable, <u>Moore</u> v. <u>Dempsey,</u> 43 S.Ct.
265, 67 L.Ed. 542(1923).

Once the courts of South Carolina, New Jersey and the
remaining (48) states constructed an indictment or criminal
complaint contrary to the laws of Due Process, the Attorney
for the appellant telling the appellant that he is innocent
until proven guilty, or the Judge giving a curative instruction
to the appellant and or jury of the defendant being innocent
until proven guilty, or stating that the state or federal govern-
ment has the ultimate burden and must prove every element, being
given to the appellant and or jury, or stating the indictment
or criminal complaint is not evidence to the appellant or jury,

4 of 115

does "[n]ot" cure the Due Process problem created and presented by the structural constitutional error, defect and or charge in the indictment(s) and Complaint(s).

Constitutional Law [west key] 266(7), in situation where elements of offense and "so-called" "affirmative defense", pose same ultimate issue of shifting the burden of persuasion, the Due Process problem is "[n]ot" eliminated by including an instruction in a charge that the state has the ultimate burden of proving every element beyond a reasonable doubt, and we can add to this, stating the indictments or criminal complaints are not evidence by the courts. The teaching of these cases is that "[a]ny" presumption, even if its not conclusive, even if its embodied within the charge of an indictment or criminal complaint, that has the effect of shifting the burden of persuasion to the defendant on any element of the crime charged violates Due Process, (U.S.C.A. Const. Amend. 14) Humanik v. Beyers, 811 F2d. 432(3rd.Cir.1989).

Such is a substantive disadvantage and not merely procedural disadvantage to the defendant related to his rights of Due Process. If the indictments and or criminal complaints around the nation, by their defect contained therein, require that the defendant prove he did not possess the "MENS REA" on any element pertaining to the alleged crime at trial and or before a guilty plea, 421 U.S. at 684, 95 S.Ct. at 1888, it becomes obvious that the burden of proof is shifted.

The Court recognized by requiring the defendant to prove the critical elements of said dispute, ID at 710, 95 S.Ct. at 1890, the Maine Rule, as do the nation's indictments and criminal complaints, affirmatively shift the burden of proof to the defendant(s), thus creating a further likelihood of an erroneous conviction and or guilty plea, due to the shifting of the burden of persuasion to prove one's innocence, as implied by the language and or charge in the indictment(s) and criminal complaint(s), ID at 421 U.S. at 701, 95 S.Ct. at 1890. Such serve

to negate certain facts of the crime which the government is
to prove to the jury in order to convict the defendant of a
crime charged, 432 U.S. at 207, 97 S.Ct. at 2325. The Winship
Rule is clear in which the defendant creates a reasonable doubt
on any element of the offense(s) charged is entitled to an ac-
quittal.

In such a situation the relevance of the subsidiary facts
in this case are the same and the sole significance of the defen-
dant's evidence and or testimony concerning the "so-called"
"affirmative defense", is to create a reasonable doubt on the
existence of an element of the offense, by the preponderance
of evidence to counteract an unconstitutional presumption.

As stated in United States v. Clemens, 843 F2d. 741,
752(3rd.Cir.1988):

"Justly put, merely labeling something as "affirmative
defense", "a statutory procedure", and we can add to this, "an
indictment or criminal complaint", does not mean that such con-
structed contrary to the laws of Due Process are constitutional.
It must appear that the aforementioned, as related thereto,
do [n]ot [n]egate any element of the crime, and we can add to
this, shift the burden of persuasion, as the indictments and
or criminal complaints of this nation do", ID W. Lafave & Scott
Substantive Criminal Law § 1.8 at 75(1986). see generally Sand-
strom v. Montana supra.. A defendant may be required to bear
the burden of persuasion with respect to defenses such as showing
justification or excuse, but not with respect to those that
negate guilt by canceling out the existence of some required
element of the crime, nor should his presumption of innocence
be deprived, W. Lafave & Scott supra. at 71, 75. Accordingly,
accessing the constitutionality of an "affirmative defense",
"a statutory procedure", and we can add to this, "an indictment
or criminal complaint", etc., of any kind related thereto, even
by terms of that which the statute requires, is defined in terms
of fact so central to the nature of the offense that in effect,
the prosecution has been freed of the burden of establishing

each constituent element of the crime charged. If the indictments and criminal complaints around the nation already predetermine in advance of any proceeding that you **"did"** with malice, afore-thought, intentionally, willfully, etc., the state has been relieved of proving it, see ID at 2.13 at 233. Also see <u>Moore v. Dempsey</u>, 43 S.Ct. 265, 67 L.Ed. 542(1923). By the structural constitutional error and or defect, its already given and no longer by the charge and or defect, have to be established. <u>In order to contribute some significant burden, a rational trial juror's only option, and we can add, the defendant's only option, is to conclude that the indictments or criminal complaints are true, or are to be considered as true, because the language and or charge reflects such in depriving one of the presumption of innocence. It is clear from Martin v. Ohio, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d. 267(1987) and Moore v. Dempsey, 43 S.Ct. 265, 67 L.Ed. 542(1923), that this is constitutionally impermissible.</u>

Perhaps the 50 states of this nation would contend, that such is merely the conveying of information from witnesses 1, 2, 3 or more possibly, and upon this testimony such an oath is based. Even if one would adopt this premise still the indict-ments and criminal complaints of this nation "[c]annot" be deemed as that which is founded upon "[c]ertain [k]nowledge" (OMNE SACRAMENTUM DEBET ESSE DE CERTA SCIENTIA), but it is founded upon the basis of hearsay and or secondhand knowledge. Notwith-standing, it has been recorded throughout history since the earliest stages of civilization that people do bear false witness in groups and in numbers depending upon their motivation. For example, you have an unjust King and Queen, Ahab and Jezebel, coercing several people to lie in a covert plot to steal the land of a righteous man in I Kings chapter 21. In the Book of Micah, a man's closest members of his household bear false wit-ness against a Prophet Of God. In Christianity you have officials who were in power, Saducees, Scribes and Pharisees, incite and pay groups of people in the Gospel(s) Of Matthew, Mark, Luke and John to bear false witness against the Messiah. In Islamic Prophesy the Prophet Muhammad(PBUH), in Sahih Al Bakhari Vol.

7 of 115

9 Hadith No. 7086, prophesied how in these times there will hardly be a trustworthy person left in the world. The Spanish Inquisition of 1478 and The English Inquisition of 1518 found people unjustly burned at the stake and or hanged, due to unjust accusations by people in numbers for false claims of heresy. Adolph Hitler, and a group of people called "Nazis", brought numerous unjust claims against the Jews, falsely rooted in lies, in the holocaust of the 1930's. The Salem Witch Trials in the 17th. century, in Massachussett, found numerous men, women and children, burnt at the stake for false claims of practicing witchcraft, brought by groups of people in numbers ("The witch bitches as they were called). The Ku Klux Klan, throughout the South, brought unjust accusation against the innocent Post Civil War Era, and in the 1930's through 1960's. Judaism, Christianity, Islam, American History, European History, World History, "[a]ll" are filled with unspeakable atrocities originating in lies, perpetrated by people in numbers and in groups against the inno-cent. Our constitutional forefathers in their wisdom and juris-prudence saw this repeated pattern that like a poisonous, veno-mous snake, rose its head from the soils of society to fatally bite the commonwealth. and in their wisdom they set up "[b]ul-warks", "[b]arriers" of protection for the American citizenry, all who are held by us, all who enter our borders or territories, that under no circumstance, outside of an individual committing an act of treason, were to be torn down, because people in groups and in numbers do bring false accusation against the innocent.

Referring back to the third situation here as illustrated by State v. Breakiron, 108 N.J. 591, 532 A.2d. 199(1987) and State v. Zola, 112 N.J. 384, 548 A.2d. 1022(1988), in inferring the state of mind element, whether the prerequisite intent and or purpose was present at the time of the crime. The Grand Jury, in the form of the indictments and or criminal complaints around the nation, "[c]annot" say what was in a person's mind, nor do they have first hand knowledge of the facts related to the incident charged. They do not have "[c]ertain [k]nowledge" (OMNE SACRAMENTUM DEBET ESSE DE CERTA SCIENCTIA). Thus, again the

very language and or structural constitutional error and or defect, and or charge of the indictment(s) and criminal complaints around the nation predetermine in advance before trial or plea an individual is guilty of the state of mind element(s) and forces a defendant, due to the shifting of the burden of persuasion, to prove his innocence by the preponderance of evidence and or testimony in violation of Due Process Law. This creates an instant double jeopardy issue showing that this is not a harmless error, Moore v. Dempsey supra.; State v. Gordon, 588 S.E.2d. 105, 356 S.C. 143(S.C.2003); State v. Perry, 595 S.E.2d. 883, 358 S.C. 633(S.C.2004).

In regard to a charge, and we can add to this, a charge in an indictment or criminal complaint, that constitutes a constitutionally impermissable charge/instruction, or contradicts the presumption of being innocent until proven guilty, even with a later instruction "BOILERPLATE" of being innocent until proven guilty by the courts or stating that the indictments or criminal complaints are not evidence by the courts, the [p]roblem is [n]ot [c]ured where there exist a reasonable likelihood that the jurors, and we can add in this case, that the defendant, may have considered the charge, and we can add to this, the charge in the indictments or criminal complaints around the nation as conveying an unconstitutional message in both state and federal prosecutions, Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d. 344(1983).

Such presumptions intrinsically and explicitly established snatch the blind fold off of "LADY JUSTICE" herself, and now, not only is she no longer impartial, unbias or fair; but now she says because its you, because its this particular crime or alleged action as opposed to another, because you are charged in this particular state as opposed to another, because you fall under this particular statute as opposed to another, you are no longer innocent until proven guilty and your constitutional rights are hereby revoked. Such presumptions destroy

the very metal of the shield of protection placed around the
American citizenry, those who are held by us, and those who
enter our borders or territories, and abolishes the very core
integrity of the Due Process Clause our constitutional fore-
fathers have died and shed their best blood to establish and
preserve. The greater aspect of evil related to such action
by the criminal complaints and or indictments around the entire
nation, far and extremely outweigh the greater aspect of good
that it sought to establish related thereto. If we as responsible
citizens of the commonwealth allow individuals who are placed
in positions of legislative authority, whether it be at town,
city, state or federal level, whether it be intentional or unin-
tentional, to initiate or place into effect legislation by sta-
tute or any other means, that deteriorate the very pillars of
that which our Constitution was founded upon, then we no longer
establish ourselves as a true democracy, where the good of the
many outweigh the good of the few. We step more into the realm
of monarchy, and set ourselves on a path of Constitutional de-
struction detrimental to the commonwealth that can only lead
to anarchy creating the similarities that manifested themselves
in the aforementioned Nazi Occupation, Salem Witch Trials, The
Spanish Inquisition and the like. Where trials and criminal
proceedings became an arbitrary action, an abusive and recreant
process, fraudulently designed to rob the commonwealth of their
God given liberty. This we cannot do!!! It is our courts, our
Supreme Courts, and our Federal District Courts' inherent respon-
sibility as guardians of the faith and integrity of our system
of jurisprudence to protect the commonwealth from such a dark
demise. The Presuppositions set forth by our constitutional
forefathers "E PLURIBUS UNUM", were one nation, under God, indi-
visible, with liberty and justice **"FOR ALL"**, **"FOR ALL"**, and
was not to be taken away simply because an individual fell victim
to accusation, or fell under a particular statute of law as
compared to another, or was charged in one particular state
as opposed to another. The only exception to this sacred standard
and trust was to be if an individual committed acts of High
Treason against our government itself, which in some particula-
rity is what the indictments and criminal complaint documents

10 of 115

around the entire nation reflect, because they innately swear
allegiance to that which sets itself at war, enmity and variance
to the constitutional rights of all citizens of the commonwealth
and all others who are subject to them. Therefore, they are
a form of treason. The indictments and criminal complaints around
the entire nation betray our Constitution. Hencetofore they
"[m]ust" be abolished and or reformed. They are intense espionage
and diabolical sabotage and stands at war with the rights of
this nation's commonwealth in violation of Due Process. They
covertly with corrosive results steal away stealthly the funda-
mental truths by which the Constitution was founded upon and
throw a monkey wrench into the mechanical works of justice and
fairness by detonating explosive results that detrimentally
tear down the bulwarks that were forthrightly established to
protect the commonwealth against unjust prosecution. By the
defect, language and or charge contained within the indictments
and criminal complaint documents around the entire nation you
have already surmised and ascertained without the total weight
of evidence set forth before a jury an individual's guilt in
violation of state and federal laws also pertaining to the U.S.
Constitution, inferring the state of mind element(s), negating
the burden of proof that by law was to be consistently bored
by the prosecution, <u>Francis v. Franklin supra.</u>; <u>Moore v. Dempsey</u>
<u>supra.</u>

   <u>THE COURT HOLDS</u> that a charge, and we can add to this,
<u>a charge in an indictment or criminal complaint, which impart</u>
<u>to the jury, and we can add in this case, the defendant, an</u>
<u>unconstitutional understanding of the allegations, even more</u>
<u>specific, the burden of persuasion, and the presumption of inno-</u>
<u>cence, creates a reasonable likelihood that the jurors understood</u>
<u>the charge, and we can add, that the defendant understood the</u>
<u>charge, in the criminal complaints and indictments, in an uncon-</u>
<u>stitutional manner unless other language in the complaints or</u>
<u>indictments explain the infirm language sufficiently to eliminate</u>
<u>this possibility. If such a reasonable possibility, "we have</u>
<u>no way of knowing that [t]he defendant was [n]ot [c]onvicted,</u>

and we can add, gave his guilty plea, on the basis of the uncon-
stitutional charge, specifically the charge embodied within
the indictments and complaints", Sandstrom, 442 U.S. at 526(99
S.Ct. at 2460). For this reason it has been well settled since
Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed.
117(1931) that where there exist a reasonable likelihood and
or possibility that the jury, and we can add, the defendant,
relied upon an unconstitutional understanding of the law in
reaching a verdict, and we can add, in giving his guilty plea,
that verdict and or guilty plea must be set aside, Id. at 323n.
7, 105 S.Ct. at 1976 n. 7. We conclude that there is more than
a reasonable likelihood that the jurors, and we can add, defen-
dant(s), received an unconstitutional understanding of the situa-
tion pertaining to their tasks.

This is no way a mischaracterization of the law pertaining
to the cases cited here. Even though some of the cases cited
dealt with conclusive presumption(s) given by Judges in charges
that have the effect of shifting the burden of persuasion to
the defendant regarding the crucial elements, in this case we
are dealing with a similar charge except this time its given
by the Grand Jury in the form of an indictment or criminal com-
plaint, that has the effect of shifting the burden of persuasion
to the defendant regarding the crucial elements. The subsidiary
facts related to the shifting of the burden of persuasion to
the defendant regarding the crucial elements and the inferring
the state of mind element(s) to the offenses are the same in
these matters. Due to the defect in the construction of the
indictments and criminal complaints nationally, the defendants'
presumption of innocence is clearly taken away, also guilt of
the offense(s) is illegally predetermined in advance by the
Grand Jury who do not have the power by state or federal law
or state or federal constitution to convict, due to the language
and or charge contained therein, and the indictments and or
criminal complaints nationally serve to negate the burden of
proof.

This creates a structural constitutional error and or
defect. Structural Constitutional errors and or defects compro-

mise the entire trial and or plea hearing proceedings. It re-
quires reversal and or vacating as it involves deprivation of
constitutional protection so basic, and so fundamental, that
in its absence criminal trial and or plea proceedings "[c]annot"
reliably serve its function as a vehicle for determination of
guilt or innocence, and "[n]o" criminal punishment may be deemed
or regarded as fundamentally fair, Robinson v. Arvonio, 27 F3d.
877 rehearing denied, cert. granted vacated 115 S.Ct. 1247,
513 U.S. 1186, 131 L.Ed.2d. 129. Such a structural constitutional
error and or defect of this magnitude is "[n]ot" subject to
the harmless error analysis. Structural constitutional errors
and or defects not subject to the harmless error analysis are
defects and or errors affecting framework, in which trial and
or plea proceedings "[c]annot" reliably serve its function as
a vehicle for determining guilt or innocence, involving depriva-
tion of constitutional protection so basic, and so fundamental,
that in its absence no trial or plea can be deemed reliable,
nor any punishment fundamentally fair, Vines v. United States,
28 F3d. 1123 crim. law 1163(1), 1165(1). It is perspicuous that
such a defect and or error does affect the framework of the
proceedings, because the court(s) must constructively amend
the indictments and criminal complaints around the nation on
the "MENS REA" crucial elements of the offense(s) to correct,
rather, in an attempt to correct the structural constitutional
error and or defect by giving a Judge's charge. The boundaries
cited by law are clear and certain even as cited by Winship
Rule and Humanik v. Beyers supra.. Any conclusive presumption,
of any kind, that's placed before a jury to obtain a conviction,
or we can add, placed before a defendant to manipulate, mentally
and or psychologically coerce, and or force the defendant into
an unfreely, unknowingly, involuntarily or unintelligently given
guilty plea, that determines in advance a person's guilt, that
has the effect of shifting the burden of persuasion to the defen-
dant, violates Due Process and is grounds for an acquittal,
even if its embodied within an indictment or criminal complaint,
Moore v. Dempsey supra.. Clearly there is nothing cited by law
that would mandate that these strict rules of court, and require-
ments of Due Process law, be solely limited to a Judge's charge.

They apply to any charge that's placed before a jury to obtain a conviction, or a defendant in order to manipulate, mentally and or psychologically coerce, and or force him into a guilty plea. Such a heavy weight of shifting the burden of persuasion, and the taking away of one's presumption of innocence, by the indictments and criminal complaints of this entire nation, have been unjustly and unconstitutionally used against defendants in this nation, in this new Jim Crow and racial caste system, to mentally and or psychologically coerce, and or force them into plea bargains, and at their trials for far too long.

To elaborate on or bolster this proposition, if the honorable court would please take notice of the warrant(s) pertaining to the offense(s), as it is for every warrant in the nation. In the body of the warrant for most and or all states it reads:

"I further state that there is probable cause to believe that the defendant named above did etc.****".

This is the language that explains the constitutionally infirm language and or charge. This is the language that aids in the maintaining of the presumption of innocence, and also which confirms the specific job of the Grand Jury. The job of the Grand Jury is two prong. One--is to determine and ensure that some state and or federal official is not acting arbitrarily in bringing accusation against a citizen of this country. The second---is to determine whether or not there is sufficient probable cause to bring a defendant to trial, Stirone v. United States, 361 U.S. 212(1960); Ex Parte Bain, 121 U.S. 1 (1887); Gaither v. United States, 413 F2d. 1061(D.C.Cir.1969); The (50) States Constitutions; United States v. Abrams, 539 F.Supp. 378, 384(S.D.N.Y.1982); United States v. Calandra, 414 U.S. 338, 342-343, 98 S.Ct. 613, 617, 38 L.Ed.2d. 561, 568(1974); Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d. 626(1972). To determine guilt of the offense(s), to include the "MENS REA" on the crucial elements of dispute, is a violation of the Grand Jury's shielding function. A Grand Jury merely investigates and reports. They are not authorized by Federal or State Consti-

tution, nor Federal and or State laws, to convict, <u>Jenkins v.
McKeithen,</u> 395 U.S. at 430, 89 S.Ct. at 1853, 32 L.Ed.2d. at
422(1969). The powers of the Grand Jury are not unlimited, and
are subject to the supervisory of a judge. Grand juries may
individually or collectively enjoy protections assertable in
suits for deformation, but the privilege is not applicable to
bar the petition of an appellant to remove language from the
indictments and criminal complaints around the entire nation,
<u>Compare Pierson v. Ray,</u> 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d.
288, 294-95(1967). When the Grand Jury goes beyond the scope
of the power and authority given to them, it is indeed a viola-
tion of Due Process, <u>United States v. Chadwick,</u> CA9 (Nev.) 1977,
556 F2d. 450; <u>United States v. Briggs,</u> 514 F2d 794(5th.Cir.1975).
Yet, by the Structural Constitutional error, defect, language
and or charge of the indictments and criminal complaints, both
State and Federal around the nation, the Grand Jury adjudicated
not only guilt of the offense(s) charged, but also the "MENS
REA" related thereto. If such or similar language as aforemen-
tioned, is not embodied within the body of the charging instru-
ment(s), then the indictments and or criminal complaints are
not constitutionally sound and they violate Due Process. The
evil that has developed from this, far and extremely out weigh
the original good it intended.

Any indictment or criminal complaint, whether it be in
the smallest of detail, whether it be in the smallest of towns,
or the largest of cities, whether it be within the boundaries
of any county or state, whether it be intentional or uninten-
tional, that's constructed in a fashion where it automatically
shift the burden of persuasion from the State or Federal govern-
ment to the defendant, takes away one's presumption of innocence,
and by the language predetermines in advance the outcome of
the proceedings, giving off an unconstitutional impression and
understanding of his or her rights by the laws of Due Process,
contrary to the U.S. Constitution "[s]hall [n]ot [s]tand". They
violate the appellant's rights under the 4th., 5th., 6th., 13th.,
14th., 15th. amendments and seek to unjustly deprive one of
life, liberty and property. It is for this reason that the New
Jersey and Maine Supreme Courts overthrew such similar actions

15 of 115

in those States, and on this same premise the same should be done for every state within this nation now. And yes, under these circumstances, it may be far more difficult for the prosecution to obtain said conviction or guilty plea. But it is far better that they endure the difficulty than the greater degree and or likelihood, for innocent men and women to be subject to an erroneous conviction and or guilty plea, that is not freely, knowingly, voluntarily or intelligently given, because it prejudice the individuals subjected to these criminal indictments and or complaints within this nation. Prosecutors must be made to know and understand, that such is "THE NATURE OF THE BEAST". The burden is theirs and we are to be presumed innocent in every detail until fairly and justly convicted. This goes with the professional territory at hand.

The following statement in relevant part was made by the court in <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194(1963). It pertained to the suppression of evidence favorable to the defense, but the subsidiary facts related to Due Process violation have a bearing on these matters here. It has been slightly modified to paint a more true picture of this issue:

<u>"WE HOLD</u>, that such presumptions violate Due Process irrespective of the good faith or bad faith of the prosecution. The principle here is not to punish society for such Due Process violations, or the misdeeds of the prosecuting body, but the avoidance of an unfair trial and or plea hearing to the accused. Society not only wins when the guilty are convicted, but when criminal trials and or plea hearings are fair; Our system of administration of justice suffers when its citizens are treated unfairly in the courts. An inscription on the wall of The Department Of Justice states the proposition candidly for the federal Domain: The United States wins its point whenever justice is done its citizens in the courts", Brady v. Maryland supra.; citing Mooney v. Holohan, 294 U.S. 103.

The appellant humbly quotes that which is stated in <u>United</u>

States v. Walsh, 194 F3d. 37(2nd.Cir.1999) and United States
v. Pirro, 212 F3d. 89(2nd.Cir.2000):

        "The indictments do more than simply track the language
of 18 U.S.C. § 242, which provides penalties for any person,
who under color of any state or federal law, statute, ordinance,
regulation, custom, and we can add to this, "an indictment or
criminal complaint", willfully subjects any person,...to the
deprivation of "[a]ny", "[a]ny", right, privileges, or immunities
secured and protected by the U.S. Constitution and Laws of the
United States***", and this was done in violation of the appel-
lant's rights to Equal Protection of the laws, Screws v. United
States, 325 U.S. 91, 65 S.Ct. 1031(1945); State v. Middleton,
207 S.C. 473, 36 S.E.2d. 742(1946); Eslinger v. Thompson, 340
F.Supp. 886(DSC.1972) Aff'd 476 F2d. 225(4th.Cir.1973); Mc
Laughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d.
222(1964); Dubinka v. Judges Of Superior Court Of The State
Of Los Angeles, 23 F3d. 218; Jones v. Arkansas, 929 F2d. 275;
Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S.Ct. 2227, 2229,
65 L.Ed.2d. 175(1980); Dozier v. Loop College, City Of Chicago,
776 F2d 752; Lugar v. Edmondson Oil Co., 457 U.S. 922, 928-30,
102 S.Ct. 2744, 2749-50, 73 L.Ed.2d. 482(1982).

        By the structural constitutional error, defect, language,
and or charge contained within the indictments and criminal
compaints around the entire nation, the defendant(s) most basic
and most fundamental right to be viewed as innocent until proven
guilty, and to have the state bear the burden of production
on the critical elements of dispute has been clearly taken away.
This is a serious price to pay for the sake of obtaining a con-
viction.

        "The teaching of these cases is that "[a]ny", "[a]ny",
presumption, even if its not conclusive, even if its embodied
within the charge of an indictment or criminal complaint, that
placed before a jury to obtain a conviction, and or defendant
to coerce him or her into a guilty plea, that has the effect

of shifting the burden of persuasion to the defendant on any
element of the crime charged, or deprives him of the presumption
of innocence, predetermining in advance the outcome of the pro-
ceedings, violates Due Process and is grounds for an acquittal",
IN Re Winship supra.; Humanik v. Beyers supra.; Moore v. Dempsey
supra.; It involves deprivation of constitutional protection
so basic and so fundamental that in its absence criminal trials
and or plea proceedings "[c]annot" reliably serve its function
as a vehicle for the determination of guilt or innocence and
no criminal punishment may be deemed or regarded as fundamentally
fair because the structural constitutional error and or defect
affect the framework of the proceedings and "[c]annot" be viewed
as harmless, Robinson v. Arvonio supra.; Vines v. United States
supra..

      The actions of the conspiring agents, both state and
federal, produce fraud upon the court also in violation of 18
U.S.C. §§ 241 and 242. Fraud will vitiate any legal transaction
which include criminal trials and or plea hearing where the
indictments and proceedings are a form of contract. And any
asserted title to property in the form of this modern day slavery
by this broken judicial system, this so-called "debt to society"
founded on it is void. The U.S. Constitution does not confer
power or jurisdiction upon any state or federal government or
court within this nation to establish or legalize modern day
slavery which essentially is what the government has done here,
both state and federal as is defined in the definition for sla-
very under the C.A.T. Treaty ratified by Congress. Although
public documents such as, and or even indictments or criminal
complaints, which themselves are a form of contract, which embel-
lish this modern day slavery and property of the states or fed-
eral government by criminal conviction are deemed prima facie
evidence of facts which they purport to state, they are open
to be impunged for fraud and a clear challenge to the courts
nationally "[p]ower" to establish or legalize modern day slavery,
The Conception, Brunn, Coll. C. 497, 2 Wheeler CC 597, 6 F.
Cas. 359 No. 3137(C.C.D. S.C. 1819); The La Conception, 19 U.S.
235, 1821 WL 2188, 5 L.Ed. 249, 6 Wheat, 235 U.S.S.C. (Mar.
8, 1821); The Amistad, 40 U.S. 518, 15 Pet. 518, 1841 WL 5024,

18 of 115

2006 A.M.C. 2955, 10 L.Ed. 826, U.S. Conn., January 1841; Chewing
v. Ford Motor Company, 345 S.C. 72, 579 S.E.2d. 605(S.C.2003);
Appling v. State Farm Mut. Auto Ins. Co., 340 F3d. 769, 780
(9th.Cir.2003); King v. First American Investigation Inc., 287
F3d. 91, 95(2nd.Cir.2002) cert. denied 537 U.S. 960, 123 S.Ct.
393, 154 L.Ed.2d. 314(2002); Brailsford, 669 S.E.2d. 342, 380
S.C. 433; Callon Petroleum Co. v. Frontier Ins. Co., 351 F3d.
204, 208(5th.Cir.2003). This fraud upon the court is endemic
and compromises the system itself and institution set up to
protect the commonwealth from unjust prosecution corrupting,
irreparably, the entire judicial system as a whole warranting
it be abolished and or reformed. The Grand Jury does not have
the power to predetermine in advance the outcome of the proceed-
ings and must refrain itself from making any opinion as to guilt
or innocence. How much more egregious is it if they swear upon
their oath a person's guilt or innocence before they have a
trial or give a guilty plea? This "[c]annot" be deemed as a
harmless error, United States v. Direct Sales Co., 40 F.Supp.917
D.C.S.C.(1941); United States v. Atlantic Commission Co., 45
F.Supp. 187 D.C.N.C.(1942); State v. Boyd, 2 Hill (S.C.) 288,
1834 WL 1573 S.C. App. L. & Esq. 1834; State v. Bramlett, 166
S.C. 323, 164 S.E. 873(S.C.1932); Beck v. Washington, 369 U.S.
541, 82 S.Ct. 955 U.S. Wash.(1962); State v. Tollin, 352 S.C.
235, 573 S.E.2d. 812(S.C.App.2002); Byers v. Reynolds, 2011
WL 7063638, * 8 (DSC.2011); United States v. Jefferson, 546
F3d. 300 CA4 (Va.2008); In Re: Grand Jury Subpoena John Doe,
No. 05GJ1318, 584 F3d. 175 CA4 (Va.2009); In Re: Grand Jury
Subpoena (T-112), 597 F3d. 189 CA4 (Va.2010).

We are arguing violations of the Anti-Peonage Act of
The 13th. Amendment. Under this provision of law no time bar,
or statute of limitations, or (3) strike provision, or successive
bar, which all are statute of limitations can hold a man in
Peonage.

The 13th. Amendment Provides---"Neither slavery nor invo-
luntary servitude, except as punishment for crimes where of
the party is "duly" (emphasis added) convicted, shall exist

within the United States, or any place subject to their juris-
diction".

The courts have repeatedly held that by the language
of the 13th. Amendment, the 13th. Amendment does not apply to
a person serving a sentence for a criminal conviction, <u>Newell,</u>
563 F2d. 123; WL 1415149(2012); <u>Cox v. U.S. Attorney General,</u>
F.Supp.2d, 2012 WL 1570110 DSC April 10, 2012; <u>Gaddy v. South</u>
<u>Carolina Supreme Court's District Of Columbia, S.C.,</u> 2013 WL
6150715 DSC November 21, 2013; <u>Flood v. News & Courier Co.,</u>
71 S.C. 112, 50 S.E. 637(1905).

The courts in these previous cited cases abused their
discretion in their determination because they are controlled
by an error of law in their interpretation and or they failed
to address a critical part of the language written in the 13th.
Amendment.

An abuse of discretion occurs when the court(s) are con-
trolled by an error of law, or when the order bases upon findings
of fact is without evidentiary support or fact, <u>Sharpes v.</u>
<u>Sharpes,</u> 535 S.E.2d. 913, 342 S.C. 71(2000).

None of the aforementioned legal authorities ever ad-
dressed whether or not the issue of slavery and violations of
the 13th. Amendment have standing if the convicted person is
not <u>**"duly"**</u> (emphasis added) convicted. Since none of the afore
citings, or any similar, addressed the issue of whether the
13th. Amendment applies in cases where the party is [n]ot <u>**"duly"**</u>
(emphasis added) convicted. Which is indisputably in the language
of the 13th. Amendment. Using or applying any of those citings,
or any similar, would be misplaced if the citing does not address
the issue of whether slavery applies or have standing when a
person is [n]ot <u>**"duly"**</u> (emphasis added) convicted. See S.C.
Code Ann § 17-25-10.

<u>"Duly---is defined, as is 'right' and 'fitting'; 'properly</u>
<u>'; in 'accordance with legal requirements'".</u>

BY THE LEGAL ISSUES PRESENTED IN THIS DOCUMENT AND ARGUED
WITHIN THIS CASE. THE CONVICTION IS NOT RIGHT. IT IS NOT FITTING.
THE CONVICTION IS NOT PROPER, NOR IS IT IN ACCORDANCE TO THE
LEGAL REQUIREMENTS OF DUE PROCESS LAW. IT IS NOT CONSTITUTIONAL
WHICH VOIDS THE GENERAL SESSIONS COURT'S JURISDICTION. THUS,
I AM NOT **"DULY"** (EMPHASIS ADDED) CONVICTED, AND VIA THE FRAUD,
THE 13th. AMENDMENT DOES HAVE STANDING. SEE S.C. CODE ANN. §
17-25-10. THE SENTENCES AND CONVICTIONS AROUND THE NATION, TO
INCLUDE THE APPLICANT'S, MUST BE VACATED. I SEEK THAT THE STATE
APPOINT AN ATTORNEY AND THAT ATTORNEY SEEK CLASS ACTION CERTIFI-
CATION UNDER ARTICLE III SECTION 2 OF THE U.S. CONSTITUTION
AND FEDERAL RULE 23 ARGUING PREEMPTION.

     I GIVE THE COURT OF COMMON PLEAS JUDICIAL NOTICE THAT
THIS LEAD ISSUE OF RELIGIOUS PROPHESY ARGUED WITHIN THIS CASE
WHERE THE INDICTMENTS BY THEIR LANGUAGE PREDETERMINED IN AD-
VANCE THE OUTCOME OF THE PROCEEDINGS, CREATING AN INSTANT DOUBLE
JEOPARDY ISSUE, SHIFTING THE BURDEN OF PERSUASION UPON THE APPLI-
CANT VIA THE MENS REA ELEMENTS OF THE OFFENSE AND INDISPUTABLY
TAKING AWAY THE PRESUMPTION OF INNOCENCE. THE UNITED STATES
SUPREME COURT HAS RECENTLY GAVE JUDICIAL REVIEW ON AN ESSENTIAL
PART OF THIS ISSUE AND ARGUMENT THAT VOIDS THE COURT'S JURISDIC-
TION DUE TO UNCONSTITUTIONAL ACTION UNDER THE CASE OF NELSON
v. COLORADO, 137 S.Ct. 1249, 197 L.Ed.2d. 611, 85 U.S.L.W. 4205
(U.S.2017). THE U.S. SUPREME COURT DETERMINED THAT THE PRESUMP-
TION OF INNOCENCE LIES AT THE FOUNDATION OF THE WHOLE CRIMINAL
PROCEEDINGS MAKING IT A "STRUCTURAL ERROR" NOT SUBJECT TO THE
HARMLESS ERROR DOCTRINE. THE U.S. SUPREME COURT FURTHER DETER-
MINED THE PRESUMPTION OF INNOCENCE IS A PRINCIPLE SO ROOTED
IN THE TRADITIONS AND CONSCIENCE OF THE PEOPLE AS TO BE FUNDA-
MENTAL AND TO DEPRIVE SUCH AS THE INDICTMENTS DO, IS A VIOLATION
OF DUE PROCESS, IS UNCONSTITUTIONAL, WHICH VOIDS THE GENERAL
SESSIONS COURT'S JURISDICTION. NORMALLY, THIS WOULD BE AN AUTO-
MATIC REVERSIBLE ERROR. BUT DUE TO THE ADDED COMPOUNDING FACTORS
SUCH AS THE GRAND JURY GOING BEYOND THE SCOPE OF THE POWER AND
AUTHORITY GIVEN TO THEM AND BY THE LANGUAGE CONVICTING US, SUB-
JECTING US TO A FORM OF MODERN DAY SLAVERY, TAKING AWAY OUR
RIGHT TO VOTE IN VIOLATION OF THE 15th. AMENDMENT VIA EGREGIOUS

ACTS OF FRAUD UPON THE COURT BY THESE VIOLATIONS. THEN YOU ADD
THE ADDITIONAL COMPOUNDING FACTOR(S) OF CONSTRUCTIVELY AMENDING
THE INDICTMENTS ON THE MENS REA AND OTHER ESSENTIAL ELEMENTS,
EVEN BY ATTEMPTED INSUFFICIENT CURATIVE INSTRUCTION "BOILERPLATE"
. THE AMOUNT OF PREJUDICE AND DUE PROCESS VIOLATION BECOMES
SO EGREGIOUS IT REQUIRES THAT THE SENTENCE AND CONVICTION BE
VACATED. A REVERSIBLE CONVICTION IS REVERSIBLE REGARDLESS OF
THE REASON, AND AN INVALID CONVICTION IS NO CONVICTION AT ALL
WHICH ADD TO PROVING THAT MONTGOMERY v. LOUISIANA, 136 S.Ct.
718, 193 L.Ed.2d. 599 WAS CORRECT ABOUT UNCONSTITUTIONAL ACTION
VOIDING JURISDICTION EVEN IN CRIMINAL CASES, UNITED STATES v.
LIBOUS, 858 F3d. 64 (2nd.Cir.2017); CITY OF LEBANNON v. MILBURN,
286 Or. App. 212, 398 P.3d. 486(2017). TO ENSURE THAT THE COURT
OF COMMON PLEAS DOES NOT ABUSE ITS DISCRETION AND MISREPRESENT
THE FACTS IN ACTS OF FRAUD UPON THE COURT AND DETERMINE THAT
THE U.S. SUPREME COURT CASE ONLY APPLY TO CASES WHEN A CONVICTION
HAS BEEN VACATED. ALL ONE WOULD HAVE TO DO IS REVIEW SUBSEQUENT
CASES THAT ADDRESSED THIS MATTER AND IT WOULD BE PERSPICUOUS
THAT THE U.S. SUPREME COURT'S DETERMINATION APPLIES TO THE STRUC-
TURAL FOUNDATION OF ALL CRIMINAL PROCEEDINGS FROM THE POINT
OF ARREST UNTIL HE PLEAS OR A JURY DETERMINES GUILT, BEING A
FUNDAMENTAL RIGHT, AND IT CANNOT BE STRIPPED BEFORE THAT PLEA
OR CONVICTION OCCURS WHICH THE INDICTMENTS BY THEIR LANGUAGE
DO. SEE BETTERMAN v. MONTANA, 136 S.Ct. 1609, 194 L.Ed.2d. 723
(U.S.2016); STATE v. THOMPSON, 2018 WL 1702406, * 6+ W.Va.;
MARTIN v. UNITED STATES, 2018 WL 1626578, * 2, D.Md.; DIXON
v. YORDY, 2018 WL 1526006, * 5 D.IDAHO.

     BY THE AFOREMENTIONED ISSUE, TO INCLUDE ALL OTHERS EM-
BELLISHED WITHIN THIS DOCUMENT. THE APPLICANT'S DUE PROCESS
MATTERS ARE RIDDLED WITH STRUCTURAL CONSTITUTIONAL ERRORS THAT
VOID THE COURTS INVOLVED JURISDICTION. BEFORE A CONSTITUTIONAL
STRUCTURAL ERROR CAN BE DEEMED HARMLESS. THE COURT MUST BE ABLE
TO DECLARE IT WAS HARMLESS BEYOND A REASONABLE DOUBT WHICH BY
THE FRAUD AND OTHER CLAIMS MADE THE COURT CANNOT DO. THUS, THE
SENTENCE AND CONVICTION MUST BE VACATED WHICH I SEEK, ALBERTO
GONZALEZ FIGUEROA JR., PETITIONER v. WARREN L. MONTGOMERY, U.S.,

2019 WL 914128 (SD Cali 2019); MURPHY
v WYNN, 2019 WL 586095 (DC Mich 2019);
PEOPLE v CALIAHAKI, 2018 5084834,
#6+ GUAM JERR.

" Legal issues of Religious "
Prophesy Exhibit # 2

2

DOCKET NO.    2006-GS-23-
KBH

# The State of South Carolina

**County of Greenville**

COURT OF GENERAL SESSIONS

DECEMBER TERM 2006

## THE STATE

vs.

## BENJAMIN ERIK CASE

PLEAD GUILTY

**Indictment for**

0116

**MURDER**

VIOLATION § 18-03-0010

6y9

**WITNESSES**

Paul Silvaggio

Greenville County Sheriffs Office

8/15/2006

**ARREST WARRANT NUMBER**

I801113

ACTION OF GRAND JURY

**TRUE BILL**

FOREMAN GRAND JURY

*Foreperson of Grand Jury*

**VERDICT**

*Foreperson of Petit Jury*

Date:

STATE OF SOUTH CAROLINA          )

COUNTY OF GREENVILLE             )

INDICTMENT FOR
**MURDER**

At a Court of General Sessions, convened on     DECEMBER 12, 2006     the Grand Jurors of Greenville

County present upon their oath:     *No presumption of innocence unique*

That BENJAMIN ERIK CASE did in Greenville County, on or about the 12th day of August, 2006, unlawfully

and with malice aforethought kill TIMOTHY D. HENSON by means of shooting him to death, and that

TIMOTHY D. HENSON died as a proximate result thereof. This is in violation of §16-3-10 of the South

Carolina Code of Laws (1976) as amended.

Against the peace and dignity of the State, and contrary to the statute in such case made and provided.

_____

SOLICITOR

COUNTY OF _____Greenville_____

STATE _____VS._____

Benjamin Case

AKA: _____

Race: __W__  Sex: __M__  Age: ___25___

DOB: __06-13-1983__  SS#: _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_

Address: _701 GRACE STREET_

___GREENWOOD, SC 29649___

DL#: _011158353_____SID#: _____

INDICTMENT/CASE #: _2006GS2310926_

A/W#: __I801113_

Date of Offense: _8/12/2006_

S.C. Code § : _16-03-0010, 0020_

CDR Code #:_0116_

**SENTENCE SHEET**

In disposition of the said indictment comes now the Defendant who was ☐ CONVICTED OF or ☒ PLEADS TO: Murder / Murder

in violation of § _16-03-0010, 0020_____ of the S.C. Code of Laws, bearing CDR Code # _0116_

☐ NON-VIOLENT  ☒VIOLENT  ☐SERIOUS  ☒MOST SERIOUS  ☐Mandatory GPS(CSC    ☐§17-25-45
w/minor 1st or Lewd Act)

The charge is: ☒ As Indicted, ☐Lesser Included Offense, ☐Defendant Waives Presentment to Grand Jury.    (Defendant initial)

The plea is: ☐ Without Negotiations or Recommendation,    ☒ Negotiated Sentence,    ☑ Recommendation by the State.

ATTEST:

_____    _____    _____    _4810_

Ariail, Bob    Defendant    Attorney for Defendant    SC Bar#

WHEREFORE, the Defendant is commited to the ☑ State Department of Corrections, ☐ County Detention Center, for a determinate term of _life days/months/years_ or ☐ under the Youthful Offender Act not to exceed _____ years and/or to pay a fine of $ _____ ; provided that upon the service of _____ days/months/years and/or payment of $ _____; plus costs and assessments as applicable*; the balance is suspended with probation for _____ months/years and subject to South Carolina Department of Probation, Parole and Pardon Services standard conditions of probation, which are incorporated by reference.

☐ CONCURRENT or  ☐ CONSECUTIVE to sentence on: _____

☐ The Defendant is to be given credit for time served pursuant to S.C. Code § 24-13-40 to be calculated and applied by the State Department of Corrections.

☐ The Defendant is to be placed on the Central Registry of Child Abuse and Neglect pursuant to S.C. Code §17-25-135.

**SPECIAL CONDITIONS:**

☐RESTITUTION: ☐Deferred ☐Def. Waives Hearing ☐Ordered    PTUP _____

Total: $ _____ plus 20% fee: $ _____

Payment Terms:_____

☐ set by SCDPPPS _____

Recipient: _____

*Fine: _____ $ _____

| | | |
|---|---|---|
| § 14-1-206 (Assessments 107.5 %) | $ | |
| § 14-1-211(A)(1) (Conv. Surcharge) | $100 | $ 100 |
| § 14-1-211(A)(2) (DUI Surcharge) | $100 | $ |
| § 56-5-2995 (DUI Assessment) | $12 | $ |
| § 35.13 (Public Def/Prob) | $500 | $ |
| § 73.3, 1B TP (Law Enforce. Funding) | $25 | $ 25 |
| § 33.7, 1B TP (Drug Court Surcharge) | $100 | $ |
| § 50-21-114(BUI Breath Test Fee) | $50 | $ |
| § 56-5-2942(J) (Vehicle Assessment) | $40/ea | $ |
| 3% to each (if paid in installments) | | $ |
| § 90.11 TP (SCCJA Surcharge) | $5 | $ 5 |
| TOTAL | | $ |

_____ days/hours Public Service Employment

Obtain GED _____

Attend Voc. Rehab. or Job Corp. _____

May serve W/E begining _____

Substance Abuse Counseling _____

Random Drug/Alcohol testing _____

Fine may be pd. in equal, consecutive weekly/monthly pmts. of $ _____ beginning _____

$ _____ paid to Public Defender Fund

Other: _____

☐Appointed PD or appointed other counsel,§35.13 TP Requires $500 be paid to Clerk during probation.

_____Paul B. Wickevain_____
Clerk of Court/ Deputy Clerk

Court Reporter: _C. Hisbell_

PRESIDING JUDGE _____
Judge Code: _2_
Sentence Date: _3 / 23 / 09_

SCCA/217 (07/2008)

**ARREST WARRANT**

I-801113

**THE STATE**
against

STATE OF SOUTH CAROLINA
☒ County/ ☐ Municipality of
Greenville

Benjamin Erik Case

Address: 1211 Mccormick Highway [Last Known]
Greenwood, SC 29646-

Phone: ___ SSN: 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 ___
Sex: M Race: W Height: 5 10 Weight: 155
DL State: SC DL #: 011158353
DOB: 6/13/1983 Agency ORI #: SC0230000
Prosecuting Agency: Greenville County Sheriffs Office
Prosecuting Officer: Paul Silvagzio
Offense: Murder

Offense Code: 0116
Code/Ordinance Sec: 16-03-0010, 0020

This warrant is CERTIFIED FOR SERVICE in the
☐ County/ ☐ Municipality of _____ The accused
is to be arrested and brought before me to be
dealt with according to the law.

_____ (L.S.)
Signature of Judge

Date: _____

**RETURN**

A copy of this arrest warrant was delivered to
defendant _____
on _____

*Entered On NCIC* 1-06-104627 CerIE S

**AFFIDAVIT**

STATE OF SOUTH CAROLINA
☒ County/ ☐ Municipality of
Greenville

Personally appeared before me the affiant Paul Silvagzio
being duly sworn deposes and says that defendant Benjamin Erik Case
did within this county and state on or about 08/12/2006 County/ ☒ Municipality of Greenville in the following particulars:

DESCRIPTION OF OFFENSE Murder

I further state that there is probable cause to believe that the defendant named above did commit the crime set forth and that probable cause is based on the following facts:

*Presumption of Innocence violated*

Affiant has a statement which positively identifies the defendant as the individual who entered Fast Cash Pawn Shop located at 4613 White Horse Road within Greenville County while armed with a operable handgun and did kill store owner - Timothy Dewey Henson by shooting him to death with malice aforethought either express or implied. The defendant also shot store employee - Eric James Whisnant with malice aforethought and stole items including assorted guns, jewelry and currency belonging to the Pawn Shop from the person or presence of Eric Whisnant. This case is filed with the Greenville County Sheriff's Office under case# 1-06-104627

_____
Signature of Affiant

Affiant's Address 4 Mcgee Street
Greenville, SC 29601-
Affiant's Telephone (864)467-5107

**ARREST WARRANT**
*COMPUTER ENTERED*
*GREENVILLE COUNTY*
*SHERIFF'S OFFICE*

TO ANY LAW ENFORCEMENT OFFICER OF THIS STATE, MUNICIPALITY OR ANY CONSTABLE OF THIS COUNTY:

It appearing from the above affidavit that there are reasonable grounds to believe that
defendant Benjamin Erik Case
on or about 8/12/2006 State of South Carolina
did violate the criminal laws of the State of South Carolina ), as set forth below.
☒ County/ ☐ Municipality of Greenville

DESCRIPTION OF OFFENSE: Murder

Having found probable cause and the above affiant having sworn before me, you are empowered and directed to arrest the said defendant and bring him or her before me forthwith to be dealt with according to law. A copy of this Arrest Warrant shall be delivered to the defendant at the time of its execution, or as soon thereafter as is practicable
Sworn to and subscribed before me
on 08/15/2006 (L.S.)

_____
Signature of Issuing Judge
Letonya Simpptts
Judge Code: 5077

Judge's Address ___
Judge's Telephone ___

Issuing Court: ☒ Magistrate ☐ Municipal ☐ Circuit

RETURN WARRANT TO:
City Magistrate #2
4 Mc Gee Street Room 116-B
Greenville, SC 29601

"Legal issues of Religious" Prophesy Exhibit # 3

Z

Your states have similar Laws.

~~To warrant reversal, a jury charge must be erroneous and prejudicial. In light of the unjust denial of stand your ground rights by the fraud, conspiracy and machination, by failing to produce a final written order to establish Res Judicata and preclusive effect and other outrageous acts which occurred. Such is indeed prejudicial. Errors, including erroneous jury instructions are subject to the harmless error analysis. Since we have the State procuring the conviction by perjured testimony, blocking the required severance of the case, constructively amending the indictments all over the place, taking away the presumption of innocence, denying the right of immunity defense by failing to produce a final written order in support of the oral determination because the trial Judge knew fully well that the State did not meet its burden of proving the appellant was not entitled to the immunity defense. This is not a harmless error. State v. Belcher, 385 S.C. 597, 611, 685 S.E.2d 802, 809(2009).~~

~~The South Carolina Legislature required the State to prove specific intent to commit murder, as an essential element of attempted murder, and therefore the trial court erred by charging the jury that attempted murder is a general intent crime. Thus, the judgment must be vacated and reversed. I motion for such. State v. King, 412 S.C. 403, 772 S.E.2d 189 (S.C.App. 2015); State v. Sutton, 340 S.C. 393, 397, 532 S.E.2d 283 285(2000); State v. Thompson, 374 S.C. 257, 262, 647 S.E.2d 702, 705(Ct.App.2007); United States v. Hernandez-Montes, 831 F.3d. 284 (5th.Cir.2016).~~

( 7) Did the trial court err, and was the appellant's
5th., 6th., 14th. amendment rights of the U.S. Constitution
violated, as well as Article IV § 2, and his Due Process Rights
violated, as well as Rules Of Court, Rules Of Criminal Procedure,
as well as the court's jurisdiction being made void for Due

Process violation, and or they were prohibited from enacting and or invoking and or continuing their Subject Matter Jurisdictionary "[p]owers" due to the "[p]rocedural [d]efect" in that there was no "[w]ritten"(emphasis added) order of continuance obtained pursuant to Article V § 4 of The South Carolina Constitution?

Judicial notice takes place of proof. It simply means that the court will admit into evidence and consider, without proof of facts, matters of common and general knowledge, Moss v. Aetna Life Ins. Co. supra.; State v. Broad River Power Co. supra.; 31 C.J.S. Evidence §§ 6 and 9; Federal Rules of Evidence, Rule 201(a).

The appellant gives the court judicial notice. Not only by this document am I arguing against the precedent established by States v. Gentry, 363 S.C. 93, 610 S.E.2d. 494, 495(S.C.2005). The appellant is also arguing against the precedent established by State v. Langford, 400 S.C. 421, 735 S.E.2d. 471(S.C.2012), Joseph v. South Carolina Dept. Of Labor, Licensing And Regulation , 417 S.C. 436, 790 S.E.2d. 763(S.C.App.2016); Stokes--Carven Holding Corp. v. Robinson, 416 S.C. 517, 787 S.E.2d. 485(S.C. App.2016); Johnson v. Johnson, S.E.2d., 2014 WL 2721680(S.C. App.2014).

The petitioner humbly contends, in pursuant to Article V § 4 of The South Carolina Constitution:

"IT IS ORDERED, THAT ALL CRIMINAL CASES IN THE STATE OF SOUTH CAROLINA "[s]hall" BE DISPOSED OF WITHIN (180) DAYS FROM THE DATE OF THE DEFENDANT'S ARREST. Provided, however, the Circuit Court may continue a criminal case beyond the (180) days by "[w]ritten" order (emphasis added), if the court determines that exceptional circumstances exist in the case. This order does not create or define a right to a speedy trial", (See S.C. Rules Of Court 2003 Edition on page 652 and S.C. Rules Of Court 2004 Edition on page 659).

53 of 115

Article V Privileges, Rule 501 General Rule Provides:

"Except as required by The South Carolina Constitution, by The Constitution Of The United States, or by South Carolina statute, the privileges of a witness, person, or the government (emphasis added) shall be governed by the principles of the common law as they may be interpreted by the courts in light of reason and experience. This Rule modifies the Federal Rule to refer to the South Carolina Constitution".

Article V provisions in this case makes it mandatory, draconian, requiring any interpretation of this provision to be referred to the South Carolina Constitution as a primary rule and or first choice, and not to the U.S. Constitution or common law or state law as it pertains to normal administrative matters, epecially in light of the fact that we are dealing with a judicial order issued by the S.C. Supreme Court under Article V of the South Carolina Constitution, not the U.S. Constitution. Not only by judicial order, but also, the provisions of the South Carolina constitution are to be deemed and construed as mandatory unless there is some language contained therein that would dictate otherwise.

This order has never been rescinded until 2013. Nonetheless, I am challenging that rescinding which will be elaborated on further. This order was issued by the South Carolina Supreme Court in 1980, renewed in 1999 making it draconian, mandatory, being applicable to every criminal court within the state, and every PCR Court in the state regarding the (365) day provision. The (180) day provision was amended by the S.C. Supreme Court in 2013 to require that all criminal cases be concluded within (365) days. But the appellant falls under the (180) provision via collateral estoppel emerging from case 2013-CP-400-0084 where the issues are sought class action review and the S.C. Attorney General, The S.C. Court Of Appeals and The S.C. Supreme Court are parties to the default.

54 of 115

The S.C. Supreme Court's intent, judicial or otherwise
should be ascertained from the plain language of this provision
of law. The language must also read in a sense which harmonizes
with its subject matter and accords with its general purpose.
Once the S.C. Supreme Court has made a choice, there is no room
for the court to impose a different judgment based upon their
own notions. If the provision of law's language is unambiguous
and clear, there is no need to employ the rules of statutory
and or common law construction, even pursuant to the court's
actions, the court has no right to look for or impose another
meaning. Where the language of this provision of law is clear
and explicit, the court "[c]annot" rewrite the provision of
law and interject matters in the S.C. Supreme Court's language.
Under the plain meaning rule, it is not the court's place to
change the meaning of a clear and unambiguous provision of law,
Bass v. Isochem, 617 S.E.2d. 369(S.C.App.2005); State v. Brannon,
666 S.E.2d. 272(S.C.App.2008); State v. Pittman, 647 S.E.2d.
144(S.C.2007); Liberty Mut. Ins. v. Second Inquiry Fund, 611
S.E.2d. 297(S.C.App.2005).

The revision by the S.C. Supreme Court which occurred
in 2013 must be deemed void because it was initiated behind
a class based invidiously discriminatory animus in the form
of racial hatred, surreptitiously done, to disproportionately
effect African Americans and minority populations within this
state. Thus, the 2013 amendment runs afoul of Ex Parte Virginia,
100 U.S. 339(1880). When they realized that the inmates of this
state discovered how to properly argue this issue which is seen
in cases 2006-CP-400-3567, 3578, 3569; 2013-CP-400-0084 in the
Richland County Court Of Common Pleas, to which collateral estop-
pel attaches barring the S.C. Court Of Appeals from challenging
this issue since they are, along with the S.C. Supreme Court,
parties to the default. The S.C. Supreme Court in acts of racial
hatred amended the provision conspiring under color of state
law, a provision existing unchanged for over (35) years to
"defang" this provision of law. The Article V powers given to
the S.C. Supreme Court do not permit them to abrogate, dilute,

55 of 115

waterdown or negate the protections established by Ex Parte
Virginia. Thus, the 2013 revision must be deemed void, also
due to fraud and Due Process violation. See McCulloch, 17 U.S.
at 423; 1997 WL 10291 U.S. (Appellate Brief) Brief Of U.S. Sena-
tors Orin G. Hatch et. al.,. The revision is restrictive and
runs afoul of Ex Parte Virginia. The same restrictions that
apply to the powers of Congress, applies to the powers of the
S.C. Supreme Court, to include the powers given to the S.C.
Court Of Appeals.

To further bolster the proposition that this Rule, order
or provision is mandatory, draconian in nature, the defendant
brings the court's attention to South Carolina Rules Of Court
2005 Edition, pages 296, 297, 303 and 304. They state:

Pursuant to Article V § 4 Of The South Carolina Con-
stitution:

"IT IS ORDERED, that upon the filing of a post trial
motion under Rules 50, 52, 59 or 60(a) S.C.R.C.P., by a party
in any jury or non jury action, the party "[s]hall" within (10)
days provide a copy of the motion to the Judge.

IT IS FURTHER ORDERED,****the Chief Judge for administra-
tive purposes in each Circuit shall ensure compliance with this
order, also see S.C. Rules Of Court 2013 Edition".

It is perspicuous that if the lower court is not in com-
pliance to Rules 50, 52, 59 or 60(a) by these judicial orders
issued from the South Carolina Supreme Court, the higher Court(s)
cannot entertain jurisdiction, and must remand for further adju-
dication by the lower court(s) in question if the motions are
not ruled on when timely submitted in accordance to these judi-
cial orders, making this Article V § 4 provision and or order(s)
draconian, mandatory in nature. On this premise, the criminal
court under the (180) day provision, and or The Court Of Common
Pleas under the (365) day provision, "[c]annot" continue to
invoke and or enact their "[p]owers" of Subject Matter Jurisdic-

tion if they fail to be in compliance to this order and juris-
dictional requisite, even though they do indeed possess such
power by legislative statute. They stand in egregious violation
of the Due Process Prong to Subject Matter Jurisdiction.

Additional proof that this provision of law is draconian,
mandatory in nature, attached the court and parties will find
a copy of a similar Article V § 4 order issued from the South
Carolina Supreme Court related to placing cases within the Court
Of Common Pleas on the complex case docket. Please note the
words that are specifically circled by me related to this order.
It is perspicuous that by the language of this particular order,
the actions of the court are made discretionary by the language
contained therein. Note that the language of the Article V §
4 order relied upon for this particular issue is significantly,
materially, distinctly different demonstrating that this provi-
sion of law is draconian, mandatory in nature.

Pursuant to the government blatantly disobeying this
order issued by the South Carolina Supreme Court, in the appro-
priate case, "the trial court and or other relevant court, shall
not hesitate to grant relief, default or a mistrial where its
rulings, and or in this case, the orders of The South Carolina
Supreme Court, were violated to the prejudice of those they
were designed and or intended to protect", Toyota Of Florence
Inc. v. Lynch, 314 S.C. 257, 442 S.E.2d. 611, 615(1994); S.C.
Rules Of Court annotated, 2006 Edition, pg. 270; Panas v. Panas,
S.E.2d., 2010 WL 10088164(S.C.App.2010); Ex Parte Cannon, 385
S.C. 643, 685 S.E.2d. 814(S.C.App.2009); United States v. Peoples
, 698 F3d. 185 CA4 (S.C.2012); Holmes v. Holmes, S.E.2d., 2014
WL3369006(S.C.App.2014); IN RE: Joshua R.L., S.E.2d., 2013
WL 8538696(S.C.App.2013); United States v. Boston, 539 Fed.
Appx' 209 CA4 (N.C.2013); Sun v. Sun, S.E.2d., 2014 WL 7778971
(S.C.App.2014); IN RE: McDonald, 497 B.R. 489 Bkrtcy (DSC.2013);
Ex Parte Lipscomb, 398 S.C. 463, 730 S.E.2d. 320(2012).

To make use of the holdings in State v. Gentry related

57 of 115

to Subject Matter Jurisdiction would be misplaced. That case dealt with indictment defects and it was adjudicated under a cloud of fraud upon the court. The precedent set by State v. Gentry as well as State v. Langford are being challenged Pursuant to S.C.R.A.P., Rule 217. I am arguing against these precedent cases. There is also a default claim emerging from case 2013-CP-400-0084 to which the S.C. Court Of Appeals is party to that default which bars the court from challenging this issue by collateral estoppel. Nonetheless, this issue has absolutely nothing to do with indictment defects. To make use of the hold-ings made in State v. Culebreth regarding Rule 3(c) would be misplaced. Rule 3(c) is totally administrative. If the honorable court would take notice of the bottom of the page of 652 and 659 as it relates to this mandate. You will see that the admini-strative factors related to this provision of law have been rescinded. Further, there are two material and distinct dif-ferences between Rule 3(c) and this requirement of Due Process Law. Rule 3(c) is not tied to the provisions of The South Caro-lina Constutution. This requirement of criminal and or civil procedure is. Secondly, Rule 3(c) is not a judicial order issued by the South Carolina Supreme Court. This requirement of Criminal and or Civil Procedure for the General Sessions Court and or Court Of Common Pleas is. This has absolutely nothing to do with a speedy trial issue. I, we, would adamently object to that notion. A speedy trial is not what the appellant is arguing. This is simply a matter of judicial order; "STARE DECISIS ET NON QUIENTA MOVERE"; South Carolina Rules Of Court; South Caro-lina Rules Of Criminal and or Civil Procedure (for PCR's) and Due Process Law. Once this provision of law was issued as a judicial order then tied to the provisions of the South Carolina Constitution pursuant to Article V § 4, its observance became mandatory by the provisions contained therein making it draconian in nature.

I, we, are not arguing that the prosecution does not have the right to control his case load. What I am arguing,

is that in order for him to control that case load. There are
certain provisions of law and Rules Of Court set into place
that would have allowed him to do so, and he and or the court
must adhere to those Rules set into place by the South Carolina
Supreme Court to control that case load. He was required to
obtain a "[w]ritten" order of continuance. I, we, are not arguing
that this is a Due Process right conferred upon us by the U.S.
Constitution. This is a Due Process right conferred upon us
by the S.C. Constutution. Thus, making use of the holdings made
in State v. Langford, 400 S.C. 421, 735 S.E.2d. 471(S.C.2012)
and United States v. McDonald, 456 U.S. 1, 102 S.Ct. 1497 U.S.
(N.C.1982) would be misplaced, especially in light of the fact
that we have a default and claims of collateral estoppel which
binds the S.C. Court Of Appeals they being party to that action.
This emerges from case 2013-CP-400-0084 out of the Richland
County Court Of Common Pleas.

    S.C. Code Ann §§ 1-7-730, 17-13-150 and 17-25-10 require
that the prosecution and or prosecuting body "[s]hall" fulfill
and see that all duties, requirements, and Rules Of Criminal
Procedure related to Due Process and The S.C. Constitution are
adhered to and completed within the court.

    In order to understand the meaning of any statute or
phrase of law, it is necessary to determine the meaning of the
language as it is used in the particular context, Robinson v.
Shell Oil Company, 117 S.Ct. 843(1997). Article 12 § 2 utilizes
the words "[s]hall provide,...". In this context "[s]hall" is
mandatory. See United States v. Meyers, 106 F3d. 936, 941 CA10
(1997). In order to understand the meaning of any word, sentence
or phrase, "[t]he Cardinal Rule is that the words should be
given their plan and ordinary meaning and or interpretation
without the court interjecting into them matters or a construing
that's not in the language", Seckinger v. The Vessal Excalibur,
483 S.R.2d. 775(S.C.App.1997); United States v. Ron Pair Enter-
prises Inc., 109 S.Ct. 1026, 1030(1989); Bass v. Isochem, 617

S.E.2d. 369(S.C.App.2005); <u>State v. Brannon</u>, 666 S.E.2d. 272(S.C. App.2008); <u>State v. Pittman</u>, 647 S.E.2d. 144(S.C.2007); <u>Liberty Mut. Ins. v. S.C. Second Injury Fund</u>, 611 S.E.2d. 297(S.C. App.2005).

Article 1 § 23 Of The South Carolina Constitution dictates:

"The provisions of The South Carolina Constitution shall be taken, deemed and construed to be mandatory and or prohibitory and not merely directory, except where made directory or permissory by its own terms".

Since the appellant is arguing the claim of default and collateral estoppel emerging from case 2013-CP-400-0084, which binds the S.C. Court of Appeals who are party to that default. The appellant would fall under the old Article V § 4 order before the 2013 revision where the original cases subjudice to 2013-CP-400-0084 are 2006-CP-400-3567, 3568 and 3569 demonstrating that the issue was before that court since 2006. This also applies since the 2013 revision was an act of machination on the part of the S.C. Supreme Court, conspiring with the S.C. Attorney General under color of state law, who had control over Judge Jean Toal due to her past DUI arrests and or troubles producing fraud upon that court via her influence. This was also done behind a class based invidiously discriminatory animus, in the form of race. Once the parties realized that the predominately minority inmates discovered how to properly argue the issue via case 2013-CP-400-0084. The S.C. Supreme Court conspiring with the S.C. Attorney General revised the Article V § 4 order to water down the S.C. Constitution Due Process requirement to dilute the protections set in place by <u>Ex Parte Virginia,</u> 100 U.S. 339(1880), to place into effect an Article V § 4 determination that they knew beforehand would disproportionately affect African Americans and other minorities within this state, in retaliation, because the minority inmates now figured out

how to properly argue this issue. Just like in cases such as,
Edward Kennedy, 2000 WL 35763420(2000); City Of Rome v. United
States, 446 U.S. 156(1980); South Carolina v. Katzenbach, 383
U.S. 301(1966); Plaut v. Spendthrifts Farms, Inc., 115 S.Ct.
1447(1995); The Amistad, 40 U.S. 518, 15 Pet. 518, 1841 WL 5024,
2006 A.M.C. 2955, 10 L.Ed. 826(1841). Their actions produce
a result that is not given to them via their Article V powers
and or privileges, nor by the S.C. Constitution and serve to
aid in establishing a form of modern day slavery as is defined
in the C.A.T. Treaty that Congress signed off on and ratified,
which voids their jurisdiction for Due Process violation. Due
to this, to include the claim of default and collateral estoppel
emerging from case 2013-CP-400-0084. The appellant falls under
the old provision of law before the fraudulent 2013 revision
which runs afoul of the protections established by Ex Parte
Virginia.. Also see 1997 WL 10291 U.S. (Appellate Brief) Brief
Of U.S. Senators Orin G. Hatch, Strom Thurmond et. al.,; Oregan
v. Mitchell, 400 U.S. 112(1971); Croson, 488 U.S. at 490;
McCulloch, 17 U.S. at 423. Just like Congress would be prohibited
from initiating such action, so would the S.C. Supreme Court,
Mississippi Univ. For Women v. Hogan, 458 U.S. 718, 732(1982);
Adarand Contractors Inc. v. Pena, 115 S.Ct. 2097(1995).

Therefore, it can be factually stated, that not only
by the provisions of Article V § 4 of The South Carolina Consti-
tution, also by judicial order issued by the South Carolina
Supreme Court. It is mandatory that the appellant's Due Process
matters be disposed of before the criminal court within (180)
days of his arrest. If the court would take notice of the arrest
warrants and or indictments as they pertain to these matters.
The court will see that the appellant was arrested on July 31,
2013. If the court would take notice of the sentencing sheet
and or trial transcript. The court would see that the appellant's
Due Process matters were not disposed of until March 17, 2016.
By the date of arrest this means that the appellant's Due Process
matters should have been disposed of by January 31, 2014. Yet
they were not disposed of until March 17, 2016 approximately

over (3) years past the (180) days prescribed by judicial order
and the provisions of The South Carolina Constitution. Even
if the court would assess the time via the fraudulent 2013 re-
vision. The conspiring parties would still be (1½) years past
the (365) day revision. This voids the trial court's jurisdiction
for Due Process violation. There is no "[w]ritten" (emphasis
added) order of continuance filed with the Clerk of Court before
the (180) day period, or even the (365) day period expired,
or that was served on the defendant. Such an order of continuance
by the defendant's rights of Due Process and pursuant to judicial
order issued by the S.C. Supreme Court "[c]annot" be obtained
after the fact because without this essential jurisdictional
requisite. Jurisdiction would be made void for Due Process vio-
lation on that date of failure to be in compliance, which include
any act done beyond the prescribed time period. This includes
the trial itself and the signing of the commitment order derived
from it. The "[w]ritten" order of continuance "[m]ust" be ob-
tained before the (180) and or (365) day time period expires.
To go beyond the prescribed time period and or deadline without
a "[w]ritten"(emphasis added) order of continuance creates a
"[p]rocedural and [j]urisdictional [d]efect", which "[v]oids"
the trial court's "[p]owers" of Subject Matter Jurisdiction
and or their "[p]ower" and or "[a]bility" to enact and or invoke
and or continue its "[p]owers" of Subject Matter Jurisdiction
in compliance to judicial order issued from the South Carolina
Supreme Court, Rules Of Court and Due Process Law to adjudicate
the appellant's trial. This is to be adjudicated under the Due
Process Prong To Subject Matter Jurisdiction as was defaulted
on by this state to which the S.C. Court Of Appeals is party
to the default.

    The appellant places forth this issue in a straightforward
fashion and want to make certain that there is no misunderstand-
ing as to the specific claims and or question that is placed
before the court. The defendant is not arguing whether or not
the criminal court has Subject Matter Jurisdiction to hear and

determine cases of "[t]his" general class to which the proceedi-
ings in question belong. The appellant concedes this fact. The
appellant in this context agrees with all (3) Gentry, Cotton
and Parkhurst court(s) when they determined that the criminal
courts do have Subject Matter Jurisdiction to hear cases of
this nature and class. This is not the issue or is it what the
appellant is arguing. What the appellant is indisputably arguing
is a question which clearly was not answered by either the Gentry
, Cotton or Parkhurst court(s) is this. Despite the fact that
the criminal court does have Subject Matter Jurisdiction to
hear cases of this general class to which the proceedings in
question belong via State legislative statutes and or Congres-
sional intent. Do their egregious, blatant failure to be in
compliance to said certain, essential, crucial Due Process
"[j]urisdictional [p]rerequisites" and or "[j]urisdictional
[r]equisites", at various phases of, and or at the commence-
ment of the Subject Matter Jurisdictionary action and or process;
which is to be adjudicated under the Due Process prong to Sub-
ject Matter Jurisdiction. Do their their blatant, egregious
failure to be in compliance to said certain, essential, crucial
Due Process "[j]urisdictional [p]rerequisites" and or [j]urisdic-
tional [r]equisites" at various phases of, or at the commence-
ment of the Subject Matter Jurisdictionary,....halt, check,
constrain, restrain, limit, arrest, stop or void the continuance
of the Subject Matter Jurisdiction "[p]ower" before the court,
which is to be adjudicated under the Due Process prong to Subject
Matter Jurisdiction, even though the court without a doubt do
indeed possess such "[p]ower" by state legislative statute and
or Congressional intent? This is a crucially, materially, di-
stinctly different question related to Subject Matter Jurisdic-
tion that was never answered by any of the (3) three courts
involved pursuant to Gentry. This is a new question of law and
fact, a challenge to the precedent set by the Gentry case. Thus,
making use of the holdings made in the Gentry court would be
misplaced. Such a new question of law and fact is not barred
in seeking relief for, does relate to Subject Matter jurisdiction
, "[c]annot" be waived by the appellant, can be raised at "[a]ny"

time, including for the first time on appeal, and the court
"[s]hall [n]ot" fail to take notice. No timely objection is
needed to preserve this issue. This is being argued under the
Due Process prong to Subject Matter Jurisdiction, <u>Grupo Dala-
flux v. Atlas Global, L.P.</u>, 541 U.S. 567, 124 S.Ct. 1920, 158
L.ED.2d. 866(2004); <u>Loumiet v. United States</u>, 65 F.Supp.3d.
19(2014); <u>U.S. v. $41,320 U.S. Currency</u>, 9 F.Supp.3d. 582, 2014
WL 1266240; <u>White v. Manis</u>, 2014 WL 1513280(DSC.2014); <u>U.S.
v. Aladekcha</u>, 2010 WL 4054267(D.C.Md.2010); <u>Hunt v. United States</u>
, F.Supp.2d., WL 5131716(DSC.2007); <u>Brown v. United States</u>,
2014 WL 2871398(DSC.2014).


     The trial court, and or prosecuting body, acting arbi-
trarily, conspiring under color of state law, in blatant defiance
to Rules of Court; S.C. Supreme Court judicial order, and the
provisions of the South Carolina Constitution has failed to
be in compliance to their own state laws in violation of the
appellant's substantial Federal Constitutional rights of Due
Process under the 6th. and 14th. amendment(s). Then to conceal
this injustice. The S.C. Attorney General, due to Judge Toal's
legal matters, compromises that court and get them to make effort
to water down this provision in the 2013 revision behind a class
based invidiously discriminatory animus in the form of race
in violation of the holdings made in <u>Ex Parte Virginia</u>. Thus,
the Article V § 4 order before the revision must stand, especial-
ly in light of the fact that the state defaulted on this issue
in case 2013-CP-400-0084 to which the S.C. Court Of Appeals
is also party to that default. This voids the trial court's
jurisdiction for Due Process violation as well as for violations
of 18 U.S.C. §§ 242 and 1001, <u>United States v. Walsh</u>, 194 F3d.
37(2nd.Cir.1999); <u>United States v. Pirro</u>, 212 F3d. 89(2nd.Cir.
2000); <u>Screws v. United States supra</u>.; <u>State v. Middleton supra</u>.;
<u>Eslinger v. Thompson supra</u>.; <u>McLaughlin v. Florida supra</u>.; <u>Du-
binka v. Judges Of Superior Court Of The State Of California,
For The County Of Los Angeles supra</u>.; <u>Jones v. State Of Arkansas
supra</u>.; <u>Hicks v. Oklahoma Supra</u>.; <u>Dozier v. Loop College, City
Of Chicago supra</u>.; <u>Lugar v. Edmondson Oil Co. supra</u>.

64 of 115

Subject Matter Jurisdiction is the "[p]ower" to hear and determine cases of a general class to which the proceedings in question belong, <u>Bell v. Monsanto Corp.,</u> 579 S.E.2d. 325 S.C. 553(S.C.2003). Inasmuch, Subject Matter Jurisdiction does not only cover and or involve whether or not the matter resides in a proper court of jurisdiction to hear and determine it. This is specifically, only, the first prong to Subject Matter Jurisdiction. The court's "[p]ower" to hear and determine a case, is also defined as the court's "[a]bility" to hear and determine a case. Thus, Subject Matter Jurisdiction also involves any issue or matter that may "[a]ffect" and or "[h]inder" that "[p]ower" and or "[a]bility" to act in accordance to Rules Of Court, Rules Of Criminal Procedure and Due Process Law. This is clearly established by the Due Process Prong to Subject Matter Jurisdiction, which is the second prong. Such matters can be raised at "[a]ny" time, "[c]annot" be waived by the appellant, and the court "[s]hall [n]ot" fail to take notice, <u>Mathis v. State,</u> 355 S.C. 87, 584 S.E.2d. 366(S.C.App.2003); <u>State v. Browning,</u> 320 S.C. at 368, 46 S.E.2d. at 359; <u>State v. Munn,</u> 357 S.E.2d. 461(S.C.1987); <u>Brown v. United States,</u> 2014 WL 2871398(DSC.2014); <u>Hunt v. United States,</u> F.Supp.2d., 2007 WL 5131716(DSC.2007).


Without a "[w]ritten"(emphasis added) order of continuance filed with the Clerk Of Court issued before the (180) and or (365) days expired within the trial court, jurisdiction is made void for Due Process violation, to include any act done there-after which includes the signing of any commitment order and or sentencing sheet. The trial court and prosecutor were prohibited from continuing the cause. Thus, the sentence and convic-tion must be reversed and vacated. The Appellant motions for such.

~~(3) Did the trial court err, and was the appellant's 5th, 6th, 14th Amendment rights of the U.S. Constitution violated, as well as Article IV § 2 and his Due Process rights~~

65 of 115

u    Legal issues of Religious    #

Prophesy    Exhibit # 4

Your states have
similar laws

Motion for severance is addressed to sound discretion of the trial court. Which in this case that discretion was not sound due to trial court engaging in acts of fraud upon the court, criminal conspiracy, machination under color of State law. The trial court's ruling will not be disturbed on appeal absent an abuse of discretion which conspicuously occurred here. Criminal cases may be tried together where they (1) arise out of a single chain of circumstances, (2) are proved by the same evidence, (3) are of the same general nature, and (4) no real right of the defendant has been prejudiced. All (4) (emphasis added) of these elements must exist before the appellant and his codefendant can be tried together, not (3) or (2). The Appellant's constitutional Due Process rights pursuant to notice, being properly appraised as to the cause and nature of the accusations or offenses, having crucial essential elements and or averments passed upon by the Grand Jury, to call the codefendant to testify, to establish potential alibi and not have the indictments constructively amended throughout the proceedings were violated producing extreme prejudice where the prosecution sought to conceal all of this by trying us both together. Thus, the conviction must be vacated and reversed. State v. Caldwell, 378 S.C. 268, 662 S.E.2d 474(S.C.App.2008); State v. Tyre, S.E.2d., 2013 WL 8539730(2013); State v. Burns, S.E.2d., 2014 WL 3886521(2014); DeLuna v. United States, 308 F2d 140(5th.Cir. 1962); United States v. Kahn, 366 F2d 259, 263-264 (2nd.Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d. 661(1967); 454 F2d 1721(1971); State v. Ascheville, 425 S.E.2d 32(S.C. 1992); State v. Kelsey, 502 S.E.2d 63 (S.C.1998); State v. Beekman, 415 S.C. 632, 785 S.E.2d 202(2016); State v. McDonald, 412 S.C. 133, 771 S.E.2d 840 (S.C.App.2015).

(3) Did the trial court err, and was the appellant's 5th., 6th., 14th. amendment rights of the U.S. Constitution violated, as well as Article IV § 2, and his Due Process rights violated by the indictment(s) for attempted murder's failure to allege what weapon was allegedly used and who it was the

28 of 115

appellant supposedly acted in concert with, in the same vein,
the indictment for conspiracy's failure to allege who it was
that the appellant conspired with, in the body of the charging
instrument?

Judicial notice takes place of proof. It simply means
that the court will admit into evidence and consider, without
proof of facts, matters of common and general knowledge, Moss
v. Aetna Life Ins. Co. supra.; Broad River Power Co. supra.;
31 C.J.S. Evidence §§ 6 and 9; Federal Rules Of Evidence, Rule
201(a).

This is a manifest constitutional error. An error on
the part of the trial court that has an identifiably negative
impact on the proceedings to such a degree, that the constitu-
tional rights of the party are compromised. A manifest constitu-
tional error can be reviewed by a court of appeals even if the
appellant did not object at the proceedings, (Black Law Diction-
ary 8th. Edition).

The appellant did not object to these defects and or
errors at the time of his trial and or before he gave his guilty
plea, but the defect(s) and or error(s) serve to render the
indictment(s) wholly invalid. Defects in an indictment that
are of such a fundamental character as to render an indictment
wholly invalid are not subject to waiver by the defendant, 41
Am. Jurs.2d Indictments And Information § 299(1968); State v.
Munn supra.

It is universally recognized that an indictment "[m]ust"
contain certain [s]pecification of [a]cts and [c]ircumstances
as well as on its [f]ace fix and determine the identity of the
offense with such [p]articularity, that it will enable the defen-
dant to know with sufficient [c]ertainty what he has to face
at trial to give him or her a fair opportunity to prepare his
defense to avail him or herself of conviction, or acquittal
as a bar to further prosecution arising out of the same facts,

State v. Rallo, 403 S.E.2d. 653(1991); State v. Hardee, 279
S.C. 409, 308 S.E.2d. 521(1983); Locke v. State, 341 S.C. 54,
533 S.E.2d. 324(2000); IN RE: Jason T., 340 S.C. 455, 531 S.E.2d.
544(S.C.App.2000); State v. Parker, 344 S.C. 250, 543 S.E.2d.
255(S.C.App.2001).

S.C. Code Ann § 17-19-10 Provides:

"All offenses shall be prosecuted by Grand Jury indict-
ment(s). Thus, no person shall be held to answer in any court
for any alleged crime or offense unless upon indictment by a
Grand Jury".

S.C. Code Ann § 17-19-20 Provides:

"Every indictment shall be deemed and judged as good
and sufficient in law, which in addition as to allegations as
to time and place as required by law, charges the crime substan-
tially in the language of the common law of the statute, prohi-
biting the crime and so plainly that the nature of the offense
charged may be easily understood***".

Insomuch, it is the body of the indictment which is the
[v]ital part of the charging instrument, State v. Tate, 345
S.C. 577, 549 S.E.2d. 601(S.C.2001), and it "[c]annot" be so
cryptic or the wording so loose, vague and ambiguous as to fail
to comply with the basic right of the accused to be "[f]ully"
informed as to the "[c]ause and [n]ature" of the accusation
being levied against them, which is one of the most basic, funda-
mental and universally recognized rights of Due Process, Smith
v. O'Grady, 312 U.S. 329, 61 S.Ct. 572(1941); State v. Tabory,
262 S.C. 136, 141, 202 S.E.2d. 852(1974)(Holding that the state
may not support a conviction * 334 for an offense intended to
be charged by relying upon the caption to the exclusion of the
language contained within the body of the indictment).

Subject to certain minor exceptions not present, jurisdic-

30 of 115

tion is made void for Due Process violation, and the trial court
is prohibited from enacting and or invoking and or continuing
its Subject Matter Jurisdictionary "[p]owers" to convict a defen-
dant for an offense, when there is no indictment charging him
with that offense when the jury is sworn, and or before he gives
his guilty plea even though the court does possess such "[p]ower"
given to them by legislative statute, State v. Beachum, 288
S.C. 325, 342 S.E.2d. 597(1986); Loumiet v. United States, 65
F.Supp.3d. 19(2014); U.S. v. $41,320 U.S. Currency, 9 F.Supp.3d.
582, 2014 WL 126640; White v. Manis, 2014 WL 1513280(DSC.2014).

Federal Rules of Procedure, Rule 7(c) requires that an
indictment contain a "[p]lain", "[c]oncise" and "[d]efinite"
written statement of essential elements and or allegations con-
stituting the offense charged. The indictment Clause of the
5th. Amendment require that the indictments contain some amount
of factual particularity to ensure that the prosecution will
not fill in elements of his case with facts other than those
considered by the Grand Jury, United States v. Abrams, 539
F.Supp. 378, 384(S.D.N.Y.1982).

If the court will please take notice of the indictment(s)
for attempted murder. They read: "That in ████████ County, South
Carolina,****████████████████,****, while acting in concert with
codefendant, discharged a firearm at the victim,****".

The indictment for conspiracy reads:

"That in ████████ County,****the defendant ████████
████████████, did combine, conspire, confederate, agree or
have tacit understanding with another, for the purpose of com-
mitting a crime, to wit, attempted murder.*****".

These are the generic terms of the statute for conspiracy.
Inasmuch, the indictment(s) are to vague and cryptic. The at-
tempted murder indictment(s) do not say what weapon was sup-
posedly used, and both the attempted murder and conspiracy in-

dictment(s) do not allege who it was the appellant conspired
with. The court and prosecution did add these elements and or
aggravating factors that were not passed upon by the Grand Jury.
Did the appellant possess a handgun, a slingshot, a dirk, a
machete, an uzi, an AKA-47 or a rocket launcher? The indictments
do not say. Did the appellant allegedly conspire with "Sponge
Bob", "Barrack Obama", Donald Duck Trump and the alt right",
Bugs Bunny" or "Michael Jackson" who came back from the dead?
The indictment(s) do not say. This is why they conspired under
color of State law, in acts of prosecutional misconduct as well
as in acts of fraud upon the court and denied the motion for
severance, which extremely prejudiced the appellant, permitting
them to constructively amend the indictments before the court.
This extreme prejudice caused actual substantive disadvantage
where these material averments were not passed upon by the Grand
Jury in the body of the charging instrument. This act led to
said constructive amendment and denial of the motion for seve-
rance by fraud, depriving the appellant of proper notice giving
way to arbitrary judicial action in violation of Due Process
law, voiding jurisdiction for Due Process violation. This issue
is also preserved for appellate review where the attorney for
the defense argued that the State did not prove the indictments
or elements of the motions for dismissal, direct verdict and
severance, Castillo v. Holder,---F3d.---,2015 WL 161952 CA4
(2015); State v. Brandt, 393 S.C. 526, 713 S.E.2d. 591(S.C.2011).

The language in the indictment(s) is so vague, so loose,
so cryptic and ambiguous it is almost impossible for the appel-
lant to know what he is called upon to meet and defend. What
weapon was the appellant in possess of? As far as the appellant
can tell, it must have been a surface to air missile or rocket
launcher. As far as the appellant can tell, in whom it was that
he allegedly conspired with. It could have been Napolean Bonapart
after he battled at Waterlou or Genghis Khan after he left the
Asian Continent, where these people were resurrected from the
dead. No one can say what was in the mind of the Grand Jury.
This "[c]annot" be deemed as reasonable notice, which is why

32 of 115

the court denied the motion for severance, to constructively
amend the indictments where the jury would have been able to
only speculate had this not been done. The indictments cannot
be deemed as sufficient if the prosecution is permitted to prove
all these materially different sets of facts, to include any
other set of facts not passed upon by the Grand Jury, subjecting
the appellant to "Indictment Ambush" at the onset of the pro-
ceedings, voiding their jurisdiction for Due Process violation,
State v. Keith, 283 S.C. 597, 598, 325 S.E.2d. 325, 326(1985);
State v. Bullock; United States v. Masotto, 73 F3d. 1233 cert.
denied 117 S.Ct. 54, 136 L.Ed.2d. 18; Castillo v. Holder,---
F3d.---,2015 WL 161952 CA4 (2015); State v. Brandt, 393 S.C.
526, 713 S.E.2d. 591(S.C.2011); S.C. Code Ann § 17-25-10.

    The requirement of the indictment(s) limit and constrain
the Subject Matter Jurisdictionary "[p]owers" of both the prose-
cution and the court by limiting what can be presented at trial,
conviction and sentencing, United States v. Promise, 255 F3d.
150(4th.Cir.2001); State v. Guthrie, 352 S.C. 103, 572 S.E.2d.
309. It is the command of the U.S. Constitution, that anything
to the contrary is notwithstanding, (Article IV § 2 U.S. Const.);
S.C. Code Ann § 17-25-10.

    The State and or prosecuting body, acting unjustly, ar-
bitrarily, conspiring under color of law, has egregiously failed
to adhere to their own state laws, serving to deny the appellant
the Equal Protection of the Laws against unjust, arbitrary pro-
secution and judicial action in acts of fraud upon the court,
Great Coastal Exp. Inc. supra., 675 F2d. 1349(4th.Cir.1982);
Fox Ex. Rel. Fox v. Elk Run Coal Co. Inc., 739 F3d. 131(4th.
Cir.2014); U.S. v. Beggerly, 524 U.S. 38, 118 S.Ct. 1862, 141
L.Ed.2d. 32(U.S.1998); Blue Sky Travel and Tours, LLC v. Al
Tayyer,---Fed. Appx'---, 2015 WL 1451636 CA4 (Va.2015); Barlow
v. Colgate Palmolive Co., 772 F3d. 1001, 90 Fed. R. Serv.3d.
85 CA4 (Md.2014); U.S. v. Tejada, 445 Fed. Appx' 719, 2011 WL
3891825 CA4 (S.C.2011); Screws v. United States supra.; State
v. Middleton supra.; Eslinger v. Thompson supra.; McLaughlin

v. Florida supra.; Dubinka v. Judges Of Superior Court Of The
State Of California, For The County Of Los Angeles supra.; Hicks
v. Oklahoma supra.; Jones v. Arkansas supra.; Lugar v. Edmondson
Oil Co. supra.; Greenwood v. Peacock, (1966) 384 U.S. 808, 16
L.Ed.2d. 944, 86 S.Ct. 1800; United States v. Otherson, (1980
CA9 Cal.) 637 F2d. 1276 cert. denied (1981) 454 U.S. 840, 70
L.Ed.2d. 123, 102 S.Ct. 149; S.C. Code Ann § 17-25-10.

   In United States v. Hooker, 841 F2d. 1225, 1227(4th.Cir.
1988)(EN BANC) and in Russell v. United States, 82 S.Ct. 1047
(1962), the court held:


   "It is an elementary principle where the definition
of the offense(s) charged, whether it be at common law or sta-
tute, include generic terms, it is "[n]ot" sufficient that the
charging should be in the same generic terms of the statute,
but it "[m]ust" descend to "[p]articulars".

   **WE HOLD**, a mere citation of the statute of which the
defendant is charged with violating is insufficient to cure
the failure of the indictment(s) to charge each essential element
and or allegation of the offense because a mere citation alone
does not ensure that the Grand Jury considered and found the
crucial elements and or facts of the offense". The appellant
also cannot be subjected to language that violate his rights
to double jeopardy protection.


   Hence, by the Doctrine of **"STARE DECISIS ET NON QUIENTA
MOVERE"**, and indictment "[m]ust" properly set forth all essential
elements of the offense. By Hamling v. United States, 418 U.S.
87, 94 S.Ct. 2887(1974), it is well established and recognized
under American Jurisprudence: That if an indictment fails to
charge all the necessary elements, it fails to charge the offense
. If it fails to charge the offense or subject a person to double
jeopardy, such violates the appellant's 5th., 6th. 14th. Amend-
ment rights of the U.S. Constitution, as well as Article IV
§ 2, and his rights of Due Process, voiding the court's jurisdic-

tion for Due Process violation. Thus, the conviction "[m]ust' be set aside, <u>United States v. Cabrera-Teron</u>, 168 F3d. 141(5th. Cir.1999); <u>United States v. Pupo</u>, 841 F2d at 1239(4th.Cir.1988) (EN BANC); <u>United States v. Hooker</u>, 841 F2d. 1225(4th.Cir.1988); <u>United States v. Daniels</u>, 973 F2d. 272(4th.Cir.1992); <u>Elderberry Of Weber City, LLC v. Living Center--Southeast, Inc.</u>,---F3d.- --, 2015 WL 4430836 CA4 (Va.2015); <u>Norbrega v. Hinkle</u>, 576 Fed. Appx' 224 CA4 (Va.2014); <u>Manis v. White</u>, 2014 WL 1513280(DSC. 2014); <u>Robinson v. Cohen</u>, F.Supp.2d., 2009 WL 789882(DSC.2009); <u>United States v. Gomez</u>, 690 F3d. 194 CA4 (Md.2012); <u>Carr v. United States</u>, 560 U.S. 438, 130 S.Ct. 2229(U.S.2010); <u>United States v. Robare</u>, 2011 WL 10583565 (N.D.N.Y.2011) <u>Castillo v. Holder supra.</u>; <u>State v. Brandt supra.</u>.



(9) Did the trial court err, and was the appellant's 5th., 6th., 14th. amendment rights of the U.S. Constitution violated, as well as Article IV § 2, and his Due Process rights violated, by the indictment(s) for attempted murder's failure to properly and or sufficiently apprise the appellant of the "[t]ime" of assault(s), in the body of the charging instrument, as "[t]ime" is recognized by law?

The appellant did not object to this defect and or error at the time of his trial and or before he gave his guilty plea, but the defect and or error serves to render the indictment wholly invalid. Defects and or errors in an indictment that are of such a fundamental character as to render an indictment wholly invalid are not subject to waiver by the defendant, 41 Am. Jurs.2d. Indictments and Information § 299(1968); State v. Munn supra.. Subject to certain minor exceptions not present, the trial court is prohibited from enacting and or invoking its subject Matter jurisdictionary "[p]ower" given to them by state statutes to convict a defendant for an offense, when there is no indictment charging him with that offense when the jury is sworn, and or before he gives his guilty plea, where such an action would "[v]oid" the court's jurisdiction for Due Process violation, State v. Beachum, 288 S.C. 325, 342 S.E.2d. 597(1986); Grupo Dalaflux v. Atlas Global Group L.P., 541 U.S. 567, 124 S.Ct. 1920, 158 L.Ed.2d. 866(U.S.2004); Loumiet v. United States, 65 F.Supp.3d. 19(2014); U.S. v. $41,320 U.S. Currency, 9 F.Supp. 3d. 582, 2014 WL 1266240.

Judicial notice takes place of proof. It simply means that the court will admit into evidence and consider, without proof of facts, matters of common and general knowledge, Moss v. Aetna Life Ins. Co. supra.; State v. Broad River Power Co. supra. 31 C.J.S. Evidence §§ 6 and 9; Federal Rules Of Evidence, Rule 201(a).

This is also a manifest constitutional error. An error on the part of the trial court that has an identifiably negative impact on the proceedings to such a degree, that the constitu-

tional rights of the party are compromised. A manifest constitutional error can be reviewed by a court of appeals even if the appellant did not object at the proceedings, (Black Law Dictionary 8th. Edition).

The appellant humbly contends his 5th., 6th., 14th. amendment rights of the U.S. Constitution were violated, as well as Article IV § 2, and his Due Process rights were violated for the charge in question, because the charging instrument, in the body of the indictment does "[n]ot" state the exact time and or date of the alleged assault(s) as time is recognized by law, which is a necessary and requisite element of the offense for murder and or attempted murder, being made a part of the critical elements of the offense. For example, in State v. Rector , 158 S.C. 212, 155 S.E. 385(1930), the Supreme Court [s]pecifically and [u]nequivocally , with [c]larity and [p]articularity, stated in Haec [V]erba:

"The State "[m]ust" prove not only the assault and death occurring from it, but also the "[t]ime" of the assault and the "[t]ime" of the death, as "[t]ime" is recognized by law. In addition the state "[m]ust" prove the "[p]lace" of the assault, and the "[p]lace" of death*****".

These necessary elements of the crime "[m]ust" not only be proven before a person may be lawfully convicted, but they "[m]ust" be alleged within the body of the charging instrument, be passed upon by the Grand Jury in the indictment returned against the defendant in accordance to the constitutional rights of the accused(emphasis added).

Assault And Battery With The Intent To Kill embraces the whole of attempted and visa versa. The elements to prove the crimes are the same as it is for murder with the exception of the death ensuing from it, State v. Sutton, 340 S.C. 393, 397, 532 S.E.2d. 283, 285(2000).

Inasmuch, it is the body of the indictment(s) that is the [v]ital part of the charging instrument, State v. Tate, 345 S.C. 577, 549 S.E.2d. 601(S.C.2001), and it "[c]annot" be so cryptic or the wording so loose, vague and ambiguous as to fail to comply with the basic right of the accused to be fully informed as to the "[c]ause and [n]ature" of the accusation being levied against him, which is one of the defendant's most basic, fundamental, and universally recognized rights of Due Process, Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572(1941); State v. Tabory, 262 S.C. 136, 141, 202 S.E.2d. 852(1974)(holding that the state may not support a conviction * 334 for an offense intended to be charged by relying upon the caption to the exclusion of the language contained within the body of the indictment). Also see S.C. Code Ann § 17-25-10; United States v. Masotto, 73 F3d. 1233 cert. denied 117 S.Ct. 54, 136 L.Ed.2d. 18; Castillo v. Holder, ---F3d.---,2015 WL 161952 CA4 (2015); State v. Brandt, 393 S.C. 526, 713 S.E.2d. 591(S.C.App.2011).

Insomuch, the statutory text of S.C. Code Ann §§ 17-19-20 and 17-19-30 also as a fact of "[W]ritten [L]aw", require that the "[t]ime" of the offenses be stated in the body of the charging instrument of the indictment. The language in the charging in the charging instrument for attempted murder in question alleges that the assault occurred "ON OR ABOUT" July 28, 2013. Could this mean July 29th., 30th., August 1st., 2nd., 3rd. 4th., 7th., 10th., 13th., July 27th., 25th., 23rd., 20th., 19th., 15th.? All of these dates can be considered as "ON OR ABOUT" July 28, 2013. The State knew and could have easily allege the exact date of the supposed assault(s). This means that this failure to assert the exact time of the assault(s) was an arbitrary judicial action. Murder is a composite crime. Thus, they, by not alleging an exact time of assault have in some respects destroyed the identity of the Corpus delecti. This cannot be deemed reasonable notice. It is the appellant's contention that this is "[n]ot" a proper or sufficient "[t]ime" of assault, which is made part of the essential elements of the offense, which must be alleged within the body of the charging instrument,

passed upon by the Grand Jury and returned against the accused in accordance to the Constitutional Due Process rights of the defendant. This produces substantial prejudice, denying the defendant his right to proper and or sufficient notice, and serve to deny him the Equal Protection of the Laws.

The appellant contends, that a panel of jurors that embodied the Grand Jury upon their oaths aforesaid, stated the mortal blow and or assault occurred "ON OR ABOUT" July 28, 2013. This is not an exact time of assault. Thus, it becomes a false and invalid oath, tainting this oath producing fraud and misrepresentation requiring that the indictment(s) be quashed. It is universally recognized that every oath "[m]ust" be founded upon "[c]ertain [k]nowledge" (OMNE SACRAMENTUM DEBET ESSE CERTA SCIENTIA). The reality is that such oath was not founded upon certain knowledge where the Grand Jury who swore to such indictments, did not discover as they supposed that the exact "[t]ime" of the assault had not been alleged in the indictment. Failing to properly state the time of assault of the alleged crime are clear grounds that would demand that such a judgment be reversed, especially in light of the overwhelming prejudice to the appellant's Due Process rights. By this injustice the appellant was denied opportunity to make claims of alibi or actual innocence where the State would be permitted to assert the assault occurred on the numerous days afore claimed by alleging "ON OR ABOUT". The law is clear on this issue. No one can say what was in the mind of the Grand Jury which allowed the trial jury to speculate that the Grand Jury intended the time to be exactly July 28, 2013 where by making use of the term "ON OR ABOUT" such is not clear, or is it an exact asserted time of assault. This also denied the appellant his Due Process right to meet the charge by being able to call specific witnesses who could have clearly proven the assault did not occur on all those vague "ON OR ABOUT" dates the appellant previously listed. It is truly unnecessary to cite authority to the fact that it is absolutely essential in an indictment for murder, and in this case, attempted murder, that the exact "[t]ime" of assault and or death of the decease

party, or in thi case, the assaulted party, should be alleged therein, and in absence of such allegation said indictment is fatally defective and should be quashed and or judgment arrested upon motion made, which is done, and further, such a defective indictment is beyond the reach of amendment or repair as in a similar matter as it pertains to "[p]lace" of assault and death, for the indictment to a great extent destroys the identity of the corpus delecti, State v. Blakeney, 33 S.C. 111, 11 S.E. 637 infra State v. Stewart, 26 S.C. 125, 1 S.E. 468; Ball v. United States, 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377; State v. Platt, 154 S.C. 1, 151 S.E. 202.

In State v. Kennedy, (L.A.)(1845) 8 Rob. 590, the court in holding an indictment for murder bad, as not alleging the time and or place of the death said: "The material fact in murder are the mortal stroke and the consequent death being a composite crime, and the death "[m]ust" appear upon the record and or on the face of the indictment to have occurred within one year and a day from the time when the mortal stroke was given". The averment then of each of these material facts "[m]ust" under well established rules of criminal pleading be accompanied by an allegation of a certain time and or place, to include not alleging "ON OR ABOUT" as it pertains to time.

To amplify this proposition, in State v. Rallo, 403 S.E.2d 653 (1991), the court in relevant part stated [v]erbatim:

"It is true that the State need not prove the exact time and or date set forth in the indictment(s), unless "[t]ime" is an essential element of the offense, or is made part of it", Id. at 655.

In State v. Ham, 259 S.C. 118, 191 S.E.2d. 13(S.C.1972). The South Carolina Supreme Court stated in Haec [V]erba:

"If '[t]ime' is '[n]ot' of the essence or gist of the offense, the '[p]recise [t]ime' of which the offense is

charged to have been committed is '[n]ot' material".

On the other side of the spectrum of this language, the "[p]recise [t]ime" at which the offense is said to have been committed "[i]s" material if "[t]ime" is of the essence or gist of the offense as it is in this case.

Inasmuch, to be "ON POINT", in State v. Pierce, 207 S.E.2d 414, which is a murder precedent, the indictment charged that the offense and or crime occurred on a certain date, and does "[n]ot" charge "ON OR ABOUT". The State knew the exact time of assault and also knew that "time" was an essential element of the offense. But they figured since they thought they got away with that Gentry fraud. They continued the arbitrary act and disregarded the appellant's Due Process rights.

Hence, by the Doctrine of "STARE DECISIS ET NON QUIENTA MOVERE", an indictment "[m]ust" properly set forth all the essential elements of the offense. By Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887 (1974), it is well established and recognized under American Jurisprudence: That if an indictment fails to charge all necessary elements, it fails to charge the offense. If it fails to charge the offense, such violates the appellant's 5th., 6th., 14th. amendment rights of the U.S. Constitution, as well as Article IV § 2, and his rights of Due Process which "[v]oids" the trial court's jurisdiction for Due Process violation. Thus, the sentence and conviction "[m]ust" be vacated, United States v. Masotto supra.; Castillo v. Holder supra.; State v. Brandt supra.; United States v. Cabrera-Teron, 168 F3d. 141 (5th.Cir.1999); United States v. Pupo, 841 F2d. at 1239(4th.Cir.1988)(En Banc); United States v. Hooker, 841 F2d. 1225(4th.Cir.1988); U.S. v. $41,320 U.S. Currency, 9 F.Supp. 3d. 582, 2014 WL 1266240; White v. Manis, 2014 WL 1513280(DSC. 2014); U.S. v. Aladekcha, 2010 WL 4054267(D.C.Md.2010); Hunt v. United States, F.Supp.2d., 2007 WL 5131716(DSC.2007); Brown v. U.S., 2014 WL 2871398(DSC.2014).

83 of 115

" Legal issues of Religious "
Prophesy Exhibit # 5

≈

Did the trial court err, and was the
Applicants 5th, 6th, 14th Amendment
Rights of the US constitution violated,
As well as Article IV & 2, and his
true Process Rights

violated, by the trial court and or plea court allowing constructive amendment of the indictment(s) at the appellant's trial and or plea hearing?

Judicial notice takes place of proof. It simply means that the court will admit into evidence and consider, without proof of facts, matters of common and general knowledge, <u>Moss v. Aetna Life Ins. Co.</u> supra.; <u>State v. Broad River Power Co.</u> supra.; 31 C.J.S. Evidence §§ 6 and 9; Federal Rules Of Evidence, Rule 201(a).

This is also a manifest constitutional error. An error on the part of the trial court that has an identifiably negative impact on the proceedings to such a degree, that the constitutional rights of the party are compromised. A manifest constitutional error can be reviewed by a court of appeals even if the appellant did not object at the proceedings,(Black Law Dictionary 8th. Edition).

Subject Matter Jurisdiction can be raised at "[a]ny" time, "[c]annot" be waived by the appellant, can be raised for the first time on appeal and the court shall not fail to take notice, <u>Grupo Dalaflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567, 124 S.Ct. 1920, 158 L.Ed.2d. 866(U.S.2004); <u>Loumiet v. United States</u>, 65 F.Supp.3d. 19(2014); <u>U.S. v. $41,320 U.S. Currency</u>, 9 F.Supp.3d. 582, 2014 WL 1266240; <u>South Carolina Department Of Social Services v. Tran</u>, 418 S.C. 308, 792 S.E.2d. 254(S.C.App.2016); <u>McCain v. Brightharp supra.</u>.

It is the body of the indictment which is the [v]ital part of the charging instrument, <u>State v. Tate supra.</u>, and it "[c]annot" be so cryptic or the wording so loose and ambiguous as to fail to comply with the basic right of the accused to be fully informed as to the "[c]ause and [n]ature" of the accusation being levied against him, which is one of his most basic, fundamental, and universally recognized rights of Due Process, <u>Smith v. O'Grady supra.</u>; <u>State v. Tabory supra.</u>. Reliance upon

a caption to bolster a fatally defective indictment is therefore
contrary to the constitutional mandate that for most offenses,
a defendant may only be required to answer an indictment of
a Grand Jury that is deemed good, S.C. Const. Article 1 § 11;
cf. State v. Tabory supra. (holding that the state may not sup-
port a conviction for an offense intended to be charged by rely-
ing upon the caption to the exclusion of the language contained
within the body of the indictment).

        Insomuch, the indictment(s) for attempted do not properly
and or sufficiently apprise the appellant of the "[c]ause and
[n]ature" of the offense, or of what he is called upon to meet
and defend because they do not allege an exact time of assault
as time is recognized by law. The  wording is too loose, and
vague making use of the term "ON OR ABOUT". Such deprives the
appellant of the right to call witnesses to defend the cause
because he cannot establish an exact date. It deprives him of
the right to establish alibi not being certain of said exact
date. "ON OR ABOUT" July 28, 2013 can be any day within a (3)
month radius before or after that date. The material fact in
murder are the mortal blow and the subsequent death occurring
from it being a composite crime and the death "[m]ust" appear
upon the record or indictment as having occurred within a year
and a day of each other,(ei. when the mortal blow was given).
The averment then of each of these material facts [m]ust under
well established Rules of Criminal pleading be accompanied by
an allegation of a certain time and or place to include not
alleging "ON OR ABOUT" as it pertains to time. Assault and Bat-
tery With Intent To Kill embraces the whole of attempted murder
and visa versa. The elements to prove the crimes are the same
as it is for murder with the exception of the death ensuing
from it. The indictment(s) for attempted murder also do not
allege who it was that the appellant conspired with as is the
same as the conspiracy indictment(s). The Attempted murder in-
dictment(s) do not allege what weapon it was that was allegedly
used in the crime. No one can say what was in the mind of the
Grand Jury as to what exact date of the assault was to be adjudi-

67 of 115

cated, being an essential element of the offense. The indictments don't say who it was that the appellant conspired with. As far as the appellant can tell, the indictment asserts that he went back in a time machine and brought back Napolean Bonapart, Genghis Khan, John Wayne and Julius Ceasar and conspired with them. As far as the appellant can tell from the indictment(s) he was in possession of a M-60 machine gun or a surface to air rocket launcher. No one can say what was in the mind of the Grand Jury. The language is too vague, subjecting the appellant to arbitrary judicial action and process. The language is so cryptic, loose and vague it creates an enigma as to what the appellant is called upon to meet and defend setting the appellate up for "INDICTMENT AMBUSH" at the onset of his proceedings. The indicments cannot be deemed sufficient if the prosecution is permitted to prove all these different material sets of facts. The indictments in question do not descend to an exact time and or who it was the appellant conspired with or what weapon was used. These crucial elements and or averments must be passed upon by the Grand Jury in accordance to the constitutional rights of the accused. To not allege these crucial elements and or allegations in the body of the charging instrument returned against the accused, having them passed upon by the Grand Jury, then, thereafter the trial court and or plea court and or prose-cuting body adds or modifies these material averments in one form or the other, to assert these crucial elements and or aver-ments, not confirmed or passed upon by the Grand Jury within the proceedings, and allow a trial and or plea hearing to go forward, where such were not passed upon by the Grand Jury, is constructive amendment of the indictment(s). No one can say what was in the mind of the Grand Jury, See S.C. Code Ann. §§ 17-19-10, 17-19-20, 17-19-30, 17-25-10; State v. Hardee supra.; State v. Rallo supra.; State v. Parker supra.; Locke v. State supra.; State v. Tate supra.; State v. Tabory supra.; United States v. Abrams supra.; State v. Keith supra.; State v. Rector supra.; Smith v. O'Grady supra.; United States v. Masotto supra.; Castillo v. Holder supra.; State v. Brandt supra.; State v. Blakeney supra.; State v. Stewart supra.; Ball v. United States

supra.; <u>State v. Platt supra.</u>; <u>State v. Kennedy supra.</u>; <u>State v. Ham supra.</u>; <u>State v. Pierce supra.</u>; <u>Hamling v. United States supra.</u>; <u>United States v. Hooker supra.</u>; <u>United States v. Pupo supra.</u>; <u>U.S. v. $41,320 U.S. Currency supra.</u>; <u>State v. Sutton,</u> 340 S.C. 393, 397, 532 S.E.2d. 283, 285(2000).

    In regard to the constitutional structural error and or defect in the indictment(s), as constructed in all (33) states that make use of an indictment, also the remaining (17) states that make use of a criminal complaint, and all (50) states that make use of an indictment under Federal captivity, taking away the presumption of innocence and automatically shifting the burden of persuasion, predetermining in advance the outcome of the proceedings by the language contained therein. According to the findings and or language of the indictment(s) produced by The Grand Jury, under the plain language Rule, the appellant is already found guilty and convicted. The Grand Jury does not have the power and authority by State and or Federal Law, or by State and or Federal Constitution to convict a defendant. The law is clear. The Grand Jury "[m]ust" refrain from even making an "[o]pinion" as to a person's guilt. How much more egregious and criminal where they swear upon their "[o]ath" (emphasis added) our guilt? This is an egregious violation of their shielding function. This serves to aid in establishing modern day slavery which too, they do not have the power or authority to do, where we can no longer be deemed **"DULY"**--meaning **"PROPERLY"** convicted in violation of S.C. Code Ann § 17-25-10, Due Process Law and the provisions of the 13th. amendment. For the Grand Jury to produce indictments that state, adjudicate and or charge that the defendant is not only guilty of the crimes charged, to include the "MENS REA" elements related to the of-fenses; then, thereafter, the court alters the charge(s) of the indictment(s), to include the "MENS REA" elements, and charge that the defendant is innocent until proven guilty, and the State court or Federal government or prosecuting agents aid them, conspiring under color of state law and or authority, turning the blind eye and deaf ear in doing so, is constructive

amendment of the indictment(s), and changes the very nature
of the allegations returned by the Grand Jury. This too creates
an instant double jeopardy issue. To accept a guilty plea, and
or to take a defendant to trial on charges in an indictment
for which he has already been found guilty of, violates Due
Process and is double jeopardy. No one can say what was in the
mind of the Grand Jury as to whether or not they intended to
illegally take upon themselves the role of the trial jury and
determine guilt of the offenses not allowing any subsequent
adjudication to occur rendering any subsequent proceeding
"[v]oid" for Due Process violation. This means that this is
an error which can only be corrected by the Grand Jury and not
the trial jury, prosecutor or court. Even the Gentry court could
not adjudicate that case where it was prematurely determined
by the Grand Jury. This produces a Subject Matter Jurisdiction
issue under the Double Jeopardy Clause and law, which is to
be adjudicated under the Due Process violation prong to Subject
Matter Jurisdiction. This further serves to validate that the
structural constitutional error and or defect affect the frame-
work of the proceedings and cannot be viewed as harmless, because
the court "must" constructively amend the indictment(s) on the
"MENS REA" element(s) of the offense(s) to correct, or in an
effort to correct the structural constitutional error in acts
of fraud upon the court and modern day slavery, The Amistad
supra.; State v. Easler, (S.C.1997) 327, 121, 489 S.E.2d. 617;
State v. Lewis, (S.C.App.1996) 321 S.C. 146, 147 S.E.2d. 265;
Sandstrom v. Montana supra.; Morisette supra.; United States
Gypsum Co. supra.; Humanik v. Beyers supra.; United States v.
Clemens supra.; Martin v. Ohio supra.; Robinson v. Arvonio supra.
; United States v. Briggs supra.; United States v. Chadwick
supra.; Compare Pierson v. Ray supra.; Jenkins v. McKeithen
supra.; Branzburg v. Hayes supra.; Moore v. Dempsey, 43 S.Ct.
265, 67 L.Ed. 542(1923); United States v. Direct Sales Co.,
40 F.Supp. 917 D.C.S.C.(1941); United States v. Atlantic Commis-
sion Co., 45 F.Supp. 187 D.C.N.C.(1942); State v. Boyd, 2 Hill
(S.C.) 288, 1834 WL 1573 S.C. App. L. & Esq. 1834; State v.

tarily or intelligently given, depriving the appellant of reason-
able notice and of his right to have material averments passed
upon by the Grand Jury in egregious violation of the appellant's
substantial rights of Due Process. This occurred when the charg-
ing terms of the indictment were altered literally and or con-
structively in the manner aforementioned. S.C. Code Ann § 17-
19-100(1985) permit amendment of an indictment provided the
nature of the offense charged is [n]ot changed. If (A) there
is a defect in form in any indictment. or (B) on the trial of
any case there shall appear to be any variance between the alle-
gations of the indictment(s) and evidence offered in proof
thereof, the court before which the trial may be had may amend
the indictment(s) according to the proof, if the amendment be
because of variance, if such amendment does "[n]ot" change the
"[n]ature" of the offense charged. After such amendment the
trial and or plea hearing should proceed in all respects and
with the same consequences as if the indictments had originally
been returned as so amended, unless such amendment shall operate
as to surprise the defendant, in which case the defendant shall
be entitled upon demand to a continuance of the cause.

A variance between pleadings and proof is [n]ot material
where matter alleged is [n]ot an [e]lement of the offense, State
v. Hiott, 276 S.E.2d. 163.

On the other side of the spectrum of this language, a
variance between pleadings and proof "[i]s" material where matter
alleged "[i]s" an element of the offense; and furthermore, such
an amendment cannot be had if such amendment changes the "[n]a-
ture" of the offense, Hope v. State, 328 S.C. 78, 492 S.E.2d.
76; State v. Grainger, 507 S.E.2d. 322(S.C.1998); United States
v. Naidu, 480 Fed. Appx' 180 CA4 (Md.2012); United States v.
Allmendinger, 706 F3d. 330 CA4 (Va.2013); State v. Green, 406
S.C. 589, 753 S.E.2d. 259(S.C.App.2014).

Once the nature of the elements became altered in the
manner aforementioned, the indictment(s) were no longer to be
considered the indictment(s) returned against the appellant.

A defendant is entitled to be tried and or give his guilty plea on charges that are properly set forth in an indictment and such properly set forth charges must be passed upon by the Grand Jury, S.C. Code Ann § 17-19-10(1976). The true test of the sufficiency of an indictment is whether or not it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he is called upon to meet and defend. The essential elements and or allegations in this instance are not alleged. The indictments for attempted murder do not allege an exact date to the extreme prejudice of the appellant. "ON OR ABOUT" can reasonably be considered to be any of the days asserted expanding at minimum (3) months in either direction of July 28, 2013. The indictments in question do not allege who it was the appellant supposedly consired with or what weapon was used in the alleged crime. The indictment(s) are too vague and do not descend to these particulars. Further, by the language and or charge of the indictment(s) as contructed, via the structural error, it informs the appellant that he is called upon to meet the burden of production on the critical elements of dispute related to the offenses. By the mandates of Due Process law, the appellant is not, by State or Federal Constitution, nor by State or Federal law, called upon to meet the burden of production on the critical elements of dispute related to the offense(s). The indictment(s) inform the appellant that his guilt is illegally predetermined in advance under "[o]ath"(emphasis added) and the appellant is being subjected to another proceeding on the same charges, which produce an instant Double Jeopardy claim, and fraud upon the court, misrepresentation and modern day slavery due to this fraud, Brown v. State supra.; Mathis v.State supra.; Francis v. Franklin supra.; United States v. Abrams supra.; Martin v. Ohio supra.; IN RE: Winship supra.; Mullaney v. Wilbur supra.; Humanik v. Beyers supra.; Moore v. Dempsey supra.; The Amistad supra.; Callon Petroleum Co. v. Frontier Ins. Co. supra.; Appling v. State Farm Mut. Auto Ins. Co. supra.; King v. First American Investigators Inc. supra.; S.C. Code Ann § 17-25-10.

What's worse than this, the indictment(s) not only by

73 of 115

their very nature already prematurely in advance convict the
appellant of all charges made and or laid before the court,
denying the appellant the presumption of innocence, but it also
creates this egregious, blatant, outrageous violation of Due
Process where the indictment(s) by the structural constitutional
error and or defect, has denied the appellant the right to a
trial by a jury of one's peers; denied the appellant the right
to confront his accusers or cross-examine witnesses; denied
the appellant the right to call witnesses in his defense or
to present expert testimony; denied the appellant the right
to take the stand and testify at his proceedings; denied the
appellant the right to place forth evidence that would vindicate
him at trial; denied the appellant the right to counsel of choice
, way before a trial jury was sworn, not this illegal trial
jury in the form of the Grand Jury who swore upon their "[o]ath"
the appellant's guilt, way before a trial commenced satisfying
these essential constitutional requirements of Due Process law;
or way before he voluntarily, freely, intelligently or knowingly
gave them up if we are dealing with a guilty plea, also way
before he hired counsel or way before the court appointed legal
counsel to assist the appellant. With the existence of the struc-
tural error and or defect, the court has attempted to close
the barn door far after the time the horses have already been
released and or escaped. The Grand Jury being duly sworn, in
clear violation of their shielding function has taken upon them-
selves the role of the trial jury, and has already convicted
the appellant of the crimes charged under "[o]ath"(emphasis
added). To permit the appellant to obtain counsel of choice
after this egregious injustice, or to appoint counsel after
the appellant has already been illegally convicted by the Grand
Jury, and deny the appellant the previous mentioned constitu-
tional rights involve deprivation of constitutional protection
so basic and so fundamental that in their absence no criminal
trial and or proceeding can be deemed reliable as a vehicle
for the determination of guilt or innocence, and no criminal
punishment can be regarded as fundamentally fair, because such
action has prematurely, criminal, stripped the appellant of

his inalienable rights of Due Process, also in violation of
The Taking Clause of the 5th. amendment. The State acting un-
justly, arbitrarily under color of State law, causing extreme
prejudice to the appellant's proceedings, in violation of 18
U.S.C. §§ 241, 242, 1001, have blatantly failed to adhere to
their own State laws and has denied the appellant the Equal
Protection Of the Laws. Since the appellant's guilt was already,
unjustly, arbitrarily determined and or adjudicated by the struc-
tural constitutional error and or defect via the Grand Jury
indictments and or criminal complaints nationally under "[o]ath"
in acts of fraud upon the court; this serves to make any other
subsequent proceeding initiated "[v]oid", "[n]ullified",
"[a]rrested" and a violation of the 5th. and 6th. amendments
also the appellant's rights of Due Process, to include his right
to Double Jeopardy protection. How can the court be allowed
and or permitted to have a trial and or accept a guilty plea
for an offense the Grand Jury who swore upon their "[o]ath",
have already found the appellant guilty of? This "[c]annot"
be cured by an instruction that constructively amends the in-
dictments on the "MENS REA" elements. By their actions and fraud
upon the court they have essentially established modern day
slavery, branding us as felons, taking away our right to vote
in violation of the 15th. amendment and Voting Rights Act. Con-
gress confers no power or authority upon any court, State or
Federal the right to establish modern day slavery of any kind
in violation of the not being **"DULY"** (emphasis added) convicted
provisions of the 13th. amendment and Anti-Peonage Act, depriving
them of jurisdiction, or voiding their jurisdiction, or prohi-
biting them from entertaining jurisdiction from the cases' onset,
demonstrating that they inappropriately entertained jurisdiction
rendering all action done void, stripping all judges and courts
of immunity. The Structural constitutional error and or defect
does affect the proceedings and "[c]annot" be deemed as harmless.
The framework is essentially abolished. The extreme prejudice
is obvious and need not be debated any further, <u>The Amistad</u>
<u>supra.</u>; <u>Chewing v. Ford Motor Company supra.</u>; <u>Appling v. State</u>

Farm Mut. Auto Ins. Co. supra.; State v. Easler, (S.C.App.1997) 327 S.C. 121, 489 S.E.2d. 617; State v. Lewis, (S.C.App.1996), 321 S.C. 146, 147 S.E.2d. 265; State v. Guthrie, 352 S.C. 103, 572 S.E.2d. 309; Vines v. United States, 28 F3d. 1123 Crim. Law 1116(1), 1156(1); State v. Reddick, 348 S.C. 631, 635, 560 S.E.2d. 441, 443(Ct.App.2002); State v. Padgett, 354 S.C. 268, 271, 580 S.E.2d. 159, 161(Ct.App.2003); State v. Honey, 344 S.C. 85, 97, 544 S.E.2d. 30, 36(2001); Griswald v. State Of Connecticut, 381 U.S. 481, 85 S.Ct. 1678(1965); Carter v. State, 329 S.C. 355, 362, 495 S.E.2d. 773, 777(1998); 28 U.S.C.A. § 1654; Turner v. American Bar Ass'n, D.C. Tex. 1975, 407 F.Supp. 457 Aff'd 539 F2d. 715 Aff'd 542 F2d. 56; Faretta v. California, 422 U.S. at 835n. 46, 95 S.Ct. at 2541, 45 L.Ed.2d. 562, 592 (1975); Wiggins v. Estelle, 681 F2d. 266(1982); United States v. Gonzales-Lopez, 548---U.S.---2006; Chaplin & Drysdale Charter-ed v. United States, 491 U.S. 617, 624-625(1989); Rodriguez v. Chandler, 382 F3d. 675, 676 (CA 7 2004) cert. denied 543 U.S. 1156(2005); Stirone v. United States supra.; United States v. Silverman, 30 F2d. 106, 110 (2nd.Cir.) listing these functions modified 439 F2d. 198(2nd.Cir.1970), 91 S.Ct. 1619(1971); Martin v. Ohio supra.; Francis v. Franklin supra.; Mathis v. State supra.; United States v. Abrams supra.; Moore v. Dempsey supra.; Roberts v. State, 408 S.C. 123, 757 S.E.2d. 744(S.C.App.2014); Eppenger v. McFadden, 2014 WL 4198862(DSC.2014); Blanding v. Warden McCormick C.I., 2014 WL 3809656(DSC.2014).

The requirement of the indictment(s) limit and constrain the Subject Matter Jurisdictionary "[p]owers" of both the prosecution and the court, by limiting what can be presented at trial, conviction and sentencing, United States v. Promise, 255 F3d. 150(4th.Cir.2001); State v. Guthrie supra.. It is the command of The United States Constitution, that anything to the contrary is notwithstanding (Article IV § 2 U.S. Const.).

Again, the State and or prosecuting body, acting unjustly, arbitrarily, conspiring under color of state law, has failed to adhere to their own state laws, in egregious violation of

the appellant's substantial Federal Constitutional rights of
Due Process, serving to deny the appellant the Equal Protection
Of The Laws against unjust and arbitrary prosecution, also in
violation of 18 U.S.C. §§ 241, 242 and 1001, <u>Screws v. United
States supra.</u>; <u>State v. Middleton supra.</u>; <u>Eslinger v. Thompson
supra.</u>; <u>McLaughlin v. Florida supra.</u>; <u>Jones v. State Of Arkansas
supra.</u>; <u>Dubinka v. Judges Of Superior Court Of The State Of
California, For The County Of Los Angeles supra.</u>; <u>Dozier v.
Loop College, City Of Chicago supra.</u>; <u>Hicks v. Oklahoma supra.</u>;
<u>Lugar v. Edmondson Oil Co. Supra.</u>; <u>Williams v. United States
supra.</u>; <u>Greenwood v. Peacock supra.</u>; <u>United States v. Otherson
supra.</u>.

In <u>Wilson v. Lindler,</u> 995 F2d. at 1256, it was held that
constructive amendment of an indictment, sometimes referred
to as fatal variance, denies the criminal defendant the funda-
mental guarantee of notice of the charges pending against him.
This right is safely guarded and embodied within the 6th. amend-
ment, the 5th. amendment Indictment Clause, and the appellant's
14th. amendment rights of Due Process, as well as pursuant to
the appellant's right to equal protection of the laws against
arbitrary prosecution and these requirements must be adhered
to and not denied. Therefore, due to the enormous amount of
prejudice experienced by the appellant, the sentence and convic-
tion must be vacated, <u>State v. Daniels,</u> 401 S.C. 251, 737 S.E.2d.
473(S.C.App.2012); <u>United States v. Kirby,</u> 547 Fed. Appx' 363
CA4 (N.C.2013); <u>Placencia v. McFadden,</u> 2014 WL 2199984(DSC.2014);
<u>Sullivan v. Cartledge,</u> 2014 WL 994237(DSC.2014); <u>Van de Kamp
v. Goldstein,</u> 555 U.S. 355(2009); <u>Dennis v. Wetzel,</u> 966 F.Supp.2d
489(ED.Pa.2013); <u>Kaley v. United States,</u> 134 S.Ct. 1090(U.S.2014)
; <u>United States v. Direct Sales Co. supra.</u>; <u>United States v.
Atlantic Commission Co. supra.</u>; <u>State v. Boyd supra.</u>; <u>State
v. Bramlette supra.</u>; <u>Roberts v. State,</u> 408 S.C. 123, 757 S.E.2d.
744(S.C.App.2014); <u>State v. Green,</u> 406 S.C. 589, 753 S.E.2d.
259(S.C.App.2014); S.C. Code Ann § 17-25-10; <u>U.S. v. Aladekcha,</u>
2010 WL 4054267(D.C.Md.2010); <u>White v. Manis,</u> 2014 WL 1513280
(DSC.2014); <u>U.S. v. $41,320 U.S. Currency,</u> 9 F.Supp.3d. 582,
2014 WL 1266240.

"Legal issues of Religious"
Prophesy Exhibit # 6

2

ISSUE NUMBER 10:


SEE EXHIBIT, "GENTRY FRAUD". THE LITIGATION FOR THIS ISSUE IS ATTACHED. IT IS ARGUED FOR MY INDICTMENT DEFECT ISSUES SUCH AS THE INDICTMENT NOT PROPERLY ALLEGING THE "[T]IME" OF THE ASSAULT AND THE CONSTITUTIONAL STRUCTURAL ERROR WHERE THE INDICTMENT TAKES AWAY THE PRESUMPTION OF INNOCENCE AND SHIFTING THE BURDEN OF PERSUASION ISSUE, ISSUE NUMBER 1 IN THIS DOCUMENT.


EXHIBIT, "GENTRY FRAUD"

( ) Did the S.C. Supreme Court in State v. Gentry supra.
err, engaging knowingly, intentionally in acts of fraud upon
the court, in their efforts to essentially establish modern
day slavery in violation of the Anti-Peonage Act, and abused
their discretionary "[p]owers", which they even conspired to
take away our right to vote, and or done so surreptitiously
, in violation of the Voting Rights Act. And in such, the court's
jurisdiction was made void for Due Process violation, and the
court was prohibited from enacting and or invoking and or con-
tinuing its Subject Matter Jurisdictionary "[p]owers", even
though they do indeed possess such "[p]ower" via state legisla-
tive statute and or Congressional intent, due to the indictment
defects and or errors contained and argued within this document,
in violation of the appellant's 4th., 5th., 6th., 13th., 14th.,
15th. Amendment rights of the U.S. Constitution, as well as
Article IV § 2, also 42 U.S.C. §§ 1983, 1985(2), 1985(3), 1986;
18 U.S.C. §§ 241, 242, and the laws of Due Process?

The appellant did not object to these defects and or
errors at the time of his trial and or before he gave his guilty
plea, but the defects and or errors serve to render the indict-
ments wholly invalid. Defects in an indictment that are of such
a fundamental character as to render an indictment wholly invalid
are not subject to waiver by the defendant, 41 Am. Jurs.2d.
Indictments and Information § 299(1968); State v. Munn supra..

Judicial notice takes place of proof. It simply means
that the court will admit into evidence and consider, without
proof of facts, matters of common and general knowledge. We
are arguing against the precedent established by State v. Gentry
pursuant to S.C. Appellate Court Rule 217, Moss v. Aetna Life
Ins. Co. supra.; State v. Broad River Power Co. supra. 31 C.J.S.
Evidence §§ 6 and 9; Federal Rules Of Evidence, Rule 201(a).

This is also a manifest constitutional error. An error
, fraud and machination on the part of the South Carolina Supreme
Court that has an identifiably negative impact on all proceedings
to such a degree, that the constitutional rights of all defen-

dants within this state, including the appellant's are compro-
mised. A manifest constitutional error, violations of the Anti-
Peonage Act and fraud upon the court of this magnitude cannot
be waived, is not subject to any time limits, and can be reviewed
by a court of appeals even if the appellant did not object at
the proceedings, especially in light of the fact that the court's
decision and fraudulent actions disproportionately effect African
Americans and all other inmates within this state and potentially
around the nation, (Black Law Dictionary 8th. Edition); The
Amistad supra.; Callon Petroleum Co. v. Frontier Ins. Co. supra.;
Digital Equip. Corp. v. Desktop Direct Ins., 511 U.S. 863, 868,
114 S.Ct. 1992, 1996, 128 L.Ed.2d. 842(1994); Chewing v. Ford
Motor Company supra.; Appling v. State Farm Mut. Auto Ins. Co.
supra.; King v. First American Investigators Inc., 287 F3d.
91, 92(2nd.Cir.2002) cert. denied 537 U.S. 960, 123 S.Ct. 393,
154 L.Ed.2d. 314(2002); The Anti-Peonage Act Of The 13th. Amend-
ment; The Rico Act; Ex Parte Virginia, 100 U.S. 339, 346, 25
L.Ed. 676(1880).


   The appellant contends, that the indictment(s) for at-
tempted murder do not properly allege the "[t]ime" of the assault
which is an essential element of the offense. The indictment(s)
for attempted murder or the conspiracy indictment allege who
it was that the appellant supposedly conspired with. The at-
tempted murder indictment(s) do not allege what weapon the appel-
lant was supposedly in possession of. None of these essential
elements and or allegations are alleged within the body of the
charging instrument. This prejudiced the appellant when it came
time to seek a direct verdict which is why the court and parties
conspiring under color of state law, in acts of fraud upon the
court denied the motion for severance, violating the appellant's
Due Process rights voiding their jurisdiction for Due Process
violation. These actions placed the appellant at a substantial
disadvantage, which is why the state in acts of conspiring under
color of state law tried the appellant and his co-defendant
together to conceal these fatal deficiencies, knowing fully
well the indictments were extremely vague setting the appellant

up for "Indictment Ambush" at the onset of his proceedings.
The indictments "[c]annot" be deemed sufficient if the state
is permitted to prove all these materially different sets of
facts. The indictment(s) do not descend to the essential parti-
culars. All the aforementioned "[m]ust" be alleged in the body
of the charging instrument and passed upon by the Grand Jury
in the indictments returned against the accused in accordance
to the constitutional Due Process rights of the defendant. This
cannot be deemed as reasonable notice. No one can say what was
in the mind of the Grand Jury, State v. Pierce supra.; State
v. Sutton supra.; State v. Platt supra.; State v. Rector supra.;
State v. Blakeney supra.; State v. Munn supra.; State v. Rallo
supra.; State v. Tate supra.; State v. Tabory supra.; State
v. Keith supra.; State v. Hardee supra.; Locke v. State supra.;
State v. Wilkes supra.; United States v. Daniels supra.; United
States v. Abrams supra.; United States v. Hooker supra.; Russell
v. United States supra.; Hamling v. United States supra.; United
States v. Pupo supra.; Castillo v. Holder supra.; State v. Brandt
supra.; Robinson v. Cohen supra.; United States v. Cohen supra.;
United States v. Gomez supra.; Carr v. United States supra.;
United States v. Robare supra.; United States v. Umana supra.;
United States v. Dinkins supra.; James v. Reynolds supra.; Sulli-
van v. Cartledge supra.; Dech v. Missouri supra.; Clark v. Ari-
zona supra.; United States v. Whitfield supra.; United States
v. Mills supra.; United States v. Naidu supra.; United States
v. Allmendinger supra.; State v. Green supra.; Roberts v. State
supra.; Eppenger v. McFadden supra.; Blanding v. Warden McCormick
Correctional Institution supra.; State v. Daniels supra.; United
States v. Kirby supra.; Van de Kamp v. Goldstein supra.; Dennis
v. Wetzel supra.; Plecencia v. McFadden supra..

The appellant further contends, that the indictment(s)
do [n]ot properly and or sufficiently apprise the appellant
of the "[c]ause and [n]ature" of the accusation(s), or of what
he is called upon to meet and defend, because the structural
constitutional error, defect, language and or charge embodied
within the indictment(s) and criminal complaints around the

nation indicate and or inform the appellant, that the burden
of production belongs to the appellant and not the government.
By such the indictments also violate S.C. Code Ann §§ 17-19-
10, 17-19-20 and 17-25-10. The language and or charge in the
indictments indicate and inform the appellant that he is called
upon to meet the burden of production on the critical elements
of dispute, in violation of the appellant's 6th. amendment rights
, the relevant statutes, and Due Process Law. They also violate
the appellant's 4th. amendment rights to illegal seizure, his
5th. amendment rights to double jeopardy protection, because
they predetermine in advance the outcome of the proceedings,
taking away our presumption of innocence, and they inform the
appellant that for a second time he is made to plea and or go
to trial on a prior conviction for the same offense which pro-
duces fraud upon the court, modern day slavery in violation
of The Anti-Peonage Act because you force us to work once con-
victed to up keep these institutions. Then you take away our
right to vote once convicted in violation of the 13th. 15th.
amendments and the Voting Rights Act, The Rico Act, and the
holdings made in Ex Parte Virginia, 100 U.S. 339(1880). They
infringe upon the appellant's 14th. Amendment right to Equal
Protection of the Laws against unjust, arbitrary judicial action
and prosecution behind a class based invidiously discriminatory
animus because the action disproportionately effect African
Americans and other minorities in violation of the holdings
made in Ex Parte Virginia. The Grand Jury "[m]ust" refrain from
even making an "[o]pinion" (emphasis added) as to our guilt.
Yet, here these Knuckleheads swear an "[o]ath", under "[o]ath"
mind you, our guilt foreclosing legally any subsequent adjudica-
tion. The Grand Jury by State or Federal law, or State or Federal
Constitution, do "[n]ot" have the power to convict. This cannot
be deemed reasonable notice. No one can say what was in the
mind of the Grand Jury as determining whether or not they intend-
ed any subsequent adjudication to occur once they themselves
determined guilt. Due to the structural constitutional error
and or defect in the construction of the indictment(s) and or
criminal complaints around the nation, they do "[n]ot" properly,

sufficiently or fully apprise the appellant of the "[c]ause and [n]ature" of the accusation being brought against him, or of what he is called upon to meet and defend, State v. Lewis supra.; State v. Easler supra.; Mathis v. State supra.; Brown v. State supra.; State v. Browning supra.; State v. Munn supra.; Moore v. Dempsey supra.; The Amistad supra.; Callon Petroleum Co. v. Frontier Ins. Co. supra.; Digital Equip Corp. v. Desktop Direct Ins. supra.; United States v. Direct Sales Co. supra.; United States v. Atlantic Commission Co. supra.; State v. Boyd supra.; State v. Bramlett supra.; Beck v. Washington supra.; State v. Tollin supra.; Byers v. Reynolds supra.; United States v. Jefferson supra.; In Re: Grand Jury Subpoena John Doe, No. 05GJ1318 supra.; In Re: Grand Jury Subpoena (T-112) supra.; United States v. Umana supra.; United States v. Dinkins supra.; Dickerson v. Warden Of Lieber C.I. supra.; James v. Reynolds supra.; Sullivan v. Cartledge supra.; Clark v. Arizona supra.; Deck v. Missouri supra.; Skilling v. United States supra.; Kaley v. United States supra.; Placencia v. McFadden supra.; Jeandron v. Board Of Regents Of University System Of Maryland supra.; United States v. Whitfield supra.; United States v. Mills supra.; United States v. Naidu supra.; Roberts v. State supra.; State v. Green supra.; United States v. Kirby supra.; United States v. Allendinger supra..

    This is how this thing went. The inmates of South Carolina were basically getting out of prison by arguing the defects within their indictments. The inmates convicted for murder discovered that there was a fatal flaw in the murder indictments related to "time and place", being essential elements of the offense. The South Carolina Supreme Court, in efforts to stop the inmate exodus from prison, engaged in acts of fraud upon the court in efforts to establish modern day slavery behind racial hatred, even with the black overseer type judges, came up with a plot, plan and scheme to defraud the inmates of this state in their acts of machination in violation of the holding

made in the U.S. Supreme Court case Ross v. Blake, 136 S.Ct.
1850(2016). They knew that beforehand in order to make a fair
determination regarding the issue of Subject Matter Jurisdiction.
It was required that the court review Ex Parte Bain, Russell,
Stirone and Gaither collectively, but they purposely did not
do so in order to hatch their plan. If you do not review them
together, they knew you can make a fraudulent determination
and no one would be the wiser. So, the judges of the South Caro-
lina Supreme Court, conspiring under color of law behind a class
based invidiously discriminatory animus, placed the numerous,
voluminous pending criminal cases on hold, staying them, many
for as long as over (4) or (5) years to allow them to go on
a "FISHING EXPEDITION" in search of case law that was vague
and ambiguous enough to allow them to enact their acts of fraud
and machination. After this exhaustive search for (5) or more
years, criminally holding these inmates cases in limbo. The
conspiring judges found Cotton and Parkhurst, that would permit
them to circumvent the holdings made in Stirone, Gaither and
Russell via this fraudulent "FISHING EXPEDITION", due to these
newly found cases being adjudicated under the incorrect prong
to subject Matter Jurisdiction, Mitchell v. Conseco Life Ins.,
F.Supp.2d., 2013 WL 2407129(DSC.2013); J & J Sports Productions
Inc. v. Wofford, 2014 WL 2980250(DSC.2014); United States v.
McDonald, 444 Fed. Appx' 710 CA4 (Va.2011); Gindi v. Strategic
Outsourcing, Inc., F.Supp.2d., 2012 WL 7761543(DSC.2012); State
v. Jones, 364 S.C. 51, 610 S.E.2d. 846(S.C.App.2005).

This is what the S.C. Supreme Court judges specifically
wanted. They wanted these specific cases to permit them to per-
petrate the fraud and machination even though they knew there
were other U.S. Supreme Court cases that gave greater clarity,
which is why Plecones, honorable soul that he is, jumped ship.
He knew what they were doing. They knew Ex Parte Bain, U.S.
V. Cotton and Parkhurst were vague and ambiguous in that these
cases found via the "FISHING EXPEDITION" never addressed the
"[j]urisdictional [p]rerequisite" Due Process element, aspect
or requirement of the indictment and adjudicated this clear

Due Process issue under the incorrect prong to Subject Matter
Jurisdiction. U.S. v. Cotton used "word play", "verbal voodoo",
"word winx" to evade the essential question related specifically
to the "[p]rerequisite" aspect and requirement of the indictment
as it relates to jurisdiction, which is a Due Process claim
that "[v]oid" jurisdiction for Due Process violation. Please
note that nothing in U.S. v. Cotton stated that they were over-
ruling Stirone, Gaither or Russell,...why? Its because we are
dealing with two separate and independent questions related
to Subject Matter Jurisdiction, essentially two prongs. One
being certain courts jurisdiction itself. The second being the
"[p]rerequisites" and or "[r]equisites" that are attached to
that jurisdiction, which is a Due Process claim that "[v]oids"
jurisdiction for Due Process violation, the corrupt devils that
they are, Loumiet v. United States, 65 F.Supp.3d. 19(2014);
U.S. v. $41,320 U.S. Currency, 9 F.supp.3d. 582, 2014 WL 1266240
(2014); U.S. v. Aladekcha, 2010 WL 4054267(D.C.Md.2010); White
v. Manis, 2014 WL 1513280(DSC.2014).

    The S.C. Supreme Court judges, in acts of fraud upon
the court and machination, only reviewed Ex Parte Bain because
it was vague on the "[p]rerequisite" and or "[r]equisite" Due
Process issue itself, then added Cotton and Parkhurst because
they knew these cases were adjudicated in the same vein, which
did not address the prerequisite Due Process requirement of
the indictment, which must be adjudicated under the Due Process
prong to Subject Matter Jurisdiction, they came up with the State
v. Gentry case, in acts of fraud upon the court and machination
to halt the pending inmate exodus. Conspiring under color of
state law in violation of 42 U.S.C. §§ 1983, 1985(2), 1985(3),
1986; 18 U.S.C. §§ 241, 242, 1001, by order of stay, they held
Gentry and the massive number of pending cases in limbo, many
for over (5) years, until they were time barred from seeking
review in the S.C. U.S. District Court. The S.C. U.S. District
Court Judges conspiring with them, under color of authority
and or law, were privy to this aided the conspiring state judges,
courts and actors such as the S.C. Attorney General; knowing

fully well the vast number of inmates whose cases were criminally held in limbo, many for over (5) years, lacked the intelligence to argue past the successive or statute of limitations placed upon them via PLRA and or AEDPA provisions, warranting the re- cusal and or disqualification of the S.C. U.S. District Court and 4th. Circuit; and all these cases in total be transferred to the State Of New Jersey District Court pursuant to 28 U.S.C. §§ 1404 and 1407. We motion for such.

Similar acts were done with intelligence test during reconstruction to deny minorities the right to vote. "How many jelly beans are in this jar?" "How do you get past the Statute of limitations or successive issues placed upon you by PLRA or AEDPA provisions?" It is a similar criminal act argued in Ex Parte Virginia, 100 U.S. 339(1880), in their white racial bonding. This produces fraud upon the court, machination in violation of the holdings made in Ross v. Blake, 136 S.Ct. 1850 (2016), demonstrating that we do not have to exhaust. It esta- blishes a form of modern day slavery by that fraud and machina- tion as is defined within The Convention Against Torture Treaty that Congress signed off on and ratified binding this nation and all states contained therein, where you force us to work to up keep these institutions and other forced labor while in captivity. Then you take away our right to vote by conspiring under color of state law and or authority to keep us labelled as felons and kill our political in what you white nationalist call , "establishing good government" as Senator Cole Blease Of South Carolina once said. It becomes an illegal seizure by this fraud and machination in violation of the 4th. amendment, as well as stand in violation of The Rico Act, the holdings made in Ex Parte Virginia, as well as the 5th., 6th., 8th., 13th., 14th., and 15th. amendments, also 18 U.S.C. §§ 241, 242 and 1001, Moore v. Dempsey supra.; The Amistad supra.; Digital Equip. Corp. v. Desktop Direct Ins. Co. supra.; State v. Means, 367 S.C. 374, 626 S.E.2d. 348(S.C.2006)(Where they applied this criminal act retroactively); Screws v. United States supra.; United States v. Kozminski, (1988) 487 U.S. 931, 101 L.Ed.2d. 788, 108 S.Ct. 2751, 46 C.C.H. E.P.D. ¶ 38067 on remand (1988 CA6 Mich.) 852 F2d 1288; Greenwood v. Peacock, (1966) 384 U.S.

808, 16 L.Ed.2d. 944, 86 S.Ct. 1800; United States v. Ramey,
(1964 CA4 W.Va.) 336 F2d. 512 cert. denied (1965) 379 U.S. 972,
13 L.Ed.2d. 564, 85 S.Ct. 649; United States v. Otherson, (1980)
CA9 Cal., 637 F2d 1276 cert. denied (1981) 454 U.S. 840, 70
L.Ed.2d. 123, 102 S.Ct. 149; Means v. Wilson, CA8 (S.D.) 1975,
522 F2d. 833 cert. denied 96 S.Ct. 1436, 424 U.S. 958, 47 L.Ed.2d
364; Berg v. Obama, E.D. Pa. 2008, 574 F.Supp.2d. 509; United
States v. Figuerca, CA3 (N.J.) 2013, 729 F3d. 267; Ex Parte
Virginia supra.; The Compendium Of United Nations Standards
And Norms In Crime Prevention And Criminal Justice ISBN 978—
92-1-133765-5.


        This is not a situation where the state court simply
held a view different its own, when the precedent from the U.S.
Supreme Court is, at best ambiguous. They criminally conspired
under color of state and stayed, held, all pending cases most
for (5) years or more while they and the S.C. Attorney General
purposely, maliciously, criminally went on a "FISHING EXPEDITION"
in search for a vague, ambiguous U.S. Supreme Court case and
the Parkhurst case, to allow them to engage in machination and
acts of fraud upon the court when there were other clearly esta-
blished U.S. Supreme Court cases that gave greater clarity and
that were not ambiguous to defraud the inmates of this state.
Thus, using the holdings made in cases like Green v. Fisher,
132 S.Ct. 38, 43(2011) would be misplaced due to the criminal
and fraudulent intent that conspicuously exist, Barlow v. Colgate
Palmolive Co., 772 F3d. 1001, 90 Fed. R. Serv.3d. 85(Md.2014).


        Perhaps the court(s) of South Carolina would further
contend that Subject Matter Jurisdiction, and the sufficiency
of an indictment are, and have been combined in the various
cited cases, that the indictment is merely a "notice document"
and that Subject Matter Jurisdiction is the court's "[p]ower"
to hear and determine a matter, and each should be viewed as
separate and distinct from one another and the insufficiency
of an indictment does "[n]ot" take away from or "[a]ffect" and
or "[h]inder" a "[c]riminal" court's "[p]ower" and or "[a]bility"
to hear "[t]his" general class of cases, to which the proceedings

in question belong, <u>State v. Gentry</u>, 363 S.C. 93, 610 S.E.2d.
494, 495(S.C.2005) citing <u>United States v. Cotton</u>, 535 U.S.
625, 122 S.Ct. 1781, 152 L.Ed.2d. 860(2002); <u>State v. Parkhurst</u>,
845 S.W.2d. 31(MO.1992). The court(s) has misinterpreted its
citings and are in error, and they have abused their discretion-
ary "[p]owers" in their determination of this matter, and they
did this purposely in acts of fraud upon the court and machina-
tion in violation of the holdings made in <u>Ross v. Blake</u>, 136
S.Ct. 1850(2016). An abuse of discretion occurs when the court(s)
are controlled by an error of law, or when the order based upon
findings of fact is without evidentiary support or fact. The
error of law that they are controlled by is that there are two
concepts in question, essentially two prongs to Subject Matter
Jurisdiction. One--the courts powers of jurisdiction given to
them via state legislative statutes and or congressional intent
for federal courts. Secondly---the Due Process jurisdictional
"[p]rerequisites" and or "[r]equisites" that are attached to
that jurisdiction, which were never properly addressed by the
courts involved, which were required to be addressed under the
Due Process prong to Subject Matter Jurisdiction, <u>Sharpes v.
Sharpes</u>, 535 S.E.2d. 913, 342 S.C. 71(2000).

    The State Of South Carolina, by this ludicrous piece
of legislation or law, in an egregious abuse of discretionary
"[p]ower", acting arbitrarily, unjustly, under color of "state
law", in defiance to fundamental fairness and judicial integrity,
in violation of the appellant's federal constitutional rights
of Due Process, also in violation of 18 U.S.C. §§ 241, 242 and
1001, has either altered, amended, modified, and or deleted,
and or diminished and or eradicated, just about every single
right and privilege secured and protected by the 4th., 5th.,
6th., 13th., 14th., 15th. amendments of the U.S. Constitution,
as well as the South Carolina Constitution, as it pertains to
the "[p]rerequisite" Due Process requirement and use of an in-
dictment in criminal proceedings, in blatant defiance to the
appellant's rights to Equal Protection of the Laws, producing
fraud upon the court, machination, essentially establishing

modern day slavery in violation of The C.A.T. Treaty, conspiring under color of state law to disenfranchise us, branding African Americans and other minorities who are disproportionately ef-fected as felons to deny them the right to vote and kill their political voice, creating a racial caste system, See Book En-titled, "Mass Incarceration During The Age Of Colorblindness, the New Jim Crow, by Michelle Alexander; Screws v. United States supra.; State v. Middleton supra.; Eslinger v. Thompson supra.; McLaughlin v. Florida supra.; Dubinka v. Judges Of Superior Court Of The State Of California, For The County Of Los Angeles supra.; Jones v. State Of Arkansas supra.; Dozier v. Loop College , City Of Chicago supra.; Hicks v. Oklahoma supra.; Lugar v. Edmondson Oil Co. supra.; Williams v. United States supra.; Brown v. United States supra.; United States v. Ramey supra.; United States v. Kozminski supra.; Greenwood v. Peacock supra.; United States v. Otherson supra.

Insomuch, the 5th. amendment Indictment Clause has not been held applicable to the states, or the federal concept of a Grand Jury binding on the federal courts under the 5th. amend-ment are obligatory to the states. Nevertheless, by their own state(s) Constitution(s), the State Of South Carolina, New Jersey , Kentucky, Georgia, New York and (28) other states adopt the federal provisions. requirements, Due Process "[p]rerequisites" and or "[r]equisites", standards and mandates pertaining to the use of an indictment, and the remaining (17) states that make use of a criminal complaint document possess the structural error argued where the Grand Jury by the language presented, adjudicated guilt of the offenses as well. In further resolving the conflict, the Federal courts have held by the "BILL OF RIGHTS", many rights guaranteed by the first (8) amendments of The United States Constitution, have been made applicable to the several states through the Due Process Clause of the 14th. amendment and Supremacy Clause of Art. 6 cl. 2 of The U.S. Constitution, State v. Watts, 465 S.E.2d. 359; Henry v. City Of Rock Hill, 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed.2d. 79(1964); Also see South Carolina Constitution Art. 1 § 11; Ex Parte Bain, 121 U.S. 1 (1887); Costello v. United States,

350 U.S. 359; <u>Russell v. United States</u>, 369 U.S. 749, 82 S.Ct.
1038(1962); <u>Woods v. Georgia</u>, 370 U.S. 375, 82 S.Ct. 1364, 8
L.Ed.2d. 569(1962); <u>Frisbee v. United States</u>, 157 U.S. 160,
15 S.Ct. 586, 39 L.Ed. 652 (1895); <u>Hale v. Henkel</u>, 201 U.S.
43, 26 S.Ct. 370, 50 L.Ed. 652(1906); <u>Duncan v. Louisiana</u>, 391
U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d. 491(1968); <u>Hurtado v. Cali-
fornia</u>, 110 U.S. 516, 538, 4 S.Ct. 111, 122, 28 L.Ed. 232(1884);
<u>Powell v. State Of Alabama</u>, 287 U.S. 45, 67, 53 S.Ct. 55, 63,
77 L.Ed. 682(1948); <u>Gideon v. Wainwright</u>, 372 U.S. 335, 342-
344, 83 S.Ct. 792, 796, 4 L.Ed.2d. 799(1963).


Yes, the indictment is a "notice document", but being
a "notice document" is one of the many purposes and functions
the indictment was created for. The Honorable Judge Plecones
in the <u>Gentry</u> court, was the only one with enough judicial inte-
grity and insight to see clear to the truth of this matter in
part, and did not agree to the fraud and machination.


Yes, Subject Matter Jurisdiction is the "[p]ower" to
hear and determine cases of a general class to which the pro-
ceedings in question belong, <u>Bell v. Monsato Corp.</u>, 579 S.E.2d.
325 S.C. 553(S.C.2003). Insomuch, the court's "[p]ower" to hear
and determine a case, is also defined as the court's "[a]bility"
to hear and determine a case. Inasmuch, Subject Matter Jurisdic-
tion does not only cover and or involve whether or not the matter
resides in a proper court of jurisdiction to hear and determine
it. This is only the first prong. It also involves any issue
that may "[a]ffect" and or "[h]inder" that "[p]ower" and or
"[a]bility" to act in accordance to Rules Of Court, Rules Of
Procedure and Due Process Law. This is the second prong that
"[v]oids" jurisdiction for Due Process violations. Such matters
can be raised at "[a]ny" time, "[c]annot" be waived by the defen-
dant, and the court "[s]hall [n]ot [f]ail" to take notice, <u>Mathis
v. State supra.</u>; <u>Brown v. State supra.</u>; <u>State v. Munn supra.</u>;
<u>Browning v State supra.</u>; <u>U.S. v. $41,320 U.S. Currency</u>, 9 F.Supp.
3d. 582, 2014 WL 1266240; <u>Hunt v. United States</u>, F.Supp.2d.,
2007 WL 5131716(DSC.2007).

Subject to certain minor exceptions not present, the trial court's jurisdiction is made void, and or they are prohibited from enacting, and or invoking and or continuing its Subject Matter Jurisdictionary "[p]owers" to convict a defendant for Due Process violation, even though they have such jurisdiction by state legislative statute and or congressional intent, when there is no indictment charging him with that offense when the jury is sworn, or when he gives his guilty plea, and we can add, or when he has already been unjustly convicted BY the Grand Jury, illegally acting as the trial jury, being duly sworn and swearing upon their "[o]ath" the appellant's guilt, predetermining in advance the outcome of the proceedings, in violation of their shielding function, also in violation of the appellant's right to double jeopardy protection and Due Process Law, establishing fraud upon the court, modern day slavery, machination, taking away our right to vote conspiring to kill our political voice behind a class based invidiously discriminatory animus in the form of race in violation of the holdings made in Ex Parte Virginia supra.. Also see State v. Lewis supra.; State v. Easler supra.; Moore v. Dempsey supra.; The Amistad supra.; United States v. Umana supra.; United States v. Dinkins supra.; Dickerson v. Warden Of Lieber C.I. supra.; James v. Reynolds supra.; Sullivan v. Cartledge supra.; Clark v. Arizona supra.; Deck v. Missouri supra.; Skilling v. United States supra.; State v. Beachum, 288 S.C. 325, 324 S.E.2d. 572(1986); S.C. Code Ann § 17-25-10.

The Gentry court misinterpreting its citings are in error in their determination of the matter in acts of fraud upon the court and machination. What gives the court in "[c]riminal" cases and or proceedings the "[a]bility" to hear and determine cases of "[t]his" general class to which the proceedings in question belong, and allow it to enact and or invoke and or continue its Subject Matter Jurisdictionary "[p]owers" in these type of cases, placing those "[p]owers" in operation is "an indictment".

S.C.R.C.P., Rule 3(c) Provides:

"Disposition on arrest warrant(s):

The solicitor shall take action on the warrant(s) within (90)
days by preparing 'an indictment' for presentment to the Grand
Jury". In turn said indictment is to be passed on to the trial
court to allow it to enact and or invoke and or continue its
"[p]owers" of Subject Matter Jurisdiction, Sharpe v. Johnson,
107 F3d. 282(foot notes)(5th.Cir.1997); Santos v. State, 843
S.W.2d. 953, 956(Tex.App.1992); Studer v. State, 799 S.W.2d.
263(Tex.App.1990); Williams v. Morris, 320 S.C. 196, 464 S.E.2d.
97(1995).

     The indictment is also the legal document that confirms
the "[c]riminal" court's "[p]ower" and or "[a]bility" to hear
the particular case, by stating and documenting the class of
case, or alleged offense, and the statute of the offense charged,
stating the offense in the language of the statute, further vali-
dating that the matter(s) reside in the proper court of juris-
diction to hear and determine the matter. These indisputable
facts make the indictment more than merely a "notice document".
It is the vehicle in "[c]riminal" cases and or proceedings which
invest and or attach the "[c]riminal" court the Due Process
mechanism and right to act, and or confirms that right to act,
which is an intrinsic part of the Due Process Prong To Subject
Matter Jurisdiction in these cases; Thereby making them inter-
linked, inter-locked and inter-dependent upon the viability
of each other. To determine that without the indictment(s),
it does "[n]ot" "[a]ffect" and or "[h]inder" a "[c]riminal"
court's "[p]ower" and or "[a]bility" to hear and determine cases
of "[t]his" general class to which the proceedings in question
belong, is an error of law, and is like stating not having a
"soul", "consciousness", or "lifeforce", do "[n]ot" "[a]ffect"
or "[h]inder" a man's "[p]ower" or "[a]bility" to be a man.
Without a "soul" or "lifeforce", by the laws of reason you will
still have a "man", but the total truth of the matter is that

you will have a "[d]ead man", whose worth to society is useless;
the same way the "[c]riminal" court's "[p]ower" and or "[a]bi-
lity" to hear and determine "[t]his" particular class of case
is useless without the essentially needed vehicle in the form
of the indictment(s). The Sufficiency of an Indictment is a
"[j]urisdictional [p]rerequisite" in cases of "[t]his" general
class, to which the proceedings in question belong, and for
which an indictment is needed and or required even though the
courts do indeed have jurisdiction via state legislative statute
and or via congressional intent. See Indictment sufficiency,
70 Column L. Rev. 876, 888(1970); United States v. Abrams, 539
F.Supp. 378, 384(S.D.N.Y.1982); Stirone v. United States, 361
U.S. 212 (1960); Gaither v. United States, 413 F2d. 1061(D.C.
Cir.1969); Also see S.C. Constitution Art. 1 § 11; S.C. Code
Ann § 17-25-10.


        The Gentry court, by it misinterpreting its citings
changed Federal law made applicable to the state(s) by they
adopting such via their own state(s) Constitution(s) standing
unchallenged for well over (100) years. For the Gentry court
by it misinterpreting its citings, in acts of fraud upon the
court and machination in violation of Ross v. Blake, 136 S.Ct.
1850(2016), to view the two concepts of Subject Matter Juris-
diction and the Sufficiency of an Indictment as being combined,
when Federal law adopted by their own state(s) constitution(s),
dictate that the Sufficiency of an Indictment is a "[j]urisdic-
tional [p]rerequisite" to Subject Matter Jurisdiction in a
"[c]riminal" court, which is a Due Process claim, is an error
of law. Nothing in United States v. Cotton or State v. Parkhurst
addressed and or adjudicated the "[p]rerequisite" Due Process
aspect of the indictment. Nor did anything in those cases say
that Abrams, Stirone, Russell and Gaither are overruled. If
they are no officially overruled by The U.S. Supreme Court,
then the [p]rerequisite Due Process aspect of the indictment
is still controlling law. The Abrams, Stirone, Russell and
Gaither court(s) intent should be ascertained from the plain
language of these citings of law as is adjudicated by those

courts. The language must read in a sense that harmonizes with
its subject matter and accords with its general purpose. Once
these precedent setting courts have made a choice, there was
no room for the Gentry court to impose a different meaning or
judgment based upon their own misguided notions. If the provi-
sions of law language is clear, there was no need to employ
the rules of statutory and or common law construction, and the
Gentry court had no right to go on a **"FISHING EXPEDITION"** holding
those cases in limbo for (5+) years to force the inmates past
the statute of limitations to prevent review in another higher
court to which they were void of all jurisdiction in acts of
fraud upon the court and machination. Also, due to they imposing
another meaning to this prescribed law, in their efforts to
essentially establish modern day slavery in violation of the
C.A.T. Treaty, to which congress confers upon no court the
"[p]ower" to establish slavery of any kind. Their jurisdiction
is void from the onset, even making it an administrative function
stripping them of immunity due to the fraudulent intent. These
were the same such acts that were at the heart of the issues
sought remedied in Ex Parte Virginia in 1880. The convictions
are not **"DULY"** established. Where the language of the afore
mentioned citings of law are clear and explicit, the Gentry
court "[c]annot" go on a **"FISHING EXPEDITION"** to purposely search
for a vague, ambiguous provision of law that did not address
the "[j]urisdictional [p]rerequisite" Due Process aspect and
requirement of the indictment to criminally, in acts of fraud
upon the court and machination, rewrite the provisions of the
law in and inject matters into the holdings which are not in
the language found in Russell, Stirone, Abrams and Gaither.
Under the plain meaning rule, it is not the Gentry court's place
to change the meaning of clear and unambiguous provisions of
law by citing of a law that is ambiguous and vague, to dispropor-
tionately affect African Americans and other minorities within
this state and water down the protections established under
Ex Parte Virginia. The law clearly states that the two concepts
are not combined, but one is a "[j]urisdictional [p]rerequisite"
of the other which "[m]ust" be adjudicated under the Due Process
Prong of Subject Matter Jurisdiction. The law clearly states

that yes, the courts have jurisdiction via state legislative
statutes and or congressional intent, but with that jurisdiction
there are "[j]urisdictional [p]rerequisites" and or "[j]urisdic-
tional [r]equisites" that "[m]ust" be adhered to related to
Due Process which void jurisdiction for lack of compliance.
If these two concepts are to be viable and operate in the full-
ness and purpose for which they were established and created,
they are not to be viewed and or separated in the manner reasoned
by the Gentry court misinterpreting the holdings made in the
Cotton and Parkhurst courts, Mitchell v. Conseco Life Ins. supra.
; J & J Sports Productions Inc. v. Wofford supra.; United States
v. McDonald supra.; Gindi v. Strategic Outsourcing, Inc. supra.;
State v. Jones supra.; Bass v. Isochem, 617 S.E.2d. 369(S.C.App.
2005); State v. Brannon, 666 S.E.2d. 272(S.C.App.2008); State
v. Pittman, 647 S.E.2d. 144(S.C.2007); Liberty Mut. Ins. v.
S.C. Second Injury Fund, 611 S.E.2d. 297(S.C.App.2005).

        Further, the indictment(s) serve as a "[s]afeguard" to
protect the American citizenry, all those who are held by us,
and those who enter our borders or territories, from violations
of their inalienable constitutional rights. Rule 7(c) requires
that the indictment(s) contain a "[p]lain", "[c]oncise", and
"[d]efinite" written statement of essential elements and or
allegations constituting the offense charged. This requirement
performs three constitutionally required functions: It fulfills
the 6th. amendment right to be informed as to the "[c]ause and
[n]ature" of the accusation (notice document); Yet, more than
this, it prevents a person from being subject to double jeopardy
as required by the 5th. amendment. It also serves the 5th. amend-
ment protection against crimes based upon evidence not presented
to the Grand Jury (constructive amendment of the indictment
claim), State v. Lewis supra.; State v. Easler supra.; United
States v. Silverman, 30 F2d. 106, 110(2nd.Cir.) listing these
functions, modified 439 F2d. 198(2nd.Cir.1970) cert. denied
402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d. 123(1971). The Indict-
ment Clause of the 5th. amendment requires that the indictment(s)
contain some amount of factual particularity, to ensure that
the prosecution will not fill in elements of his case with facts

other than those considered by the Grand Jury (constructive
amendment of the indictment issue), United States v. Abrams
supra.

The judges in State v. Gentry supra.; United States v.
Cotton supra.; and State v. Parkhurst supra., in their determina-
tion, it is perspicuous that they have "[n]ot" given "[f]ull"
weight to the total requirements and purpose of S.C. Code Ann
§§ 17-19-10, 17-19-20, 17-19-30 and 17-25-10, or the "[j]urisdic-
tional [p]rerequisite" Due Process aspect and requirement of
the indictment. It is for the reasons aforementioned, in relevant
part, and Federal Rules Of Criminal Procedure, Rule 7(c), that
the requirements of the mentioned statutes are in effect, to
ensure that the indictment(s) comply with Federal and State
Rules of Criminal Procedure, The U.S. Constitution, The S.C.
Constitution, and the Laws of Due Process, which make them more
than merely a "notice document".

In addition to this, the indictment(s) aid in instructing
the jury of the circumstances of the crime, and the incidentals,
as well as the elements of the offense, that they are to confirm,
or reject the confirmation of, by the preponderance of evidence
presented before them by the prosecution and or defense in reach-
ing a verdict. This too, makes them more than merely a "notice
document", United States v. abrams supra.; United States v.
Silverman supra.. This requirement that the offense be stated****
specifying in detail each element of the crime was seen as provi-
ding assurance that both the Grand Jury understood what was
necessary to establish the offense, not convict, and that the
trial jury did not engage in unanticipated extensions of the
substance of the offense, which is a constructive amendment
of the indictment claim proving these are Due Process arguments
which are to be adjudicated under the Due Process prong to Sub-
ject Matter Jurisdiction.

Lastly, the requirement of the indictment(s) limit and
constrain the "[p]owers" of Subject Matter Jurisdiction of both



the prosecution and the court, by limiting what can be presented
at trial, conviction and sentencing. This too, is potentially
a constructive amendment of an indictment claim which demonstrate
the deficiencies within the indictment(s) produce Due Process
challenges that void jurisdiction for Due Process violation,
United States v. Promise, 255 F3d. 150(4th.Cir.2001); State
v. Guthrie, 352 S.C. 103, 572 S.E.2d. 309. It is the command
of The U.S. Constitution that anything to the contrary is
notwithstanding, (Article IV § 2 U.S. Const.).

        The appellant places forth this issue in a straightforward
fashion and want to make certain that there is no misunderstand-
ing as to the specific claim(s) and or question that is placed
before the court. The appellant is not arguing whether the cri-
minal court has jurisdiction to hear and determine cases of
"[t]his" general class to which the proceedings in question
belong. The appellant concedes this fact. The appellant in this
context agrees with all (3) Gentry, Cotton and Parkhurst court(s)
when they determined that the criminal court does have Subject
Matter Jurisdiction to hear cases of this general class and
nature via state legislative statute and or congressional intent,
this is not the issue. What the appellant is indisputably arguing
is a question which clearly was not answered by either the Gentry
, Cotton or Parkhurst court(s) is this. Despite the fact that
the criminal court does have Subject Matter Jurisdiction to
hear cases of "[t]his" general class to which the proceedings
in question belong via state legislative statutes and or con-
gressional intent. Do their egregious, blatant failure to be
in compliance to said certain, essential, crucial Due Process
"[j]urisdictional [p]rerequisites" and or "[j]urisdictional
[r]equisites" at various phases of, and or at the commencement
of the Subject Matter Jurisdictionary action and or process
before the court, which is to be adjudicated under the Due Pro-
cess prong to Subject Matter Jurisdiction. Do the State and
or Federal government and or courts' egregious, blantant failure
to be in compliance to these said certain, essential, crucial
Due Process "[j]urisdictional [p]rerequisites" and or "[j]uris-

Case: 19-60662    Document: 119-2    Page: 98    Date Filed: 01/31/2020

dictional [r]equisites" at various phases of, and or at the commencement of the Subject Matter Jurisdictionary action and or process, which is a Due Process issue. Do that failure halt, check, constrain, restrain, limit, arrest, stop or void the continuance of the court's Subject Matter Jurisdictionary "[p]owers" before the court for Due Process violation (ei vagueness in the indictment), even though the court do indeed possess such "[p]ower" by state legislative statute and or congressional intent? See <u>Loumiet v. United States</u>, 65 F.Supp.3d. 19(2014); <u>U.S. v. $41,320 U.S. Currency,</u> 9 F.supp.3d. 582, 2014 WL 1266240 (2014); <u>U.S. v. Aladekcha,</u> 2010 WL 4054267(D.C.Md. 2010); <u>White v. Manis,</u> 2014 WL 1513280(DSC.2014).

This is a crucially, materially, distinctly different question related to Subject Matter Jurisdiction that was never answered by any of the courts involved pursuant to the <u>Gentry</u> case. This is why Judge Plecones in the South Carolina Supreme Court refuse to be a part of the arbitrary, unjust acts of the S.C. Supreme Court and conspiring parties handling of the Ezekial Hayes case. The highest court had opportunity to deal with the issue and instead chose to engage in further acts of fraud. Thus, even by this act the exhaustion and equitable tolling requirement is satisfied. This is a jurisdictional challenge to the Federal Courts as well. For if the federal courts fail to take notice they would be conspiring in acts created for the purpose of establishing modern day slavery. Congress confers no "[p]ower" on the State or Federal Courts to establish modern day slavery which would strip all of immunity. The Court would also be in violation of the C.A.T. Treaty(Convention Against Torture Treaty) where the definition for slavery is found that Congress signed off on. It becomes a jurisdictional duty of the Federal Courts to act. Thus, using the holdings made in the <u>Gentry</u> case would be misplaced, especially in light of the fact that it has been adjudicated under a cloud of fraud upon the court and machination where they went on a **"FISHING EXPEDI- TION"** to find a vague, ambiguous citing of law that did not aaddress the Due Process "[j]urisdictional [p]rerequisite" aspect

of the indictment(s). Such a new question of law and fact is
not barred from seeking relief for, does relate to Subject Matter
Jurisdiction, "[c]annot" be waived by the appellant, and the
court "[s]hall [n]ot" fail to take notice, Grupo Dalaflux v.
Atlas Global Group, L.P., 541 U.S. 567, 124 S.Ct. 1920, 158
L.Ed.2d. 866(U.S.2004); South Carolina Department Of social
Services v. Tran, 418 S.C. 308, 792 S.E.2d. 254(S.C.App.2016);
McCain v. Brightharp supra.; Loumiet v. United States, 65 F.Supp.
3d. 19(2014); The Amistad supra.; Nezirovic v. Holt, 779 F3d.
233 CA4 (Va.2015); Kwai Fun Wong, 135 S.Ct. 1625, 191 L.Ed.2d.
533, 83 U.S.L.W. 4258(U.S.2015).

Insomuch, Rules of Criminal Procedure, the Sufficiency
of an Indictment, Subject Matter Jurisdiction, and Due Process
Law are inter-locked and inter-linked in these matters. Yes,
Subject Matter Jurisdiction and the Sufficiency of an indictment
are two distinct concepts, but the indictment(s) in "[c]riminal"
cases and or pleadings is the Due Process required vehicle upon
which the Due Process aspect of Subject Matter Jurisdiction
is conferred upon the "[c]riminal" court, and or is that which
enable the "[c]riminal" court the "[a]bility" and or "[p]ower",
and or right or means to enact, and or invoke, and or continue
its Subject Matter Jurisdictionary "[p]owers". It is not so
much that they are combined or that the court does not have
jurisdiction to hear these types of cases via state legislative
statute and or congressional intent. The sufficiency of an In-
dictment is a Due Process "[j]urisdictional [p]rerequisite"
in cases of "[t]his" general class to which the proceedings
in question belong, and for which an indictment is needed and
or required as Due Process demands. English 101 and English
102 are two separate and distinct English courses, but "[b]oth"
make up one English program towards one single College degree.
English 101 is a "[p]rerequisite" to English 102. You "[m]ust"
have and or take English 101, before you can have and or take
English 102. Its a simple concept. Its not hard. You "[m]ust"
have and or take a sufficient, not vague(emphasis added) Indict-
ment, passed upon by the Grand Jury, before you can enact and
or invoke and or continue the court's Subject Matter Jurisdic-

tionary "[p]owers" given to a "[c]riminal" court, even thought
that court do indeed possess such "[p]owers" via state legisla-
tive statute and or Congressional intent. To view the two con-
cepts of Subject Matter Jurisdiction and the Sufficiency of
an Indictment as being mistakingly combined, when, by Federal
law made applicable to the States through the Due Process Clause
and or South Carolina, New Jersey, Kentucky, Georgia, New York
or other (28) relevant State(s) Constitution(s), dictate that
one is a Due Process "[j]urisdictional [p]rerequisite" of the
other is an error of law, fraud upon the court and machination.
To determine that failure to be in compliance to Due Process
"[j]urisdictional [p]rerequisites" and or "[j]urisdictional
[r]equisites" do not effect the court's "[p]ower" to hear and
determine a case is an error of law, fraud upon the court and
machination. This question was circumvented by the courts in-
volved conspiring under color of state law, and must now be
answered in fundamental fairness to the appellant(s).

Even if you separate the two concepts aforementioned
from one another, the "[e]ffect" and or "[o]utcome" on the trial
court's "[p]owers" of Subject Matter Jurisdiction are the same.
Due to the deficiency in the "[j]urisdictional [p]rerequisite"
pursuant to the presentment of the fatally defective indictments,
it "[n]ullifies", "[v]oids" the Subject Matter Jurisdictionary
action, which must be adjudicated under the Due Process Prong
to Subject Matter Jurisdiction, even though the "[c]riminal"
court do indeed possess such "[p]ower" via state legislative
statute and or congressional intent. They are distinct from
one another the same way the inner-makings are distinct from
the bread of a "sandwich", but "[o]oth" make the "sandwich".
They are distinct from one another the same way a man's soul
is distinct from his body, but "[b]oth" make the man. The "[c]ri-
minal" court can have Subject Matter Jurisdiction all day long,
but without the indictment(s), when indictments are needed and
or require in this instance by Due Process Law, that "[p]ower"
is useless. The lack thereof do "[a]ffect" and or "[h]inder"
that "[p]ower" and or "[a]bility" to hear and determine cases

of "[t]his" general class to which the proceedings in question
belong. To determine otherwise is an egregious error of law,
machination, an act of fraud upon the court and conspiracy to
establish modern day slavery in violation of 18 U.S.C. §§ 241,
242, 1001 and The Anti-Peonage Act as well as in violation of
The Rico Act to include the holdings made in <u>Ex Parte Virginia</u>
designed to disenfranchise us of our right to vote in violation
of the 15th. amendment.

In comparison, you can have two pieces of bread all day
long, but without the inner-makings you will never have a "sand-
wich". Being a "notice document" is only one of the numerous
purposes and functions that the indictment serves. These numerous
purposes and functions cannot be viewed and or work separately
and independently of each other without affecting the "[t]rue"
nature and purpose for which the indictment was created. To
do so would be an error of law, see <u>Herman Winns v. State,</u> memo
No. 2000 Mo-078 Daniel F. Piper Judge.

Insomuch, what the honorable court(s) in <u>Gentry</u>, <u>Cotton</u>
and <u>Parkhurst</u> failed to see, is that the "[c]onfusion" that
the <u>Gentry</u> court spoke of is "[n]ot" coming from our modern
day courts mixing the two concepts of Subject Matter Jurisdiction
and the Sufficiency of an Indictment together. The "[c]onfusion"
that the <u>Gentry</u> court spoke of, is coming from our modern day
court(s) and system of jurisprudence losing vision and insight
of that which is laid and set before us by our Constitutional
Forefathers in the establishing of our judicial system, that
by all jurisprudence was not meant to be tampered with. That
being a system of checks and balances, within a system of checks
and balances. You have issues of Subject Matter Jurisdiction,
jurisdictional prerequisites and or requisites, rules of criminal
procedure, sufficiency of indictment issues, and issues of Due
Process Law pertaining to the U.S. Constitution, as well as
the South Carolina, New Jersey, New York, Kentucky, Georgia
and remaining states constitutions, overlapping each other,
and checking each other, as a "[s]afeguard" to ensure that the

U.S. citizen, those who are held by us, and those who enter
our borders or territories, inalienable rights to a fair and
impartial trial and or plea hearing are preserved. Our Constitu-
tional forefathers purposely meant and designed for them to
be viewed as a whole unit, inter-locked and inseparable though
independent to themselves as an integral part of the overall
judicial machine, so that if one part fails, the other parts
would pick up and kick in. Thus, remaining true to the very
nature of [l]egal "system". A system is comprised of various
components, nevertheless, it is still to be considered as one.
As the appellant mentioned in one of the previous issues. Oue
Constitutional forefathers in their wisdom and jurisprudence
set up "[b]ulwarks", "[b]arriers" of protection forthrightly
established to protect the American citizenry, those who are
held by us, and those who enter our borders or territories,
from unjust, arbitrary prosecution, that outside of an individual
committing acts of treason were "[n]ot" meant to be torn down.
These are those sacred "[b]ulwarks", "[b]arriers" of protection.
To view them as separate and independent in the manner viewed
by the Gentry court(s), as they relate to each other, or to
determine that they do not affect the criminal court's "[p]ower"
to hear and determine "[t]his" class of case, goes against the
rightly established pattern and design of our judicial system,
is fraud upon the court and machination, an act of establishing
modern day slavery by forcing us to work once convicted, and
is an error of law. It is a form of treason. It is the very
epitome of betrayal to our Constitution, and sets itself at
war and enmity to the substantial rights of the commonwealth,
and seek to eradicate the very core integrity of the rights,
immunities, and privileges of all citizens, those who are held
by us, and those who enter our borders or territories, our Con-
stitutional forefathers have died and sacrificed their best
blood to establish and preserve. These sacred "[b]ulwarks" aid
to ensure that "[L]ady [J]ustice" remains blindfolded, and the
defendant's inalienable rights to a fair and impartial trial
and or plea hearing remain secure and are never taken away.
Such actions produce fraud upon the court, machination, modern
day slavery vitiating all convictions. The Amistad supra.; Ex

Parte Virginia, 100 U.S. 339, 348-349, 25 L.Ed. 676(1880); Pul-
liam v. Allen, 466 U.S. 522, 536-543, 104 S.Ct. 1970, 1977-1982,
80 L.Ed.2d. 565(1984); Mireles v. Waco, 502 U.S. 9, 112 S.Ct.
286(U.S.Cal.1991); Schmidt v. Degen, Ed. Pa. 1974, 376 F.Supp.
664; 18 U.S.C. §§ 241, 242, 1001; S.C. Code Ann. § 17-25-10.

Insomuch, these very issues were at the heart of the
matters that existed, in relevant part, during the time of Ex
Parte Bain in 1887, and still vividly, with all certainty, exist
now via Due Process within our modern day courts and system
of jurisprudence, and by the constitutional rights of every
citizen, of those who are held by us, and those who enter our
borders or territories, these issues "[c]annot" be ignored.
These issues of Due Process secured and protected by the rulings
made in Ex Parte Bain in 1887, as well as in Gaither, Russell,
Stirone and many other such holdings in other similar cases,
still apply today and are protected by The U.S. Constitution
and the laws of the United States. These concepts are designed
to overlap in these matters to ensure a more true court of juris-
prudence to its citizens, those who are held by us, and those
who enter our borders or territories, for the sake of "justice
and fairness".

In regard to State v. Gentry supra.; we are dealing with
a "state law", in such a way designed, crafted, drafted, initi-
ated, and set into place, that is egregiously contrary to the
U.S. Constitution's inherent, intrinsic, and explicit presupposi-
tions that by its very nature is intense espionage and diabolical
sabotage, and stands in defiance to the rights of the common-
wealth in violation of Due Process Law, establishing fraud upon
the court, machination, modern day slavery behind a class based
invidiously discriminatory animus in the form of racial hatred,
surreptitiously done, because it disproportionately affect and
harm the African Americans and minorities of the state and or
nation. It creates the similarities seen in trials and or plea
hearings that manifested themselves during the Nazi Occupation,
the English Inquisition of 1518, the Spanish Inquisition of
1478, the Salem Witch Trials of the 17th. Century, the trials

and or hearings prior and during the Civil Rights Era, and the
like; where trial and or plea hearings became an arbitrary ac-
tion, a mere hollow and deceptive formality and or mechanism,
utilized to snatch from the commonwealth their inalienable rights
, and rob them of their God given liberty. The Judges of the
Gentry court and defendants involved in these cases across the
nation entered themselves into a deliberate plot and scheme
to directly subvert the judicial process. The fraud in these
cases is so broad that it involves far more than injury to a
single litigate, but was rather a wrong against the institutions
set up to protect and safeguard the public, institutions in
which fraud cannot be complacently tolerated consistently with
the good order of society Id at 246, 64 S.Ct. 997. This plot
and fraud not only involved an intentional scheme to deceive
the judiciary and any future subsequent higher court, but also
touch on the public interest in a way that fraud between indivi-
dual parties generally does not. These parties have enacted
and or attempted a more egregious form of subversion of the
legal process, one that was specifically designed to prevent
us from being heard on the issue. Those forms of subversion
that we cannot necessarily expect to be exposed by the normal
adversarial process. No timely objection is necessary to address
this issue. It can be raised at any time, even for the first
time on appeal, creates extraordinary circumstances, manifest
injustice, tolls the time of appeal and the court shall not
fail to take notice, Fox Ex Rel Fox v. Elk Run Coal Co., Inc.,
739 F3d. 131 CA4(2014); Massi v. Walgreen Co., 2013 WL 5410810
(DSC.2013); DeVeaux v. United States, F.Supp.2d., 2010 WL 8738108
(DSC.2010); Arata v. Village West Owners Ass'n Inc., S.E.2d.,
2011 WL 11735004(S.C.App.2011); Chritianson v. M.B.N.A. American
Bank N.A., S.E.2d., 2013 WL 8507850(S.C.App.2013); Ge-Zhang
v. Promontery Interfinacial Network LLC.,---Fed. Appx'---, 2015
WL 75360 CA4 (Va.2015); Baccus v. Merchant, 2014 WL 1330984(DSC.
2014); McKissick v. Warden Evans C.I., 2013 WL 4585613(DSC.2013);
Conyers v. Virginia Housing Development Authority, 585 Fed.
Appx' 66 CA4 (Va.2014); Rogers v. Carr, S.E.2d., 2014 WL 2721025
(S.C.Ap..2014); Inglesias v. Wal-Mart Stores East L.P., 542

Fed. Appx' 295 CA4 (Va.2013); Simmons v. Bailum, S.E.2d., 2013
WL 8482376(S.C.Ap..2013); Davis v. Davenport, 2013 WL 6840473
(DSC.2013); Burris v. Ware, 2014 WL 4293805(DSC.2014); United
States v. Denedo, 556 U.S. 904, 129 S.Ct. 2213, 173 L.Ed.2d.
1235, 77 U.S.L.W. 4466, 09 Cal. Daily Op. Serv. 7069, (2009);
McCann v. Brightharp, 399 S.C. 240, 730 S.E.2d. 916(S.C.App.2012)
; United States v. Boston, 539 Fed. Appx' 209 CA4 (N.C.2013);
The Amistad supra., 40 U.S. 518, 15 Pet. 518, 1841 WL 5024,
2006 A.M.C. 2955, 10 L.Ed. 826, U.S. Conn. January 1841; Moore
v. Dempsey, 43 S.Ct. 265, 67 L.Ed. 543; United States v Umana,
750 F3d. 320 CA4 (N.C.2014).


     Inasmuch, the issues here go far beyond that of dealing
with indictment defects, which are to be quashed by motion before
a jury is sworn, or acknowledged, and or objected to before
a guilty plea is given. The matters here in crucial part, do
not have to necessarily be preserved for appellate review by
a timely objection, but only need to be considered as a matter
brought, conducted and or presented before the court in some
fashion. The government "[m]ust [a]lways" be held accountable
to judiciary for a man's imprisonment, and the restraints on
liberty if the imprisonment does not conform to the basic re-
quirements of Due Process Law. For the sake of "justice and
judicial fairness", the appellant should not be penalized and
made to suffer an onerous conviction, because hired counsel,
and or counsel that the state appointed to represent him, was
so inept and constitutionally ineffective, and or conspired
under color of state law with the prosecution to cause irrepar-
able harm to his proceedings, that he or she could not even
see, or refuse to see the overwhelmingly obvious defects in
an indictment presented before the court. Thereupon, the appel-
lant, who later after conviction, or the fraud produced by the
Gentry case, previously having no knowledge of law, and little
to no access to legal books or materials before his trial and
or plea hearing, later discovers the Gentry fraud and these
"[p]lain", "[c]lear", "[e]gregious", Subject Matter Jurisdiction
and Due Process issues and or errors producing manifest injustice
should not in all fairness be barred from calling these matters

to the attention of the courts in order to seek relief, <u>Shelton</u>
<u>v. Ciccone</u> supra.; <u>Evitts v. Lucy</u> supra.; <u>Gray</u> supra.; <u>Powell</u>
<u>v. Alabama</u> supra.; <u>United States v Promise</u> supra.. The issues
disproportionately effect and harm African American and other
minorities.


**CONCLUSION:**

        Insomuch, there were no holdings made in the <u>Gentry,</u>
<u>Cotton</u> and <u>Parkhurst</u> cases that would justify and or serve to
detach from the indictment(s) the 4th., 5th., 6th., 13th., 14th.
and 15th. Amendment issues aforementioned within this document
made applicable to states by they adopting such via their states
Constitutions and or via the Supremacy Clause of the U.S. Consti-
tution. Likewise, there were no holdings made in those cases
that would justify and or serve to detach from the indictment
the Due Process issues aforementioned within this document.

        By the holdings made in the <u>Gentry</u> case. That court es-
sentially took the position that the court's powers of Subject
Matter Jurisdiction are "[a]bsolute" via state legislative sta-
tutes or Congressional statutes or enactments of law, and at
"[n]o" time can that "[p]ower" be divested and or voided. The
<u>Gentry</u> court essentially claimed there can be no situation
that can divest or void jurisdiction. This is a ludicrous and
criminal position to take which will be proven by judicial deter-
minations made after the <u>Gentry</u> case was established.

        There are essentially (2) prongs to Subject Matter Juris-
diction. One (1) is where the courts "[l]ack" Subject Matter
Jurisdiction (ei. where a Family Court would attempt to try
a criminal case, or a Probate Court would attempt to try a Mili-
tary Tribunal case.). Of course in these situations those courts
would "[l]ack" Subject Matter Jurisdiction.

This is essentially what the Cotton court was saying wwhich is the reason why the litigant in that case did not prevail. By state and Federal statutes or Congressional enactments, specific courts have jurisdiction to hear cases of a general class (ei. criminal courts have jurisdiction to hear criminal cases). But (2) There is a second prong to Subject Matter Jurisdiction where jurisdiction is made void because of Due Process violation despite any existing state statute or federal law. So the Cotton court was essentially saying was that the litigant, by the language he presented. He was arguing his claim under the incorrect prong. More specific, the litigant should have asserted that jurisdiction is made void due to a particular Due Process violation, see U.S. v. $41,320 U.S. Currency supra.; Hunt v. United States supra.; White v. Manis supra.; U.S. v. Aladekcha supra.; Brown v. U.S. supra..

The Gentry court knew the Cotton court was vague on this issue and went on a "FISHING EXPEDITION" to find Cotton and Parkhurst so that they could adjudicate the Gentry case under the same incorrect prong to defraud the inmates of this state in acts of machination in violation of the holdings made in Ross v. Blake, 136 S.Ct. 1850(2016). Like the Article V § 4 orders leading to the claims of default and collateral estoppel in these cases emerging from case 2013-CP-400-0084 in the Richland Court Of Common Pleas. The Sufficiency of an indictment is a "[j]urisdictional [p]rerequisite" and Due Process claim that voids jurisdiction as opposed to the other prong where the Family Court would attempt to try a criminal case and would "[l]ack" Subject Matter Jurisdiction. The Due Process Prong is what we are arguing the Article V § 4 orders, the claim of default and collateral estoppel, to include the structural constitutional error of religious prophesy pertaining to the indictments predetermining in advance the outcome of the proceedings, taking away our presumption of innocence, convicting us before we plea or go to trial, disenfranchising us of our right to vote, establishing modern day slavery in violation of the C.A.T. Treaty under. Congress confers upon no court the power to esta-

blish modern day slavery, The Amistad, 40 U.S. 518, 15 Pet.
518, 1841 WL 5024.

When the constitutionality of a ruling is in doubt (ei.
The Cotton and Gentry cases). The court has an obligation to
interpret the Cotton case as it relates to Gentry, Abrams,
Gaither, Stirone, Russell and the voiding of jurisdiction for
Due Process violation under the Due Process Prong, not the other.
"STARE DECISIS ET NON QUIENTA MOVERE". Once this was decided
the courts should have never moved from it. Certain violations
of Due Process void jurisdiction when they give way to arbitrary
judicial action. See S.C. Code Ann § 17-25-10 and 9 F.Supp.3d.
582.

If a criminal case is appealed, but no trial transcript
is produced, what occurs? The trial transcript is a "[j]uris-
dictional" requirement in the appeals court. The court must
remand for a new trial and or reconstruction hearing. If a case
is in the state court, and a petition to remove is filed, what
occurs? The state court's jurisdiction is divested and that
court cannot proceed until remand order is issued or the federal
case is dismissed, State v. Ladson, 373 S.C. 320, 644 S.E.2d.
271(S.C.App.2007); Lovett v. Deutsche Bank Nat' Trust Co., F.Supp
2d., 2013 WL 841679(DSC.2013). A case is in the lower court.
A motion is filed where adverse ruling is given. The person
appeals it, what occurs? The higher court cannot hear it without
the "[j]urisdictional [p]rerequisite" final order, see Fortmill
v. Fitzgerald, S.E.2d., 2014 WL 7339453(S.C.App.2014). In civil
cases parties must be in compliance to all the rules of construc-
tive service. Compliance is "[j]urisdictional [p]rerequisite".
If step is omitted (comparingly a sufficient indictment is omit-
ted) decree or ruling is void, see Caldwell v. Winquist, 402
S.C. 565, 741 S.E.2d. 583(S.C.App.2013). Where case is filed
in the U.S. District Court, but parties file a second to subvert
the District Court's jurisdiction in the state court. This act
would void the state court's jurisdiction. Thus, jurisdiction
is "[n]ot" absolute despite legislative statute or state or
federal law, see Ackerman v. Exxon Mobil Corp., 734 F3d. 237

CA4 (Md.2013). Money amounts are jurisdictional in Wills, Probate and Estates, see Dickerson v. Alexander Hospital, 177 F2d. 876 CA4 (Va.1949); Aladeckcha, 2010 WL 4054267(2010).

When a conviction fails to comport with Due Process if statute under which it is obtained, and we can add to this, an indictment fails to comport to Due Process and fails to provide a person of ordinary intelligence "fair" notice or other essential requirements of Due Process (ei. Double jeopardy protection, presumption of innocence) jurisdiction is void. If the court fails to act in a manner consistent with Due Process and authorizes and or engages in or encourages arbitrary and discriminatory judicial or other practices (ei. Deny us the Equal Protection of the Laws, constructively amending indictments on essential elements, taking away our presumption of innocence, predetermining in advance the outcome of the proceedings by indictment language, spoliating documents and or evidence , illegally seizing evidence and or Foreign Sovereigns, engaging in acts of machination, fraud upon the court, essentially establishing modern day slavery where we are not "DULY" convicted, disenfranchising us of the right to vote behind racial animus, depriving us of proper notice in violation of S.C. Code Ann § 17-25-10, the 4th., 5th., 6th., 8th., 13th., 14th., 15th. amendment(s), producing arbitrary judicial action. Jurisdiction is made void for Due Process violation, Gentry Technology Of S.C. Inc. v. Baptist Health South Florida,...2015 WL 1219251 (DSC.2015); Yates Estate Of Yates, 2014 WL 2579917(S.C.App.2014); Ware v. Ware, 404 S.C. 1, 743 S.E.2d. 817(S.C.App.2013); Orlando Residence Ltd. v. Hilton Head Hotel Investors, F.Supp.2d., 2013 WL 1103027(DSC.2013); Federal Land Bank Ass'n Of Asheville N.C. v. C.I.R., 573 F2d. 179 CA4 (1978); Al Shimani v. C.A.C.I. Inter. Inc., 679 F3d. 205 CA4(Md.2012). The use of United States v. Cotton, Parkhurst and Gentry must be deemed misplaced and or overruled due to vagueness, Johnson v. United States,---S.Ct.---,2015, WL 2473450(U.S.2015); U.S. v. McKee, 506 F3d. 225, 229-232(3red.Cir.2007); U.S. v. Huet, 665 F3d. 588(3rd.Cir.2008);

Ingram v. Phillips, 36 S.C. L. 200, 1850 WL 2857 S.C. App. Law 1850; Lewis-Murray v. Murray, S.E.2d., 2005 WL 7084812(S.C.App. 2005); Bankers v. South Carolina, F.Supp.2d., 2010 WL 558580 (DSC.2010); Lampman v. Demoloff Boberg & Associates Inc., 319 Fed. Appx' 293 CA4 (S.C.2009); United Student Aid Funds Inc. v. Espinosa, 559 U.S. 260, 130 S.Ct. 1367(U.S.2010); Arata v. Village West Owners Ass'n Inc., S.E.2d. 2011 WL 11735004(S.C.App. 2011); Elderberry Of Weber City, LLC v. Living Centers Southeast Inc.,---F3d.---,2015 WL 4430836 CA4(Va.2015). The judgment in the appellant(s) case and these other cases (ei. Gentry et.al.,) are effected by fundamental infirmities. These infirmities may be raised after any judgment becomes final. Thus, the appel- lant(s) motion that the conviction and sentence be vacated, that an order issue expunging my record and the other inmates records due to seeking of class action certification and all monies that were paid out (ei. restitution etc.) be returned, United States Aid Funds, Inc. v. Espinosa supra.; Vose v. Han- nahan, 10 Rich 465, 1857 WL 3239 S.C. Err. 1857; Norberger v. Hinkle, 576 Fed. Appx' 224 CA4(Va.2014); Jones v. Sternheimer, 387 Fed. Appx' 366, 2010 WL 2711305 CA4(Va.2010); U.S. v. Watson, ---F3d.---,2015 WL 4385697 CA4(Va.2015); Harley v. South Carolina Dept. Of Corrections, 2013 WL 5428585(DSC.2013); People v. Rogers F.Supp.2d., 2010 WL 424201(DSC.2010); Gentry Technologies Of S.C. Inc. v. Baptist Health South, Florida Inc., 2015 WL 1219251 (DSC.2015).


The S.C. Attorney General and The United States are both parties to the default and claims of Res Judicata and or col- lateral estoppel emerging from case 2013-CP-400-0084 in the Richland County Court Of Common Pleas as they relate to these issues presented despite their efforts at fraud, machination and criminal conspiracy. Jurisdictional bar to challenge at- taches, In RE: Variant Enterprise Inc., 81 F3d. 1310(4th.Cir. 1996); Bashnight, 551 S.E.2d. 274; Reot v. County Of Fairfax, 541 Fed. Appx' 333(4th.Cir.2013); Wells Fargo Bank, N.A. v. Farag, 2016 WL 2944561(2016).

THE LAW AS DETERMINED BY THE UNITED STATES SUPREME COURT
IS CLEAR AND UNAMBIGUOUS ON THE ISSUES SUCH AS THE ONES BEING
ARGUED WITHIN THIS CASE. IF A RULING HAS BEEN OBTAINED BY AN
UNCONSTITUTIONAL JUDICIAL DETERMINATION AND OR LEGISLATIVE STA-
TUTE AND OR INTERPRETATION OF LAW AND OR ACT, WHICH INCLUDES
FRAUD. THE LAW EXPLAINED IF THIS POSITION IS WELL TAKEN, WHICH
IT IS, IT EFFECTS THE **"FOUNDATION"** OF THE **"WHOLE"** (EMPHASIS
ADDED) PROCEEDING, CONFIRMING THAT **"FRAUD VITIATES EVERYTHING"**.
AN UNCONSTITUTIONAL LAW AND OR ACT AND OR STATUTE AND OR JUDICIAL
DETERMINATION IS **"VOID"** AND IS AS IF THERE WERE NO LAW OR ACT
OR JUDICIAL DETERMINATION MADE OR DONE AT ALL, BEING STRUCTURAL
CONSTITUTIONAL ERROR NOT SUBJECT TO THE HARMLESS ERROR DOCTRINE.
THE GENERAL RULE IS THAT AN UNCONSTITUTIONAL JUDICIAL DETERMINA-
TION AND OR LEGISLATIVE STATUTE AND OR ACT AND OR LAW, THOUGH
HAVING THE FORM AND NAME OF LAW, IT IS IN REALITY NO LAW BY
SUCH ACTS, BUT IS **"WHOLLY VOID"** AND INEFFECTIVE FOR ANY PURPOSE
, TO INCLUDE ANY JUDICIAL DETERMINATION ATTACHED TO IT, SINCE
ITS UNCONSTITUTIONALITY DATES FROM THE TIME OF ITS ENACTMENT
AND OR WHEN IT WAS DONE....IN LEGAL CONTEMPLATION, IT IS INOPERA-
TIVE AS IF IT HAD NEVER BEEN PASSED OR DONE....SINCE AN UNCONSTI-
TUTIONAL STATUTE AND OR JUDICIAL DETERMINATION AND OR LAW AND
OR ACT IS VOID, THE GENERAL PRINCIPLE FOLLOWS THAT IT IMPOSES
NO DUTY (DUTY TO MAINTAIN A CONVICTION), CONFERS NO RIGHTS (YOU
HAVE NO RIGHT TO THIS CONVICTION PRODUCED BY FRAUD), CREATES
NO OFFICE (JUDICIAL OR OTHERWISE), BESTOWS NO POWER OR AUTHORITY
ON ANY PERSON (EMPHASIS ADDED)[WHICH MEANS THAT YOUR JURISDICTION
IS VOID PLACING YOU IN FORFEITURE.], AFFORDS NO PROTECTION (YOU
ARE NOT IMMUNE IF YOU FAIL TO CORRECT THIS INJUSTICE), AND JUSTI-
FIES NO ACTS PERFORMED UNDER IT....A VOID ACT CANNOT BE LEGALLY
CONSISTENT WITH A VALID ONE BY THE FRAUD UPON THE COURT THAT
OCCURRED RELATED TO THESE ISSUES. AN UNCONSTITUTIONAL LAW AND
OR STATUTE OR ACT OR JUDICIAL DETERMINATION CANNOT OPERATE TO
SUPERSEDE AN EXISTING LAW. INDEED INSOFAR AS A JUDICIAL DETERMI-
NATION AND OR STATUTE AND OR LEGISLATIVE PROVISION AND OR ACT
RUN COUNTER TO THE FUNDAMENTAL LAW OF THE LAND (THE U.S. CONSTI-
TUTION, THAT INDICTMENTS ARE TO BE ADJUDICATED UNDER THE DUE
PROCESS PRONG TO SUBJECT MATTER JURISDICTION), IT IS SUPERSEDED
THEREBY. NO ONE IS BOUND TO OBEY FRAUD OR AN UNCONSTITUTIONAL

LAW OR JUDICIAL DETERMINATION. ALL RULES, STATUTES, PRACTICES (LIKE THE FRAUD AND MACHINATIONS ENGAGED IN INVOLVING THESE LEGAL ISSUES), WHICH ARE REPUGNANT TO THE U.S. CONSTITUTION ARE "NULL" AND "VOID", PYNE v. UNITED STATES, F.Supp.3d., 2016 WL 1377402(D.C.Md.2016); MARBURY v. MADISON, 5TH. U.S. (2 CRANCH) 137, 180; VINES v. UNITED STATES, 28 F3d. 1123 CRIM. LAW 1163(1), 1165(1); ROBINSON v, ARVONIO, 27 F3d. 877 REHEARING DENIED CERT. GRANTED VACATED 115 S.Ct. 1247, 513 U.S. 1186, 131 L.Ed.2d. 129; LOUMIET v. UNITED STATES, 65 F.Supp.3d. 19 (2014); JOHNSON v. UNITED STATES,--S.Ct.--, 2015 WL 2473450(U.S.2015); MONTGOMERY v. LOUISIANA, 136 S.Ct. 718, 193 L.Ed.2d. 599, 84 U.S.L.W. 4063 (U.S.2016); BETTERMAN v. MONTANA, 136 S.Ct. 1609, 194 L.Ed.2d. 723(U.S.2016); GEFT OUTDOORS LLC. v. CONSOLIDATION CITY OF INDI-ANAPOLIS***, 187 F.Supp.3d. 1002, 1012, S.D.Ill.; HILL v. SNYDER, 821 F3d. 763, 765+ (6th.Cir.Mich.); PEOPLE v. SOLO, N.E.3d., 2017 WL 1838423(2017); 24 SENATORIAL DISTRICT REPUBLICAN COM-MITTEE v. ALCORN SUPRA.; VAETH v. BOARD OF TRUSTEES SUPRA.; WELL FARGO BANK N.A. v. H.M.H. ROMAN TWO N.C., LLC. SUPRA.; MOSLEY v. UNITED STATES SUPRA..

Exhibit

" JURisdiction "

=

File in CASES 19-60668,

19-60678 ~~~~ ~~~~~

=

FOR THE FIRST CIRCUIT ET. AL.,

DOCKET NO.(S) 18-8022; 19-10011 ET. AL.,

LAWRENCE L. CRAWFORD AKA JONAH GABRIEL JAHJAH T. TISHBITE
ET. AL.,

INTERESTED PARTY

STUDENTS FOR A FAIR ADMISSIONS ET. AL.,

PLAINTIFFS

Vs.

THE PRESIDENT OF HARVARD UNIVERSITY ET. AL.,

DEFENDANTS

## AFFIDAVIT OF SERVICE

I, JAHJAH AL MAHDI, DO HEREBY CERTIFY, THAT I HAVE MAILED AND
OR SERVED A COPY OF AN AFFIDAVIT OF FACTS GIVING JUDICIAL NOTICE;
MOTION TO SUPPLEMENT THE PREVIOUSLY FILED MOTION FOR REHEARING
EN BANC; MOTION TO POLL THE JUDGES; MOTION TO SUPPLEMENT THE
MOTION TO INTERVENE IN CASE 19-10011 AND MOTION TO MOTION THERE-
FOR, ON THE 1st. CIRCUIT COURT OF APPEALS, THE 5TH. CIRCUIT
COURT OF APPEALS AND ALL OTHER INVOLVED PARTIES BY U.S. MAIL,
POSTAGE PREPAID, BY PLACING IT IN THE INSTITUTION MAILBOX ON

SEPTEMBER 9, 2019. IT IS DEEMED FILED ON THAT DATE, <u>HOUSTON</u>
<u>v. LACK,</u> 287 U.S. 266, 273-76, 108 S.Ct. 2379(1988).

RESPECTFULLY,

JAHJAH AL MAHDI

SEPTEMBER 9, 2019

THE COURT OF APPEALS
FOR THE FIRST CIRCUIT ET. AL.,

———————————

DOCKET NO.(S) 18-8022; 19-10011 ET. AL.,

———————————

LAWRENCE L. CRAWFORD AKA JONAH GABRIEL JAHJAH T. TISHBITE
ET. AL.,

INTERESTED PARTY

———————————

STUDENTS FOR A FAIR ADMISSIONS ET. AL.,

PLAINTIFFS

Vs.

THE PRESIDENT OF HARVARD UNIVERSITY ET. AL.,

DEFENDANTS

———————————

AFFIDAVIT OF FACTS GIVING JUDICIAL NOTICE; MOTION TO SUPPLEMENT
THE PREVIOUSLY FILED MOTION FOR REHEARING EN BANC; MOTION to
POLL THE JUDGES; MOTION TO SUPPLEMENT THE MOTION TO INTERVENE
IN CASE 19-10011 AND MOTION TO MOTION THEREFOR

———————————

TO: THE FIRST CIRCUIT COURT OF APPEALS,
THE FIFTH CIRCUIT COURT OF APPEALS ET. AL.,

SO THE LAW IS WRITTEN, "ITA LEX SCRIPTA EST":

1-of-20

"WHENEVER A CIVIL ACTION IS FILED IN A COURT AS DEFINED
IN SECTION 610 OF THIS TITLE OR AN APPEAL, INCLUDING A PETITION
FOR REVIEW OF ADMINISTRATIVE ACTION, IS NOTED FOR OR FILED WITH
SUCH A COURT AND THAT COURT FINDS THAT THERE IS A WANT OF JURIS-
DICTION, THE COURT **"SHALL"** (EMPHASIS ADDED), IF IT IS IN THE
INTEREST OF JUSTICE, TRANSFER SUCH ACTION OR APPEAL TO ANY OTHER
SUCH COURT, (OR, FOR CASES WITHIN THE UNITED STATES TAX COURT,
TO THAT COURT) IN WHICH THE ACTION OR APPEAL COULD HAVE BEEN
BROUGHT AT THE TIME IT WAS FILED OR NOTICED, AND THE ACTION
OR APPEAL SHALL PROCEED AS IF IT HAD BEEN FILED ON OR NOTICED
FOR THE COURT TO WHICH IT IS WAS TRANSFERRED ON THE DATE UPON
WHICH IT WAS ACTUALLY FILED IN OR NOTICED FOR THE COURT FROM
WHICH IT WAS TRANSFERRED". IT IS COMMON KNOWLEDGE THAT ONCE
THE LEGISLATORS INVOKE THE WORD **"SHALL"**, **"SHALL"** IS MANDATORY,
KINGDOWARE TECHNOLOGIES, INC. v. U.S., 136 S.Ct. 1969, 195 L.Ed.
2d. 334, 84 U.S.L.W. 4416(U.S.2016); PLAZA CAROLINA MALL, L.P.
v. MUNICIPALITY OF BARCELONELA, 91 F.Supp.3d. 267 (D.C.PUERTO
RICO.2015); EUROPE EYE WEAR CORP. v. KAIZEN ADVISERS, LLC.,-
--F.Supp.3d.--, 2019 WL 2992336.

INASMUCH, I MOTION TO SUPPLEMENT THE PREVIOUSLY FILED
MOTION FOR A REHEARING EN BANC BECAUSE THE 1st. CIRCUIT'S ACTIONS
STAND IN VIOLATION OF JUDICIAL DETERMINATION AND RULINGS MADE
BY THE U.S. SUPREME COURT AND THOSE MADE WITHIN OTHER CIRCUITS
WITHIN THE UNITED STATES. WRIT OF ERROR IS NOW FILED UNDER THE
INDEPENDENT ACTION RULE TO ADDRESS THIS MATTER WHICH REQUIRE
AN INDEPENDENT REVIEW IN LIGHT OF THESE CIRCUMSTANCES. IT IS
THE PETITIONER'S POSITION THAT THE COURT DID ERR IN DISMISSING
THIS CASE WHEN IN THE INTEREST OF JUSTICE THE COURT WAS REQUIRED
TO TRANSFER THE CASE TO THE APPROPRIATE VENUE THAT DOES HAVE
JURISDICTION, TO PREVENT MANIFEST INJUSTICE FROM OCCURRING.
I OBJECT AND MOTION TO VACATE THE ORDER AND MOTION TO SUPPLEMENT
THE MOTION FOR A REHEARING EN BANC AND TO POLL THE JUDGES IN
THIS CASE TO REMEDY THIS MANIFEST INJUSTICE, GREEN v. SECRETARY
OF HEALTH AND HUMAN SERVICES, 136 Fed. Cl. 445 (Fed.Cl.Ct.2018);
U.S. v. DENEDO, 556 U.S. 904, 129 S.Ct. 2213, 173 L.Ed.2d. 1235
(U.S.2009); UNITED STATES v. APPLE MAC PRO. COMPUTER,--F3d.-
--, 2017 WL 1046105 (3rd.Cir.2017); CLARK v. UNITED STATES,

2017 WL 390294(N.C.2017); MASSI v. WASHINGTON, 2013 WL 5410810
(DSC.2013); ASTERBADI v. LEITESS, 176 Fed. Appx' 426 CA4 (Va.
2006).

THE FIRST CIRCUIT'S ERRONEOUS APPLICATION OF THE STATUTE
PURSUANT TO 28 U.S.C. § 1631 AND THE "IN THE INTEREST OF JUSTICE
STANDARD" WAS PREJUDICIAL TO THE PETITIONER. IN SUCH, THE ARBI-
TRARY AND CAPRICIOUS STANDARD APPLIES WHERE THE LEGAL QUESTION
AND OR ACT DONE IS NOT IN ACCORDANCE WITH LAW STANDARD AND THAT
OF DISCRETIONARY RULINGS UNDER THE ABUSE OF DISCRETION STANDARD.
THE "IN THE INTEREST OF JUSTICE STANDARD" IS CONGRUENT WITH
THE MANIFEST INJUSTICE STANDARD WHICH IS DEFINED AS UNFAIRNESS
THAT IS CLEARLY APPARENT OR OBVIOUS, BRITELL v. U.S., 318 F3d.
70(1st.Cir.2003); DOES 1-144 v. CHIQUITA BRANDS INTERNATIONAL
INC., 285 F.Supp.3d. 228, 2018 WL 369779(D.C.C.2018); HAHN v.
VERMONT LAW SCHOOL, 693 F2d. 48(1st.Cir.1983).

BY NOT ADDRESSING WHETHER THE "IN THE INTEREST OF JUSTICE
STANDARD" APPLIES TO THIS CASE. THE COURT HAS VIOLATED THE PETI-
TIONER'S DUE PROCESS RIGHTS SUBJECTING HIM TO OVERWHELMING PRE-
JUDICE BECAUSE ONE OF THE MAIN ISSUES BEING ARGUED WAS WHETHER
THE LOWER COURTS INVOLVED WERE DIVESTED OF JURISDICTION DUE
TO THE BEING SOUGHT LEAVE TO APPEAL WITHIN THE 1st. CIRCUIT
UNDER 28 U.S.C. § 1631. THUS, THE 1st. CIRCUIT HAS DENIED THE
PETITIONER A FULL OPPORTUNITY TO PROVE HIS CASE BY FAILING TO
TRANSFER TO THE APPROPRIATE COURT WHERE THE PLEADINGS IN QUESTION
CONSTITUTE A NOTICE SEEKING LEAVE TO APPEAL. THIS ALLOWED THE
FEDERAL JUDGE UNDER CASE 1:19-cv-1574-TLW-SVH TO ACCEPT A REPORT
AND RECOMMENDATION THAT THEY WERE DIVESTED OF JURISDICTION TO
ISSUE, THAT WAS TAINTED, A VIOLATION OF DUE PROCESS AND WAS
UNCONSTITUTIONAL SINCE IT WAS AN ISSUE BEFORE THE 1st. CIRCUIT
PRIOR TO THE RULING TO DISMISS THIS CASE IN THE FIRST PLACE
WHERE THE MATTER WAS SOUGHT LEAVE TO APPEAL. YOU TAKE INTO AC-
COUNT THAT THE 1st. CIRCUIT DID HAVE JURISDICTION OVER THE EXTRA-
ORDINARY WRIT SUBMITTED SEEKING TO COMPEL THE BOSTON DISTRICT
COURT TO RULE ON THE TIMELY SUBMITTED MOTION TO INTERVENE IN
CASE 1:14-cv-14176-ADB. IN SUCH, THE UNFAIRNESS IS CLEARLY APPA-
RENT AND OBVIOUS, ARORA v. BUCKHEAD FAMILY DENTISTRY, INC.,

285 F.Supp.3d. 190, 2018 WL 324821 (D.D.C.2018); UNITED ELEC.
RADIO AND MACH. WORKERS OF AMERICA v. 163 PLEASANT STREET CORP.,
960 F2d. 1080, 1992 WL 62733(1st.Cir.1992); COSSART v. UNITED
STATES EXCEL CORP., 804 F3d. 13, 2015 WL 5719677(1st.Cir.2015).


    THERE ARE THREE REQUIREMENTS FOR A TRANSFER OF VENUE
IN THE INTEREST OF JUSTICE: (1) THERE MUST BE A LACK OF JURISDIC-
TION IN THE 1st. CIRCUIT WHICH IN TRUTH THERE WASN'T A LACK
OF JURISDICTION, THE COURT ABUSED ITS DISCRETION SINCE A SEEKING
OF A WRIT TO COMPEL THE BOSTON DISTRICT COURT TO RULE ON THE
MOTION TO INTERVENE WAS PROPERLY SUBMITTED TO THE COURT RELATED
TO CASE 1:14-cv-14176-ADB; THE TRANSFER MUST BE IN THE INTEREST
OF JUSTICE AS IS ESTABLISHED BY PRIOR PLEADING AND EXHIBIT,
"NEWMAN CHALLENGE" FILED BEFORE THE COURTS INVOLVED WHICH SUB-
STANTIATE THE CLAIMS OF DEFAULT, COLLATERAL ESTOPPEL AND THE
VOIDING OF JURISDICTION EMERGING FROM CASE 2013-CP-400-0084.
JURISDICTION IN TRUTH LIES BEFORE THE COURT OF JUDGE JACQUELYN
AUSTIN WHO WAS APPOINTED BY DECREE OF THE SOLE CORPORATION AND
FOREIGN SOVEREIGN CROWN WHICH PROCEDUALLY CANNOT BE CHALLENGED
DUE TO CLAIMS OF DEFAULT, COLLATERAL ESTOPPEL AND VOIDING OF
JURISDICTION EMERGING FROM CASE 2013-CP-400-0084 OUT OF RICHLAND
COUNTY SOUTH CAROLINA; AND (3) THE TRANSFER MAY BE MADE ONLY
TO A COURT IN WHICH THE ACTION COULD HAVE BEEN BROUGHT AT THE
TIME IT WAS FILED OR NOTICED. THIS WAS JUDGE AUSTIN'S COURT
OR IN THE ALTERATIVE, THE MULTI-DISTRICT LITIGATION PANEL TO
WHICH REVIEW IS ALSO SOUGHT. THUS, THE 1st. CIRCUIT IN THIS
INSTANCE WAS TO DETERMINE WHETHER THE STRUCTURAL ERROR ARGUED
RELATED TO WILLIAMS v. PENNSYLVANIA, 136 S.Ct. 1899, 195 L.Ed.2d.
132, 84 U.S.L.W. 4359(U.S.2016) EXISTED AND THEN TRANSFER THE
CASE TO THE APPROPRIATE JURISDICTION DUE TO MULTI-DISTRICT LITI-
GATION AND EXTRA TERRITORIAL JURISDICTION CLAIMS AS ARGUED WITHIN
THE PLEADINGS, TRANSFIRST GROUP INC. v. MAGLIARDITI, 237 F.Supp.
3d. 444, 2017 WL 660638(N.D.Tex.2017); LEFFEBRE v. UNITED STATES,
129 Fed. Cl. 48, 2016 WL 6427677 (Fed.Cl.Ct.2016); KNOX v. METAL
FORMING, INC., 914 F3d. 685, 2019 WL 364021(1st.Cir.2019).


    IF A COURT, UPON DETERMINING THAT IT LACKS JURISDICTION
OVER AN ACTION, FURTHER (EMPHASIS ADDED) DETERMINES (ON THE

COURT RECORD) [EMPHASIS ADDED] THAT IT WOULD NOT BE IN THE IN-
TEREST OF JUSTICE TO TRANSFER THE ACTION, ONLY THEN CAN THE
1st. CIRCUIT DISMISS THE ACTION. I OBJECT AND MOTION FOR A RE-
HEARING EN BANC. FIRST, THE COURT DID HAVE JURISDICTION TO HEAR
THE SEEKING OF THE WRIT TO COMPEL THE BOSTON DISTRICT COURT
TO RULE ON THE MOTION TO INTERVENE REGARDING CASE 1:14-cv-14176-
ADB. NONETHELESS, IF THE 1st. CIRCUIT IN AN ABUSE OF DISCRETION
WRONGFULLY DETERMINE IT DID NOT HAVE JURISDICTION. THE 1st.
CIRCUIT WAS REQUIRED TO MAKE A JUDICIAL DETERMINATION STATING
**"WHY"** (EMPHASIS ADDED) IN THE INTEREST OF JUSTICE THE CASE SHOULD
NOT BE TRANSFERRED, THE SAME AS THE COURT DID FOR THE AFRICAN
AMERICAN STUDENTS AT HARVARD UNIVERSITY WHO FILED AN APPEAL
AND PRIOR MOTION TO INTERVENE IN 2015, BUT THE 1st. CIRCUIT
FAILED TO DO SO IN VIOLATION OF THE PETITIONER'S DUE PROCESS
RIGHTS, DENYING THE PETITIONER THE EQUAL PROTECTION OF THE LAWS
RENDERING THE ORDER TO DISMISS UNCONSTITUTIONAL AND VOID AND
IS AS IF THERE WERE NO JUDICIAL DETERMINATION MADE AT ALL, U.S.
v. $41,320 U.S. CURRENCY, 9 F.Supp.3d. 582, 2014 WL 1266240;
WHITE v. MANIS, 2014 WL 1513280(DSC.2014); PAUL ADAMS v. CALI-
FORNIA INSTITUTION, 2016 WL 6464444; HOLLOWAY v. PERRY, 2016
WL 4074149; WELLS FARGO BANK N.A. v. H.M.H. ROMAN TWO N.C.,
LLC., 859 F3d. 295(4th.Cir.2017); MOSELY v. UNITED STATES, 2018
WL 1187778 (W.D.N.C.2018); MILFORD v. MIDDLETON, 2018 WL 348059
(DSC.2018); RUBIN v. ISLAMIC REPUBLIC OF IRAN, 138 S.Ct. 816,
86 U.S.L.W. 4064(U.S.2018)(ADDRESSING THE INTELLECTUAL PROPERTY
OF THE SOLE CORPORATION); MONTGOMERY v. LOUISIANA, 136 S.Ct.
718, 193 L.Ed.2d. 599, 84 U.S.L.W. 4063(U.S.2016); 24 SENATORIAL
DIST. REPUBLICAN COMMITTEE v. ALCORN, 820 F3d. 624(4th.Cir.2016).

    TO ESTABLISH PERSONAL JURISDICTION UNDER THE LONG ARM
STATUTE A PLAINTIFF MUST DEMONSTRATE THAT: (1) THE DEFENDANT(S)
(ie. THE UNITED STATES THAT APPEARS AND JOIN IN THIS CASE VIA
AFFIRMATIVE ACTION THAT APPLIES TO ALL (50) STATES; THE ALLOWING
OF SAME SEX MARRIAGE BY THE STATES UNDER THE 1st. CIRCUIT'S
JURISDICTION WHO ARE ATTACHING AND OR EXECUTING THE INTELLECTUAL
PROPERTY OF THE SOLE CORPORATION IN VIOLATION OF THE GRANT GIVEN
TO THEM; THE UNITED STATES INVOLVEMENT IN THE CONSTITUTIONAL
STRUCTURAL ERROR RELATED TO ALL FEDERAL INDICTMENTS, ALSO RELATED
TO THE STATE OF MASSACHUSETTS AND OTHER STATES INVOLVED INDICT-
MENTS DEFAULTED ON BY THE UNITED STATES) TRANSACTED THIS AFORE
SAID BUSINESS WITHIN THE STATES UNDER THE 1st. CIRCUIT'S JURIS-
DICTION; (2) THE CLAIMS AROSE FROM THE BUSINESS AND OR ACTION
TRANSACTED WITHIN THE STATES UNDER THE 1st. CIRCUIT'S JURISDIC-
TION; (3) THE DEFENDANTS HAD MINIMUM CONTACTS IN THE STATES
INVOLVED UNDER THE 1st. CIRCUIT'S JURISDICTION WHICH IS ESTA-
BLISHED BY THE PLEADINGS AS IS THE PRESENCE OF THE KING-KHALI-
FAH'S HOLY COMMONWEALTH OF THE (4) GLOBAL THRONES WITHIN YOUR
STATES BINDING THE PETITIONER TO ACT BY FIDUCIARY DUTY; (4)
THE COURT'S EXERCISE OF PERSONAL JURISDICTION WOULD NOT OFFEND
TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE. BY
THE FRAUD PERPETRATED BY THE UNITED STATES GOVERNMENT PARTIES
AND THOSE THEY CONSPIRED WITH LISTED WITHIN THESE MULTI-DISTRICT
CASES. THEY WOULD NOT BE PREJUDICED AT ALL WHERE SANCTIONS AND
FORFEITURE ON THE CAUSES ARE WARRANTED, PYNE v. UNITED STATES,
F.Supp.3d., 2016 WL 1377402(D.C.Md.2016); VAETH v. BOARD OF
TRUSTEES, F.Supp.3d., 2016 WL 775386(D.C.Md.2016); PEDZEWICK
v. FOE, 963 F.Supp. 48, 1997 WL 136429(D.Mass.1997); PREP TOURS,

INC. V. AMERICAN YOUTH SOCCER ORGANIZATION, 913 F3d. 11 (1st.Cir.
2019); DEPIANTI v. JAN-PRO FRANCHISING INTERNATIONAL, INC.,
873 F3d. 21 (1st.Cir.2017)(ALSO DEALING WITH CLAIM OF RES JUDI-
CATA AND OR COLLATERAL ESTOPPEL).


        CONSPIRACY CAN BE PROVEN BY CIRCUMSTANTIAL EVIDENCE,
AND WE HAVE A CONSPIRACY TO EFFECT INTERSTATE COMMERCE IN VIOLA-
TION OF THE HOBBS ACT DUE TO THE ATTACHMENT OF THE INTELLECTUAL
PROPERTY OF THE FOREIGN SOVEREIGN CROWN. TO PREVAIL ON A THEORY
OF CONSPIRACY JURISDICTION UNDER THE LONG ARM STATUTE, PETITIONER
MUST ALLEGE: (1) THE EXISTENCE OF A CONSPIRACY WHICH WAS DONE;
(2) THE NON RESIDENTS PARTICIPATION IN OR AGREEMENT TO JOIN
THE CONSPIRACY WHICH WAS ARGUED WITHIN THE SUBMITTED PLEADINGS;
AND (3) AN OVERT ACT TAKEN IN FURTHERANCE OF THE CONSPIRACY
WITHIN THE FORUM BOUNDARIES SUCH AS JUDGE BURROUGH'S FAILURE,
TO OBSTRUCT JUSTICE,BY FAILING TO RULE ON THE TIMELY SUBMITTED
MOTION TO INTERVENE OR CONDUCT THE REQUIRED EVIDENTIARY HEARING
ACTING IN CONCERT IN THEIR MEETING OF THE MINDS WITH THE UNITED
STATES AND OTHER DEFENDANTS INVOLVED, VIOLATING HER OATH OF
OFFICE TO UPHOLD THE U.S. CONSTITUTION VIA 5 U.S.C. §§ 3331,
3333 AND 7311, ALSO ALLOWING SAME SEX MARRIAGE WITHIN YOUR STATES
ATTACHING THE INTELLECTUAL PROPERTY OF THE (4) GLOBAL THRONES;
AND THE USE OF THESE FATALLY DEFECTIVE INDICTMENTS AGAINST MY
PEOPLE. THE PETITIONER HAS MET THE BURDEN EVEN PURSUANT TO 28
U.S.C. §§ 2679, 1602-1612 ET. SEQ. BY THE ATTACHING OF THIS
INTELLECTUAL PROPERTY. I OBJECT AND MOTION FOR A REHEARING EN
BANC, SANDRA J. KOTTMAN, PLAINTIFF v. UNITED STATES, 2017 WL
4185481(W.D.MISSOURI.2017); WARD v. AUERBACH, 2017 WL 2724938
(D.C.Miss.2017); BIBIANO v. LYNCH, 834 F3d. 966, 2016 WL 4409351
(9th.Cir.2016); ROSEBERRY-ANDREWS v. WILSON, 292 F.Supp.3d.
446, 2018 WL 1036360(D.D.C.2018); ROBBINS FRANCHISING LLC. v.
ALPENROSE DAIRY INC., 825 F3d. 28(1st.Cir.2016).


        THE ATTACHING OF THE INTELLECTUAL PROPERTY BY GIVING
SODOMITES AND GOMORRAHRITES THE RIGHT TO LEGALLY MARRY IN VIOLA-
TION OF THE "GRANT" GIVEN TO YOUR NATIONS BY THE SOLE CORPORATION
WHICH HAD RESTRICTIONS IS PROTECTED UNDER BOTH ARTICLE 1 § 10
AND ARTICLE IV § 2 OF THE U.S. CONSTITUTION ESTABLISHES JURISDIC-
TION AND CAUSE OF ACTION. YOUR STATES MAKING USE OF THESE FATALLY

DEFECTIVE INDICTMENTS AGAINST THE HOLY COMMONWEALTH OF CHRISTIANS
, MUSLIMS, JEWS AND AFRICAN AMERICANS IN YOUR FORUM STATES.
THOSE FINAL ORDERS SEEKING TO REINSTATE THOSE APPEALS GIVE YOU
JURISDICTION UNDER THE INDEPENDENT ACTION RULE EVEN PURSUANT
TO RECALLING THOSE MANDATES. THE BACK DOOR ATTACK UPON AFFIRMA-
TIVE ACTION BY THESE WHITE NATIONALIST ALT RIGHT DEVILS EFFECTING
MY PEOPLE WITHIN ALL OF YOUR STATES GIVE YOU JURISDICTION, ALL
OF THIS OCCURRING WITHIN THE FORUM STATE, ARE NOT SINGLE EVENTS.
THEY ARE CONTINUOUS ACTS DONE IN FURTHERANCE OF THE ALLEGED
CONSPIRACY WHICH IS WHY JUDGE BURROUGHS DELAYED AND OR CIRCUM-
VENTED RULING ON THE MOTION TO INTERVENE TO THWART AND OR HINDER
AND OR DELAY JUDICIAL REVIEW TO OBSTRUCT JUSTICE IN THEIR MEETING
OF THE MINDS. THIS DEMONSTRATES THAT THE PETITIONER HAS MET
THE BURDEN AND DEMONSTRATED THAT THE PETITIONER AND DEFENDANTS
ARE SO AFFILIATED AND ENGRAINED WITHIN THE FORUM STATE VIA HIS
FIDUCIARY DUTY AS THE FOREIGN SOVEREIGN HEIR TO THE (4) GLOBAL
THRONES INVOKING THE F.S.I.A. AS PLAINTIFF WHERE BY DETERMINATION
OF THE U.S. SUPREME COURT THE PETITIONER MUST BE DEEMED AS BEING
AT HOME ESTABLISHING JURISDICTION, IANNELLI v. U.S., 420 U.S.
770, 95 S.Ct. 1284, 43 L.Ed.2d. 616; GREAT AMERICAN INS. CO.
v. NEXTDAY NETWORK HARDWARE CORP., 73 F.Supp.3d. 636(2014);
U.S. v. BURTON, 11 Fed. Appx' 328, 2011 WL 640248 CA4 (2011);
SPIRES v. SCHOOLS,--F.Supp.3d.--, 2017 WL 4174774(DSC.2017);
FIFTH THIRD BANCORP v. DUDENHOEFFER, 132 S.Ct. 2459, 189 L.Ed.2d.
457, 82 U.S.L.W. 4578(U.S.2014).


    A STATE MAY NOT EXCLUDE A PERSON FROM PRACTICE OF LAW
OR ANY OTHER OCCUPATION SUCH AS "FIDUCIARY", "ATTORNEY", "JUDGE",
"LEGISLATOR" AND LAWGIVER OF GOD AND THE (4) GLOBAL THRONES,
IN A MANNER OR FOR REASONS THAT CONTRAVENE THE DUE PROCESS OR
EQUAL PROTECTION OF THE LAWS CLAUSE OF THE 14th. AMENDMENT WHERE
BY THE COURT'S ACTIONS IT DEMONSTRATES PROTECTORATE AND DISCRI-
MINATORY ANIMUS BEHIND RELIGIOUS AND RACIAL HATRED, SCHWARE
v. BOARD OF EXAM OF STATE OF N.M., 353 U.S. 232, 77 S.Ct. 752,
64 A.L.R.2d. 288, 1 L.Ed.2d. 716(U.S.1957); FACIRE v. SULLIVAN,
2017 WL 3710066(D.C.Nev.2017); VIRGINIA BOARD OF MEDICINE v.
ZACKRISON, 67 Va. App. 461, 796 S.E.2d. 866(2017); DOE v. ROGERS,
139 F.Supp.3d. 120 (D.D.C.2015); BOLLS v. VIRGINIA Bd. OF BAR

EXAMINERS, 811 F.Supp.2d. 1260 (E.D.Va.2011).


IT IS INDISPUTABLE THAT THE 1st. CIRCUIT DOES HAVE JURIS-
DICTION VIA THE PETITIONER SEEKING A WRIT TO COMPEL THE BOSTON
DISTRICT COURT UNDER CASE 1:14-cv-14176-ADB TO RULE ON THE MOTION
TO INTERVENE AND BY MASSACHUSETTS LONG ARM STATUTES. NONETHELESS,
IF THE COURT IN AN ABUSE OF DISCRETION ASSERT THAT IT DOES NOT?
THE INTEREST OF JUSTICE WOULD BE SERVED IF THE 1st. CIRCUIT
VACATED THE DISMISSAL AND TRANSFER THE CASE AS 28 U.S.C. § 1631
REQUIRES, ESPECIALLY IN LIGHT OF THE FACT THAT WE HAVE A DULY
APPOINTED "TRUSTEE" IN THE FORM OF JUDGE JACQUELYN AUSTIN IN
THE S.C. DISTRICT COURT AND THE DEFENDANTS IN THIS CASE, IN-
CLUDING THE UNITED STATES, ENGAGING IN EGREGIOUS ACTS OF FRAUD
UPON THE COURT BRIBING AND OR INFLUENCING JUDGES TO CIRCUMVENT
THE DEFAULT, COLLATERAL ESTOPPEL AND VOIDING OF JURISDICTION
PLACING THEM IN FORFEITURE ON THE CAUSES. THE PETITIONER SATISFY
THE IN THE INTEREST OF JUSTICE PREREQUISITE. EVEN IF THE PETI-
TIONER WAS MISTAKEN IN BELIEVING THAT THE 1st. HAD JURISDICTION
OVER THE INDIVIDUALS AND OR DEFENDANTS, SUCH A MISTAKE DOES
NOT JUSTIFY DISMISSAL, PARTICULARLY BECAUSE CLAIMS COULD BE
PERMANENTLY TIME BARRED IF DISMISSED AND IT PREJUDICED THE PETI-
TIONER ALLOWING JUDGE WOOTEN UNDER CASE 1:19-cv-1574-TLW-SVH
TO ACCEPT A TAINTED REPORT AND RECOMMENDATION WHEN JURISDICTION
WAS DIVESTED DUE THE SEEKING LEAVE TO APPEAL BEFORE THE 1st.
CIRCUIT WHICH VIOLATED DUE PROCESS AND PREJUDICED THE PETITIONERS
INVOLVED. DUE TO WHAT IS ARGUED IN THIS CASE WHERE "TRUSTEE"
IS ALSO APPOINTED AND THEY DEFAULTED IN CASE 2013-CP-400-0084.
THE TRANSFER WOULD NOT PREJUDICE THE DEFENDANTS SINCE ONCE JURIS-
DICTION IS ACQUIRED, IT IS EXCLUSIVE MAKING IT MANDATORY THAT
PURSUANT TO 28 U.S.C. § 1631 THE CASE SHOULD HAVE NEVER BEEN
DISMISSED BUT TRANSFERRED, FIFTH THIRD BONCORP v. DUDENHOEFFER
SUPRA.; FOBES v. FORBES, 341 P.3d. 1041, 2015 Wy. 13; PRESAULT
v. I.C.C., 494 U.S. 1, 110 S.Ct. 914, 108 L.Ed.2d. 1 (U.S.1990);
BROWN v. BROWN, F.Supp.2d., 2013 WL 2338233(D.C.Ky.2013); HARRIS
v. HHGREGG INC., F.Supp.2d., 2013 WL 1331166(N.C.2013); KARNAL-
CHEVIA v. J.P. MORGAN CHASE BANK N.A., 871 F.Supp.2d. 834(2012);
McCOY v. LOUISIANA, 138 S.Ct. 1500, 200 L.Ed.2d. 821, 86 U.S.L.W.
4271(U.S.2018); FEDERAL HOME LOAN BANK OF BOSTON v. MOODY'S

CQRP., 821 F3d. 102, 2016 WL 1732656(1st.Cir.2016); WARD v.
AUERBACH, F.Supp., 2017 WL 2724938(D.Mass.2017); ROSS v. BLAKE,
136 S.Ct. 1850, 195 L.Ed.2d. 117, 84 U.S.L.W. 4352(U.S.2016)
(WHERE THE CASE ESTABLISHES THAT ALL STATES VOLUNTARILY MAKE
USE OF THE PRISON LITIGATION REFORM ACT FROM THE CLINTON BILL
INCLUDING THE FORUM STATE WHERE ATTACK UPON THIS PROVISION OF
LAW IS MADE UNDER THE MULTI DISTRICT LITIGATION RULES DUE TO
IT DISPROPORTIONATELY TARGETING AND EFFECTING AFRICAN AMERICANS
TO THEIR DETRIMENT; ALSO DEMONSTRATING THAT DUE TO ACTS OF MACH-
INATION I DO NOT HAVE TO EXHAUST NOR DO I NEED A FINAL ORDER
TO ENTER THIS COURT DUE TO THEIR EFFORTS TO THWART JUDICIAL
REVIEW).


        DECISION TO TRANSFER VENUE IN THE INTEREST OF JUSTICE
REST WITHIN THE SOUND DISCRETION OF THE COURT. IN DECIDING
WHETHER TO TRANSFER A CASE, COURTS CONSIDER, INTER ALIA, WHETHER
THE CLAIMS WOULD BE TIME BARRED UPON REFILING AS OCCURRED HERE
WHERE JUDGE WOOTEN USED THE 1st. CIRCUIT'S ACTION TO INAPPROPRI-
ATELY ENTERTAIN JURISDICTION OVER CASE 1:19-cv-1574-TLW-SVH
TO WHICH I INTERVENED IN THAT CASE TO ESTABLISH TAG ALONG CASE
UNDER THE MULTI-DISTRICT LITIGATION RULES AND TO ESTABLISH APPEAL
OF THAT CASE; WHETHER THE TRANSFER WOULD PREJUDICE THE DEFENDANTS
, WHICH IT WON'T SINCE THE UNITED STATES IS ALREADY A PARTY
IN THE BOSTON COURT, ALSO IN CASE 19-10011, AND IN CASE 2013-
CP-400-0084 WHERE THEY DEFAULTED AND THAT DEFAULT IS BINDING
ON ALL COURTS, STATE AND FEDERAL, BY THE SUPREMACY CLAUSE AND
THE KING-KHALIFAH'S DECREE. THE COURT MUST ALSO CONSIDER WHETHER
THE TRANSFER WOULD SAVE THE PETITIONER THE TIME AND EXPENSE
OF REFILING IN A NEW COURT OF APPEALS. THIS CASE WAS FILED ARGU-
ING THREAT OF IMMINENT DANGER. YOU SEE WHAT JUST OCCCURRED
IN THE 3rd. CIRCUIT RELATED TO THIS CLAIM. IT IS APPARENTLY
OBVIOUS THAT THE PETITIONER WOULD BE PREJUDICED IF REQUIRED
TO REFILE IN ANOTHER COURT. BY SUCH, THE PETITIONER IS CLEARLY
PREJUDICED, CREATING MANIFEST INJUSTICE, DENYING HIM THE EQUAL
PROTECTION OF THE LAWS, VIOLATING MY DUE PROCESS RIGHTS RENDERING
THE ACTION UNCONSTITUTIONAL AND VOID, DONATONI v. DEPARTMENT
OF HOMELAND SECURITY,--F.Supp.3d.--, 2016 WL 1755871; U.S. v.
HARE, 820 F3d. 93(4th.Cir.2016); U.S. v. ALADEKCHA, 2010 WL

4054267(D.C.Md.2010); BROWN v. U.S., 2014 WL 2871398(DSC.2014);
IN RE: LIBOR-BASED FINANCIAL INSTRUMENTS ANTITRUST LITIGATION,
F.Supp.3d., 2015 WL 6243526(S.D.N.Y.2015); FREEMAN v. SUNTRUST
BANKS, INC., 139 F.Supp.3d. 271, 2015 WL 5579559(D.D.C.2015);
AMILY RUBBERIZED PEN. CO. v. MARKET QUEST GROUP INC., 793 F3d.
991, 2015 WL 4174085(9th.Cir.2015).

PERSONAL JURISDICTION WOULD HAVE BEEN PROPER IN THE STATES
UNDER THE 1st. CIRCUIT'S JURISDICTION AND THE BOSTON DISTRICT
COURT WHERE SCHEME AND PLOT TOOK PLACE AND DUE TO THE SEEKING
OF AN EXTRAORDINARY WRIT TO COMPEL THE BOSTON DISTRICT COURT
TO RULE ON THE MOTION TO INTERVENE IN CASE 1:14-cv-14176-ADB,
A SCHEME AND PLOT DESIGNED TO DEFRAUD THE INMATES OF CONCERN
WHO ARE BENEFICIARIES OF THE TRUST SET UP BY THE SOLE CORPORATION
TO PREVENT THEM FROM REAPING THE BENEFITS OF A PROPER AND FAIR
ADJUDICATION IN THE FORUM STATE. THE SCHEME AND PLOT TO GUT
AFFIRMATIVE ACTION BY A BACK DOOR PROCEEDING OCCURRED IN THE
FORUM STATE, EFFECTING ALL (50) STATES WHERE THE UNITED STATES
KNEW THEY WERE PROCEDURALLY BARRED DUE TO DEFAULT AND COLLATERAL
ESTOPPEL EMERGING FROM CASE 2013-CP-400-0084 AS IT RELATES TO
THE S.C. CASE. THERE IS A SCHEME AND PLOT TO CONTINUE TO SUBJECT
AFRICAN AMERICANS TO THE PROVISIONS OF THE CLINTON BILL TO DIMI-
NISH THEIR RIGHT TO VOTE BY LABELING THE AS FELONS DISPROPOR-
TIONATELY EFFECTING AND TARGETING AFRICAN AMERICANS TO THEIR
DETRIMENT PRESENTLY OCCURRING IN THE FORUM STATE. THERE IS A
SCHEME AND PLOT, CONSPIRACY, TO CONTINUE TO ATTACH AND OR EXECUTE
THE INTELLECTUAL PROPERTY OF THE SOLE CORPORATION IN A MANNER
THAT VIOLATES THE TERMS OF THE "GRANT" GIVEN BY THE SOLE CORPOR-
ATION PRESENTLY OCCURRING WITHIN THE FORUM STATE AND THE UNITED
STATES GOVERNMENT VIA ITS EMPLOYEES HAVE CONSISTENTLY PROVEN,
EVEN AFTER NOTICE BEING GIVEN TO THEM UNDER CASE 19-10011 IN
THE 5TH. CIRCUIT THAT THEY CANNOT PROVE THAT THEY TIMELY FILED
TO DEFEAT THE AFFIDAVITS OF DEFAULT AND VOIDING OF JURISDICTION
EMERGING FROM CASE 2013-CP-400-0084 AS PROVEN BY THE LETTER
SUBMITTED BY ATTORNEY SETTANA RELATED TO THAT CASE AND THE FRAUD
UPON THE COURT THEY ENGAGED IN IN THEIR EFFORTS AND ATTEMPT
TO CIRCUMVENT THEIR FAILURE TO TIMELY CHALLENGE THE CLAIMS IN
THAT COURT BY PRODUCING A FRAUDULENT ORDER ISSUED BY JUDGE MAN-

NING WHO IS A DEFENDANT IN THIS CASE, TO PLACE THE CASE ON THE
COMPLEX CASE DOCKET WHEN THE CASE WAS OFFICIALLY REMOVED TO
THE FEDERAL DISTRICT COURT. IN SUCH, THE 1st. CIRCUIT IS REQUIRED
, ON THE COURT RECORD, TO MAKE A JUDICIAL DETERMINATION EXPLANING
CLEARLY "WHY" THIS CASE SHOULD NOT HAVE BEEN TRANSFERRED TO
THE APPROPRIATE VENUE, WHICH IN THIS CASE, IS THE COURT OF THE
DULY APPOINTED "TRUSTEE" FOR PROPER DISPOSAL, WHO IN THIS CASE
IS JUDGE JACQUELYN AUSTIN OF THE S.C. DISTRICT COURT, TO THEN
HAVE THE RELEVANT COMPONENTS OF THE CASE TRANSFERRED TO THE
N.J. DISTRICT COURT FOR TRIAL BY HER AS IS CLEARLY SOUGHT BY
THE FOREIGN SOVEREIGN CROWN IN THE INTEREST OF JUSTICE, FERRARA
v. QUADROZZI EQUIPMENT LEASING CORP., 2013 WL 3226755(E.D.N.Y.
2013); ANDERSON v. LIBERTY LOBBY INC., 477 U.S. 242, 106 S.Ct.
2505, 91 L.Ed.2d. 202(U.S.1986); IN RE: CLEAN BURN FUELS, LLC.,
2014 WL 2987330(N.C.2014); WILLIAMS v. SECRETARY OF VETERANS
AFFAIRS,--F.Supp.3d.--, 2015 WL 5935169(N.D.Ala.2015); LaPENNA
v. GOVERNMENT EMPLOYEES INS. CO., 316 Fed. Appx' 894, 2009 WL
485274(11th.Cir.2009); MILLER v. PARRISH, F.Supp.2d., 2013 WL
1868028(Va.2013); CELOTEX CORP. v. CATRETT, 477 U.S. 317, 106
S.Ct. 2548, 91 L.Ed.2d. 265(U.S.1996); ACKERMANN v. EXXON MOBIL
CORP., 734 F3d. 237(4th.Cir.2013); BARTELS BY AND THROUGH BARTELS
v. SABER HEALTH CARE GROUP, LLC., 880 F3d. 668(4th.Cir.2018);
U.S. BANK NATIONAL ASSOCIATION v. S.R.A. AUGUSTA S.P.E., LLC.,
F.Supp.3d., 2016 WL 6808132(D.MAINE.2016).

FRAUDULENT MISREPRESENTATION AS IT RELATES TO THE CON-
SPIRACY TO CONTINUE TO USE THESE FATALLY DEFECTIVE INDICTMENTS
WITHIN ALL STATES, INCLUDING THE FORUM STATE; THE ALT RIGHT
WHITE NATIONALIST AGENDA TO CREATE A BACK DOOR PROCEEDING TO
GUT OUT AFFIRMATIVE ACTION BEHIND RACIAL ANIMUS TOWARDS AFRICAN
AMERICANS WHERE THE TRUMP ADMINISTRATION AND THOSE WHO SUPPORT
HIM USED THESE ASIAN STUDENTS AS PROXY, ALSO THE ISSUE OF REPARA-
TIONS FOR THE U.S. SLAVE TRADE INVOLVING THE FORUM STATE; THE
FRAUDULENTLY ATTACHING THE INTELLECTUAL PROPERTY OF THE (4)
GLOBAL THRONES BY GIVING THE RIGHT TO MARRY TO THE GAYS AND
LESBIANS IN VIOLATION OF THE "GRANT" GIVEN BY THE SOLE CORPORA-
TION PROTECTED UNDER BOTH ARTICLE 1 § 10 AND ARTICLE IV § 2
OF THE U.S. CONSTITUTION CONSTITUTE A CONSPIRACY TO SUPPRESS
TRUTH, CONCEAL MATERIAL FACTS IN VIOLATION OF 18 U.S.C. §§ 242
AND 1001, TO DEFRAUD THE INMATES OF THIS NATION AND IN THE FORUM
STATE TO DIMINISH THE POLITICAL VOICE OF AFRICAN AMERICANS AND
TAKE AWAY THEIR RIGHT TO VOTE BY UNJUSTLY LABELING THEM AS FELONS
WITH THESE ARBITRARY, CAPRICIOUS, RACIALLY MOTIVATED LAWS VIA
THE CLINTON BILL AS WELL AS THE CONSPIRACY TO DENY THE RIGHTS
OF THE FIDUCIARY FOREIGN SOVEREIGN HEIR TO EXECUTE AND ESTABLISH
AND FULFILL HIS FIDUCIARY DUTY WHERE HE IS OBLIGATED BY "CON-
TRACT", BY "COVENANT" TO PREVENT THESE ACTS WHICH DEFY "JUSTICE
AND FAIRNESS" FROM BEING LEVIED AT HIS PEOPLE. ALL OF THIS PRE-
SENTLY OCCUR WITHIN THE FORUM STATE. THE COURTS CANNOT UNMAKE
THE CONTRACT ESTABLISHED BY THE SOLE CORPORATION, HARRIS v.
SPORTBIKE TRACK GEER, F.Supp., 2015 WL 12839498(D.N.J.2015);
LaVALLEE v. PARROT-ICE DRINK PRODUCTS OF AMERICA, INC., 193
F.Supp.2d. 296, 2002 WL 363407(D.Mass.2002); AMERICAN MUT. LI-
BERTY INS. CO. v. PLYWOOD-PLASTICS CORP., 81 F.Supp. 157(DSC.
1948); OPARAH v. THE NEW YORK CITY DEPT. OF EDUC., F.Supp.3d.,
2015 WL 4240733(N.Y.D.C.2015); INTERNATIONAL ASS'N OF MACHINISTS
LODGE 1652 v. INTERNATIONAL AIRCRAFT SERVICES, INC. (CHARLESTON)

302 F2d. 808, 49 L.R.R.M. (BNA) 2976(4th.Cir.1962).

ALL THE 1st. CIRCUIT AND PARTIES WOULD HAVE TO DO IS
VIEW THE RECORDS ELECTRONICALLY OF THE CASES FILED BY LAWRENCE
CRAWFORD AND THE PARALLEL PLAINTIFFS INVOLVED AND YOU WILL SEE
THAT AT THE TIME THE MANNING ORDER PLACING THE CASE ON THE COM-
PLEX CASE DOCKET OCCURRED. CASE 2013-CP-400-0084 WAS REMOVED
VOIDING ANY ACTION JUDGE MANNING DONE ████ ESTABLISHING THE
DEFAULT WHERE THEY HAD PLENTY OPPORTUNITY TO CHALLENGE BUT CHOSE
FRAUD. I MOTION TO EXPAND THE SCOPE AND FOR INCLUSION OF THOSE
ELECTRONIC DOCUMENTS. A HEARING WAS REQUIRED WHICH IS WHY JUDGE
BURROUGHS DELAYED AND OR CIRCUMVENTED RULING ON THE MOTION TO
INTERVENE BECAUSE SHE CONSPIRED TO PREVENT THE CLAIMS OF DEFAULT,
COLLATERAL ESTOPPEL AND VOIDING OF JURISDICTION FROM BEING HEARD
AND ESTABLISHED WITHIN CASE 1:14-cv-14176-ADB. THIS ESTABLISHES
THE CONSPIRACY WITHIN THE FORUM STATE GIVING THE 1st. CIRCUIT
PERSONAL JURISDICTION EVEN BY WAY OF THE MASSACHUSETTS LONG
ARM STATUTES. INSOMUCH, I GIVE YOU ALL JUDICIAL NOTICE. I AM
INVOKING ALL SUPERSEDING ATTORNEY, JUDICIAL, LEGISLATIVE AND
EXECUTIVE POWER AND AUTHORITY OF THE SOLE CORPORATION WHICH
IS BINDING UPON ALL COURTS INVOLVED DUE TO THE DEFAULT, COLLA-
TERAL ESTOPPEL AND THE VOIDING OF JURISDICTION EMERGING FROM
CASE 2013-CP-400-0084 WHICH YOU ARE PROCEDURALLY BARRED FROM
CHALLENGING AND THE 1st. CIRCUIT'S PAST ORDER IS VOID. EN BANC
REVIEW MUST BE GIVEN IN FUNDAMENTAL FAIRNESS TO THE PETITIONER
TO ALSO ADDRESS THE ISSUE OF THE TRANSFER WHICH WAS DENIED THE
PETITIONER PURSUANT TO 28 U.S.C. § 1631. A STATE MAY NOT EXCLUDE
OR BURDEN OR CONVERT INTO A CRIME THE FREE EXERCISE OF RIGHTS
ESTABLISHED BY DUE PROCESS LAW. THE PRIVILEGE AND IMMUNITIES
CLAUSE PROTECTS RIGHTS OF CITIZENS TO PLY THEIR TRADE, PRACTICE
THEIR OCCUPATION OR PURSUE A COMMON CALLING. MY CALLING WHICH
IS COMMON TO THE MEMBERS OF THE SOLE CORPORATION IS THAT OF
FIDUCIARY AND LAWGIVER OF THE ONE TRUE GOD. THIS ALSO APPLIES
TO THIS FOREIGN SOVEREIGN UNDER THE PROVISIONS OF THE FOREIGN
SOVEREIGN IMMUNITY ACT OF 28 U.S.C. § 1602-1612 ET. SEQ, McBURNEY
v. YOUNG, 569 U.S. 221, 133 S.Ct. 1709, 185 L.Ed.2d. 758(U.S.
2013); HONEY v. VERMONT, 2017 WL 2167123(2017); SCHOENEFELD
v. SCHNEIDERMAN, 821 F3d. 273(2nd.Cir.2016).

INSOMUCH, THE COURT IN VIOLATION OF CLEARLY ESTABLISHED
DUE PROCESS LAW AND IN BLATANT DEFIANCE TO "JUSTICE AND FAIRNESS"
CANNOT LOSE ITS IMPARTIALITY AND NEUTRAL POSITION AND ACT ON
THE SIDE OF THE DEFENDANTS AND WITH FRAUDULENT INTENT AID THEM
TO CIRCUMVENT THE REQUIREMENT THAT THEY RESPOND TO THIS AFFIDAVIT
DOCUMENT ONCE SERVED WHERE BY THE MANDATES OF DUE PROCESS LAW,
THIS PLEADING CANNOT BE CONSTRUED AS A SHAM AFFIDAVIT SINCE
THE PETITIONER CONSISTENTLY REMAINED THE SAME IN HIS CLAIMS
FROM BEGINNING TO END OF ALL INVOLVED JUDICIAL PROCEEDINGS.
THE CLAIMS OF DEFAULT, COLLATERAL ESTOPPEL AND VOIDING OF JURIS-
DICTION TO WHICH THE UNITED STATES AND OTHER PARTIES ARE SUBJECT
TO HAS NOT CHANGED IN ANY MANNER WHICH WAS FURTHER SUBSTANTIATED
AND SOLIDIFIED BY ATTORNEY SETTANA'S LETTER AND EXHIBIT, "NEWMAN
CHALLENGE" THAT WAS SERVED ON ALL PARTIES. THEY ALL HAD AND
HAVE NOTICE. ONCE SERVED AND BY LAW **"THEY"**, **"THEY"** (EMPHASIS
ADDED), NOT THE COURT, ARE REQUIRED TO RESPOND AND THEY FAILED
TO PLEAD AND REBUT WHY A TRANSFER SHOULD NOT OCCUR AND PROVE
THAT THEY TIMELY FILED TO DEFEAT THIS SUBMITTED AFFIDAVIT DOCU-
MENT AND THE AFFIDAVITS OF DEFAULT AND VOIDING OF JURISDICTION
EMERGING FROM CASE 2013-CP-400-0084 WHERE THEY CLEARLY HAVE
NOTICE UNDER THIS CASE, AS WELL AS UNDER CASE 19-10011? THE
COURT CANNOT SHOW THAT THE PETITIONER ACTED IN BAD FAITH IN
FILING THIS APPEAL BRINGING FORTH THIS ACTION WITHIN THE 1st.
CIRCUIT, ESPECIALLY IN LIGHT OF THE FACT THAT THERE IS A TIMELY
FILED MOTION TO INTERVENE IN CASE 1:14-cv-14176-ADB AND THERE
IS A WRIT TO COMPEL FILED BEFORE THE 1st. CIRCUIT. THE PETITIONER
WOULD BE SUBJECT TO A VIOLATION OF DUE PROCESS AND THE EQUAL
PROTECTION OF THE LAWS CLAUSE. IT WOULD TAINT AND CORRUPT THE
1st. CIRCUIT'S JURISDICTION TO WHICH THIS IS ALSO A CHALLENGE
TO THE COURT'S JURISDICTION TO DISMISS THIS CASE. THE PETITIONER
WOULD SUFFER SUBSTANTIAL PREJUDICE AND INCONVENIENCE WHERE THE
PETITIONER RELIED UPON THE APPEAL AND THE PROVISIONS OF 28 U.S.C.
§ 1631 TO PREVENT ANY FURTHER ACTS OF FRAUD UPON THE COURT FROM
OCCURRING UNDER CASE 1:19-cv-1574-TLW-SVH WHERE THE PETITIONER
SOUGHT TO HAVE THE MAGISTRATE'S ORDERS REVIEWED BEFORE THE COURT
OF APPEALS BEFORE THAT CASE WAS PERMITTED TO MOVE FORWARD. I
OBJECT AND MOTION TO REINSTATE THE APPEAL, TO RECALL THE MANDATE
IF NEEDED, TO VACATE THE ORDER AND SEEK THAT THIS CASE BE TRANS-

FERRED TO THE PROPER VENUE, WHICH IN THIS CASE, IS THE COURT
OF JUDGE JACQUELYN AUSTIN IN THE S.C. DISTRICT COURT PENDING
HER THEN TRANSFERRING ANY OTHER RELEVANT MATTER TO THE N.J.
DISTRICT COURT TO COMMENCE WITH TRIAL PURSUANT TO THE MULTI-
DISTRICT LITIGATION RULES AND 28 U.S.C. § 1407. DUE TO THESE
AFFIDAVIT DOCUMENTS BEING FILED, THE PARTIES, NOT THE COURT,
MUST RESPOND BEFORE THE 1st. CIRCUIT RULES ON ANY MOTION THAT
IS ATTACHED TO THEM. SEE CELOTEX CORP. v. CATRETT, 477 U.S.
317, 106 S.Ct. 2548, 91 L.Ed.2d. 265(U.S.1996). I RENEW MY RE-
QUEST TO SEEK EN BANC REVIEW AND I MOTION TO SUPPLEMENT THE
PREVIOUSLY FILED REQUEST WITH ALL CLAIMS, ISSUES AND DEFENSES
ARGUED WITHIN THIS DOCUMENT.

CONSPIRACY CAN BE PROVEN BY CIRCUMSTANTIAL EVIDENCE IF
IT CAN BE INFERRED  BY SUCH EVIDENCE THAT IT SUPPORTS THE CLAIMS
MADE. THIS IS ENOUGH TO PLACE THE MATTERS BEFORE A JURY. NONETHE-
LESS, THE PETITIONER ALSO PRESENTS TANGIBLE EVIDENCE IN THE
FORM OF DOCUMENTED FACTS EXISTING IN PENDING AND PRIOR CASES
AND ALSO TANGIBLE EVIDENCE BY WAY OF AFFIDAVITS THAT THE DEFEN-
DANTS, NOT THE COURT, ARE REQUIRED TO REBUT BEFORE THE COURT
RULES ON THE MOTIONS, BUT THEY CONSISTENTLY FAILED TO DO SO
OR THEY FAILED TO DEMONSTRATE THEY TIMELY FILED TO DEFEAT THE
AFFIDAVITS OF DEFAULT AND VOIDING OF JURISDICTION EMERGING FROM
CASE 2013-CP-400-0084 SINCE 2016. THERE IS EVEN AN ACTUAL INNO-
CENCE CLAIM MADE WHERE THERE IS DNA THAT CAN BE EASILY OBTAINED
AND TESTED THAT WOULD PROVE THEY CONSPIRED TO FRAME AND KIDNAP
A FOREIGN SOVEREIGN TO PREVENT ME FROM EXERCISING MY FIDUCIARY
DUTY WITHIN THE FORUM STATE. THE DNA WOULD CONSTITUTE CONCRETE
SCIENTIFIC EVIDENCE TO HELP SUBSTANTIATE THE JURISDICTIONAL
CLAIMS BUT JUDGE BURROUGHS IN THE FORUM STATE AIDED THE DEFEN-
DANTS TO CONCEAL THIS EVIDENCE AND PREVENT IT FROM BEING MADE
A PART OF THE COURT RECORD WITHIN THE FORUM STATE FURTHER ESTA-
BLISHING PERSONAL JURISDICTION. SEE CASES PREVIOUSLY CITED.

TO MEET THE PURPOSEFUL AVAILMENT REQUIREMENT OF SPECIFIC
JURISDICTION OVER A NON RESIDENT DEFENDANT, THE PLAINTIFF BEARS
THE BURDEN OF DEMONSTRATING THAT THE DEFENDANTS HAVE PURPOSELY
AVAILED TO THE PRIVILEGE OF CONDUCTING ACTIVITY WITHIN THE FORUM
STATE AS IS IN THIS CASE WHERE THE UNITED STATES IS PARTY AND

THEY CONSPIRED WITH JUDGE BURROUGHS TO DELAY AND OR CIRCUMVENT
RULING ON THE MOTION TO INTERVENE IN CASE 1:14-cv-14176-ADB
ACROSS MULTIPLE STATE AND FEDERAL JURISDICTIONS ALSO IN EFFORTS
TO PREVENT THE REQUIRED EVIDENTIARY HEARING FROM OCCURRING IN
THE FORUM STATE AND OBSTRUCT THE PETITIONER FROM PROTECTING
AFFIRMATIVE ACTION WHICH APPLIES TO ALL (50) STATES INCLUDING
S. CAROLINA WHO IS SOUGHT DISQUALIFIED. ALL THIS OCCURRED WITHIN
THE FORUM STATE PRODUCING CONTINUOUS RAMIFICATIONS. THIS APPLIES
TO THEIR EFFORTS TO PREVENT JUDICIAL ATTACK UPON THE CLINTON
BILL FOR WHICH THE UNITED STATES AVAILED IN THE FORUM STATE.
THIS APPLIES TO THE ATTACK UPON GAY MARRIAGE WHICH THE UNITED
STATES AVAILED IN THE FORUM STATE VIA ITS SUPREME COURT TO ESTA-
BLISH SUBSEQUENT ACTIVITY IN THE FORUM STATE BY REVERSING THE
DEFENSE OF MARRIAGE ACT IMPACTING THE FORUM STATE AND THE FORUM
STATE AVAILED TO PROTECT THAT RULING ILLEGALLY ATTACHING THE
INTELLECTUAL PROPERTY OF THE FOREIGN SOVEREIGN CROWN. THIS ALSO
APPLIES TO THE UNITED STATES MAKING USE OF THESE FATALLY DEFEC-
TIVE INDICTMENTS AVAILING ITSELF TO ACTIVITY AND THE PROTECTION
OF THE FORUM STATE AS IT DID WITHIN ALL (50) STATES, IN A CON-
SPIRACY TO SUPPORT THIS INJUSTICE WITHIN CRIMINAL PROCEEDINGS
IN THE FORUM STATE AND ALL (50) STATES WHERE COMMON QUESTIONS
OF LAW AND FACT APPLY TO THESE ISSUES INVOLVING ALL (50) STATES
ON THE FEDERAL LEVEL ESTABLISHING MULTI-DISTRICT LITIGATION,
AND THEY CONSPIRED WITHIN THEIR RESPECTIVE JURISDICTIONS AND
WITHIN EACH OTHERS JURISDICTIONS TO IMPEDE, HINDER AND OBSTRUCT
JUSTICE AND JUDICIAL REVIEW TO DENY THE PETITIONER THE EQUAL
PROTECTION OF THE LAWS IN CLEAR VIOLATION OF 42 U.S.C. §§ 1985(2)
, 1985(3) AND 1986, GRIFFIN v. BRECKENRIDGE, 403 U.S. 88, 91
S.Ct. 1790(U.S.1971); HERD v. WILKIE,--F3d.--, 2019 WL 4197594
(9th.Cir.2019); EATON v. TOWN OF TOWNSEND, 2019 WL 1061184(AD-
DRESSING THE KING-KHALIFAH'S RIGHTS UNDER ADA); FLORINO v. TURNER
476 F.Supp.962 (D.Mass.1979).


    INSOMUCH, AS IT PERTAINS TO 28 U.S.C. § 1631. THE 1st.
CIRCUIT MUST INTERPRET THE STATUTE, NOT REWRITE IT, OR INTERJECT
INTO IT A MEANING OR MATTERS THAT ARE NOT IN THE LANGUAGE OF
THE STATUTE. "SHALL" IS MANDATORY. SINCE THAT STATUTE IS CLEAR
AND UNAMBIGUOUS A DETERMINATION MUST BE MADE AS TO THE "IN THE
INTEREST OF JUSTICE STANDARD", AND THE PETITIONER'S RIGHT TO

HAVE THE CASE TRANSFERRED BEFORE ANY DISMISSAL CAN OCCUR BY
HIS RIGHTS OF DUE PROCESS WHICH IN AN ABUSE OF DISCRETION WAS
UNJUSTLY CIRCUMVENTED AND OR DENIED, <u>JENNINGS v. RODRIGUEZ,</u>
138 S.Ct. 830, 200 L.Ed.2d. 122, 86 U.S.L.W. 4094(U.S.2018);
<u>U.S. v. RON PAIR ENTERPRISES INC.,</u> 489 U.S. 235, 109 S.Ct. 1027,
103 L.Ed.2d. 290(U.S.1989); <u>IN RE: ARGON CREDIT, LLC.,</u>--B.R.-
--, 2017 WL 4404269(2017); <u>UNITED STATES v. STE-BRI ENTERPRISES,
INC.,</u> 2017 WL 4226873(D.C.OHIO.2017).

ONCE THE INTERNET IS USED TO PROVIDE SAME SEX COUPLES
ACCESS TO COMMERCE WITHIN THE FORUM STATE ATTACHING AND OR EXE-
CUTING THE INTELLECTUAL PROPERTY OF THE FOREIGN SOVEREIGN CROWN
IN VIOLATION OF THE "GRANT" AND THE RESTRICTIONS ESTABLISHED
THEREBY, AND THE FORUM STATE ENGAGED IN COMMERCE FOR HOTELS,
RESTAURANTS, SIGHT SEEING, FOR HONEYMOONS, GIFTS AND OTHER SER-
VICES WITHIN THE FORUM STATE RELATED TO SAME SEX MARRIAGE, THE
NON RESIDENTS AVAILED TO THIS COMMERCE AND THE UNITED STATES
AND FORUM STATE SUPPORTED THIS EVIL. THE PARTIES VOLUNTARILY
ACCEPTED THE PROTECTIONS OF THIS CONSPIRACY IN THE FORUM STATE
RELATED TO THE RIGHT TO ENGAGE IN THIS COMMERCE EVEN FORCING
MY HOLY COMMONWEALTH TO SERVE THEM BY YOUR GOING TO HELL LAWS.
THIS GIVES THE 1st. CIRCUIT PERSONAL JURISDICTION PRODUCING
MINIMUM CONTACTS IN THE FORUM STATE, TRADING COMMERCE ACROSS
INTERSTATE LINES PRODUCING A CONSPIRACY TO EFFECT INTERSTATE
COMMERCE IN VIOLATION OF THE HOBBS ACT BY ATTACHING AND OR EXE-
CUTING THE INTELLECTUAL PROPERTY OF THE FOREIGN SOVEREIGN CROWN
IN VIOLATION OF THE "GRANT" GIVEN TO YOU BY THE SOLE CORPORATION
WHICH HAD CLEAR RESTRICTIONS WHERE THE PETITIONER IS A MEMBER
OF THE SOLE CORPORATION. THE FIDUCIARY DUTY DEMANDS JUSTICE!!!
ELIJAH MUST FIRST COME AND RESTORE ALL THINGS. THAT WHICH IS
WRITTEN BY GOD AND HIS HOLY PROPHETS CANNOT BE BROKEN. CAUSE
AND PERSONAL JURISDICTION IS ESTABLISHED, <u>L.P. SOLUTIONS LLC.
v. DUCHOSSOIS,</u> 907 F3d. 95 (1st.Cir.2018).

GENERAL JURISDICTION REQUIRES AFFILIATIONS SO CONTINUOUS
AND SYSTEMATIC AS TO RENDER THE FOREIGN CORPORATION ESSENTIALLY
AT HOME IN THE FORUM STATE ie. COMPARABLE TO A DOMESTIC ENTER-
PRISE IN THAT STATE. THE HOLY COMMONWEALTH OF THE (4) GLOBAL
THRONES CONSTITUTE A DOMESTIC ENTERPRISE BY FIDUCIARY OBLIGATION

AS IT PERTAINS TO THE KING-KHALIFAH ESTABLISHING CONTINUOUS
AND SYSTEMATIC AFFILIATIONS. BY THE AFFIDAVITS OF DEFAULT AND
VOIDING OF JURISDICTION EMERGING FROM CASE 2013-CP-400-0084
TO WHICH THE UNITED STATES IS PARTY TO THE DEFAULT. I AM LEGALLY
THE FIDUCIARY HEIR, KING, KHALIFAH, IMAM AND HIGH PRIEST TO
THE (4) GLOBAL THRONES BOUND BY LEGAL BINDING "COVENANT", CON-
TRACT" TO ACT AND PROTECT MY PEOPLE'S RIGHTS BEFORE ALL GLOBAL
COURTS WHERE BY THE UNJUST ACTIONS YOU ENGAGED IN WITHIN THE
FORUM STATE AND OTHER (49) STATES, WHICH EVEN INCLUDE THE AFFORD-
ABLE CARE ACT CLAIMS WHICH ARE A PART OF REPARATIONS DEFAULTED
ON, THE CLINTON BILL CLAIMS AS WELL AS REAPARATIONS FOR THE
U.S. SLAVE TRADE, THE FATALLY DEFECTIVE INDICTMENT CLAIMS. ALL
OF THE AFOREMENTIONED PRODUCE DIRECT IMPACT UPON MY PEOPLE,
NOT AS KNIGHT ERRAND, BUT AS **"FIDUCIARY"** (EMPHASIS ADDED), BOUND
BY "CONTRACT", "COVENANT" TO ACT ON BEHALF OF THE BENEFICIARIES
OF THE "TRUST". WE MY PEOPLE, AFRICAN AMERICANS, CHRISTIANS,
MUSLIMS AND JEWS EXIST. THEIR AFFLIATIONS ARE SO CONTINUOUS
AND SO SYSTEMATIC IN YOUR FORUM STATE AND NATIONALLY AS THEY
PERTAIN TO THE HOLY COMMONWEALTH OF THE (4) GLOBAL THRONES THAT
WHERE MY HOLY COMMONWEALTH LIE, THERE SO LIE I. THIS ESTABLISHES
THAT THE KING-KHALIFAH, THE SOLE CORPORATION, WHICH IS A FOREIGN
CORPORATION, IS ESSENTIALLY AT HOME WITHIN THE FORUM STATE AS
THE FIDUCIARY HEIR TO THE (4) GLOBAL THRONES, THE SAME WAY THE
UNITED STATES IS ESSENTIALLY AT HOME BY THE SUPREMACY CLAUSE.
THUS, THE 1st. CIRCUIT DOES HAVE JURISDICTION. EVEN IF IN AN
ABUSE OF DISCRETION AND FRAUD UPON THE COURT THE 1st. CIRCUIT
ASSERTS THAT IT DON'T? IN THE INTEREST OF JUSTICE THE CASE CANNOT
BE DISMISSED AND MUST BE TRANSFERRED TO THE PROPER VENUE, WHICH
IN THIS CASE, IS THE COURT OF THE DULY APPOINTED "TRUSTEE" JUDGE
JACQUELYN AUSTIN, WHO IS BOUND BY HER OATH OF OFFICE TO UPHOLD
THE U.S. CONSTITUTION TO ACT ON BEHALF OF THE FOREIGN SOVEREIGN
CROWN DUE TO HER BEING AN EMPLOYEE OF THE UNITED STATES WHO
IS PARTY TO THE DEFAULT. I MOTION FOR A REHEARING EN BANC AND
TO VACATE THE ORDER AND FOR A 28 U.S.C. § 1631 TRANSFER, DAIMIER
A.G. v. BAUMAN, 571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d. 624
(U.S.2014); KEETON v. HUSTLER MAGAZINE, INC., 465 U.S. 770,
104 S.Ct. 1473, 79 L.Ed.2d. 790 (U.S.1984); GOODYEAR DUNLOP
TIRES OPERATIONS, S.A. v. BROWN, 564 U.S. 915, 131 S.Ct. 2846,
180 L.Ed.2d. 796(U.S.2011); BRISTOL-MYERS SQUIBB CO. v. SUPERIOR
COURT OF CALIFORNIA, SAN FRANCISCO COUNTY, 137 S.Ct. 1773, 198
L.Ed.2d. 395, 85 U.S.L.W. 4400(U.S.2017).

     THE UNITED STATES SUPREME COURT DETERMINED UNDER ROSS
v. BLAKE, 136 S.Ct. 1850(U.S.2016) THAT ONCE THE STATE ACTORS
ENGAGED IN ACTS OF MACHINATION TO THWART JUDICIAL REVIEW AND
EXHAUSTION. THE PARTY NEED NOT EXHAUST BUT CAN ENTER INTO THE
FEDERAL FORUM WITHOUT ANY PRIOR COURT ORDER RELATED TO EXHAUSTION
. IT IS THE PETITIONER'S POSITION THAT THE SAME PRINCIPLE AND
SUBSIDIARY FACTS APPLY TO FEDERAL JURISDICTION. IF THE FEDERAL
COURTS OR PARTIES ENGAGE IN ACTS OF MACHINATION AND OBSTRUCTION
OF JUSTICE TO THWART JUDICIAL REVIEW. THE PETITIONER NEED NOT
WAIT, BUT CAN SEEK REVIEW IN THE 1st. CIRCUIT EVEN VIA THE PROVI-
SIONS OF THE FOREIGN SOVEREIGN IMMUNITY ACT.

     ARTICLE III'S "ARISING UNDER" JURISDICTION IS BROAD ENOUGH
TO AUTHORIZE CONGRESS FEDERAL COURTS JURISDICTION OVER ACTIONS
INVOLVING FOREIGN CORPORATIONS, IN THIS CASE, THE SOLE CORPORA-

TION OR FIDUCIARY KING-KHALIFAH PURSUANT TO THE FOREIGN SOVEREIGN
IMMUNITY ACT WHICH APPLY TO FOREIGN PLAINTIFFS AS WELL, AND
ITS COMMERCIAL EXCEPTION RULE WHICH DO NOT REQUIRE THAT EVERY
CAUSE THAT IS PLACED BEFORE THE COURT BE COMMERCIAL IN NATURE,
BUT STILL RELATES TO THE FOREIGN SOLE CORPORATION'S INTELLECTUAL
PROPERTY IN THE HANDS OF THE UNITED STATES, WHICH CAN ONLY BE
GIVEN TO HETEROSEXUALS, THAT YOU ATTACHED BY U.S. SUPREME COURT
DETERMINATION ESTABLISHES CAUSE UNDER 28 U.S.C. §§ 2679, 1602-
1612 et. seq., DEFAULTED ON BY THE UNITED STATES THAT ATTACH
TO ALL CLAIMS MADE. THE "SUE AND BE SUED CLAUSE" EMBELLISHED
WITHIN THE KING-KHALIFAH'S DECLARATION OF SOVEREIGNTY DEFAULTED
ON BY THE UNITED STATES FILED WITHIN CASE 2013-CP-400-0084,
AUTHORIZES THE KING-KHALIFAH, THE PETITIONER, AS FIDUCIARY HEIR
TO THE (4) GLOBAL THRONES TO BRING ACTION AND SUPERSEDE THE
AUTHORITY OF ALL STATE AND FEDERAL COURTS, DOMESTIC OR GLOBAL,
CONFER ORIGINAL JURISDICTION IN THE FEDERAL COURTS OVER ALL
CASES TO WHICH THE KING-KHALIFAH IS PARTY TO OR IN WHICH HE
INTERVENED; INCLUSION OF THE PHRASE, "THESE POINTS AND CLAIMS
ARE NOT EXHAUSTIVE AND CAN BE ADDED TO....." IN THE DECLARATION
OF SOVEREIGNTY DEFAULTED ON BY THE UNITED STATES AS IT PERTAINS
TO "COMPETENT JURISDICTION", DO NOT TAKE AWAY JURISDICTION,
BUT MORE TO THE POINT. IT DELINEATED WHICH FEDERAL COURTS COULD
ADJUDICATE CLAIMS INVOLVING THE SOLE CORPORATION AND FOREIGN
SOVEREIGN CROWN BY HIS TERMS AS SO DECREED. THE PETITIONER,
AS A MEMBER OF THE SOLE CORPORATION ACTS IN HIS OFFICIAL CAPACITY
, SAMANTAR v. YOUSEF, 560 U.S. 305, 130 S.Ct. 2278 (U.S.2010);
VERLINDEN B.V. v. CENTRAL BANK OF NIGERIA, 461 U.S. 480, 103
S.Ct. 1962(U.S.1983); MERCHIA v. UNITED STATES, 2019 WL 2501883
(D.Mass.2019); MERLINA v. CANADA, 926 F3d.21, 2019 WL 2417060
(1st.Cir.2019); REPUBLIC OF SUDAN v. HARRIS, 139 S.Ct. 1048,
203 L.Ed.2d. 433(U.S.2019). PRISONS ARE BIG BUSINESS IN THE
UNITED STATES. SO IS THE COMMERCE INVOLVED RELATED TO SAME SEX
MARRIAGE.


     AS IT PERTAINS TO THE PROVISIONS OF 28 U.S.C. § 1631.
THE 1st. CIRCUIT AND ALL COURTS INVOLVED HERE INTERPRETIVE TASK
BEGINS WITH THE STATUTE TEXT, AND AT THIS OPENING STAGE THE
COURT MUST EXAMINE THE PLAIN MEANING OF THE WORDS, BOTH IN THE
SPECIFIC CONTEXT IN WHICH THE LANGUAGE IS USED, AND THE BROADER

CONTEXT OF THE STATUTE AS A WHOLE. IF THE LANGUAGE OF THE TEXT
OF THE STATUTE IS UNAMBIGUOUS, WHICH IN THIS CASE IT IS, THE
COURT'S INTERPRETIVE TASK ENDS THERE, AND THE COURT MUST ENFORCE
THE STATUTE ACCORDING TO ITS TERMS, SO LONG AS THE RESULT RE-
QUIRED BY THE TEXT IS NOT ABSURD. UNLESS THE UNITED STATES AND
PARTIES INVOLVED CAN PROVE THEY TIMELY FILED TO DEFEAT THE AFFI-
DAVITS OF DEFAULT AND VOIDING OF JURISDICTION IN QUESTION AND
PROVE THAT WHEN JUDGE MANNING CONSPIRED TO AID THEM CIRCUMVENT
THE DEFAULT THAT CASE 2013-CP-400-0084 WAS NOT REMOVED TO THE
FEDERAL DISTRICT COURT IN THE PETITIONER'S AND OTHER PARALLEL
PETITIONES' CASES DIVESTING HIM OF JURISDICTION TO ACT? THE
RESULTS ARE NOT ABSURD AND THE KING-KHALIFAH'S FIDUCIARY DUTY
IS ESTABLISHED WITHIN ALL COURTS RECORD BY "COVENANT", BY "CON-
TRACT" AND DUE PROCESS LAW. EVEN IF THE 1st. CIRCUIT IN AN ABUSE
OF DISCRETION CLAIM THAT THEY DO NOT HAVE JURISDICTION WHEN
IN TRUTH THEY DO? IN THE INTEREST OF JUSTICE, IT WOULD BE MANI-
FEST INJUSTICE TO DISMISS THE APPEAL WITHOUT THE FIRST REQUIRED
"IN THE INTEREST OF JUSTICE STANDARD" DETERMINATION MADE. THERE-
UPON THE CASE IN FUNDAMENTAL FAIRNESS TO THE PETITIONER CANNOT
BE DISMISSED , BUT MUST BE TRANSFERRED TO THE PROPER COURT OF
JURISDICTION TO ADDRESS THE MATTER AS 28 U.S.C. § 1631 REQUIRES.
IN THIS CASE, IT IS THE COURT OF THE DESIGNATED "TRUSTEE", JUDGE
AUSTIN IN THE S.C. DISTRICT COURT GREENVILLE DIVISION. I MOTION
TO SUPPLEMENT THE REQUEST FOR REHEARING EN BANC WITH THIS PLEAD-
ING AND I MOTION TO SUPPLEMENT THE MOTION TO INTERVENE UNDER
CASE 19-10011 TO ENSURE THAT A COMPLETE RECORD EXIST WITHIN
ALL CASES INVOLVED, STAR ATHETICA, LLC. v. VARSITY BRANDS, INC.,
137 S.Ct. 1002, 197 L.Ed.2d. 354, 85 U.S.L.W. 4139(U.S.2017);
ENCINO MOTOR CARS, LLC. v. NAVARRO, 136 S.Ct. 2117, 195 L.Ed.2d.
382, 84 U.S.L.W. 4424(U.S.2016); CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND v. CENTRAL TRANSPORT, INC., 472
U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d. 447(U.S.1985); NG v. PRU-
DENTIAL INSURANCE COMPANY OF AMERICA, 172 F.Supp.3d. 355(D.Mass.
2016); NOVELESKY v. METROPOLITAN LIFE INS. CO. INC., 49 F.Supp.3d
123(D.MAINE.2014); EIE GUAM v. LONG TERM CREDIT BANK, JAPAN,
232 F3d. 635(9th.Cir.2003); BRADDY v. UNITED STATES, 2016 WL
1031301(E.D.Va.2016); SAUNIER v. BOEING COMPANY, F.Supp.2d.,
2014 WL 1646953(2014). IN ABSENCE OF A WRITTEN DECISION ON A
PARTICULAR ISSUE FOR PURPOSES OF COLLATERAL ESTOPPEL PARTY CAN

POINT TO THE TRANSCRIPT AND OR COURT DOCUMENTS AND OR AN ORAL
DETERMINATION SUCH AS THE ONE MADE BY JUDGE LEE IN THE APRIL
4, 2014 HEARING CONTAINING FINDINGS OF FACT WHERE SHE RULED
THE AFFIDAVITS STAND IF THE WORD "MOTION" IS REMOVED FROM THEM
AND THEY ARE NOT TIMELY REBUTTED BY THE COURT OR PARTIES AS
IS ALSO SUPPORTED BY FEDERAL LAW PREVIOUSLY CITED WITHIN THIS
DOCUMENT. ALSO SEE IN RE SMITH, 2016 WL 3943710(Md.2016); IN
RE: QIAO LIN, 576 B.R. 32(N.Y.2017); NEW HAMPSHIRE v. MAINE,
532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d. 968(U.S.2001); BAKER
BY THOMAS v. GENERAL MOTORS CORP., 522 U.S. 222, 118 S.Ct. 657,
139 L.Ed.2d. 580(U.S.1998); GATES v. STRAIN, 2017 WL 2417051
(E.D.La.2017). THE INTEREST OF JUSTICE STANDARD IS MET. I OBJECT
TO THE 1st. CIRCUIT'S ACTIONS AND SEEK REHEARING EN BANC.


                                    RESPECTFULLY,
                                    JAHJAH AL MAHDI


SEPTEMBER 9, 2019

" Exhibit"

mandamus

File up cases 19-60662,

19-60678 ~~~~~~ ~~~~~~

THE COURT OF APPEALS
FOR THE FIFTH CIRCUIT ET. AL.,

---

APPEAL FROM THE TEXAS DISTRICT COURT; THE S.C. RICHLAND COUNTY
COURT OF COMMON PLEAS ET. AL.,

---

DOCKET NO.(S) 19-10011 ET. AL.,

---

LAWRENCE L. CRAWFORD AKA JONAH GABRIEL JAHJAH T. TISHBITE;
ANTHONY COOK ET. AL.,

INTERESTED PARTIES

Vs.

THE UNITED STATES ET. AL.,

RESPONDENTS

Vs.

THE STATE OF TEXAS ET. AL.,

RESPONDENTS

---

**AFFIDAVIT OF SERVICE**

---

WE, JAHJAH AL MAHDI, ANTHONY COOK, YAHYA MUQUIT, RON SANTA McCRAY
ET. AL., DO HEREBY CERTIFY, THAT WE HAVE MAILED AND OR SERVED

1-of-18

A COPY OF A WRIT OF MANDAMUS ON THE 5TH. CIRCUIT, THE S.C. RICH-
LAND COURT OF COMMON PLEAS AND ALL OTHER INVOLVED PARTIES, BY
U.S. MAIL POSTAGE PREPAID, BY DEPOSITING IT IN THE INSTITUTION
MAILBOX ON SEPTEMBER 28, 2019.


RESPECTFULLY,

JAHJAH AL MAHDI

ANTHONY COOK

RON SANTA McCRAY

YAHYA MUQUIT


SEPTEMBER 28, 2019

2-of-18

THE COURT OF APPEALS
FOR THE FIFTH CIRCUIT ET. AL.,

───────────────

APPEAL FROM THE TEXAS DISTRICT COURT; THE S.C. RICHLAND COUNTY
COURT OF COMMON PLEAS ET. AL.,

───────────────

DOCKET NO.(S) 19-10011 ET. AL.,

───────────────

LAWRENCE L. CRAWFORD AKA JONAH GABRIEL JAHJAH T. TISHBITE;
ANTHONY COOK ET. AL.,

INTERESTED PARTIES

Vs.

THE UNITED STATES ET. AL.,

RESPONDENTS

Vs.

THE STATE OF TEXAS ET. AL.,          RESPONDENTS

───────────────

**SUMMONS**

───────────────

TO: THE UNITED STATES AND THE U.S. JUSTICE DEPT.; JUDGE
McLEOD; JUDGE NEWMAN; ATTORNEY SETTANA; ATTORNEY MORGAN HR.;
JUDGE WOOTEN; JUDGE JACQUELYN AUSTIN; RICHLAND COURT OF COMMON

PLEAS; THE S.C. ATTORNEY GENERAL; S.C.D.C. DIRECTOR BRYAN STIR-
LING AND THE S.C. DEPT. OF CORR.; WARDEN SHEPPARD; THE LIEBER
C.I. DHO BOARD; THE N.J. DISTRICT COURT MULTI-DISTRICT LITIGATION
PANEL. **YOU ARE HEREBY SUMMONED AND REQUIRED**, TO ANSWER AND BE
IN COMPLIANCE (EMPHASIS ADDED) TO THIS WRIT OF MANDAMUS, A COPY
OF WHICH IS HEREWITH SERVED UPON YOU, AND YOU ARE TO SERVE A
COPY OF YOUR ANSWER AND PROOF OF COMPLIANCE (EMPHASIS ADDED)
UPON THE SUBSCRIBERS AT THE ADDRESS SHOWN BELOW WITHIN (30)
DAYS AFTER SERVICE THEREOF, EXCLUSIVE OF THE DAY OF SUCH SERVICE,
AND IF YOU FAIL TO ANSWER AND BE IN COMPLIANCE (EMPHASIS ADDED)
TO THE MANDAMUS. JUDGMENT AND DEFAULT SHALL BE RENDERED AGAINST
YOU FOR ALL RELIEF SOUGHT UNDER CASE 2013-CP-400-0084 AND THAT
SOUGHT BY THE MANDAMUS. FOR THE RECORD. RON McCRAY IS NOT DI-
RECTLY BRINGING THE ACTION. HE IS MAKING AN APPEARANCE SO NO
FILING FEE IS REQUIRED.

> LAWRENCE L. CRAWFORD AKA
> JONAH GABRIEL JAHJAH T. TISHBITE
> #300839 EDISTO B-17
> ANTHONY COOK
> #115157 STONO DORM
> RON SANTA McCRAY
> #353031 EDISTO B-17
> YAHYA MUQUIT
> #318455 LEE C.I.
> LIEBER C.I. P.O. BOX 205
> RIDGEVILLE, S.C. 29472

5TH. CIRCUIT
SEPTEMBER 28, 2019

THE COURT OF APPEALS

FOR THE FIFTH CIRCUIT ET. AL.,

---

APPEAL FROM TEXAS DISTRICT COURT; THE S.C. RICHLAND COUNTY
COURT OF COMMON PLEASE ET. AL.,

---

DOCKET NO.(S) 19-10011 ET. AL.,

---

LAWRENCE L. CRAWFORD AKA JONAH GABRIEL JAHJAH T. TISHBITE;
ANTHONY COOK ET. AL.,

INTERESTED PARTIES

Vs.

THE UNITED STATES ET. AL.,

Vs.

THE STATE OF TEXAS ET. AL.,

---

IN RE: TO CASES 19-10011 AND 2013-CP-400-0084. ALSO RELATED
TO CASES 4:18-cv-167-O; 18-8022; 1:19-cv-01574-TLW-SVH; 1:14-
cv-14176-ADB; 1:18-cv-13459-NLH; 9:18-cv-01408-TLW-BM; 9:19-
cv-1400-TLW-BM ET. AL.,

TO: THE 5TH. CIRCUIT COURT OF APPEALS,

JUDGE McLEOD AND THE RICHLAND COUNTY COURT OF COMMON
PLEAS,

THE S.C. ATTORNEY GENERAL,

THE UNITED STATES,

ATTORNEY SETTANA,

DIRECTOR BRYAN STIRLING, THE S.C. DEPT. OF CORRECTIONS AND THE LIEBER C.I. DHO BOARD,

THE 1st. CIRCUIT COURT OF APPEALS,

THE 3rd. CIRCUIT COURT OF APPEALS,

THE S.C. U.S. DISTRICT COURT,

THE BOSTON DISTRICT COURT,

THE U.S. JUSTICE DEPARTMENT,

THE N.J. U.S. DISTRICT COURT AND THE MULTI-DISTRICT PANEL ET. AL.,

HERE THE COURT AND PARTIES WILL FIND:

(1) EXHIBIT, "0084 RENEWED REMOVAL DOCUMENTS". THIS IS THE DEBIT FORM THAT DEMONSTRATES THAT CASE 2013-CP-400-0084 WAS REMOVED TO THE FEDERAL DISTRICT COURTS INVOLVED AND THAT REMOVAL WAS RENEWED BY THE DOCUMENTS SENT TO THE RICHLAND COMMON PLEAS COURT RECEIVED BY THEM ON SEPTEMBER 24, 2019, TWO DAYS PRIOR TO THE SEPTEMBER 26, 2019 MOTION HEARING HELD BEFORE THE COMMON PLEAS COURT.

(2) EXHIBIT, "RICHLAND SERVICE". THIS IS THE DEBIT FORM AND CERTIFIED MAILING THAT DEMONSTRATES THAT THE RICHLAND COURT OF COMMON PLEAS COURT WAS SERVED THE NOTICE SEEKING LEAVE TO APPEAL RELATED TO THE 5TH. CIRCUIT FILING WHICH THE COURT RECEIVED ON SEPTEMBER 18, 2019.

(3&4) EXHIBIT(S), "5TH. CIRCUIT SERVICE #'s 1 AND 2. THESE ARE THE CERIFIED MAILINGS THAT DEMONSTRATE THAT THE 5TH. CIRCUIT RECEIVED THE NOTICE SEEKING LEAVE TO APPEAL WHICH WAS CLOCKED STAMPED RECEIVED SEPTEMBER 20, 2019. THE NOTICE WAS FILED SEEKING LEAVE TO APPEAL THE DECREE AND OR ORDER GIVEN BY THE ADMINISTRATIVE JUDGE AND OR JUDGE McLEOD TO HAVE A MOTION HEARING ON SEPTEMBER 26, 2019.

(5) EXHIBIT, "FIRST CIRCUIT REPAIR DOCUMENT". THIS IS PROOF OF SERVICE OF THE 1st. CIRCUIT REPAIR DOCUMENT SEEKING REHEARING IN CASE 18-8022.

INASMUCH, IN PURSUANT TO ARTICLE 4 § 20 POWERS OF JUSTICES
AND OR JUDGES AT CHAMBERS, EACH OF THE JUSTICES AND OR JUDGES
AT CHAMBERS, INCLUDING THE 5TH. CIRCUIT COURT OF APPEALS, AND
ALL OTHER COURTS ON RECORD, SHALL HAVE THE SAME POWERS AT
CHAMBERS, TO ISSUE WRIT OF HABEAS CORPUS, QUO WARRANTO, CERTI-
ORARI,....AND PURSUANT TO RULE(S) 65 AND 21 OF STATE AND OR
FEDERAL RULES OF PROCEDURE.

PURSUANT TO RULE 57 OF STATE AND OR FEDERAL RULES OF
CIV. PROCEDURE AND OR S.C. CODE ANN § 15-53-10 THROUGH § 15-
53-140 AND OR 28 U.S.C. §§ 2201, 2202. IN CASES OF ACTUAL CONTRO-
VERSY....ANY COURT OF THE UNITED STATES, UPON THE FILING OF
AN APPROPRIATE PLEADING, MAY DECLARE THE RIGHT AND OTHER LEGAL
RELATIONS OF ANY INTERESTED PARTY SEEKING SUCH DECLARATION WHE-
THER RELIEF IS OR COULD BE SOUGHT***. WE ARE ALSO SEEKING DECLAR-
ATORY JUDGMENT, <u>SHERMAN-WILLIAMS CO. v. HOLMES COUNTY,</u> 343 F3d.
383(5th.Cir.2003); <u>TORRES-JURADO v. ADMINISTRATOR AT BERGEN
COUNTY JAIL,</u>--Fed. Appx'--, 2019 WL 1531500(3rd.Cir.2019).

WRIT OF MANDAMUS IS OFFICIALLY SOUGHT FROM THE 5TH. CIR-
CUIT COURT OF APPEALS. BY THE ATTACHMENTS AFORE LISTED. IT IS
PERSPICUOUS THAT THE PETITIONER(S) FILED ACTION SEEKING LEAVE
FROM THE 5TH. CIRCUIT TO APPEAL THE HEARING MOVING FORWARD IN
CASE 2013-CP-400-0084 DUE TO THE ACTIONS OF THAT COURT BEING
SPECIFICALLY DIRECTED AT THE 5TH. CIRCUIT TO CAUSE A DETRIMENTAL
EFFECT IN MY RIGHT TO INTERVENE IN CASE 19-10011.

JUST AS THE PETITIONER(S) FORETOLD THE 5TH. CIRCUIT.
THE UNITED STATES AND THE CONSPIRING PARTIES CRIMINAL EFFORTS
AND ATTEMPT WAS TO ENGAGE IN EGREGIOUS ACTS OF FRAUD UPON THE
COURT TO CONCEAL ACTUAL INNOCENCE CLAIMS, KIDNAPPING OF A FOREIGN
SOVEREIGN OFFICIAL AND CLOSE CASE AND DENY RIGHTS OF FIDUCIARY
DUTY ESTABLISHED BY "CONTRACT", "COVENANT" AND PREVENT IT FROM
BEING REVEALED IN THE COURT RECORD THAT THE PARTIES, INCLUDING
THE UNITED STATES, WERE PROPERLY SERVED YET THEY FAILED TO TIMELY
RESPOND TO DEFEAT THE AFFIDAVITS OF DEFAULT AND VOIDING OF JURIS-
DICTION EMERGING FROM CASE 2013-CP-400-0084, WHICH WOULD ESTA-
BLISH ALL RIGHTS, TITLES, IMMUNITIES AND PRIVILEGES OF THE SOLE

CORPORATION. WE OBJECT.

DESPITE THE RICHLAND CASE BEING SOUGHT LEAVE TO APPEAL
BEFORE THE 5TH. CIRCUIT. THESE CORRUPT JUDGES AND OFFICIALS
IN VIOLATION OF THEIR OATHS OF OFFICE TO UPHOLD THE CONSTITUTION,
IGNORED THE DIVESTITURE RULE AND HELD A MOCK ILLEGAL PROCEEDING
TO USURP THE JURISDICTION AND AUTHORITY OF THE 5TH. CIRCUIT
WHERE SPECIFIC, PERSONAL AND GENERAL JURISDICTION RESTS BEFORE
THE 5TH. CIRCUIT COURT OF APPEALS ESTABLISHING MANIFEST INJUSTICE

JUDGE McLEOD ALSO DENIED THE MOTION AND REQUIREMENT THAT
HE RECUSE HIMSELF FROM THE PROCEEDINGS DUE TO STRUCTURAL ERROR
PURSUANT TO WILLIAMS v. PENNSYLVANIA, 136 S.Ct. 1899 (U.S.2016)
EXISTED ESTABLISHING BIAS THAT ROSE TO AN UNCONSTITUTIONAL LEVEL
WHICH RENDERED THE PROCEEDINGS UNCONSTITUTIONAL VOIDING HIS
JURISDICTION AB INITIO. THE CONSPIRING JUDGES IN VIOLATION OF
THEIR OATHS OF OFFICE CONSPIRING UNDER COLOR OF LAW AND OR AU-
THORITY ACROSS MULTIPLE STATE AND FEDERAL JURISDICTIONS, MADE
EVERY EFFORT TO HINDER, IMPEDE AND OBSTRUCT THE DUE COURSE OF
JUSTICE IN VIOLATION OF 42 U.S.C. §§ 1985(2), 1985(3) AND 1986
TO RENDER MOOT ESSENTIAL ISSUES THAT ARE PRESENTLY PENDING BEFORE
THE 5TH. CIRCUIT TO PREVENT THOSE ISSUES FROM BEING GIVEN A
FAIR AND PROPER REVIEW WITHIN FEDERAL FORUM AND AVOID FEDERAL
QUESTION, INCLUDING TO PREVENT INTERVENTION IN BOTH CASES 18-
8022 AND 19-10011 AS WELL AS IN EFFORTS TO AVOID SUIT, SINGLETON
v. TOWN OF ESTILL, 2013 WL 4027765(DSC.2013); WEDDLE v. CHARLE-
STON COUNTY SHERIFF OFFICE, 2014 WL 2155235(DSC.2014).

YOU ADD TO THIS FACT THAT JUDGE McLEOD IN FURTHER EGRE-
GIOUS ACTS OF FRAUD UPON THE COURT BLOCKED DOCUMENTS FROM BEING
FILED IN THE CASE TO PREVENT US FROM PRESENTING A COMPLETE DE-
FENSE AND PREVENT US FROM BEING FULLY HEARD DENYING US OPPORTU-
NITY TO ESTABLISH A COMPLETE RECORD BEFORE THE COURT FOR THE
PURPOSE OF DENYING THE PRESERVATION OF ISSUES FOR FUTURE APPELL-
LANT REVIEW. IT BECOMES PERSPICUOUS THAT THE PREJUDICE EXPERI-
ENCED BY THE PETITIONER IS OVERWHELMING AND THE POTENTIAL FOR
BIAS ROSE TO AN UNCONSTITUTIONAL LEVEL RENDERING THE ENTIRE
PROCEEDINGS VOID AND IS AS IF THERE WERE NO HEARING AND OR JUDI-

CIAL DETERMINATION MADE AT ALL, <u>MONTGOMERY v. LOUISIANA,</u> 136
S.Ct. 718, 193 L.Ed.2d. 599, 84 U.S.L.W. 4063(U.S.2016); <u>24
SENATORIAL DIST. REPUBLICAN COMMITTEE v. ALCORN</u>, 820 F3d. 624
(4th.Cir.2016); <u>WELLS FARGO BANK N.A. H.M.H. ROMAN, TWO N.C.,
LLC.,</u> 859 F3d. 295(4th.Cir.2017); <u>MOSLEY v. UNITED STATES,</u> 2018
WL 1187778(N.C.2018). WE WANT THE S.C. DISTRICT COURT DISQUALI-
FIED. DUE TO THESE OUTRAGEOUS ACTS THAT SHOCK THE CONSCIENCE
DONE BY THE CONSPIRING PARTIES. THIS SEEKING OF WRIT OF MANDAMUS
NOW FOLLOWS.

THE PETITIONER(S) ARGUED WITHIN THE ILLEGAL PROCEEDINGS
THAT OCCURRED BEFORE THE RICHLAND STATE COURT THAT ARE CLEARLY
UNCONSTITUTIONAL SINCE THE STATE COURT'S JURISDICTION WAS DI-
VESTED AND THAT THE STATE COURT WAS REQUIRED ALSO BY DUE PROCESS
LAW TO GIVE A PRECLUSIVE EFFECT TO JUDGE LEE'S ORAL JUDICIAL
DETERMINATION MADE IN THE APRIL 3, 2014 HEARING. BUT JUDGE McLEOD
IN DEFIANCE TO CLEARLY ESTABLISHED LAW AND "JUSTICE AND FAIRNESS"
FAILED TO DO SO. NONE OF THE DEFENDANTS DURING THIS MOCK ILLEGAL
PROCEEDING DISPUTED THAT THIS JUDICIAL DETERMINATION WAS MADE
BY JUDGE LEE IN THE APRIL 3, 2014 HEARING. NOR DID THEY DISPUTE
THAT THE UNITED STATES MADE A BACK DOOR APPEARANCE ESTABLISHING
PERSONAL JURISDICTION OVER THEM AS PARTY AS SEEN IN EXHIBIT,
"JUDGE LEE # 1". FURTHER, THEY DID NOT ESTABLISHED THAT THEY
TIMELY FILED TO DEFEAT THE AFFIDAVITS OF DEFAULT AND VOIDING
OF JURISDICTION IN QUESTION. EXHIBIT, "JUDGE LEE # 1" DEMONSTRATE
THAT THERE IS CLEAR ENTRY IN THE COURT RECORD VALIDATING PERSONAL
JURISDICTION OVER THE UNITED STATES AND SINCE THEY FAILED TO
PLEA. IT WAS AN ABUSE OF DISCRETION, AN ACT OF FRAUD UPON THE
COURT AND OBSTRUCTION OF JUSTICE FOR THE CASE TO EVER BE DISMIS-
SED SINCE THE UNITED STATES FAILED TO TIMELY PLEA AND CHALLENGE
THE JURISDICTIONAL FACTS.

ONCE EXHIBIT, "JUDGE LEE # 4" WAS DIRECTLY SERVED ON
JUDGE ALISON LEE. THEREUPON JUDGE LEE HAD FULL OPPORTUNITY TO
COMPREHEND WHAT WAS BEING ASSERTED AND HAD CLEAR OPPORTUNITY
TO REJECT THE PETITIONER'S ASSESSMENT OF THE LEGAL FACTS YET
FAILED TO DO SO? THAT SILENCE, ONCE SHE WAS SERVED THE PLEADING
IN THE FORM OF THE FINAL AFFIDAVIT VOIDING THE COURT'S JURISDIC-

TION (ie. EXHIBIT, "JUDGE LEE # 4"). THAT SILENCE ESTABLISHES
HER ACCEPTANCE OF ALL STATEMENTS MADE WITHIN THAT DOCUMENT,
SUBSTANTIATING THAT SHE INDEED MADE SUCH AN ORAL JUDICIAL DETER-
MINATION WHICH AGAIN THE DEFENDANTS FAILED TO REBUT OR CHALLENGE
THIS CLAIM IN THE FRAUDULENTLY OBTAINED HEARING OCCURRING ON
SEPTEMBER 26, 2019. SILENCE IS ACCEPTANCE ESTABLISHING PROCEDURAL
BAR TO THE ADMISSION OF ANYTHING OCCURRING AT THAT RECENT HEARING
, CHIMMEBY'S MANAGEMENT CO., LLC. v. AFFILIATED F.M. INSURANCE
CO., 152 F.Supp.3d. 159(2016); BAUER v. QUEST COMMUNICATION
CO., LLC., 743 F.Supp.3d. 221 (2014); HARDWICK v. BANK OF AMERICA
N.A., 2016 WL 3563083(DSC.2016).

        IN SUCH, THE STATE PROCEEDINGS CONTAINED OVERWHELMING
IRREGULARITIES AND INFIRMITIES, LACK OF JURISDICTION AND FRAUD
UPON THE COURT WHERE THE ACTIONS ON THE PART OF JUDGE McLEOD
AMOUNTS TO A REVIEW BY HIM OF THE ORAL JUDICIAL DETERMINATION
OF JUDGE LEE WHICH NONE OF THE DEFENDANTS DENIED THAT SHE MADE
IN REGARD TO THE APRIL 3, 2014 HEARING AND A REVERSAL OF THAT
ORAL JUDICIAL DETERMINATION MADE WHEN A CIRCUIT COURT JUDGE
CANNOT OVERRULE OR VACATE THE JUDICIAL DETERMINATION OF ANOTHER
CIRCUIT COURT JUDGE, SINCE HE DID NOT AGREE WITH HER RULING
AND OR IGNORED IT AS THAT RULING RELATE TO THE VALIDITY OF THE
UNCONTESTED AFFIDAVITS AND THE REQUIREMENT THAT THE DEFENDANTS
TIMELY RESPOND AS RULES OF CIVIL PROCEDURE REQUIRE OR FORFEIT
CHALLENGE IN ANY FUTURE PROCEEDING, OR JUDGE McLEOD, BEING PRO-
CEDURALLY BARRED BY RES JUDICATA AND OR COLLATERAL ESTOPPEL,
WOULD NOT HAVE ALLOWED THE HEARING TO PROCEED. THE LAW IS CLEAR
ON THIS ISSUE. JUDGE McLEOD DOES NOT HAVE THE POWER TO SET ASIDE
THE ORAL RULINGS AND OR JUDICIAL DETERMINATIONS OF HIS
PREDECESSOR, COOK v. TAYLOR, 272 S.C. 536, 252 S.E.2d. 923;
ENOREE BAPTIST CHURCH v. FLETCHER, 287 S.C. 602, 340 S.E.2d.
546(S.C.App.1986); DEPARTMENT OF SOCIAL SERVICES v. LAURA D.,
386 S.C. 382, 688 S.E.2d. 130 (S.C.App.2009); SALMONSEN v. C.G.D.
INC., 377 S.C. 442, 661 S.E.2d. 81 (S.C.App.2008).

        ONCE THE NOTICE SEEKING LEAVE TO APPEAL WAS FILED AND
SERVED ON THE RICHLAND COMMON PLEAS COURT THEIR JURISDICTION
WAS DIVESTED TO HEAR ANY MATTER. INSTEAD THEY CONDUCTED A MOCKED

TRAVESTY OF A PROCEEDING WHERE FROM WHAT WAS SAID AT THE HEARING.
THE JUDGES INVOLVED IN THE CASE CONSPIRING WITH THE DEFENDANTS,
SPOLIATED, DESTROYED WITHIN THE COURT RECORD AND CASE FILE THE
PROOF OF SERVICE DOCUMENTS FILED IN THE CASE TO MAKE IT LOOK
LIKE THE DEFENDANTS WERE NOT PROPERLY SERVED TO USE THIS AS
A REASON TO FRAUDULENTLY DISMISS THE CASE. WE OBJECT. SEE EXHI-
BITS, "SHERIFF SERVICE" ATTACHED. IT IS PERSPICUOUS FROM THE
ATTACHED EXHIBITS THAT THE DEFENDANTS WERE INDEED PROPERLY SERVED
THE COMPLAINT. YET IN THIS TRAVESTY OF AN ADJUDICATION WHICH
THEY CONDUCTED CONSPIRING ACROSS MULTIPLE STATE AND FEDERAL
JURISDICTIONS. THEY SPOLIATED THE SERVICE DOCUMENTS IN THE CASE
TO PERMIT THEM TO ARGUE THAT THE DEFENDANTS WERE NOT PROPERLY
SERVED THE SAME WAY THEY SPOLIATED THE FINAL ORDER IN CASE 2006-
CP-400-0552 TO ALLOW THEM TO INAPPROPRIATELY ENTERTAIN JURISDIC-
TION OVER A CASE CLOSED TO PREVENT THE CRIMINAL LIABILITY CLAIMS
FROM BEING TRANSFERRED TO FEDERAL JURISDICTION AS A TAG ALONG
CASE PURSUANT TO 28 U.S.C. § 1407. THE DEFENDANTS AND JUDGE
McLEOD THEN DETACHED FROM THE FACE OF THE (32) PAGE COMPLAINT,
THE (73) PAGE AND (96) PAGE AFFIDAVITS AND OR ATTACHMENTS TO
THE FACE OF THE (32) PAGE COMPLAINT TO FRAUDULENTLY ALLOW THEM
TO ARGUE A DEFICIENCY PURSUANT TO RULE 12. THEY THEN FRAUDULENTLY
ARGUED A STATUTE OF LIMITATIONS CLAIM WHEN CASE 2013-CP-400-
0084 IS NOT THE ORIGINAL CASE. THE 2006 PREFIX CASES ARE, AND
THE 2013 CASE IS INDEPENDENT ACTION FOR FRAUD UPON THE COURT
RELATED TO THE ORIGINAL 2006 CASES MAKING ALL CASES TIMELY FILED.
WE OBJECT. THEY THEN CLAIMED THE DEFENDANTS WERE BEING SUED
IN THEIR INDIVIDUAL CAPACITIES WHEN IN TRUTH THEY WERE SUED
IN BOTH THEIR INDIVIDUAL AND OFFICIAL CAPACITIES AS IS DOCUMENTED
IN THE (32) PAGE AMENDED COMPLAINT WITH ITS (73) AND (96) PAGE
ATTACHMENTS. ALL THIS WAS DONE TO ESTABLISH A MOCKED PROCEEDING
BASED UPON THEATRICS WHERE THE OUTCOME OF THE PROCEEDINGS WAS
PREDETERMINED IN ADVANCE IN VIOLATION OF U.S. SUPREME COURT
HOLDINGS UNDER MOORE v. DEMPSEY 1923 TO PREVENT FEDERAL REVIEW
WHEN BY RES JUDICATA AND OR COLLATERAL ESTOPPEL VIA JUDGE LEE'S
RULING THE PROCEEDINGS WERE PROCEDURALLY BARRED AS WELL AS DUE
TO THE SEEKING LEAVE TO APPEAL BEFORE THE 5TH. CIRCUIT. THE
IRREGULARITIES AND INFIRMITIES ALONG WITH THE FRAUD PERPETRATED
BY THE COURT AND PARTIES RENDER THE PROCEEDINGS UNCONSTITUTIONAL

AND VOID. THIS ALLOWED THE S.C. DEPT. OF CORRECTIONS TO CONVENE THE RON SANTA McCRAY DHO HEARING AND JUDGE WOOTEN, CONSPIRING WITH THE STATE JUDGES, ONCE THEY OBTAINED THE HEARING IN THE COMMON PLEAS COURT, MOVE TO DISMISS CASE 9:18-cv-01408-TLW-BM IN FRAUD TO PREVENT THAT CASE FROM COMING UNDER THE REVIEW OF THE MULTI-DISTRICT PANEL TO DENY TRANSFER UNDER 28 U.S.C. § 1407 AND INTERVENTION RELATED TO BOTH CASES 18-8022 AND 19-10011. THIS IS WHY JUDGE McLEOD HAD TO ESSENTIALLY REVERSE THE ORAL JUDICIAL DETERMINATION BY HIS PREDECESSOR FOR WHICH HE HAD NO POWER OR AUTHORITY TO DO, WHO GAVE RULING ON THE AFFIDAVITS AND THEIR VALIDITY, WHERE ALL THESE JUDGES INVOLVED WORKED TO PREVENT THE PETITIONER FROM EXERCISING LEGAL RIGHTS ESTABLISHED BY DUE PROCESS LAW RELATED TO HIS RIGHT TO INTERVENE IN BOTH CASES 18-8022 AND 19-10011, COOK v. TAYLOR, 272 S.C. 536, 252 S.E.2d. 923.

TO ADD TO THIS EGREGIOUS MISCARRIAGE OF JUSTICE. THE FILING OF A NOTICE SEEKING LEAVE TO APPEAL IS AN EVENT OF JURIS-DICTIONAL SIGNIFICANCE. IT CONFERS JURISDICTION ON THE 5TH. CIRCUIT COURT OF APPEALS, EVEN PURSUANT TO SPECIFIC, PERSONAL AND ALSO GENERAL JURISDICTION BY WHAT IS ARGUED AND DIVEST THE RICHLAND COURT OF COMMON PLEAS OF JURISDICTION OF ITS CONTROL OVER THOSE ASPECTS OF THE CASE INVOLVED IN THE APPEAL, GRIGGS v. PROVIDENT CONSUMER DISCOUNT CO., 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d. 225(U.S.1982); UNITED STATES v. GRIFFITH,--F3d.---, 2019 WL 2571747(10th.Cir.2019).

APPLICATION OF THE DIVESTITURE RULE WHERE BY FILING A NOTICE OF APPEAL AUTOMATICALLY DIVEST THE DISTRICT COURTS IN-VOLVED IN THIS MULTI-DISTRICT LITIGATION AND THE S.C. COURT OF COMMON PLEAS OF JURISDICTION AS TO MATTERS COVERED BY THE NOTICE, MUST BE FAITHFUL TO THE PRINCIPLES OF JUDICIAL ECONOMY FROM WHICH IT SPRINGS, IN RE: OLD COLD, LLC.,--B.R.--, 2019 WL 2518098(1st.Cir.2019).

IT IS GENERALLY UNDERSTOOD THAT A FEDERAL DISTRICT COURT OR IN THIS INSTANCE, THE S.C. COURT OF COMMON PLEAS AND THE 5TH. CIRCUIT COURT OF APPEALS SHOULD NOT ATTEMPT TO ASSERT JURIS-

DICTION OVER A CASE SIMULTANEOUSLY. THE NOTICE SEEKING LEAVE
TO APPEAL IS AN EVENT OF JURISDICTIONAL SIGNIFICANCE CONFERRING
JURISDICTION ON THE 5TH. CIRCUIT UNTIL THEY DETERMINED OTHERWISE,
DIVESTING THE LOWER COURTS OF ANY CONTROL OVER THOSE ASPECTS
OF THE CASE INVOLVED IN THE APPEAL, U.S. v. CHRISTY, 3 F3d.
765(4th.Cir.1993); UNITED STATES v. PEARLE, 719 F2d. 706, 711
(4th.Cir.1983). FILING NOTICE OF APPEAL TERMINATES THE DISTRICT
COURT AND STATE COURTS INVOLVED OF JURISDICTION OVER THE CASE.
THE DISTRICT COURTS AND STATE COURTS INVOLVED ARE WITHOUT JURIS-
DICTION TO CONSIDER MOTIONS SUBMIITTED AFTER THE APPEAL IS FILED
WHERE IN THIS CASE, THE APPEAL WAS FILED SEPTEMBER 20, 2019
(6) DAYS BEFORE THE FRAUDULENT HEARING OCCURRED IN CASE 2013-
CP-400-0084 AS THIS CORRUPT GOING TO HELL JUDGE DID. WE OBJECT
AND SEEK A WRIT OF MANDAMUS TO REMEDY THIS MISCARRIAGE OF JUS-
TICE, UNITED STATES v. BALL, 734 F2d. 965 n. 1 (4th.Cir.1984);
LENK v. MONOLITHIC POWER SYSTEMS INC., F.Supp., 2017 WL 4025559
(N.D.Cali.2017); MANRIQUE v. U.S., 137 S.Ct. 1266, 197 L.Ed.2d.
599, 85 U.S.L.W. 4202(U.S.2017); UNITED STATES v. PINHASOV,
762 Fed. Appx' 43 (2nd.Cir.2019).

   MANDAMUS RELIEF IS AVAILABLE IF THE TRIAL COURT ABUSE
HIS DISCRETION, WHETHER IN RESOLVING FEDERAL ISSUES OR IN DETER-
MINING LEGAL PRINCIPLES SUCH AS THE DIVESTITURE RULE; IN CERTAIN
CASES, IN DETERMINING WHETHER THE WRIT SHOULD ISSUE, THE COURT
MUST CONSIDER WHETHER THE PARTY HAS AN ADEQUATE REMEDY BY APPEAL.
IF THE STATE COURT HAS PURPOSELY IN EGREGIOUS ACTS OF FRAUD
IGNORED THE SEEKING LEAVE TO APPEAL BEFORE THE 5TH. CIRCUIT
BLATANTLY DISREGARDING THE DIVESTITURE RULE ESTABLISHING THE
PROTECTION OF THE SEEKING LEAVE TO APPEAL. THE APPEAL IS NO
LONGER ADEQUATE AND THE MANDAMUS MUST NOW ISSUE WHERE FEDERAL
QUESTION ATTACHES TO ALL ISSUES INVOLVED, IN RE: NORMAN, 191
S.W.3d. 858 Tx. (14 DIST.); ALBERT v. ENTERPRISE BANK OF SOUTH
CAROLINA, F.Supp.2d., 2013 WL 152574 (DSC.2013); BALL v. STYLE-
CRAFT HOMES, LLC., 564 Fed. Appx' 720 CA4 (Va.2014).

   A MANDAMUS IS APPROPRIATE REMEDY FOR EXCEPTIONAL CIRCUM-
STANCES AMOUNTING TO JUDICIAL USURPATION OF POWER OR CLEAR ABUSE
OF DISCRETION. BY THE FRAUD PERPETRATED BY JUDGE McLEOD AND

THIS CONSPIRACY. THEIR ACTIONS AMOUNT TO A JUDICIAL USURPATION OF
THE 5TH. CIRCUIT'S PENDING JURISDICTION AND POWER AND IS A CLEAR
ABUSE OF DISCRETION WHERE THE PARTIES CRIMINALLY IGNORED THE
DIVESTITURE RULE TO THWART THE REVIEW OF THE FEDERAL COURTS
INVOLVED, INCLUDING THE 5TH. CIRCUIT COURT OF APPEALS, IN RE:
FORD MOTOR CO., 591 F3d. 406 (5TH.Cir.2009); CHENEY v. U.S. DIST.
COURT FOR DIST. OF COLUMBIA, 542 U.S. 367, 124 S.Ct. 2576, 159
L.Ed.2d. 459(U.S.2004); IN RE: TRUMP, 928 F3d. 360
(4th.Cir.2019).


        RELIEF SOUGHT:


        (1) WE WANT JUDGE McLEOD RECUSED AND ANY ORDER SIGNED
BY HIM RELATED TO CASE 2013-CP-400-0084, OR HEARING HE DONE
RELATED THERETO, AND ANY ORDER SIGNED BY JUDGE MANNING PLACING
THE STATE CASE ON THE COMPLEX CASE DOCKET AND ANY ORDER ISSUED BY
JUDGE NEWMAN RENDERED UNCONSTITUTIONAL AND VOID AND OR VACATED.

        (2) WE WANT THE UNITED STATES AND ALL STATE DEFENDANTS
INVOLVED TO DEMONSTRATE ON THE COURT RECORD VIA THIS MANDAMUS
BEFORE THE 5TH. CIRCUIT, THAT THEY TIMELY RESPONDED IN THE STATE
CASE TO DEFEAT THE AFFIDAVITS OF DEFAULT AND VOIDING OF
JURISDICTION EMERGING FROM CASE 2013-CP-400-0084, ESPECIALLY IN
LIGHT OF THE FACT THAT EVEN DURING THE MOCKED FRAUDULENTLY
OBTAINED HEARING. NONE OF THEM DISPUTED THESE JURISDICTIONAL
FACTS. IF THEY FAIL TO DEMONSTRATE THAT THEY TIMELY RESPONDED TO
THE AFFIDAVITS IN QUESTION? THE FOLLOWING IS ADDITIONALLY SOUGHT
BY THIS MANDAMUS:

        (3) WE WANT THE S.C. ATTORNEY GENERAL TO PROVIDE A
COPY OF THIS NON EXISTING SEARCH WARRANT THEY FRAUDULENTLY
CLAIMED EXISTED USED TO OBTAIN THE EVIDENCE TAKEN FROM THE HOME
OF THE KING-KHALIFAH RELATED TO THE CRIMINAL CHARGES THAT WERE
FRAUDULENTLY LEVIED AGAINST HIM OR THEY ARE TO GO ON THE RECORD
THAT NO SUCH SEARCH WARRANT EXIST AND PLACE SUCH IN WRITING

SERVING US A COPY. THE S.C. ATTORNEY GENERAL IS ALSO TO RELEASE
TO THE KING-KHALIFAH A FULL UNREDACTED AND COMPLETE COPY WITHOUT
ANY DELETIONS OF THE SLED INVESTIGATIVE FILE, FILE NO. 5501014,
THE INVESTIGATIVE FILE HELD BY SLED RELATED TO THE CRAWFORD
CRIMINAL CASE. THE FILE IS 300+ PAGES AND IT IS TO BE MADE A
PART OF THE COURT RECORD WITHIN THE MULTI-DISTRICT LITIGATION
CASES INVOLVED. THE S.C. ATTORNEY GENERAL IS TO THEN HAVE THE
DNA SAMPLES TAKEN FROM THE KING-KHALIFAH'S DAUGHTER, KORRESHA
CRAWFORD, IN THE POSSESSION OF JOHNNY FELLORS AND THE KERSHAW
COUNTY CORONER'S OFFICE, TESTED TO MICHAEL LEE, THE KING-KHALI-
FAH'S STEPSON, AND FORWARD A COPY OF THE TESTING RESULTS TO
THE KING-KHALIFAH AND FILE A COPY WITHIN THE MULTI-DISTRICT
LITIGATION CASES.

    (4) JUDGE McLEOD, THE RICHLAND COURT AND THE S.C.
ATTORNEY GENERAL ARE TO OBTAIN AND RELEASE A COPY OF THE TRIAL
TRANSCRIPT FOR THIS MOCKED FRAUDULENTLY OBTAINED HEARING THAT
WAS CONDUCTED ON SEPTEMBER 26, 2019 IN RICHLAND COUNTY AND FOR-
WARD A COPY TO THE KING-KHALIFAH AND THEN FILE A COPY WITHIN
THE MULTI-DISTRICT LITIGATION CASES.

    (5) THE DHO HEARING INVOLVING RON SANTA McCRAY, SCHE-
DULED ON OCTOBER 2, 2019 TO BE CONDUCTED BY THE S.C. DEPT. OF
CORRECTIONS IS TO BE IMMEDIATELY HALTED. IT IS TO BE DEEMED
"FRUIT OF A POISONOUS TREE", UNCONSTITUTIONAL AND VOID. THE
CHARGES LEVIED AGAINST HIM ARE TO BE DISMISSED AS WELL AS THE
S.C. DEPT. OF CORRECTIONS ACKNOWLEDGING THAT THE KING-KHALIFAH
IS NOT SUBJECT TO THEIR POLICIES WITHOUT HIS CONSENT. THEY AND
THE COURT ARE NOT TO RESTRICT MY COURT FILINGS. THEY ARE TO
GIVE ANY COPIES NEEDED TO PERFECT THE CASES PRESENTLY PENDING
BEFORE THE COURT AND GIVE HIM UNRESTRICTED ACCESS TO THE LAW
LIBRARY (32) HOURS PER WEEK AS EVEN THEIR POLICY HAS STATED.

    (6) ALL ORDERS ISSUED NOT JUST IN CASE 2013-CP-400-
0084, BUT ALSO THE ORDERS ISSUED IN CASES 1:19-cv-01574-TLW-
SVH; 9:18-cv-01408-TLW-BM ARE TO BE RENDERED VACATED AND OR
VOID DUE TO THE FRAUDULENT EFFORTS TO CIRCUMVENT THE 7TH. AMEND-
MENT STIPULATIONS AND MULTI-DISTRICT PANEL REVIEW AND OUR RIGHT

TO SEEKING LEAVE TO APPEAL BEFORE THE 5TH. CIRCUIT. ALL CASES
ARE TO BE IMMEDIATELY TRANSFERRED TO THE KING-KHALIFAH'S DESIG-
NATED TRUSTEE, JUDGE JACQUELYN AUSTIN, AND SHE IS TO BE REQUIRED
TO FULFILL HER DUTY AS THE TRUSTEE IN ALL MATTERS TO INCLUDE
TRANSFERRING THE RELEVANT PORTION OF THE CASE TO THE N.J. DIS-
TRICT COURT TO ALLOW THE TRIAL TO COMMENCE PURSUANT TO 28 U.S.C.
§ 1407. THE ISSUANCE OF SERVICE IS TO COMMENCE IMMEDIATELY IN
THE (2) CASES AFOREMENTIONED BY SANCTIONS AND FORFEITURE DUE
TO JUDGE WOOTEN CONSPRING ACROSS MULTIPLE STATE AND FEDERAL
JURISDICTIONS WITH JUDGE McLEOD (2) DAYS OR EVEN MORE BY THE
DATE OF THE ORDER ISSUED IN CASE 9:18-cv-01408-TLW-BM, KNOWING
BEFORE HE ACTED THAT JUDGE McLEOD WOULD BE ENGAGING IN THE FRAUD
RELATED TO CASE 2013-CP-400-0084 WHICH AID TO DEMONSTRATE THAT
THE RESULTS OF THE S.C. COMMON PLEAS COURT HEARING WAS PREDETER-
MINED IN ADVANCE IN VIOLATION OF DUE PROCESS LAW BEFORE ANY
HEARING OCCURRED, ALSO VIOLATING THE U.S. SUPREME COURT HOLDINGS
UNDER MOORE v. DEMPSEY, 43 S.Ct. 265, 67 L.Ed. 542(1923).


(7) CLASS ACTION CERTIFICATION AND MULTI-DISTRICT
LITIGATION STATUS FOR THE CASES INVOLVED ARE TO BE IMMEDIATELY
ACKNOWLEDGED AS IT IS SET BEFORE THE MULTI-DISTRICT PANEL UNDER
CASE 1:18-cv-13459-NLH. THE AFFORDABLE CARE ACT AND AFFIRMATIVE
ACTION ARE TO REMAIN IN THEIR ORIGINAL STATE OF PURITY AS THEY
WERE WHEN THESE LEGISLATIVE ACTS WERE INITIALLY ENACTED AND
THE U.S. CONGRESS AND SENATE ARE TO WORK TOGETHER TO REPAIR
ANY CONCERN THEY HAVE RELATED TO THE AFFORDABLE CARE ACT IMMEDI-
ATELY. ANY GRID LOCK WHERE THIS IS NOT DONE IN WHAT I FEEL IS
A REASONABLE AMOUNT OF TIME WILL PROMPT MY FURTHER INTERVENTION
TO END THE GRID LOCK.


(8) ALL RIGHTS, TITLES, PRIVILEGES, IMMUNITIES AND
NAME CHANGE OF THE PRESENT MEMBER OF THE SOLE CORPORATION IS
TO BE DEEMED LEGALLY ESTABLISHED BEFORE ALL AGENCIES AND OR
COURTS, FOREIGN OR DOMESTIC, DUE TO THE UNITED NATIONS FAILURE
TO PROPERLY RESPOND TO THE PLEADING IN THE STATE COURT CASE
2013-CP-400-0084, WHICH INCLUDE ALL SUPERSEDING POWER AND AUTHOR-
ITY DEFAULTED ON WITHIN THE STATE CASE. THE S.C. DEPT. OF CORREC-
TIONS IS TO ADHERE TO THE RELIGIOUS DEMANDS DEFAULTED ON WHICH
INCLUDE THE PERMITTING RECEIPT OF RELIGIOUS OILS DIRECTLY TO

THE KING-KHALIFAH, THE OPENING OF THE MUSLIM PRAYER ROOM IN
EDISTO DORM AND THE OTHER DORMS TO ALLOW US TO WORSHIP AS IS
SOUGHT BY THE FOREIGN SOVEREIGN CROWN TO INCLUDE ALL OTHER RELIEF
SOUGHT UNDER CASE 2013-CP-400-0084.

MANDAMUS RELIEF IS PARTICULARLY APPROPRIATE IN THIS CASE
WHERE THEY IGNORED THE DUE PROCESS RIGHTS AND PROTECTIONS SET
IN PLACE WHICH INCLUDE THE DIVESTITURE RULE OF THE SEEKING LEAVE
TO APPEAL MAKING THE PRESENTLY SOUGHT APPEAL BEFORE THE 5TH.
CIRCUIT INADEQUATE TO PREVENT THIS OUTRAGEOUS INJUSTICE AND
FRAUD UPON THE COURT WHERE THE ISSUES INVOLVED IN THIS CASE'S
IMPORTANCE EXTEND BEYOND THE IMMEDIATE CASE WHICH IS CONSPICUOUS
HERE REGARDING THE ISSUES INVOLVED, IN RE: DEPUTY ORTHOPEDICS,
INCORPORATED, 870 F3d. 345(5th.Cir.2017); IN RE: YORMAK, 2019
WL 2515972(M.D.Fla.2019).

A SEEKER OF A WRIT OF MANDAMUS MUST SHOW: (1) CLEAR LEGAL
RIGHT TO ORDER SUCH WHICH IS DEMONSTRATED BY THE NOTICE SEEKING
LEAVE TO APPEAL WHERE DIVESTITURE WAS REQUIRED UNTIL THE 5TH.
CIRCUIT GAVE REVIEW BUT WAS IGNORED WHICH CORRUPTS THE ILLEGAL
HEARING AS THE FAILURE TO ACKNOWLEDGE RES JUDICATA AND OR COLLA-
TERAL ESTOPPEL WHICH ATTACH TO JUDGE LEE'S ORAL RULING WHICH
WAS ALSO IGNORED; (2) IMPERATIVE DUTY UPON THE RESPONDENT TO
PERFORM, ACCOMPANIED BY A REFUSAL TO DO SO SUCH AS AFOREMENTIONED
AND THE FAILURE TO RECUSE ALSO VACATING HIS PREDECESSOR JUDGE'S
PRIOR RULING; (3) LACK OF ANOTHER ADEQUATE REMEDY WHERE SINCE
THEY IGNORED THE DUE PROCESS PROTECTION SET IN PLACE BY THE
DIVESTITURE RULE ESTABLISHED BY SEEKING LEAVE TO APPEAL. THE
APPEAL HAS NOW BECOME INADEQUATE TO PREVENT WHAT JUST OCCURRED;
AND (4) PROPERLY INVOKED JURISDICTION OF THE COURT WHICH IN
THIS CASE IS ATTACHED TO THE PREVIOUSLY FILED MOTION TO INTERVENE
AND THE SEEKING LEAVE TO APPEAL BEFORE THE INJUSTICE OCCURRED.
THIS ESTABLISHES PERSONAL, SPECIFIC AND EVEN GENERAL JURISDICTION
PURSUANT TO THE INTERVENTION IN CASES 18-8022, 19-10011 RELATED
TO THE PLEADING CONDUCTED UNDER CASE 2013-CP-400-0084. THUS,
THE RIGHT TO ISSUANCE OF THE WRIT OF MANDAMUS IS ESTABLISHED
AS A "WILDCARD" REMEDY, NICHLSON v. MOATES, 135 F.Supp.2d. 1185
(M.D.Ala.2001); PORTER v. JEDZINIAK, 334 S.C. 16, 18, 512 S.E.2d.

497, 498; <u>IN RE: WAINWRIGHT,</u> CA5 (Fla.) 1975, 518 F2d. 173;

<u>WILL v. UNITED STATES,</u> 398 U.S. 90, 95, 88 S.Ct. 269, 273, 19

L.Ed.2d. 305(1967); 3 BLACKSTONE AT * 110.

IT IS SO ORDERED

DATE

JAHJAH AL MAHDI

RON SANTA McCRAY

ANTHONY COOK

YAHYA MUQUIT

SEPTEMBER 28, 2019